## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

          Plaintiffs,

     v.

THE CALDWELL MANUFACTURING
COMPANY,

          Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES

      This is a patent infringement case.  Amesbury Group, Inc. and Amesbury Springs Ltd.

(collectively, "Amesbury") sued The Caldwell Manufacturing Company ("Caldwell") to prevent

the further infringement of three Amesbury patents concerning window hardware.  Caldwell has

asserted defenses and affirmative counterclaims seeking declarations that it has not infringed

Amesbury's patents and that those patents are invalid.  Caldwell has refused to respond until after

the close of fact discovery, however, to Amesbury's interrogatories seeking the bases of these

defenses and counterclaims.  Caldwell also has refused to identify the basis of its claim that it has

not willfully infringed Amesbury's patents, such as whether it intends to rely on advice of

counsel.  Amesbury has both the right and need to discover this basic information, which relates

directly to affirmative counterclaims that, presumably, Caldwell considered reasonably based at

the time it brought them.  The court should order Caldwell to respond fully to Amesbury's

interrogatories on these issues. [1]

---

[1] Amesbury certifies that Amesbury's counsel has conferred with Caldwell's counsel and has attempted in good faith
to resolve the issues that are the subject of this motion.

In sharp contrast to Caldwell's recalcitrance, Amesbury responded timely and fully to Caldwell's interrogatories asking Amesbury to explain the bases of its infringement charges. In particular, on July 5, 2005 Amesbury served twenty-nine (29) pages of detailed interrogatory responses including eight (8) pages of claim charts and seven (7) sheets of annotated drawings identifying, on an element by element basis, the correspondence between Amesbury's patent claims and Caldwell's products. While Caldwell now has this information to guide its discovery and claim construction briefing, Amesbury has no information concerning Caldwell's defenses or counterclaims.

Thus, Amesbury respectfully requests that this Court order Caldwell to provide full and proper answers to Amesbury's interrogatories. In the alternative, the Court should preclude Caldwell from relying on any evidence or defense omitted from Caldwell's interrogatory responses and, since Caldwell's interrogatory responses are devoid of any substance at all, order Judgment of infringement for Amesbury. Amesbury stands ready to submit further briefing detailing Caldwell's infringement, should the Court choose to proceed in this manner.

**A.     Caldwell's Refusal To Disclose Its Non-Infringement Position**

On May 5, 2005, Amesbury served its First Set of Interrogatories. Amesbury's Interrogatory No. 5, reads as follows:

> For each Window Product identified in response to Interrogatory No. 1, separately state the full factual and legal basis for Caldwell's assertion that the Window Product does not infringe any claim of the patents-in-suit, identifying for each claim each element that Caldwell asserts is or is not present in the Window Product, either literally or under the doctrine of equivalents, and any claim construction relevant to Caldwell's assertion.

Caldwell initially objected to this interrogatory as premature and stated that, "Caldwell will supplement this interrogatory with its non-infringement contention after claim [construction]

charts are exchanged." (Def.'s Answers to Pl.'s First Set of Interrogs. at 3, attached as Ex. 1.)[2]
On the eve of the parties' exchange of claim construction charts, however, Caldwell changed its
position, and now refuses to provide its non-infringement position until after this Court rules on
claim construction. (See Letter from Laura Smalley to Safraz Ishmael, dated July 26, 2005,
attached as Ex. 2 ("As you are aware, the Court has not construed the claim terms of the patents-
in-suit. At this time, it is premature for us to provide an infringement analysis . . . we are not
required to provide our infringement analysis until the claim construction process is complete.").)
During a July 28, 2005, teleconference Caldwell again refused to answer Amesbury's
interrogatory, despite Amesbury's objection that Caldwell's untenable position was highly
prejudicial to Amesbury. (See Letter from Safraz Ishmael to Neil Slifkin and David Edwards,
dated July 29, 2005, attached as Ex. 3 (confirming that it is Caldwell's position that it will not
respond to Interrogatory No. 5 until after the Court rules on claim construction).)

    Caldwell's own conduct in this case shows that Caldwell's refusal to disclose the bases of
its non-infringement defenses and counterclaims lacks any merit. For example, Caldwell's
Answer and Counterclaim denies infringement, asserts affirmative defenses of non-infringement,
and includes a declaratory judgment counterclaim of non-infringement. Thus, Caldwell
presumably made an investigation of its own products and construed and applied the claims of the
patents-in-suit to its products. It could not properly have filed its counterclaim otherwise.
Amesbury is entitled to discover Caldwell's bases for its denial of infringement and its
counterclaim of non-infringement.

    Caldwell's refusal to answer Amesbury's interrogatory until after this Court rules on claim

---

[2] Caldwell also indicated in its response to Interrogatory No. 10 that it would disclose its infringement position with
    the exchange of claim construction charts. (See Def.'s Answers to Pl.'s First Set of Interrogs. at 6, Ex. 1
    ("Caldwell will disclose its claim construction (and therewith its non-infringement contentions) in accordance
    with the Court's scheduling order.").)

construction prejudices Amesbury severely, as it means that Amesbury will not know Caldwell's non-infringement position until <u>after the close of fact discovery</u>.  Fact discovery closes on October 17, 2005, a mere three days after Caldwell is scheduled to file its *Markman* brief on claim construction.  As such, this Court will not be in a position to rule on claim construction until well after the close of fact discovery.  Permitting Caldwell to hide its position on infringement until after the court rules on claim construction would preclude Amesbury from taking discovery directed to Caldwell's position.

Caldwell's refusal to answer Amesbury's Interrogatory No. 5 is particularly egregious, in view of Amesbury's submission of a complete and detailed response to Caldwell's later-served interrogatory request on the same topic.  On July 5, 2005, in response to Caldwell's Interrogatory No. 2, Amesbury timely provided Caldwell detailed claim charts and annotated figures identifying, with particularity, the correspondence between all the limitations of the asserted claims and Caldwell's infringing products.  Caldwell has had the benefit of Amesbury's infringement position now for over six weeks, and was able to try to use that information to its benefit in the parties' exchange of claim term constructions on July 29th.  Caldwell's tactic has denied Amesbury the reciprocal benefit, even though Amesbury served its interrogatory request first.

Given that Caldwell not only has raised the defense of non-infringement, but also affirmatively has asserted a declaratory judgment counterclaim of non-infringement, it would be manifestly unfair to permit Caldwell to hide its position on non-infringement until after the close of discovery.  As such, the Court should order Caldwell fully to answer this interrogatory immediately, or preclude Caldwell from denying infringement.  See <u>Mitutoyo Corp. v. Central Purchasing</u>, No. 03 C 0990, 2005 WL 1026710, at *3-4 (N.D. Ill. Apr. 20, 2005) (striking an

exhibit produced after the close of fact discovery discussing the factual bases for Central's non-infringement position).

### B.    Caldwell's Refusal to Disclose Its Invalidity Position

Caldwell also has refused to explain the bases of its invalidity defenses and counterclaims. Amesbury's May 5, 2005 First Set of Interrogatories include the following Interrogatory No. 6:

> State the full factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States as set forth in, *inter alia*, 35 U.S.C. §§ 102, 103, and 112.

In response, Caldwell identified a short list of references but has refused to explain how, in its view, any reference or combination invalidates any of the three patents-in-suit. Caldwell has refused to identify what elements in these references are relevant to its invalidity assertion, or to apply any elements of these references to the claim terms of the patents-in-suit.

As with Interrogatory No. 5, Caldwell stated in the July 28th teleconference that it will not provide any further answer to this interrogatory until <u>after this Court has ruled on claim construction</u> (i.e., until after the close of fact discovery). (<u>See</u> Letter from Safraz Ishmael to Neil Slifkin and David Edwards, dated July 29, 2005, attached as Ex. 3.) Caldwell's refusal to provide a full answer to this interrogatory conflicts sharply with Caldwell's assertion of invalidity affirmative defenses and declaratory judgment counterclaims. Caldwell presumably investigated these defenses and counterclaims before filing its Answer and Counterclaim, and Amesbury has a right to discover the bases underlying Caldwell's positions on these issues.

Caldwell's refusal to answer this interrogatory until after a ruling on claim construction, and hence after the close of fact discovery, prejudices Amesbury severely and will frustrate Amesbury's ability to conduct its discovery in an orderly and efficient manner. Caldwell's tactic already unfairly has forced Amesbury to submit its claim term constructions on July 29th, and will

unfairly force Amesbury to file its September 15th *Markman* brief, without any knowledge of Caldwell's invalidity positions.

Given that Caldwell not only raised the defense of invalidity, but also affirmatively asserted a declaratory judgment counterclaim of invalidity, it would be manifestly unfair to permit Caldwell to hide its position on invalidity until after the close of discovery, especially where Caldwell has the burden of proof on this issue by clear and convincing evidence.  Thus, the Court should order Caldwell to fully explain its invalidity position immediately, or preclude Caldwell from challenging the validity of the patents-in-suit.  See Takeda Chemical Indus. V. Mylan Lab., No. 03 Civ. 8253(DLC), 2005 WL 1457696, at *1-2 (S.D.N.Y. June 15, 2005) (precluding Mylan from offering certain evidence at trial as to the invalidity of an asserted patent when that evidence was produced after the close of fact discovery).

### C.    Caldwell's Refusal to State Whether It Intends To Rely On Advice of Counsel

Amesbury's Interrogatory No. 10 requires Caldwell to identify any advice of counsel it intends to rely upon for its assertion that its infringement of the patents-in-suit is not willful. Interrogatory No. 10 states:

> State the full factual and legal basis for Caldwell's denial that its infringement of the patents-in-suit is willful, including, but not by way of limitation, identifying any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into, the United States, any of the Window Products identified in response to Interrogatory No. 1.

Caldwell has attempted to avoid this interrogatory by vaguely stating that it "declines to produce opinions of counsel," but it has refused to answer the actual question posed by the interrogatory, namely whether any such opinions exist.  (See Def.'s Answers to Pl.'s First Set of Interrogs. at 5-6, Ex. 1.)  With less than two months remaining for discovery in this case, Amesbury will be prejudiced if Caldwell produces any opinions without adequate time for

Amesbury to study the opinions and to take necessary discovery concerning the opinions and

Caldwell's state of mind regarding willful infringement.  See Mobil Oil Corp. v Amoco Chem.

Corp., 779 F. Supp. 1429, at 1485n.43 (D. Del. 1991) (excluding the contents of Amoco's

opinions of counsel from evidence and finding that "Amoco's failure to clearly waive the

privilege before the close of discovery prevented Mobil from taking any appropriate discovery

regarding the opinions").

        As such, the court should order that Caldwell immediately disclose whether any such

opinions exists and, if so, whether Caldwell intends to rely on any such opinions at trial in this

matter.  In the alternative, the court should preclude Caldwell from offering any advice of counsel

defense in response to Amesbury's willful infringement charge. See Wright Mfg. Inc. v. Great

Dane Power Equipment Inc., 48 U.S.P.Q.2d 1698, 1700 (D. Md. 1998) ("If the Defendants

choose not to disclose the letter and not to allow Plaintiff to conduct appropriate discovery, they

will not be allowed to rely on it at any stage of the trial, including the inquiry into willfulness").


## CONCLUSION

        For the foregoing reasons, the Court should grant Amesbury's Motion to Compel

Responses to Interrogatories.

                                            Respectfully submitted,

                                            /s/ Douglas J. Kline
                                            Douglas J. Kline (BBO# 556680)
                                            Safraz W. Ishmael (BBO# 657881)
                                            GOODWIN PROCTER LLP
                                            Exchange Place
                                            Boston, MA 02109-2881
                                            (617) 570-1000

                                            Attorneys for Plaintiffs

                                            **AMESBURY GROUP, INC.**
Dated: August 22, 2005                      **AMESBURY SPRINGS LTD.**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 22, 2005, I electronically filed a true copy of the foregoing **AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES** with the Clerk of the Court using the ECF system which will send notification to the following: David E. Lurie and Thomas E. Lent, Lurie & Krupp.

Dated: August 22, 2005

/s/ Douglas J. Kline
Douglas J. Kline (BBO# 556680)

LIBA/1575845.1

*Amesbury's Motion to Compel*          8
*Responses to Interrogatories*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

     v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                     Plaintiffs,

vs.

THE CALDWELL MANUFACTURING
COMPANY,

                     Defendant.

---

**DEFENDANT'S ANSWERS TO
PLAINTIFFS' FIRST SET OF
INTERROGATORIES (1-12)**

Civil Action No. 05-10020-DPW

---

Defendant the Caldwell Manufacturing Company ("Caldwell"), by its attorneys Harris Beach

PLLC, submits the following answers to plaintiffs' First Set of Interrogatories (1-12):

**INTERROGATORY NO. 1**:

Identify each Window Product that, since January 1, 1994, has been used, made, offered for

sale, sold in, or imported into, the United States by or on behalf of Caldwell, including, if applicable,

the Window Product's product designation number, SKU number, part number, assembly

designation, brand name, trademark, and any other means used by or on behalf of Caldwell to

identify the Window Product.

      **ANSWER**:     Caldwell objects to the definition of the term "Window Product" in

that it is vague and overly broad. As defined, the term applies to every product sold or manufactured

by Caldwell that includes "one or more of a: (1) block and tackle balance; (2) balance shoe, and (3)

coil spring mounting element," implicating hundreds of Caldwell's products. Plaintiffs Amesbury

Group, Inc. and Amesbury Springs Ltd. ("Amesbury") have not limited that term to those Caldwell

products which may allegedly infringe the patents-in-suit. Caldwell will limit its responses to

Interrogatory Nos. 2 through 5 below to those specific products included in the definition of the term

"Window Product" and those ascertained from correspondence between the parties. Subject to and

without waiving these objections, Caldwell states that this information is ascertainable from documents Caldwell keeps in the ordinary course of business, which will be produced subject to a protective order.

**INTERROGATORY NO. 2**:

Describe separately and in detail the development of each Window Product identified in response to Interrogatory No. 1, including, but not limited to, identifying the person or persons who developed the Window Product and the earliest dates the Window Product was conceived, reduced to practice, manufactured, and sold.

**ANSWER**:    Caldwell objects to this interrogatory as overly broad and unduly burdensome for the reasons set forth in Interrogatory No. 1. Furthermore, the phrase "describe in detail the development of each window product" is vague.   Subject to, and without waiving these objections, Caldwell states that its Series 86xt balance product was substantially designed by Richard DeNormand. This product was first sold in 2003. Caldwell's Series 97ez balance product was designed by Jeff Robertson, and was first sold in 2004.   Caldwell's Quick-Tilt*nc  balance product was designed by Jeff Robertson, and was first sold in 2004.

**INTERROGATORY NO. 3**:

Separately state Caldwell's total sales figures for each Window Product identified in response to Interrogatory No. 1, including, on a monthly basis:

      (a)     gross revenue;

      (b)     all costs associated therewith;

      (c)     profits; and

      (d)     the total number of the Window Products sold and distributed.

**ANSWER**:    Caldwell objects to this interrogatory as overly broad and unduly burdensome for the reasons set forth in Interrogatory No. 1.  Subject to and without waiving these objections, Caldwell will produce, subject to a protective order, documents kept in the ordinary course of business from which sales figures, including gross revenue and profits, are ascertainable for its Series 86xt, Series 97ez and Quick-Tilt*nc balance products.  If Amesbury should identify additional "Window Products" that allegedly infringe the patents-in-suit based on Caldwell's response to Interrogatory No. 1 above, additional sales figures will be produced.

**INTERROGATORY NO. 4**:

With respect to each of the patents-in-suit, describe how Caldwell first became aware of the patent, identifying the date that Caldwell became aware of the patent, the circumstances of how Caldwell became aware of the patent, and all documents concerning Caldwell's awareness of the patent.

**ANSWER**:    Caldwell objects to this interrogatory as overly broad and because it seeks information more readily obtainable through documents and depositions.  Subject to and without waiving these objections, Caldwell will produce all relevant, non-privileged documents as they are kept in the ordinary course of business subject to a protective order.

**INTERROGATORY NO. 5:**

For each Window Product identified in response to Interrogatory No. 1, separately state the full factual and legal basis for Caldwell's assertion that the Window Product does not infringe any claim of the patents-in-suit, identifying for each claim each element that Caldwell asserts is or is not present in the Window Product, either literally or under the doctrine of equivalents, and any claim construction relevant to Caldwell's assertion.

**ANSWER**:    Caldwell objects to this interrogatory in that is premature.  This Court's Order requires the parties to exchange claim charts on July 30, 2005.  Caldwell's claim charts will be produced at that time.  Caldwell will supplement this interrogatory with its non-infringement contention after claim charts are exchanged.   Additionally, Caldwell objects to this interrogatory for the reasons stated in response to Interrogatory No. 1 in that the definition of "Window Product" is vague and overly broad.

**INTERROGATORY NO. 6**:

State the full factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States as set forth in, *inter alia*, 35 U.S.C. §§102, 103 and 112.

**ANSWER**:    Caldwell objects to this interrogatory in that it calls for legal conclusions.  Furthermore, Caldwell requires further investigation, including discovery from Amesbury, to answer this interrogatory fully, as this is a contention interrogatory.

**INTERROGATORY NO. 7**:

State the full factual and legal basis for Caldwell's assertion that the claims asserted against Caldwell are barred by prosecution history estoppel.

**ANSWER**:    Caldwell objects to this interrogatory to the extent it seeks the legal basis for Caldwell's assertions.  Caldwell also requires further investigation, including discovery from Amesbury, to answer this interrogatory fully, as this is a contention interrogatory.  Furthermore, Caldwell cannot answer this interrogatory without knowing Amesbury's interpretation of the claims at issue.

**INTERROGATORY NO. 8**:

State the full factual and legal basis for Caldwell's assertion that Amesbury does not own and/or does not have the right to assert the '264 patent.

**ANSWER**:    Caldwell objects to this interrogatory in that it seeks legal conclusions. Subject to and without waiving these objections, Caldwell states that Carl Shelton, one of the inventors of the device claimed in the '264 Patent, was not named as an inventor of that patent. As he was not an Amesbury employee, he had no duty to assign the patent to Amesbury.

**INTERROGATORY NO. 9**:

State the full factual and legal basis for Caldwell's assertion that Amesbury's claims for damages are limited by 35 U.S.C. §286 or §287.

**ANSWER**:    Caldwell objects to this interrogatory to the extent that it calls for legal conclusions.    In addition, Caldwell requires further investigation, including discovery from Amesbury, to answer this interrogatory fully, as this is a contention interrogatory.

**INTERROGATORY NO. 10**:

State the full factual and legal basis for Caldwell's denial that its infringement of the patents-in-suit is willful, including, but not by way of limitation, identifying any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into , the United States, any of the Window Products identified in response to Interrogatory No. 1.

**ANSWER**:    Caldwell objects to this interrogatory in that it is overly broad, calls for legal conclusions, and seeks material covered by the attorney-client privilege.  Caldwell declines to produce opinions of counsel regarding the validity and/or infringement of the patents-in-suit. Subject to and without waiving these objections, Caldwell states that it believes that the patents-in-

suit are invalid and/or not infringed. Caldwell requires further investigation, including discovery from Amesbury, to answer this interrogatory fully, as this is a contention interrogatory. Caldwell also reserves the right to supplement its response. In addition, Caldwell will disclose its claim construction (and therewith its non-infringement contentions) in accordance with the Court's scheduling order.

**INTERROGATORY NO. 11**:

Identify each person who Caldwell expects to call as a witness at trial, including whether the witness will testify as a fact or an expert witness, the subject matter on which each witness is expected to testify, and each document upon which each witness will rely upon or testify about at trial.

**ANSWER**: Caldwell objects to this interrogatory as overly broad, unduly burdensome, and premature. Subject to and without waiving these objections, Caldwell states it has not yet hired a testifying expert, and but will disclose its expert witness in accordance with this Court's Scheduling Order when such witness is retained. Factual witnesses who may be called as a witness in this trial include those identified in Caldwell's Rule 26 initial disclosures. Factual witnesses who may be called at trial also include representatives of Anderson Corporation, including Roy A. Thompson, Douglas W. Kroncke, John C. Costello, David P. Chastain, Jack D. Gundlach, Timothy J. Kelly, Thomas Hanzel, Arthur R. King, IV, James R. Harger, Michael L. Doll, James L. Peterson, Dennis A. Galowitz, and Richard M. Fisher. Caldwell reserves the right to supplement this response.

**INTERROGATORY NO. 12**:

Identify each source of information that you considered in preparing your responses to these interrogatories, including, but not limited to, all persons who provided information that you

considered in preparing your responses, all persons who you interviewed in connection with gathering information sought in these interrogatories, and all documents that you reviewed for purposes of gathering information sought in these interrogatories.

      **ANSWER**:   The following persons assisted in preparing these interrogatories: attorneys at Harris Beach PLLC, 99 Garnsey Road, Pittsford, New York 14513; attorneys at Brown and Michaels, 400 M&T Bank Building, 118 North Tioga Street, Ithaca, NY 14850; and Thomas F. Batten, Vice President of Engineering at Caldwell Corporation, 2605 Manitou Road, Rochester, New York 14624. In accordance with an agreement with counsel for Amesbury, these written responses are being provided in advance of documents being available for review in connection with answering Amesbury's interrogatories. Caldwell, therefore, reserves the right to supplement and/or amend its responses, to any and all of these interrogatories.

Dated: June **10**, 2005

                     HARRIS BEACH PLLC

                     By:   _____

                     Paul J. Yesawich, III
                     Neal L. Slifkin
                     David J. Edwards
                     Laura W. Smalley
                     *Attorneys for Defendant*
                     99 Garnsey Road
                     Pittsford, New York 14534
                     Telephone: 585-419-8800

                            -and-

                     BROWN & MICHAELS, P.C.
                     Christopher A. Michaels
                     Eugene S. Stephens
                     400 M&T Bank Building
                     118 North Tioga Street
                     Ithaca, New York 14850
                     Telephone: 607-256-2000

                     *Attorneys for Defendant*

TO:    GOODWIN PROCTER LLP
       Douglas J. Kline, Esq.
       Safraz W. Ishmael
       *Attorneys for Plaintiffs*
       Exchange Place
       Boston, MA 02109-2881
       Telephone: 617-570-1000

P:\CALDWELL\Ans2Int061005.doc
6/10/2005 4:14:01 PM

HARRIS BEACH ᴾᴸᴸᶜ
ATTORNEYS AT LAW

8

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:


        Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP. That on the 10th day of June, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

GOODWIN PROCTER LLP
Douglas J. Kline, Esq.
Safraz W. Ishmael, Esq.
Exchange Place
Boston, MA 02109-2881


by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for June 13th a.m. delivery.


                                        Karen J. Jenness


Sworn to before me this
10th day of June 2005



Notary Public

AMY M. DANN
Notary Public, State of New York
Qualified in Monroe County
NO. 01DA5077658
Commission Expires May 12, 2007


HARRIS BEACH
ATTORNEYS AT LAW

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMESBURY GROUP, INC., and<br>AMESBURY SPRINGS LTD.,<br><br>       Plaintiffs,<br><br>   v.<br><br>THE CALDWELL MANUFACTURING<br>COMPANY,<br><br>       Defendant. | Civil Action No. 05-10020-DPW |

## AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES

# EXHIBIT 2

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

July 26, 2005

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

**LAURA W. SMALLEY**

DIRECT:   585-419-8736
FAX:      (585) 419-8813
LSMALLEY@HARRISBEACH.COM

Safraz W. Ishmael, Esq.
GOODWIN PROCTER LLP
Exchange Place                        Via Facsimile
Boston, MA 02109-2881

     Re:    Amesbury Group, Inc. and Amesbury Springs Ltd. v.
           The Caldwell Manufacturing Company

Dear Mr. Ishmael:

     This letter outlines Caldwell's position on Amesbury's objections to Caldwell's
interrogatory responses and document production as outlined in your July 13, 2005 letter. With
regard to Caldwell's right to produce documents under Rule 33(d), you agreed to allow us to
produce documents on a rolling basis as we received them. Your objection, based on the Local
rule, that Caldwell's documents are two weeks overdue is clearly at odds with the grant of the
extension, which you recognize in the first paragraph of your letter. In our recent document
production to you, we produced the catalogs and sales literature depicting Caldwell's product
line, which satisfied our obligation to provide information responsive to Interrogatory No. 1.
With respect to interrogatory No. 2, we will provide the requested information to the extent
Caldwell has records establishing such dates.

     With respect to interrogatory number 3, we have accounting spreadsheets establishing the
financial information sought regarding the accused devices, and are awaiting the execution of an
appropriate protective order to disclose the same. We provided a proposed protective order on
July 20, but have not heard from you. With regard to Interrogatory No. 4, we are in the process
of producing files relating to Caldwell's awareness of the patents at issue, which will satisfy our
obligation to provide information responsive to this Interrogatory.

     As you are aware, the Court has not construed the claim terms of the patents-in-suit. At
this time, it is premature for us to provide an infringement analysis as requested by Interrogatory
No. 5. As to invoking Rule 11 on this and other issues, you are confusing two distinct concepts:
(1) whether, at the time of filing our pleading, we had a basis for denying infringement; and (2)
whether we are required to provide our analysis to you. If you want to make a motion under
Rule 11, do so, but we are not required to provide our infringement analysis until the claim
construction process is complete. We will, of course, provide our claim construction views in
accordance with the Court's order.

     With regard to interrogatory No. 6, we will provide you with certain prior art references
that we believe invalidate the patents-in-suit, including Prosser, U.S. Patent No. 3,091,797,
Thompson, U.S. Patent No. 6,840,011, DeNormand, U.S. Pat. No. 6,041,746, and Berndt, U.S.
Patent No. 4,704,821. We have subpoenaed from Anderson Corporation information about
products we believe invalidate one or more of the patents-in-suit. We are also in the process of

Safraz W. Ishmael, Esq.
July 26, 2005
Page 2

supplementing our production with additional prior art references that we recently obtained. These productions satisfy our obligation to provide information responsive to Interrogatory No. 6. In addition, our respective claim construction positions may raise certain §112 issues, and my comments concerning Rule 11, above, also apply.

With regard to Interrogatory 7, this inquiry is part of the claim construction/infringement process. To the extent that representations made in the prosecution of the patents in suit influence claim construction, we will disclose these contentions in our claim interpretation exchange on July 30, 2005. To the extent that such representations influence our non-infringement position, we will disclose our position once the claim construction process is complete.

With regard to Interrogatory 8, we have answered this interrogatory fully by disclosing Mr. Shelton and his involvement with the '264 Patent, as well as producing certain documents last week generated by Mr. Shelton that Caldwell received. We cannot provide the additional details requested in your letter, and have no obligation to do so, until Mr. Shelton is deposed.

With regard to Interrogatory 9, we have not received documents or complete interrogatory responses from you and thus cannot answer this interrogatory. One of the patents-in-suit was issued more than 6 years ago, and should Amesbury accuse Caldwell of infringement occurring more than six years ago, we are entitled to assert the §286 bar. With regard to the marking issue, §287, we have not received discovery from you regarding Amesbury's products, including the specimens requested in Document Request No. 57. Until we have established that Amesbury has properly marked all of its products, we are entitled to preserve the defense of non-marking.

With regard to your recent response to Caldwell's interrogatories and document responses, you have failed to answer or respond fully on many of the same grounds that Caldwell objected to your interrogatories and document demands. Having now objected to Caldwell's use of these objections, I assume you will be withdrawing yours. Technically, you have also waived your objections to provide documents in lieu of answering interrogatories under local rule 33(d). Furthermore, you have not provided any documents in response to Caldwell's interrogatories or document demands. Please advise when you intend to begin making this production.

Very truly yours,

Laura W. Smalley

lws:kjj
Pc:    Paul J. Yesawich, III, Esq.
       Neal L. Slifkin, Esq.
       David J. Edwards, Esq.
       Douglas J. Kline, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES

# EXHIBIT 3

GOODWIN | PROCTER

Safraz W. Ishmael, Esq.          Goodwin Procter LLP
617.570.1729                     Counsellors at Law
sishmael@goodwinprocter.com      Exchange Place
                                 Boston, MA 02109
                                 T: 617.570.1000
                                 F: 617.523.1231

July 29, 2005

**By Facsimile (585-419-8801)**

Neil L. Slifkin, Esq.
David J. Edwards, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:   **Amesbury Group, Inc.,** *et al.* **v. The Caldwell Manufacturing Company**
      **C.A. No. 05-10020-DPW, District of Massachusetts**

Dear Neil and Dave:

      In our teleconference of July 28, 2005, you told me that Caldwell will not respond to
Amesbury's Interrogatory No. 5, relating to Caldwell's non-infringement assertions, until after
the Court has provided a ruling on claim construction.[1]  As I stated in our conversation, such a
position is untenable and is highly prejudicial to Amesbury.

      This is especially the case given that Caldwell specifically stated in its response to
Amesbury's Interrogatory No. 5 that it will disclose its basis for its non-infringement assertion
after claim construction charts are exchanged on July 30, 2005.  See Def.'s Answer to Pl.'s First
Set of Interrogs. at 4 ("This Court's Order requires the parties to exchange claim charts on July
30, 2005 … Caldwell will supplement this interrogatory with its non-infringement contention
after claim charts are exchanged.").

      Furthermore, you told me yesterday that Caldwell will not respond to Amesbury's
Interrogatory No. 6, asking for the full factual and legal basis for Caldwell's assertion that the
patents-in-suit are invalid, until after the Court has provided a ruling on claim construction.
Such a position is equally untenable and prejudicial to Amesbury.

      Additionally, after I noted Amesbury's objections to Caldwell's lack of a full response to
Amesbury's Interrogatory No. 10, relating to Caldwell's denial of willfulness, you said that you
will look into this issue next week.  As such, please let us know by the close of business on
Friday, August 5, 2005 whether Caldwell will provide a full answer to Interrogatory No. 10.

---

[1] See also Letter from Laura Smalley to Safraz Ishmael dated July 26, 2005 ("As you are aware, the Court has not
construed the claim terms of the patents-in-suit.  At this time, it is premature for us to provide an infringement
analysis as requested by Interrogatory No. 5").

GOODWIN | PROCTER

Neil L. Slifkin, Esq.
David J. Edwards, Esq.
July 29, 2005
Page 2


     Please also let us know by <u>Friday, August 5, 2005</u>, whether my understanding of any of your positions, as outlined above, is inaccurate. If so, please let me know by that date when Caldwell will supplement its interrogatory responses.

     As we discussed, both Amesbury and Caldwell will provide comments during the week of August 8, 2005, on the respective draft protective orders each side has provided the other.

     Finally, it is my understanding from our teleconference, and from voice mail exchanges with you later that day, that we are in agreement that the parties exchange their views on claim construction per the Court's schedule of July 30, 2005, by Federal Express by that date for delivery on Monday, August 1, 2005. Further, the parties can supplement if there are claim terms they failed to address that were addressed by the other party.


Very truly yours,

Safraz W. Ishmael

cc:    Paul J. Yesawich, III, Esq.
       Laura W. Smalley, Esq.
       Douglas J. Kline, Esq.


LIBA/1570358.1