IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

Plaintiffs,

vs.                                                                           Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

Defendant.

## CALDWELL'S RESPONSE TO AMESBURY'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES

This memorandum is submitted in opposition to plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd.'s (collectively "Amesbury") motion to compel.    For the reasons set forth below, Amesbury's motion is moot and should be denied.

### Amesbury's Motion to Compel is Moot

On August 22, 2005, Amesbury moved to compel responses to Interrogatory Nos. 5, 6 and 10 of its First Set of Interrogatories.    These contention interrogatories seek to discover the basis for Caldwell's claims that: (1) its products do not infringe the patents-in-suit; (2) the patents-in-suit are invalid; and (3) any infringement was not willful.    Because Caldwell's claim construction and invalidity positions depended on the construction of the claims at issue, it initially declined to answer Amesbury's interrogatories regarding infringement and invalidity.    Caldwell answered Interrogatory No. 10, which requested that it identify the basis of its claim that any alleged infringement was not willful, but declined to produce opinions of counsel regarding infringement and/or invalidity on the grounds that the interrogatory sought privileged information.    (See

Caldwell's Answers to Pl.'s First Set of Interrogatories, attached as Exhibit "1" to Amesbury's motion to compel).

While Caldwell continues to believe that its original responses are sufficient in the absence of a ruling from the Court construing the patent claims, it supplemented its interrogatory responses to Interrogatories No. 5, 6 and 10.   These interrogatory responses fully disclose Caldwell's basis for its non-infringement and invalidity positions based on the information currently known to Caldwell. Furthermore, Caldwell has clarified that it will not rely on an opinion of counsel at trial, thus eliminating Amesbury's preliminary objection to Caldwell's answer.  (See Caldwell's Supplemented Answers to Plaintiffs' First Set of Interrogatories, attached as Exhibit "A").   Amesbury's motion to compel is therefore moot and should be denied.

### Amesbury's Discovery Deficiencies

Regarding the ongoing discovery in this matter, Amesbury answered most of Caldwell's document demands and many of Caldwell's interrogatories by indicating that it possessed relevant documents that would be produced after a protective order was in place.   (See Amesbury's Objections and Responses to Caldwell's First Set of Interrogatories and Amesbury's Objections and Responses to Caldwell's First Set of Document Requests, attached as Exhibits "B" and "C"). Many of the documents sought relate to claim construction and invalidity, including requests that Amesbury provide documents regarding the first sale of the devices covered by the patents-in-suit. These documents are necessary for the completion of claim construction and for Caldwell to respond to Interrogatory Nos. 5 and 6 fully.

An agreed-upon protective order was endorsed on August 24, 2005.   Caldwell has not yet received any of the documents promised to be provided once a protective order was in place.  In addition, Caldwell has put Amesbury on notice that its interrogatory responses were insufficient.

(Letter from Laura W. Smalley to Safraz W. Ishmael, dated August 31, 2004, attached as Exhibit "D".)  The discovery deadline in this matter is October 17, 2005.  Amesbury's failure to provide documents responsive to Caldwell's requests is prejudicing Caldwell's ability to respond to discovery and take depositions in this matter.

### CONCLUSION

For the foregoing reasons, Amesbury's motion to compel should be denied in all respects, and Caldwell should be entitled to additional relief as the Court deems just and proper.

Dated:  September 6, 2005                 THE CALDWELL MANUFACTURING COMPANY

By its attorneys,

 /s/ Thomas E. Lent
David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: 617-367-1970

Of counsel:

Neal L. Slifkin
Paul J. Yesawich, III
Laura W. Smalley
Harris Beach LLP
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMESBURY GROUP, INC., and<br>AMESBURY SPRINGS LTD,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>THE CALDWELL MANUFACTURING<br>COMPANY,<br>                              Defendant. | **DEFENDANT'S SUPPLEMENTED<br>ANSWERS TO PLAINTIFFS' FIRST<br>SET OF INTERROGATORIES**<br><br><br>Civil Action No. 05-10020-DPW |

Defendant the Caldwell Manufacturing Company ("Caldwell"), by its attorneys Harris Beach

PLLC, submits the following supplemental answers to plaintiffs' First Set of Interrogatories:

**INTERROGATORY NO. 4**:

For each Window Product identified in response to Interrogatory No. 1, separately state the

full factual and legal basis for Caldwell's assertion that the Window Product does not infringe any

claim of the patents-in-suit, identifying for each claim each element that Caldwell asserts is or is not

present in the Window Product, either literally or under the doctrine of equivalents, and any claim

construction relevant to Caldwell's assertion.

**ANSWER**:        Amesbury objects to this interrogatory in that is premature in that the

court has not construed the claims at issue.  Additionally, Caldwell objects to this interrogatory for

the reasons stated in response to Interrogatory No. 1 in that the definition of "Window Product" is

vague and overly broad.    Caldwell's preliminary claim charts are attached as Exhibit "A".

Caldwell reserves the right to supplement or amend these responses based on further discovery,

investigation or the Court's claim construction.

**INTERROGATORY NO. 6**:

State the full factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States as set forth in, *inter alia*, 35 U.S.C. §§102, 103 and 112.

      **ANSWER**:    Caldwell objects to this interrogatory in that it calls for legal conclusions.  Furthermore, Caldwell requires discovery from Amesbury to answer this interrogatory fully.  Subject to and without waiving these objections, Caldwell states as follows:

      (1)    U.S. Patent No. 6,598,264: The file history indicates that the only potentially novel element of this patent is the location of the bottom guide roller within the bottom guide.  This element is disclosed, or is obvious in light of, the following prior art references, either singly or in combination:  (1) Prosser, U.S. Patent No. 3,091,797; (2) Thompson, U.S. Patent No. 6,840,011, (3) Wood, U.S. Patent No. 3,114,178, (4) Biro, U.S. Patent No. 3,449,862, (5) DeNormand, U.S. Patent No. 6,041,746, (6) Berndt, U.S. Patent No. 4,704,821, (7) Fitzgibbon, U.S. Patent No. 4,089,085, (8) a window balance product manufactured by or for Anderson Corporation that, upon information and belief, incorporated a part sold by Amesbury to Anderson as early as 1999, (9) Japanese Utility Model No. JITSUKAI S62-19485, (10) United Kingdom Patent No. GB1219927, (11) United Kingdom Patent No. GB1244324, and (12) additional prior art cited during the prosecution of the patent.  Additional prior art references may be found through additional prior art searches or in discovery, and Caldwell reserves the right to supplement this response.   Also, the patent is invalid to the extent that Amesbury seeks to construe the claims of this patent to cover rollers that are not attached directly to the bottom guide because, during prosecution of the patent, Amesbury distinguished certain prior art references, including *Biro*, supra, which disclosed a roller indirectly mounted to the bottom guide.

(2)    U.S. Patent No. 6,820,368: The file history indicates that the only potentially novel element of this patent is enlarged end of the balance shoe. The patent also discloses a "pocket" element. These elements are disclosed, or are obvious in light of, the following prior art references, either singly or in combination: (1) DeNormand, U.S. Pat. No. 6,041,746, (2) Berndt, U.S. Patent No. 4,704,821, (3) Schmidt, U.S. Patent No. 5, 301, 467, (4) additional prior art cited during the prosecution of the patent, (5) United Kingdom Patent Application No. 2280697A, (6) United Kingdom Patent Application No. 2236786A, (7) United Kingdom Patent Application No. 2292168A, (8) United Kingdom Patent No. 740223, (9) Japanese Utility Model JITSUKAI S56-171982, and (10) Japanese Utility Model JITSUKAI S63-3785.    Additional references may be discovered, and Caldwell reserves the right to supplement this response.    In addition, this patent is invalid to the extent that Amesbury argues that Caldwell's 97ez product infringes this patent because this argument requires a construction of the patent that would require two claim elements to correspond to a single part of Caldwell's product. Caldwell's products do not have both a "pocket ... adapted to mate with a rivet" **and** a "connecting device" as claimed, even assuming that the Caldwell device has any of those elements as those terms are defined by the patent claims and specification. To argue otherwise would render the patent ambiguous and invalid.

(3)    U.S. Patent No. 5,365,638: The file history indicates that the only potentially novel element of this patent is the raised spine that inhibits rotation of the mounting means. This element is disclosed, or is obvious in light of, the following prior art references, either singly or in combination: (1) Makarowksi, U.S. Patent No. 5,069,001, (2) Patterson, U.S Patent No. 2,088,866, (3) Osten, U.S. Patent No. 2,774,119, (4) Arlauskas, U.S. Patent No. 3,069,152, (5) Jones, U.S. Patent No. 3,105,576, (6) Anderson, U.S. Patent No. 3,711,995, (7) Anderson, U.S. Patent No. 3,795,076, (8) Anderson, 4,028,849, (9) Japanese Utility Model No. JIKKOHEI8-9334,

(9) Japanese Utility Model No. JIKKAIHEI4-119083, (10) Japanese Utility Model No. JIKKAIHEI41-112279, (11) additional prior art cited during the prosecution of the patent, (12) United Kingdom Patent No. 1287756, and (13) United Kingdom Patent No. 329996. Additional references may be discovered, and Caldwell reserves the right to supplement this response. Furthermore, to the extent that Amesbury claims a spine that does not inhibit rotation is covered by the claims, the patent is anticipated and/or obvious in light of Sterner, U.S. Patent No. 5,157,808, and is invalid for lack of enablement in that the specification only discloses a spine that inhibits rotational movement.

**INTERROGATORY NO. 10**:

State the full factual and legal basis for Caldwell's denial that its infringement of the patents-in-suit is willful, including, but not by way of limitation, identifying any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into, the United States, any of the Window Products identified in response to Interrogatory No. 1.

    **ANSWER**:    Caldwell objects to this interrogatory in that it is overly broad, calls for legal conclusions, and seeks material covered by the attorney-client privilege. Caldwell will not rely upon the opinion of counsel at trial. Caldwell declines to produce opinions of counsel regarding the validity and/or infringement of the patents-in-suit. Subject to and without waiving these objections, Caldwell states that it has a good faith basis for arguing that the patents-at-issue are invalid and/or not infringed, as outlined in its responses to Interrogatories Nos. 5 and 6 above, and as is evident from a comparison of Caldwell's products with the claims of the patents-in-suit. In addition, after Amesbury accused Caldwell of infringement, Caldwell withdrew its 97ez and 86xt products from the market, although Caldwell denies that those products infringed any of the patents-in-suit. Testimony

of Caldwell employees, including those disclosed in Caldwell's Rule 26 disclosures and Thomas E.

Batten, also are evidence of non-willfulness.


Dated: August _3/_, 2005                              HARRIS BEACH PLLC


                                    By: _____
                                         Paul J. Yesawich, III
                                         Neal L. Slifkin
                                         David J. Edwards
                                         Laura W. Smalley
                                         *Attorneys for Defendant*
                                         99 Garnsey Road
                                         Pittsford, New York 14534
                                         Telephone: 585-419-8800

                                              -and-

                                         BROWN & MICHAELS, P.C.
                                         Christopher A. Michaels
                                         Eugene S. Stephens
                                         400 M&T Bank Building
                                         118 North Tioga Street
                                         Ithaca, New York 14850
                                         Telephone: 607-256-2000

                                         *Attorneys for Defendant*


TO:    GOODWIN PROCTER LLP
       Douglas J. Kline, Esq.
       Safraz W. Ishmael
       *Attorneys for Plaintiffs*
       Exchange Place
       Boston, MA 02109-2881
       Telephone: 617-570-1000
P:\CALDWELL\SuppIntResponses..doc
8/30/2005 2:57:26 PM

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:

Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP.  That on the 31st day of August, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

Safraz W. Ishmael, Esq.
Douglas J. Kline, Esq.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881

by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for September 1, a.m. delivery.

Karen J. Jenness

Sworn to before me this
31st day of August 2005

Notary Public

HEATHER MCCURTY
Notary Public, State Of New York
Qualified In Monroe County
Commission Expires March 9, 2006

HARRIS BEACH ⁵⁵ᶜ
ATTORNEYS AT LAW

# EXHIBIT A

| Patent Claims 6,820,368 | Caldwell Series 97EZ | Caldwell Series 97i(H) |
|---|---|---|
| 1.    A    window    balance    system comprising: | Yes | Yes |
| a U-shaped channel comprising a plurality of openings; | Yes | Yes |
| a spring connected to a system of pulleys located within the U-shaped channel; | Yes | Yes |
| a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes | Yes |
| a balance shoe, wherein the balance shoe comprises: | Yes | Yes |
| a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel; | Yes | Yes |
| a locking member proximal to the enlarged first end; | Yes | Yes |
| a cam in communication with the locking member; and | Yes | Yes |
| a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel | No  -- the Caldwell balance does not have resilient tabs | No  -- the Caldwell balance does not have resilient tabs |

| | | |
|---|---|---|
| of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel. | | |
| 2. A window balance system comprising: | Yes | Yes |
| a U-shaped channel comprising a plurality of openings; | Yes | Yes |
| a spring connected to a system of pulleys located within the U-shaped channel; | Yes | Yes |
| a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes | Yes |
| a balance shoe, wherein the balance shoe comprises: | Yes | Yes |
| a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet; | No. The Caldwell balance does not have a pocket adapted to mate with a rivet. | Caldwell cannot state whether its 97I(h) product has this claim element until the court construes the term "pocket." |
| | Yes | Yes |

| | | |
|---|---|---|
| a locking member proximal to the enlarged first end;<br><br>a cam in communication with the locking member, and<br><br>a connecting device for attaching the balance shoe within the U-shaped channel of the window balance. | Yes<br><br>No -- the Caldwell balance does not have a connecting device as that term is/will be defined by the claims and specification. To the extent Amesbury claims that this product infringes, Amesbury's construction violates the "all elements" rule in that Amesbury is claiming that two elements of the claim correspond to a single part of Caldwell's product. | Yes<br><br>No -- the Caldwell balance does not have a connecting device as that term is/will be defined by the claims and specification. To the extent Amesbury claims that this product infringes, Amesbury's construction violates the "all elements" rule in that Amesbury is claiming that two elements of the claim correspond to a single part of Caldwell's product. |
| 3.   The window balance system of claim 2 wherein the connecting device comprises a rivet. | Noh | No |
| 4.   The window balance system of claim 2 wherein the connecting device comprises a screw. | No | No |
| 5.   The window balance system of claim 2 wherein the connecting device comprises a resilient tab. | No | No |
| 6.   The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; | No<br><br>No | No<br><br>No |

| | | |
|---|---|---|
| wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | | |
| 7. The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member. | No | No |
| 8. The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame, | No | No |
| wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | | |
| 9. The window balance system of claim 2 wherein the locking member comprises a plate, | No | No |
| wherein the plate is parallel to a back surface of the enlarged first end of the frame. | | |

| | | |
|---|---|---|
| 10. The window balance system of claim 9 wherein the cam is at least partially housed within the enlarged first end of the frame | No | No |
| wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | No | No |
| 11. The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar. | No | No |

P:\CALDWELL\Claim Chart 6820368.doc
8/30/2005 2:59:18 PM

| Patent Claims 5,365,638 | Caldwell Quicktilt |
|---|---|
| 1.    A mounting assembly comprising | Yes |
| a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | Yes |
| a sash frame support means slidable in said channel means, | Yes |
| a coiled ribbon spring having a first end engaged with said sash frame support means, | Yes |
| and a means for mounting said coiled ribbon spring, | Yes |
| the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, | Yes |
| said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, | Yes |
| said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited. | **No.    The spine does not inhibit rotational motion. Rotational motion is inhibited through an entirely different mechanism.** |
| 2.    The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means. | No |

| | |
|---|---|
| 3.    The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein,<br><br>a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means,<br><br>a surface of said body portion being concavely curved,<br><br>said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion. | No |
| 4.    The mounting assembly of claim 2 in which the mounting means has at least one inter-engagement means by which a plurality of such mounting means may be stacked in inter-engagement. | No |
| 5.    The mounting assembly of claim 4 in which the inter-engagement means comprises a tooth-like projection cooperable on said first mounting means with a corresponding complementary detente in a second mounting means. | No |
| 6.    The mounting assembly of claim 4 in which the inter-engagement means on said first mounting means is in an interference fit with an inter-engagement means on said second mounting means. | No |
| 7.    The mounting assembly of claim 4 in which the inter-engagement means is formed so as to provide a snap fit. | No |

| | |
|---|---|
| 8. A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | Yes |
| a sash frame support means slidable in said channel means, | Yes |
| a coiled ribbon spring having an outer end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, | Yes |
| the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, | Yes |
| said mounting means being secured in said channel means and | Yes |
| the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited. | **No. The projection means does not inhibit rotational motion. Rotational motion is inhibited through an entirely different mechanism.** |

| | Patent Claims 6,598,264 | Caldwell 86xt Product |
|---|---|---|
| 1. | A block and tackle window balance device comprising: | Yes |
| | a channel comprising a first end and a second end; | Yes |
| | a top guide connected to the first end of the channel; | Yes |
| | a bottom guide connected to the second end of the channel; | Yes |
| | a bottom guide roller rotatably mounted in the bottom guide; | **No - Bottom roller is attached to channel separately from bottom guide** |
| | a fixed pulley block unit connected to the channel; | Yes |
| | a translatable pulley block unit moveable within the channel; | Yes |
| | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes |
| | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes |
| 2. | The device of claim 1 wherein the bottom guide roller is located external to the channel. | No |
| 3. | The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash. | No |
| 4. | The device according to claim 1 wherein a portion of the bottom guide is external to the channel. | No |

1

| | | |
|---|---|---|
| 5. | The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash. | No |
| 6. | The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle. | No |
| 7. | The device according to claim 6 wherein the axle is located within the frame. | No |
| 8. | The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member. | No |
| 9. | The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle. | No |
| 10. | The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel. | No |
| 11. | The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide. | No |
| 12. | A window assembly comprising: | |
| | a window frame with two jambs with jamb pockets; | |
| | at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and | |

2

| | |
|---|---|
| at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising: | |
| channel comprising a first end and a second end; | Yes |
| a top guide connected to the first end of the channel; | Yes |
| a bottom guide connected to the second end of the channel; | Yes |
| a bottom guide roller rotatably mounted in the bottom guide; | **No - Bottom roller is attached to channel separately from bottom guide** |
| a fixed pulley block unit connected to the channel; | Yes |
| a translatable pulley block unit moveable within the channel; | Yes |
| a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes |
| a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes |
| 13. | A window balance device comprising: | |
| | a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes |
| | a bottom guide roller rotatably mounted in the bottom guide. | **No - Bottom roller is attached to channel separately from bottom guide** |

3

| 14. | The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto. | No |
| 15. | The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto. | No |
| 16. | The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | No |
| 17. | The device of claim 13 wherein the bottom guide further comprises a bottom guide axle for mounting the roller. | No |
| 18. | A window balance device comprising: | Yes |
|  | a channel comprising a first end and a second end; | Yes |
|  | a top guide connected to the first end of the channel; | Yes |
|  | a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes |
|  | a bottom guide roller rotatably mounted in the bottom guide. | No - **Bottom roller is attached to channel separately from bottom guide** |
| 19. | The device of claim 18 wherein the bottom guide roller is located external to the channel. | No |
| 20. | The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel. | No |
| 21. | The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | No |

4

| 22. | The device of claim 18 wherein the bottom guide further comprises a bottom guide axle for mounting the roller. | No |
| --- | --- | --- |
| | | |
| 23. | A window balance device comprising: | |
| | a bottom guide connected to an end of a window balance channel, the bottom guide slidable in a jamb pocket when installed in a window frame, the bottom guide including: | Yes |
| | a bottom guide axle mounted within the bottom guide; the bottom guide axle located outside the window balance channel; and | **No - Bottom roller is within channel** |
| | a bottom guide roller rotatably mounted on the bottom guide axle. | No |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

  v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OBJECTIONS AND RESPONSES TO
## CALDWELL'S FIRST SET OF INTERROGATORIES (NOS. 1 - 19)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") hereby respond and object to The Caldwell Manufacturing Company's ("Caldwell") First Set of Interrogatories ("the Interrogatories") as follows:

## GENERAL RESPONSES AND OBJECTIONS

The following General Objections are incorporated into each of the Amesbury's Responses to the Interrogatories as if set forth there in full, even if not repeated therein:

1.    Amesbury objects to the Interrogatories to the extent that they call for disclosure of information subject to the attorney-client privilege, work-product protection, and/or any other privilege or immunity. In the event that any response given by Amesbury contains privileged or protected information, its disclosure is inadvertent and shall not constitute a waiver of any privilege or protection with respect to the divulged information or any other information, and Amesbury expressly reserves its right to demand that Caldwell return any inadvertently produced information and all copies thereof.

2.    Amesbury objects to the Interrogatories (as well as the Definitions therein) to the extent that they call for information not required to be produced by the Federal Rules of Civil Procedure, or the Local Rules for the U.S. District Court for the District of Massachusetts.

3.    Amesbury objects to the Interrogatories to the extent that they seek information already in Caldwell's possession and/or readily accessible to Caldwell.

4.     Amesbury objects to the Interrogatories to the extent that they seek information that is equally available to Caldwell through other sources, on the grounds that such Interrogatories subject Amesbury to unreasonable and undue burden and expense.

5.     Amesbury objects to the Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive and designed solely to harass Amesbury.

6.     Amesbury objects to the Interrogatories to the extent that they seek information not reasonably calculated to lead to the discovery of admissible evidence.

7.     Amesbury objects to the Interrogatories to the extent that they seek information beyond the relevant time period.

8.     Amesbury objects to the definition of the term "Amesbury" to the extent that it seeks information from affiliates that are corporate entities separate and distinct from Amesbury and who are not parties to this action.

9.     Amesbury objects generally to the Interrogatories to the extent they seek information that is neither relevant to any claim or defense of any party in this case, including, without limitation, information relating to matters that are not raised in the Complaint or Caldwell's Answer and Counterclaim.

10.     Amesbury objects generally to the Interrogatories to the extent they seek information not in Amesbury's possession, custody or control.

11.     Amesbury objects generally to the Interrogatories to the extent they seek information about which Amesbury lacks information or knowledge.

12.     Amesbury objects generally to the Interrogatories to the extent they are vague, ambiguous, or contain incorrect factual assumptions.

13.     Amesbury objects generally to the Interrogatories to the extent that they seek legal conclusions and/or ultimate factual determinations.

14.     Amesbury objects generally to the Interrogatories to the extent that they seek to define terms and/or characterize the evidence in this matter. To the extent Amesbury adopts any terms used by Caldwell in the Interrogatories, such adoption specifically is limited solely to these responses.

15.     All objections as to relevance, authenticity or admissibility of any information or documents referred to herein are expressly reserved.

16.     Amesbury has responded to the Interrogatories as it interprets and understands them. If Caldwell subsequently asserts an interpretation of any Interrogatory that differs from the understanding of Amesbury, Amesbury reserves the right to supplement or amend its objections and/or responses. In addition, the responses set forth below are based upon

information now available to Amesbury after having made a diligent inquiry of Amesbury's employees and a diligent search of files in Amesbury's possession, custody, or control. Amesbury expressly reserves the right to complete its legal investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon documents and information provided regardless of whether such documents or information is newly discovered or currently in existence. In addition, Amesbury may, in the future, obtain or locate additional information responsive to the Interrogatories. Amesbury therefore reserves the right, at any time, to revise, amend, correct, supplement, modify, or clarify its response set forth below to the extent required by Fed. R. Civ. P. 26(e).

17.    Amesbury reserves the right to rely, at the time of trial or in other proceedings in this action, upon documents, responses, and evidence in addition to those provided in response to the Interrogatories.

18.    Amesbury's responses to the Interrogatories are not a concession that their subject matter is relevant to this action.

19.    The presence or absence of any General or Specific Objection to any Interrogatory does not mean that Amesbury does not object on any other grounds.

20.    These responses represent the results of Amesbury's diligent and reasonable investigation of the information requested. No admissions of any nature whatsoever are implied or should be inferred from these responses. The fact that a response to any interrogatory has been provided should not be taken as an admission or an acceptance of the existence of any fact set forth or assumed by that interrogatory.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify each individual Caldwell product, device, system, process, or service that Amesbury alleges infringes the Patents-In-Suit, and identify the specific claims of the Patents-In-Suit that are allegedly infringed by such product, the persons most knowledgeable and all documents concerning such allegations of infringement.

### RESPONSE:

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory because it is premature as discovery of the products, made, sold, offered for sale, imported, or distributed by Caldwell is far from complete. Amesbury further objects to this interrogatory as unduly burdensome. Additionally, Amesbury objects to this interrogatory to the extent that it is vague.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminary states that:

a) Caldwell's Quick-Tilt product infringes at least claims 1, 2, 3, and 8 of the '638 Patent;

b) Caldwell's Series 86xt product infringes at least claims 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, and 21 of the '264 Patent; and

c) Caldwell's Series 97ez product infringes at least claims 2, 3, 6, 7, 8 and 11 of the '368 Patent

The Amesbury persons most knowledgeable of the above-listed infringement are Richard Koopmann, Howard Babbitt, and Gary Newman. Furthermore, the documents concerning such infringement are in Caldwell's possession, including the Patents-In-Suit and documents illustrating and describing Caldwell's Quick-Tilt, Series 86xt, and Series 97ez products.

Amesbury's investigations are ongoing and Amesbury reserves the right to supplement or amend this response.

## INTERROGATORY NO. 2:

Separately for each Accused Caldwell Product and for each claim of the Patents-In-Suit allegedly infringed by such product, using a claim chart format, indicate the element(s) component(s), or step(s) of such Accused Caldwell Product that allegedly meet or satisfy each individual limitation of such claim and specify whether each such limitation is met literally or under the doctrine of equivalents.

## RESPONSE:

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory because it is premature as discovery of the products, made, sold, offered for sale, imported, or distributed by Caldwell is far from complete. Amesbury further objects to this interrogatory as unduly burdensome. Additionally, Amesbury objects to this interrogatory to the extent that it is vague.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that the Caldwell products listed in the response to Interrogatory No. 1 infringe the Patents-In-Suit literally. Should the court adopt a claim construction different from that on which Amesbury relies as establishing literal infringement, Amesbury asserts that those products infringe under the doctrine of equivalents as any such construction must encompass the embodiments disclosed by the patents, and the differences between those embodiments and the accused products are insubstantial. Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily demonstrates this infringement using the claim chart in Exhibit A and corresponding annotated Caldwell advertisement materials that depict certain features of Accused Caldwell Products, all attached hereto.

## INTERROGATORY NO. 3:

Separately for each Asserted Amesbury Claim, specify each claim term that should be

construed to have a meaning other than its ordinary dictionary meaning and state the proper construction of each such term.

**RESPONSE:**

Amesbury objects to this interrogatory as it prematurely seeks Amesbury's contentions in view of the court's order that claim construction charts be simultaneously exchanged by both parties on July 30, 2005.

**INTERROGATORY NO. 4:**

Separately for each Asserted Amesbury Claim, state the dates of conception and reduction to practice of the alleged invention that is the subject matter of that claim, describe in detail all facts concerning such conception and reduction to practice, and identify the persons most knowledgeable and all documents concerning such conception and reduction to practice.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks legal conclusions. Amesbury further objects to this interrogatory as premature, overly broad, unduly burdensome, and vague. Amesbury objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Furthermore, subject to these objections, Amesbury states that the date of conception and reduction to practice of all claims of the '638 Patent occurred at least as early as January 21, 1993. The date of conception and reduction to practice of all claims of the '368 Patent occurred at least as early as January 12, 2001. The date of conception and reduction to practice of all claims of the '264 Patent occurred at least as early as March 16, 2001.

The persons most knowledgeable of the conception and reduction to practice of the inventions of the '638 Patent are Harold K. Braid and Simon C. Braid. The persons most knowledgeable of the conception and reduction to practice of the inventions of the '368 Patent are Stuart J. Uken, Gary R. Newman, and Lawrence J. VerSteeg. The person most knowledgeable of the conception and reduction to practice of the inventions of the '264 Patent is Gary R. Newman.

**INTERROGATORY NO. 5:**

State each named inventor's contribution to and involvement with the invention claimed in the Patents-In-Suit, and identify all documents concerning each inventor's contribution to and involvement with such invention.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Subject to these objections Amesbury states the inventors of the '368 Patent were all involved with the inventions claimed in the '368 Patent and all worked together in their contribution towards these inventions. The sole inventor of the '264 Patent was involved fully and contributed fully to the inventions claimed in the '264 Patent.

**INTERROGATORY NO. 6:**

Identify each person other than a named inventor who contributed to or was involved with the conception or reduction to practice of the claimed invention in the Patents-In-Suit, state such person's contribution or involvement, and identify all documents concerning such contribution or involvement.

**RESPONSE:**

Amesbury objects to this interrogatory as overly broad, unduly burdensome, and vague. Amesbury further objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Furthermore, subject to these objections Amesbury states that Richard Koopmann was involved with the inventions as he approved the finances for the inventions claimed in the '264 Patent and the '368 Patent. Amesbury furthers states that Howard Babbit was involved with the

inventions as he approved the designs for the claimed inventions of the '264 Patent and the '368 Patent.

## INTERROGATORY NO. 7:

Identify all counterparts of the Patents-In-Suit; identify all prior art cited during prosecution of each counterpart thereof, indicating to which counterpart(s) each item of prior art relates, and identify all documents concerning such counterpart.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that counterparts to the '264 Patent include Canadian Patent Application No. 2,376,418, U.S. Patent No. 6,877,187, and U.S. Patent Application No. 11/029,074. Counterparts to the '368 Patent include Canadian Patent Application No. 2,367,733, U.S. Patent No. 6,679,000, U.S. Patent No. D467,490, and U.S. Patent Application Nos. 11/101,689, 60/261,501, and 10/862,950.

## INTERROGATORY NO. 8:

Identify all prior art of which Amesbury is aware concerning the claimed invention of the Patents-In-Suit (including counterparts) or all related patent applications, including without limitation, all public uses, offers for sale, or sales in the United States and all patents and publications, dated prior to or occurring prior to the latest filing date on which the Patents-In-Suit or such applications rely and identify all documents concerning such identified prior art.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in

Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 9:

Identify all searches directed to the subject matter claimed at any time in the Patents-In-Suit and counterparts thereof; and separately for each such search, identify who conducted the search, when it was conducted, the particular subject matter to which the search was directed, and all prior art located as a result of such search.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 10:

Separately for each Asserted Amesbury Claim, state all facts concerning, and identify the persons most knowledgeable concerning, and all documents concerning, any objective indicia of non-obviousness of the claimed invention.

## RESPONSE TO INTERROGATORY NO. 10:

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury also objects to this interrogatory as it seeks information that is neither relevant to any claim or defense of any party in this case. In particular, Caldwell has not alleged with particularity that any Asserted Amesbury Claim is obvious. Caldwell further failed to articulate with any specificity that any Asserted Amesbury Claim is obvious in response to Amesbury's Interrogatory No. 6.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Subject to these objections, Amesbury states that the products embodying the inventions of the Patents-In-Suit have been commercially successful. For example, in 2004 Amesbury sold approximately 5.3 million products that used the patented inventions of the '638 patent. In the same year Amesbury sold approximately 13.8 million products that used the patented inventions of the '368 patent. Also in 2004, Amesbury sold approximately 3.5 million products that used the patented inventions of the '264 patent.

Amesbury also states that other objective indicia of non-obviousness include a long felt need and unsuccessful attempts by others to find the solution described in the Patents-In-Suit; copying by others including Caldwell; and superior results.

Subject to these objections, Amesbury states that Richard Koopmann is the person most knowledgeable of these and other objective indicia of non-obviousness. Amesbury reserves the right to supplement this interrogatory as discovery develops.

**INTERROGATORY NO. 11:**

Identify all Patented Amesbury Products by name and model number, and for each identified product list all Asserted Amesbury Claim that covers such product.

**RESPONSE:**

Amesbury objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury objects to this interrogatory to the extent it seeks trade secret and/or other confidential information. Amesbury further objects to this interrogatory as its seeks information that is not relevant to any of the claims or defenses of either party.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

**INTERROGATORY NO. 12:**

Separately for each Patented Amesbury Product, identify each public use, sale, and offer for sale of such product before the filing date of the Patents-In-Suit, and identify the persons most knowledgeable and all documents concerning such public uses sales, and offers for sale.

**RESPONSE:**

Amesbury objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury objects to this interrogatory to the extent it seeks trade secret and/or other confidential information.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that it is aware of no such public use, sale, or offer for sale, of any Patented Amesbury Product before the effective filing date of its respective patent.

**INTERROGATORY NO. 13:**

Separately for each Accused Caldwell Product, state the total amount of damages allegedly sustained by Amesbury due to Caldwell's alleged infringement, Amesbury's theory of damages, and the method used to calculate damages including but not limited to whether the calculation is based on lost profits, reasonable royalty, or some other measure of damages, whether Amesbury alleges it is entitled to prejudgment interest on such damages and, if so, the interest rate and how that interest rate was determined and identify the persons most knowledgeable and all documents concerning such calculations.

**RESPONSE:**

Amesbury objects to this interrogatory as it is premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Amesbury preliminarily states that Amesbury is entitled to no less than a reasonable royalty for the use made by Caldwell of the inventions of the Patents-In-Suit, together with interest and costs, pursuant to 35 U.S.C. § 284. Furthermore, Amesbury is entitled to a tripling of damages due to Caldwell's willful infringement of Amesbury's asserted patents. Amesbury reserves the right to modify these damages calculations and theories or seek damages under different theories as appropriate in view of the information discovered in this case or in expert opinion.

**INTERROGATORY NO. 14:**

Separately for each product of Amesbury as to which Amesbury alleges that it suffered

damages due to lost sales, lost profits, or price erosion, state all facts concerning such damages, including but not limited to how the damages were calculated, identification of each Accused Caldwell Product alleged to have caused such damages, any alleged demand for the product of Amesbury in the market, the presence or absence of acceptable non-infringing substitute(s), and Amesbury's manufacturing and marketing capability to exploit the alleged demand, and identify the persons most knowledgeable and all documents concerning such facts.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent that it is duplicative of Interrogatory No. 13. Amesbury objects to this interrogatory as premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

**INTERROGATORY NO. 15:**

Separately for each product of Amesbury as to which Amesbury alleges that it suffered damages due to lost sales, lost profits, or price erosion, state for each month during the alleged damages period, the number of each such product sold; the number of each such product made; the gross revenues and net revenues on sales on each such product; the gross profits on each such product; the net income or net profit/net income before taxes on each such product; the marginal profit on each such product; the cost of goods sold on each such product; and the fixed and variable costs of each such product; and identify the three (3) persons most knowledgeable and documents sufficient to evidence such facts.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent that it is duplicative of Interrogatories No. 13 and 14. Amesbury also objects to this interrogatory as it is premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 16:

Separately for each Accused Caldwell Product as to which Amesbury alleges that it is entitled a reasonable royalty, state all facts concerning such reasonable royalty, including but not limited to how the royalty rate and royalty base were determined, and identify the persons most knowledgeable and all documents concerning such facts.

## RESPONSE:

Amesbury objects to this interrogatory as premature. Because a calculation of Amesbury's damages, including a calculation of reasonable royalties, depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information concerning licenses from or to Amesbury relating to building products until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 17:

Separately for each of the Patents-In-Suit (and/or counterparts thereof) and Patented Amesbury Product, identify all agreements, assignments, or licenses concerning same, and identify the persons most knowledgeable and all documents concerning each such agreement, assignment, or license.

## RESPONSE:

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks trade secret and/or other highly confidential information.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily identifies Richard Koopmann as the person most knowledgeable and the following responsive documents: an assignment of the rights to the invention from inventors of the '638 Patent to Omega Balance Co. Ltd., with subsequent changes of name to Omega International

Ltd. and Amesbury Springs Ltd.; an assignment of the rights to the invention from the inventors of the '264 Patent to Amesbury Group, Inc.; an assignment of the rights of the invention from the inventors of the '368 Patent to Amesbury Group, Inc.; a settlement agreement and consent judgment between Amesbury Group, Inc. and Pomeroy, Inc. d/b/a Unique Balance relating to U.S. Patent No. 6,679,000 and U.S. Patent No. D467,490.

## INTERROGATORY NO. 18:

State in detail each and every fact concerning Amesbury's allegation in its Complaint that Caldwell's alleged infringement of the Patents-In-Suit is or will be willful, and identify the persons most knowledgeable and all documents concerning such facts.

## RESPONSE:

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as premature, as to answer this interrogatory fully Amesbury requires further information from Caldwell, including a complete answer to Amesbury's Interrogatory No. 10

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that Caldwell, in its response to Amesbury's Interrogatory No. 10, did not identify any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into, the United States, any of the infringing Caldwell products, including the Quick-Tilt, the Series 86xt, and the Series 97ez products. Furthermore, Caldwell did not provide any rational basis for its contention that the Patents-In-Suit are invalid and/or not infringed.

## INTERROGATORY NO. 19:

Identify all persons consulted or who provided information concerning responses to these interrogatories.

## RESPONSE:

Amesbury objects to this interrogatory as overly broad and vague. Amesbury incorporates by reference each of its objections and responses to the foregoing interrogatories.

Subject to and without waiving the foregoing general and specific objections, Amesbury identifies the following persons as knowledgeable about the foregoing responses: Richard Koopmann, Gary Newman, and Travis Steen.

Respectfully submitted,

Douglas J. Kline (BBO# 556680)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: July 5, 2005

**EXHIBIT A**

**INFRINGEMENT CLAIM CHARTS**

| Claim Element | Amesbury's U.S. Patent No. 5,365,638 | Present in Caldwell's Quick-Tilt Product? |
|---|---|---|
| 638/1 | A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | This element is present when the Quick-Tilt product is incorporated in a window sash frame. |
| 638/1.A | a sash frame support means slidable in said channel means, | Yes |
| 638/1.B | a coiled ribbon spring having a first end engaged with said sash frame support means, and | Yes |
| 638/1.C | a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, | Yes |
| 638/1.D | said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited. | Yes, the spine of the Quick-Tilt product is positioned between flanges when installed. |
| 638/2 | The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means. | Yes. |
| 638/3 | The mounting assembly of claim 2 wherein said mounting means has | |
| 638/3.A | a body portion having an aperture therein, | Yes. |
| 638/3.B | a fixing screw positioned in said aperture by which the mounting means is secured relative to said | This element is present when the Quick-Tilt product is |

| Claim Element | Amesbury's U.S. Patent No. 5,365,638 | Present in Caldwell's Quick-Tilt Product? |
|---|---|---|
| | channel means, | incorporated in a window sash frame. |
| 638/3.C | a surface of said body portion being concavely curved, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion. | Yes. |
| 638/8.A | A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | This element is present when the Quick-Tilt product is incorporated in a window sash frame. |
| 638/8.B | a sash frame support means slidable in said channel means, | Yes |
| 638/8.C | a coiled ribbon spring having an outer end engaged with said sash frame support means, and | Yes |
| 638/8.D | a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and | Yes. |
| 638/8.E | the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited. | Yes. The spine is the projection means. |

# Quick-Tilt*nc
### CONSTANT FORCE BALANCE



**Build on it.**

## *"New Construction" friendly Quick-Tilt®*

If new construction debris was holding you back from considering a Constant Force balance, you now have a dependable solution with Caldwell's **Quick-Tilt*nc** balance.



Caldwell's pre-assembled **Quick-Tilt** Constant Force balance just got better with its evolution to the **Quick-Tilt*nc** – or "new construction" friendly version.   Until now most Constant Force balances weren't ready for the abuse caused by construction site dust and debris.  With the launch of **Quick-Tilt*nc**, air-borne contaminants are kept from lodging inside the moving coil assembly.   The integrated coil nest and cover is specifically engineered to keep the coils dust-free and operating in the smooth, quiet manner for which **Quick-Tilt** balances are renowned.

**Call us at 585-352-3790.  Let's talk about <u>your</u> window.**

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| 264/1 | A block and tackle window balance device comprising: | |
| 264/1.A | a channel comprising a first end and a second end; | Yes. |
| 264/1.B | a top guide connected to the first end of the channel; | Yes. |
| 264/1.C | a bottom guide connected to the second end of the channel; | Yes. |
| 264/1.D | a bottom guide roller rotatably mounted in the bottom guide; | Yes. |
| 264/1.E | a fixed pulley block unit connected to the channel; | Yes. |
| 264/1.F | a translatable pulley block unit moveable within the channel; | Yes. |
| 264/1.G | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes. |
| 264/1.H | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes. |
| 264/2 | The device of claim 1 wherein the bottom guide roller is located external to the channel. | Yes. |
| 264/3 | The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash. | Yes. |
| 264/4 | The device according to claim 1 wherein a portion | Yes. |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| | of the bottom guide is external to the channel. | |
| | | |
| 264/5 | The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash. | Yes. |
| | | |
| 264/6 | The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle. | Yes. |
| | | |
| 264/7 | The device according to claim 6 wherein the axle is located within the frame. | Yes. |
| | | |
| 264/9 | The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle. | Yes. |
| | | |
| 264/10 | The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel. | Yes. |
| | | |
| 264/11 | The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide. | Yes. |
| | | |
| 264/12 | A window assembly comprising: | |
| 264/12.A | a window frame with two jambs with jamb pockets; | Yes. |
| 264/12.B | at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and | Yes. |
| 264/12.C | at least one block and tackle window balance device attached to the at least one of the upper | Yes. |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| | window sash and the lower window sash, the device comprising: | |
| 264/12.D | channel comprising a first end and a second end; | Yes. |
| 264/12.E | a top guide connected to the first end of the channel; | Yes. |
| 264/12.F | a bottom guide connected to the second end of the channel; | Yes. |
| 264/12.G | a bottom guide roller rotatably mounted in the bottom guide; | Yes. |
| 264/12.H | a fixed pulley block unit connected to the channel; | Yes. |
| 264/12.I | a translatable pulley block unit moveable within the channel; | Yes. |
| 264/12.J | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes. |
| 264/12.K | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes. |
| 264/13 | A window balance device comprising: | |
| 264/13.A | a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes. |
| 264/13.B | a bottom guide roller rotatably mounted in the bottom guide. | Yes. |
| 264/14 | The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto. | Yes. |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| 264/15 | The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto. | Yes. |
| | | |
| 264/16 | The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | Yes. |
| | | |
| 264/18 | A window balance device comprising: | |
| 264/18.A | a channel comprising a first end and a second end; | Yes. |
| 264/18.B | a top guide connected to the first end of the channel; | Yes. |
| 264/18.C | a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes. |
| 264/18.D | a bottom guide roller rotatably mounted in the bottom guide. | Yes. |
| | | |
| 264/19 | The device of claim 18 wherein the bottom guide roller is located external to the channel. | Yes. |
| | | |
| 264/20 | The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel. | Yes. |
| | | |
| 264/21 | The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | Yes. |



CALDWELL

Series 86xl
BLOCK & TACKLE SYSTEM

Extended travel
for sideload applications

20.1



# BLOCK & TACKLE SYSTEM

The Caldwell Series 36x is a result of our dedication to meeting this industry's demand for engineering and manufacturing for specific application in both residential and commercial windows. Using the AAMA Series 36x is designed to allow for quick and easy replacement of the sash. Because the sash side contact area has been lengthened, creating an option to increase the sash opening, the Series 36x is engineered to allow for an additional sash opening. Often this can reduce inventory by providing all-over head load channel lengths.



**GALVANIZED STEEL CHANNEL**
Provides maximum strength, corrosion resistance and durability.

**RE-ENGINEERED BOTTOM GUIDE**
Specially designed to allow for application advantages in PVC welded sash. The sash side contact area has been lengthened, creating an option to increase sash opening.

**HEMMED EDGES**
For greater safety when handling.

**SPRINGS BY CALDWELL**
We've made our own springs for over 100 years, continually improving our manufacturing process to deliver high quality and consistent performance.

**MUSIC WIRE**
This high-quality material is more fatigue-resistant and has a greater consistency of performance than the hard-drawn and oil-tempered steel commonly used by other balance manufacturers.

**STAMPED METAL**
Our parts are made of stamped metal for maximum durability.

**GUIDE BLOCK**
Designed to dampen sound during operation and prevent twisting of the tackle.

**INDEPENDENTLY ROTATING PULLEY WHEELS**
Selected specifically for their lubricity, low frictional characteristics and resistance to developing flat spots, allowing for remarkably smooth and consistent operation.

**SELF-ALIGNING STAINLESS STEEL HOOK**
The balance mounting hook is positively parked in a fixed position when retracted. Installation into the window is easier than ever. Pull-off strength of the corrosion-resistant crimped terminal exceeds maximum load by more than 2 times. The low profile of the hook minimizes clearance issues, and only requires a single jamb punch.

20·2

# Series 86xt TECHNICAL SPECIFICATIONS

For more complete specifications and design assistance, please contact your Caldwell sales representative.

| CHANNEL LENGTH (INCHES) | SERIES 86xt SASH WEIGHTS SUPPORTED (LBS) | SERIES 86 txp SASH WEIGHTS SUPPORTED (LBS) |
|---|---|---|
| | 3-12 | |
| | 4-18 | |
| | 3-22 | |
| 17-18 | 5-26 | |
| 20-24 | 5-30 | |
| | 6-36 | |
| | 8-40 | |
| | 9-42 | |



Balance Travel

Balance Number + 1" Equals Channel Length

2" Cord Over-Travel Allowed
- for increased sash opening (egress)
- for potential inventory reduction

0.70" Hook Fully Retracted



# ACCESSORIES

Other custom accessories also available.











**TOP GUIDES**

**BOTTOM GUIDES**

**SASH CAMS**

**TAKE-OUT CLIP**





20-3

| Claim Element | Amesbury's U.S. Patent No. 6,820,368 | Present in Caldwell's Series 97ez Product? |
|---|---|---|
| 368/2 | A window balance system comprising: | |
| 368/2.A | a U-shaped channel comprising a plurality of openings; | Yes. |
| 368/2.B | a spring connected to a system of pulleys located within the U-shaped channel; | Yes. |
| 368/2.C | a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes. |
| 368/2.D | a balance shoe, wherein the balance shoe comprises: | |
| 368/2.E | a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet; | Yes. |
| 368/2.F | a locking member proximal to the enlarged first end; | Yes. The locking member is the outer limit of the enlarged end. |
| 368/2.G | a cam in communication with the locking member, and | Yes. |
| 368/2.H | a connecting device for attaching the balance shoe within the U-shaped channel of the window balance. | Yes. |
| | | |
| 368/3 | The window balance system of claim 2 wherein the connecting device comprises a rivet. | Yes. |
| | | |
| 368/6 | The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | Yes. |

| 368/7 | The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member. | Yes. |
|---|---|---|
| 368/8 | The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | Yes. |
| 368/11 | The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar. | Yes. |



## Series 97ez
## BLOCK & TACKLE SYSTEM

The Series 97ez improves on the inverted balance design that Caldwell first invented in 1996. Through an innovative, elongated carrier design, the sash drops more easily into place. This provides for faster installation, thereby reducing manufacturing costs. Designed for tilt applications for residential and commercial windows, the Series 97ez is rated Class 2 on the American Architectural Manufacturers Association (AAMA) Verified Components List.



**ELONGATED CARRIER DESIGN**
Made of glass-filled nylon, this innovative, attached carrier design allows the pivot bar to drop more easily into the cam.

**GALVANIZED STEEL CHANNEL**
Provides maximum strength, corrosion resistance, and durability.

**SPRINGS BY CALDWELL**
We've made our own springs for over 100 years, continually improving our manufacturing process to deliver high quality and consistent performance.

**GUIDE BLOCK**
Designed to dampen sound during operation and prevent twisting of the tackle.

**ROUNDED CORNERS**
For handling safety, our steel channel has gently rounded corners.

**MUSIC WIRE**
This high quality material is more fatigue-resistant and has greater consistency of performance than the hard-drawn and oil-tempered steel commonly used by other balance manufacturers.

**STAMPED METAL**
Our parts are made of stamped metal for maximum durability.

**INDEPENDENTLY ROTATING PULLEY WHEELS**
Selected specifically for their lubricity, low frictional characteristics and resistance to developing flat spots, allowing for remarkably smooth and consistent operation.

**STAINLESS STEEL TERMINALS**
Corrosion-resistant screw-mount or hook-mount options are crimped onto the cord ends. Pull-off strength exceeds maximum load by more than 2 times.

22.2

# Series 97ez TECHNICAL SPECIFICATIONS

For more complete specifications and design assistance, please contact your Caldwell sales representative.

| CHANNEL LENGTH (inches) | SASH WEIGHTS SUPPORTED (lbs.) |
|---|---|
| 7-9 | 2-9 |
| 9 | 2-10 |
| 10 | 2-12 |
| 11-12 | 3-18 |
| 13 | 3-19 |
| 14 | 3-22 |
| 15 | 3-23 |
| 16 | 3-24 |
| 17-18 | 4-25 |
| 19 | 5-26 |
| 20-22 | 5-28 |
| 23 | 6-30 |
| 24-26 | 6-34 |
| 27 | 7-34 |
| 28 | 7-36 |
| 29-31 | 8-38 |
| 32 | 8-39 |
| 33-34 | 9-40 |
| 35 | 10-42 |
| 36-44 | 11-42 |

*Channel length = balance number.

## Pivot Shoe ACCESSORIES

Side-locking pivot shoes accommodate a range of pocket dimensions.



EASY-IN STYLE

| Offset (in) | Straight (in) |
|---|---|
| .552 x .980 | .562 x 1.000 |
| .552 x 1.237 | .562 x 1.292 |

## INSTALLATION

**Slide** the Series 97ez Block & Tackle balance into the frame pocket.

**Insert** a mounting screw through the terminal or a mounting hook into the jamb opening to fasten securely to the jamb.

**Rotate** cam to lock shoe in place. Shoes should be offset slightly to ease sash installation.

**Install** the sash by dropping the bottom corner pivot bar into the shoe opening. Make sure pivot bar is properly seated into the metal cam.

**Tilt** sash upward into the normal operating position. Ensure tilt latches are engaged.

**The Series 97ez** is now installed. Your window is operated by the industry's finest Block & Tackle balance.



SHOWN:
**SCREW MOUNT,
SHORT CARRIER**

SHOWN:
**HOOK MOUNT,
LONG CARRIER**

22-3

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, certify that I caused the foregoing AMESBURY'S OBJECTIONS AND RESPONSES TO CALDWELL'S FIRST SET OF INTERROGATORIES (NOS. 1 - 19) to be served on July 5, 2005 on the following via First Class Mail.

David J. Edwards
HARRIS BEACH LLP
99 Garnsey Road
Pittsford, NY 14534
(585)-419-8800

Attorney for Defendant

THE CALDWELL MANUFACTURING
COMPANY

Date: July 5, 2005

Safraz W. Ishmael

LIBA/1562443.2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

  v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OBJECTIONS AND RESPONSES
## TO CALDWELL'S FIRST SET OF DOCUMENT REQUESTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury"), by their undersigned attorneys, respond and object to defendant The Caldwell Manufacturing Company ("Caldwell") First Set of Document Requests to Plaintiffs Amesbury Group, Inc., and Amesbury Springs Ltd. ("First Set of Document Requests" or "Document Requests") as follows:

## GENERAL RESPONSES AND OBJECTIONS

1.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information subject to the attorney-client privilege, work product protection, or otherwise not subject to discovery under the Federal Rules of Civil Procedure.

2.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information that is neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence, including, without limitation, information relating to matters that are not raised in the Complaint or Answer and Counterclaim.

3.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information not in Amesbury's possession, custody or control.

4.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information that is already in Caldwell's possession and/or is readily accessible to Caldwell.

5.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information about which Amesbury lacks information or knowledge.

6.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek information that Amesbury is not required to provide under Fed. R. Civ. P. 26 or 34.

7.    Amesbury objects generally to the First Set of Document Requests to the extent that they are vague, ambiguous, or contain incorrect factual assumptions.

8.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek legal conclusions and/or ultimate factual determinations.

9.    Amesbury objects generally to the First Set of Document Requests to the extent that they seek to define terms and/or characterize the evidence in this matter.  To the extent Amesbury adopts any terms used by Caldwell in the First Set of Document Requests, such adoption specifically is limited solely to these responses.

10.    Amesbury objects generally to the First Set of Document Requests to the extent that they are not limited to a specific, relevant, and discoverable time period, and therefore are overly broad, oppressive and unduly burdensome.

11.    Amesbury objects to the definition of the term "Amesbury" to the extent that it seeks information from affiliates that are corporate entities separate and distinct from Amesbury, and who are not parties to this action.

12.    All objections as to relevance, authenticity or admissibility of any information or documents referred to herein are expressly reserved.

13.    Amesbury has responded to the First Set of Document Requests as it interprets and understands them.  If Caldwell subsequently asserts an interpretation of any Document Request that differs from the understanding of Amesbury, Amesbury reserves the right to supplement or amend its objections and/or production.  In addition, Amesbury is producing documents responsive to these Document Requests after having made a diligent inquiry of Amesbury's employees and a diligent search of files in Amesbury's possession, custody, or control.  Amesbury expressly reserves the right to complete its legal investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon documents and information provided regardless of whether such information is newly discovered or currently in existence.  In addition, Amesbury may, in the future, obtain or locate additional documents responsive to the Document Requests.  Amesbury therefore reserves the right, at any time, to supplement its production to the extent required by Federal Rule of Civil Procedure 26(e).

14.    Amesbury reserves the right to rely, at the time of trial or in other proceedings in this action, upon documents, responses, and evidence in addition to those provided in response to the Document Requests.

15.     Amesbury reserves the right to redact from otherwise responsive and non-privileged documents portions thereof that contain information that is (i) irrelevant to the claim or defense of any party of this litigation and not reasonably calculated to lead to the discovery of admissible evidence; (ii) non-responsive; or (iii) privileged or otherwise exempt from discovery.

16.     A response from Amesbury that documents have been or will be produced means that responsive, non-privileged, non-objectionable documents have been or will be produced if found. Neither a response nor an objection can be construed to mean that any such documents exist, but only that Amesbury will conduct a reasonable search for, and will make available for inspection and copying, any relevant or responsive non-privileged documents that exist and that are in Amesbury's possession, custody, or control.

17.     Amesbury's responses are based upon, and therefore limited by, records and information still in existence, presently recollected, and/or thus far discovered in the course of preparing these responses. Consequently, Amesbury reserves the right to make any changes in these responses if it appears that any inadvertent errors or omissions have been made or additional or more accurate information becomes available.

18.     Amesbury has taken great care not to produce documents protected by one or more of the privileges or exemptions recognized by federal or applicable state law. To the extent any such protected document is produced, the production will have been inadvertent and is not to be deemed to be a waiver of any privilege or exemption from production.

19.     The presence or absence of any General or Specific Objection to any Document Request does not mean that Amesbury does not object on any other grounds.

20.     Amesbury objects generally to the Document Requests to the extent that the Document Requests seek documents or material containing trade secrets or proprietary and confidential information belonging to Amesbury ("Confidential Information") or any third-party. Amesbury will produce Confidential Information only subject to an appropriate protective order entered by the Court.

21.     Amesbury incorporates by reference each of the preceding General Objections into each of the following responses as if specifically set forth therein.

## SPECIFIC RESPONSES AND OBJECTIONS

**REQUEST NO. 1:**
All documents concerning Amesbury's allegations that the Accused Caldwell Products infringe any of the three Patents-In-Suit.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses

3

and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 2:**
    All documents which support or form the basis for the allegations of infringement in paragraphs 10, 19 and 29 of Amesbury's Complaint in this action.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 3:**
    All documents and things concerning any Accused Caldwell Product.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests and because it is unbounded in time. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 4:**
    All documents and things concerning any evaluation, analysis, test or other compilation of data used to determine whether any Accused Caldwell Product falls within the scope of any claim of the three Patents-In-Suit.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests.

**REQUEST NO. 5:**
    All documents concerning the decision to bring the present action against Caldwell.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury

4

also objects to this Request to the extent that it is duplicative of other Document Requests. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 6:**
All documents concerning Amesbury's first awareness of each of the Accused Caldwell Products.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 7:**
All documents concerning Amesbury's first awareness that each of the Accused Caldwell Products infringe or allegedly infringe one or more of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 8:**
All A.G.I. or A.S.L board of directors meeting minutes concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury preliminarily states that it is aware of no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 9:**
All documents and things concerning any communication with A.G.I.'s or A.S.L.'s board of directors concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request to the extent that it is duplicative of other Document Requests, including Request No. 8. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury preliminarily states that it is aware of no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 10:**
    All documents distributed in connection with any meeting of shareholders, venture capitalists, or other corporate partners of Amesbury concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury preliminarily states that it is aware of no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 11:**
    All documents concerning the basis for the allegation in paragraphs 12, 22 and 32 of Amesbury's Complaint that Caldwell's infringement is willful.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control

**REQUEST NO. 12:**
    All documents and things concerning the conception of the alleged inventions of each of the Patents-In-Suit.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

6

**REQUEST NO. 13:**
All documents and things concerning reduction to practice of the alleged inventions of each of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 14:**
All documents and things concerning diligence from conception to reduction to practice of the alleged inventions of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 15:**
All document concerning each named inventor's contribution to and involvement with the claimed inventions of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 16:**
All documents concerning any contribution to or involvement with the conception or reduction to practice of the subject matter of each claim of the Patents-In-Suit by anyone other than a named inventor(s) of each patent.

**RESPONSE:**

7

Amesbury objects to this Request on the grounds that it is duplicative, overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

### REQUEST NO. 17:

All documents concerning communications with any person who worked with a named inventor on the subject matter of each claim of the Patents-In-Suit.

### RESPONSE:

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

### REQUEST NO. 18:

All documents and things concerning research, design, development or testing of any of the alleged inventions of the Patents-In-Suit.

### RESPONSE:

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

### REQUEST NO. 19:

Organizational charts sufficient to identify, both at the times of the alleged inventions of the Patents-In-Suit and currently, (i) all of the alleged inventors of the Patents-In-Suit, (ii) all of their direct supervisors, (iii) all employees reporting to either such inventors or such supervisors, and (iv) all employees to whom such inventors or such supervisors report either directly or indirectly.

### RESPONSE:

Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the

production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 20:**
The curriculum vitae or resume for each of the alleged inventors of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 21:**
All documents concerning any financial compensation or other consideration received by the inventors of the Patents-In-Suit in connection with this lawsuit.

**RESPONSE:**
Amesbury objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 22:**
All documents and things concerning the preparation, filing or prosecution of the patent applications for the Patents-In-Suit and counterparts thereof, including but not limited to: (i) the prosecution histories of said applications; (ii) all documents and things concerning prior art considered in connection with the preparation, filing, or prosecution of said applications; (iii) all documents and things concerning any communication between any of the alleged inventors and their patent attorneys or agents concerning said applications; (iv) all documents and things concerning any information used or supplied by the alleged inventors in connection with said applications; and (v) all documents concerning any actual or proposed opposition, re-examination or reissue proceeding with respect to said applications.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection.  Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 23:**
All documents concerning any paper, article or other publication concerning the subject matter of any of the Patents-In-Suit, including but not limited to any communication concerning the work reflected in any such document.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, unbounded in time, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 24:**
All documents and things concerning any seminar, speech, presentation, lecture or talk concerning the subject matter of the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, unbounded in time, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 25:**
All documents concerning searches directed to subject matter claimed at any time in the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 26:**
All documents and things concerning prior art located as a result of any search directed to the subject matter claimed at any time in the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce nonprivileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 27:**

All documents and things concerning any actual or potential prior art with respect to the claimed subject matter of any of the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also specifically objects to this Request as the term "actual or potential prior art" is vague. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 28:**

All documents and things concerning any search, investigation, analysis, review, opinion or study concerning the scope, infringement, novelty, patentability, validity or enforceability of any claim of the Patents-In-Suit and/or counterparts thereof, including but not limited to, all documents comprising prior art located, noted, referred to, or discussed in any such search, investigation, analysis, review, opinion or study.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also specifically objects to this Request as the term "prior art" is vague. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 29:**

All documents and things concerning the scope, novelty, patentability, validity or enforceability of any claim of the Patents-In-Suit and counterparts thereof, including but not limited to, documents produced or provided to Amesbury by any person and asserted or suggested by such person to be relevant to the scope, novelty, patentability, validity or enforceability of the claimed inventions of the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury also objects to this Request as it is duplicative of other Document Requests. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 30:**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to January 21, 1993, concerning any

devices or methods that can be used in a window sash frame to retain a coiled ribbon spring in position within a window sash frame during uncoiling of the ribbon spring.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 31:**
    All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to March 16, 2001, concerning any devices or methods that can be used in a window sash block and tackle balance to increase the range of travel of said window within a window frame.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 32:**
    All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to May 23, 2003, concerning any devices or methods that can be used in a pivotable window assembly to (1) facilitate installation, assembly or repair of a balance system with a window jam; or (2) provides for greater control of the vertical positioning of the window sash.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 33:**
    All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to January 21, 1993, concerning any devices or methods that retain a coiled spring in position within a window sash frame during uncoiling of said spring.

**RESPONSE:**
    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client

privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 34:**
       All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to March 16, 2001, concerning any devices or methods that increase the range of travel of a window sash balanced in a window frame with a block and tackle window balance.

**RESPONSE:**
       Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 35:**
       All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to May 23, 2003, concerning any devices or methods that use a balance shoe shaped to mate with a rivet attached to a window sash and adapted to be received by a U-shaped channel in the window jam of a pivotable window.

**RESPONSE:**
       Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 36:**
       All documents and things concerning the preparation or prosecution of United States Patent Application Nos. 08/007,628, 09/180,868 and 10/446,279, including but not limited to prior art searches and the documents and things referred to therein.

**RESPONSE:**
       Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 37:**
All documents and things concerning the structure, function, capabilities, operation, design, or development of any device or method that falls within the scope of the alleged inventions described or claimed in United States Patent Application Nos. 08/007,628, 09/810,868 and/or 10/446,279 prior to the date(s) on which said applications were granted.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 38:**
All documents served or filed in any court, tribunal, or administrative proceeding, whether foreign or domestic, concerning the Patents-In-Suit and counterparts thereof, including but not limited to, any briefs, transcripts, motions, orders, discovery responses, expert reports, affidavits, or declarations.

**RESPONSE:**
Amesbury specifically objects to this Request on the grounds that it is unduly burdensome in that, for example, it seeks court-filed documents that are readily accessible to Caldwell. Amesbury further objects to this request to the extent that it seeks documents that are not relevant to the claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 39:**
All documents and things concerning any litigation, arbitration, or mediation, whether foreign or domestic, concerning the Patented Amesbury Products, including without limitation, documents produced in response to discovery in such litigation, arbitration, or mediation.

**RESPONSE:**
Amesbury specifically objects to this Request on the grounds that it is unduly burdensome in that, for example, it seeks court-filed documents that are readily accessible to Caldwell. Amesbury further objects to this Request to the extent that it seeks documents that are not relevant to the claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Amesbury further objects to this Request to the extent it is duplicative Request No. 38.

**REQUEST NO. 40:**
All documents and things concerning any procedure for determining whether anyone has infringed, or might infringe, the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 41:**
All documents and things concerning any comparison of the design, structure, function or operation of any product, device, process, or system against the specifications or any claims of the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request at is unlikely to lead to the discovery of admissible evidence.

**REQUEST NO. 42:**
All documents concerning any allegation of infringement of the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 43:**
All documents and things concerning infringement of any claim of the Patents-In-Suit and/or counterparts thereof, including but not limited to any search, investigation, analysis, review, opinion, or study concerning infringement of any such claim.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, duplicative of other document requests, and calls for the production of documents subject to the attorney-client privilege and/or work product protection.

**REQUEST NO. 44:**
All documents concerning any assignment of, or offer to assign, any right, title, or interest in the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 45:**
All documents concerning any license, or offer to license, any right or interest in the Patents-In-Suit and/or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 46:**
All documents and things concerning Amesbury's patent licensing policies.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 47:**
All documents concerning any Amesbury policy, strategy, plan, or practice, whether formal or informal, regarding patents, including but not limited to filing patent applications, acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, or marking products with patent numbers.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 48:**

All documents concerning agreements (other than assignments or licenses) concerning the Patents-In-Suit and/or counterparts thereof, including but not limited to, development agreements, funding agreements, covenants not to sue, agreements not to assert, and agreements concerning immunity from suit.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 49:**

All documents concerning the construction or interpretation of each of the terms in each of the Asserted Amesbury Claims, including but not limited to, documents concerning the usage of such terms by Amesbury or by the alleged inventors of the Patents-In-Suit.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request to the extent that it is premature in view of the Court's order that the parties exchange claim construction charts on July 30, 2005.

**REQUEST NO. 50:**

All documents concerning the best mode of practicing the claimed invention of each of the Asserted Amesbury Claims at the time of filing the application on which the claim is based.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 51:**

All documents concerning any commercial success of the claimed invention of any Asserted Amesbury Claim.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 52:**
All documents concerning any long felt but unmet need for the claimed invention of any Asserted Amesbury Claim.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 53:**
All documents concerning any unexpected results of the claimed invention of any Asserted Amesbury Claim.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 54:**
All documents concerning any failure of others to develop the claimed invention of any Asserted Amesbury Claim.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 55:**
All documents not produced in response to the previous 4 Requests concerning any objective indicia of non-obviousness of the claimed invention of any Asserted Amesbury Claim.

**RESPONSE:**
      Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 56:**
      Documents sufficient to identify every Patented Amesbury Product.

**RESPONSE:**
      Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 57:**
      For each Patented Amesbury Product, a specimen of such product.

**RESPONSE:**
      Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 58:**
      For each Patented Amesbury Product, a specimen of all prototypes and models.

**RESPONSE:**
      Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set

19

forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 59:**
 All documents and things concerning research, design, development or testing of each of the Patented Amesbury Products.

**RESPONSE:**
 Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 60:**
 All documents concerning the structure, function, operation or capabilities of each of the Patented Amesbury Products.

**RESPONSE:**
 Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 61:**
 All documents concerning the first public disclosure, first public use, first offer for sale, first sale and first manufacture of each of the Patented Amesbury Products.

**RESPONSE:**
 Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 62:**
All documents and things concerning the first communication of the subject matter of each claim of the Patents-In-Suit to any person.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 63:**
All documents concerning each public disclosure, public use, offer for sale, sale and manufacture of each of the Patented Amesbury Products before the relevant filing date for each patent application which resulted in the issuance of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is duplicative of other document requests, overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury preliminarily states that it is aware of no documents responsive to this Request, within its possession, custody, or control.

**REQUEST NO. 64:**
All documents and things concerning each communication of the subject matter of each claim of the Patents-In-Suit to any person prior to the relevant filing date of the patent applications which resulted in the issuance of the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 65:**
Organizational charts sufficient to identify (i) the names and titles of all supervisory or managerial employees involved in the research, development, testing, or marketing of any Patented Amesbury Product; and (ii) all supervisors, whether direct or indirect, of any such employee.

21

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 66:**
All documents concerning sales training materials for any Patented Amesbury Product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 67:**
All documents concerning any selling points or techniques proposed or used for any Patented Amesbury Product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 68:**
All documents concerning publications related to, or marketing materials for, any Patented Amesbury Product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 69:**
All licenses granted by another to Amesbury of any right, title, privilege, or interest concerning any patent, including but not limited to exhibits, amendments, attachments, schedules, or appendices thereto.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 70:**

All documents concerning marking of any Patented Amesbury Product with the number of one or more of the Patents-In-Suit.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 71:**

For each Patented Amesbury Product, documents sufficient to show all markings with the number of the Patents-In-Suit.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 72:**

All documents concerning any damages Amesbury alleges it sustained due to patent infringement by Caldwell, as stated in the Prayer for Relief of Amesbury's Complaint.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 73:**
All documents concerning an established royalty for the Patents-In-Suit or counterparts thereof.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 74:**
For each Patented Amesbury Product, all documents concerning the number of each such product sold.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 75:**
For each Patented Amesbury Product, all documents concerning the number of each such product made.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 76:**
For each Patented Amesbury Product, electronic data sufficient to completely reconstruct all purchase orders and invoices concerning any such product, including the final amounts of such purchase orders and invoices, together with documents sufficient explain in detail the structure and format of such data.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 77:**
For each Patented Amesbury Product, all summaries and period reports concerning purchase orders and invoices concerning any such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 78:**
For each Patented Amesbury Product, all documents concerning the gross revenues or net revenues on sales on each such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 79:**
For each Patented Amesbury Product, all documents concerning the gross profit, net income, net profit/net income before taxes on each such product, or the marginal profit on each such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 80:**
For each Patented Amesbury Product, all documents concerning the cost of goods, cost of sales, cost of development, fixed costs, or variable costs on each such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 81:**
For each Patented Amesbury Product, all documents concerning the cost of developing the capacity to make, sell, or import each such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 82:**
For each Patented Amesbury Product, documents sufficient to show Amesbury's average selling price in the United States for such Product, including but not limited to all documents concerning how such average selling price is calculated.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 83:**
For each Patented Amesbury Product, all documents concerning pricing of such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 84:**
For each Patented Amesbury Product, all documents concerning any pricing policy applicable to such product.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 85:**

For each Patented Amesbury Product or Accused Caldwell Product, all documents concerning market share.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 86:**

For any product (other than a Patented Amesbury Product or Accused Caldwell Product) that Amesbury believes incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-In-Suit, all documents concerning market share.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 87:**

All documents and things concerning any product (other than a Amesbury Patented Product or Accused Caldwell Product) that is perceived by Amesbury or that has been identified to Amesbury, as competitive with or substitutable for such Amesbury Patented Product or Accused Caldwell Product.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 88:**

All documents and things concerning any product (other than a Amesbury Patented Product or Accused Caldwell Product) that Amesbury believes incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-In-Suit.

**RESPONSE:**

    Amesbury objects to this Request on the grounds that it is duplicative of other document requests, overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 89:**

    All documents concerning the actual, projected, or desired return on investment for the manufacture or sale of any Patented Amesbury Product.

**RESPONSE:**

    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 90:**

    All documents concerning Amesbury's projections or expectations at any time regarding future sales or actual or anticipated profitability of any Patented Amesbury Product in the United States.

**RESPONSE:**

    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 91:**

    All documents that reflect the rate at which Amesbury pays interest on incurred debts.

**RESPONSE:**

    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 92:**
  Documents sufficient to identify the first sale and the last sale in the United States of each Patented Amesbury Product.

**RESPONSE:**
  Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 93:**
  All documents concerning any promotional practices concerning any Patented Amesbury Product, including but not limited to documents concerning the nature, timing, extent, cost, or business rationale of any such promotional practice.

**RESPONSE:**
  Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 94:**
  All documents concerning any marketing strategy, sales strategy, marketing plan, strategic plan, business plan, or promotional effort with respect to any Patented Amesbury Product.

**RESPONSE:**
  Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 95:**
  All marketing forecasts, sales forecasts, or marketing studies concerning any Patented Amesbury Product.

**RESPONSE:**
  Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client

privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 96:**
All documents and things that Amesbury may introduce at trial or at any claim construction hearing in this case.

**RESPONSE:**
Amesbury objects to this Request as premature to the extent that Amesbury is not now required to identify documents that it will use at trial or at any claim construction hearing in this case. Amesbury also objects to this Request as it is overbroad and vague as it seeks documents that Amesbury may use. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce reasonably responsible, non-privileged documents in a timely a manner and in compliance with the Federal Rules of Civil Procedure and the rules and orders of the Court.

**REQUEST NO. 97:**
All documents referenced or relied upon by Amesbury in forming Amesbury's allegation that this any alleged infringement by Caldwell is willful as alleged in Amesbury's Complaint, or concerning such allegation or facts which tend to support or undermine such allegation.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 98:**
All annual reports of Amesbury from January 1999 to the present.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 99:**
Documents, such as accounting and controller procedure manuals, sufficient to explain the design, operation, and use of Amesbury's sales, accounting and/or financial systems.

**RESPONSE:**

Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 100:**
Documents sufficient to explain the design, operation, and use of Amesbury's document and information management systems.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 101:**
For each Patented Amesbury Product, all documents concerning agreements between Amesbury and all reseller(s), distributor(s) and customer(s).

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 102:**
All contracts between A.G.I. and A.S.L.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 103:**
All correspondence between A.G.I. and A.S.L. concerning the Patents-In-Suit.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and

31

without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 104:**
All documents and things concerning any Amesbury document retention policy or program.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, and unduly burdensome. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 105:**
All documents and things considered, reviewed or prepared in connection with this case by any persons whom Amesbury may or will call as an expert witness at trial.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it is premature, overbroad, vague, ambiguous, and unduly burdensome. Amesbury also objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 106:**
To the extent not produced in response to any of the foregoing requests, all documents identified in Amesbury's Fed. R. Civ. P. 26(a)(i) Initial Disclosures.

**RESPONSE:**
Amesbury objects to this Request on the grounds that it calls for the production of documents subject to the attorney-client privilege and/or work product protection. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

**REQUEST NO. 107:**
To the extent not produced in response to any of the foregoing requests, all documents identified by or otherwise relied upon in response to Defendant Caldwell's First Set of Interrogatories.

**RESPONSE:**

    Amesbury objects to this Request on the grounds that it is overbroad, vague, ambiguous, unduly burdensome, and calls for the production of documents subject to the attorney-client privilege and/or work product protection or that are already in Caldwell's possession, custody, or control. Amesbury further objects to this Request on the ground that it calls for the production of documents and things that are neither relevant to the claim or defense of any party in this case nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Responses and Objections set forth above, and without waiving them, Amesbury will produce non-privileged responsive documents, if any, in its possession, custody, or control.

                              Respectfully submitted,

                                Douglas J. Kline (BBO# 556680)
                                Safraz W. Ishmael (BBO# 657881)
                                GOODWIN PROCTER LLP
                                Exchange Place
                                Boston, MA 02109-2881
                                (617) 570-1000

                                Attorneys for Plaintiffs

                                **AMESBURY GROUP, INC.**
                                **AMESBURY SPRINGS LTD.**

Dated: July 5, 2005

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, certify that I caused the foregoing AMESBURY'S OBJECTIONS AND RESPONSES TO CALDWELL'S FIRST SET OF DOCUMENT REQUESTS to be served on July 5, 2005 on the following via First Class Mail.

| | |
|---|---|
| David J. Edwards<br>HARRIS BEACH LLP<br>99 Garnsey Road<br>Pittsford, NY 14534<br>(585)-419-8800<br><br>Attorney for Defendant<br><br>THE CALDWELL MANUFACTURING COMPANY | |
| Date: July 5, 2005 | Safraz W. Ishmael |

LIBA/1563220.1

34

## HARRIS BEACH PLLC
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

LAURA W. SMALLEY

DIRECT:   585-419-8736
FAX:       (585) 419-8813
LSMALLEY@HARRISBEACH.COM

August 31, 2005

Safraz W. Ishmael, Esq.
GOODWIN PROCTER LLP
Exchange Place                                    <u>Via Federal Express</u>
Boston, MA 02109-2881

Re:    **Amesbury Group, Inc. and Amesbury Springs Ltd. v.**
       **The Caldwell Manufacturing Company**

Dear Safraz:

Enclosed please find Caldwell's supplemental interrogatory responses to Interrogatory Nos. 5, 6 and 10. While we continue to believe that our original responses are sufficient in the absence of a ruling from the Court construing the patent claims, we trust that our supplemental responses eliminate your concerns. We reserve the right to supplement our interrogatory responses in light of additional discovery and/or the Court's Markman ruling. Because we have supplemented our responses as requested in your motion to compel and previous correspondence, we trust that you will withdraw your motion.

This letter is also to advise you of certain deficiencies in your interrogatory responses. In Interrogatory No. 8, we requested that Amesbury identify all prior art of which Amesbury is aware. You have not answered that interrogatory, but have instead referred to certain unidentified documents that you will not produce until a protective order is in place. We believe that certain non-confidential information exists that you have not produced. Specifically, an Amesbury balance embodying the alleged invention of the '264 Patent was sold to Anderson Corporation in 1999 or 2000 and incorporated in one of its 200 Series window products. This sale would not be confidential and thus we request that you supplement this interrogatory response.

In Interrogatory No. 11, we requested information regarding all patented Amesbury products and requested that you identify each Amesbury patent claim that covers that product. Again, you referred to certain unidentified documents to answer this interrogatory, and have not produced such documents on the ground that a protective order is not in place. Products that are in the marketplace, however, are not confidential, and would presumably be publicly marked with the patent number that allegedly covers that product. We thus request that you supplement this interrogatory response.

Safraz W. Ishmael, Esq.
August 31, 2005
Page 2

In Interrogatory No. 13, we requested information on damages. Amesbury indicates that it will seek a reasonable royalty for the alleged infringement. You have not provided any information on what that reasonable royalty rate is or your basis for calculating the same. This deficiency also applies to your response to Interrogatory No. 16. With respect to Interrogatory No. 14, you have not provided information regarding Amesbury's profits stemming from the products that embody the alleged inventions of the patents-in-suit. Neither have you provided the names of the persons most knowledgeable on that issue. We need that information to schedule depositions and continue to defend this litigation.

Also, enclosed for service upon you, please find Caldwell's Second Set of Interrogatories and Second Set of Document Demands.

Very truly yours,

Laura W. Smalley

lws:kjj
Enclosures

pc:     Paul J. Yesawich, III, Esq. (w/o enc.)
        Neal L. Slifkin, Esq. (w/o enc.)
        David J. Edwards, Esq. (w/o enc.)
        Douglas J. Kline, Esq. (w/enc.)

Safraz W. Ishmael, Esq.
August 31, 2005
Page 3


bcc:    Thomas E. Batten (w/enc.)
        Christopher Michaels, Esq. (w/enc.)
        David E. Lurie, Esq. (w/enc.)

T:\User\LWS\CALDWELL\Ishmael 8.31.5.doc
8/31/2005 11:24:57 AM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                              Plaintiffs,

vs.

THE CALDWELL MANUFACTURING
COMPANY,

_____ Defendant.

**DECLARATION**

Civil Action No. 05-10020-DPW

NEAL L. SLIFKIN, under penalty of perjury, declares as follows:

  1.    I am a member of HARRIS BEACH PLLC, one of the attorneys for the defendant CALDWELL MANUFACTURING COMPANY ("Caldwell") in this action. I submit this declaration in opposition to plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd.'s (collectively "Amesbury") motion to compel.

  2.    As of today's date Caldwell has not received confidential documents that Amesbury agreed to produce after a protective order was in place. Many of the documents sought by Caldwell relate to claim construction and invalidity, including documents regarding the first sale of the devices covered by the patents-in-suit. (See Amesbury's Objections and Responses to Caldwell's First Set of Interrogatories and Amesbury's Objections and Responses to Caldwell's First Set of Document Requests, attached as Exhibits "B" and "C" to the accompanying memorandum of law). These documents are necessary for Caldwell to respond to Interrogatory Nos. 5 and 6 fully.

  3.    The fact discovery deadline in this action is October 17, 2005, and Caldwell intends to depose the inventors of the patents in suit before its claim construction brief is due on

October 14, 2005. Production of the documents requested and complete interrogatory answers are required so that Caldwell can prepare for these depositions adequately.

**WHEREFORE,** for the foregoing reasons, Amesbury's motion to compel should be denied in all respects, and Caldwell should be entitled to additional relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 6, 2005.

/Neal L. Slifkin
NEAL L. SLIFKIN