IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                              Plaintiffs,

vs.                                                    Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

                              Defendant.

## DECLARATION OF LAURA W. SMALLEY

I, LAURA W. SMALLEY, hereby state as follows:

1.      I am associated with Harris Beach PLLC, attorneys for the defendant, The Caldwell

Manufacturing Company ("Caldwell").  I submit this declaration in connection with Caldwell's

claim construction brief.

2.      Attached as Exhibit "A" is a true and correct copy of the United States Patent No.

5,365,638, which was issued on November 22, 1994.

3.      Attached as Exhibit "B" is a true and correct copy of the United States Patent No.

6,598,264 B2, which issued on July 29, 2003.

4.      Attached as Exhibit "C" is a true and correct copy of United States Patent No.

6,820,368 B2, which issued on November 23, 2004.

5.      Attached as Exhibit "D" are true and correct copies of selected pages from the

American Heritage Dictionary of the English Language (1992).

6.      Attached as Exhibit "E" are true and correct copies of selected pages from the

American Heritage Dictionary of the English Language (1992).

HARRIS BEACH PLLC
ATTORNEYS AT LAW

7.    Attached as Exhibit "F" are true and correct copies of selected pages from the American Heritage Dictionary of the English Language (1992).

8.    Attached as Exhibit "G" is a true and correct copy of the file history of United States Patent No. 5,365,638.

9.    Attached as Exhibit "H" is a true and correct copy of the United States Patent No. 5,157,808, which issued on October 27, 1992.

10.    Attached as Exhibit "I" is a true and correct copy of Caldwell's proposed construction of United States Patent No. 6,598,264 B2, which was served on plaintiffs on July 29, 2005.

11.    Attached as Exhibit "J" is a true and correct copy of the file history of United States Patent No. 6,598,264 B2.

12.    Attached as Exhibit "K" is a true and correct copy of United States Patent No. 6,840,011, which issued on January 11, 2005.

13.    Attached as Exhibit "L" is a true and correct copy of the file history of United States Patent No. 6,820,368 B2.

14.    Attached as Exhibit "M" is a true and correct copy of United States Patent No. 5,301,467, which issued on April 12, 1994.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of October, 2005.

By:    /s/Laura W. Smalley
       Laura W. Smalley
       Harris Beach PLLC
       *Attorneys for Defendant*
         *The Caldwell Manufacturing Co.*
       99 Garnsey Road
       Pittsford, New York 14534
       Telephone: 585-419-8800



US005365638A

# United States Patent [19]

## Braid et al.

[11] Patent Number: **5,365,638**

[45] Date of Patent: **Nov. 22, 1994**

[54] **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS**

[76] Inventors: **Harold K. Braid**, The Sheilings, Braceborough, Lincolnshire, PE9 4NT; **Simon C. Braid**, 13, Crowson Way, Deeping, St. James, Lincolnshire, both of England

[21] Appl. No.: **7,628**

[22] Filed: **Jan. 21, 1993**

[30] **Foreign Application Priority Data**

Jan. 21, 1992 [GB] United Kingdom ............. 9201208.7
Feb. 25, 1992 [GB] United Kingdom ............. 9204006.2
Mar. 4, 1992 [GB] United Kingdom ............. 9204687.9

[51] Int. Cl.5 ................................................ E05D 13/00
[52] U.S. Cl. ................................................. 16/197
[58] Field of Search ........................ 16/197, DIG. 16

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,732,594 | 1/1956 | Adams et al. | 16/197 |
| 2,873,472 | 2/1959 | Foster | 16/197 |
| 3,452,480 | 7/1969 | Foster | 16/197 |
| 3,992,751 | 11/1976 | Foster et al. | 16/197 |
| 4,227,345 | 10/1980 | Durham | |
| 5,157,808 | 10/1992 | Sterner | 16/197 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 825513 | 12/1959 | United Kingdom |
| 1505782 | 3/1978 | United Kingdom |
| 2253874 | 9/1992 | United Kingdom |

*Primary Examiner*—P. Austin Bradley
*Assistant Examiner*—Chuck Y. Mah
*Attorney, Agent, or Firm*—Steven H. Bazerman

[57] **ABSTRACT**

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

8 Claims, 4 Drawing Sheets





**U.S. Patent**      Nov. 22, 1994      Sheet 1 of 4      **5,365,638**



FIG.1.

FIG.2.

FIG.3.



FIG.4.



FIG.5.



FIG.6.



FIG.7.



FIG.8.

95          95



110

102

FIG.9.

100

95          95

112    108



FIG.10.

FIG.11.

FIG.12.

5,365,638

1

## SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

### BACKGROUND OF THE INVENTION

The invention relates to a mounting for a coiled ribbon spring and is particularly, though not exclusively, applicable to sash springs used in sash frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open area at their center and two free ends, an outer one on the outside of the coil and one on the inside; the springs being similar in construction to clock springs except that the inner free end is not (as in a clock spring) secured to a fixed point.

It is known in the art to mount such coiled ribbon springs on a drum within a hollow channel in a window frame by means of a screw or other fixing, about which the spring is able to uncoil as an outer free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, through the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum).

It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as "constant tension" springs.

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

### SUMMARY OF THE INVENTION

The invention provides a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member, a coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having means for securing the mounting in a channel portion of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to be operatively disposed between the spring body portion and the sash frame support member.

Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

In this inventive arrangement the spring merely rests on the mounting element which acts as a reaction member which the spring abuts as a free outer end, attached to the sash, is unwound. (Ideally, there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash from be inverted for any reason).

The mounting element may be provided with inter-engagement formations by which a plurality of such elements may be stackingly inter-engaged, thus enabling a plurality of coiled ribbon springs to be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The inter-engagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detentes in another such mounting element. The inter-engagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a "snap fit" therewith.

Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment; the hub portion being disposed such that in use the spring encircles such hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

In this arrangement, the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion. (In fact, in certain instances, i.e., when the spring is fully extended, the hub portion may also provide some minor support, though this is not its function).

The mounting element may be provided with formations conformed so as to cooperate with a portion of the sash frame within which the element is to be received, such that contact of said formations with said sash frame inhibits in a rotational, pivoting, or twisting sense of the element relative to the sash frame.

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

5,365,638

3

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

FIG. 1 is a schematic side elevational view shown partly broken away of an assembly according to the invention showing a coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window;

FIG. 2 is a perspective view of the mounting element shown in FIG. 1;

FIG. 3 is a schematic side elevational view shown partly broken away of a mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention;

FIG. 4 is an exploded schematic view of the mounting assembly shown in FIG. 3;

FIG. 5 is a sectional view on line V—V of FIG. 3 with the coiled ribbon spring removed;

FIG. 6 is a schematic view on an enlarged scale of a portion of the mounting assembly shown in FIGS. 3, 4 and 5;

FIG. 7 is a schematic perspective view on an enlarged scale of a third mounting element according to the invention;

FIG. 8 is a schematic front view of a fourth mounting element similar to said third mounting element, according to the invention;

FIG. 9 is a partial schematic front view of a fifth mounting element similar to said third and fourth mounting elements according to the invention;

FIG. 10 is a schematic perspective view of the element of FIG. 9 shown on a larger scale and partially broken away so as to foreshorten the element;

FIG. 11 is a schematic perspective view of a fifth mounting element according to the invention being similar to that shown in FIG. 10 with certain differences; and

FIG. 12 is a partial front elevational view of a further mounting element similar to those shown in FIGS. 7 and 8 with certain differences.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The mounting assembly shown in FIG. 1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of insertion into the channel section from the side (i.e., without the necessity to slide the mounting element in from the end of the channel section).

The mounting is shown so fixed in FIG. 1. The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support element 28 which forms part of a sliding sash. The sash frame support element 28 is slidable in the channel section 16 back and forth in the directions of arrows A, A', to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for sim-

4

plicity. In practice, many more coils wold be provided. Also, the thickness of the coiled ribbon spring has been exaggerated.

As the sash frame support element 28 (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of surface 20. This is of no particular importance as the mounting only has a guiding and support function. It will e noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art. In the embodiment shown in FIGS. 3 to 6, the mounting element is in two parts 50, 52 which inter-engage to form a body portion 54 of reel-like structure but having a tube-like hub 56 which, in use, loosely impales a body portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below (when used in vertical sash frames as is usual) the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 inter-engageable with the under surface of the support portion 60 (see FIG. 5). As will be seen from FIG. 3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by which the mounting may be fixed to a channel section member. FIG. 6 shows portions of coils 66, 68 and 70 of the spring, coil 70 being the outermost and having its outer undersurface supported by the support surface 62.

The mounting element shown in FIG. 7 is similar to that shown in FIGS. 1 and 2 except firstly that upstanding walls $78^a$ and $78^b$ are dissimilar and secondly that inter-engagement formations 80 are provided to enable a plurality of said elements to inter-engage in a stacked manner.

One of the upstanding walls $78^a$ which is intended to lie against a back surface 82 (shown in broken line) of a channel section frame (shown as 84 in part hatched line) is provided with a pair of lateral ears 86 (only one of which is shown full line) which are intended to prevent rotation of the mounting element about a fixing screw (not shown) received, in use, in recessed bore 88. A concavely curved surface 20' is provided in similar manner to the embodiment of FIGS. 1 and 2. A second upstanding wall $78^b$ has greater thickness than upstanding wall $78^a$ and is provided with a plurality of tooth-like inter-engagement formations 80. There is provided a rebate 89 of a depth equal to the thickness of the upstanding wall $78^b$ and provided with a plurality of detentes 90 corresponding to formations 80 such that the formations of one element as shown in FIG. 7 can engage in detentes 90 of another identical element lying above the first element. Thus, two or more coiled ribbon springs can be mounted one above the other with their mounting elements inter-engaged and only a lower one of said mounting elements need be secured with a screw as hereinbefore described.

FIG. 8 shows a fourth mounting element in accordance with the invention. This is closely similar to that shown in FIG. 7 except that at lower corner regions shown generally as 95, the element is rounded off for ease of insertion of the element into the sash frame.

5,365,638

5

The mounting element 100 shown in FIGS. 9 and 10 is similar to those of FIGS. 7 and 8 and some of those portions of the element similar to those provided in the elements shown in FIGS. 7 and 8 have been labelled with the same reference numerals. The mounting element 100 is devoid of the lateral ears 86 but instead is provided with a raised spine formation 102 whose width W is arranged such that it is a snug fit between open lip portions 104 of a channel section sash frame member 5 (shown in broken line in FIG. 10) within which the mounting element is to be operatively received. Thus, rotational, pivoting or twisting motion of the element 100 within the sash frame member 5 is inhibited. The element 100 is secured in the sash frame member 5 by a screw or other suitable fixing via a bore 108 in a similar manner to that of the element shown in FIG. 7. In the mounting element 100 a single inter-engagement projection formation 110 is provided, which is cooperable with a corresponding recess formation 112 of a second such element, so that elements can be "stacked" as in 20 previous embodiments.

The mounting element 110 shown in FIG. 11 is similar to that shown in FIG. 10 except that the upstanding wall 78$^b$ is provided entirely by said raised spine formation 102. This is especially useful where space is limited, i.e., the depth of the coiled ribbon spring approaches the depth of the channel section sash frame member.

The mounting element shown in FIG. 12 is similar to those shown in FIGS. 7 and 8 and the same reference numerals have been used to indicate corresponding portions thereof. It has the rounded off regions 95 of the mounting element shown in FIG. 8 but differs in that it has a locating rib 102 like that shown in FIGS. 9 and 10 and the curved surface 20′ (shown in broken line) is truncated at outer regions thereof by sloping shoulders 21 (shown in broken line). These enable a free end of a spring, supported by the mounting element in use, to be more easily fed between the mounting element and a wall 17 of a channel section 16, providing a funnel-like provision.

It will readily be apparent that the inter-engagement formations need not be as shown in the Figures but may be of any suitable shape, and number.

They may also be made to be interlocking, releasable or otherwise. It is to be understood that in the channel section partly shown in broken line in FIG. 7 the front retaining flanges shown in FIG. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example, two or more screw or other fixings would prevent any tendency for the mountings to move or rotate in use. Alternatively, pegs, spigots or catches could be used.

The previous descriptions of the preferred embodiments of the present invention are for purposes of illustration and are limited only by the provisions of the following claims.

What is claimed is:

1. A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having a first end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited.

2. The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means.

3. The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein, a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means, a surface of said body portion being concavely curved, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion.

4. The mounting assembly of claim 2 in which the mounting means has at least one inter-engagement means by which a plurality of such mounting means may be stacked in inter-engagement.

5. The mounting assembly of claim 4 in which the inter-engagement means comprises a tooth-like projection cooperable on said first mounting means with a corresponding complementary detente in a second mounting means.

6. The mounting assembly of claim 4 in which the inter-engagement means on said first mounting means is in an interference fit with an inter-engagement means on said second mounting means.

7. The mounting assembly of claim 4 in which the inter-engagement means is formed so as to provide a snap fit.

8. A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having an end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited.

\* \* \* \* \*

65



US006598264B2

(12) **United States Patent**    (10) Patent No.:  **US 6,598,264 B2**
Newman    (45) Date of Patent:  **Jul. 29, 2003**

(54) **BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER**

(75) Inventor: **Gary Roger Newman**, Valley Springs, SD (US)

(73) Assignee: **Amesbury Group, Inc.**, Amesbury, MA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 6 days.

(21) Appl. No.: **09/810,868**

(22) Filed: **Mar. 16, 2001**

(65) **Prior Publication Data**

US 2002/0129463 A1 Sep. 19, 2002

(51) Int. Cl.[7] .................................................. E05D 13/00
(52) U.S. Cl. .............................. 16/197; 16/215; 16/401; 16/DIG. 16
(58) Field of Search ........................ 16/197, 193, 400, 16/401, DIG. 16, 210, 215; 49/445, 446, 447

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,114,178 | A | * 12/1963 | Wood | 49/446 |
| 3,358,403 | A | 12/1967 | Dinsmore | |
| 3,440,683 | A | 4/1969 | Wood | 16/197 |
| 3,449,862 | A | * 6/1969 | Biro | 49/406 |

| | | | | |
|---|---|---|---|---|
| 4,089,085 | A | 5/1978 | Fitzgibbon | 16/197 |
| 4,134,234 | A | 1/1979 | Wood | 49/429 |
| 4,190,930 | A | 3/1980 | Prosser | 16/197 |
| 4,238,907 | A | 12/1980 | Swan | 49/446 |
| 4,300,316 | A | 11/1981 | Ficurilli | 49/445 |
| 4,332,054 | A | 6/1982 | Paist et al. | 16/197 |
| 4,373,295 | A | 2/1983 | Starck | 49/435 |
| 4,413,445 | A | 11/1983 | Trout | 49/445 |
| 4,503,641 | A | 3/1985 | Swan | 49/445 |
| 4,586,291 | A | 5/1986 | Swan | 49/501 |
| 4,654,928 | A | 4/1987 | Flight | 16/199 |
| 4,672,713 | A | 6/1987 | Newton et al. | 16/197 |
| 4,689,850 | A | 9/1987 | Flight | 16/197 |
| 4,800,680 | A | 1/1989 | Westfall et al. | 49/429 |
| 4,914,862 | A | 4/1990 | Gregory | 49/322 |
| 4,949,425 | A | 8/1990 | Dodson et al. | 16/198 |
| 5,174,064 | A | 12/1992 | Stark | 49/445 |
| 5,530,991 | A | 7/1996 | deNormand et al. | 16/198 |
| 5,737,877 | A | 4/1998 | Meunier et al. | 49/445 |
| 6,041,476 | A | 3/2000 | deNormand | 16/197 |

* cited by examiner

*Primary Examiner*—Anthony Knight
*Assistant Examiner*—William D Hutton, Jr.
(74) *Attorney, Agent, or Firm*—Testa, Hurwitz & Thibeault, LLP

(57) **ABSTRACT**

Disclosed are apparatus for a block and tackle window balance to be incorporated in single and double hung window assemblies. In one embodiment the block and tackle window balance includes a roller secured within a bottom guide to increase range of travel of a window sash.

**23 Claims, 10 Drawing Sheets**



U.S. Patent      Jul. 29, 2003      Sheet 1 of 10      US 6,598,264 B2



**FIG. 1**

PRIOR ART

200



210
202
212
203
218
221
220
207
208
205
225
230
240
245
242
235
239
243
216
215

# FIG. 2A

## PRIOR ART



# FIG. 2B
### PRIOR ART

Case 1:05-cv-10020-DPW    Document 28-3    Filed 10/14/2005    Page 5 of 15

200



# FIG. 3
## PRIOR ART



FIG. 4A



FIG. 4B



FIG. 5



**FIG. 6**



FIG. 7B
PRIOR ART



FIG. 7A
PRIOR ART



FIG. 8B



FIG. 8A

US 6,598,264 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**BLOCK AND TACKLE WINDOW BALANCE
WITH BOTTOM GUIDE ROLLER**

### TECHNICAL FIELD

This invention relates to block and tackle window balance devices for single and double hung windows and, more particularly, to a block and tackle window balance device that provides an increased range of travel within a window frame.

### BACKGROUND INFORMATION

Hung window assemblies generally include a window frame, a lower window sash, an upper window sash, a pair of window jambs, two sets of jamb pockets, and at least one window balance device for offsetting the weight of a window sash throughout a range of travel within the window frame. Block and tackle window balance devices use a combination of a spring and pulleys located within a channel to balance the weight of the window sash at any position within the jamb pockets.

In some block and tackle window balance devices, the channel containing both the spring and pulleys is attached to the window sash, and a cord, which connects the pulleys together, is attached to a jamb mounting hook that is connected to a side jamb. A disadvantage of this type of device is that the travel distance of the window sash is limited by some of the pulleys located within the rigid channel interfering with the jamb mounting hook that attaches the window balance to the window jamb.

### SUMMARY OF THE INVENTION

In general, in one aspect, the invention relates to a block and tackle window balance device for use with single and double hung windows that affords increased window opening travel distance. In one embodiment, the block and tackle window balance device includes a channel, a spring with a first end and a second end, a translatable pulley block unit, a fixed pulley block unit, a cord, a top guide, and a bottom guide with a bottom guide roller. The top and bottom guides are connected to opposite ends of the channel. The spring, the translatable pulley block unit, and the fixed pulley block unit are all located within the channel. The spring and the fixed pulley block unit are fixed at opposite ends of the channel. The second end of the spring is connected to the translatable pulley block unit. The translatable and fixed pulley block units are connected by the cord. The cord is threaded around both the translatable and fixed pulley block units and extends around the bottom guide roller located within the bottom guide.

In another embodiment, the block and tackle window balance device includes a top guide including a top angled portion and a bottom portion. The bottom portion of the top guide is connected to one end of the channel. In still another embodiment, the top angled portion of the top guide is sized to receive a member from a window sash.

In yet another embodiment, the block and tackle window balance device includes a bottom guide that extends beyond the rigid channel. In still yet another embodiment, the bottom guide of the device further includes a channel to receive a portion of a window sash.

In general, in one aspect, the invention relates to a method of providing increased travel of a window sash slidably mounted in a window frame. The method includes three steps. A first step is to provide a window assembly that includes a window frame with jambs with jamb pockets, an upper window sash, a lower window sash, and at least one block and tackle window balance device having a channel and a bottom roller for dispensing a cord. The channel has a first end and a second end. The bottom roller is mounted proximate to the second end of the channel with a first distance between the first end of the channel and the bottom roller. A second step is to remove the block and tackle window balance device from the window assembly. A final step is to provide and to install an increased travel window balance device. The increased window balance device has a channel with a first end and a second end and a bottom guide roller for dispensing a cord. The bottom guide roller is mounted proximate to the second end of the channel and a second distance is defined as the length between the first end of the channel and the bottom guide roller. The second distance of the increased window balance device is greater than the first distance of the removed block and tackle window balance device.

The foregoing and other objects, aspects, features, and advantages of the invention will become more apparent from the following description and from the claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIG. 1 is a perspective view of a double hung window.

FIG. 2A is a perspective view of a prior art block and tackle window balance.

FIG. 2B is another perspective view of the prior art block and tackle window balance of FIG. 2A with one of two side walls of the U-shaped channel removed.

FIG. 3 is a perspective rear view of the prior art block and tackle window balance.

FIG. 4A is a perspective view of an embodiment of a block and tackle window balance of the invention.

FIG. 4B is perspective view of the block and tackle window balance of FIG. 4A with one of two side walls of the U-shaped channel removed.

FIG. 5 is a perspective view of an embodiment of a block and tackle window balance of the invention mounted within a window jamb.

FIG. 6 is an enlarged front view of a top guide of the block and tackle window balance of FIG. 4A attached to a cam.

FIG. 7A is a front view showing a closed position of a window assembly with prior art block and tackle window balances.

FIG. 7B is a front view showing an open position of the window assembly with prior art block and tackle window balances.

FIG. 8A is a front view showing a closed position of a window assembly with an embodiment of a block and tackle window balances of the invention.

FIG. 8B is a front view showing an open position of a window assembly with block and tackle window balances of the invention.

### DETAILED DESCRIPTION

Referring to FIG. 1, shown is a double hung window assembly 100 in which a block and tackle window balance constructed in accordance with the teachings of the present

US 6,598,264 B2

3

invention can be used. The double hung window assembly 100 includes a window frame 102, a lower window sash 104, an upper window sash 106, and a pair of window jambs 107. Within each window jamb 107, jamb pockets 108 are defined. The lower window sash 104 and upper window sash 106 slide vertically within the jamb pockets 108. Generally, window balances are attached to the lower and upper window sashes 104, 106 to balance the weight of the window sashes at any vertical position within the jamb pockets 108.

FIGS. 2A, 2B, and 3 show perspective views of a prior art block and tackle window balance 200. FIG. 2A shows the prior art block and tackle window balance 200 in full, whereas FIG. 2B shows the prior art block and tackle window balance 200 with one side wall of a rigid U-shaped channel 205 cut away so that components within the window balance 200 are more visible. FIG. 3 shows a rear view of the window balance 200.

The block and tackle window balance 200 includes a spring 220, a translatable pulley unit 230, a fixed pulley unit 235, a roller 239, and a cord 240 all housed with the rigid U-shaped channel 205. Attached to the two ends of the rigid U-shaped channel 205 with fasteners 212, 216 are a top guide 210 and a bottom guide 215 that are used to connect the window balance 200 to either the upper or lower window sashes 104, 106 and to help guide the vertical motion of the window balance 200 within the jamb pockets 108. The top guide 210 includes an upper portion 202 and a lower portion 203. The upper portion 202 of the top guide 210 is angled and is sized to be received by a member attached to a window sash, such as a cam. The bottom guide 215 includes a back portion 213, best seen in FIG. 3, that encases a portion of the rigid channel 205. Within the back portion 213 of the bottom guide 215 is a channel 214 sized to receive a portion of a window sash.

The rigid U-shaped channel 205 has a back wall 206 and two side walls 207, 208 that in combination form the U-shape. The rigid U-shaped channel 205 serves as an external frame to which the components of the window balance 200 can be secured. The rigid U-shaped channel 205 also keeps components located within the rigid U-shaped channel 205 free of debris and particulate matter. The spring 220, the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239 are located inside the rigid U-shaped channel 205. Both of the translatable pulley unit 230 and the fixed pulley unit 235 include one or more pulleys rotatable around respective axles.

Components within the rigid U-shaped channel 205 work in combination to create a force to counterbalance the weight of the attached sash at any vertical position within the window frame 102. These components are attached to each other such that a first end 219 of the spring 220 is connected to the translatable pulley unit 230, and the translatable pulley unit 230 is connected to the fixed pulley unit 235 and the roller 239 via the cord 240. A pulley in the fixed pulley unit 235 and the roller 239 may be contained in a frame 236. To secure the components within the rigid U-shaped channel 205, the second end 221 of the spring 220 and the frame 236 are fixed to opposite ends of the rigid U-shaped channel 205 via respective fasteners 218, 243. The frame 236 is also used to secure a pulley axle 237 and a roller axle 238, around which the pulley in the fixed pulley unit 235 and the roller 239 respectively rotate. A first distance "AA" 275 is defined by a length extending between the upper portion 202 of the top guide 210 and the roller axle 238. The spring 220 and the translatable pulley unit 230 are connected together by hooking the first end 219 of the spring 220 through an upper slot

4

opening 229 in a frame 225. The frame 225 houses the translatable pulley unit 230 and a pulley axle 232 around which a pulley in the translatable pulley unit 230 rotates. The cord 240, which can be a rope, string, or cable, has a first end 241 and a second end 242. The first end 241 of the cord 240 is secured to the frame 225 and the second end 242, which is a free cord end, is threaded through the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239, thereby connecting all three components together. After the cord 240 connects the three components together, a jamb mounting attachment 245 is secured to the second end 242 of the cord 240. When the prior art window balance 200 is located in the jamb pocket 108, the jamb mounting attachment 245 engages an opening 430 (FIG. 5) within one of the jamb pockets 108, securing the window balance 200 to the window jamb 107.

The spring 220 provides the force required to balance the sashes. The spring 220 is extended when the second end 242 of the cord 240 with the jamb mounting attachment 245 is pulled, causing the frame 225 to move within the rigid U-shaped channel 205 towards the frame 236, which is fixed. As the frame 225 moves towards the frame 236, the spring 220 is extended.

FIGS. 4A and 4B show an embodiment of a block and tackle window balance 300 in accordance with the teachings of the present invention. The window balances 300 act to counterbalance the weight of the window sashes 104, 106 at any vertical position within the window frame 102. FIG. 4A show one perspective view of the window balance 300 and FIG. 4B shows another perspective view of the same balance, but with a side wall of the rigid U-shaped channel 305 removed. The window balance 300 includes the rigid U-shaped channel 305, a top guide 310, a bottom guide 315, a spring 320, a translatable pulley unit 330, a fixed pulley unit 335, a bottom guide roller 350, and a cord 340. The top guide 310 and the bottom guide 315 are fixed to the rigid U-shaped channel 305 by fasteners 312, 316. The top guide 310 is used to help connect the block and tackle window balance 300 to the window sash 104, 106 and to help guide the movement of the block and tackle window balance 300 within the jamb pocket 108. The top guide 310 may include a top angled portion 302 and a bottom portion 303 as shown in FIGS. 4A and 4B. The bottom guide 315 is also used for connection and guidance purposes, but the bottom guide 315 further serves as a frame for housing the bottom guide roller 350. The bottom guide 315 extends beyond the rigid U-shaped channel 305 and, therefore, the bottom guide roller 350 is located outside of the rigid U-shaped channel 305. A back portion 313 of the bottom guide 315 may include a channel 314 for receiving a portion of the window sash, as depicted in FIG. 5. Some windows have a groove running along a bottom rail of the sash. On conventional balances, the bottom guide can drop into this groove so a manufacturer needs to use a shorter balance to avoid dropping into the groove. This effectively reduces the amount of travel, because shorter balances have to be used. The bottom guide 315 of the present invention is configured so the contact point of the bottom guide 315 to the sash is higher on the balance 300 so the groove is avoided and a longer balance with a greater spring force can be used. This can afford increased force for balancing the sash at any vertical position, as well as increased amount of travel resulting from the longer balance.

The spring 320, the translatable pulley unit 330, and the fixed pulley unit 335 are located within the rigid U-shaped channel 305. In the embodiment shown in FIGS. 4A and 4B, the translatable pulley unit 330 includes two pulleys 326,

US 6,598,264 B2

<table>
<tr><td>5</td><td>6</td></tr>
</table>

327 that are rotatable about a single pulley axle 328, however, in other embodiments, the translatable pulley unit 330 may contain one or more pulleys rotatable about the pulley axle 328. Similarly, the fixed pulley unit 335, as shown in FIGS. 4A and 4B, includes two pulleys 331, 332 that rotate about a single pulley axle 333; however, in other embodiments, the fixed pulley unit 335 may contain one or more pulleys that rotate about the pulley axle 333. A first end 319 of the spring 320 is fixed with respect to the rigid U-shaped channel 305 via a fastener 318. In the disclosed embodiment, the fastener is a rivet; however the fastener could also be a support member welded between the two side walls of the rigid U-shaped channel 305, a hook secured to or formed in the rigid U-shaped channel 305, or any other device which secures the first end 319 of the spring 320 to the rigid U-shaped channel 305. The second end 321 of the spring 320 is attached to a frame 325, which houses the translatable pulley unit 330. To connect the spring 320 to the frame 325, the second end 321 of the spring 320 hooks through an opening 329 in the frame 325. The cord 340 has a first end 341 and a second end 342. The first end 341 of the cord 340 is attached to the frame 325 through a frame opening 322. The second end 342 is attached to a jamb mounting hook 345. The cord 340 is threaded through the translatable pulley unit 330, the fixed pulley unit 335, and around the bottom guide roller 350, connecting the three components together. The cord 340 in the disclosed embodiment is a string, however it may also be a rope, or a cable. Both the fixed pulley unit 335 and the bottom guide roller 350 are fixed with respect to the rigid U-shaped channel 305. The fixed pulley unit 335 is housed within a frame 336 and rotates around the pulley axle 333. The frame 336 is secured within the rigid U-shaped channel 305 with a fastener 337. In an alternative embodiment, the frame 336 is not required, the fixed pulley unit 335 rotates around an axle supported between side walls of the rigid U-shaped channel 305. In yet another alternative embodiment, the fixed pulley unit 335 can be integral with the bottom guide 315 and as a result, fasteners 337 and 316 can be eliminated because tension of the spring 320 will keep the bottom guide 315 engaged with or connected to the rigid U-shaped channel 305. The bottom guide roller 350 is located within the bottom guide 315 and rotates around a bottom guide axle 352. A second distance "BB" 375 is defined as the length extending between the top angled portion 302 of the top guide 310 and the bottom guide axle 352. It should be noted that the second distance "BB" 375 is greater than the first distance "AA" 275 of the window balance 200.

To use the block and tackle window balance 300 within the window assembly, the balance is connected to both the window jamb 107 and to either the lower window sash 104 or the upper window sash 106. Referring to FIG. 5, the block and tackle window balance 300 is attached to the window jamb 107 via the jamb mounting hook 345. The jamb mounting hook 345 is secured within an opening 430 within the jamb pocket 108. The window balance 300 is then connected to a window sash by inserting a portion of the window sash into the channel 314 of the bottom guide 315 and connecting a cam 405 mounted on the top of the window sash 400 to the top angled portion 302 of the top guide 310, as shown in FIG. 6.

The spring 320 of the window balance 300 creates the force required to counterbalance the weight of the window sash. However, because the bottom guide roller 350 is located in the bottom guide 315, instead of within the rigid U-shaped channel 305 as in prior art balances, window sashes with the block and tackle window balances 300 as

disclosed in this application provide greater travel distance. FIG. 7A is an illustration of a window assembly 500 with two prior art window balances 200 attached to a lower window sash 504. In FIG. 7A, the lower window sash 504 is in a closed position. FIG. 7B shows the window assembly 500, but with the lower window sash 504 in a fully open position. The standard travel distance of a window sash attached to the prior art window balance 200 is labeled "CC" 520 in FIG. 7B. The window sash 504, as shown in FIGS. 7A and 7B, is prevented from achieving a greater travel distance by the roller 239, located within the rigid U-shaped channel 205, hitting the jamb mounting hook 245.

FIGS. 8A and 8B show a schematic of the window assembly 600 with block and tackle balances 300 of the present invention. FIG. 8A shows the window assembly 600 in the closed position, while FIG. 8B shows the window assembly 600 in the fully open position. Because the bottom guide roller 350 is mounted within the bottom guide 315 instead of within the rigid U-shaped channel 305, the window sash 604 can travel a greater distance before the bottom guide roller 350 hits the jamb mounting hook 345, resulting in a greater travel distance, labeled "DD" 530 in FIG. 8B. It should be noted that the distance "DD" 530 is greater than the distance "CC" 520. The greater travel distance is an important feature, because it allows for an increased window clearance that will help persons who are using the window assembly as an emergency

Variations, modifications, and other implementations of what is described herein will occur to those of ordinary skill in the art without departing from the spirit and the scope of the invention as claimed. Accordingly, the invention is to be defined not by the preceding illustrative description but instead by the spirit and scope of the following claims.

What is claimed is:

1. A block and tackle window balance device comprising:
   a channel comprising a first end and a second end;
   a top guide connected to the first end of the channel;
   a bottom guide connected to the second end of the channel;
   a bottom guide roller rotatably mounted in the bottom guide;
   a fixed pulley block unit connected to the channel;
   a translatable pulley block unit moveable within the channel;
   a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and
   a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

2. The device of claim 1 wherein the bottom guide roller is located external to the channel.

3. The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash.

4. The device according to claim 1 wherein a portion of the bottom guide is external to the channel.

5. The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash.

6. The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle.

US 6,598,264 B2

7

8

**7**. The device according to claim 6 wherein the axle is located within the frame.

**8**. The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member.

**9**. The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle.

**10**. The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel.

**11**. The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide.

**12**. A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:
channel comprising a first end and a second end;
a top guide connected to the first end of the channel;
a bottom guide connected to the second end of the channel;
a bottom guide roller rotatably mounted in the bottom guide;
a fixed pulley block unit connected to the channel;
a translatable pulley block unit moveable within the channel;
a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and
a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

**13**. A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

**14**. The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto.

**15**. The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto.

**16**. The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

**17**. The device of claim 13 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

**18**. A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

**19**. The device of claim 18 wherein the bottom guide roller is located external to the channel.

**20**. The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel.

**21**. The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

**22**. The device of claim 18 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

**23**. A window balance device comprising:

a bottom guide connected to an end of a window balance channel, the bottom guide slidable in a jamb pocket when installed in a window frame, the bottom guide including:
a bottom guide axle mounted within the bottom guide, the bottom guide axle located outside the window balance channel; and
a bottom guide roller rotatably mounted on the bottom guide axle.

* * * * *



US006820368B2

(12) **United States Patent**
Uken et al.

(10) Patent No.: **US 6,820,368 B2**
(45) Date of Patent: **Nov. 23, 2004**

(54) **SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW**

(75) Inventors: **Stuart J. Uken**, Sioux Falls, SD (US); **Gary R. Newman**, Valley Springs, SD (US); **Lawrence J. VerSteeg**, Sioux Falls, SD (US)

(73) Assignee: **Amesbury Group, Inc.**, Amesbury, MA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/446,279**

(22) Filed: **May 23, 2003**

(65) **Prior Publication Data**

US 2003/0192257 A1 Oct. 16, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 10/044,005, filed on Jan. 11, 2002, now Pat. No. 6,679,000.
(60) Provisional application No. 60/261,501, filed on Jan. 12, 2001.

(51) Int. Cl.[7] ............................... E05D 15/22; E05F 1/00
(52) U.S. Cl. ............................... 49/181; 49/176; 49/446; 16/197
(58) Field of Search ........................ 49/181, 183, 184, 49/185, 186, 445, 446, 449, 455, 453, 454, 176, 177, 161; 292/174, 175, DIG. 63, DIG. 47, DIG. 37; 16/197

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,007,212 A | 10/1911 | Lasersohn |
| 1,312,665 A | 8/1919 | Almquist |
| 2,178,533 A | 10/1939 | Viehweger |
| 2,952,884 A | 9/1960 | Dinsmore |
| 3,007,194 A | 11/1961 | Griswold |
| 3,105,576 A | 10/1963 | Jones et al. |
| 3,461,608 A | 8/1969 | Johnson |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| CA | 2382933 | 4/2002 |
|---|---|---|

OTHER PUBLICATIONS

BSI's Hidden Advantage: It's as Easy as 1–2–3, Balance Systems—BSI, Amesbury Group, Inc., 2001. (3 pgs.), no month available.

(List continued on next page.)

*Primary Examiner*—Hugh B. Thompson, II
(74) *Attorney, Agent, or Firm*—Testa, Hurwitz & Thibeault, LLP

(57) **ABSTRACT**

The invention relates to a snap lock balance shoe and balance systems to be incorporated in pivotable double hung windows and installation methods of such systems. In one embodiment, the snap lock balance shoe includes a pair of retractable tabs that partially extend through openings within an inverted window balance. In one embodiment of the method, an elongated end of the balance shoe is inserted into a window jamb and then rotated into position.

**11 Claims, 13 Drawing Sheets**



**US 6,820,368 B2**
Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,497,999 A | 3/1970 | Hendra |
| 3,529,381 A | 9/1970 | Grossman |
| 3,676,956 A | 7/1972 | Taylor et al. |
| 3,732,594 A | 5/1973 | Mills |
| 3,869,754 A | 3/1975 | Foster |
| 4,028,849 A | 6/1977 | Anderson |
| 4,068,406 A | 1/1978 | Wood ........................... 49/181 |
| 4,079,549 A | 3/1978 | Wood ........................... 49/181 |
| 4,089,085 A | 5/1978 | Fitzgibbon |
| 4,190,930 A | 3/1980 | Prosser |
| 4,300,316 A | 11/1981 | Ficurilli |
| 4,332,054 A | 6/1982 | Paist et al. ................. 16/197 |
| 4,506,478 A | 3/1985 | Anderson .................... 49/181 |
| 4,510,713 A | 4/1985 | Anderson .................... 49/175 |
| 4,610,108 A | 9/1986 | Marshik ...................... 49/181 |
| 4,697,304 A | 10/1987 | Overgard |
| 4,930,254 A | 6/1990 | Valentin ...................... 49/181 |
| 4,941,285 A | 7/1990 | Westfall ...................... 49/176 |
| 4,949,425 A | 8/1990 | Dodson et al. |
| 4,958,462 A | 9/1990 | Cross ......................... 49/181 |
| 5,069,001 A | 12/1991 | Makarowski ................ 49/176 |
| 5,127,192 A | 7/1992 | Cross ......................... 49/181 |
| 5,140,769 A | 8/1992 | Hickson et al. |
| 5,189,838 A | 3/1993 | Westfall ...................... 49/181 |
| 5,251,401 A | 10/1993 | Prete et al. ................. 49/181 |
| 5,301,467 A | 4/1994 | Schmidt et al. ............. 49/181 |
| 5,353,548 A | 10/1994 | Westfall |
| 5,371,971 A | 12/1994 | Prete |
| 5,377,384 A | 1/1995 | Riegelman .................. 16/193 |
| D355,262 S | 2/1995 | Chaney et al. |
| 5,445,364 A | 8/1995 | Tibbals, Jr. |
| 5,448,858 A | 9/1995 | Briggs et al. |
| 5,452,495 A | 9/1995 | Briggs |
| 5,463,793 A | 11/1995 | Westfall |
| 5,530,991 A | 7/1996 | deNormand et al. |
| 5,553,903 A | 9/1996 | Prete et al. ................. 292/163 |
| 5,566,507 A | 10/1996 | Schmidt et al. |
| 5,572,828 A | 11/1996 | Westfall ...................... 49/181 |
| 5,615,452 A | 4/1997 | Habbersett .................. 16/194 |
| 5,632,117 A | 5/1997 | Prete et al. ................. 49/181 |
| 5,632,118 A | 5/1997 | Stark .......................... 49/181 |
| 5,661,927 A | 9/1997 | Polowinczak et al. ....... 49/447 |
| 5,669,180 A | 9/1997 | Maier |
| 5,697,188 A | 12/1997 | Fullick et al. ............... 49/181 |
| 5,704,165 A | 1/1998 | Slocomb et al. ............ 49/181 |
| 5,737,877 A | 4/1998 | Meunier et al. ............. 49/445 |
| 5,802,767 A | 9/1998 | Slocomb et al. ............ 49/181 |
| 5,806,243 A | 9/1998 | Prete et al. ................. 49/181 |
| 5,806,900 A | 9/1998 | Bratcher et al. ............ 292/137 |
| 5,829,196 A | 11/1998 | Maier .......................... 49/181 |
| 5,855,092 A | 1/1999 | Raap et al. |
| 5,873,199 A | 2/1999 | Meunier et al. ............. 49/181 |
| 5,924,243 A | 7/1999 | Polowinczak et al. ....... 49/181 |
| 5,927,013 A | 7/1999 | Slocomb et al. ............ 49/181 |
| 5,943,822 A | 8/1999 | Slocomb et al. ............ 49/181 |
| 6,032,417 A | 3/2000 | Jakus et al. ................. 49/181 |
| 6,041,475 A | 3/2000 | Nidelkoff .................... 16/193 |
| 6,041,476 A | 3/2000 | deNormand ................. 16/197 |
| 6,041,550 A | 3/2000 | Tix ............................. 49/404 |
| 6,058,653 A | 5/2000 | Slocomb et al. ............ 49/181 |
| 6,119,398 A | 9/2000 | Yates, Jr. |
| D434,637 S | 12/2000 | Habeck et al. |
| 6,155,615 A | 12/2000 | Schultz ....................... 292/163 |
| 6,161,335 A | 12/2000 | Beard et al. |
| 6,178,696 B1 | 1/2001 | Liang ......................... 49/185 |
| 6,226,923 B1 | 5/2001 | Hicks et al. |
| 6,467,128 B1 | 10/2002 | Damani |
| 6,470,530 B1 | 10/2002 | Trunkle |
| D467,490 S | 12/2002 | Uken et al. |
| 6,622,342 B1 | 9/2003 | Annes et al. |
| 6,679,000 B2 | 1/2004 | Uken et al. |
| 2002/0092241 A1 | 7/2002 | Uken et al. |
| 2002/0129463 A1 | 9/2002 | Newman |

OTHER PUBLICATIONS

BSI Tilt Balance Systems, Balance Systems—BSI, Amesbury Group, Inc., 1996–2001. (4 pgs.), no month available.

Crossbow Balance! Another New Balance in BSI's Quiver, Balance Systems—BSI, Amesbury Group, Inc., Jun. 7, 1999. (3 pgs.).



## FIG. 1



PRIOR ART

FIG. 2A



FIG. 2B



**FIG. 3A**



**FIG. 3B**



FIG. 3C

210



230

FIG. 3D

210



240

250    250

FIG. 3E

210



250

FIG. 3F

U.S. Patent    Nov. 23, 2004    Sheet 7 of 13    US 6,820,368 B2



FIG. 4

U.S. Patent    Nov. 23, 2004    Sheet 8 of 13    US 6,820,368 B2

410



FIG. 5A

410



FIG. 5B



FIG. 6A

FIG. 6B





FIG. 7A

FIG. 7B

FIG. 8A

FIG. 8B



FIG. 9



FIG. 10A

FIG. 10B

FIG. 11A

FIG. 11B

FIG. 12A

FIG. 12B

FIG. 13A

FIG. 13B

US 6,820,368 B2

1

# SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW

## RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/044,005 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on Jan. 11, 2002, now U.S. Pat. No. 6,679,000, which application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Ser. No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on Jan. 12, 2001.

## FIELD OF THE INVENTION

This invention relates to a window balance system for use in a pivotable window assembly.

## BACKGROUND OF THE INVENTION

This invention relates to the field of tilt-in windows. More particularly this invention relates to a balance shoe of a window balance system used in conjunction with a pivot bar mounted on a window sash for rotating the window sash relative to a window frame.

Typical pivotable double hung windows include two window sashes disposed in tracks located in a window frame to allow vertical sliding movement of the sashes. Pivot bars are provided to allow rotational movement of a pivotable window sash about the pivot bars to facilitate cleaning of glazing. To control vertical movement, window balances are used so that the window sashes remain in a position in which they are placed. Balance shoes are used to guide the rotational movement of the window sashes with respect to the window frame. Typically, the balance shoes are coupled to window balances with a connecting member. See, for example, U.S. Pat. No. 6,119,398, entitled "Tilt Window Balance Shoe Assembly with Three Directional Locking" issued to H. Dale Yates, Jr., the disclosure of which is herein incorporated by reference in its entirety.

One of the problems with balance shoes and window balances for pivotable double hung windows is that they are difficult to install. In order to install a pivotable double hung window with balance shoes and window balances, the following installation steps typically must be followed. First, before the window frame is assembled, the balance shoes are inserted into jamb tracks. Next, connecting members are used to attach the balance shoes to the window balances. The balance shoes generally have an opening to accept the pivot bars that are mounted on window sashes. Finally, the sashes are made operable by inserting the pivot bars into the balance shoes and rotating the window sash up to a vertical position in the jamb tracks. The installation process is rather complex and difficult. Repair costs for replacing balance shoes are also significant. In order to change a malfunctioning or failed balance shoe, the jamb tracks either need to be deformed or replaced to gain access to the problematic balance shoe for removal and replacement.

## SUMMARY OF THE INVENTION

In general, in one aspect, the invention relates to a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within a window balance. Embodiments of the invention can include the

2

following features. The connecting device can include one or more retractable tabs that engage the window balance directly. The frame can further include a frame pocket sized to receive a fastener. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

In another aspect, the invention relates to an inverted window balance system for use within a pivotable double hung window assembly. The inverted window balance system includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, which include an extension spring, a system of pulleys, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. Embodiments of this aspect of the invention can include the following features. At least a portion of the balance shoe is disposed within the rigid U-shaped channel. The connecting device can include one or more retractable tabs for engaging the rigid U-shaped channel. The retractable tabs can partially extend through at least one of the plurality of openings in the rigid U-shaped channel. The balance shoe can be further secured to the rigid U-shaped channel with a fastener that interfaces with a frame pocket in the balance shoe. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

In still another aspect, the invention relates to a method of installing an inverted window balance system within a window jamb in a window frame. The method includes four basic steps. The first step is to provide an inverted window balance system that includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, an extension spring, and a system of pulleys disposed within the rigid U-shaped channel, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member located at least partially

US 6,820,368 B2

3

within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. The frame of the balance shoe has a frame bottom surface, a frame front surface, and two frame edge surfaces. The second step is to insert the inverted window balance system into a jamb track of the window jamb, such that an axis extending along a longitudinal direction of the rigid U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track. The third step is to rotate the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the rigid U-shaped channel, such that the frame front surface faces in a downward direction. The final step is to rotate the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces, such that the frame bottom surface faces in the downward direction.

These and other features of the invention will be made apparent from the following description taken in conjunction with the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIG. 1 is a perspective view of a pivotable double hung window assembly;

FIG. 2A is a rear view of inverted window balance system for use with a prior art balance shoe;

FIG. 2B is a rear view of a window balance;

FIG. 3A is one perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 3B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 3A;

FIG. 3C is a rear view of one embodiment of a snap lock inverted balance system;

FIG. 3D is a bottom view of one embodiment of a snap lock balance shoe;

FIG. 3E is a front view of one embodiment of a snap lock balance shoe;

FIG. 3F is a side view of one embodiment of a snap lock balance shoe;

FIG. 4 is a perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 5A is one perspective view of another embodiment of a snap lock balance shoe of the present invention;

FIG. 5B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 5A;

FIG. 6A is a perspective view of one embodiment of a balance shoe of the invention and a rigid U-shaped channel;

FIG. 6B is a perspective view showing the first step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6C is a perspective view showing the second step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6D is a perspective view showing one embodiment of the balance shoe of the invention connected to the rigid U-shaped channel;

FIG. 7A is a front view of a prior art balance shoe attached to a rigid U-shaped channel;

4

FIG. 7B is a side view of the prior art balance shoe attached to the rigid U-shaped channel;

FIG. 8A is a front view of one embodiment of a snap lock balance shoe of the present invention attached to a rigid U-shaped channel;

FIG. 8B is a side view of one embodiment of the snap lock balance shoe of the present invention attached to the rigid U-shaped channel;

FIG. 9 is a front view of a window assembly including one snap lock inverted window balance system of the present invention and one prior art inverted window balance system installed in a window frame;

FIG. 10A is a side view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 10B is a front view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 11 A is a side view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 11B is a front view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12A is a side view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12B is a front view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 13A is a side view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track; and

FIG. 13B is a front view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track.

DETAILED DESCRIPTION OF THE INVENTION

Referring to FIG. 1, shown is a pivotable double hung window assembly 100 in which a snap lock balance shoe constructed in accordance with the teachings of the present invention can be used. The pivotable double hung window assembly 100 includes a window frame 102, a pivotable lower window sash 104, a pivotable upper window sash 106, and a window jamb 107. The pivotable lower window sash 104 and the pivotable upper window sash 106 slide vertically in jamb track 108 within the window jamb 107, while also being able to pivot about a pivot bar 114, as shown in FIG. 9.

FIG. 2A shows a rear view of an inverted window balance system 120 for use in the pivotable double hung window assembly 100. The inverted window balance system 120 includes an inverted window balance 122 used for balancing the weight of either the pivotable lower window sash 104 or the pivotable upper window sash 106 at any vertical position within the window frame 102, and a prior art balance shoe 110 for guiding the rotation of the pivotable lower window sash 104 about the pivot bar 114. A hanging connector 112 connects the prior art balance shoe 110 to the inverted window balance 122. The inverted window balance 122 includes an extension spring 126 connected to a system of pulleys 128 housed within a rigid U-shaped channel 130, and a cord 132 for connecting the system of pulleys 128 to a jamb mounting attachment 134. The jamb mounting

US 6,820,368 B2

5                                                                    6

attachment 134 is used for connecting the inverted window balance system 120 to the window jamb 107. One difference between the inverted window balance 122 and a window balance 140, shown in FIG. 2B, includes the placement of the extension spring 146 above a system of pulleys 148 within the rigid U-shaped channel 150. A cord 152 connects the system of pulleys 148 to a jamb mounting attachment 154. Another difference is that while inverted window balances 122 travel with either the pivotable lower window sash 104 or pivotable upper window sash 106, the window balance 140 remains in a fixed position in the window jamb 107 due to an attachment to the window jamb 107 through an attachment opening 155.

FIGS. 3A and 3B are perspective views of a snap lock balance shoe 210 of one embodiment of the present invention. The snap lock balance shoe 210 has a frame 211 in which is housed a connecting device 212, a locking device 214, and a cam 218. The connecting device 212 can be integral with the frame 211 and attaches the snap lock balance shoe 210 directly within an inverted window balance 622, shown in FIG. 3C. The inverted window balance 622 in combination with the snap lock balance shoe 210 forms a snap lock inverted window balance system 600. The inverted window balance 622 includes an extension spring 626 connected to a system of pulleys 628 housed within a rigid U-shaped channel 630, and a cord 632 for connecting the system of pulleys 628 to a jamb mounting attachment 634, such as a cord terminal or hook.

In the depicted embodiment, the connecting device 212 is a pair of retractable tabs that snap into the rigid U-shaped channel 630. In other embodiments, other connecting devices such as a screw, may be used to secure the frame 211 to the rigid U-shaped channel 630. A fastener 635 located in the inverted window balance 622 can be used to further secure the connection between the snap lock balance shoe 210 and the inverted window balance 622. To accommodate the fastener 635, the snap lock balance shoe 210 can form a connection pocket 213 sized to receive or mate with the fastener 635.

Another element of the snap lock balance shoe 210 visible in FIG. 3A is a keyhole opening 219 located within the cam 218. The keyhole opening 219 is sized to accept the pivot bar 114 extending from either the pivotable lower window sash 104 or the pivotable upper window sash 106, and serves as a connection point between the pivotable lower or upper window sash 104, 106 and the snap lock balance shoe 210. FIG. 3B shows a perspective view of the snap lock balance shoe 210 showing another face of the cam 218.

In the embodiment shown in FIG. 3B, the locking device 214 surrounds the cam 218 and includes a pair of opposing ends 215 connected by a spring member 216. When the pivotable lower window sash 104 is tilted open, the pivot bar 114 rotates, which in turn rotates the cam 218 forcing the opposing ends 215 outward to engage the jamb track 108 of the window frame 102, thereby locking the balance shoe 210 in that location.

FIGS. 3D–3F show different views of one of the embodiments of the snap lock balance shoe 210 of the invention. FIG. 3D is a bottom view of the snap lock balance shoe 210 that shows a frame bottom surface 230. FIG. 3E is a front view of the same embodiment of the snap lock balance shoe 210 that illustrates a frame front surface 240, and FIG. 3F is an side view that shows one of the two frame edge surfaces 250 of the snap lock balance shoe 210.

FIG. 4 shows another embodiment of a snap lock balance shoe 310. The snap lock balance shoe 310 has an elongated

frame 311 in which is housed a connecting device 312, a locking device 314, and a cam 318. Within the cam is a keyhole opening 319 sized to receive the pivot bar 114. The elongated frame 311 has a length L 325 that is greater than about 1.25 inches. When attached to the rigid U-shaped channel 630, the balance shoe 310 extends further outward from the rigid U-shaped channel 630 than the balance shoe 210 attached to a similar sized rigid U-shaped channel 630. The balance shoe 310 allows a fixed-sized rigid U-shaped channel 630 to be used in a larger window having a greater travel distance by extending the length of the entire window balance system by having a longer balance shoe 310. One of the advantages of the present invention is that an installer can create a custom window balance system for a particular window by fitting a fixed-length rigid U-shaped channel 630 with an appropriately sized snap lock balance shoe.

Referring to FIGS. 5A–5B, shown is another embodiment of the present invention of a snap lock balance shoe 410. The snap lock balance shoe 410 has a locking member 422 which engages a back wall of the jamb track 108 locking the balance shoe 410 in that location. The locking member 422 is partially disposed in the frame 411 and includes a plate 423 that engages the back wall of the jamb track 108. The balance shoe 410 also includes a frame 411, a connecting device 412, and a cam 418. The cam 418 is partially disposed within the frame 411 in a space enclosed by the locking member 422. The cam 418 includes a keyhole opening 419 sized to receive the pivot bar 114. Upon rotation of the cam 418 with the pivot bar 114, the locking member 422 is forced away from the frame 411 towards the back wall of the jamb track 108, thereby anchoring the balance shoe 410 in that location within the window frame 102.

FIGS. 6A–6D show one embodiment of a method for securing the snap lock balance shoe 210 within a rigid U-shaped channel 630 with multiple openings 638. It should be noted that each opening 638 on one side of the rigid U-shaped channel 630 has a corresponding opening 638 on the other side of the rigid U-shaped channel 630 to form a pair of openings. The first step, shown in FIG. 6A, is to place a fastener 635, such as a rivet, in one of the pairs of openings 638 in the rigid U-shaped channel 630. The next step, as depicted in FIG. 6B, is to slide the snap lock balance shoe 210 into the rigid U-shaped channel 630 such that the fastener 635 is received in the connection pocket 213 of the snap lock balance shoe 210. As shown in FIG. 6C, the snap lock balance shoe 210 is then rotated down so that the front frame surface 240 is aligned with a bottom wall 636 of the rigid U-shaped channel 630. FIG. 6D shows the last step of attaching the snap lock balance shoe 210 within the rigid U-shaped channel 630. In this step, the connecting device 212 of the snap lock balance shoe 210 snaps into one of the pairs of openings 638 located on the rigid U-shaped channel 630. In alternative embodiments the connection device 212 of the snap lock balance shoe 210 can extend through off-set openings in the rigid U-shaped channel 630. In some embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 with the fastener 635. In other embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 without the fastener 635. It should also be noted that in some embodiments, the snap lock balance shoe 210 can be aligned and secured to the rigid U-shaped channel 630 such that the front frame surface 240 faces upwards instead of downwards as depicted in FIG. 6D.

FIG. 7A is a front view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130. The rigid

US 6,820,368 B2

7

8

U-shaped channel 130 is connected to the prior art balance shoe 110 by the hanging connector 112. No part of the prior art balance shoe 110 lies within the rigid U-shaped channel 130. FIG. 7B is a side view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130 illustrating channel openings 137. Fasteners (not shown) are installed through the channel openings 137 to secure the hanging connector 112 to the rigid U-shaped channel 130.

Referring to FIGS. 8A and 8B, shown is an embodiment of the snap lock balance shoe 210 of the present invention attached to the rigid U-shaped channel 630. The snap lock balance shoe 210 is directly attached within the rigid U-shaped channel 630 by a connecting device 212 located on the frame 211 of the snap lock balance shoe 210. The connecting device 212 extends through a pair of openings 638 located on the rigid U-shaped channel 630.

FIG. 9 is a front view of a pivotable double hung window assembly 800 in which an inverted window balance 122 is attached to a prior art balance shoe 110 by using the hanging connector 112, and the inverted window balance 622 is attached to the snap lock balance shoe 210 of an embodiment of the present invention. Pivot bars 114, as shown in FIG. 9, are secured to the pivotable lower window sash 104. The pivot bars 114 are slidably receivable by both the prior art balance shoe 110 and the snap lock balance shoe 210 and serve as connections between the pivotable lower window sash 104 and respective inverted window balances 122, 622.

An advantage of the type of balance shoe presently disclosed is that the snap lock balance shoe 210 is attached within the rigid U-shaped channel 630 resulting in a longer rigid U-shaped channel 630 than in the inverted balance systems 120 for a given window sash. The longer rigid U-shaped channel 630 of the inverted window balance 622 allows for the use of longer extension springs that provide greater control of the vertical positioning of the window sash than a shorter rigid U-shaped channel 130 with a shorter extension spring. Another advantage of the present invention is that the snap lock balance shoe 210 contains a smaller number of parts than prior art balance shoes 110.

One installation method used to place a snap lock inverted window balance system 600 within the jamb tracks 108 is schematically illustrated in the remaining figures. The snap lock inverted window balance system 600 includes one inverted window balance 622 and one snap lock window balance 210. FIGS. 10A, 11A, 12A, and 13A show the installation method from a side view, while FIGS. 10B, 11B, 12B, and 13B show the method from a front view. The installation method involves an orientation step, a first rotation step, and a second rotation step FIGS. 10A and 10B show the orientation step in the installation method. In the orientation step, the snap lock inverted window balance system 600 is inserted the jamb tracks 108 such that an axis CC 510 in FIG. 10A is perpendicular to a back wall 530 of the jamb tracks 108, while an axis DD 520 in FIG. 10A is parallel to the back wall 530 and the frame front surface 240 is adjacent to a side wall 532 of the jamb tracks 108. FIGS. 11A and 11B show the snap lock inverted window balance system 600 inserted in the jamb tracks 108 as well as an arrow 550 indicating the direction of rotation of the snap lock inverted window balance system 600 required to complete the first rotation step. The first rotation step involves rotating the snap lock inverted window balance system 600 90-degrees about the axis CC 510 such that the frame front surface 240 faces downward. FIGS. 12A and 12B show the snap lock inverted window balance system 600 after the

90-degree rotation around the axis CC 510 has been completed. The second rotation step involves a 90-degree rotation about the axis DD 520. An arrow 560 showing the direction of the second rotation step is shown in FIGS. 12A and 12B. FIGS. 13A and 13B show in two different views the snap lock inverted window balance system 600 after the installation method has been completed. The cord terminal or any other jamb mounting attachment 634 (see FIG. 9) can then be screwed or hooked into place to anchor the snap lock inverted window balance system 600.

The installation method just described can be carried out in reverse to remove the snap lock inverted window balance system 600 from the jamb track 108 of the window frame 102 to allow for easy replacement of the snap lock balance shoe 210 or the snap lock inverted window balance system 600 itself. In order to replace inverted window balance systems 120 with prior art balance shoes 110, either the jamb tracks 108 need to be warped or completely removed in order to replace the prior art balance shoe 110 of the inverted window balance system 120.

While there have been described several embodiments of the invention, other variants and alternatives will be obvious to those skilled in the art. Accordingly, the scope of the invention is not limited to the specific embodiments shown.

What is claimed is:

1. A window balance system comprising:

a U-shaped channel comprising a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the fist cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe, wherein the balance shoe comprises:

   a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel;

   a locking member proximal to the enlarged first end;

   a cam in communication with the locking member; and

   a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

2. A window balance system comprising:

a U-shaped channel comprising a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe, wherein the balance shoe comprises:

   a frame comprising an enlarged fist end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member, and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

US 6,820,368 B2

9

10

3. The window balance system of claim 2 wherein the connecting device comprises a rivet.

4. The window balance system of claim 2 wherein the connecting device comprises a screw.

5. The window balance system of claim 2 wherein the connecting device comprises a resilient tab.

6. The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

7. The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member.

8. The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

9. The window balance system of claim 2 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

10. The window balance system of claim 9 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

11. The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

* * * * *

# THE
# AMERICAN
# HERITAGE
# DICTIONARY
## OF THE
## ENGLISH LANGUAGE

### THIRD EDITION



**HOUGITON MIFFLIN COMPANY**

*Boston · New York · London*

Words are included in this Dictionary on the basis of their usage. Words that are known to have current trademark registrations are shown with an initial capital and are also identified as trademarks. No investigation has been made of common-law trademark rights in any word, because such investigation is impracticable. The inclusion of any word in this Dictionary is not, however, an expression of the Publisher's opinion as to whether or not it is subject to proprietary rights. Indeed, no definition in this Dictionary is to be regarded as affecting the validity of any trademark.

American Heritage and the eagle logo are registered trademarks of Forbes Inc. Their use is pursuant to a license agreement with Forbes Inc.

Houghton Mifflin Company gratefully acknowledges Mead Data Central, Inc., providers of the LEXIS®/NEXIS® services, for its assistance in the preparation of this edition of *The American Heritage Dictionary.*

Copyright © 1992 by Houghton Mifflin Company.
All rights reserved.

No part of this work may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, or by any information storage or retrieval system without the prior written permission of Houghton Mifflin Company unless such copying is expressly permitted by federal copyright law. Address inquiries to Permissions, Houghton Mifflin Company, 2 Park Street, Boston, MA 02108.

*Library of Congress Cataloging-in-Publication Data*

The American heritage dictionary of the English language.
—3rd ed.
    p.    cm.
  ISBN 0-395-44895-6
  1. English language—Dictionaries.
PE1628.A623    1992                          92-851
423—dc20                                      CIP

Manufactured in the United States of America



**mountain ash**
American mountain ash
*Sorbus americana*



**mountaineer**
Climbing a wall of ice



**mountain laurel**
*Kalmia latifolia*



**Louis Mountbatten**

blotch of color. **2.** A variegated pattern, as on marble. [Probably back-formation from MOTLEY.] **—mot'tler** *n.*

**mot·tled** (mŏt'ld) *adj.* Spotted or blotched with different shades or colors.

**mottled enamel** *n.* Discolored and spotted tooth enamel caused by excessive amounts of fluorides in drinking water.

**mot·to** (mŏt'ō) *n., pl.* **-toes** or **-tos.** **1.** A brief statement used to express a principle, a goal, or an ideal. See Synonyms at **saying.** **2.** A sentence, phrase, or word of appropriate character inscribed on or attached to an object. **3.** A maxim adopted as a guide to one's conduct. [Italian, word, motto, probably from Vulgar Latin *\*mŭttum,* word. See MOT.]

**mouch** (mōōch) *v.* Chiefly British. Variant of **mooch.**

**moue** (mōō) *n.* A small grimace; a pout. [French, from Old French *moe,* of Germanic origin.]

**mou·flon** also **mouf·flon** (mōōf'lŏn') *n., pl.* **mouflon** or **-flons** also **moufflon** or **-flons.** A small, wild European sheep (*Ovis musimon*), native to Sardinia and Corsica and having large curving horns in the male. [French, alteration of Italian dialectal *muvrone,* from Late Latin *muflō, mufrōn-.*]

**mouil·lé** (mōō-yā') *adj.* Linguistics. Pronounced as a palatal sound, as the *ll* in French *fille.* [French, past participle of *mouiller,* to moisten, palatalize, from Old French *moillier,* to soften by soaking. See MOIL.]

**mou·jik** (mōō-zhēk', -zhĭk') *n.* Variant of **muzhik.**

**mou·lage** (mōō-läzh') *n.* **1.** A mold, as of a footprint, made or cast, as in criminal investigation. **2.** The making of such a mold or cast, as with plaster of Paris. [French, from Old French, fee for inspection of wood by use of a standard frame, from *mouler,* to mold, measure with a standard frame, from *moule,* mold. See MOLD [1].]

**mould** [1] (mōld) *n. & v.* Chiefly British. Variant of **mold** [1].
**mould** [2] (mōld) *n. & v.* Chiefly British. Variant of **mold** [2].
**mould** [3] (mōld) *n.* Chiefly British. Variant of **mold** [3].
**moul·der** (mōl'dər) *v.* Chiefly British. Variant of **molder.**
**mould·ing** (mōl'dĭng) *n.* Chiefly British. Variant of **molding.**
**mould·y** (mōl'dē) *adj.* Chiefly British. Variant of **moldy.**

**mou·lin** (mōō-lăn') *n.* A nearly vertical shaft or cavity worn in a glacier by surface or rock debris falling through a crack in the ice. [French, mill, moulin, from Old French *molin,* mill, from Late Latin *molīnum.* See MILL [1].]

**Moul·mein** (mōl-mān', mōl-). A city of southern Burma on the Gulf of Martaban east of Rangoon. Population, 219,991.

**moult** (mōlt) *v. & n.* Chiefly British. Variant of **molt.**

**mound** (mound) *n.* **1.** A pile of earth, gravel, sand, rocks, or debris heaped for protection or concealment. **2.** A natural elevation, such as a small hill. **3.** A raised mass, as of hay; a heap. See Synonyms at **heap.** **4.** Archaeology. A large pile of earth or stones marking a burial site. **5.** Baseball. The slightly elevated pitcher's area in the center of the diamond. **6.** Archaic. A hedge or fence. **—mound** *tr.v.* **mound·ed, mound·ing, mounds.** **1.** To fortify or conceal with a mound. **2.** To heap into a raised mass. [Origin unknown.]

**mound·bird** (mound'bûrd') *n.* See **megapode.**
**mound builder** *n.* See **megapode.**

**Mound Builder** *n.* A member of any of various Native American peoples flourishing from around the 5th century B.C. to the 16th century A.D. especially in the Ohio and Mississippi valleys, practicing settled agriculture and known for their often large burial and effigy mounds.

**mount** [1] (mount) *v.* **mount·ed, mount·ing, mounts.** *—tr.* **1.** To climb or ascend: *mount stairs.* **2.** To place oneself upon; get up on: *mount a horse; mount a platform.* **3.** To climb onto (a female) for copulation. Used of male animals. **4.a.** To furnish with a horse for riding. **b.** To set on a horse: *mount the saddle.* **5.** To set in a raised position: *mount a bed on blocks.* **6.a.** To fix securely to a support: *mount an engine in a car.* **b.** To place or fix on or in the appropriate support or setting for display or study: *mount stamps in an album; mount a specimen on a slide.* **7.** To provide with scenery, costumes, and other equipment necessary for production: *mount a play.* **8.** To organize and equip: *mount an army.* **9.** To prepare and set in motion: *mount an attack.* **10.a.** To set in position for use: *mount guns.* **b.** To carry as equipment: *The warship mounted ten guns.* **11.** To post (a guard). *—intr.* **1.** To go upward; rise. **2.** To get up on something, as a horse or bicycle. **3.** To increase in amount, extent, or intensity: *Expenses are mounting up. Costs quickly mounted.* See Synonyms at **rise.** **—mount** *n.* **1.** The act or manner of mounting. **2.** A means of conveyance, such as a horse, on which to ride. **3.** An opportunity to ride a horse in a race. **4.** An object to which another is affixed or on which another is placed for accessibility, display, or use, especially: **a.** A glass slide for use with a microscope. **b.** A hinge used to fasten stamps in an album. **c.** A setting for a jewel. **d.** An undercarriage or stand on which a device rests while in service. [Middle English *mounten,* from Old French *monter,* from Vulgar Latin *\*montāre,* from Latin *mōns, mont-,* mountain. See **men-** [2] in Appendix.] **—mount'a·ble** *adj.* **—mount'er** *n.*

**mount** [2] (mount) *n.* **1.** *Abbr.* **mt., Mt.** A mountain or hill. Used especially as part of a proper name. **2.** Any of the seven fleshy cushions around the edges of the palm of the hand in palmistry. [Middle English *mont,* from Old English *munt* and from Old

French *mont, munt,* both from Latin *mōns, mont-.* See **men-** [2] in Appendix.]

**moun·tain** (moun'tən) *n.* **1.** *Abbr.* **mt., Mt., mtn., Mtn.** A natural elevation of the earth's surface having considerable mass, generally steep sides, and a height greater than that of a hill. **2.** A large heap: *a mountain of laundry.* **b.** A huge quantity: *a mountain of trouble.* [Middle English *mountaine,* from Old French *montaigne, muntaigne,* from Vulgar Latin *\*montānea,* from feminine of *\*montāneus,* of a mountain, from Latin *montānus,* from *mōns, mont-,* mountain. See **men-** [2] in Appendix.] **—moun'tain·y** *adj.*

**mountain ash** *n.* Any of various deciduous trees of the genus *Sorbus,* such as the rowan, having clusters of small white flowers and bright orange-red berries arranged in clusters.

**mountain avens** *n.* A creeping evergreen plant (*Dryas octopetala*) in the rose family, widely distributed in northern portions of Eurasia and North America and having flowers with white petals and feathery styles.

**mountain beaver** *n.* See **sewellel.**

**mountain bluebird** *n.* A bluebird (*Sialia currucoides*) of the western United States, having a light blue breast.

**Moun·tain Brook** (moun'tən). A city of north-central Alabama, a suburb of Birmingham. Population, 19,718.

**mountain cat** *n.* See **mountain lion.**

**mountain climbing** *n.* Sports. The climbing of mountains, especially the scaling of rock faces by means of special equipment and technique.

**mountain cranberry** *n.* See **cowberry.**

**mountain dew** *n.* Illegally distilled corn liquor.

**moun·tain·eer** (moun'tə-nîr') *n.* **1.** A native or inhabitant of a mountainous area. **2.** Sports. One who climbs mountains for sport. **—mountaineer** *intr.v.* **-eered, -eer·ing, -eers.** Sports. To climb mountains for sport.

**moun·tain·eer·ing** (moun'tə-nîr'ĭng) *n.* Sports. The climbing of mountains for sport.

**mountain goat** *n.* A goat antelope (*Oreamnos americanus*) of the northwest North American mountains, having short, curved black horns and shaggy, yellowish-white hair and beard. Also called Rocky Mountain goat.

**mountain laurel** *n.* An evergreen shrub (*Kalmia latifolia*) of eastern North America, having leathery, poisonous leaves and clusters of pink or white flowers. Also called calico bush.

♦**mountain lion** *n.* A large, powerful, wild cat (*Felis concolor*) of mountainous regions of the Western Hemisphere, having an unmarked tawny body. Also called catamount, cougar, mountain cat, ♦painter, ♦panther, ♦puma.

**moun·tain·ous** (moun'tə-nəs) *adj.* **1.** Having many mountains. **2.** Resembling a mountain in size: *mountainous waves.*

**mountain range** *n.* A series of mountain ridges alike in form, direction, and origin.

**mountain sheep** *n.* **1.** See **bighorn.** **2.** A wild sheep inhabiting a mountainous area.

**mountain sickness** *n.* Altitude sickness brought on by the diminished oxygen pressure at mountain elevations.

**moun·tain·side** (moun'tən-sīd') *n.* The side of a mountain.

**Mountain Standard Time** *n.* *Abbr.* **MST, M.S.T.** Standard time in the seventh time zone west of Greenwich, England, reckoned at 105° west and used in the Rocky Mountain states of the United States. Also called Mountain Time.

**moun·tain·top** (moun'tən-tŏp') *n.* The summit of a mountain.

**Mountain View.** A city of western California on San Francisco Bay northwest of San Jose. Population, 58,655.

**mountain whitefish** *n.* A whitefish (*Prosopium williamsoni*) with a slender body and short head, found in mountain streams of western North America.

**Mount Ath·os** (mount ăth'ŏs, ā'thŏs, ä'thŏs). See **Athos.**

**Mount·bat·ten** (mount-băt'n), **Louis.** First Earl Mountbatten of Burma. 1900–1979. British naval officer and colonial administrator who was supreme Allied commander in southeast Asia (1943–1946) and the last viceroy and governor-general of India (1947). He was assassinated by the Irish Republican Army.

**Mount Clem·ens** (klĕm'ənz). A city of southeast Michigan north-northeast of Detroit. Population, 18,806.

**Mount Des·ert Island** (dĕz'ərt). An island in the Atlantic Ocean off the southern coast of Maine. Named by 17th-century French explorers for its *Monts Deserts,* or "wilderness peaks," it is a popular summer resort.

**moun·te·bank** (moun'tə-băngk') *n.* **1.** A hawker of quack medicines who attracts customers with stories, jokes, or tricks. **2.** A flamboyant charlatan. See Synonyms at **impostor.** **—mountebank** *v.* **-banked, -bank·ing, -banks.** *—intr.* To act as a mountebank. *—tr.* Archaic. To ensnare or prevail over with trickery. [Italian *montambanco,* from the phrase *monta in banco,* one gets up onto the bench : *monta,* one gets up. third person sing. present tense of *montare,* to get up (from Vulgar Latin *\*montāre;* see MOUNT [1]) + *im,* onto (variant of *in,* onto, from Latin *in;* see IN- [2]) + *banco,* bench (variant of *banca,* from Italian, bench, table, from Old High German *bank*).]

**Mount·ie** also **Mount·y** (moun'tē) *n., pl.* **-ies.** Informal. A member of the Royal Canadian Mounted Police.

# THE
# AMERICAN
# HERITAGE
# DICTIONARY

OF THE

ENGLISH LANGUAGE

THIRD EDITION



**HOUGHTON MIFFLIN COMPANY**

*Boston · New York · London*

Words are included in this Dictionary on the basis of their usage. Words that are known to have current trademark registrations are shown with an initial capital and are also identified as trademarks. No investigation has been made of common-law trademark rights in any word, because such investigation is impracticable. The inclusion of any word in this Dictionary is not, however, an expression of the Publisher's opinion as to whether or not it is subject to proprietary rights. Indeed, no definition in this Dictionary is to be regarded as affecting the validity of any trademark.

American Heritage and the eagle logo are registered trademarks of Forbes Inc. Their use is pursuant to a license agreement with Forbes Inc.

Houghton Mifflin Company gratefully acknowledges Mead Data Central, Inc., providers of the LEXIS®/NEXIS® services, for its assistance in the preparation of this edition of *The American Heritage Dictionary.*

Copyright © 1992 by Houghton Mifflin Company.
All rights reserved.

No part of this work may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, or by any information storage or retrieval system without the prior written permission of Houghton Mifflin Company unless such copying is expressly permitted by federal copyright law. Address inquiries to Permissions, Houghton Mifflin Company, 2 Park Street, Boston, MA 02108.

*Library of Congress Cataloging-in-Publication Data*

The American heritage dictionary of the English language.
—3rd ed.
    p.    cm.
    ISBN 0-395-44895-6
    1. English language—Dictionaries.
PE1628.A623    1992                        92-851
423—dc20                                      CIP

Manufactured in the United States of America

arising from or as if from an unpredicted source: *The income from their garage sale was a spillover from their habit of not throwing anything away.*

**spill·way** (spĭl′wā′) *n.* A channel for an overflow of water, as from a reservoir.

**spilt** (spĭlt) *v.* A past tense and a past participle of **spill**[1].

**spilth** (spĭlth) *n.* **1.** The act of spilling. **2.** An amount spilled. [From SPILL[1].]



**spinal column**

**spin** (spĭn) *v.* **spun** (spŭn), **spin·ning, spins.** —*tr.* **1. a.** To draw out and twist (fibers) into thread. **b.** To form (thread or yarn) in this manner. **2.** To form (a web or cocoon, for example) by extruding viscous filaments. **3.** To make or produce by or as if by drawing out and twisting. **4. a.** To tell, especially imaginatively: *spin tales for the children.* **b.** To prolong or extend: *spin out a visit with an old friend.* **5.** To cause to rotate swiftly; twirl. **6.** To shape or manufacture by a twirling or rotating process. **7.** *Slang.* To play (a phonograph record or records), especially as a disc jockey. —*intr.* **1.** To make thread or yarn by drawing out and twisting fibers. **2.** To extrude viscous filaments, forming a web or cocoon. **3.** To rotate rapidly; whirl. See Synonyms at **turn. 4.** To seem to be whirling, as from dizziness; reel: *My head spun after doing a cartwheel.* **5.** To ride or drive rapidly. **6.** To fish with a light rod, lure, and line and a reel with a stationary spool. —**spin** *n.* **1.** The act of spinning. **2.** A swift whirling motion. **3.** A state of mental confusion. **4.** *Informal.* A short drive in a vehicle: *took a spin in the new car.* **5.** The flight condition of an aircraft in a nose-down, spiraling, stalled descent. **6. a.** The distinctive complex of connotations or implications inherent in a point of view: *"Dryden . . . was adept at putting spin on an apparently neutral recital of facts"* (Robert M. Adams). **b.** Distinctive character; style: *an innovative chef who puts a new spin on traditional fare.* **c.** *Slang.* Interpretation, especially of a politician's remarks, promulgated to sway public opinion. **7.** *Physics.* **a.** The intrinsic angular momentum of a subatomic particle. Also called *spin angular momentum.* **b.** The total angular momentum of an atomic nucleus. **c.** A quantum number expressing spin angular momentum. —*phrasal verbs.* **spin off.** To derive (a company or product, for example) from something larger. **spin out.** To rotate out of control, as a skidding car leaving a roadway. —*idiom.* **spin (one's) wheels.** *Informal.* To expend effort with no result. [Middle English *spinnen,* from Old English *spinnan.* See **(s)pen-** in Appendix.]

**spi·na bif·i·da** (spī′nə bĭf′ĭ-də) *n.* A congenital defect in which the spinal column is imperfectly closed so that part of the meninges or spinal cord protrudes, often resulting in hydrocephalus and other neurological disorders. Also called *schistorrhachis.* [New Latin *spīna bifida* : Latin *spīna,* spine + Latin *bifida,* feminine of *bifidus,* split in two.]



**spinet**

**spin·ach** (spĭn′ĭch) *n.* **1.** A widely cultivated southwest Asian plant (*Spinacia oleracea*) having succulent, edible leaves. **2.** The leaves of this plant, eaten as a vegetable. [Middle English, from Old French *espinache,* from Medieval Latin *spinachium,* from Arabic *'isfānāh,* from Persian *aspanākh.*]

**spi·nal** (spī′nəl) *adj.* **1.** Of, relating to, or situated near the spine or spinal cord; vertebral: *spinal injury.* **2.** Resembling a spine or spinal part. —**spinal** *n.* An anesthetic injected into the spinal cord to induce partial or complete anesthesia. —**spi′nal·ly** *adv.*

**spinal anesthesia** *n.* Partial or complete anesthesia produced by injecting an anesthetic into the spinal canal.

**spinal canal** *n.* The passage formed by successive openings in the articulated vertebrae through which the spinal cord and its membranes pass. Also called *vertebral canal.*

**spinal column** *n.* The series of articulated vertebrae, separated by intervertebral disks and held together by muscles and tendons, that extends from the cranium to the coccyx or the end of the tail, encasing the spinal cord and forming the supporting axis of the body; the spine. Also called *vertebral column.*

**spinal cord** *n.* The thick, whitish cord of nerve tissue that extends from the medulla oblongata down through the spinal column and from which the spinal nerves branch off to various parts of the body.

**spinal ganglion** *n.* Any of the sensory ganglia situated on the dorsal root of each spinal nerve.

**spinal meningitis** *n.* Inflammation of the membranes enclosing the spinal cord, especially a usually fatal form that affects infants and young children and is caused by a strain of gram-negative bacteria (*Hemophilus influenzae*) formerly thought to cause influenza.

**spinal nerve** *n.* Any of the nerves that arise in pairs from the spinal cord. There are 31 pairs of spinal nerves in the human body.

**spin angular momentum** *n.* *Physics.* See **spin** (sense 7a).

**spin control** *n.* *Slang.* Efforts made especially by politicians to ensure a favorable interpretation of their words and actions: *"Frequently events matter less than . . . spin control—who in which campaign can explain why something doesn't mean what it seems"* (Edward M. Kennedy).

**♦spin·dle** (spĭn′dl) *n.* **1. a.** A rod or pin, tapered at the ends, on which fibers are spun by hand into thread and then wound. **b.** A similar rod or pin used for spinning on a spinning wheel. **c.** A pin or rod holding a bobbin or spool on which thread is wound on an automated spinning machine. **2.** Any of various mechanical parts that revolve or serve as axes for larger revolving parts, as in



**spinnaker**
Parachute spinnaker
on a catamaran



**spinning wheel**
Foot-operated
spinning wheel

a lathe or printing press. **3.** A rod on which a stack of forms may be impaled. **4.** A baluster. **5.** *Biology.* The spindle-shaped achromatic structure, composed of microtubules, along which the chromosomes are distributed in mitosis and meiosis. **5.** *Coastal New Jersey.* See **dragonfly.** See Regional Note at **dragonfly.** —**spindle** *v.* **-dled, -dling, -dles.** —*tr.* To impale or perforate on a spindle: *Do not fold, spindle, or mutilate this card.* —*intr.* To grow into a thin, elongated, or weak form. [Middle English *spindel,* from Old English *spinel.* See **(s)pen-** in Appendix.]

**spindle cell** *n.* A spindle-shaped cell characteristic of certain tumors.

**spindle fiber** *n.* One of a network of achromatic filaments that extend inward from the poles of a dividing cell, forming a spindle-shaped figure.

**spindle tree** *n.* Any of various shrubs or trees of the genus *Euonymus,* having brightly colored, arillate seeds and small, greenish or purplish axillary flowers. [So called because the wood is often used to make spindles.]

**spin·dling** (spĭnd′lĭng) *adj.* Spindly.

**spin·dly** (spĭnd′lē) *adj.* **-dli·er, -dli·est.** Slender and elongated, especially in a way that suggests weakness.

**spin-doc·tor** (spĭn′dŏk′tər) *n.* *Slang.* A representative for a person, especially a politician, who publicizes favorable interpretations of that person's words or actions: *"Some inconspicuous remark . . . could come back to haunt either candidate; the pundits' and spin-doctors' remarks could change public perceptions of the debate"* (Newsweek).

**spin-drift** (spĭn′drĭft′) *n.* Windblown sea spray. Also called *spoondrift.* [Variant of Scots *spendrift* : *spene* (variant of obsolete *spoon,* to run before the wind) + DRIFT.]

**spine** (spīn) *n.* **1.** The spinal column of a vertebrate. **2.** *Zoology.* Any of various pointed projections, processes, or appendages of animals. **3.** *Botany.* A strong, sharp-pointed, usually woody outgrowth from a stem or leaf; a thorn. **4.** Something that resembles or suggests a backbone, as: **a.** The hinged back of a book. **b.** The crest of a ridge. **5.** Strength of character; courage or willpower. [Middle English, from Old French *espine,* from Latin *spīna.*]

**spi·nel** also **spi·nelle** (spĭ-nĕl′) *n.* A hard, variously colored mineral with composition $MgAl_2O_4$, with iron, zinc, or manganese sometimes partly or wholly replacing magnesium. The red variety is valued as a gem and is sometimes confused with ruby. [Italian *spinella,* diminutive of *spina,* thorn (from its sharply pointed crystals), from Latin *spīna.*]

**spine·less** (spīn′lĭs) *adj.* **1.** Lacking courage or willpower. **2.** *Biology.* **a.** Having no spiny processes. **b.** Lacking a spinal column; invertebrate. —**spine′less·ly** *adv.* —**spine′less·ness** *n.*

**spi·nelle** (spĭ-nĕl′) *n.* Variant of **spinel.**

**spi·nes·cent** (spī-nĕs′ənt) *adj.* *Biology.* **1.** Having a spine or spines. **2.** Terminating in a spine. [Late Latin *spīnēscēns, spīnēscent-,* present participle of *spīnēscere,* to become thorny, from Latin *spīna,* thorn.] —**spi·nes′cence** *n.*

**spin·et** (spĭn′ĭt) *n.* *Music.* **1. a.** A small, compact upright piano. **b.** A small, compact upright electronic organ. **2.** A small harpsichord with a single keyboard. [Obsolete French *espinette,* from Italian *spinetta,* perhaps diminutive of *spina,* thorn (presumably so called because the strings of the original instrument were plucked with quills). See SPINE1.]

**Spin·garn** (spĭn′gärn′), **Joel Elias.** 1875–1939. American poet and critic. He was a founder (1909) and president (1930-1939) of the National Association for the Advancement of Colored People.

**spi·nif·er·ous** (spī-nĭf′ər-əs) *adj.* *Biology.* Spine-bearing. [From Late Latin *spīnifer* : Latin *spīna,* thorn + Latin *-fer, -fer.*]

**spi·ni·fex** (spī′nə-fĕks′) *n.* Any of various clump-forming, perennial Australian grasses, chiefly of the genus *Triodia,* growing in arid regions and having awl-shaped, pointed leaves. [New Latin *Spinifex,* former genus name : Latin *spīna,* thorn + Latin *-fex;* see **dhē-** in Appendix.]

**spin·na·ker** (spĭn′ə-kər) *n.* *Nautical.* A large triangular sail set on a spar that swings out opposite the mainsail, used on racing yachts when running before the wind. [Origin unknown.]

**spin·ner** (spĭn′ər) *n.* **1.** One that spins: *a spinner of flax; a spinner of tall tales.* **2.** A fishing lure that rotates rapidly. **3.** A fairing fitted over the hub of the propeller in some aircraft. **4.** *Games.* A device consisting of a dial and an arrow that is spun to indicate the next move in some board games.

**spin·ner·et** (spĭn′ə-rĕt′) *n.* **1.** Any of various tubular structures from which spiders and certain insect larvae, such as silkworms, secrete the silk threads from which they form webs or cocoons. **2.** A device for making rayon, nylon, and other synthetic fibers, consisting of a plate pierced with holes through which plastic material is extruded in filaments.

**spin·ney** (spĭn′ē) *n., pl. -neys. Chiefly British.* A small grove; a copse. [Obsolete French *espinoi,* from Old French *espinei,* thorny place, from Vulgar Latin *\*spīnēta,* pl. of Latin *spīnētum,* thorn hedge, from *spīna,* thorn.]

**spin·ning** (spĭn′ĭng) *n.* **1.** The process of making fibrous material into yarn or thread. **2.** The act of fishing with a light rod, lure, and line and a reel with a stationary spool.

**spinning frame** *n.* A machine that draws and twists fibers into yarn and winds it onto spindles.

THE

# AMERICAN

# HERITAGE

# DICTIONARY

OF THE

ENGLISH LANGUAGE

THIRD EDITION



**HOUGITON MIFFLIN COMPANY**

*Boson · New York · London*

Words are included in this Dictionary on the basis of their usage. Words that are known to have current trademark registrations are shown with an initial capital and are also identified as trademarks. No investigation has been made of common-law trademark rights in any word, because such investigation is impracticable. The inclusion of any word in this Dictionary is not, however, an expression of the Publisher's opinion as to whether or not it is subject to proprietary rights. Indeed, no definition in this Dictionary is to be regarded as affecting the validity of any trademark.

American Heritage and the eagle logo are registered trademarks of Forbes Inc. Their use is pursuant to a license agreement with Forbes Inc.

Houghton Mifflin Company gratefully acknowledges Mead Data Central, Inc., providers of the LEXIS®/NEXIS® services, for its assistance in the preparation of this edition of *The American Heritage Dictionary.*

Copyright © 1992 by Houghton Mifflin Company.
All rights reserved.

No part of this work may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, or by any information storage or retrieval system without the prior written permission of Houghton Mifflin Company unless such copying is expressly permitted by federal copyright law. Address inquiries to Permissions, Houghton Mifflin Company, 2 Park Street, Boston, MA 02108.

*Library of Congress Cataloging-in-Publication Data*

The American heritage dictionary of the English language. —3rd ed.
  p.    cm.
  ISBN 0-395-44895-6
  1. English language—Dictionaries.
PE1628.A623    1992                    92-851
423—dc20                               CIP

Manufactured in the United States of America

Case 1:05-cv-12082-DPW   Document 92-7   Filed 07/11/2008   Page 1 of 1

**-boid** (rŏm′boid′) n. A parallelogram with unequal adjacent sides. —**rhomboid** also **rhom·boi·dal** (-boid′l) adj. Shaped like a rhombus or rhomboid.

**-bus** (rŏm′bəs) n., pl. **-bus·es** or **-bi** (-bī). An equilateral parallelogram. [Late Latin, from Latin, flatfish, magician's circle, from Greek rhombos, rhombus. See **wer-**² in Appendix.]

**-chus** (rŏng′kəs) n., pl. **-chi** (-kī). A coarse rattling bronchial tube. [Latin, a snoring, from Greek *rhonkhos, variant rhenkos, rhenkhos, from rhenkein, to snore.] —**rhon′chal**, **thon′chi·al** (-kē-əl) adj.

**-dda** (rŏn′də, hrŏn′thä). A municipal borough of southern Wales northwest of Cardiff. Coal mining was particularly important to its economy in the 1920's and 1930's. Population, 7,700.

**-ne** or **Rhône** (rōn). A river rising in the Alps of south-central Switzerland and flowing about 813 km (505 mi) westsouthwest and northwest to Lake Geneva then into eastern France, where it joins the Saône River at Lyons and continues southward to the Mediterranean Sea.

**. or r.h.p.** abbr. Rated horsepower.

**-pos·i·tive** (är′äch-pŏz′ĭ-tĭv) adj. Containing an Rh factor.

**·barb** (rōō′bärb′) n. **1.** Any of several plants of the genus Rheum, especially R. rhabarbarum, having long, green or reddish edible leafstalks that are edible when sweetened and cooked. Also called **pie plant**. **2.** The dried, bitter-tasting rhizome and roots of Rheum palmatum or R. officinale of eastern Asia, used as a laxative. **3.** Informal. A quarrel, fight, or heated discussion. [Middle English rubarbe, from Old French, from Late Latin reubarbarum, probably alteration (influenced by Greek rhēon) of rhabarbarum : rha, rhubarb (from Greek, perhaps from Rha, the Volga River) + Latin barbarum, neuter of barbarus, barbarian, foreign; see **BARBAROUS**.]

**WORD HISTORY:** The word rhubarb may contain two hidden references to its origins. The first of these is in the rhu– part of the word, which can be traced back to the Greek word rha, meaning "rhubarb." According to the Late Latin historian Ammianus Marcellinus, rhubarb was named rha because it grew near the river called Rha, which we know as the Volga. The –barb part of rhubarb was actually added first to Late Latin rha, descended from Greek rha, in the form rhabarbarum, barbarum being the neuter form of barbarus, "foreign." Another Greek word for rhubarb, rhēon, influenced the Late Latin word rhabarbarum, giving us barbarum, which yielded Old French reubarbe. The Old French in gave us Middle English rubarbe, first recorded in a work written around 1390. In imitation of the way the Greek word rha spelled, an h was added, completing the long journey of old into English from the banks of the Volga in classical times.

**mb** (rŭm, rŭmb) n. Nautical. **1.** A rhumb line. **2.** One of points of the mariner's compass. [Possibly from Spanish or Portuguese rumbo, course, direction, ultimately from Latin rhombus, rhombus. See **RHOMBUS**.]

**n·ba** (rŭm′bə, rōōm′-, rōōm′-) n. Variant of rumba.

**mb line** n. Nautical. The path of a ship that maintains a fixed compass direction, shown on a map as a line crossing all meridians at the same angle. Also called **loxodromic curve.**

**ne** also **rime** (rīm) —n. **1.** Correspondence of terminal sounds of words or lines of verse. **2. a.** A poem or verse having regular correspondence of sounds, especially at the ends of lines. **b.** Poetry or verse of this kind. **3.** A word that corresponds with another in terminal sound, as behold and cold. —v. **rhymed**, **rhym·ing, rhymes** also **rimed**, **rim·ing, rimes.** —intr. **1.** To have a rhyme. **2.** To compose rhymes or verse. **3.** To make use of rhymes in composing verse. —tr. **1.** To put into rhyme or pose with rhymes. **2.** To use (a word or words) as a rhyme. [Alteration (influenced by **RHYTHM**) of Middle English rime, from Old French, of Germanic origin. See **ar-** in Appendix.]

**·er** also **rim·er** (rī′mər) n. One who composes rhymes. Synonyms at poet.

**ne royal** n. **1.** A form of verse having stanzas with seven lines in iambic pentameter rhyming ababbcc. **2.** One of these lines.

**ne scheme** n. The arrangement of rhymes in a poem or stanza.

**ne·ster** also **rime·ster** (rīm′stər) n. **1.** One who composes light verse. **2.** A minor or inferior poet. See Synonyms at poet.

**ming slang** (rī′mĭng) n. Slang in which a word is replaced by a word or phrase that rhymes with it, as kiss by hit or miss.

**·cho·ce·pha·lian** (rĭng′kō-sə-fāl′yən) adj. Of or belonging to the Rhynchocephalia, an order of mostly extinct lizardlike reptiles. —n. A rhynchocephalian reptile. [From New Latin Rhynchocephalia, order name : Greek rhunkhos, beak + Greek kephalē, head; see **CEPHALIC**.]

**·lite** (rī′ə-līt′) n. A fine-grained extrusive volcanic rock,

**lines.** [Greek rhuax, stream (from rhein, to flow; see **sreu-** in Appendix) + –**LITE**.]

**Rhys** (rēs), **Jean.** 1894–1979. West Indian-born British writer known for Wide Sargasso Sea (1966), a novel based on the character of the first Mrs. Rochester in Charlotte Brontë's Jane Eyre.

**rhythm** (rĭth′əm) n. **1.** Movement or variation characterized by the regular recurrence or alternation of different quantities or conditions: the rhythm of the tides. **2.** The patterned, recurring alternations of contrasting elements of sound or speech. **3.** Music. **a.** A regular pattern formed by a series of notes of differing duration and stress. **b.** A specific kind of such a pattern: a waltz rhythm. **c.** A group of instruments supplying the rhythm in a band. **4. a.** The pattern or flow of sound created by the arrangement of stressed and unstressed syllables in accentual verse or of long and short syllables in quantitative verse. **b.** The similar but less formal sequence of sounds in prose. **c.** A specific kind of metrical pattern or flow: iambic rhythm. **5. a.** The sense of temporal development created in a work of literature or a film by the arrangement of formal elements such as the length of scenes, the nature and amount of dialogue, or the repetition of motifs. **b.** A regular or harmonious pattern created by lines, forms, and colors in painting, sculpture, and other visual arts. **6.** The pattern of development produced in a literary or dramatic work by repetition of elements such as words, phrases, incidents, themes, images, and symbols. **7.** Procedure or routine characterized by regularly recurring elements, activities, or factors: the rhythm of civilization; the rhythm of the lengthy negotiations. [Latin rhythmus, from Greek rhuthmos. See **ar-** in Appendix.]

**SYNONYMS:** rhythm, meter, cadence. These nouns are compared as they denote the regular patterned ebb and rise of accented and unaccented sounds, especially in music, speech, or verse. Rhythm, the most comprehensive, suggests the recurring flow of alternating elements: the rhythm of the seasons; the rhythm of life. "Rhythm was described by Schopenhauer as melody deprived of its pitch" (Edith Sitwell). Meter applies in poetry to any of various measured rhythmic patterns (elegiac meter) and in music to the combining of rhythmic pulses into measures of equal time value (triple meter). Cadence refers especially to the fall of the voice in speech (end a sentence with a cadence) and to balanced rhythmic flow, as in poetry (the cadence of the sea).

**rhythm and blues** pl.n. (used with a sing. or pl. verb). Abbr. **r & b, R & B** Music. A kind of music developed by Black Americans that combines blues and jazz, characterized by a strong backbeat and repeated variations on syncopated instrumental phrases.

**rhyth·mic** (rĭth′mĭk) also **rhyth·mi·cal** (-mĭ-kəl) adj. Of, relating to, or having rhythm; recurring with measured regularity. —**rhyth′mi·cal·ly** adv.

**rhyth·mics** (rĭth′mĭks) n. (used with a sing. verb). Music. The study of rhythm.

**rhyth·mist** (rĭth′mĭst) n. **1.** One who is an expert in or has a keen sense of rhythm. **2.** Music. One who studies or produces rhythm.

**rhythm method** n. A birth-control method dependent on abstinence during the period of ovulation.

**rhy·ti·dec·to·my** (rĭt′ĭ-dĕk′tə-mē) n., pl. **-mies.** See facelift (sense 1). [Greek rhutis, rhutid-, wrinkle + –**ECTOMY**.]

**RI** or **R.I.** abbr. Rhode Island.

**RIA** abbr. Radioimmunoassay.

**ri·al¹** (rē-ôl′, -äl′) n. See table at currency. [Persian, from Arabic riyāl, from Spanish real. See **REAL**².]

**ri·al²** (rē-ôl′, -äl′) n. Variant of riyal.

**ri·al·to** (rē-ăl′tō, rä-äl′-) n., pl. **-tos.** **1.** A theatrical district. **2.** A marketplace. [After Rialto, an island of Venice where a market was situated.]

**Ri·al·to** (rē-ăl′tō). A city of southern California, a residential suburb of San Bernardino. Population, 37,474.

**ri·a·ta** (rē-ä′tə) n. also **re·a·ta** (rē-ä′tə) n. A lariat; a lasso. [Spanish reata, lasso, lariat. See **LARIAT**.]

**Ri·au Archipelago** (rē′ou). An island group of western Indonesia off the southeast end of the Malay Peninsula. It is separated from Singapore by Singapore Strait.

**rib** (rĭb) n. **1.** Anatomy. **a.** One of a series of long, curved bones occurring in 12 pairs in human beings and extending from the spine to or toward the sternum. **b.** A similar bone in most vertebrates. **2.** A part or piece similar to a rib and serving to shape or support: the rib of an umbrella. **3.** A cut of meat enclosing one or more rib bones. **4.** Nautical. One of many curved members attached to a boat or ship's keel and extending upward and outward to form the framework of the hull. **5.** One of many transverse pieces that provide an airplane wing with shape and strength. **6.** Architecture. **a.** An arch or a projecting arched member of a vault. **b.** One of the curved pieces of an arch. **7.** A raised ridge or wale in knitted material or in cloth. **8.** Botany. The main vein or any of the prominent veins of a leaf or other plant organ. **9.** Slang. A teasing remark or action; a joke. —**rib** tr.v. **ribbed, rib·bing, ribs. 1.** To shape, support, or provide with a rib or ribs. **2.** To make with ridges or raised markings. **3.** Informal. To tease or make fun of. See Synonyms at banter. [Middle English, from Old English ribb.]

**rib·ald** (rĭb′əld, rī′bôld′) adj. Characterized by or indulging in



rhombus



rhubarb
*Rheum rhubarbarum*

rib

| | |
|---|---|
| ă pat | oi boy |
| ā pay | ou out |
| âr care | ŏŏ took |
| ä father | ōō boot |
| ĕ pet | ŭ cut |
| ē be | ûr urge |
| ĭ pit | th thin |
| ī pie | th this |
| îr pier | hw which |
| ŏ pot | zh vision |
| ō toe | ə about, item |
| ô paw | ◆ regionalism |

**Stress marks:** ′ (primary);
′ (secondary), as in

5365638

|||||
|---|---|---|---|
| UTILITY SERIAL NUMBER | 08 007628 | PATENT DATE | PATENT NUMBER 5365638 |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|

| Foreign priority claimed | ☑ yes ☐ no | | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met | ☑ yes ☐ no | | | | | | | | |
| Verified and Acknowledged | Examiner's Initials | | | | | | | | |

U.S. DEPT. of COMM.-Pat. & TM Office—PTO-436L (rev. 10-78)

| PARTS OF APPLICATION FILED SEPARATELY | | | | Applications Examiner |
|---|---|---|---|---|
| **NOTICE OF ALLOWANCE MAILED** | Chuck Y. Mah | | **CLAIMS ALLOWED** | |
| 6-16-94 | Assistant Examiner | | Total Claims 8 | Print Claim 1 |
| **ISSUE FEE** | | | **DRAWING** | |
| Amount Due 585.00 | Date Paid 8-3-74 | P. AUSTIN BRADLEY SUPERVISORY PATENT EXAMINER. GROUP 3200 | Sheets Drwg. 14 | Figs. Drwg. 12 | Print Fig. 1,3 |
| | | P. Austin Bradley Primary Examiner | ISSUE BATCH NUMBER 879 | |
| Label Area | | **PREPARED FOR ISSUE** | | |
| | | WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only. | | |

Form PTO-436A
(Rev. 8/92)

(FACE)

C000921

NB 007628



APPROVED FOR LICENSE ☐

INITIALS

Date
Entered
or
Counted

**CONTENTS**

Date
Received
or
Mailed

1. *Application* _____ *papers.*
2. _____ 3-1-93
3. _____
6/21   4. Reg ( 3 mo) _____ 7/11/93 mf
5. _____
4/10   6. Final Rec (3mo) _____ 2/9/94 D
7. _____
9/6    8. Adv. Act. _____ 6/11/94
9. Extension of time ( 1 ) _____ 6/10/94
10. _____
6/16 = 11. Notice of Allowance _____ 6-16 aene
12. PTO____ NOV 22 1994
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.

(FRONT)

C000922



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 16 | 197 A3-16 | 6-18-73 | R R |
| | updated | 6/15/74 | Cogin |
| | | | |

6/22/8
6/24/93

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 16 | all above | 6/15/74 | Cgiw |

(RIGHT OUTSIDE)

C000923

Staple Issue Slip Here

RECEIVED

| POSITION | 31 MAY 24 AND NO. | DATE |
|---|---|---|
| CLASSIFIER | GROUP 350 | |
| EXAMINER | | |
| TYPIST | 889 | 5/28/93 |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | a 58 | |
| DRAFTING | | |

## INDEX OF CLAIMS

| Final | Original | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | | | | | | |
| 2 | 2 | | | | | | | |
| 3 | 3 | | | | | | | |
| 4 | 4 | | | | | | | |
| 5 | 5 | | | | | | | |
| 6 | 6 | | | | | | | |
| 7 | 7 | | | | | | | |
| 8 | 8 | | | | | | | |
| 9 | 9 | | | | | | | |
| | 10 | | | | | | | |

SYMBOLS

| ✓ | Rejected |
|---|---|
| — | Allowed |
| (Through numeral) | Canceled |
| ÷ | Restricted |
| N | Non-elected |
| I | Interference |
| A | Appeal |
| O | Objected |



US005365638A

## United States Patent [19]

### Braid et al.

[11] Patent Number: **5,365,638**

[45] Date of Patent: **Nov. 22, 1994**

[54] **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS**

[76] Inventors: Harold K. Braid, The Sheilings, Braceborough, Lincolnshire, PE9 4NT; Simon C. Braid, 13, Crowson Way, Deeping, St. James, Lincolnshire, both of England

[21] Appl. No.: 7,628

[22] Filed: Jan. 21, 1993

[30] Foreign Application Priority Data

| | | | |
|---|---|---|---|
| Jan. 21, 1992 | [GB] | United Kingdom | 9201208.7 |
| Feb. 25, 1992 | [GB] | United Kingdom | 9204006.2 |
| Mar. 4, 1992 | [GB] | United Kingdom | 9204687.9 |

[51] Int. Cl.⁵ .................................................. E05D 13/00
[52] U.S. Cl. ................................................... 16/197
[58] Field of Search .................... 16/197, DIG. 16

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,732,594 | 1/1956 | Adams et al. | 16/197 |
| 2,873,472 | 2/1959 | Foster | 16/197 |
| 3,452,480 | 7/1969 | Foster | 16/197 |
| 3,992,751 | 11/1976 | Foster et al. | 16/197 |
| 4,227,345 | 10/1980 | Durham | 16/197 |
| 5,157,808 | 10/1992 | Sterner | 16/197 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 825513 | 12/1959 | United Kingdom |
| 1505782 | 3/1978 | United Kingdom |
| 2253874 | 9/1992 | United Kingdom |

Primary Examiner—P. Austin Bradley
Assistant Examiner—Chuck Y. Mah
Attorney, Agent, or Firm—Steven H. Bazerman

[57] **ABSTRACT**

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

8 Claims, 4 Drawing Sheets







FIG.1.

FIG.2.

FIG.3.



FIG.4.



FIG.5.

C000926

U.S. Patent        Nov. 22, 1994        Sheet 2 of 4        5,365,638



FIG.6.



FIG.7.

C000927



FIG.8.

95          95



110

102

FIG.9.

100

95          95

112    108

C000928

U.S. Patent    Nov. 22, 1994    Sheet 4 of 4    5,365,638



FIG.10.



FIG.11.



FIG.12.

C000929

5,365,638

1

## SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

### BACKGROUND OF THE INVENTION

The invention relates to a mounting for a coiled ribbon spring and is particularly, though not exclusively, applicable to sash springs used in sash frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open area at their center and two free ends, an outer one on the outside of the coil and one on the inside; the springs being similar in construction to clock springs except that the inner free end is not (as in a clock spring) secured to a fixed point.

It is known in the art to mount such coiled ribbon springs on a drum within a hollow channel in a window frame by means of a screw or other fixing, about which the spring is able to uncoil as an outer free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, through the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum).

It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as "constant tension" springs.

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

### SUMMARY OF THE INVENTION

The invention provides a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member, a coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having means for securing the mounting in a channel portion of a sash frame or

2

other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to be operatively disposed between the spring body portion and the sash frame support member.

Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

In this inventive arrangement the spring merely rests on the mounting element which acts as a reaction member which the spring abuts as a free outer end, attached to the sash, is unwound. (Ideally, there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash from be inverted for any reason).

The mounting element may be provided with inter-engagement formations by which a plurality of such elements may be stackingly inter-engaged, thus enabling a plurality of coiled ribbon springs to be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The inter-engagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detentes in another such mounting element. The inter-engagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a "snap fit" therewith.

Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment; the hub portion being disposed such that in use the spring encircles such hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

In this arrangement, the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion. (In fact, in certain instances, i.e., when the spring is fully extended, the hub portion may also provide some minor support, though this is not its function).

The mounting element may be provided with formations conformed so as to cooperate with a portion of the sash frame within which the element is to be received, such that contact of said formations with said sash frame inhibits in a rotational, pivoting, or twisting sense of the element relative to the sash frame.

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

C000930

5,365,638

3

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

FIG. 1 is a schematic side elevational view shown partly broken away of an assembly according to the invention showing a coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window;

FIG. 2 is a perspective view of the mounting element shown in FIG. 1;

FIG. 3 is a schematic side elevational view shown partly broken away of a mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention;

FIG. 4 is an exploded schematic view of the mounting assembly shown in FIG. 3;

FIG. 5 is a sectional view on line V—V of FIG. 3 with the coiled ribbon spring removed;

FIG. 6 is a schematic view on an enlarged scale of a portion of the mounting assembly shown in FIGS. 3, 4 and 5;

FIG. 7 is a schematic perspective view on an enlarged scale of a third mounting element according to the invention;

FIG. 8 is a schematic front view of a fourth mounting element similar to said third mounting element, according to the invention;

FIG. 9 is a partial schematic front view of a fifth mounting element similar to said third and fourth mounting elements according to the invention;

FIG. 10 is a schematic perspective view of the element of FIG. 9 shown on a larger scale and partially broken away so as to foreshorten the element;

FIG. 11 is a schematic perspective view of a fifth mounting element according to the invention being similar to that shown in FIG. 10 with certain differences; and

FIG. 12 is a partial front elevational view of a further mounting element similar to those shown in FIGS. 7 and 8 with certain differences.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The mounting assembly shown in FIG. 1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of insertion into the channel section so as to slide the mounting element in from the end of the channel section.

The mounting is shown so fixed in FIG. 1. The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support element 28 which forms part of a sliding sash. The sash frame support element 28 is slidable in the channel section 16 back and forth in the directions of arrows A, A', to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for sim-

4

plicity. In practice, many more coils wold be provided. Also, the thickness of the coiled ribbon spring has been exaggerated.

As the sash frame support element 28 (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of the surface 20. This is of no particular importance as the mounting only has a guiding and support function. It will be noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art. In the embodiment shown in FIGS. 3 to 6, the mounting element is in two parts 50, 52 which inter-engage to form a body portion 54 of reel-like structure but having a tube-like hub 56 which, in use, loosely impales a body portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below (when used in vertical sash frames as is usual) the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 inter-engageable with the under surface of the support portion 60 (see FIG. 5). As will be seen from FIG. 3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by which the mounting may be fixed to a channel section member. FIG. 6 shows portions of coils 66, 68 and 70 of the spring, coil 70 being the outermost and having its outer undersurface supported by the support surface 62.

The mounting element shown in FIG. 7 is similar to that shown in FIGS. 1 and 2 except firstly that upstanding walls 78ᵃ and 78ᵇ are dissimilar and secondly that inter-engagement formations 80 are provided to enable a plurality of said elements to inter-engage in a stacked manner.

One of the upstanding walls 78ᵃ which is intended to lie against a back surface 82 (shown in broken line) of a channel section frame (shown as 84 in part hatched line) is provided with a pair of lateral ears 86 (only one of which is shown full line) which are intended to prevent rotation of the mounting element about a fixing screw (not shown) received, in use, in recessed bore 88. A concavely curved surface 20' is provided in similar manner to the embodiment of FIGS. 1 and 2. A second upstanding wall 78ᵇ has greater thickness than upstanding wall 78ᵃ and is provided with a plurality of tooth-like inter-engagement formations 80. There is provided a rebate 89 of a depth equal to the thickness of the upstanding wall 78ᵇ and provided with a plurality of detentes 90 corresponding to formations 80 such that the formations of one element as shown in FIG. 7 can engage in detentes 90 of another identical element lying above the first element. Thus, two or more coiled ribbon springs can be mounted one above the other with their mounting elements inter-engaged and only a lower one of said mounting elements need be secured with a screw as hereinbefore described.

FIG. 8 shows a fourth mounting element in accordance with the invention. This is closely similar to that shown in FIG. 7 except that at lower corner regions shown generally as 95, the element is rounded off for ease of insertion of the element into the sash frame.

C000931

5,365,638

5

6

The mounting element 100 shown in FIGS. 9 and 10 is similar to those of FIGS. 7 and 8 and some of those portions of the element similar to those provided in the elements shown in FIGS. 7 and 8 have been labelled with the same reference numerals. The mounting element 100 is devoid of the lateral ears 86 but instead is provided with a raised spine formation 86 whose width W is arranged such that it is a snug fit between open lip portions 104 of a channel section sash frame member 5 (shown in broken line in FIG. 10) within which the mounting element is to be operatively received. Thus, rotational, pivoting or twisting motion of the element 100 within the sash frame member 5 is inhibited. The element 100 is secured in the sash frame member 5 by a screw or other suitable fixing via a bore 108 in a similar manner to that of the element shown in FIG. 7. In the mounting element 100 a single inter-engagement projection formation 110 is provided, which is cooperable with a corresponding recess formation 112 of a second such element, so that elements can be "stacked" as in previous embodiments.

The mounting element 110 shown in FIG. 11 is similar to that shown in FIG. 10 except that the upstanding wall 78a is provided with a raised spine formation 102. This is especially useful where space is limited, i.e., the depth of the coiled ribbon spring approaches the depth of the channel section sash frame member.

The mounting element shown in FIG. 12 is similar to those shown in FIGS. 7 and 8 and the same reference numerals have been used to indicate corresponding portions thereof. It has the rounded off regions 95 of the mounting element shown in FIG. 8 but differs in that it has a locating rib 102 like that shown in FIGS. 9 and 10 and the curved surface 20' (shown in broken line) is truncated at outer regions thereof by sloping shoulders 21 (shown in broken line). These enable a free end of a spring, supported by the mounting element in use, to be more easily fed between the mounting element and a wall 17 of a channel section 16, providing a funnel-like provision.

It will readily be apparent that the inter-engagement formations need not be as shown in the Figures but may be of any suitable shape, and number.

They may also be made to be interlocking, releasable or otherwise. It is to be understood that in the channel section partly shown in broken line in FIG. 1 the front retaining flanges shown in FIG. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example, two or more screw or other fixings would prevent any tendency for the mountings to move or rotate in use. Alternatively, pegs, spigots or catches could be used.

The previous descriptions of the preferred embodiments of the present invention are for purposes of illustration and are limited only by the provisions of the following claims.

What is claimed is:

1. A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having a first end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited.

2. The mounting assembly of claim 1 wherein said mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means.

3. The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein, a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means, a surface of said body portion being concavely curved, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion.

4. The mounting assembly of claim 2 in which the mounting means has at least one inter-engagement means by which a plurality of such mounting means may be stacked in inter-engagement.

5. The mounting assembly of claim 4 in which the inter-engagement means comprises a tooth-like projection cooperable on said first mounting means with a corresponding complementary detente in a second mounting means.

6. The mounting assembly of claim 4 in which the inter-engagement means on said first mounting means is in an interference fit with an inter-engagement means on said second mounting means.

7. The mounting assembly of claim 4 in which the inter-engagement means is formed so as to provide a snap fit.

8. A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having an outer end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and the mounting means. having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited.

* * * * *

65

OR **007628**

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

*V Brown*
*6-18-93*

100 DF 02/12/93 08007628                    1 201      355.00 CK

PTO–1556
(5/87)

C000933

BAR CODE LABEL

## U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/007,628 | 01/21/93 | 248 | 3505 |

**APPLICANT**

HAROLD K. BRAID, LINCOLNSHIRE, ENGLAND; SIMON C. BRAID, LINCOLNSHIRE, ENGLAND.

**CONTINUING DATA**********************
VERIFIED

_____

**FOREIGN/PCT APPLICATIONS***********
VERIFIED

| UNITED KINGDOM | 9201208.7 | 01/21/92 |
| UNITED KINGDOM | 9204006.2 | 02/25/92 |
| UNITED KINGDOM | 9204687.9 | 03/04/92 |

_____

***** SMALL ENTITY *****

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| GB2 | 7 | 9 | 1 | $ 420.00 | X529-27 |

**ADDRESS**

STEVEN H. BAZEMAN
GRAHAM, CAMPAIGN & MCCARTHY
36 WEST 44TH STREET
NEW YORK, NY 10036-8178

**TITLE**

SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application as filed which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                                    Certifying Officer

C000934

007628

## ABSTRACT OF THE DISCLOSURE

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having

5     a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use

10    impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

C000935



3557 00 201 A

M 007628

PATENT
CASE X529-27

## SPRING MOUNTING FOR SASH FRAME
## TENSIONING ARRANGEMENTS

### BACKGROUND OF THE INVENTION

The invention relates to a mounting for a coiled ribbon spring and
is particularly, though not exclusively, applicable to sash springs used in sash
frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open
area at their center and two free ends, an outer one on the outside of the coil
and one on the inside; the springs being similar in construction to clock springs
except that the inner free end is not (as in a clock spring) secured to a fixed
point.

It is known in the art to mount such coiled ribbon springs on a drum
within a hollow channel in a window frame by means of a screw or other fixing,

5

10

about which the spring is able to uncoil as an outer free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, through the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum).

It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as "constant tension" springs.

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

## SUMMARY OF THE INVENTION

The invention provides a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member, a coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being

- 2 -

C000937

disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of

5      said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having

10      means for securing the mounting in a channel portion of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an

15      outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to be operatively disposed between the spring body portion and the sash frame support member.

20      Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

25      In this inventive arrangement the spring merely rests on the

- 3 -

C000938

mounting element which acts as a reaction member which the spring abuts as a free outer end, attached to the sash, is unwound. (Ideally, there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash from be inverted for any reason).

5    The mounting element may be provided with inter-engagement formations by which a plurality of such elements may be stackingly inter-engaged, thus enabling a plurality of coiled ribbon springs to be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The inter-

10    engagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detentes in another such mounting element. The inter-engagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a "snap fit" therewith.

15    Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment; the hub portion being disposed such that in use the spring encircles such hub portion, the mounting element having an arm portion slung below said hub

20    portion and disposed so as to support said outer undersurface of said spring.

In this arrangement, the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion. (In fact, in certain instances, *i.e.*, when the spring is fully extended, the hub portion

25    may also provide some minor support, though this is not its function).

- 4 -

The mounting element may be provided with formations conformed so as to cooperate with a portion of the sash frame within which the element is to be received, such that contact of said formations with said sash frame inhibits in a rotational, pivoting, or twisting sense of the element relative to the sash frame.

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

Fig. 1    is a schematic side elevational view shown partly broken away of an assembly according to the invention showing a coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window;

Fig. 2    is a perspective view of the mounting element shown in Fig. 1;

Fig. 3    is a schematic side elevational view shown partly broken away of a mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention;

Fig. 4    is an exploded schematic view of the mounting assembly shown in Fig. 3;

Fig. 5    is a sectional view on line V-V of Fig. 3 with the coiled ribbon spring removed;

- 5 -

C000940

| | |
|---|---|
| Fig. 6 | is a schematic view on an enlarged scale of a portion of the mounting assembly shown in Figs. 3, 4 and 5; |
| Fig. 7 | is a schematic perspective view on an enlarged scale of a third mounting element according to the invention; |
| Fig. 8 | is a schematic front view of a fourth mounting element similar to said third mounting element, according to the invention; |
| Fig. 9 | is a partial schematic front view of a fifth mounting element similar to said third and fourth mounting elements according to the invention; |
| Fig. 10 | is a schematic perspective view of the element of Fig. 9 shown on a larger scale and partially broken away so as to foreshorten the element; |
| Fig. 11 | is a schematic perspective view of a fifth mounting element according to the invention being similar to that shown in Fig. 10 with certain differences; and |
| Fig. 12 | is a partial front elevational view of a further mounting element similar to those shown in Figs. 7 and 8 with certain differences. |

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The mounting assembly shown in Fig. 1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of insertion into the channel section from the

- 6 -

C000941

side (*i.e.*, without the necessity to slide the mounting element in from the end of the channel section).

The mounting is shown so fixed in Fig. 1. The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support element 28 which forms part of a sliding sash. The sash frame support element 28 is slidable in the channel section 16 back and forth in the directions of arrows A, A', to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for simplicity. In practice, many more coils wold be provided. Also, the thickness of the coiled ribbon spring has been exaggerated.

As the sash frame support element 28 (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of the surface 20. This is of no particular importance as the mounting only has a guiding and support function. It will e noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art. In the embodiment shown in Figs. 3 to 6, the mounting element is in two parts 50, 52 which inter-engage to form a body portion 54 of reel-like structure but having a tube-like hub 56 which, in use, loosely impales a body

- 7 -

C000942

portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below (when used in vertical sash frames as is usual) the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 inter-engageable with the under surface of the support portion 60 (see Fig. 5). As will be seen from Fig. 3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by which the mounting may be fixed to a channel section member. Fig. 6 shows portions of coils 66, 68 and 70 of the spring, coil 70 being the outermost and having its outer undersurface supported by the support surface 62.

The mounting element shown in Fig. 7 is similar to that shown in Figs. 1 and 2 except firstly that upstanding walls 78$^a$ and 78$^b$ are dissimilar and secondly that inter-engagement formations 80 are provided to enable a plurality of said elements to inter-engage in a stacked manner.

One of the upstanding walls 78$^a$ which is intended to lie against a back surface 82 (shown in broken line) of a channel section frame (shown as 84 in part hatched line) is provided with a pair of lateral ears 86 (only one of which is shown full line) which are intended to prevent rotation of the mounting element about a fixing screw (not shown) received, in use, in recessed bore 88. A concavely curved surface 20' is provided in similar manner to the embodiment of Figs. 1 and 2. A second upstanding wall 78$^b$ has greater thickness than upstanding wall 78$^a$ and is provided with a plurality of tooth-like inter-engagement formations 80. There is provided a rebate 89 of a depth equal

- 8 -

C000943

to the thickness of the upstanding wall 78$^b$ and provided with a plurality of
detentes 90 corresponding to formations 80 such that the formations of one
element as shown in Fig. 7 can engage in detentes 90 of another identical
element lying above the first element. Thus, two or more coiled ribbon springs

5      can be mounted one above the other with their mounting elements inter-engaged
and only a lower one of said mounting elements need be secured with a screw
as hereinbefore described.

        Fig. 8 shows a fourth mounting element in accordance with the
invention. This is closely similar to that shown in Fig. 7 except that at lower

10     corner regions shown generally as 95, the element is rounded off for ease of
insertion of the element into the sash frame.

        The mounting element 100 shown in Figs. 9 and 10 is similar to
those of Figs. 7 and 8 and some of those portions of the element similar to those
provided in the elements shown in Figs. 7 and 8 have been labelled with the

15     same reference numerals. The mounting element 100 is devoid of the lateral
ears 86 but instead is provided with a raised spine formation 102 whose width
W is arranged such that it is a snug fit between open lip portions 104 of a
channel section sash frame member 5 (shown in broken line in Fig. 10) within
which the mounting element is to be operatively received. Thus, rotational,

20     pivoting or twisting motion of the element 100 within the sash frame member
5 is inhibited. The element 100 is secured in the sash frame member 5 by a
screw or other suitable fixing via a bore 108 in a similar manner to that of the
element shown in Fig. 7. In the mounting element 100 a single inter-
engagement projection formation 110 is provided, which is cooperable with a

25     corresponding recess formation 112 of a second such element, so that elements

- 9 -

can be "stacked" as in previous embodiments.

The mounting element 110 shown in Fig. 11 is similar to that shown in Fig. 10 except that the upstanding wall 78$^b$ is provided entirely by said raised spine formation 102. This is especially useful where space is limited, *i.e.*, the depth of the coiled ribbon spring approaches the depth of the channel section sash frame member.

The mounting element shown in Fig. 12 is similar to those shown in Figs. 7 and 8 and the same reference numerals have been used to indicate corresponding portions thereof. It has the rounded off regions 95 of the mounting element shown in Fig. 8 but differs in that it has a locating rib 102 like that shown in Figs. 9 and 10 and the curved surface 20' (shown in broken line) is truncated at outer regions thereof by sloping shoulders 21 (shown in broken line). These enable a free end of a spring, supported by the mounting element in use, to be more easily fed between the mounting element and a wall 17 of a channel section 16, providing a funnel-like provision.

It will readily be apparent that the inter-engagement formations need not be as shown in the Figures but may be of any suitable shape, and number.

They may also be made to be interlocking, releasable or otherwise. It is to be understood that in the channel section partly shown in broken line in Fig. 7 the front retaining flanges shown in Fig. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example, two or more screw or other

- 10 -

fixings would prevent any tendency for the mountings to move or rotate in use. Alternatively, pegs, spigots or catches could be used.

5
The previous descriptions of the preferred embodiments of the present invention are for purposes of illustration and are limited only by the provisions of the following claims.

- 11 -

**WHAT IS CLAIMED IS:**

1.    A mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member, a coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, and in use, impinging upon an outer surface of said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

2.    A mounting element for use in the assembly of claim 1 comprising a body portion having means for securing the mounting in a channel portion of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

3.    A mounting element as claimed in claim 2 comprising a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

- 12 -

C000947

4.    A mounting element as claimed in claim 2 in which there is provided at least one inter-engagement formation by which a plurality of such elements may be stackingly inter-engaged.

5.    A mounting element as claimed in claim 4 in which an inter-engagement formation comprises a tooth-like projection cooperable with a corresponding complementary detente in another such mounting element.

6.    A mounting element as claimed in claim 4 in which one inter-engagement formation is formed so as to provide an interference fit with formations of another mounting element.

7.    A mounting element as claimed in claim 4 in which one of the inter-engagement formations is formed so as to provide a snap fit with a formation of another mounting element.

8.    A mounting element as claimed in claim 2 which is configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment;
5    the hub portion being disposed such that in use the spring encircles said hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

9.    A mounting element as claimed in claim 2 provided with formations conformed so as to cooperate with a portion of the sash frame within

- 13 -

C000948

which the element is to be received, such that contact of said formations with said sash frame inhibits movement in a rotational, pivoting, or twisting sense of the element relative to the sash frame.

5

C000949



## DECLARATION FOR PATENT APPLICATION

Docket No. X529-27

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS** the specification of which

(check one)  [ X ]  is attached hereto.
         [   ]  was filed on _____ as
              Application Serial No. _____
              and was amended on __ _____ (if
              applicable).

I hereby state that I have reviewed and understood the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| Prior Foreign Application(s) | | Priority Claimed |
|---|---|---|
| 9201208.7 (Number) | United Kingdom (Country) | 21 Jan. 1992 Yes [X] No [ ] (Day/Month/Year Filed) |
| 9204006.2 (Number) | United Kingdom (Country) | 25 Feb. 1992 Yes [X] No [ ] (Day/Month/Year Filed) |
| 9204687.9 (Number) | United Kingdom (Country) | 4 March 1992 Yes [X] No [ ] (Day/Month/Year Filed) |

C000950

COPY

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT filing date of this application.

| (Application Serial Number) | (Filing Date) | (Status-patented, pending, abandoned) |

I hereby appoint the following attorney to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

**STEVEN. H. BAZERMAN, ESQ.**

Address all telephone calls to Steven H. Bazerman, Esq. at telephone no. (212) 354-5650

Address all correspondence to:    Steven H. Bazerman, Esq.
Graham Campaign & McCarthy, P.C.
36 West 44th Street
New York, N.Y. 10036-8178

I hereby declare that all statements made herein of my own knowledge are true and that all statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of first or sole inventor: HAROLD KEITH BRAID

Inventor's signature: *Harold Keith Braid*          Date: 18th JANUARY 1993

Residence: Lincolnshire, England          Citizenship: United Kingdom

Post Office Address: The Sheilings, Braceborough
Lincolnshire, PE9 4NT, England

Full name of second inventor: SIMON CHRISTOPHER BRAID

Inventor's signature: _____          Date: 13/1/93

Residence: Lincolnshire, England          Citizenship: United Kingdom

Post Office Address: 13, Crowson Way, Deeping
St. James, Lincolnshire, England



*PATENT*

Attorney's Docket No. X529-27

Applicant or Patentee:    Harold Keith Braid and Simon Christopher Braid

Serial or Patent No.: _____

Filed or Issued: _____

For:    SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

### VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(b) - INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees under Section 41(a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS described in

[ X ]   the specification filed herewith
[   ]   application serial no: 0 / _____ , filed _____
[   ]   patent no. _____ , issued _____

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ x ]   no such person, concern or organization
[   ]   persons, concerns or organizations listed below[1]

---

[1]   NOTE:   Separate verified statements are required from each named person, concern or organization having rights in the invention averring to their status as small entities. (37 CFR 1.27).

COPY

| FULL NAME | HAROLD KEITH BRAID |
| --- | --- |
| ADDRESS | The Sheilings, Braceborough, Lincolnshire, PE9 4NT, England |

[ X ] INDIVIDUAL    [ ] SMALL BUSINESS CONCERN    [ ] NONPROFIT ORGANIZATION

| FULL NAME | SIMON CHRISTOPHER BRAID |
| --- | --- |
| ADDRESS | 13, Crowson Way, Deeping, St. James, Lincolnshire, England |

[ X ] INDIVIDUAL    [ ] SMALL BUSINESS CONCERN    [ ] NONPROFIT ORGANIZATION

FULL NAME _____

ADDRESS _____

[ ] INDIVIDUAL    [ ] SMALL BUSINESS CONCERN    [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

_Harold Keith Braid_
HAROLD KEITH BRAID                          Date 18TH JANUARY 1993

_Simon Christopher Braid_
SIMON CHRISTOPHER BRAID                     Date 13/1/93

C000953

PRINT OF DRAWINGS
IS ORIGINALLY FILED

NR 007628



Fig 1



Fig 2

C000954

PRINT OF DRAWINGS
AS ORIGINALLY FILED

CA 007628



Fig 4

Fig 5



Fig 3

C000955

PRINT OF DRAWINGS
S ORIGINALLY FILED

NR 007628



Fig 6

C000956

PRINT OF DRAWINGS
IS ORIGINALLY FILED

NR 007628



Fig 7

C000957

PRINT OF DRAWINGS
AS ORIGINALLY FILED

NR 007628



Fig 8

95

95

110

102

Fig 9

95

95

112    108

C000958

PRINT OF DRAWINGS
IS ORIGINALLY FILED

NR 007628



Fig 10



Fig 11

C000959

PRINT OF DRAWINGS
S ORIGINALLY FILED

fifi 007628



Fig 12

C000960

NR **007628**



GRAHAM, CAMPAIGN & McCARTHY, P.C.

(HERVEY, BARBER & McKEE)

THE BAR BUILDING

36 WEST 44TH STREET

NEW YORK, N.Y. 10036-8178

(212) 354-5650

FAX (212) 354-6354

H. JOHN CAMPAIGN
DANIEL A. McCARTHY
WILLIAM L. McGUIRE, SR.
KEITH E. DANISH*
JOHN M. KEENE*
DANIEL F. McCARTHY*
STEVEN H. BAZERMAN‡
J. BRIAN McCARTHY◊

* ALSO ADMITTED IN N.J.
‡ ALSO ADMITTED IN D.C.
◊ ALSO ADMITTED IN CT.

ANDREW J. GRAHAM
(1911-1986)

COUNSEL:
PATRICK M. WALL‡
GERARD H. DAVIS◊

CABLE "FORBLAND"

TELEX 238574

*PATENT*

Docket No. X529-27

Box Patent Application
Commissioner of Patents and Trademarks
Washington, D.C. 20231

## NEW APPLICATION TRANSMITTAL

Transmitted herewith for filing is the patent application of
Inventor(s): Harold K. Braid and Simon C. Braid
For (title): **SPRING MOUNTING FOR SASH FRAME
TENSIONING ARRANGEMENTS**

1.    **Type of Application**

This new application is for a(n) (*check one applicable item below*):

[ X ]   Original
[ ]   Design
[ ]   Plant

---

### Certification under 37 CFR 1.10

I hereby certify that this New Application Transmittal and the documents referred to as enclosed therein are being deposited with the United States Postal Service on this date January 21, 1991 in an envelope as "Express Mail Post Office to Addressee" Mailing Label Number RB951730494US addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Steven H. Bazerman
(Type or print name of person mailing paper)

(Signature of person mailing paper)

C000961

GRAHAM, CAMPAIGN & McCARTHY, P.C.

2.    **Benefit of Prior U.S. Applications(s) (35 USC 120)**

[ ]    The new application being transmitted claims the benefit of prior U.S. application(s) and enclosed are ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.

3.    **Papers Enclosed Which Are Required For Filing Date Under 37 CFR 1.53(b) (Regular) or CFR 1.153 (Design) Application**

|       |                        |
|-------|------------------------|
| 11    | Pages of specification |
| 03    | Pages of claims        |
| 01    | Pages of Abstract      |
| 07    | Sheets of drawing      |

[ ]    formal
[ X ]  informal

4.    **Additional Papers Enclosed**

[ ]   Preliminary Amendment
[ ]   Information Disclosure Statement
[ ]   Form PTO-1449
[ ]   Citations
[ ]   Declaration of Biological Deposit
[ ]   Authorization of Attorney(s) to Accept and Follow Instructions from Representative
[ ]   Special Comments
[ ]   Other

5.    **Declaration or oath**

[ X ]  Enclosed
       executed by (*check all applicable boxes*)

       [ ]   inventor(s)
       [ ]   legal representative of inventor(s). 37 CFR 1.42 or 1.43
       [ ]   joint inventor or person showing a proprietary interest on behalf of inventor who refused to sign or cannot be reached.

             [ ]   this is the petition required by 37 CFR 1.47 and the statement required by 37 CFR 1.47 is also attached. *See item 13 below for fee.*

       [ ]   Not enclosed.

             [ ]   Application is made by a person authorized under 37 CFR 1.41(c) on behalf of *all* the above named inventor(s). The declaration or oath, along with the surcharge required by 37 CFR 1.16(e) can be filed subsequently.

GRAHAM, CAMPAIGN & McCARTHY, P.C.

[ ]    Showing that the filing is authorized. *(Not required unless called into question. 37 CFR 1.41(d).*

6.    **Inventorship Statement**

The inventorship for all the claims in this application are:

[ X ]    The same

or

[ ]    Are not the same.  An explanation, including the ownership of the various claims at the time the last claimed invention was made,

[ ]    is submitted.
[ ]    will be submitted.

7.    **Language**

[ X ]    English
[ ]    non-English
[ ]    the attached translation is a verified translation. 37 CFR 1.52(d).

8.    **Assignment**
[ ]    An assignment o the invention to _____

[ ]    is attached.
[ ]    will follow.

9.    **Certified Copy**

Certified copy(ies) of application(s)

| United Kingdom | 9201208.7 | 21 Jan. 1992 |
|---|---|---|
| (country) | (appln. no.) | (filed) |

| United Kingdom | 9204006.2 | 25 Feb. 1992 |
|---|---|---|
| (country) | (appln. no.) | (filed) |

| United Kingdom | 9204687.9 | 4 March 1992 |
|---|---|---|
| (country) | (appln. no.) | (filed) |

from which priority is claimed
[ ]    is (are) attached.
[ X ]    will follow.

C000963

GRAHAM, CAMPAIGN & McCARTHY, P.C.

10.    Fee Calculation (37 CFR 1.16)

A.    [ X ]  Regular Application

CLAIMS AS FILED

| Number filed | | Number Extra | Rate | Basic Fee $710.00 |
|---|---|---|---|---|
| Total Claims | 9 | - 20 = 0 | X    $ 22.00 | 00.00 |
| Independent Claims (37 CFR 1.16(b)) | 1 | - 3 = 0 | X    $ 74.00 | 00.00 |
| Multiple dependant claim(s), if any (37 CFR 1.16(d)) | | | $230.00 | |

[ ]    Amendment canceling extra claims enclosed.
[ ]    Amendment deleting multiple dependencies enclosed.
[ ]    Fee for extra claims is not being paid at this time.

Filing Fee Calculation    $____$710.00____

B.    [ ]  Design application
         ($290.00-37 CFR 1.16(f))

Filing Fee Calculation    $_____

C.    [ ]  Plant application
         ($480.00-37 CFR 1.16(g))

Filing Fee Calculation    $_____

11.    Small Entity Statement(s)

[ X ]  Verified Statement(s) that this is a filing by a small entity under 37 CFR 1.9 and 1.27 is (are) attached.

Filing Fee Calculation (50% of A, B, or C above) $____$355.00____

C000964

GRAHAM, CAMPAIGN & McCARTHY, P.C.

12. **Request for International-Type Search (37 CFR 1.104(d)))** *(Complete, if applicable)*

[ ]    Please prepare an international-type search report for this application a the time when national examination on the merits takes place.

13. **Fee Payment Being Made At This Time**

[ ]    Not Enclosed
   [ ]    No filing fee is to be paid at this time. *(This and the surcharge required by 37 CFR 1.16(e) can be paid subsequently.)*

[ X ]    Enclosed

   [ X ]    basic filing fee                                                  $____$355.00_____

   [ ]    recording assignment
          ($40.00; 37 CFR 1.21(h))                              $_____

   [ ]    petition for filing by other
          than all the inventors or person
          on behalf of the inventor where
          inventor refused to sign or cannot
          be reached. ($130.00; 37 CFR
          1.47 and 1.17(h))                                          $_____

   [ ]    for processing an application with
          a specification in a non-English
          language. ($130.00; 37 CFR
          1.52(d) and 1.17(k)                                       $_____

   [ ]    processing and retention fee
          ($130.00; 37 CFR 1.53(d) and 1.21(l))

   [ ]    fee for international-type search report
          ($40.00; 37 CFR 1.21(e)).                            $_____

                        **Total fees enclosed**                 $____$355.00_____

14. **Method of Payment of Fees**

[ X ]    Check in the amount of $ 355.00
[ ]    Charge account No. _____ in the amount of $_____
        A duplicate of this transmittal is attached.

C000965

GRAHAM, CAMPAIGN & McCARTHY, P.C.

15.    **Authorization to Charge Additional Fees**

[ X ]    The Commissioner is hereby authorized to charge the following additional fees by this paper and during the entire pendency of this application to Account No. 07-1845 .

[ X ]    37 CFR 1.16(a), (f) or (g) (filing fees)
[  ]    37 CFR 1.16(b), (c) and (d) (presentation of extra claims)

    [ X ]    37 CFR 1.16(e) (surcharge for filing the basic filing fee and/or declaration on a date later than the filing date of the application)

    [  ]    37 CFR 1.17 (application processing fees)

    [  ]    37 CFR 1.18 (issue fee at or before mailing Notice of Allowance, pursuant to 37 CFR 1.311(b)

16.    **Instructions As To Overpayment**

[  ]    credit Account No. _____
[ X ]    refund

Reg. No.  24,653

Tel. No.(212) 354-5650

_____
Signature of Attorney

Steven H. Bazerman_____
Type or print name of attorney

GRAHAM, CAMPAIGN & McCARTHY, P.C.
36 West 44th Street
New York, New York 10036-8178
P.O. Address

Check No. _____

Our Ref.:  X529-27



MR 007628

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant(s)  :  Harold K. Braid, et al.

Serial No.  :

Filed  :  Concurrently herewith

For  :  SPRING MOUNTING FOR SASH FRAME
       TENSIONING ARRANGEMENT

Art Unit  :

Examiner  :

January 21, 1993

Hon. Commissioner of Patents
    and Trademarks
Washington, D. C., 20231

Attn:  Box Patent Application

PRELIMINARY AMENDMENT

S I R:

Being filed concurrently herewith is the specification for the above-identified applicataion.

Previously, on January 20, 1993 another copy of this application was filed by Express Mail, but

one sheet of drawings (sheet no. 7) showing Fig. 12 was inadvertently left out of the package.

The application is being refiled by Express Mail in order to complete the application and

secure the priority date.

Respectfully submitted,

GRAHAM, CAMPAIGN & McCARTHY, P.C.

36 West 44th Street                By
New York, New York 10036-8178          Steven H. Bazerman, Reg.No. 24,653
Tel: (212) 354-5650
Our Ref.: X529-27

C000967



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO/TITLE |
|---|---|---|---|
| 08/007,628 | 01/21/93 | BRAID | X529-27 |

GRAHAM, CAMPAIGN & MC CARTHY
36 WEST 44TH STREET
NEW YORK, NY  10036-8178

0380

# 2

0000

DATE MAILED:     03/01/93

## NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a ☑ large entity, ☐ small entity (verified statement filed), is $ _485_

1. ☑ The statutory basic filing fee is: ☐ missing ☑ insufficient. Applicant as a ☑ large entity ☐ small entity, must submit $ _355_ to complete the basic filing fee and MUST ALSO SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐ Additional claim fees of $_____ as a ☐ large entity ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐ The oath or declaration:
   ☐ is missing.
   ☐ does not cover items omitted at time of execution.
   An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☑ The signature to the oath or declaration is: ☐ missing; ☑ a reproduction; ☐ by a person other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration:
   _____. An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐ The application was filed in a language other than English. Applicant must file a verified English translation of the application and a fee of $_____ under 37 CFR 1.17(k), unless this fee has already been paid. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

8. ☐ A $_____ processing fee is required for returned checks. (37 CFR 1.12 (m)).

9. ☐ Your filing receipt was mailed in error because check was returned without payment.

10. ☐ Other.

An Application Number and Filing Date have been assigned to this application. The missing parts and fees identified above in items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A SURCHARGE of $ _130_ for large entities or $ _65_ for small entities who have filed a verified statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provision of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION: Application Processing Division, Special Processing and Correspondence Branch.

### A copy of this notice _MUST_ be returned with response.

For: Manager, Application Processing Division
(703) 308-1202

FORM PTO-1533 (REV. 3-92)

OFFICE COPY

C000968



*65 - 3C5   H/N*

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO./TITLE |
|---|---|---|---|

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION
### FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

☐ large entity, ☐ small entity (verified statement filed), is $ _____.

1. ☐ The statutory basic filing fee is: ☐ missing ☐ insufficient. Applicant as a ☐ large entity

☐ small entity, must submit $ _____ to complete the basic filing fee and MUST ALSO SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐ Additional claim fees of $ _____ as a ☐ large entity ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐ The oath or declaration:
   ☐ is missing.
   ☐ does not cover items omitted at time of execution.
   An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐ The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration:
   _____. An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐ The application was filed in a language other than English. Applicant must file a verified English translation of the application and a fee of $ _____ under 37 CFR 1.17(k), unless this fee has already been paid. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

8. ☐ A $ _____ processing fee is required for returned checks. (37 CFR 1.12 (m)).

9. ☐ Your filing receipt was mailed in error because check was returned without payment.

10. ☐ Other.

An Application Number and Filing Date have been assigned to this application. The missing parts and fees identified above in items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A SURCHARGE of $ _____ for large entities or $ _____ for small entities who have filed a verified statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provision of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION: Application Processing Division, Special Processing and Correspondence Branch.

### A copy of this notice _MUST_ be returned with response.

For: Manager, Application Processing Division
(703) 308-1202

DOCKETED
DUE DATE: _____

FORM PTO-1533 (REV. 3-92)          COPY TO BE RETURNED WITH RESPONSE

C000969



**DECLARATION FOR PATENT APPLICATION**

Docket No. X529-27

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS** the specification of which

(check one)  [  ]  is attached hereto.
        [ X ]  was filed on __January 21, 1993_____ as
                  Application Serial No. ____08/007,628_____
                  and was amended on _____January 21, 1993_____ (if
                  applicable).

I hereby state that I have reviewed and understood the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

**Prior Foreign Application(s)**              **Priority Claimed**

__9201208.7_____   __United Kingdom__   __21 Jan. 1992____Yes [X] No [ ]
(Number)             (Country)        (Day/Month/Year Filed)

__9204006.2_____   __United Kingdom__   __25 Feb. 1992____Yes [X] No [ ]
(Number)             (Country)        (Day/Month/Year Filed)

__9204687.9_____   __United Kingdom__   __4 March 1992___Yes [X] No [ ]
(Number)             (Country)        (Day/Month/Year Filed)

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT filing date of this application.

_____    _____    _____
(Application Serial Number)    (Filing Date)    (Status-patented, pending, abandoned)

I hereby appoint the following attorney to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

### STEVEN. H. BAZERMAN, ESQ.

Address all telephone calls to Steven H. Bazerman, Esq. at telephone no. **(212) 354-5650**

Address all correspondence to:    Steven H. Bazerman, Esq.
Graham Campaign & McCarthy, P.C.
36 West 44th Street
New York, N.Y. 10036-8178

I hereby declare that all statements made herein of my own knowledge are true and that all statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of first or sole inventor: HAROLD KEITH BRAID

Inventor's signature: _Harold Keith Braid_    Date: _29th March 1993_

Residence:    Lincolnshire, England    Citizenship:    United Kingdom

Post Office Address: The Sheilings, Braceborough
Lincolnshire, PE9 4NT, England

Full name of second inventor: SIMON CHRISTOPHER BRAID

Inventor's signature: _Simon Christopher Braid_    Date: _29th March 1993_

Residence:    Lincolnshire, England    Citizenship:    United Kingdom

Post Office Address: 13, Crowson Way, Deeping
St. James, Lincolnshire, England

*PATENT*

Attorney's Docket No. X529-27

Applicant or Patentee:    Harold Keith Braid and Simon Christopher Braid

Serial or Patent No.: ___08/007,628_____

Filed or Issued: ___January 21, 1993_____

For:   SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

### VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(b)) – INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees under Section 41(a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS described in

[ ]  the specification filed herewith
[ X ]  application serial no. 08/ 007,628 , filed ___January 21, 1993___ .
[ . ]  patent no. _____, issued _____

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ x ]  no such person, concern or organization
[ ]  persons, concerns or organizations listed below[1]

---

1    NOTE:    Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27).

C000972

FULL NAME  _____

ADDRESS  _____

[  ] INDIVIDUAL    [  ] SMALL BUSINESS CONCERN    [  ] NONPROFIT ORGANIZATION

FULL NAME  _____

ADDRESS  _____

[  ] INDIVIDUAL    [  ] SMALL BUSINESS CONCERN    [  ] NONPROFIT ORGANIZATION

FULL NAME  _____

ADDRESS  _____

[  ] INDIVIDUAL    [  ] SMALL BUSINESS CONCERN    [  ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

*Harold Keith Braid*          Date _29th March 1993_
HAROLD KEITH BRAID

*Simon Christopher Braid*          Date _29th March 1993_
SIMON CHRISTOPHER BRAID

C000973

PATENT - X529-27

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant(s) | : | Harold K. Braid, et al. |
| Serial No. | : | 08/007,628 |
| Filed | : | January 21, 1993 |
| Document No. | : | X529-27 |
| Title | : | SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS |

RECEIVED
APR 1 5 1993
APPLICATION DIVISION

To the Commissioner of Patents and Trademarks
Washington, D. C., 20231

Attention: Application Division

Sir:

    Accompanying this transmittal paper is a copy of the Notice to File Missing Parts of Application, along with executed Declaration, Power of Attorney and Verified Statement as to Small Entity Status.

    Also enclosed is our check in the amount of $65.00 to cover the surcharge. If any additional charges are incurred, the Commissioner is hereby authorized to charge any additional fees to Account No. 07-1845. A duplicate of this transmittal paper is attached.

Respectfully submitted,

GRAHAM, CAMPAIGN & McCARTHY, P.C.

Dated: April 1, 1993

Steven H. Bazerman
Reg. No. 24,653

36 West 44th Street
New York, New York 10036-8178
(212) 354-5650
SHB:pb

Check No. 5343

C000974

**CERTIFICATE OF MAILING (37 CFR 1.8A)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Phyllis Buchalter
Name

Date:  April 1, 1993

(Signature of person mailing paper)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/007,628 | 01/21/93 | BRAID | H   X529-27 |
|  |  |  | CUDA,C |

C2M1/0721

STEVEN H. BAZEMAN
GRAHAM, CAMPAIGN & MCCARTHY
36 WEST 44TH STREET
NEW YORK, NY  10036-8178

| EXAMINER |
|---|
| 3201 |
| ART UNIT   PAPER NUMBER |
| 07/21/93 |

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3 (three)** month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.    2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims **1 - 7** _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims **1 - 7** _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☒ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☒ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

C000976

Serial No. 08/007,628                    -2-

Art Unit   3201


1.     Claims 2-9 are rejected under 35 U.S.C. § 112, second

paragraph, as being indefinite for failing to particularly point

out and distinctly claim the subject matter which applicant

regards as the invention.

       The claims are in improper form since each dependent claim

must include all of the limitations of the claim from which it

depends.

2.     The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

       A person shall be entitled to a patent unless --
3.       (b) the invention was patented or described in a printed
       publication in this or a foreign country or in public use or
       on sale in this country, more than one year prior to the
       date of application for patent in the United States.

4.       (e) the invention was described in a patent granted on an
       application for patent by another filed in the United States
       before the invention thereof by the applicant for patent, or
       on an international application by another who has fulfilled
       the requirements of paragraphs (1), (2), and (4) of section
       371(c) of this title before the invention thereof by the
       applicant for patent.

5.     Claims 1-5 and 9 are rejected under 35 U.S.C. § 102(b) as

being clearly anticipated by Foster '480.

6.     Claims 1-5 and 8-9 are rejected under 35 U.S.C. § 102(e) as

being clearly anticipated by Sterner et al.

7.     The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

       A patent may not be obtained though the invention is not
       identically disclosed or described as set forth in section
       102 of this title, if the differences between the subject
       matter sought to be patented and the prior art are such that

Serial No. 08/007,628                    -3-

Art Unit  3201

the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claim 8 is rejected under 35 U.S.C. § 103 as being unpatentable over Foster '480 in view of Foster '472.

Foster '480 lacks only but Foster '472 teaches a hub interiorly of the spring for receiving a mounting screw. It would have been obvious at the time applicant's invention was made to modify the device of Foster '480 to include the housing, hub and mounting screw as taught by Foster '472 in order to protect the spring within a housing.

8.    Claims 6 and 7 are rejected under 35 U.S.C. § 103 as being unpatentable over Sterner, Jr.

Although Sterner, Jr. lacks an interference fit and a snap fit between the elements it is old and well known to provide mating parts with an interference fit and/or a snap fit in order to ease assembly of the parts. Therefore, it would have been obvious at the time applicant's invention was made to a person of ordinary skill in the art to modify the device of Sterner, Jr. to include either a snap fit or an interference fit between the

C000978

Serial No. 08/007,628                    -4-

Art Unit   3201

parts as is old and well known.

9.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Carmine
Cuda whose telephone number is (703) 308-1886.

      Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-1148.

C Cuda

Cuda/pf
June 21, 1993

C000979

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PT 1-892<br>(REV. 3-78) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | SERIAL NO.<br>08/067628 | GROUP ART UNIT<br>3201 | ATTACHMENT<br>TO<br>PAPER<br>NUMBER 4 |
|---|---|---|---|---|
| **NOTICE OF REFERENCES CITED** | | APPLICANT(S)<br>Braid, et al. | | |

## U.S. PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 5 1 5 7 8 6 8 | 10-1992 | Sterner | 16 | 197 | 2-1992 |
| | B | 2 7 3 2 5 9 4 | 1-1956 | Adams et al | 16 | 177 | |
| | C | 2 8 7 3 4 7 2 | 2-1959 | Foster | 16 | 177 | |
| | D | 3 4 5 2 4 8 0 | 7-1969 | Foster | 16 | 197 | |
| | E | 3 7 9 2 7 5 1 | 11-1976 | Foster et al. | 16 | 197 | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER<br>C Cindu | DATE<br>6-18-93 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

PAPER NO. 3201

CG 7628 4

11/21/93

| Length | Expected margins | | |
|---|---|---|---|
| | at right (inches) | at left (inches) | Additional info (metric) |
| Top | 2 inches | 1 inch | ...cm. |
| Left | 1/4 inch | 1/4 inch | ...cm. |
| Right | 1/4 inch | 1/4 inch | 1.5 cm. |
| Bottom | 1/4 inch | 1/4 inch | 1.0 cm. |

[ ] Proper margins required. All figures must be described.

[X] Proper margins required

[ ] TOP    [ ] RIGHT
[X] LEFT   [ ] BOTTOM

[X] Character of lines, numbers, letters. Lines not clean, rough and blurred. 1 - 12

[ ] Solid black shading not allowed. Fig(s).

1. [ ] Photographs not approved.

[ ] Comments:

[X] 1 - 12

[ ] per

C000981

PTO Copy

200126                        S-P3201



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
NOV 0 5 1993
GROUP 3200

| | | |
|---|---|---|
| Applicant(s) | : | Harold K. Braid, et al. |
| Serial No. | : | 08/007,628 |
| Filed | : | January 21, 1993 |
| For | : | **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS** |
| Art Unit | : | 3201 |
| Examiner | : | Carmine Cuda |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

October 15, 1993

Hon. Commissioner of Patents
and Trademarks
Washington, D. C., 20231

### INFORMATION DISCLOSURE STATEMENT

S I R:

The patents listed in the accompanying Form PTO 1449 were recently cited in an Office Action in the United Kingdom Patent Office for the equivalent of the present application. In addition, the U.K. Examiner cited U.S. Patent No. 5,157,808 to Sterner, which was cited in the Office Action of July 21, 1993 in the above-identified application.

Each of the art cited by the U.K. Examiner is directed to an assembly of the same general type as Applicants. While some do disclose a mounting means for the coiled spring mounted in a channel means, none show the interaction of an anti-rotational element with flanges on the channel means as now claimed. Accordingly, none of this art anticipates present invention and,

090 TE 11/02/93 08007628          1 126     200.00 CK

C000982

CERTIFICATE OF MAILING (37 CFR 1.8A)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

_Jason M. Drange_

Name

Date:  October 15, 1993

(Signature of person mailing paper)

RECEIVED

NOV 0 3 1993

GROUP 3200

g:\x529-27\infodisc.sta

C000983

thus, is no better than the art previously found by the Examiner.  Allowance of the claims, as

amended, is, therefore, respectfully requested.

Respectfully submitted,

**GRAHAM, CAMPAIGN & McCARTHY, P.C.**

By _____
Steven H. Bazerman, Reg. No. 24,653

The Bar Building
36 West 44th Street
New York, New York 10036-8178
Tel: (212) 354-5650

Enclosures

Our Ref.:  X529-27

FORM PTO
(Modified)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

INFORMATION DISCLOSURE
STATEMENT BY APPLICANT

(Use several sheets if necessary)

(37 CFR 1.98(b))

ATTY. DOCKET №  x529-2.

SERIAL NO.  08/007628

APPLICANT.  Harold K. Braid, et al.

FILING DATE  Jan. 21, 1993     GROUP  3201

**MAIL ROOM OCT 18 1993 PAT. & TRADEMARK OF.**

**RECEIVED NOV 03 1993 GROUP 3200**

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | PATENT NUMBER | ISSUE DATE | PATENTEE | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| C C | 4 2 2 7 3 4 5 | 10/80 | Durham | E05B | 13/12 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT OR PUBLISHED FOREIGN PATENT APPLICATION

| | DOCUMENT NUMBER | PUBLICATION DATE | COUNTRY OR PATENT OFFICE | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| C C | 8 2 5 5 1 3 | 12/59 | Great Britain | | | | |
| C C | 1 5 0 5 7 8 2 | 3/78 | Great Britain | | | | |
| C C | 2 2 5 3 8 7 4 | 9/92 | Great Britain | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER DOCUMENTS (Including Author, Title, Date** , Relevant Pages, Place of Publication***)**

EXAMINER  *C Cırdı*     DATE CONSIDERED  1-7-94

**EXAMINER: Initial citation considered. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.**

(Information Disclosure Statement—Section 2. FORM PTO - 1449 (Modified)
|6-1|—page—of—-)

(Rel.16-5/93 Pub.605)     FORM 6-1     6-18

#51 a
w/ priority
papers
+ prior
art
11/4/93
Q

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant(s)          :    Harold K. Braid, et al.

Serial No.            :    08/007,628

Filed                 :    January 21, 1993

For                   :    **SPRING MOUNTING FOR SASH FRAME TENSIONING
                           ARRANGEMENTS**

Art Unit              :    3201

Examiner              :    Carmine Cuda

---------------------------------------------------------------

October 15, 1993

Hon. Commissioner of Patents
    and Trademarks
Washington, D. C., 20231

**AMENDMENT UNDER RULE 1.11**

S I R:

In response to the Office Action of July 21, 1993, please amend the above-identified

application, as follows:

**IN THE CLAIMS:**

Amend the claims as follows:

1.(amended)  A mounting assembly comprising a channel [section member] means having

a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a

sash frame support [element] means slidable in said channel [section member] means, a coiled

ribbon spring having [a free outer] a first end [thereof] engaged with said sash frame support

C000986

[member] means, and a means for mounting said coiled ribbon spring [mounting element], the [mounting being disposed between the sash frame support member and a] coiled body portion of said coiled ribbon spring [with a free] having the other end of said coiled ribbon spring within the coil [disposed alongside said mounting,] being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured [to] in said channel [section member] means, said mounting means having a raised spine positioned between and in the same plane as said inwardly turned, opposed flanges of said channel means [, and in use, impinging upon an outer surface of said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion] whereby rotational motion of said mounting means is inhibited.

2.(amended)   [A] The mounting [element for use in the] assembly of claim 1 [comprising a body portion having means for securing the mounting in a channel portion of a sash frame or other abutment and having] wherein the mounting means has a support surface disposed [so as to impinge upon an] in contact with the outer surface of [the spring coil] said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means.

3.(amended)   [A mounting element as claimed in claim 2 comprising] The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein [to receive, in use] , a fixing screw positioned in said aperture by which the mounting [element may be] means is secured [to said frame or abutment, an upper] relative to said channel means,

- 2 -

a surface of [the] said body portion being concavely curved [to support the curved outer undersurface of the spring, thus providing said support surface] , said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion.

4.(amended)   [A] The mounting [element as claimed in] assembly of claim 2 in which [there is provided] the mounting means has at least one inter-engagement [formation] means by which a plurality of such [elements] mounting means may be [stackingly inter-engaged] stacked in inter-engagement.

5.(amended)   [A] The mounting [element as claimed in] assembly of claim 4 in which [an] the inter-engagement [formation] means comprises a tooth-like projection cooperable on said first mounting means with a corresponding complementary detente in [another such] a second mounting [element] means.

6.(amended)   [A] The mounting [element as claimed in] assembly of claim 4 in which [one] the inter-engagement [formation is formed so as to provide an] means on said first mounting means is in an interference fit with [formations of another] an inter-engagement means on said second mounting [element] means.

7.(amended)   [A] The mounting [element as claimed in] assembly of claim 4 in which [one of] the inter-engagement [formations] means is formed so as to provide a snap fit [with a formation of another mounting element].

- 3 -

Delete claim 8.

9.(amended)  A mounting [element as claimed in claim 2 provided with formations conformed so as to] assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges; a sash frame support means slidable in said channel means, a coiled ribbon spring having an outer end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring, with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and having means which cooperate with [a portion] the flanges of the [sash frame] channel means within which the element is to be received, whereby rotational movement of the mounting means is inhibited [such that contact of said formations with said sash frame inhibits movement in a rotational, pivoting, or twisting sense of the element relative to the sash frame].


## R E M A R K S

The draftsman's review of the patent drawings has been noted, corrections have been made in accordance therewith, and the revised drawings accompany this Amendment.

Also accompanying this Amendment are the certified copies of the documents under which a claim of priority is made.

Claims 1-5 and 9 were rejected under 35 USC 102 as being anticipated by Foster - '480 and under 35 USC 102 as being anticipated by Sterner *et al.* The Sterner *et al.* patent application was filed on February 18, 1992 without a claim of priority. It should be noted that certified copies of the U.K. applications for patents have been concurrently filed with this Amendment.

- 4 -

C000989

One of the three priority applications has a filing date of January 21, 1992, prior to that of Sterner *et al.* In any case, the claims have been amended to include limitations directed to use of a means to prevent the rotation of the mounting means within the flanged channel means, as most clearly seen in Figures 9, 10, 11 and 12. Such elements were the subject matter of original claim 9 and the anti-rotational aspect was discussed at page 9 of the specification. A channel means is clearly not found in Foster no less the claimed flanges or the claimed means cooperating with the flanges for preventing rotation in said channel. While Sterner *et al.* does disclose the use of a flanged channel, there is no element such as the spine fitting within the channel which interacts with said flanges to prevent rotation.

As noted in the Information Disclosure Statement, which also accompanies this Amendment, relevant art has been cited by the United Kingdom patent office which, in general, shows mounting means in a similar environment. None of the cited art show anti-rotational means which interact with flanged channels to prevent rotation of the mounting means. Thus, none of the art now of record disclose the invention as now claimed.

Claims 6 and 7 were rejected under 35 USC 103 as being unpatentable over Sterner *et al.* As noted above, the claims now clearly require the use of a spine or similar means to prevent rotation by interaction with the flanged channel member. As noted above, this is clearly not shown by the art of record.

- 5 -

C000990

In view of the above Amendment and Remarks, it is believed that the above-identified

Application is now in condition for allowance and an early issuance of a Notice of Allowance

is earnestly solicited.

Respectfully submitted,

GRAHAM, CAMPAIGN & McCARTHY, P.C.

By_____

Steven H. Bazerman, Reg. No. 24,653

The Bar Building
36 West 44th Street
New York, New York 10036-8178
Tel: (212) 354-5650

Enclosures

Our Ref.: X529-27

- 6 -

C000991



**CERTIFICATE OF MAILING (37 CFR 1.8A)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Jason M. Drangel
_____
Name

_____
(Signature of person mailing paper)

Date:  October 15, 1993

g:\x529-27\1-amend.106

- 7 -

C000992

GRAHAM, CAMPAIGN & McCARTHY, P.C.

(HERVEY, BARBER & McKEE)

THE BAR BUILDING

36 WEST 44TH STREET

NEW YORK, N.Y. 10036-8178

(212) 354-5650

FAX (212) 354-6354

H. JOHN CAMPAIGN
DANIEL A. McCARTHY
KEITH E. DANISH*
JOHN M. KEENE*
DANIEL F. McCARTHY*
STEVEN H. BAZERMAN†
J. BRIAN McCARTHY◊
JASON M. DRANGEL*

* ALSO ADMITTED IN N.J.
† ALSO ADMITTED IN D.C.
◊ ALSO ADMITTED IN CT.

ANDREW J. GRAHAM
(1911-1966)
WILLIAM L. McGUIRE, SR.
(1926-1992)

COUNSEL:
PATRICK M. WALL†
GERARD H. DAVIS◊

CABLE "FORBLAND"

TELEX 232574

October 15, 1993

RECEIVED

NOV 0 3 1993

GROUP 3200

Hon. Commissioner of Patents and Trademarks
Trademark Examining Operation
Washington, D.C., 20231

Re:    Applicant(s)        :    Harold K. Braid, et al.
       Serial No.          :    08/007,628
       Filed               :    January 21, 1993
       For                 :    SPRING MOUNTING FOR SASH FRAME
                                TENSIONING ARRANGEMENTS

       Art Unit            :    3201
       Examiner            :    Carmine Cuda

Sir:

We have attached hereto the following:

1.    Amendment under Rule 1.11
2.    Information Disclosure Statement
3.    Official fee in the amount of $200.00 for filing Information Disclosure
      Statement
4.    Certified copies of priority patent documents
5.    Revised drawings
4.    Acknowledgement postcard

Any additional fees should be charged to the undersigned attorneys' Deposit Account

GRAHAM, CAMPAIGN & McCARTHY, P.C.

No. 07-1845.  A copy of this letter is enclosed for such purpose.

Respectfully submitted,

GRAHAM, CAMPAIGN & McCARTHY, P.C.

By _____

Steven H. Bazerman

SHB:pb
Enclosures
Check No. 6380
Our Ref.: X529-27

C000994

007, 628

5365638





FIG.1.

FIG.2.



FIG.3.



FIG.4.

FIG.5.

C000995

007,628



FIG.6.

52
66
68
70
62



82
84
80
80
80
78b
86
20
78a
90
88
89 90

FIG.7.

C000996

007,628





FIG.8.

95          95

110

102

FIG.9.

100

95          95

112     108

C000997

007,628



FIG.10.

FIG.11.

FIG.12.

C000998

The
Patent
Office

The Patent Office
Cardiff Road
Newport
Gwent
NP9 1RH

I, the undersigned, being an officer duly authorised in accordance with Section 62(3) of the Patents and Designs Act 1907, to sign and issue certificates on behalf of the Comptroller-General, hereby certify that annexed hereto is a true copy of the documents as originally filed in connection with the Patent application identified therein.

In accordance with the Patents (Companies Re-registration) Rules 1982, if a company named in this certificate and any accompanying documents has re-registered under the Companies Act 1980 with the same name as that with which it was registered immediately before re-registration save for the substitution as, or the inclusion as, the last part of the name of the words "public limited company" or their equivalents in Welsh, references to the name of the company in this certificate and any accompanying documents shall be treated as references to the name with which it is so re-registered.

In accordance with the rules, the words "public limited company" may be replaced by p.l.c., plc, P.L.C. or PLC.

Re-registration under the Companies Act does not constitute a new legal entity but merely subjects the company to certain additional company law rules.



Signed 

Dated 14.1.93

An Executive Agency of the Department of Trade and Industry

. ATENTS ACT 1977

PATENTS FORM NO. 1/77 (Revised 1982)

(Rules 16, 19)

The Comptroller
The Patent Office

25 FEB 19.

27FEB '92H00288975    PAT  1 77 UC.    15.9C

9204076.2

## REQUEST FOR GRANT OF A PATENT

**THE GRANT OF A PATENT IS REQUESTED BY THE UNDERSIGNED ON THE BASIS OF THE PRESENT APPLICATION**

I    Applicant's or Agent's reference *(Please insert if available)*    PH/P92/014

II    Title of invention
Spring Mounting for Sash Frame Tensioning Arrangements.

III    Applicant or Applicants *(See note 2)*

Name (First or only applicant)..Harold Keith Braid..........................

Country Great Britain State...............ADP Code No S89 S842002

Address    The Sheilings, Main Street, Braceborough

Stamford, Lincs PE9 4NT

Name (of second applicant, if more than one) Simon Christopher Braid

..................Country Great Britain...State.S8 958 57002

Address    The Sheilings, Main Street, Braceborough

Stamford, Lincs PE9 4NT

IV    Inventor (see note 3)                (a) The applicant(s) is/are the
                                        sole/joint inventor(s)
                                                or
                                        (b) A statement on Patents Form
                                        No 7/77 is/will be furnished

V    Name of Agent (if any) *(See note 4)* Reginald W. Barker & Co.    ADP CODE NO
                                                                      240001

VI    Address for Service *(See note 5)*
13 Charterhouse Square, London EC1M 6BA

VII    Declaration of Priority *(See note 6)*

| Country | Filing date | File number |
|---------|-------------|-------------|
| ........ | ........ | ........ |
| ........ | ........ | ........ |
| ........ | ........ | ........ |
| ........ | ........ | ........ |

VIII    The Application claims an earlier date under Section 8(3), 12(6), 15(4), or 37(4) *(See note 7)*

Earlier application or patent number................and filing date...............

IX     Check List *(To be filled in by applicant or agent)*

A  The application contains the following
number of sheet(s)

.1  Request ......1.............. Sheet(s)

2  Description ....9 (x2)........ Sheet(s)

3  Claim(s) ......—............. Sheet(s)

4  Drawing(s) ...5 (x2)........ Sheet(s)

5  Abstract ....1 (x2)........ Sheet(s)

B  The application as filed is
accompanied by:-

1  Priority document .

Translation of priority document

3  Request for Search .........

4  Statement of Inventorship and
Right to Grant............

X     It is suggested that Figure No.........1.............of the drawings (if any) should accompany
the abstract when published.

XI     Signature *(See note 8)*     [signature]     Reginald W. Barker & Co.

NOTES:

1. This form, when completed, should be brought or sent to the Patent Office together with the prescribed fee and two copies of the description of the invention, and of any drawings.

2. Enter the name and address of each applicant. Names of individuals should be indicated in full and the surname or family name should be underlined. The names of all partners in a firm must be given in full. Bodies corporate should be designated by their corporate name and the country of incorporation and, where appropriate, the state of incorporation within that country should be entered where provided. Full corporate details, eg a "corporation organised and existing under the laws of the State of Delaware, United States of America", trading styles, eg "trading as xyz company", nationality, and former names, eg "formerly (known as) ABC Ltd" are *not* required and should *not* be given. Also enter applicant(s) ADP Code No.(if known).

3. Where the applicant or applicants is/are the sole inventor or the joint inventors, the declaration (a) to that effect at IV should be completed, and the alternative statement (b) deleted. If, however, this is not the case the declaration (a) should be struck out and a statement will then be required to be filed upon Patent Form No 7/77.

4. If the applicant has appointed an agent to act on his behalf, the agent's name and the address of his place of business should be indicated in the spaces available at V and VI. Also insert agent's ADP Code No. (if known) in the box provided.

5. An address for service in the United Kingdom to which all documents may be sent must be stated at VI. It is recommended that a telephone number be provided if an agent is not appointed.

6. The declaration of priority at VII should state the date of the previous filing and the country in which it was made and indicate the file number, if available.

7. When an application is made by virtue of section 8(3), 12(6), 15(4) the appropriate section should be identified at VIII and the number of the earlier application or any patent granted thereon identified.

8. Attention is directed to rules 90 and 106 of the Patent Rules 1982.

9. Attention of applicants is drawn to the desirability of avoiding publication of inventions relating to any article, material or device intended or adapted for use in war (Official Secrets Acts, 1911 and 1920). In addition after an application for a patent has been filed at the Patent Office the comptroller will consider whether publication or communication of the invention should be prohibited or restricted under section 22 of the Act and will inform the applicant if such prohibition is necessary.

10. Applicants resident in the United Kingdom are also reminded that, under the provisions of section 23 applications may not be filed abroad without written permission or unless an application has been filed not less than six weeks previously in the United Kingdom for a patent for the same invention and no direction prohibiting publication or communication has been given or any such direction has been received.

TSAF 0361

- 1 -

**Spring Mounting for Sash Frame Tensioning Arrangements.**

The invention relates to a mounting for a coiled ribbon spring and is particularly, though not exclusively, applicable to sash springs used in sash frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open area at their centre and two free ends, one on the outside of the coil and one on the inside; the springs being similar in construction to clock springs except that the inner free end is not (as in a clock spring) secured to a fixed point.

It is known in the art to mount such coiled ribbon springs on a drum within a hollow channel in a window frame by means of a screw or other fixing, about which the spring is able to uncoil as a free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, though the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum). It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as 'constant tension' springs.

C 001002

- 2 -

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

The invention provides, a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having means for securing the mounting in a channel portion of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

C 001003

- 4 -

be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The interengagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detents in another such mounting element. The interengagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a 'snap fit' therewith.

Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment; the hub portion being disposed such that in use the spring encircles said hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

In this arrangement the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion.

(In fact, in certain instances i.e. when the spring is fully extended, the hub portion may also provide some minor support, though this is not its function).

C 001004

- 3 -

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to operatively disposed between the spring body portion and the sash frame support member.

Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

In this inventive arrangement the spring merely rests on the mounting element which acts as a reaction member which the spring abuts as a free end, attached to the sash, is unwound. (Ideally there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash frame be inverted for any reason).

The mounting element may be provided with interengagement formations by which a plurality of such elements may be stackingly interengaged, thus enabling a plurality of coiled ribbon springs to

C 001005

- 5 -

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

Fig. 1 is schematic side elevational view shown partly broken away of an assembly according to the invention showing coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window,

Fig. 2 is a perspective view of the mounting element shown in Fig. 1,

Fig. 3 is a schematic side elevational view shown partly broken away of an mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention,

Fig. 4 is an exploded schematic view of the mounting assembly shown in Fig. 3,

Fig. 5 is a sectional view on line V-V of Fig. 3 with the coiled ribbon spring removed,

Fig. 6 is a schematic view of an enlarged scale of a portion of the mounting assembly shown in Figs 3, 4 and 5,

Fig. 7 is a schematic perspective view on an enlarged scale of a third mounting element according to the invention, and

Fig. 8 is a schematic front view of a fourth mounting element similar to said third mounting element, according to the invention.

C 001006

- 6 -

The mounting assembly shown in Fig.1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of 8nsertion into the channel section from the side (i.e. without the necessity to slide the mounting element in from the end of the channel section).

The mounting is shown so fixed in Fig.1. The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support element 28 which forms part of a sliding sash. The sash frame support element 28 is slidable in the channel section 16 back and forth in the direction of arrow A, A- to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for simplicity. In practice many more coils would be provided. Also the thickness of the coiled ribbon spring has been exaggerated.

C 001007

- 8 -

which the mounting may be fixed to a channel section member.  Fig.6 shows portions of coils 66, 68 and 70 of the spring, coil 70 being the outermost and having its outer undersurface supported by the support surface 62.

The mounting element shown in Fig. 7 is similar to that shown in Figs. 1 and 2 except firstly that upstanding walls 78a and 78b are dissimilar and secondly that interengagement formations 80 are provided to enable a plurality of said elements to interengage in a stacked manner.  One of the upstanding walls 78a which is intended to lie against a back surface 82 of a channel section frame (shown as 84 in part in hatched line) is provided with a pair of lateral ears 86 (only one of which is shown in full line) which are intended to prevent rotation of the mounting element about a fixing screw (not shown) received, in use, in a recessed bore 88.  A concavely curved surface 20' is provided in similar manner to the embodiment of Figs. 1 and 2.  A second upstanding wall 78b has greater thickness than upstanding wall 78a and is provided with a plurality of tooth-like interengagement formations 80.  There is provided a rebate 89 of a depth equal to the thickness of the upstanding wall 78b and provided with a plurality of detents 90 corresponding to formations 80 such that the formations 80 of one element as shown in Fig. 7 can engage in detents 90 of another 'identical' element lying above the first element.  Thus, two or more coiled ribbon springs can be mounted one above the other with their mounting elements interengaged and only a

C 001008

- 7 -

As the mounting element M (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of the surface 20. This is of no particular importance as the mounting only has a guiding function.

It will be noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art.

In the embodiment shown in Figs 3 to 6, the mounting element is in two parts 50, 52 which interengage to form a body portion 54 of reel-like structure but having a tube – like hub 56 which, in use, loosely impales a body portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 interengagable with the undersurface of the support portion 60 (see Fig.5). As will be seen from Fig.3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by

C 001009

- 9 -

lower one of said mounting elements need be secured with a screw as hereinbefore described. Fig. 8 shows a fourth mounting element in accordance with the invention. This is closely similar to that shown in Fig. 7 except that at lower corner regions shown generally as 95, the element is rounded off for ease of insertion of the element into the sash frame. It will readily be apparent that the interengagement formations need not be as shown in Figs. 7 and 8 but may be of any suitable shape, and number. They may also be made to be interlocking, releasably or otherwise. It is to be understood that in the channel section partly shown in broken line in Fig. 7 the front retaining flanges shown in Fig. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example two or more screw or other fixings would prevent any tendency for the mountings to rotate in use.

C 001010



- 10 -

ABSTRACT

SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

C 001011



Fig 1



Fig 2



Fig4

Fig5

Fig3



Fig 6

C 001014



Fig 7

C 001015



95

95

Fig 8

C 001016

#5



**The Patent Office**

The Patent Office
Cardiff Road
Newport
Gwent
NP9 1RH

I, the undersigned, being an officer duly authorised in accordance with Section 62(3) of the Patents and Designs Act 1907, to sign and issue certificates on behalf of the Comptroller-General, hereby certify that annexed hereto is a true copy of the documents as originally filed in connection with the Patent application identified therein.

In accordance with the Patents (Companies Re-registration) Rules 1982, if a company named in this certificate and any accompanying documents has re-registered under the Companies Act 1980 with the same name as that with which it was registered immediately before re-registration save for the substitution as, or the inclusion as, the last part of the name of the words "public limited company" or their equivalents in Welsh, references to the name of the company in this certificate and any accompanying documents shall be treated as references to the name with which it is so re-registered.

In accordance with the rules, the words "public limited company" may be replaced by p.l.c., plc, P.L.C. or PLC.

Re-registration under the Companies Act does not constitute a new legal entity but merely subjects the company to certain additional company law rules.

Signed        *W. Russell*

Dated        12th January 1993

An Executive Agency of the Department of Trade and Industry

C 001017

## PATENTS ACT 1977

PATENTS FORM NO. 1/77 (Revised 1982)

(Rules 16, 19)

The Comptroller
The Patent Office

THE PATENT OFFICE

21 JAN 1992

RECEIVED BY POST

21 JAN 1992

9201208.7

## REQUEST FOR GRANT OF A PATENT

**THE GRANT OF A PATENT IS REQUESTED BY THE UNDERSIGNED ON THE BASIS OF THE PRESENT APPLICATION**

I    Applicant's or Agent's reference *(Please insert if available)*    PH/P91/076

II   Title of invention
Spring Mounting for Sash Frame Tensioning Arrangements.

III  Applicant or Applicants *(See note 2)*

Name (First or only applicant) ..Harold Keith Braid...........

Country .Great Britain.State...............ADP Code No. .240001.......

Address    The Sheilings, Main Street, Braceborough

Stamford, Lincs PE9 4NT

Name (of second applicant, if more than one) .Simon Christopher Braid.......

.................Country.Great Britain....State....................

Address    The Sheilings, Main Street, Braceborough

Stamford, Lincs PE9 4NT

IV   Inventor (see note 3)          (a) The applicant(s) is/are the
                                         sole/joint inventor(s)
                                              or
                                    (b) A statement on Patents Form
                                        No 7/77 is/will be furnished

V    Name of Agent (if any) *(See note 4)*  Reginald W. Barker & Co.    ADP CODE NO
                                                                        240001

VI   Address for Service *(See note 5)*
13 Charterhouse Square, London EC1M 6BA

VII  Declaration of Priority *(See note 6)*

Country          Filing date            File number

.......................  .......................  .......................

.......................  .......................  .......................

.......................  .......................  .......................

.......................  .......................  .......................

VIII  The Application claims an earlier date under Section 8(3), 12(6), 15(4), or 37(4) *(See note 7)*

Earlier application or patent number................and filing date...............

TSAF 0381

IX    Check List *(To be filled in by applicant or agent)*

A  The application contains the following
number of sheet(s)

1  Request . . . . . . . . . . . . . . . . . . . . . Sheet(s)
    1.

2  Description . . . . . . . . . . . . . . . . . . . Sheet(s)
    9 (x2)

3  Claim(s) . . . . . . . . . . . . . . . . . . . . Sheet(s)
    _

4  Drawing(s) . . . . . . . . . . . . . . . . . . Sheet(s)
    4 (x2)

5  Abstract . . . . . . . . . . . . . . . . . . . . Sheet(s)
    1 (x2)

B  The application as filed is
accompanied by:-

1  Priority document .

2  Translation of priority document

3  Request for Search . . . . . . . . . .

4  Statement of Inventorship and
Right to Grant . . . . . . . . . . . . . . .

X    It is suggested that Figure No. . . . . . . . . . . . . . . . . . . . . .1. . . of the drawings (if any) should accompany
the abstract when published.

XI    Signature *(See note 8)*    /Mullu/    Reginald W. Barker & Co.

NOTES:

1. This form, when completed, should be brought or sent to the Patent Office together with the prescribed fee and two copies of the description of the invention, and of any drawings.

2. Enter the name and address of each applicant. Names of individuals should be indicated in full and the surname or family name should be underlined. The names of all partners in a firm must be given in full. Bodies corporate should be designated by their corporate name and the country of incorporation and, where appropriate, the state of incorporation within that country should be entered where provided. Full corporate details, eg a "corporation organised and existing under the laws of the State of Delaware, United States of America", trading styles, eg "trading as xyz company", nationality, and former names, eg "formerly (known as) ABC Ltd" are *not* required and should *not* be given. Also enter applicant(s) ADP Code No.(if known).

3. Where the applicant or applicants is/are the sole inventor or the joint inventors, the declaration (a) to that effect at IV should be completed, and the alternative statement (b) deleted. If, however, this is not the case the declaration (a) should be struck out and a statement will then be required to be filed upon Patent Form No 7/77.

4. If the applicant has appointed an agent to act on his behalf, the agent's name and the address of his place of business should be indicated in the spaces available at V and VI. Also insert agent's ADP Code No. (if known) in the box provided.

5. An address for service in the United Kingdom to which all documents may be sent must be stated at VI. It is recommended that a telephone number be provided if an agent is not appointed.

6. The declaration of priority at VII should state the date of the previous filing and the country in which it was made and indicate the file number, if available.

7. When an application is made by virtue of section 8(3), 12(6), 15(4) the appropriate section should be identified at VIII and the number of the earlier application or any patent granted thereon identified.

8. Attention is directed to rules 90 and 106 of the Patent Rules 1982.

9. Attention of applicants is drawn to the desirability of avoiding publication of inventions relating to any article, material or device intended or adapted for use in war (Official Secrets Acts, 1911 and 1920). In addition after an application for a patent has been filed at the Patent Office the comptroller will consider whether publication or communication of the invention should be prohibited or restricted under section 22 of the Act and will inform the applicant if such prohibition is necessary.

10. Applicants resident in the United Kingdom are also reminded that, under the provisions of section 23 applications may not be filed abroad without written permission or unless an application has been filed not less than six weeks previously in the United Kingdom for a patent for the same invention and no direction prohibiting publication or communication has been given or any such direction has been received.

T8AF 0361

- 1 -

### Spring Mounting for Sash Frame Tensioning Arrangements.

The invention relates to a mounting for a coiled ribbon spring and is particularly, though not exclusively, applicable to sash springs used in sash frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open area at their centre and two free ends, one on the outside of the coil and one on the inside; the springs being similar in construction to clock springs except that the inner free end is not (as in a clock spring) secured to a fixed point.

It is known in the art to mount such coiled ribbon springs on a drum within a hollow channel in a window frame by means of a screw or other fixing, about which the spring is able to uncoil as a free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, though the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum). It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as 'constant tension' springs.

C 001020

- 2 -

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

The invention provides, a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having means for securing the mounting in a channel porti[on] of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

C 001021

- 3 -

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to operatively disposed between the spring body portion and the sash frame support member.

Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

In this inventive arrangement the spring merely rests on the mounting element which acts as a reaction member which the spring abuts as a free end, attached to the sash, is unwound. (Ideally there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash frame be inverted for any reason).

The mounting element may be provided with interengagement formations by which a plurality of such elements may be stackingly interengaged, thus enabling a plurality of coiled ribbon springs to

C 001022

- 4 -

be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The interengagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detents in another such mounting element. The interengagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a 'snap fit' therewith.

Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame, or abutment; the hub portion being disposed such that in use the spring encircles said hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

In this arrangement the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion.

(In fact, in certain instances i.e. when the spring is fully extended, the hub portion may also provide some minor support, though this is not its function).

- 5 -

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

Fig. 1 is schematic side elevational view shown partly broken away of an assembly according to the invention showing coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window,

Fig. 2 is a perspective view of the mounting element shown in Fig.1,

Fig. 3 is a schematic side elevational view shown partly broken away of an mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention,

Fig. 4 is an exploded schematic view of the mounting assembly shown in Fig.3,

Fig. 5 is a sectional view on line V-V of Fig.3 with the coiled ribbon spring removed,

Fig. 6 is a schematic view of an enlarged scale of a portion of the mounting assembly shown in Figs 3, 4 and 5, and

Fig. 7 is a schematic perspective view on an enlarged scale of a third mounting element according to the invention.

C 001024

- 6 -

The mounting assembly shown in Fig.1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of insertion into the channel section from the side (i.e. without the necessity to slide the mounting element in from the end of the channel section).

The mounting is shown so fixed in Fig.1. The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support element 28 which forms part of a sliding sash. The sash frame support element 28 is slidable in the channel section 16 back and forth in the direction of arrow A, A- to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for simplicity. In practice many more coils would be provided. Also the thickness of the coiled ribbon spring has been exaggerated.

C 001025

- 7 -

As the mounting element M (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of the surface 20. This is of no particular importance as the mounting only has a guiding function.

It will be noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art.

In the embodiment shown in Figs 3 to 6, the mounting element is in two parts 50, 52 which interengage to form a body portion 54 of reel-like structure but having a tube - like hub 56 which, in use, loosely impales a body portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 interengagable with the undersurface of the support portion 60 (see Fig.5). As will be seen from Fig.3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by

C 001026

- 8 -

which the mounting may be fixed to a channel section member.  Fig.6
shows portions of coils 66, 68 and 70 of the spring, coil 70 being
the outermost and having its outer undersurface supported by the
support surface 62.

The mounting element shown in Fig. 7 is similar to that shown
in Figs. 1 and 2 except firstly that upstanding walls 78a and 78b are
dissimilar and secondly that interengagement formations 80 are
provided to enable a plurality of said elements to interengage in a
stacked manner.  One of the upstanding walls 78a which is intended to
lie against a back surface 82 of a channel section frame (shown as 84
in part in hatched line) is provided with a pair of lateral ears 86
(only one of which is shown in full line) which are intended to
prevent rotation of the mounting element about a fixing screw (not
shown) received, in use, in a recessed bore 88.  A concavely curved
surface 20' is provided in similar manner to the embodiment of Figs.
1 and 2.  A second upstanding wall 78b has greater thickness than
upstanding wall 78a and is provided with a plurality of tooth-like
interengagement formations 80.  There is provided a rebate 89 of a
depth equal to the thickness of the upstanding wall 78b and provided
with a plurality of detents 90 corresponding to formations 80 such
that the formations 80 of one element as shown in Fig. 7 can engage
in detents 90 of another 'identical' element lying above the first
element.  Thus a pair of coiled ribbon springs can be mounted one
above the other with their mounting elements interengaged and only a

- 9 -

lower one of said mounting elements need be secured with a screw as hereinbefore described. It will readily be apparent that the interengagement formations need not be as shown in Fig. 7 but may be of any suitable shape, and number. They may also be made to be interlocking, releasably or otherwise. It is to be understood that in the channel section partly shown in broken line in Fig. 7 the front retaining flanges shown in Fig. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example two or more screw or other fixings would prevent any tendency for the mountings to rotate in use.

C 001028

- 10 -

ABSTRACT

SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

C 001029



Fig 1



Fig 2



54

52

50

62

56

66

Fig 4

66

62

Fig 5

64

58

56

Fig 3

C 001031



Fig 6

C 001032



Fig 7

C 001033





### The Patent Office

The Patent Office
Cardiff Road
Newport
Gwent
NP9 1RH

RECEIVED
NOV 03 1993
GROUP 3200

I, the undersigned, being an officer duly authorised in accordance with Section 62(3) of the Patents and Designs Act 1907, to sign and issue certificates on behalf of the Comptroller-General, hereby certify that annexed hereto is a true copy of the documents as originally filed in connection with the Patent application identified therein.

In accordance with the Patents (Companies Re-registration) Rules 1982, if a company named in this certificate and any accompanying documents has re-registered under the Companies Act 1980 with the same name as that with which it was registered immediately before re-registration save for the substitution as, or the inclusion as, the last part of the name of the words "public limited company" or their equivalents in Welsh, references to the name of the company in this certificate and any accompanying documents shall be treated as references to the name with which it is so re-registered.

In accordance with the rules, the words "public limited company" may be replaced by p.l.c., plc, P.L.C. or PLC.

Re-registration under the Companies Act does not constitute a new legal entity but merely subjects the company to certain additional company law rules.



Signed

Dated  13th January 1993

An Executive Agency of the Department of Trade and Industry

# PATENTS ACT 1977

PATENTS FORM NO. 1/77 (Revised 1982)

(Rules 16, 19)

The Comptroller
The Patent Office

-5MAR'92H00289686   PAT 1 77 UC   15.09

~~THE PATENT OFFICE~~
~~04 MAR 1992~~
~~RECEIVED BY HAND~~

-4 MAR 1992

9204687.9

**REQUEST FOR GRANT OF A PATENT**

**THE GRANT OF A PATENT IS REQUESTED BY THE UNDERSIGNED ON THE BASIS OF THE PRESENT APPLICATION**

I    Applicant's or Agent's reference *(Please insert if available)*    PH/P92/015

II    Title of invention
    Spring Mounting for sash Frame Tensioning Arrangements.

III    Applicant or Applicants *(See note 2)*

Name (First or only applicant) ... Harold Keith Braid ................................

Country ... Great Britain ... State ................... ADP Code No. S895041002 N

Address ... The Sheilings, Main Street, Braceborough ........................

.. Stamford, Lincs PE9 4NT ...........................................

Name (of second applicant, if more than one). Simon Christopher Braid .......

................... Country Great Britain ... State ...................

Address ... The Sheilings, Main Street, Braceborough ...... S S895889002

.. Stamford, Lincs PE9 4NT ...................................

IV    Inventor (see note 3)

(a) The applicant(s) is/are the sole/joint inventor(s)
or
(b) A statement on Patents Form No 7/77 is/will be furnished

V    Name of Agent (if any) *(See note 4)* Reginald W. Barker & Co.    ADP CODE NO 240001

VI    Address for Service *(See note 5)*
    13 Charterhouse Square, London EC1M 6BA

VII    Declaration of Priority *(See note 6)*

| Country | Filing date | File number |
|---|---|---|
| | | |
| | | |
| | | |

VIII    The Application claims an earlier date under Section 8(3), 12(6), 15(4), or 37(4) *(See note 7)*

Earlier application or patent number ................... and filing date ...................

TRAF 0361

C 001035

IX    Check List *(To be filled in by applicant or agent)*

A  The application contains the following number of sheet(s)

1  Request ..... 1 ............... Sheet(s)

2  Description ...... 11 (x2) ........... Sheet(s)

3  Claim(s) ...... – ............ Sheet(s)

4  Drawing(s) .. 6 (x2) .......... Sheet(s)

5  Abstract ..... 1 (x2) .......... Sheet(s)

B  The application as filed is accompanied by:-

1  Priority document .

Translation of priority document

3  Request for Search. .........

4  Statement of Inventorship and Right to Grant...........

X    It is suggested that Figure No....... 1 .................of the drawings (if any) should accompany the abstract when published.

XI    Signature *(See note 8)*    /u/ /uu    Reginald W. Barker & Co.

**NOTES:**

1. This form, when completed, should be brought or sent to the Patent Office together with the prescribed fee and two copies of the description of the invention, and of any drawings.

2. Enter the name and address of each applicant. Names of individuals should be indicated in full and the surname or family name should be underlined. The names of all partners in a firm must be given in full. Bodies corporate should be designated by their corporate name and the country of incorporation and, where appropriate, the state of incorporation within that country should be entered where provided. Full corporate details, eg a "corporation organised and existing under the laws of the State of Delaware, United States of America", trading styles, eg "trading as xyz company", nationality, and former names, eg "formerly (known as) ABC Ltd" are *not* required and should *not* be given. Also enter applicant(s) ADP Code No.(if known).

3. Where the applicant or applicants is/are the sole inventor or the joint inventors, the declaration (a) to that effect at IV should be completed, and the alternative statement (b) deleted. If, however, this is not the case the declaration (a) should be struck out and a statement will then be required to be filed upon Patent Form No 7/77.

4. If the applicant has appointed an agent to act on his behalf, the agent's name and the address of his place of business should be indicated in the spaces available at V and VI. Also insert agent's ADP Code No. (if known) in the box provided.

5. An address for service in the United Kingdom to which all documents may be sent must be stated at VI. It is recommended that a telephone number be provided if an agent is not appointed.

6. The declaration of priority at VII should state the date of the previous filing and the country in which it was made and indicate the file number, if available.

7. When an application is made by virtue of section 8(3), 12(6), 15(4) the appropriate section should be identified at VIII and the number of the earlier application or any patent granted thereon identified.

8. Attention is directed to rules 90 and 106 of the Patent Rules 1982.

9. Attention of applicants is drawn to the desirability of avoiding publication of inventions relating to any article, material or device intended or adapted for use in war (Official Secrets Acts, 1911 and 1920). In addition after an application for a patent has been filed at the Patent Office the comptroller will consider whether publication or communication of the invention should be prohibited or restricted under section 22 of the Act and will inform the applicant if such prohibition is necessary.

10. Applicants resident in the United Kingdom are also reminded that, under the provisions of section 23 applications may not be filed abroad without written permission or unless an application has been filed not less than six weeks previously in the United Kingdom for a patent for the same invention and no direction prohibiting publication or communication has been given or any such direction has been received.

TSAF 0361

- 1 -

### Spring Mounting for Sash Frame Tensioning Arrangements.

The invention relates to a mounting for a coiled ribbon spring and is particularly, though not exclusively, applicable to sash springs used in sash frame tensioning arrangements for windows.

Such coiled ribbon springs are in the form of a flat coil with an open area at their centre and two free ends, one on the outside of the coil and one on the inside; the springs being similar in construction to clock springs except that the inner free end is not (as in a clock spring) secured to a fixed point.

It is known in the art to mount such coiled ribbon springs on a drum within a hollow channel in a window frame by means of a screw or other fixing, about which the spring is able to uncoil as a free end of the spring attached to a window sash moves away from the coil as the sash is moved. The drum may be arranged to be stationary or to rotate with the spring, though the drum is provided only to guide the spring and is not operatively secured thereto (thus, if the spring were unwound too far, it would be unwound completely from the drum). It is a feature of these known mountings that the spring is supported from the open space within the coil so that an upper part of the coil rests on the drum with a lower part of the coil slung below the drum and not supported thereby. It is, as stated above, a feature of such springs that the inner free end of the spring is not secured to any point (on the drum or elsewhere) such springs being referred to in some instances as 'constant tension' springs.

C 001037

— 2 —

The drum is merely to provide a reaction member and as a means of retaining the body of the spring loosely in position in the channel as its free outer end is uncoiled.

It has been a disadvantage of this known type of mounting that the spring is not silent in use, possibly due to relative movement between the inner, free end of the spring and the spring support drum.

The present invention seeks to overcome this disadvantage.

The invention provides, a mounting assembly comprising a channel section member, a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.

The present invention also provides a mounting element for use in the assembly set forth above, the mounting comprising a body portion having means for securing the mounting in a channel portion of a sash frame or other abutment and having a support surface disposed so as to impinge upon an outer surface of the spring coil.

C 001038

- 3 -

In normal circumstances the channel section member will in use be mounted substantially vertically and thus said mounting element will support an outer undersurface of said coiled body portion from below. Thus, normally the sash frame support member will be disposed in use beneath the mounting element which is itself disposed beneath the coiled body portion.

It will be understood that the mounting element is to operatively disposed between the spring body portion and the sash frame support member.

Preferably, the mounting element comprises a body portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to said frame or abutment, an upper surface of the body portion being concavely curved to support the curved outer undersurface of the spring, thus providing said support surface.

In this inventive arrangement the spring merely rests on the mounting element which acts as a reaction member which the spring abuts as a free end, attached to the sash, is unwound. (Ideally there is a slight tension in the spring when at rest so there is no likelihood of the spring being displaced should the sash frame be inverted for any reason).

The mounting element may be provided with interengagement formations by which a plurality of such elements may be stackingly interengaged, thus enabling a plurality of coiled ribbon springs to

- 4 -

be used at a single location, only one fixing element or screw being required to secure the said stack against movement as the sash frame support member moves. The interengagement formations may be in the form of tooth-like projections cooperable with corresponding complementary detents in another such mounting element. The interengagement formations may in addition or as an alternative be formed so as to provide an interference fit with formations of another mounting element or a 'snap fit' therewith.

Alternatively, the mounting element may be configured such that there is a hub portion having an aperture therein to receive, in use, a fixing screw by which the mounting element may be secured to the frame or abutment; the hub portion being disposed such that in use the spring encircles said hub portion, the mounting element having an arm portion slung below said hub portion and disposed so as to support said outer undersurface of said spring.

In this arrangement the hub portion loosely impales the spring body portion but in normal circumstances the hub portion does not support the spring, all the support is rendered by the arm portion slung below the hub portion.

(In fact, in certain instances i.e. when the spring is fully extended, the hub portion may also provide some minor support, though this is not its function).

C 001040

- 5 -

The mounting element may be provided with formations conformed so as to cooperate with a portion of the sash frame within which the element is to be received, such that contact of said formations with said sash frame inhibits movement in a rotational pivoting, or twisting sense of the element relative to the sash frame.

It will be apparent that the mounting element does not rotate or otherwise move with the spring but is substantially stationary when the spring is in operation.

Embodiments of the invention will now be described by way of example only and with reference to the accompanying drawings in which:

Fig. 1 is schematic side elevational  view shown partly broken away of an assembly according to the invention showing coiled ribbon spring supported by a mounting element according to the invention in a vertical channel section of a sash window,

Fig. 2 is a perspective view of the mounting element shown in Fig.1,

Fig. 3 is a schematic side elevational view shown partly broken away of an mounting assembly for a coiled ribbon spring, showing a second mounting element according to the invention,

Fig. 4 is an exploded schematic view of the mounting assembly shown in Fig.3,

C 001041

- 6 -

Fig. 5 is a sectional view on line V-V of Fig.3 with the coiled ribbon spring removed,

Fig. 6 is a schematic view of an enlarged scale of a portion of the mounting assembly shown in Figs 3, 4 and 5,

Fig. 7 is a schematic perspective view on an enlarged scale of a third mounting element according to the invention,

Fig. 8 is a schematic front view of a fourth mounting element similar to said third mounting element, according to the invention.

Fig. 9 is a partial schematic front view of a fifth mounting element similar to said third and fourth mounting elements according to the invention,

Fig. 10 is a schematic perspective view of the element of Fig. 9 shown on a larger scale and partially broken away so as to foreshorten the element, and

Fig. 11 is a schematic perspective view of a fifth mounting element according to the invention being similar to that shown in Fig. 10 with certain differences.

The mounting assembly shown in Fig.1 comprises a mounting element shown generally as M having a body portion 10 having a bore 12 therein to receive a fixing screw 14 by means of which the mounting element may be secured to a channel section 16 of a sash frame. The mounting element is dimensioned so as to be capable of insertion into the channel section from the side (i.e. without the necessity to slide the mounting element in from the end of the channel section).

C 001042

- 7 -

The mounting is shown so fixed in Fig.1.  The body portion 10 has two upstanding walls 18 and disposed therebetween is a support surface 20 which is concavely curved to receive a coiled body portion 22 of a coiled ribbon spring shown generally as S, such that the coiled body portion 22 rests on said surface 20 between said walls. An outer free end 24 of the coiled ribbon spring S is provided with a hooked end 26 engageable with a sash frame support  element 28 which forms part of a sliding sash.  The sash frame support element 28 is slidable in the channel section 16 back and forth in the direction of arrow A, A- to move the sash.

It is to be noted that only a few coils of the coiled ribbon spring have been shown in the figures for simplicity.  In practice many more coils would be provided.  Also the thickness of the coiled ribbon spring has been exaggerated.

As the mounting element M (and so the sash) is moved downwardly in the direction of arrow A the coiled ribbon spring unwinds.

It may be the case during this unwinding that the curvature of the undersurface of the coiled body portion 22 does not conform exactly to the curvature of the surface 20.  This is of no particular importance as the mounting only has a guiding function.

It will be noted that the coiled ribbon spring is not supported from within the coil (shown generally as 30) as it is in the prior art.

C 001043

- 8 -

In the embodiment shown in Figs 3 to 6, the mounting element is in two parts 50, 52 which interengage to form a body portion 54 of reel-like structure but having a tube – like hub 56 which, in use, loosely impales a body portion of the coiled ribbon spring 58 but provides no support therefor.

A support portion 60 is provided slung below the tube 56 on part 52 and is provided with a curved support surface 62 the counterpart of the support surface 20 in the first embodiment. There is then provided on part 50 a bracing portion 64 interengagable with the undersurface of the support portion 60 (see Fig.5). As will be seen from Fig.3 an outer undersurface of the coiled body portion of the coiled ribbon spring rests on the support surface 62, and is supported thereby. The hub 56 receives in use a fixing screw 64 by which the mounting may be fixed to a channel section member. Fig.6 shows portions of coils 66, 68 and 70 of the spring, coil 70 being the outermost and having its outer undersurface supported by the support surface 62.

The mounting element shown in Fig. 7 is similar to that shown in Figs. 1 and 2 except firstly that upstanding walls 78a and 78b are dissimilar and secondly that interengagement formations 80 are provided to enable a plurality of said elements to interengage in a stacked manner.

C 001044

- 9 -

One of the upstanding walls 78<u>a</u> which is intended to lie against a back surface 82 of a channel section frame (shown as 84 in part in hatched line) is provided with a pair of lateral ears 86 (only one of which is shown in full line) which are intended to prevent rotation of the mounting element about a fixing screw (not shown) received, in use, in a recessed bore 88.   A concavely curved surface 20' is provided in similar manner to the embodiment of Figs. 1 and 2.   A second upstanding wall 78<u>b</u> has greater thickness than upstanding wall 78<u>a</u> and is provided with a plurality of tooth-like interengagement formations 80.  There is provided a rebate 89 of a depth equal to the thickness of the upstanding wall 78<u>b</u> and provided with a plurality of detents 90 corresponding to formations 80 such that the formations 80 of one element as shown in Fig. 7 can engage in detents 90 of another 'identical' element lying above the first element.   Thus, two or more coiled ribbon springs can be mounted one above the other with their mounting elements interengaged and only a lower one of said mounting elements need be secured with a screw as hereinbefore described.

Fig. 8 shows a fourth mounting element in accordance with the invention.  This is closely similar to that shown in Fig. 7 except that at lower corner regions shown generally as 95, the element is rounded off for ease of insertion of the element into the sash frame.

C 001045

- 10 -

The mounting element 100 shown in Figs. 9 and 10 is similar to those of Figs. 7 and 8 and some of those portions of the element similar to those provided in the elements shown in Figs. 7 and 8 have been labelled with the same reference numerals. The mounting element 100 is devoid of the lateral ears 86 but instead is provided with a raised spine formation 102 whose width W is arranged such that it is a snug fit between open lip portions 104 of a channel section sash frame member 5 (shown in broken line in Fig. 10) within which the mounting element is to be operatively received. Thus, rotational, pivoting or twisting motion of the element 100 within the sash frame member 5 is inhibited. The element 100 is secured in the sash frame member 5 by a screw or other suitable fixing via a bore 108 in a similar manner to that of the element shown in Fig. 7. In the mounting element 100 a single interengagement projection formation 110 is provided, which is cooperable with a corresponding recess formation 112 of a second such element, so that elements can be 'stacked' as in previous embodiments.

The mounting element 110 shown in Fig. 11 is similar to that shown in Fig. 10 except that the upstanding wall 78b is provided entirely by said raised spine formation 102. This is especially useful where space is limited i.e. the depth of the coiled ribbon spring approaches the depth of the channel section sash frame member.

It will readily be apparent that the interengagement formations need not be as shown in the Figures but may be of any suitable shape, and number.

C 001046

- 11 -

They may also be made to be interlocking, releasably or otherwise. It is to be understood that in the channel section partly shown in broken line in Fig. 7 the front retaining flanges shown in Fig. 1 at F have not been shown.

It will be noted that in none of the embodiments does the mounting element move with the spring.

It will be apparent that other methods of securing the mountings to a frame or abutment may be used. For example two or more screw or other fixings would prevent any tendency for the mountings to rotate in use. Alternatively, pegs, spigots or catches could be used.

C 001047

- 12 -

ABSTRACT

SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

A mounting element and assembly for a sash frame tensioner used in a sash window frame to support the window in any desired open position, the assembly comprising a channel section member and a sash frame support element slidable in said channel section member. A coiled ribbon spring having a free outer end thereof engaged with said sash frame support member, and a mounting element, the mounting being disposed between the sash frame support member and a coiled body portion of said coiled ribbon spring with a free end of said coiled ribbon spring disposed alongside said mounting, said mounting being secured to said channel section member, directly or indirectly, and in use impinging upon an outer surface of said coiled body portion to retain said coiled body portion in position during uncoiling of said coiled ribbon spring as said sash support member is moved away from said coiled body portion.



Fig 1



Fig 2

C 001049



54

52

50

62

56

60

Fig 4

64

60    62

Fig 5

58

56

Fig 3

C 001050



52

66

68

70

Fig 6

62

C 001051



Fig 7

C 001052



Fig 8

Fig 9

C 001053



Fig 10



Fig 11

C 001054



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/007,628 | 01/21/93 | BRAID | H    X529-27 |

C2M1/0209

STEVEN H. BAZEMAN
GRAHAM, CAMPAIGN & McCARTHY
36 WEST 44TH STREET
NEW YORK, NY 10036-8178

EXAMINER
CUDA, E

| ART UNIT | PAPER NUMBER |
|---|---|
| 3201 | 6 |

DATE MAILED: 02/09/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☒ Responsive to communication filed on _Oct 18, 1993_ ☒ This action is made final.

A shortened statutory period for response to this action is set to expire _3(three)_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II**    SUMMARY OF ACTION

1. ☒ Claims _1-7 & 9_ _____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _8 has_ _____ have been cancelled.

3. ☒ Claims _1-7_ _____ are allowed.

4. ☒ Claims _9 is_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received

    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other _____

**EXAMINER'S ACTION**

C 001055

Serial No. 08/007,628                          -2-

Art Unit  3201

Claim 9 is rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The terms "the element" lack proper antecedent basis.  Also the use of the terms "within which" causes confusion.  It is not clear whether "which" refers to the flanges or the channel means.  It is suggested that this claim be amended to more closely resemble claim 1.

THIS ACTION IS MADE FINAL.  Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Claims 1-7 are allowable over the prior art of record.

C 001056

Serial No. 08/007,628                    -3-

Art Unit   3201

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Carmine Cuda whose telephone number is (703) 308-1886.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-1148.

C.Cuda/tnt
January 11, 1994

C 001057

Cu...es. and Mail

# BOX AF

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant(s) | : | Harold K. Braid, et al. |
| Serial No. | : | 08/007,628 |
| Filed | : | January 21, 1993 |
| For | : | **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS** |
| Art Unit | : | 3201 |
| Examiner | : | Carmine Cuda |

------------------------------------------------------------

April 21, 1994

Hon. Commissioner of Patents
  and Trademarks
Box AF
Washington, D. C., 20231

## AMENDMENT UNDER RULE 1.16

S I R:

In response to the Office Action of February 9, 1994, please amend the above-identified

application, as follows:

## IN THE CLAIMS:

Amend claim 9 as follows:

9.(twice amended) A mounting assembly comprising a channel means having a rear wall,

side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame

support means slidable in said channel means, a coiled ribbon spring having an outer end engaged

C 001058

with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled

body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned

in said mounting means, said mounting means being secured in said channel means and having

means which cooperate with the flanges of the channel means [within which the element is to be

received,] whereby rotational movement of the mounting means is inhibited .

## REMARKS

Claim 9 has been rejected under 35 U.S.C. § 112, second paragraph, as being indefinite. The

Examiner has pointed out that the term "element" has no antecedent basis and that the entire phrase

"within which the element is to be received" is confusing. A review of the claim indicates that the

phrase adds nothing to the structure of the claim since the mounting means' position within the

channel is clearly set forth in the claim along with the cooperation between the flanges of the channel

means and means on the mounting means to inhibit rotational movement of the mounting means.

Accordingly, that phrase has been eliminated. With the elimination of that phrase, all matter which

was objected to under 35 U.S.C. § 112 has been eliminated. None of the art made of record in this

case discloses means on the mounting means for preventing rotation of the mounting means or

teaches the addition of such means. In view of this lack of prior art, it is felt that the use of such anti-

rotational means is both novel and unobvious. Accordingly, applicant believes the claim is in

condition for allowance.

Applicants note that the box indicating that you have received the certified copies of the

priority documents was not checked in the last Office Action. Certified copies were supplied to the

- 2 -

C 001059

U.S. Patent and Trademark Office with the Amendment dated October 15, 1993. In the Advisory Action responsive to the present Amendment, would you please indicate whether the Patent Office records indicate receipt of the necessary certified copies.

In view of the above Amendment and Remarks, reconsideration of the rejection of claims 1-7 and the objection to claim 9 is requested and an early indication of allowance is earnestly solicited.

Respectfully submitted,

GRAHAM, CAMPAIGN & McCARTHY, P.C.

By _____
Steven H. Bazerman, Reg. No. 24,653

The Bar Building
36 West 44th Street
New York, New York 10036-8178
Tel: (212) 354-5650

Our Ref.: X529-27

## CERTIFICATE OF MAILING (37 CFR 1.8A)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Phyllis Buchalter
_____

Date: April 21, 1994

_____
(Signature of person mailing paper)

- 3 -

C 001060

GRAHAM, CAMPAIGN & McCARTHY, P.C.

(HERVEY, BARBER & McKEE)

THE BAR BUILDING

36 WEST 44TH STREET

NEW YORK, N.Y. 10036-8178

(212) 354-5650

FAX (212) 354-6354

HERVEY CAMPAIGN
DANIEL A. McCARTHY.
KEITH E. DANISH*
JOHN M. KEENE*
DANIEL F. McCARTHY*
STEVEN H. BAZERMAN†
J. BRIAN McCARTHY◊
JASON M. DRANGEL*

* ALSO ADMITTED IN N.J.
† ALSO ADMITTED IN D.C.
◊ ALSO ADMITTED IN CT.

ANDREW J. GRAHAM
(1911-1986)
WILLIAM L. McGUIRE, SR.
(1926-1992)

COUNSEL:
PATRICK M. WALLI
GERARD H. DAVIS◊

CABLE "FORBLAND"

TELEX 236574

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: **Harold K. Braid, et al.**
Serial No: **08/007,628**
Filed: **January 21, 1993**                    Art Unit: **3201**
For:          **SPRING MOUNTING FOR SASH TENSIONING ARRANGEMENTS**          Examiner: **Carmine Cuda**

**Commissioner of Patents and Trademarks**
**Box AF**
**Washington D.C. 20231**

April 21, 1994

### AMENDMENT TRANSMITTAL

1.      Transmitted herewith is an amendment for this application.

2.      Applicant is

   [x]   a small entity -- verified statement:

         [ ]      attached.

         [x]      already filed.

   [ ]    other than a small entity.

---

### CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commission of Patents and Trademarks, Washington, D.C. 20231.

Phyllis Buchalter

Date: **April 21, 1994**

(Signature of person mailing paper)

C 001061

GRAHAM, CAMPAIGN & McCARTHY, P.C.

3.  The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply

*(complete (a) or (b) as applicable)*

(a)  [ ]  Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37 CFR 1.17(a)-(d) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| [ ] one month | $110.00 | $55.00 |
| [ ] two months | $360.00 | $180.00 |
| [ ] three months | $840.00 | $420.00 |
| [ ] four months | $1320.00 | $660.00 |
| | | Fee $ |

**If an additional extension of time is required please consider this a petition therefor.**

*(check and complete the next item, if applicable)*

[ ]  An extension for _____ months has already been secured and the fee paid therefor of $_____ is deducted from the total fee due for the total months of extension now requested.

Extension fee due with this request  $$

**OR**

(b  [x]  Applicant believes that no extension of time is required.  However, this conditional petition is being made to provide for the possibility that applicant has inadvertently overlooked the need for a petition for extension of time.

GRAHAM, CAMPAIGN & McCARTHY, P.C.

### FEE FOR CLAIMS

4.    The fee for claims (37 cfr 1.16(b)-(d) has been calculated as shown below:

| (Col. 1) CLAIMS REMAINING AFTER AMENDMENT | | (Col. 2) HIGHEST NO PREVIOUSLY PAID FOR | (Col. 3) PRESENT EXTRA | SMALL ENTITY ADDIT. RATE | FEE | | OTHER THAN A SMALL ENTITY ADDIT. RATE | FEE |
|---|---|---|---|---|---|---|---|---|
| TOTAL | 09 | MINUS = 20 | 00 | x 11 = | $00.00 | OR | x 22 = $ | |
| INDEP. | 01 | MINUS = 03 | 00 | x 37 = | $00.00 | | x 74 = $ | |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | + 115 = $ | | | + 230 = $ | |

TOTAL ADDIT. FEE    $00.00    OR TOTAL ADDIT. FEE _____

*      If the entry in Col. I is less than entry in Col. 2, write "0" in Col. 3.
**     If the "Highest No. Previously paid for" IN THIS SPACE is less then 20, enter "20".
***    If the "Highest No. Previously Paid For" IN THIS SPACE is less then 3, enter "3".
The "Highest No. Previously Paid For" (Total or indep.) is the highest number found in the appropriate box in Col. 1 of a prior amendment or the number of claims originally filed.

*(compete (c) or (d) as applicable)*

(c)     [x]  No additional fee for claims is required.

### OR

(d)     [ ]  Total additional fee for claims required $_____.

### FEE PAYMENT

5.    [ ] Attached is a check in the sum of $_____.

[ ] Charge Account No. 07-1845 the sum of $_____.

A duplicate of this transmittal is attached.

### FEE DEFICIENCY

NOTE:    *If there is a fee deficiency and there is no authorization to charge an account, additional fees are necessary to cover the additional time consumed in making up the original deficiency. If the maximum, six-month period has expired before the deficiency is noted and corrected, the application is held abandoned. In those instances where authorization to charge is included, processing delays are encountered in returning the papers to the PTO Finance Branch in order to apply these charges prior to action on the cases. Authorization to charge the deposit account for any fee deficiency should be checked. See the Notice of April 7, 1986, 1065 O.G. 31-33.*

GRAHAM, CAMPAIGN & McCARTHY, P.C.

6.    [x] If any additional extension and/or fee is required, charge Account No. 07-1845.

**AND/OR**

[x] If any additional fee for claims is required, charge Account No. 07-1845.

Reg. No.: 24,653
Enc.
Check No. _____

Tel. No.: (212) 354-5650

Our Ref.: X529-27

Steven H. Bazerman

Graham, Campaign & McCarthy, P.C.
36 West 44th Street
New York, New York 10036-8178

C 001064



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/007,628 | 01/21/93 | BRAID | H- X529-27 |

32M1/0606

STEVEN H. BAZEMAN
GRAHAM, CAMPAIGN & MCCARTHY
36 WEST 44TH STREET
NEW YORK, NY  10036-8178

CUDA, EXAMINER

| ART UNIT | PAPER NUMBER |
|---|---|
| 3201 | 5 |

DATE MAILED:
06/06/94

Below is a communication from the EXAMINER in charge of this application

COMMISSIONER OF PATENTS AND TRADEMARKS

## ADVISORY ACTION

☒ THE PERIOD FOR RESPONSE:

a) ☒ is extended to run _____ or continues to run **3 Months** from the date of the final rejection.

b) ☐ expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for the response expire later than six months from the date of the final rejection.

Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due in accordance with 37 CFR 1.192(a).

☒ Applicant's response to the final rejection, filed _April 26, 1994_ has been considered with the following effect, but it is not deemed to place the application in condition for allowance.

1. ☒ The proposed amendments to the claim and /or specification will not be entered and the final rejection stands because:

    a. ☒ There is no convincing showing under 37 CFR 1.116(b) why the proposed amendment is necessary and was not earlier presented.

    b. ☒ They raise new issues that would require further consideration and/or search. (See Note).

    c. ☐ They raise the issue of new matter. (See Note).

    d. ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

    e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

    NOTE: _Deletion of the phrase in the last line of claim 7 broadens the claim and is considered a new issue that would require further consideration and/or search. The claim is still confusing. It is suggested that a phrase such as: "projection means positioned between said inwardly turned opposed flanges" be included in the claim._

2. ☐ Newly proposed or amended claims _____ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☒ Upon filing an appeal, the proposed amendment ☐ will be entered ☒ will not be entered and the status of the claims will be as follows:

    Claims allowed: _1-7_
    Claims objected to: _____
    Claims rejected: _7_

    However;
    ☐ Applicant's response has overcome the following rejection(s): _____

4. ☐ The affidavit, exhibit or request for reconsideration has been considered but does not overcome the rejection because _____

5. ☐ The affidavit or exhibit will not be considered because applicant has not shown good and sufficient reasons why it was not earlier presented.

☐ The proposed drawing correction ☐ has ☐ has not been approved by the examiner.

☒ Other _The certified copies have been received for the claim for priority under U.S.C. 119._

JOHN SIPOS
PATENT EXAMINER
GROUP 320 - ART UNIT

cmc  PTOL-303 (REV. 5-89)

C 001065



*55 - 215*          *GP3201*

# GRAHAM, CAMPAIGN & McCARTHY, P.C.

(HERVEY, BARBER & McKEE)

THE BAR BUILDING

36 WEST 44TH STREET

NEW YORK, N.Y. 10036-8178

(212) 354-5650

FAX (212) 354-6354

H. JOHN CAMPAIGN
DANIEL A. McCARTHY
KEITH E. DANISH*
JOHN M. KEENE*
DANIEL F. McCARTHY*
STEVEN H. BAZERMAN
J. BRIAN McCARTHY◊
JASON M. DRANGEL*

* ALSO ADMITTED IN N.J.
† ALSO ADMITTED IN D.C.
◊ ALSO ADMITTED IN CT.

ANDREW J. GRAHAM
(1911-1986)
WILLIAM L. McGUIRE, SR.
(1926-1992)

COUNSEL:
PATRICK M. WALL‡
GERARD H. DAVIS◊

CABLE "FORBLAND"

TELEX 238574

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: **Harold K. Braid, et al.**

Serial No:       **08/007,628**                    Art Unit:      **3201**

Filed:           **January 21, 1993**              Examiner:      **Carmine Cuda**

For:             **SPRING MOUNTING FOR SASH TENSIONING ARRANGEMENTS**

**Commissioner of Patents and Trademarks**
**Box AF**
**Washington D.C. 20231**

June 9, 1994

## AMENDMENT TRANSMITTAL

1.     Transmitted herewith is an amendment for this application.

2.     Applicant is

    [x]     a small entity -- verified statement:

        [ ]     attached.

        [x]     already filed.

    [ ]     other than a small entity.

### CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commission of Patents and Trademarks, Washington, D.C. 20231.

Phyllis Buchalter

Date: **June 9, 1994**

(Signature of person mailing paper)

080 KJ 06/14/94 08007628                    1 215        25.00 CK

GRAHAM, CAMPAIGN & McCARTHY, P.C.

3.    The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply

*(complete (a) or (b) as applicable)*

(a)    [ X ]    Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37
CFR 1.17(a)-(d) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| [ X ] one month | $110.00 | $55.00 |
| [   ] two months | $360.00 | $180.00 |
| [   ] three months | $840.00 | $420.00 |
| [   ] four months | $1320.00 | $660.00 |

Fee $55.00

**If an additional extension of time is required please consider this a petition therefor.**

*(check and complete the next item, if applicable)*

[ ]    An extension for _____ months has already been secured and the fee paid
therefor of $_____ is deducted from the total fee due for the total months of
extension now requested.

Extension fee due with this request  $$

**OR**

(b    [x]    Applicant believes that no extension of time is required.  However, this
conditional petition is being made to provide for the possibility that applicant
has inadvertently overlooked the need for a petition for extension of time.

C 001067

GRAHAM, CAMPAIGN & McCARTHY, P.C.

### FEE FOR CLAIMS

4.    The fee for claims (37 cfr 1.16(b)-(d) has been calculated as shown below:

| | (Col. 1) CLAIMS REMAINING AFTER AMENDMENT | | (Col. 2) HIGHEST NO PREVIOUSLY PAID FOR | (Col. 3) PRESENT EXTRA | SMALL ENTITY ADDIT. RATE | FEE | OR | OTHER THAN A SMALL ENTITY ADDIT. RATE | FEE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 09 | MINUS = | 20 | 00 | x 11 = | $00.00 | | x 22 = $ | |
| INDEP. | 01 | MINUS = | 03 | 00 | x 37 = | $00.00 | | x 74 = $ | |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | + 115 = $ | | | + 230 = $ | |

|  |  |
|---|---|
| TOTAL ADDIT. FEE___$00.00___ | OR TOTAL ADDIT.FEE_____ |

\*    If the entry in Col. 1 is less than entry in Col. 2, write "0" in Col. 3.
\*\*    If the "Highest No. Previously Paid for" IN THIS SPACE is less then 20, enter "20".
\*\*\*    If the "Highest No. Previously Paid For" IN THIS SPACE is less then 3, enter "3"..
The "Highest No. Previously Paid For" (Total or indep.) is the highest number found in the appropriate box in Col. 1 of a prior amendment or the number of claims originally filed.

*(compete (c) or (d) as applicable)*

(c)    [x] No additional fee for claims is required.

### OR

(d)    [ ] Total additional fee for claims required $_____.

### FEE PAYMENT

5.    [ X ] Attached is a check in the sum of $_55.00___.

[ ] Charge Account No. 07-1845 the sum of $_____.

A duplicate of this transmittal is attached.

### FEE DEFICIENCY

*NOTE:* *If there is a fee deficiency and there is no authorization to charge an account, additional fees are necessary to cover the additional time consumed in making up the original deficiency. If the maximum, six-month period has expired before the deficiency is noted and corrected, the application is held abandoned. In those instances where authorization to charge is included, processing delays are encountered in returning the papers to the PTO Finance Branch in order to apply these charges prior to action on the cases. Authorization to charge the deposit account for any fee deficiency should be checked. See the Notice of April 7, 1986, 1065 O.G. 31-33.*

C 001068

GRAHAM, CAMPAIGN & McCARTHY, P.C.

6.    [x]  If any additional extension and/or fee is required, charge Account No. 07-1845.

**AND/OR**

[x]  If any additional fee for claims is required, charge Account No. 07-1845.

Reg. No.: 24,653
Enc.
Check No.  *6923*

Tel. No.: (212) 354-5650

Our Ref:.  X529-27

Steven H. Bazerman

Graham, Campaign & McCarthy, P.C.
36 West 44th Street
New York, New York 10036-8178



**UNITED STATES DEPARTMENT OF COMMERC**
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS.
Washington, D.C. 20231

FROM    : Sallye M. Rayford, Manager
          Correspondence & Mail Division

SUBJECT: Receipt of Papers and Fees File Under 37 CFR 1.10 By
         Express Mail

The filing date of _June 10, 1994_ is the correct date. The date on
the Express Mail label under 37 CFR 1.10 is _June 9, 1994_ . On
that date the PTO was closed all day due to _____ adverse weather con-
ditions (authorized by Office of Personnel Management) or a _____ nor-
mally scheduled Federal holiday within the District of Columbia. In
accordance with 37 CFR 1.6 the papers have been stamped with the next suc
ceeding day which is not a Saturday, Sunday or Federal holiday within
District of Columbia. The provision of 35 U.S.C. 21 (b) apply.

The papers were not stamped with the date on the certificate of mailing
by Express Mail because the date on the certificate does not coincide
with the date of deposit on the Express Mail label which the PTO takes as
evidence of when the package was mailed.

Date on certificate of mailing by Express Mail is _____

Date on Express Mail label is _____

Date of receipt in PTO is _June 10, 1994_ .

Therefore, the filing date is _____

The papers are not entitled to the benefits of 37 CFR 1.10 because:

_Document is not indicating Express Mail_

_____

_____

SIGNED: _Norma M. Villanueva_

DATE  : _6/10/94_

Corres. and Mail

**BOX AF**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#10(C(#5)

McCall

6/16/94

| | | |
|---|---|---|
| Applicant(s) | : | Harold K. Braid, et al. |
| Serial No. | : | 08/007,628 |
| Filed | : | January 21, 1993 |
| For | : | **SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS** |
| Art Unit | : | 3201 |
| Examiner | : | Carmine Cuda |

OK To Enter 6/15/94 CMW

-------------------------------------------------

June 9, 1994

Hon. Commissioner of Patents
  and Trademarks
Box AF
Washington, D. C., 20231

### AMENDMENT IN RESPONSE TO ADVISORY ACTION

S I R:

In response to the Advisory Action of June 6, 1994, commenting on the Amendment After Final Rejection of April 21, 1994, responding to the Office Action mailed February 9, 1994, please amend the above-identified application, as follows:

**IN THE CLAIMS:**

Amend claim 9 as follows:

9. (thrice amended) A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having an outer end engaged

C 001071

with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said [the] flanges of the channel means within which the mounting means is positioned [element is to be received], whereby rotational movement of the mounting means is inhibited.

## R E M A R K S

Claim 9 has been amended to include the language proposed by the Examiner and to clarify the meaning of phrase which was originally deleted in the last line of claim 9. We believe this places the claim in condition for allowance.

This amendment and the previous amendment after final was necessary since the Examiner's original rejection of claim 9 in Paper No. 6 was not fully understood. Only with the clarification given in the Advisory Action was Applicant able to understand the nature of the indefiniteness rejection and to thereupon rewrite the claim as required by the Examiner.

Respectfully submitted,
**GRAHAM, CAMPAIGN & McCARTHY, P.C.**

By _____
Steven H. Bazerman, Reg. No. 24,653

The Bar Building
36 West 44th Street
New York, New York 10036-8178
Tel: (212) 354-5650
Our Ref.: X529-27

- 2 -



**CERTIFICATE OF MAILING (37 CFR 1.8A)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

<u>     Phyllis Buchalter     </u>

Date:  June 9, 1994

(Signature of person mailing paper)

- 3 -

C 001073



GRAHAM, CAMPAIGN & McCARTHY, P.C.

(HERVEY, BARBER & McKEE)

THE BAR BUILDING

36 WEST 44TH STREET

NEW YORK, N.Y. 10036-8178

(212) 354-5650

FAX (212) 354-6354

H. JOHN CAMPAIGN
DANIEL A. McCARTHY
KEITH E. DANISH*
JOHN M. KEENE*
DANIEL F. McCARTHY†
STEVEN H. BAZERMAN‡
J. BRIAN McCARTHY◊
JASON M. DRANGEL*

* ALSO ADMITTED IN N.J.
† ALSO ADMITTED IN D.C.
◊ ALSO ADMITTED IN CT.

ANDREW J. GRAHAM
(1911-1986)
WILLIAM L. McGUIRE, SR.
(1926-1992)

COUNSEL:
PATRICK M. WALL‡
GERARD H. DAVIS◊

CABLE "FORBLAND"

TELEX 236574

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: **Harold K. Braid, et al.**
Serial No: **08/007,628**
Filed: **January 21, 1993**
For: **SPRING MOUNTING FOR SASH TENSIONING ARRANGEMENTS**

Art Unit: **3201**
Examiner: **Carmine Cuda**

**Commissioner of Patents and Trademarks**
**Box AF**
**Washington D.C. 20231**

June 9, 1994

### AMENDMENT TRANSMITTAL

1.   Transmitted herewith is an amendment for this application.

2.   Applicant is

[x]   a small entity -- verified statement:

   [ ]   attached.

   [x]   already filed.

[ ]   other than a small entity.

**CERTIFICATE OF MAILING (37 CFR 1.8a)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commission of Patents and Trademarks, Washington, D.C. 20231.

Phyllis Buchalter

Date: **June 9, 1994**

(Signature of person mailing paper)

C 001074

GRAHAM, CAMPAIGN & McCARTHY, P.C.

3.    The proceedings herein are for a patent application and the provisions of 37 CFR 1.136 apply

*(complete (a) or (b) as applicable)*

(a)    [ X ]    Applicant petitions for an extension of time under 37 CFR 1.136 (fees: 37
CFR 1.17(a)-(d) for the total number of months checked below:

| Extension (months) | Fee for other than small entity | Fee for small entity |
|---|---|---|
| [ X ] one month | $110.00 | $55.00 |
| [  ] two months | $360.00 | $180.00 |
| [  ] three months | $840.00 | $420.00 |
| [  ] four months | $1320.00 | $660.00 |

Fee $55.00

**If an additional extension of time is required please consider this a petition therefor.**

*(check and complete the next item, if applicable)*

[ ]    An extension for _____ months has already been secured and the fee paid
therefor of $_____ is deducted from the total fee due for the total months of
extension now requested.

Extension fee due with this request  $$

**OR**

(b    [x]    Applicant believes that no extension of time is required.  However, this
conditional petition is being made to provide for the possibility that applicant
has inadvertently overlooked the need for a petition for extension of time.

GRAHAM, CAMPAIGN & McCARTHY, P.C.

### FEE FOR CLAIMS

4.    The fee for claims (37 cfr 1.16(b)-(d) has been calculated as shown below:

| (Col. 1) | | (Col. 2) | (Col. 3) | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | ADDIT. RATE | FEE | OR | ADDIT. RATE | FEE |
| TOTAL | 09 | MINUS = 20 | 00 | x 11 = | $00.00 | | x 22 = $ | |
| INDEP. | 01 | MINUS = 03 | 00 | x 37 = | $00.00 | | x 74 = $ | |
| [ ] FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | + 115 = $ | | | + 230 = $ | |

TOTAL ADDIT. FEE____$00.00____ 

OR TOTAL ADDIT.FEE_____

* If the entry in Col. 1 is less than entry in Col. 2, write "0" in Col. 3.
** If the "Highest No. Previously Paid for" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest No. Previously Paid For" IN THIS SPACE is less then 3, enter "3".
The "Highest No. Previously Paid For" (Total or indep.) is the highest number found in the appropriate box in Col. 1 of a prior amendment or the number of claims originally filed.

*(compete (c) or (d) as applicable)*

(c)    [x]  No additional fee for claims is required.

### OR

(d)    [ ]  Total additional fee for claims required $_____.

### FEE PAYMENT

5.    [ X ]  Attached is a check in the sum of $_55.00_____.

[ ]  Charge Account No. 07-1845 the sum of $_____.

A duplicate of this transmittal is attached.

### FEE DEFICIENCY

*NOTE:  If there is a fee deficiency and there is no authorization to charge an account, additional fees are necessary to cover the additional time consumed in making up the original deficiency. If the maximum, six-month period has expired before the deficiency is noted and corrected, the application is held abandoned. In those instances where authorization to charge is included, processing delays are encountered in returning the papers to the PTO Finance Branch in order to apply these charges prior to action on the cases. Authorization to charge the deposit account for any fee deficiency should be checked. See the Notice of April 7, 1986, 1065 O.G. 31-33.*

GRAHAM, CAMPAIGN & McCARTHY, P.C.

6.    [x] If any additional extension and/or fee is required, charge Account No. 07-1845.

**AND/OR**

      [x] If any additional fee for claims is required, charge Account No. 07-1845.

Reg. No.: 24,653
Enc.
Check No. _6923_

Tel. No.: (212) 354-5650

Our Ref:. X529-27

Steven H. Bazerman

Graham, Campaign & McCarthy, P.C.
36 West 44th Street
New York, New York 10036-8178



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

STEVEN M. BAZEMAN
GRAHAM, CAMPAIGN & McCARTHY
36 WEST 44TH STREET
NEW YORK, NY  10036-8178

| | EXAMINER |
|---|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 3205 | 11 |

DATE MAILED:

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☑ This communication is responsive to *Amendment filed on 6/1/94*
2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☑ The allowed claims are *1-7, 9*
4. ☑ The drawings filed on *10/18/1993* are acceptable.
5. ☑ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [Δ been received. [ ] not been received. [ ] been filed in parent application Serial No. _____, filed on _____.
6. ☐ Note the attached Examiner's Amendment.
7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**
A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE 'DATE MAILED'' indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.
   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**
_ Examiner's Amendment
_ Examiner Interview Summary Record, PTOL-413
_ Reasons for Allowance
_ Notice of References Cited, PTO-892
_ Information Disclosure Citation, PTO-1449

_ Notice of Informal Application, PTO-152
_ Notice re Patent Drawings, PTO-948
_ Listing of Bonded Draftsmen
_ Other

P. AUSTIN BRADLEY
SUPERVISORY PATENT EXAMINER
GROUP 3200

PTOL-37 (REV. 4-89) *                                    USCOMM-DC 89-3789

C 001078



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

32M1/0616

STEVEN H. BAZEMAN
GRAHAM, CAMPAIGN & McCARTY
36 WEST 44TH STREET
NEW YORK, NY 10036-8178

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/007,628 | 01/21/93 | 608 | MAH, C | 2305 | 06/16/94 |
| First Named Applicant | BRAID, | | HAROLD K. | | |

TITLE OF
INVENTION SPRING MOUNTING FOR SASH FRAME TENSIONING ARRANGEMENTS

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 3 | X539-27 | 016-197.000 | B79 | UTILITY | YES | $585.00 | 09/16/94 |

**THE FEE DUE IS THE AMOUNT IN EFFECT AT THIS TIME. IF THE AMOUNT OF THE ISSUE FEE INCREASES PRIOR TO PAYMENT, APPLICANT WILL BE NOTIFIED OF THE BALANCE OF ISSUE FEE DUE.**

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**

**_PROSECUTION ON THE MERITS IS CLOSED._**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

### HOW TO RESPOND TO THIS NOTICE:
I. Review the SMALL ENTITY Status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the patent and Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date) and serial number.
   Please direct all communications prior to issuance to Box ISSUE FEE unless advised to contrary.

**_IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due._**

PTOL-15 (REV.7-92) (OMB Clearance is pending)

PATENT AND TRADEMARK OFFICE COPY

PART B—ISSUE FEE TRANSMITTAL

585-242
30 561

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advances orders and notification of maintenance fees will be mailed to addresses entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. **See reverse for Certificate of Mailing.**

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| AUG 31 1994 | INVENTOR'S NAME |
| | Street Address |
| | City, State and ZIP Code |
| | CO-INVENTOR'S NAME |
| | Street Address |
| | City, State and ZIP Code |
| | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| | | | | |

First Named Applicant

TITLE OF INVENTION

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| | | | | | | |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. | 1 Steven H. Bazerman |
|---|---|---|
| | | 2 _____ |
| | | 3 _____ |

DO NOT USE THIS SPACE

090 BA 09/06/94 08007628    1 242    585.00 CK
090 BA 09/06/94 08007628    1 561    30.00 CK

| 5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type) | 6a. The following fees are enclosed: |
|---|---|
| (1) NAME OF ASSIGNEE: | ☒ Issue Fee   ☐ Advanced Order - # of Copies ___ (Minimum of 10) |
| (2) ADDRESS: (CITY & STATE OR COUNTY) | 6b. The following fees should be charged to: ___ |
| | DEPOSIT ACCOUNT NUMBER ___ (ENCLOSED PART C) |
| (3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION | ☐ Issue Fee   ☐ Advanced Order - # of Copies ___ |
| | ☐ Any Deficiencies in Enclosed Fees. (Minimum of 10) |

A. ☒ This application is NOT assigned.
☐ Assignment is being previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.
**PLEASE NOTE:** Unless an assignee is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of party in interest of record)   8-29-94  (Date)

Steven H. Bazerman, Reg. 24 653

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

(TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

PTOL-85B (REV.7-92)(OMB Clearance is pending)

C 001080

## Certificate of Mailing

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

> Box ISSUE FEE
> Commissioner of Patents and Trademarks
> Washington, D.C. 20231

on _____ August 29, 1994 _____
                    (Date)

_____ *[signature]* _____
(Signature)

_____ Phyllis Buchalter _____
(Typed or Printed Name)

_____ August 29, 1994 _____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

This form is estimated to take 20 minutes to Complete. Time will vary depending upon the needs of the individual applicant. Any comments on the amount of time you require to complete this form should be sent to the Office of Management and Organization, Patent and Trademark Office, Washington, D.C. 20231 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

REVERSE PTOL-85B (REV. 7-92)(OMB Clearance is pending)



PTO UTILITY GRANT
Paper Number __/2__



## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Bruce Lehman*

Commissioner of Patents and Trademarks

*Karna Y. Cooper*

Attest

PTO-1584

C 001082

(RIGHT INSIDE)

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 1992

Application or Docket Number: 007628

| CLAIMS AS FILED - PART I | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| FOR | | | | | | | |
| BASIC FEE | | | | $355.00 | OR | | $710.00 |
| TOTAL CLAIMS | 9 minus 20 = | * | X$11= | | OR | X$22= | |
| INDEPENDENT CLAIMS | 1 minus 3 = | * | X 37= | | OR | X 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | OR | +230= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 710 | OR | TOTAL | 710 |

| CLAIMS AS AMENDED - PART II | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | X$11= | | OR | X$22= | |
| Independent | * | Minus *** | = | X 37= | | OR | X 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE | OR | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | X$11= | | OR | X$22= | |
| Independent | * 2 | Minus *** | = | X 37= | | OR | X 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | + 230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE | OR | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * 8 | Minus ** 20 | = | X$11= | | OR | X$22= | |
| Independent | * 2 | Minus *** 3 | = | X 37= | | OR | X 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10-92)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

C 001083

PTO-1130
(REV 1-00)

**U.S. DEPARTMENT OF COMMERCE- PATENT & TRADEMARK OFFICE**

## PAGE DATA ENTRY CODING SHEET

APPLICATION NUMBER: 08 007626

| | 1ST EXAMINER | DATE |
| --- | --- | --- |
| | 2ND EXAMINER | DATE: 2 - 6 - 93 |

**TYPE APPL:** 7

**SMALL ENTITY?:** 0

**FILING DATE:** MONTH 01 / DAY 21 / YEAR 93

**FILING FEE:** 0412K

**TOTAL CLAIMS:** 19
**INDEPENDENT CLAIMS:** 1

**CONTINUITY CODE:** 1 0

**STATUS CODE:** 1 1

**SPECIAL HANDLING:** 0

**FOREIGN LICENSE:** Y

**GROUP ART UNIT:** 3500

**CLASS:** 246

**ATTORNEY DOCKET NUMBER:** X589-37

**SHEETS OF DRAWING:** 17

### CONTINUITY DATA

PARENT APPLICATION SERIAL NUMBER

PARENT PATENT NUMBER

PARENT FILING DATE: MONTH / DAY / YEAR

### PCT/FOREIGN APPLICATION DATA

**FOREIGN PRIORITY CLAIMED:** Y Y Y

**COUNTRY CODE:** GB X / GB X / GB X

**PCT/FOREIGN APPLICATION SERIAL NUMBER:**
9 2 0 1 8 0 8 1 7
9 2 0 4 0 6 6 8
9 2 0 4 6 8 7 9

**FOREIGN FILING DATE:** MONTH / DAY / YEAR
0 1 2 1 9 2
0 2 2 5 9 2
0 3 0 4 9 3

C 001084



C 001085

# PATENT SPECIFICATION

(11) **1 505 782**

**1 505 782**

(21) Application No. 37727/76    (22) Filed 11 Sept. 1976

(44) Complete Specification published 30 March 1978

(51) INT CL² E05D 13/12

(52) Index at acceptance E1J    433



(19)

## (54) COUNTERBALANCES FOR SLIDABLE SASH WINDOWS

(71)    We EDWIN EARL FOSTER of 1801 Camp Craft Road, Austin, Texas 78746, United States of America, and THOMAS EARL FOSTER of 1800 Loop West 360, Austin, Texas 78746, United States of America, both citizens of the United States of America, do hereby declare the invention for which we pray that at patent may be granted to us, and the method by which it is to be performed, to be particularly described in and by the following statement:—

The invention relates to window construction and, more particularly, to counterbalances for use in windows having slidable sashes.

The invention provides a counterbalance for a slidable sash of a window, the counterbalance comprising a support member disposable within a frame of a window, at least two self-coiling spiral ribbon springs, each spring having a supply coil portion and an outer end, the support member having means for engaging a portion of the extended length of the spring to suspend the supply coil thereof, and means for interengaging the outer ends of the springs and anchoring them to the slidable sash.

The invention is illustrated by the drawings, of which:

Figure 1 is a perspective view of a window provided with a spring sash counterbalance according to the invention;

Figure 2 is a fragmentary vertical sectional view taken on the line 2—2 of Figure 1;

Figure 3 is an enlarged view, in partial section, taken at the arrow a in Figure 2;

Figure 4 is a vertical transverse sectional view taken on the line 4—4 of Figure 2; and

Figure 5 is an exploded perspective view of the mounting bracket of the counterbalance of Figures 1 to 4.

With reference to Figure 1 of the drawings, a window A comprises a window frame f having side jambs 1 and 1', a header 2, and a sill 3; there being carried in the frame f upper and lower sashes 4 and 5 respectively. The window frame f may be made of any suitable material, such as wood or aluminium. The lower sash 5 is adapted for vertical reciprocative slidable movement, and the upper sash 4 is a fixed sash. The invention is, however, applicable to other types of slidable sash windows, such as those adapted for swingable movement of the upper and/or lower sash for cleaning, repair and like purposes.

Each side jamb 1 and 1' incorporates a channel-shaped guideway 6, having rearward and forward flanges 7 and 8 respectively and an intervening web 9 (Figure 2); the guideways 6 open inwardly or toward each other.

The lower window sash 5 comprises vertically presented parallel side members 10 and 10' and upper and lower transverse members 11 and 12 respectively. The members 10, 10', 11 and 12 coact in the usual manner to support a glass pane 13. Referring now to Figure 2, each side component 10 or 10' is of channel shape in cross section in its outer lateral portions having front and back flanges 14 and 15 respectively and a web 16 therebetween, said channels opening outwardly toward the guideway 6 of the proximate jamb 1 or 1', as the case may be, and the flanges 14 and 15 being receivable within the same for travel of the sash therein between its upper (opened) and lower (closed) conditions.

Two narrow mounting plates 19 (Figures 2 and 5) are secured, one at each end, to the underside 18 of the header 2. Each mounting plate is immediately inwardly of, and proximate to, the adjacent jamb 1 or 1'. The secural is effected by screws 17 and 17', or like fasteners, extending through openings 20 and 20' in the mounting plates. The longitudinal axis of each mounting plate 19 is parallel to the corresponding axis of the header 2. Each mounting plate 19 has a depressed central portion 21 enabling a spring mounting $s$ to be depended from it. The spring mounting $s$ comprises a pair of planar parallel spaced-apart, relatively elongated side walls 22 and 22' which at their lower ends are free, and at their upper ends are continuous

5

10

15

20

25

30

35

40

45

50

55

60

65

70

75

80

85

90

95

100

C 001086

with flanges 23 and 23', the under faces of which are supported upon the upper surface of depressed central portion 21 of the mounting plate 19. The flanges 23 and 23' are planar and normal to the related side walls 22 and 22'. Each side wall 22 or 22', together with its associated flange 23 or 23' is of like construction and readily amenable to high volume production, there being no "rights" or "lefts". It is to be understood, however, that the spring mounting *s* could be made integrally by appropriate bending of a section of plate material to define side walls which are interconnected by a continuous top wall.

Extending between the side walls 22 and 22' is a pair of vertically spaced-apart transverse upper and lower elements 24 and 25, respectively, which may be of downwardly opening channel section for rigidifying purposes. The elements 24 and 25 have tabs 26 at each end for projection through apertures 27 in the side walls 22 and 22', tabs 26 then being turned downwardly to integrate the side walls 22 and 22' and the elements 24 and 25 into a unified, stable mounting *s*. The upper surface 28 of the web 29 of each element 24 or 25 is planar and substantially perpendicular to the side walls 22 and 22'. Each web 29 is continuous along its side margins with downturned flanges 30 and 31 which are located spacedly inwardly of the proximate vertical margin of the adjacent sideplate 22 or 22' to present a spacing, as at 32. It will thus be observed that the elements 24 and 25 will present remote and proximate edge portions 33 and 34 to the nearest jamb 1 and 1'.

Led over the upwardly directed surface 28 of the web 29 of each element 24 and 25 is the outer end 35 or 35' of the coil 36 or 37 respectively of a spring counterbalance 38 or 39 respectively. The springs are self-coiling, farbicated from suitable ribbon stock, and may be of the character described in United States Patent Specification No. 2,609,191. The springs 38 and 39 are of a transverse extent commensurate with the distance between side walls 22 and 22' of the support *s* so that shifting of the same longitudinally of the associated elements 24 and 25 is inhibited, but the relationship not impeding the coiling and uncoiling action of the springs 38 and 39. The spatial relationship between transverse elements 24 and 25 is adequate to prevent interference between the springs 38 and 39 during coiling and uncoiling action and the upper transverse element 24 is located sufficiently downwardly of the underside of the depressed central portion 21 of mounting plate 19 for the outer end 35 of the coil 36 to be able to move freely between the said underside and the upper surface of the upper transverse element 24.

The transverse elements 24 and 25 thus, in effect, serve as hangers for the associated springs 38 and 39, and the major portion of the coils thereof will depend below the said elements by reason of the engagement of the free ends 35 and 35' thereof in snug contact with the elements 24 and 25 through the inherent tendency of the springs 38 and 39 to coil upon themselves.

With reference particularly to Figure 3, it will be seen that the portions of the springs 38 and 39 extending over the related elements 24 and 25 will actually engage the latter at edge portions 33 and 34 providing a double line contact which serves to balance the springs 38 and 39 against rocking movement about the elements 24 and 25.

Referring to the lower part of Figure 2, the outer ends 35 and 35' of the springs 38 and 39 are directed downwardly within the guideway 6 of the adjacent jamb 1 or 1', as the case may be. The outer surface of the outer end 35' of the spring 39 is brought into substantially abutting relationship with the confronting surface of the outer end 35 of spring 38. The extremities of the outer ends 35' and 35 are provided with openings 40 and 41 respectively, and through these openings 40 and 41 passes a screw 42 or like fastener to unite the outer ends 35' and 35 into a single spring arm of double strength and further to attach the extremities of the outer ends 35' and 35 to the upwardly directed surface of the upper transverse member 11 of the lower sash 5. The point of secural is preferably in substantially vertical alignment with the coils 36 and 37 of the springs 38 and 39, that is slightly laterally inwardly of the outer portion of the lower sash 5.

From the foregoing it will thus be readily observed that the invention allows the use of a counterbalance of preselected, but considerable, force for accommodating sashes of substantial weight, while accomplishing the same in a most compact fashion. If a single spring were used, it would necessarily be of substantial diameter when coiled and therefore difficult to mount unobtrusively whereas the pair of springs each of relatively reduced diameter used in the invention can be stored in vertical relationship in a relatively reduced volume but nevertheless provide the requisite counterbalancing force for a considerable range of sash weights. The use of the pair of springs of the invention will allow a desirable narrowness of the coil stock so that the interengaged free ends may move freely within guideways of relative narrowness and thus obviate any requirements for modification of the window frames. A wide range of spring stock thickness may be used so as to present the requisite force, but without alterations in

C 001087

3                              1,505,782                              3

the brackets *s* or the window construction.

An important feature of the invention is the particular relationship of the outer end of each spring 38 and 39 with respect to the transverse elements since the double-line contact effectively inhibits any rolling or angular movement of the respective spring coils 36 and 37 during sash raising and lowering so that a housing or dust box of minimal volume, as suggested at *d* is adequate for encompassing the mounting *s* and the associated springs 38 and 39. The mutual reinforcing brought about by the interengagement of the outer ends of the springs 38 and 39 assures a wide range of travel with constant force throughout.

It is, of course, apparent from the foregoing that it would be within the scope of the invention to use more than two springs, but a pair of appropriately selected springs will meet the wide range of extant window requirements.

Although a simple dust cover may be utilized, it is to be appreciated that the relatively forceful frication-producing engagement between the outer ends 35 and 35' of the springs 38 and 39 and the transverse elements 24 and 25 will bring about a rubbing action serving to displace any dirt grease which may have adhered to the spring during usage.

Although the invention has been illustrated as being suspended from the window header, it will be obvious that the mounting bracket *s* could be inverted for disposition upon a lower portion of the window or upon the lower sash or frame should it be used for counterbalancing a movable upper sash.

WHAT WE CLAIM IS:—

1. A counterbalance for a slidable sash of a window, the counterbalance comprising a support member disposable within a frame of the window, at least two self-coiling spiral ribbon springs, each spring having a supply coil portion and an outer end, the support member having means for engaging a portion of the extended length of each spring to suspend the supply coil thereof, and means for interengaging the outer ends of the springs and anchoring them to the slidable sash.

2. A counterbalance according to claim 1 in which the portion of the extended length of each spring engaged by the means of the support member to suspend the supply coil is an outer convolution of each spring.

3. A counterbalance according to claim 1 or claim 2 in which said spring support member is engaged to the upper portion of the window frame and the interengaged outer ends of the springs are anchored to the upper portion of the lower sash.

4. A counterbalance according to any preceding claim in which the support member comprises a pair of spaced-apart side plates, and the means for engaging a portion of the extended length of each spring comprises a spaced-apart element for each spring, the elements extending transversely between the side plates, and the outer end portion of each spring extending over the associated transverse element.

5. A counterbalance according to claim 4 in which the side plates of the support member are vertically presented and the transverse elements are presented horizontally in vertically spaced-apart relationship.

6. A counterbalance according to claim 4 or claim 5 in which each transverse element has spaced-apart longitudinal edge portions for engaging the overlying outer end portion of the associated spring to effect double line contact therewith.

7. A counterbalance according to any preceding claim in which the springs are interengaged at the extremities of their outer ends.

8. A counterbalance for a slidable sash of a window, the counterbalance being substantially as described herein with reference to the drawings.

ERIC POTTER and CLARKSON,
Chartered Patent Agents,
25 The Crescent,
Leicester.

Printed for Her Majesty's Stationery Office by the Courier Press, Leamington Spa, 1978. Published by the Patent Office, 25 Southampton Buildings, London, WC2A 1AY, from which copies may be obtained.

C 001088

1505782    COMPLETE SPECIFICATION

1  SHEET    *This drawing is a reproduction of the Original on a reduced scale*



FIG.1

FIG.2

FIG.3

FIG.4

FIG.5

C 001089

(12) **UK Patent Application** (19) **GB** (11) **2 253 874** (13) **A**

(43) Date of A publication 23.09.1992

(21) Application No 9200835.8

(22) Date of filing 15.01.1992

(30) Priority data
(31) 9102629     (32) 07.02.1991     (33) GB

(71) Applicant
L B Plastics Limited

(Incorporated in the United Kingdom)

Firs Works, Nether Heage, Belper, Derbyshire,
DE5 2JJ, United Kingdom

(72) Inventor
Terence Hardy

(74) Agent and/or Address for Service
Swindell & Pearson
48 Friar Gate, Derby, DE1 1GY, United Kingdom

(51) INT CL5
E05D 13/00

(52) UK CL (Edition K)
E1J JFA
F2S S22A
U1S S1715

(56) Documents cited
None

(58) Field of search
UK CL (Edition K) E1J JFA, F2S SCA S22A
INT CL5 E05D

(54) Spring assembly for a sash window

(57) A spring assembly comprises a casing, a spring member formed from coiled strip material freely rotatably mounted within the casing, one end of the spring member projecting from the casing for attachment to a load in use, and the casing incorporating a support member to support the spring member by engaging its outer surface to transfer load from the spring member to the casing. The assembly is preferably used with a sliding sash window in which case portions of the casing are adapted for engagement with locating formations on an outer frame member in which the sash frame is slidably mounted so that the weight of the sash frame is at least partly transmitted through the spring and casing directly to the outer frame.

GB 2 253 874 A

At least one drawing originally filed was informal and the print reproduced here is taken from a later filed formal copy.

C 001090



Fig. 1

C 001091



FIG.2



FIG.3          FIG.4          FIG.5



FIG.6          FIG.7          FIG.8

C 001092

2253874

i

## Balance Mechanisms for Sliding Sash Windows

This invention relates to spring assemblies
suitable for use in balance mechanisms sliding sash
windows.

Modern sliding sash window constructions
incorporate spring mechanisms located within channels in
the outer frame and connected to the sash frame to
support the weight of the sash frame during opening and
closing movement.  The spring mechanisms are generally
of complex construction incorporating an elongated rod
member having spiral formations on its surface and
surrounded by a coil spring which is both stretched or
compressed and rotated as the sash frame is opened and
closed.  The arrangement is designed to produce
essentially constant spring force at all positions of
the sash frame between its fully open and fully closed
positions.  Spring mechanisms of this kind suffer from
the disadvantage that they are complex and hence
expensive constructions.

It has previously been proposed to utilize
so-called constant force springs to support the sash
frames of windows.  Such springs generally comprise
coiled spring steel strips which are free at both ends
and are rotatably supported on a central support member.
The arrangement is such that the force required to

- 2 -

uncoil the spring is the same at all positions between the fully coiled and fully uncoiled conditions. However such springs are generally suitable for supporting relatively light sash frames only and suffer from a number of other disadvantages.

According to one aspect of the invention there is provided a spring assembly comprising a casing, a spring member formed from coiled strip material freely rotatably mounted within said casing, one end of said spring member projecting from the casing for attachment to a load in use, and the casing incorporating a support member adapted to support said spring member by engagement with the outer surface thereof whereby to transfer load from said spring member to said casing.

Preferably said support member comprises an arcuate formation adapted to embrace the curved underside of the spring member. Preferably also said support member engages said spring member over an angle of between 60° and 95°.

Advantageously said casing comprises separable parts movable into engagement with one another in a direction axially of said spring and incorporating complementary formations adapted to ensure correct location of said support member relative to said spring

C 001094

- 3 -

when the casing is assembled.

According to a further aspect of the invention there is provided a spring support assembly for a sliding sash window comprising a constant force spring housed within a casing from which one end of the spring projects for connection to a sash frame, portions of the casing being adapted for engagement with locating formations on an outer frame member in which the sash frame is slidably mounted whereby the weight of the sash frame is at least partly transmitted through said spring and casing directly to said outer frame member.

The invention also provides a frame assembly for a sliding sash window, comprising a frame member incorporating at least one channel adapted to face inwardly towards the sash frame when the window is assembled, and a constant force spring housed in a casing mounted in said channel and at least partly supported by direct engagement with portions of said frame member, one end of said spring extending out of said casing for connection to said sash frame, the arrangement being such that in use the weight of the sash frame is at least partly transmitted through said spring to said casing and hence directly to the frame member itself.

C 001095

- 4 -

Preferably the mouth of said channel is restricted
by lips projecting inwardly thereof to form a narrow
entrance, portions of said lips being cut-away to form
an opening wider than said entrance and adapted to
receive and at least partially support said casing,
whereby load is transmitted through the casing to said
lips and hence directly to the frame member itself.

Advantageously said casing is dimensioned to form
a tight fit in said channel and is provided with means
enabling it to be secured to the frame member by a screw
or like fastening means providing additional support.

Advantageously the inner edges of said lips are
provided with inwardly directed projections in the form
of flanges serving to increase the area of contact
between the frame member and the portions of said casing
supported thereon.

Advantageously said casing is provided with upper
and lower projections adapted to locate in the entrance
to said channel whereby to align the casing in the
correct position relative to said frame member.

Advantageously said projections are provided with
flat faces adapted to extend at right angles to the
length of said channel when said casing is in position

C 001096

- 5 -

in said channel, said faces being adapted for abutment with corresponding faces of adjacent casings mounted in the same channel.  This facilitates assembly of multiple spring assemblies in the one channel by enabling screw holes for use in fastening the assemblies in position to be spaced apart by a predetermined fixed distance.

The invention also provides a sliding sash window incorporating one or more assemblies according to the preceding paragraphs.

An embodiment of the invention will now be described, by way of example only, with reference to the accompanying drawings, in which:

Fig. 1 is a fragmentary perspective view of a side frame member of a window incorporating spring assemblies according to the invention;

Fig. 2 is an enlarged cross-section through the frame member on the line II-II in Fig. 1;

Fig. 3 is a perspective view of one portion of the casing of the spring assembly shown in Fig. 2;

Fig. 4 is an end elevation of the casing portion shown in Fig. 3;

C 001097

- 6 -

Fig. 5 is a cross-section through the portion of the casing shown in Figs. 3 and 4 on the line V-V in Fig. 4;

Fig. 6 is an end elevation of the other portion of the casing;

Fig. 7 is a cross-section through the casing portion of Fig. 6 on the line VII-VII in Fig. 6; and

Fig. 8 is an enlarged view similar to Fig. 6 showing the spring in position. For reasons of clarity the spring is omitted from Figs. 2 to 7.

Referring to the drawings, Fig. 1 shows a side frame member 10 of an outer window frame consisting of identical top, bottom and side frame members interconnected at their corners. A pair of sash frame members (not shown) are adapted to be mounted in the outer frame formed from the members 10 for sliding movement relative thereto and to one another between open and closed positions, the sash frame members being supported on spring assemblies to be described hereafter.

The frame member 10 is of extruded plastics construction and incorporates a pair of side-by-side

C 001098

- 7 -

parallel channels 15A and 15B. Lips 16 project across
the mouth of each channel to define a narrow entrance 17
to the channel. Inturned projections or flanges 18 are
provided on each of the lips 16 and act to rigidify the
structure and to provide additional load supporting
surface for the spring assemblies as will be described
hereafter.

Mounted within each channel 15A,15B is a sliding
shoe member 20 incorporating a rotating support block 21
adapted for engagement by a pivot bar (not shown)
connected to the associated sash frame. Each sash frame
is supported in an upright position adjacent and
parallel to the frame 10, one frame abutting against an
elongated projection 22 at one edge of the frame 10 and
the other being held in position by a detachable
retaining member (not shown) fitted to the edge of the
frame 10 opposite to the projection 22. In this way the
sash frames are retained in position within the outer
frame 10 for sliding movement in directions parallel to
the channels 15A and 15B.

A pair of spring assemblies 25 are mounted at an
upper location within each of the channels 15A and 15B.
A strip steel spring member 26 extends out of each
spring assembly 25 and is engaged in a slot 27 in the
upper edge of the associated slide block 20. The spring

C 001099

- 8 -

assemblies support the weight of the sash frame during opening and closing sliding movement relative to the outer frame 10.

Referring now to Figs. 2 to 7 of the drawings, each of the spring assemblies 25 comprises a casing 30 formed from inner and outer complimentary parts 31 and 32. The assembled casing is of generally cylindrical form and has an outer diameter slightly less than the width of the channels 15A and 15B. The casing is fitted in position by removing portions of the projecting lips 16 to form generally circular openings at the entrances to each of the channels 15A,15B, thereby enabling the casing 30 to be inserted. A central hollow boss 33 extends through the casing and enables it to be secured to the frame member 10 by a screw 34. The width of the casing is such that when inserted in the channel 15A,15B the outer face of the casing is generally flush with the inwardly directed face of the frame member 10 whereby the casing does not interfere with sliding movement of the sash frame.

If the casing were supported on the frame member 10 solely by means of the screw 34, the whole of the load carried by the spring 26 would be transmitted to the frame member through the central boss 33 and screw 34. In order to avoid this the portion 31 of the casing

C 001100

- 9 -

is adapted to seat within and be supported by the edges
of the associated opening in the frame member 10 as best
seen in Fig. 2 of the drawings. The rigid nature of the
lips 16 and inwardly directed flanges 18 is capable of
supporting a substantial load and the weight of the sash
frame is therefore primarily transmitted to the outer
frame 10 through direct engagement between the casing 30
and the outer frame, the screw 34 primarily serving a
locating rather than a load-supporting function.
Strengthening ribs 35 formed internally of the component
31 of the casing serve to rigidify it and increase its
load-supporting capability.

The spring member 26 mounted within the casing 30
comprises a coil of spring steel strip encircling but
not supported on the central boss 33. The spring is
freely rotatable within the casing and is supported on
an arcuate support member 40 forming part of the portion
32 of the casing 30. The support member 40 is displaced
radially outwardly from the central boss 33 and is
arranged to abut against and support the outer surface
of the spring member over an arc which in the case of
the embodiment is around 90° but which may vary from a
few degrees to around 100°. Preferably the extent of
the arc is between about 60° and 95°. The load carried
by the spring is thus transmitted directly to the casing
30 through the support member 40.

C 001101

- 10 -

In previously proposed constant force springs the
load is transmitted through a central boss similar to
the boss 33 on which the spring is supported.  Since the
free inner end of the spring rotates around this boss,
the innermost coil of the spring in effect drops off the
free end of the spring each time the spring rotates
around the boss.  This produces a clicking action during
both opening and closing movement of windows supported
on constant force springs constructed in this way.  By
virtue of the provision of the support member 40, the
load carried by the spring is transmitted through the
lower portions of the coils to the support 40 instead of
through the upper portions of the coils to the boss 33.
This eliminates the clicking noises experienced with
constant force springs of conventional construction.

In order to support the weight of sash frames of
substantial size, more than one spring assembly 25 may
be required at each side of the outer frame.  In the
embodiment of Fig. 1 two spring mechanisms 25 are shown
associated with each of the sliding sash frames, the
spring members 26 from each mechanism being connected to
separate slots 27 in the upper portions of the
associated slide blocks 20 (only one spring is shown in
Fig. 1 for clarity).  Where more than one spring
assembly is provided it is important that it should be
correctly located and positioned relative to the other

C 001102

- 11 -

or others.  It is also important that the or each spring
assembly should be properly orientated relative to the
associated channel 15A or 15B.

In order to facilitate location, the component 31
of the casing 30 is provided with oppositely directed
projections 45 the width of which corresponds to the
width of the entrance 17 of the channels 15A,15B.  When
the casing 30 is fitted in position, the projections 45
locate between the lips 16 and thereby ensure correct
fitting of the spring assemblies.  The outer ends of the
projections 45 are flat and arranged to extend at right
angles to the channels.  Thus where two or more spring
assemblies are fitted, the flat portions of the
projections 45 abut one another and ensure that the
spring assemblies are spaced apart by a uniform
distance.  This facilitates the drilling of holes for
the screws 34 by maintaining a constant distance between
adajcent spring assemblies fitted to the same channel of
the frame 10.

To ensure correct functioning of the spring
assembly the support member 40 must be located in the
correct angular position below the boss 33.  For this
purpose a recess 46 is formed in the portion 31 of the
casing in alignment with one of the projections 45.  The
recess 46 is equal in angular extent to the arcuate

C 001103

- 12 -

length of the support member 40 such that the two
portions of the casing will only interfit if the support
member 40 is engaged with the recess 46 and hence
aligned with the associated projection 45.  In this way
provided the casing is fitted with the projecting end of
the spring 26 directed downwardly towards the slide
block 20, the support member 40 will necessarily be
disposed below the boss 33 and in the correct angular
position relative to the channel 15A or 15B.

The arrangements described are much simpler in
construction and less expensive than conventional
balance springs.  They also improve upon previous
systems incorporating constant force springs by
rigidifying and improving the load carrying capacity of
the spring assemblies.

Various modifications made be made without
departing from the invention.  For example spring
casings of alternative shape may be employed provided
they engage with portions of the frame member to
transmit load directly between them.  The frame members
may be of different construction and alternative means
of connecting the springs to the sliding sash frames may
be employed.  Constant force spring assemblies of the
kind described may also be used in situations other than
sliding sash windows.

C 001104

- 13 -

Whilst endeavouring in the foregoing specification to draw attention to those features of the invention believed to be of particular importance it should be understood that the Applicant claims protection in respect of any patentable feature or combination of features hereinbefore referred to and/or shown in the drawings whether or not particular emphasis has been placed thereon.

C 001105

- 14 -

CLAIMS

1.    A spring assembly comprising a casing, a spring
member formed from coiled strip material freely
rotatably mounted within said casing, one end of said
spring member projecting from the casing for attachment
to a load in use, and the casing incorporating a support
member adapted to support said spring member by
engagement with the outer surface thereof whereby to
transfer load from said spring member to said casing.

2.    An assembly according to claim 1 wherein said
support member comprises an arcuate formation adapted to
embrace the curved underside of the spring member.

3.    An assembly according to claim 2 wherein said
support member engages said spring member over an angle
of between 60° and 95°.

4.    An assembly according to claim 1, 2 or 3 wherein
said casing comprises separable parts movable into
engagement with one another in a direction axially of
said spring and incorporating complementary formations
adapted to ensure correct location of said support
member relative to said spring when the casing is
assembled.

C 001106

- 15 -

5.    A spring assembly substantially as hereinbefore described with reference to Figs. 3 to 8 of the accompanying drawings.

6.    An assembly according to any of claims 1 to 5 for use with a sliding sash window wherein portions of said casing are adapted for engagement with locating formations on an outer frame member in which a sash frame is slidably mounted, whereby the weight of the sash frame is at least partly transmitted through said spring and said casing directly to said outer frame.

7.    A spring support assembly for a sliding sash window comprising a constant force spring housed within a casing from which one end of the spring projects for connection to a sash frame, portions of the casing being adapted for engagement with locating formations on an outer frame member in which a sash frame is slidably mounted whereby the weight of the sash frame is at least partly transmitted through said spring and casing directly to said outer frame member.

8.    An assembly according to claim 6 or 7 wherein said frame member incorporates at least one channel adapted to face inwardly towards the sash frame when the window is assembled, said casing being mounted in said channel and at least partly supported by engagement with

C 001107

- 16 -

portions of said frame member.

9.    A frame assembly for a sliding sash window,
comprising a frame member incorporating at least one
channel adapted to face inwardly towards the sash frame
when the window is assembled, and a constant force
spring housed in a casing mounted in said channel and at
least partly supported by direct engagement with
portions of said frame member, one end of said spring
extending out of said casing for connection to said sash
frame, the arrangement being such that in use the weight
of the sash frame is at least partly transmitted through
said spring to said casing and hence directly to the
frame member itself.

10.    An assembly according to claim 8 or 9 wherein the
mouth of said channel is restricted by lips projecting
inwardly thereof to form a narrow entrance, portions of
said lips being cut-away to form an opening wider than
said entrance and adapted to receive and at least
partially support said casing, whereby load is
transmitted through the casing to said lips and hence
directly to the frame member itself.

11.    An assembly according to claim 10 wherein the
inner edges of said lips are provided with inwardly
directed projections serving to increase the area of

C 001108

- 17 -

contact between the frame member and the portions of
said casing supported thereon.

12.    An assembly according to any of claims 8 to 11
wherein said casing is dimensioned to form a tight fit
in said channel and is provided with mounting means
enabling it to be secured to the frame member.

13.    An assembly according to claim 12 wherein said
mounting means comprises a central boss within said
casing and around which said spring is located, said
boss being adapted for connection to said frame member
by screw or like fastening means.

14.    An assembly according to any of claims 8 to 13
wherein said casing is provided with upper and lower
projections adapted to locate in the entrance to said
channel whereby to align the casing in the correct
position relative to said frame member.

15.    An assembly according to claim 14 wherein said
projections are provided with flat faces adapted to
extend at right angles to the length of said channel
when said casing is in position in said channel, said
faces being adapted for abutment with corresponding
faces of adjacent casings mounted in the same channel.

C 001109

– 18 –

16.    A frame assembly for a sliding sash window substantially as hereinbefore described with reference to the accompanying drawings.

17.    A sliding sash window assembly incorporating one or more assemblies according to any preceding claim.

19

| :ents Act 1977<br>**Examiner's report to the Comptroller under<br>Section 17 (The Search Report)** | Application number<br>9200835.8 |
|---|---|

**Relevant Technical fields**

(i) UK CI (Edition        K        )    E1J: JFA F2S: SCA, S22A

(ii) Int CL (Edition        5        )    E05D

**Databases (see over)**

(i) UK Patent Office

(ii)

Search Examiner

J ROWLATT

Date of Search
3 JUNE 1992

1-17

**Documents considered relevant following a search in respect of claims**

| Category<br>(see over) | Identity of document and relevant passages | Relevant to<br>claim(s) |
|---|---|---|
| | NONE | |

C 001111

1me    c:\wp51\doc99\fi1000756

20

| Category | Identity of document and relevant passages | Relevant to claim(s) |
|----------|--------------------------------------------|----------------------|
|          |                                            |                      |

**Categories of documents**

X: Document indicating lack of novelty or of inventive step.

Y: Document indicating lack of inventive step if combined with one or more other documents of the same category.

A: Document indicating technological background and/or state of the art.

P: Document published on or after the declared priority date but before the filing date of the present application.

E: Patent document published on or after, but with priority date earlier than, the filing date of the present application.

&: Member of the same patent family, corresponding document.

Databases: The UK Patent Office database comprises classified collections of GB, EP, WO and US patent specifications as outlined periodically in the Official Journal (Patents). The on-line databases considered for search are also listed periodically in the Official Journal (Patents).

Published 1992 at The Patent Office, Concept House, Cardiff Road, Newport, Gwent NP9 1RH. Further copies may be obtain

C 001112

# PATENT SPECIFICATION

**825,513**

### DRAWINGS ATTACHED.

*Inventor :—CHARLES PERNETTA.*



*Date of filing Complete Specification : Nov. 4, 1957.*

*Application Date : Nov. 23, 1956.   No. 35970/56.*

*Complete Specification Published : Dec. 16, 1959.*

Index at Acceptance :—Classes 20(3), J1B ; 78(2), R1 ; and 108(3), S5H7.

International Classification :—B66f.   E04f.   F06f.

## COMPLETE SPECIFICATION.

## Improvements in or relating to Mountings for Springs.

We, TENSATOR LIMITED, a British Company, of Acton Lane, London, N.W.10, do hereby declare the invention, for which we pray that a patent may be granted to us, and
5 the method by which it is to be performed, to be particularly described in and by the following statement :—

This invention is concerned with coiled
10 spiral springs of the kind commonly known as "constant force" springs. The principal distinguishing features of these springs are (1) that when the spring is relaxed, i.e. not stressed by any external force it is in the form
15 of a tightly-wound spiral, and that energy is stored in it by straightening or uncoiling it ; (2) that the force required thus to "deflect" it can be made independent of the deflection (constant force) or can be made
20 variable in any desired manner, in which case the springs do not in fact provide a constant force but are, nevertheless, commonly referred to by that description ; and (3) that the "deflection" which can be utilised
25 approximates to the entire length of the strip forming the spring.

Springs of this kind are available under the Registered Trade Marks "Tensator" and "Neg'ator."
30 According to this invention a self-contained mounting for a spring or springs of the type described comprises in combination a rail of a length sufficient to accommodate the maximum desired deflection of the spring, a
35 holder for the spring and a spring of the type described mounted in said holder and having its free end secured to the rail and characterised by opposed tongue and groove engagements between the holder and the rail on opposite
40 sides of the spring width whereby the holder is constrained to move along the rail during

unwinding, deflection and rewinding of the spring.

According to another feature of this invention the rail is of channel section and the 45 unwound or deflected portion of the spring lies within the channel, the tongue and groove engagements aforesaid being with the sides of the channel.

Preferably the channel section rail is pro- 50 vided with out-turned lips on the side-walls and the holder has opposed grooves which receive and run on said lips.

Two embodiments of the invention will now be described by way of example and with 55 reference to the accompanying drawings in which :—

Figure 1 shows a side elevation of one embodiment of the invention ;

Figure 2 is a vertical cross-section on the 60 line 2—2 in Figure 1 ;

Figure 3 shows diagrammatically an application of another embodiment of the invention to a sliding window ;

Figure 4 shows an enlarged elevation of the 65 details of Figure 3 ;

Figure 5 is a horizontal cross-section on line 5—5 of Figure 4 ;

Figure 6 is a horizontal cross-section on line 6—6 of Figure 4 ; and 70

Figure 7 is an end elevation of two of the components of Figure 4.

Referring now to the drawings ; in its simplest form this self-contained assemblage comprises a rail 11, preferably of metal, 75 formed with an out-turned lip 12 on the free edge of each of its side-walls and an open-sided box or casing 13 which is mounted with its open side on the open side of the rail 11 and is slidingly engaged with the rail 11 by 80 any suitable formation 14 to embrace the lips 12 of the rail 11 so as to enable the casing 13

*[Price 3s. 6d.]*

Price 25p

2                                    825,513

to slide along it. The coiled portion 15 of a
spring 16 is located in the casing 13 so that it
is free to rotate about its own axis but is
otherwise constrained from displacement.
5   The coil 15 may be freely mounted in the
casing 13 or it may be mounted upon a drum
and spindle. If it is desired the casing 13
may take any other form such as a cradle to
carry the strain. Two or more springs may
10  be mounted on the rail 11.

In one use of this invention, shown in
Figure 3, it is applied to a vertically sliding
panel, such as a vehicle window; the glass 21
is usually mounted in a felt lined-channel 22
15  and two springs 16 are provided, one at each
side of the window, to counter-balance its
weight to any desired degree. Each rail 11
is aligned with the felt lined guide 22 for the
glass 21 and the two casings 13 are each
20  integral with a glazing channel 24 which
engages the lower edge 23 of the glass 21.
Since the casings 13 are effectively guided,
each by its rail 11, it is unnecessary to provide
amy other guide for the window 21 when in
25  its lower position so that it is an economical
construction.

Amongst the other uses to which this inven-
tion may be applied there may be mentioned,
for example, a gravity feed conveyor. In
30  such an arrangement a platform is mounted
on the spring-holder so that the weight of the
goods overcomes the retractive force of the
spring causing the platform to descend;
removal of the goods will then allow the plat-
35  form to rise to its initial position under the
action of the springs.

In belt or cable tensioning devices, indi-
cator boards, sliding-seat mechanisms, and

almost any device in which rectilinear move-
ment is required, a spring mounted as above   40
described can usefully be used for operating
in one direction, or for balancing the weight of
the movable part.

WHAT WE CLAIM IS:—
1. A self-contained mounting for at least   45
one spring of the type described comprising
in combination a rail of a length sufficient to
accommodate the maximum desired deflec-
tion of the spring, a holder for the spring and
a spring of the type described mounted in said   50
holder and having its free end secured to the
rail characterised by opposed tongue and
groove engagements between the holder and
the rail on opposite sides of the spring width
whereby the holder is constrained to move   55
along the rail during unwinding, deflection
and rewinding of the spring.

2. A mounting as claimed in Claim 1 in
which the rail is of channel section, and the
unwound or deflected portion of the spring   60
lies within the channel, the tongue and
groove engagements aforesaid being with the
sides of the channel.

3. A mounting as claimed in Claim 2
wherein the channel section rail is provided   65
with out-turned lips on the side-walls of the
channel, and the holder has opposed grooves
which receive and run on said lips.

4. A mounting substantially as herein-
before described with reference to, and illus-   70
trated in, the accompanying drawings.

BOULT, WADE & TENNANT,
111 & 112 Hatton Garden, London, E.C.1,
Chartered Patent Agents.

## PROVISIONAL SPECIFICATION.

### Improvements in or relating to Mountings for Springs.

We, TENSATOR LIMITED, a British Com-
pany, of Acton Lane, London, N.W.10, do
hereby declare this invention to be described
75  in the following statement:—

This invention is concerned with coiled
spiral springs of the kind commonly known
as "constant force" springs. The principal
80  distinguishing features of these springs are
(1) that when the spring is relaxed, i.e. not
stressed by any external force it is in the
form of a tightly-wound spiral, and that
energy is stored in it by straightening or
85  uncoiling it; (2) that the force required thus
to "deflect" it can be made independent of
the deflection (constant force) or can be made
variable in any desired manner; and (3) that
the "deflection" which can be utilised
approximates to the entire length of the strip
90  forming the spring.

Springs of this kind are available under the
Registered Trade Marks "Tensator" and
"Neg'ator."
According to this invention a self-contained
mounting for a spring or springs of the type   95
described comprises in combination a runway
of a length sufficient to accommodate the
maximum desired deflection of the spring, a
casing or cradle constituting a holder for the
spring or springs, engaged with the runway to   100
be guided by it in traversal therealong, and a
spring mounted in said holder and having
its free end secured to the runway.

According to another feature of this inven-
tion the runway is of channel section and the   105
spring-holder lies on the open side of the
runway and has lengthwise sliding engage-
ment therewith.

Preferably the channel section runway is
provided with out-turned lips on the side-   110

825,513                                                    3

walls and the spring-holder has grooves or channels to engage said lips.

According to another feature of the invention the spring-holder is so disposed relatively to the runway that the unwound portion of the spring lies in contact with the base of the channel section runway, and is constrained against lateral displacement by the side-walls of the channel.

According to another feature of the invention either the runway or the spring-holder may be fixed and the other is adapted to be secured to a co-operating part to control or operate it.

This self-contained assemblage of spring-holder, spring and runway may be used for various purposes. In its simplest form it consists essentially of a channel section member, preferably of metal, formed with an out-turned lip on the free edge of each of its side-walls and the spring-holder may be an open sided box or casing which is mounted with its open side on the open side of the channel and it is slidingly engaged with the channel by any suitable formation to embrace the lips of the channel so as to enable the casing to slide along it. The coiled portion of the spring is located in the casing so that it is free to rotate about its own axis but is otherwise constrained from displacement. The coil may be freely mounted in the casing or it may be mounted upon a drum and spindle. If it is desired the holder may take any other form such as a cradle to carry the strain. Two or more springs may be mounted on the runway.

In one use of this invention, it is applied to a vertically sliding panel, such as a vehicle window; the glass is usually mounted in a felt lined channel and two springs are provided, one at each side of the window, to counter-balance its weight to any desired degree. Each runway is aligned with the felt lined guide for the glass and the two spring-holders are engaged with the lower edge of the glass. Since the spring-holders are effectively guided, each by its runway, it is unnecessary to provide any other guide for the window when in its lower position so that it is an economical construction.

Amongst the other uses to which this invention may be applied there may be mentioned, for example, a gravity feed conveyor. In such an arrangement a platform is mounted on the spring-holder so that the weight of the goods overcomes the retractive force of the spring causing the platform to descend; removal of the goods will then allow the platform to rise to its initial position under the action of the springs.

In belt or cable tensioning devices, indicator boards, sliding-seat mechanisms, and almost any device in which rectilinear movement is required, a spring mounted as above described can usefully be used for operating in one direction, or for balancing the weight of the movable part.

BOULT, WADE & TENNANT,
111 & 112 Hatton Garden, London, E.C.1
Chartered Patent Agents.

Abingdon : Printed for Her Majesty's Stationery Office, by Burgess & Son (Abingdon), Ltd.—1959.
Published at The Patent Office, 25, Southampton Buildings, London, W.C.2,
from which copies may be obtained.

C 001115

825,513     COMPLETE SPECIFICATION
1 SHEET     *This drawing is a reproduction of the Original on a reduced scale.*



C 001116

US005157808A

# United States Patent [19]

Sterner, Jr.

[11]  Patent Number:  **5,157,808**

[45]  Date of Patent:  **Oct. 27, 1992**

[54]  **COIL SPRING COUNTERBALANCE HARDWARE ASSEMBLY AND CONNECTION METHOD THEREFOR**

[75]  Inventor:  **Maurice E. Sterner, Jr.,** Spring Grove, Pa.

[73]  Assignee:  **Product Design & Development, Inc.,** York, Pa.

[21]  Appl. No.:  **836,565**

[22]  Filed:  **Feb. 18, 1992**

[51]  Int. Cl.⁵ .............................................. E05D 13/00
[52]  U.S. Cl. ...................................... 16/197; 267/156; 49/445
[58]  Field of Search .................. 16/197, 77, DIG. 16, 16/DIG. 36; 267/156; 49/445, 446

[56]  **References Cited**

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,732,594 | 1/1956 | Adams et al. | 16/197 |
| 2,817,872 | 12/1957 | Foster | 16/197 |
| 3,150,420 | 9/1964 | Brenner . | |
| 3,452,480 | 7/1969 | Foster . | |
| 3,475,865 | 11/1969 | Arnes | 16/197 |
| 4,227,345 | 10/1980 | Durham, Jr. . | |

4,935,987  6/1990  Sterner, Jr. .

*Primary Examiner*—John Sipos
*Assistant Examiner*—Carmine Cudo
*Attorney, Agent, or Firm*—Samuel M. Learned, Jr.

[57]  **ABSTRACT**

An improved coil spring counterbalance assembly embodying a coil spring support structure that provides a cooperatively radiused restraining shoe against which the uninterrupted smooth external circumferential surface of the coil spring ribbon rotationally operates in extension and retraction thereof during counterbalanced sash movement, thereby eliminating both the clicking sound and spring rotational cyclic vibrational shocks otherwise caused by the spring interior ribbon core tail ending riding over the top of a spring core support hub, in addition to a multiple coil spring connection method for improved successive affixment of extended coil spring ribbons one to the other and in turn to the sash attached balance shoe connector therefor when more than on coil spring is required in order to effect proper sash counterbalancing.

**3 Claims, 5 Drawing Sheets**





FIG. 1



FIG. 2

FIG. 3

FIG. 4



FIG. 5

FIG. 6

U.S. Patent          Oct. 27, 1992          Sheet 4 of 5          5,157,808



FIG. 7

PRIOR ART

FIG. 8

PRIOR ART

FIG. 9

PRIOR ART



FIG. 11

FIG. 10

FIG. 12

5,157,808

1

## COIL SPRING COUNTERBALANCE HARDWARE ASSEMBLY AND CONNECTION METHOD THEREFOR

### BACKGROUND OF THE INVENTION

The present invention relates to an improved coil spring counterbalance assembly for use on vertically sliding window sashes wherein the improved assembly hereof incorporates structural embodiments which substantially enhance the smoothness of counterbalance sash operation as well as the ease and facility with which one may install and connect multiple spring components one to the other and to the sash attached balance shoe connector when more than one spring component is required in order to adequately counterbalance a particular sash.

As shown in Applicant's previous teaching, in U.S. Pat. No. 4,935,987 dated Jun. 26, 1990, to Sterner, and in particular as illustrated in FIGS. 2, 3 and 4 thereof, the respective counterbalance springs are each supported by a hub insertably installed through the core openings thereof, upon which hub a coil spring rotates in feeding out and retracting the coil ribbon thereof during vertical movement of a sash in opening and closing operations. Each of the coil spring ribbons has a ribbon core tail ending that in consequence cyclically snaps over the support hub in radius adjustment as the coil spring radius decreases or increases upon sash movement whereby the coil spring radius snapping adjustment effect in turn causes both a distinct and audibly distracting sound in addition to any annoying sash vibration, which sound and vibration effects become more pronounced with the use of multiple coil springs to balance a sash. The counterbalance coil spring sub-assembly as taught in U.S. Pat. No. 4,227,345 to Durham, Jr., dated Oct. 14, 1980, and best illustrated in FIG. 5 thereof, shows a structure in some respects similar to that herein taught but is distinguished in that the coil spring of Durham, Jr., is attached to and supported by the mounting bracket hub thereof.

Other coil spring sash balance hardware apparatus provide for coil support about the external circumferential surface of the spring, such as those respectively taught in U.S. Pat. No. 3,150,420 to Brenner, dated Sept. 29, 1964, and U.S. Pat. No. 3,452,480 to Foster, dated Jul. 1, 1969.

Prior art coil spring counterbalance devices of the external circumferential support category do avoid the snapping sound and sash vibration effects, but do not adapt well to use in applications requiring multiple springs for the counterbalancing of heavier sashes.

The applicant's improved coil spring counterbalance assembly, however, mechanically provides a structural capability to both enhance the ease and smoothness of sash operation as well as at the same time providing a connection method for joining successive coil spring ribbons in sash counterbalancing applications requiring a use of multiple coil springs, all in a manner as hereinafter more fully detailed and described.

### SUMMARY OF THE INVENTION

It is the principal object of the present invention to provide an improved coil spring counterbalance hardware assembly which operates by means of a coil spring ribbon that extends and retracts about the uninterrupted external coil circumferential surface thereof compressively against a cooperatively radiused restraining shoe

2

to thereby enhance the smoothness of sash raising and lowering by eliminating both the clicking sound and spring rotational cyclic vibrational shocks otherwise caused by the spring component interior ribbon core tail ending riding over the top of a spring core support hub as is characteristically common of prior art coil spring counterbalance assemblies.

It is another object of the present invention to provide an improved spring ribbon connection method for affixing an extended coil spring ribbon to the sash attached balance shoe connector therefor, or in the event of multiple coil spring assembly employment, an improved method for affixing the extended coil spring ribbons one to the other successively to the lead coil spring ribbon which is in turn affixed to the sash attached balance shoe connector therefor.

A further object of the present invention is to provide an improved counterbalance hardware assembly which is adapted to cooperatively accommodate the addition of individual coil spring elements as may be necessary to achieve the proper counterbalance effect for the weight of a particular sash to be supported.

It is also an object of the present invention to provide an improved coil spring counterbalance hardware assembly spring ribbon connection slot structure which facilitates the ease and convenience of affixing multiple coil springs to connect one with the other and to the sash attached balance shoe connector.

It is a further object of the present invention to provide an improved coil spring counterbalance hardware assembly spring ribbon connection method which optimizes the effective range of multiple coil spring utility and efficiency in providing a substantially constantly uniform counterbalance force effect throughout the raising and lowering limits of any particular sash to which said assembly is affixed in achieving the counterbalance thereof.

Still another object of the present invention is to provide an improved coil spring counterbalance hardware assembly adapted to be installably utilized within both the conventional modern and traditional older sash and jamb structures as either a retrofit or replacement sash counterbalance means, without the costly need or necessity to re-design or reconstruct either the sash or supporting jamb and frame structures therefor.

Yet another object of the present invention is to provide an improved coil spring counterbalance hardware assembly which when operationally installed is hidden from view, and is yet easily accessible for maintenance, repair, or removal as may from time to time be necessary.

It is an additional object of the present invention to provide an improved coil spring counterbalance hardware assembly which is efficient in design, economical in cost, and easy to install and maintain.

The foregoing, and other objects hereof, will be readily evident upon a study of the following specification and accompanying drawings comprising a part thereof.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front elevation view of a typical double hung window embodying upper and lower vertically sliding sash members, therein showing an exemplary installation of improved coil spring counterbalance hardware assemblies comprising the instant invention.

5,157,808

3

FIG. 2 is an enlarged foreshortened side elevation view of the improved coil spring counterbalance hardware assemblies as taken along the line 2—2 of FIG. 1.

FIG. 3 is a front elevation view of the coil spring sub-assembly component of the instant invention as seen along the line 3—3 of FIG. 2.

FIG. 4 is a front elevation view of the balance shoe sash connector sub-assembly component of the instant invention as seen along the line 4—4 of FIG. 2.

FIG. 5 is a partial side elevation view of a typical heavy duty window frame and sash assembly showing an exemplary installation therein of an improved coil spring counter balance hardware assembly embodying the employment of successively connected multiple coil spring sub-assembly components to thereby accommodate counterbalancing of a heavier sash.

FIG. 6 is a front elevation view of the typical heavy duty window frame and sash assembly and exemplary hardware installation as shown in FIG. 5.

FIG. 7 is a partial side elevation view of a typical window frame and sash assembly showing installation therein of exemplary prior art multiple and single coil spring counterbalance hardware assemblies.

FIG. 8 is an enlarged side elevation view of an exemplary prior art coil spring counterbalance component therein showing the spring interior ribbon core tail ending to spring core support hub relationship.

FIG. 9 is an exploded perspective view of an exemplary prior art coil spring counterbalance hardware assembly.

FIG. 10 is a partial side elevation view of a typical window frame and sash assembly showing installation therein of the improved coil spring counterbalance hardware assembly of instant invention.

FIG. 11 is an enlarged side elevation view of the coil spring counterbalance component of instant invention therein showing the external coil ribbon diameter relationship to the cooperative radiused restraining shoe as well as the spring interior ribbon core tail ending clearance of the core support hub.

FIG. 12 is an exploded perspective view of the improved coil spring counterbalance hardware assembly of instant invention.

DETAILED DESCRIPTION OF THE INVENTION

Referring to FIG. 1, a front elevation view of a typical double hung window 10 embodying an exemplary set of upper and lower vertically sliding sash members, comprised of an upper sash 12 and a lower sash 14 both of which sashes are cooperatively installed within and supported by a typical window frame encasement structure 16, said sashes 12 and 14 being respectively shown counterbalance by a spaced set of the improved coil spring counterbalance hardware assemblies 18 of instant invention which are illustrated and installed in a manner typical of that for either an original equippage or retrofit application. It should be noted, however, as would be determined by the size and weight of a sash to be counterbalanced in each particular use circumstance, as well as the counterbalance coil spring force rating of an individual coil spring sub-assembly 20, there may be a requirement to employ multiple numbers of the individual coil spring sub-assemblies 20 of said hardware assembly 18 joined by the respective coil spring ribbons 22 thereof in successive coil spring connection one to the other and to the sash attached balance shoe connector 24 therefor by the method as hereinafter taught by

4

illustration and description. Thus, each improved coil spring counterbalance hardware assembly 18 is comprised of at least one individual coil spring sub-assembly 20 connected by means of the coil spring ribbon 22 thereof to a sash attached balance shoe connector sub-assembly 24.

Refferring again to FIG. 1 to discuss general considerations of the method for installing the improved coil spring counterbalance hardware assemblies 18, wherein it will be noted for purposes of obtaining optimum sash 12 and 14 operational balance within the frame encasement structure 16 an installation of said hardware assemblies 18 is preferably comprised of a spaced set thereof for each sash 12 and 14 to thereby minimize any tendency for a sash to cant or cock and thereby bind within the encasement structure sash guide tracks during sash raising or lowering operations. Installation of said hardware assemblies 18 is simply and efficiently accomplished by first affixing a balance shoe connector sub-assembly 24 to either lateral lower side of the upper and lower sash 12 and 14 respective lower sash frame members 26 and 28 by means of a set of connector bracket screws 30 insertable installed through openings therefor in the balance shoe connector bracket 32 and threadably secured into the opposingly spaced outer lateral underside surfaces of said lower sash frame members 26 and 28, wherein it should be noted, regardless of the number of individual coil spring sub-assemblies 20 to be employed in achieving proper sash 12 and 14 counterbalancing, whether it be either single or successive such coil spring sub-assemblies 20, only one sash attached balance shoe connector sub-assembly 24 is required.

Next, at a vertical position above each of the respective lower sash frame members 26 and 28 when the corresponding upper and lower sashes 12 and 14 therefor are in the closed position, either a single or successively stacked individual coil spring sub-assemblies 20 are securably installed to the corresponding window jamb 34 by means of insertable threadable connection of a spring bracket screw 36 through an opening in the spring bracket cap spacing post 38 and to said corresponding window jamb 34.

As also shown in FIG. 1, the respective sashes 12 and 14 are adapted to be pivotally opened inward and are therefore each provided with a set of spring loaded jamb latches 40 assembled to the upper sash frame member 42 and the lower sash upper frame member 44, which jamb latches 40 function to retain the respective sashes 12 and 14 within the encasement structure sash guide tracks respectively by means of engagement of the jamb latch lugs 46 of said latches 40 within said guide tracks for normal vertically slidable displacement of said sashes 12 and 14 within said encasement structure guide tracks. Upon manual retraction of a set of the jamb latch lugs 46 for either sash 12 or 14, by means of simultaneous sash inward displacement of the jamb latch push pads 48, said lugs 46 are thereby retracted from the subject guide tracks and the sash 12 or 14 as the case may be is then pivotally rotated inwardly about the rotation hub 50 of the sash attached balance shoe sub-assembly for purposes of window pane 52 cleaning or the like. Afterwards the pivotally opened sash may be returned and secured in a normally vertical position within the window frame encasement structure 16 simply by means of reverse rotation thereof about the rotation hub 50 and re-engagement of the latch lugs 46 within the encasement structure guide tracks. Addition-

5,157,808

5

ally, the window 10 is provided with a locking means typically consisting of a cam latch assembly 54 which is installed upon the upper mid-point surface of the lower sash upper frame member 44, which cam latch assembly 54 is cooperatively operable pivotally to lockably and releasably engage a cam latch retainer 56 which is assembled to the upper mid-point of the upper sash lower frame member 26.

At this point it should be noted that although the sash attached balance shoe connector sub-assembly 24 is shown and illustrated in a typical tilt window hardware component profile, this is exemplary only and the sash attached balance shoe connector sub-assembly 24 could just as well be provided in a standard non-tilt window hardware component profile with equally beneficial and satisfactory results.

Considering now FIG. 2, which shows greater structural detail of the improved coil spring counterbalance hardware assembly 18 and the coil spring 20 and balance shoe connector 24 sub-assembly components thereof. Particularly shown is connection of the coil spring ribbon 22 by means of the ribbon tail slot 58 in cooperative engagement within the balance shoe connector coil spring ribbon receiving slot 60, which is also illustrated in corresponding FIG. 4. Additionally shown in FIG. 2 as well as in corresponding FIG. 3 is the coil spring 62 interior ribbon core 64 circumferential clearance "X" with respect to the outer circumference of the spring bracket cap spacing post 38, and the uninterrupted external coil spring circumferential surface 66 support by the cooperatively radiused coil spring restraining shoe 68 whereby low noise level and non-vibrational coil spring 62 extension and retraction is achieved upon sash 12 or 14 vertical displacement. It will be noted, as best shown in FIG. 3, the cooperatively radiused coil spring restraining shoe 68 is a sectional piece so as to facilitate coil spring 62 assembly within the coil spring sub-assembly 20 as will hereinafter be more fully explained, wherein one sectioned piece of said radiused coil spring restraining shoe 68 is a shoe base 74 which is registerably interconnected to a shoe base cover 76 by means of register connecting pins 78 whereby a smooth cooperative radiused coil spring support surface 80 is provided against which the uninterrupted external coil spring circumferential surface 66 smoothly operates in extension and retraction of the coil spring 62 upon vertical displacement of a sash 12 or 14.

Referring now to FIG. 4, wherein is shown greater sectional detail of the sash attached balance shoe connector sub-assembly 24 to the lower sash lower frame member 28 by means of threadable connection therewith of connector bracket screws 30 through openings in the balance shoe connector bracket 32. Also shown as previously described is interconnected assembly of the coil spring ribbon 22 by means of the coil spring ribbon tail slot 58 insertably within the balance shoe connector coil spring ribbon receiving slot 60 whereby the coil spring sub-assembly 20 of the hardware assembly 18 is made operationally functional with the balance shoe connector sub-assembly 24 thereof in providing low noise level vibration free counterbalancing of a sash 12 or 14 on vertical displacement thereof within the window frame encasement structure 16. Additionally shown in FIG. 4 is the coil spring ribbon interconnecting slot 82 which is employed for assembling coil spring ribbons 22 to each other and to the balance shoe connector sub-assembly 24 when it is necessary to employ an in-series plurality of individual coil

6

spring sub-assemblies 20 in achieving proper sash 12 or 14 operational counterbalance within the window frame encasement structure 16.

Turning now to a consideration of FIGS. 5 and 6 to explain in greater detail the assembly method for interconnecting an in-series plurality of individual coil spring sub-assemblies 20 in achieving heavy or large size sash 12 or 14 operational counterbalance, wherein it is to be understood that the specific number of individual coil spring sub-assemblies 20 that may be required is determined by the coil spring 62 force ratings in relation to the sash 12 or 14 weight to be counterbalanced, and the illustration in FIGS. 5 and 6 of four such coil springs 62 is to be regarded as exemplary only for purposes of explaining the connection method.

Referring to FIGS. 5 and 6, an improved coil spring counterbalance hardware assembly 18 embodying a plurality of coil spring sub-assemblies 20 is shown, which sub-assemblies 20 are installed respectively by means of spring bracket screw 36 threadable connection to the window jamb 34 as was previously described for installation of a single such sub-assembly 20, in series, so that the respective coil spring ribbons 22 thereof may be drawn down and cumulatively assembled one to the other by successive coil spring ribbon tail slot 58 interconnection to coil spring ribbon interconnecting slot 82. The assembly sequence as aforesaid being first an interconnection of the coil spring ribbon tail slot 58 of the lowermost coil spring 62 with the balance shoe connector coil spring ribbon receiving slot 60, followed by interconnection of the coil spring ribbon tail slot 58 of the next most lowest coil spring 62 of said plurality with the coil spring ribbon interconnecting slot 82 of the lowermost coil spring 62 thereof, and thereafter progressively upward in a similar such successive coil spring 62 tail slot 58 to interconnecting slot 82 assemblage pattern. Such a method of successive in-series coil spring 62 interconnection maximizes operational efficiency of the cumulative coil spring counterbalancing effect as well as easing the manual aspects of effecting coil spring interconnection since the amount of coil spring ribbon 22 that must be withdrawn to effect interconnection is minimal as compared to interconnecting each such separate coil spring ribbon 22 separately to the balance shoe connector sub-assembly 24 as is typically done in prior art hardware assemblies of the type herein dealt with and as more particularly shown in FIGS. 7 through 9 next to be considered.

The exemplary prior art coil spring counterbalance hardware assembly 84 as illustrated in FIG. 7 shows upper sash counterbalancing with two coil spring assemblies 86, which are interconnected to the balance shoe component 88 in a manner typical of such prior art hardware assemblies 84 which is by individual spring ribbon 90 affixment thereto. With respect to the prior art lowermost coil spring assembly 86 spring ribbon 90 extension for connection to the balance shoe component 88 there is no appreciable difference between that and that of the present invention 18, whether a single or a plurality of coil spring assemblies 86 are involved. However, in the case of a plurality of coil spring assemblies 86 in series in successive interconnection to the balance shoe component 88, each subsequent spring ribbon 90 as shown must be correspondingly increased in extension to effect balance shoe 88 connection which incrementally decreases the overall counterbalance efficiency of a multiple springed hardware assembly 84 by successively increasing the respective spring ribbon

5,157,808

7                                                                      8

90 extensions and consequent pre-loads on the corre-
sponding coil spring assemblies 86. Secondly, installa-
tion of such a prior art multiple springed hardware
assembly 84 is more difficult since the spring ribbon 90
of each successively removed coil spring assembly 86  5
must in turn be successively increased in extension by a
correponding amount in order to effect balance shoe 88
interconnection. Thus is the difference and distinction
of methodology for coil spring to balance shoe inter-
connection between that of a typical prior art coil 10
spring counterbalance hardware assembly 84 embody-
ing the use of a successive plurality of coil springs in
series and that of a corresponding improved coil spring
counterbalance hardware assembly 18 as previously
illustrated and explained on the earlier consideration of 15
FIGS. 5 and 6.

The enlarged side elevation view illustration of FIG.
8 shows the manner of support provided for a prior art
coil spring 92, which is the source for noise and vibra-
tion effects as previously mentioned and evidenced 20
upon vertical displacement of a sash counterbalanced
by a prior art coil spring hardware assembly 84. As
shown, the coil spring 92 interior coil spring circumfer-
ential surface 94 is supported by and rotates upon the
coil spring mounting bracket bushing 96 as the spring 25
ribbon 90 is extended or retracted upon vertical dis-
placement of a sash to which said coil spring 92 is inter-
connectedly assembled. As the coil spring 92 rotates
upon the bushing 96, the interior circumferential coil
spring tail ending 98 in rotationally riding over the 30
bushing mid-point support surface arc 100 snaps there-
against on each rotational cycle when the coil spring 92
radius automatically compensates for a change thereof
upon spring ribbon 90 extension or retraction during
attached sash vertical displacement. It is this coil spring 35
92 cyclical radius compensating snap effect which
causes the annoying noise and sash vibration during
vertical displacement thereof. Since in the instant inven-
tion, as previously explained, the uninterrupted external
coil spring circumferential surface 66 is supported by 40
and rotates upon the smooth cooperative radiused coil
spring support surface 80 of the cooperatively radiused
coil spring restraining shoe 68 during coil spring ribbon
22 extension or retraction upon sash attached vertical
displacement, there is no cyclical radius compensating 45
snap effect as otherwise described for the typical prior
art coil spring counterbalance hardware assembly 84
and therefore no annoying clicking sound or sash vibra-
tional effects are produced.

Directing attention now to FIG. 9, which is an ex- 50
ploded perspective view of the exemplary prior art coil
spring counterbalance hardware assembly 84, therein
showing the physical assembly relationships of the vari-
ous component elements thereof, and particularly the
coil spring 92 core opening insertion upon the mounting 55
bracket bushing 96 for coil spring 92 supportable reten-
tion between the mounting bracket bushing collar 102
and the bushing cap collar 104 when the two are insert-
ably joined and retained by the bracket screw 106 and
installed in affixment to a window jamb 34 as previously 60
shown in FIG. 7. Also shown is the manner of connect-
ably assembling the spring ribbon 90 to the balance shoe
component 88, which is by means of individual coil
spring 92 spring ribbon 90 retainable insertion within
one of the plurality of balance shoe spring ribbon con- 65
nection slots 108 and stoppable retention therewithin by
means of the spring ribbon loop 110. Mounting of the
balance shoe component 88 to a lower sash frame mem-

ber is as was before, with insertion of connector bracket
screws 30 through openings in the balance shoe connec-
tor bracket 32 and then threadable assembly to the
lower sash frame member.

Considering lastly the series of improved coil spring
counterbalance hardware assembly 18 views shown in
FIGS. 10 through 12, wherein FIG. 10 depicts an exem-
plary hardware assembly 18 installation within a typical
window frame encasement structure 16. The enlarged
side elevation coil spring sub-assembly 20 view shown
in FIG. 11 illustrates clearly the interior ribbon core
cumferential clearance "X" between the coil spring
interior ribbon core 64 and the spring bracket cap spac-
ing post 38 so there is no operational contact of any
hardware assembly 18 structure with the interior coil
spring circumferential tail ending 112 whereby neither
cyclical noise or vibrational effects are brought into
play during vertical displacement movement of a sash.
The exploded perspective hardware 18 assembly view
shown in FIG. 12 illustrates how the various compo-
nent parts thereof fit together, and the structural rela-
tionship of the uninterrupted external coil spring cir-
cumferential surface 66 to the supportable retention
thereof by the smooth cooperative radiused coil spring
support surface 80 whereby noise and vibration free
operation is achieved.

Although the invention has been herein shown and
described in what is conceived to be the most practical
and preferred embodiment and method, it is recognized
that departures may be respectively made therefrom
within the scopes thereof, which are not to be limited to
the specific details disclosed herein but are to be ac-
corded the full scope of the claims so as to embrace any
and all equivalent improved coil spring counterbalance
hardware assemblies and the connection methods there-
for.

I claim:
1. An improved coil spring counterbalance hardware
assembly adapted for counterbalancing a vertically
displaceable sash within a window frame encasement
structure, said assembly comprising in combination at
least one coil spring sub-assembly having a coil spring
supportably retained about the uninterrupted external
coil spring circumferential surface thereof within said
coil spring sub-assembly by means of a cooperatively
radiused coil spring restraining shoe said coil spring
sub-assembly being adapted for installation connection
to a window jamb of said window frame encasement
structure, a sash attached balance shoe connector sub-
assembly adapted for installation connection to the
lower frame member of said sash the same side thereof
as the installation connection of said coil spring sub-
assembly to said window jamb, and a coil spring ribbon
of said coil spring of said coil spring sub-assembly ex-
tendable therefrom and connectable to a balance shoe
slot within said balance shoe connector sub-assembly by
means of a first cooperatively complementary slot
means on one side edge of said coil spring ribbon and
inward from the end thereof, wherein said coil spring is
further provided with a second cooperatively comple-
mentary slot means on the opposite side edge of said
coil spring ribbon as said first cooperatively comple-
mentary slot means and at a greater inward distance
from the end than said first slot means.

2. The improved coil spring counterbalance hard-
ware assembly according to claim 1 having a plurality
of coil spring sub-assemblies connected to said window
jamb in a sucessively removed cooperative in-series

5,157,808

9

relation with respect to said sash attached balance shoe connector sub-assembly.

3. The improved coil spring counterbalance hardware assembly according to claim 2 wherein the respective coil spring ribbons of the respective coil springs of said plurality of coil spring sub-assemblies are connectably assembled one to the other in series and to said sash

10

attached balance shoe connector sub-assembly by means of successive coil ribbon interconnection of the first cooperatively complementary slot means respectively therein with the second cooperatively complementary slot means respectively therein.

* * * * *

10

15

20

25

30

35

40

45

50

55

60

65

# TERMS TO BE CONSTRUED IN U.S. PATENT NO. 6,598,264

| Term | Proposed Construction | Claims & Specification |
|---|---|---|
| "bottom guide" | The bottom guide is a device: (1) used to connect the window balance to the upper or lower window sashes; (2) helps guide the vertical motion of the window balance within the jamb pockets; (3) includes a back portion that encases a portion of the channel; and (4) houses the bottom guide roller. | Claims 1, 4-5, 11-18, 20, 22 & 23<br><br>Specification<br><br>Col. 3, ll. 24-26, Col. 3, ll. 31-35, & Col. 4, ll. 43-46 |
| "connected to the second end of the channel" | Connected to the termination point of the second end of the channel, and extending beyond and framing the channel. | Claims 1, 12 & 18<br><br>Specification<br><br>Col. 3, ll. 31-35, & Col. 4, ll. 43-48 |
| "connected to an end of a window balance channel" | Connected to the termination point of the end of a balance channel, and extending beyond and framing the channel. | Claim 23<br><br>Specification<br><br>Col. 3, ll. 31-35, & Col. 4, ll. 43-48 |
| "rotatably mounted in the bottom guide" | The bottom guide roller is mounted to, and is entirely within, the bottom guide with no portion of the roller or the axle being external to the bottom guide. | Claims 1, 12, 13, and 18<br><br>Specification<br><br>Col. 3, ll. 22-26<br>Col. 4, ll. 43-46,<br>Col. 5, ll. 41-43,<br>Col. 5, ll. 64-67, and<br>Col. 6, ll. 16-19 |
| "rotatably mounted within in the bottom guide" | The bottom guide roller is mounted to, and is entirely within, the bottom guide with no portion of the roller or the axle being external to the bottom guide. | Claim 23<br><br>Specification<br><br>Col. 3, ll. 22-26<br>Col. 4, ll. 43-46,<br>Col. 5, ll. 41-43, |

| | | Col. 5, ll. 64-67, and Col. 6, ll. 16-19 |
|---|---|---|
| "the bottom guide roller is located external to the channel" | The bottom guide roller is located outside of the channel and no part of the roller extends into the channel. | Claims 2 & 13 |
| "a portion of the bottom guide is external to the channel" | This term is indefinite given the definition of the term external. In light of the prior art, all of the bottom guide must be external to the channel, and thus this term is inherently meaningless. | Claims 4 & 15 |
| "the bottom guide axle located outside the window balance channel" | The bottom guide axle is mounted in, and is entirely external to, the window balance channel. | Claim 23 |

JC978 U.S. PTO
09/810868
09/16/01

197   Subclass
16   Class   ISSUE CLASSIFICATION
91

PATENT NUMBER

C—

**U.S. UTILITY Patent Application**

O.I.P.E.
F.A
SCANNED 4/B 3   Q.A.   MC

PATENT DATE
JUL 2 9 2003

6598264

| APPLICATION NO. | CONT/PRIOR | CLASS | SUBCLASS | ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 09/810868 | | 016 | 197 | 3676 | Hutton |

APPLICANTS
Gary Newman

TITLE
Block and tackle window balance with bottom guide roller

PTO-2040
12/99

## ISSUING CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | | | | |
|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
| 16 | 197 | 16 | 215 | 401 | Dig.16 | | |

INTERNATIONAL CLASSIFICATION

| E | 0 | 5 | D | 13 | 00 |
|---|---|---|---|---|---|
| | | | | | |

☐ Continued on Issue Slip Inside File Jacket

| ☐ TERMINAL DISCLAIMER | DRAWINGS | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | Sheets Drwg. | Figs. Drwg. | Print Fig. | Total Claims | Print Claim for O.G. |
| | 10 | 12 | 4B | 23 | 23 |

☐ The term of this patent subsequent to _____ (date) has been disclaimed.

☐ The term of this patent shall not extend beyond the expiration date of U.S Patent. No. _____

☐ The terminal _____ months of this patent have been disclaimed.

*(Assistant Examiner)* 4/3/03 *(Date)*

Anthony Knight
Supervisory Patent Examiner
Group 3600

*(Primary Examiner)* 4/3/03 *(Date)*

*(Legal Instruments Examiner)* 4/4/03 *(Date)*

NOTICE OF ALLOWANCE MAILED

4/4/03

ISSUE FEE

| Amount Due | Date Paid |
|---|---|
| $1300 | 4/16/03 |

ISSUE BATCH NUMBER

**WARNING:**
The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 6/99)

FILED WITH: ☐ DISK (CRF)   ☐ FICHE   ☐ CD-ROM
*(Attached in pocket on right inside flap)*

ISSUE FEE IN FILE

(FACE)

C000543

## PATENT APPLICATION



jc970 U.S. PTO
09/810868

03/16/04

INITIALS _MPN_

# CONTENTS

| | | Date Received (Incl. C. of M.) or Date Mailed | | | Date Received (Incl. C. of M.) or Date Mailed |
|---|---|---|---|---|---|
| 1. Application __it__ papers. | | | 42. _____ | | _____ |
| 2. _____ | | _____ | 43. _____ | | _____ |
| 3. _____ | | 1/19/01 | 44. _____ | | _____ |
| 4. Restriction / m | | 9-12-08 9/4 | 45. _____ | | _____ |
| 5. _____ | | 10-21-08 | 46. _____ | | _____ |
| 6. _____ | | 11/2 0/0 9/18 | 47. _____ | | _____ |
| 7. _____ | | 3-20-03 | 48. _____ | | _____ |
| 8. Amd /. B | | 3-20-03 | 49. _____ | | _____ |
| 9. Notice of Allowance | | 4/4/03 4/4 | 50. _____ | | _____ |
| 10. Drawings 10 sheet set 1 | | 4-16-03 | 51. _____ | | _____ |
| 11. _____ | | _____ | 52. _____ | | _____ |
| 12. _____ | | _____ | 53. _____ | | _____ |
| 13. _____ | | _____ | 54. _____ | | _____ |
| 14. _____ | | _____ | 55. _____ | | _____ |
| 15. _____ | | _____ | 56. _____ | | _____ |
| 16. _____ | | _____ | 57. _____ | | _____ |
| 17. _____ | | _____ | 58. _____ | | _____ |
| 18. _____ | | _____ | 59. _____ | | _____ |
| 19. _____ | | _____ | 60. _____ | | _____ |
| 20. _____ | | _____ | 61. _____ | | _____ |
| 21. _____ | | _____ | 62. _____ | | _____ |
| 22. _____ | | _____ | 63. _____ | | _____ |
| 23. _____ | | _____ | 64. _____ | | _____ |
| 24. _____ | | _____ | 65. _____ | | _____ |
| 25. _____ | | _____ | 66. _____ | | _____ |
| 26. _____ | | _____ | 67. _____ | | _____ |
| 27. _____ | | _____ | 68. _____ | | _____ |
| 28. _____ | | _____ | 69. _____ | | _____ |
| 29. _____ | | _____ | 70. _____ | | _____ |
| 30. _____ | | _____ | 71. _____ | | _____ |
| 31. _____ | | _____ | 72. _____ | | _____ |
| 32. _____ | | _____ | 73. _____ | | _____ |
| 33. _____ | | _____ | 74. _____ | | _____ |
| 34. _____ | | _____ | 75. _____ | | _____ |
| 35. _____ | | _____ | 76. _____ | | _____ |
| 36. _____ | | _____ | 77. _____ | | _____ |
| 37. _____ | | _____ | 78. _____ | | _____ |
| 38. _____ | | _____ | 79. _____ | | _____ |
| 39. _____ | | _____ | 80. _____ | | _____ |
| 40. _____ | | _____ | 81. _____ | | _____ |
| 41. _____ | | _____ | 82. _____ | | _____ |

(LEFT OUTSIDE)

C000544



## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 16 | 197 193 400 401 DIG.16 210 215 | 11/14/02 | DH |
| 49 | 445 446 447 | | |
| *updated search | | 4/3/03 | DH |

## SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

| | Date | Exmr. |
|---|---|---|
| - spoke to Bryant about classification for Claim 13 | 9/9/02 | DH |
| (window with sash) and counterbalance | 4/3/03 | DH |
| (window with sash) and (guide with bottom) | | |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| *searched all of The above classes/subs | | 4/3/03 | DH |

(RIGHT OUTSIDE)

C000545

ISSUE SLIP STAPLE AREA (for additional cross references)

| POSITION | INITIALS | ID NO. | DATE |
|----------|----------|--------|------|
| FEE DETERMINATION | HL | | 3-21-01 |
| O.I.P.E. CLASSIFIER | MMW | JD | 04-09-8 |
| FORMALITY REVIEW | NK | 989 | 4/24/01 |
| RESPONSE FORMALITY REVIEW | | | |

## INDEX OF CLAIMS

✓ .............................. Rejected
= .............................. Allowed
– (Through numeral)... Canceled
÷ .............................. Restricted

N .............................. Non-elected
I .............................. Interference
A .............................. Appeal
O .............................. Objected

| Final | Original | 9/10/02 | 11/5/02 | 1/1/03 | | | | | |
|-------|----------|---------|---------|--------|--|--|--|--|--|
| 1 | 1 | ✓ | ✓ | = | | | | | |
| 2 | 2 | ✓ | | = | | | | | |
| 4 | 3 | | | = | | | | | |
| 5 | 4 | | | = | | | | | |
| 6 | 5 | | | = | | | | | |
| 7 | 6 | | | = | | | | | |
| 8 | 7 | | | = | | | | | |
| 9 | 8 | | | = | | | | | |
| 10 | 9 | | | = | | | | | |
| 3 | 10 | | | = | | | | | |
| 11 | 11 | | | = | | | | | |
| 12 | 12 | | | = | | | | | |
| | 13 | | | N | | | | | |
| 13 | 14 | | ✓ | = | | | | | |
| 14 | 15 | | | = | | | | | |
| 15 | 16 | | | = | | | | | |
| 16 | 17 | | | = | | | | | |
| 17 | 18 | | | = | | | | | |
| 18 | 19 | | | = | | | | | |
| 19 | 20 | | | = | | | | | |
| 20 | 21 | | | = | | | | | |
| 21 | 22 | | | = | | | | | |
| 22 | 23 | | | = | | | | | |
| 23 | 24 | | | = | | | | | |
| | 25 | | | | | | | | |
| | 26 | | | | | | | | |
| | 27 | | | | | | | | |
| | 28 | | | | | | | | |
| | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Final | Original | Date | | | | | | | |
|-------|----------|------|--|--|--|--|--|--|--|
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

| Final | Original | Date | | | | | | | |
|-------|----------|------|--|--|--|--|--|--|--|
| | 101 | | | | | | | | |
| | 102 | | | | | | | | |
| | 103 | | | | | | | | |
| | 104 | | | | | | | | |
| | 105 | | | | | | | | |
| | 106 | | | | | | | | |
| | 107 | | | | | | | | |
| | 108 | | | | | | | | |
| | 109 | | | | | | | | |
| | 110 | | | | | | | | |
| | 111 | | | | | | | | |
| | 112 | | | | | | | | |
| | 113 | | | | | | | | |
| | 114 | | | | | | | | |
| | 115 | | | | | | | | |
| | 116 | | | | | | | | |
| | 117 | | | | | | | | |
| | 118 | | | | | | | | |
| | 119 | | | | | | | | |
| | 120 | | | | | | | | |
| | 121 | | | | | | | | |
| | 122 | | | | | | | | |
| | 123 | | | | | | | | |
| | 124 | | | | | | | | |
| | 125 | | | | | | | | |
| | 126 | | | | | | | | |
| | 127 | | | | | | | | |
| | 128 | | | | | | | | |
| | 129 | | | | | | | | |
| | 130 | | | | | | | | |
| | 131 | | | | | | | | |
| | 132 | | | | | | | | |
| | 133 | | | | | | | | |
| | 134 | | | | | | | | |
| | 135 | | | | | | | | |
| | 136 | | | | | | | | |
| | 137 | | | | | | | | |
| | 138 | | | | | | | | |
| | 139 | | | | | | | | |
| | 140 | | | | | | | | |
| | 141 | | | | | | | | |
| | 142 | | | | | | | | |
| | 143 | | | | | | | | |
| | 144 | | | | | | | | |
| | 145 | | | | | | | | |
| | 146 | | | | | | | | |
| | 147 | | | | | | | | |
| | 148 | | | | | | | | |
| | 149 | | | | | | | | |
| | 150 | | | | | | | | |

If more than 150 claims or 10 actions
staple additional sheet here

(LEFT INSIDE)

C000546



US006598264B2

(12) **United States Patent**　　　　(10) Patent No.:　　**US 6,598,264 B2**
Newman　　　　　　　　　　　　　　　(45) Date of Patent:　　　**Jul. 29, 2003**

(54) **BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER**

(75) Inventor: **Gary Roger Newman**, Valley Springs, SD (US)

(73) Assignee: **Amesbury Group, Inc.**, Amesbury, MA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 6 days.

(21) Appl. No.: **09/810,868**

(22) Filed: **Mar. 16, 2001**

(65) **Prior Publication Data**

US 2002/0129463 A1 Sep. 19, 2002

(51) Int. Cl.⁷ ................................................. E05D 13/00
(52) U.S. Cl. .......................... 16/197; 16/215; 16/401; 16/DIG. 16
(58) Field of Search .......................... 16/197, 193, 400, 16/401, DIG. 16, 210, 215; 49/445, 446, 447

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,114,178 A | * 12/1963 | Wood | 49/446 |
| 3,358,403 A | 12/1967 | Dinsmore | |
| 3,440,683 A | 4/1969 | Wood | 16/197 |
| 3,449,862 A | * 6/1969 | Biro | 49/406 |
| 4,089,085 A | 5/1978 | Fitzgibbon | 16/197 |
| 4,134,234 A | 1/1979 | Wood | 49/429 |
| 4,190,930 A | 3/1980 | Prosser | 16/197 |
| 4,238,907 A | 12/1980 | Swan | 49/446 |
| 4,300,316 A | 11/1981 | Ficarilli | 49/445 |
| 4,332,054 A | 6/1982 | Palsi et al. | 16/197 |
| 4,373,295 A | 2/1983 | Starck | 49/435 |
| 4,413,445 A | 11/1983 | Trout | 49/445 |
| 4,503,641 A | 3/1985 | Swan | 49/445 |
| 4,586,291 A | 5/1986 | Swan | 49/501 |
| 4,654,928 A | 4/1987 | Flight | 16/199 |
| 4,672,713 A | 6/1987 | Newton et al. | 16/197 |
| 4,689,850 A | 9/1987 | Flight | 16/197 |
| 4,800,680 A | 1/1989 | Westfall et al. | 49/429 |
| 4,914,862 A | 4/1990 | Gregory | 49/322 |
| 4,949,425 A | 8/1990 | Dodson et al. | 16/198 |
| 5,174,064 A | 12/1992 | Stark | 49/445 |
| 5,530,991 A | 7/1996 | deNormand et al. | 16/198 |
| 5,737,877 A | 4/1998 | Meunier et al. | 49/445 |
| 6,041,476 A | 3/2000 | deNormand | 16/197 |

* cited by examiner

Primary Examiner—Anthony Knight
Assistant Examiner—William D Hutton, Jr.
(74) Attorney, Agent, or Firm—Testa, Hurwitz & Thibeault, LLP

(57) **ABSTRACT**

Disclosed are apparatus for a block and tackle window balance to be incorporated in single and double hung window assemblies. In one embodiment the block and tackle window balance includes a roller secured within a bottom guide to increase range of travel of a window sash.

**23 Claims, 10 Drawing Sheets**





## FIG. 1
### PRIOR ART

C000548

200



FIG. 2A

PRIOR ART

C000549



# FIG. 2B
## PRIOR ART



# FIG. 3
## PRIOR ART

U.S. Patent        Jul. 29, 2003        Sheet 5 of 10        US 6,598,264 B2



FIG. 4A

C000552



300

302
310
312
303
305
319
318
320

321
329
325
330
328
327
326
341
322

B
375
340
331
335
333
332
336
345
337
316
342
315
350
352
B

## FIG. 4B



FIG. 5

C000554



FIG. 6



**FIG. 7B**
PRIOR ART



**FIG. 7A**
PRIOR ART

C000556



FIG. 8B



FIG. 8A

C000557

US 6,598,264 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

## TECHNICAL FIELD

This invention relates to block and tackle window balance devices for single and double hung windows and, more particularly, to a block and tackle window balance device that provides an increased range of travel within a window frame.

## BACKGROUND INFORMATION

Hung window assemblies generally include a window frame, a lower window sash, an upper window sash, a pair of window jambs, two sets of jamb pockets, and at least one window balance device for offsetting the weight of a window sash throughout a range of travel within the window frame. Block and tackle window balance devices use a combination of a spring and pulleys located within a channel to balance the weight of the window sash at any position within the jamb pockets.

In some block and tackle window balance devices, the channel containing both the spring and pulleys is attached to the window sash, and a cord, which connects the pulleys together, is attached to a jamb mounting hook that is connected to a side jamb. A disadvantage of this type of device is that the travel distance of the window sash is limited by some of the pulleys located within the rigid channel interfering with the jamb mounting hook that attaches the window balance to the window jamb.

## SUMMARY OF THE INVENTION

In general, in one aspect, the invention relates to a block and tackle window balance device for use with single and double hung windows that affords increased window opening travel distance. In one embodiment, the block and tackle window balance device includes a channel, a spring with a first end and a second end, a translatable pulley block unit, a fixed pulley block unit, a cord, a top guide, and a bottom guide with a bottom guide roller. The top and bottom guides are connected to opposite ends of the channel. The spring, the translatable pulley block unit, and the fixed pulley block unit are all located within the channel. The first end of the spring and the fixed pulley block unit are fixed at opposite ends of the channel. The second end of the spring is connected to the translatable pulley block unit. The translatable and fixed pulley block units are connected by the cord. The cord is threaded around both the translatable and fixed pulley block units and extends around the bottom guide roller located within the bottom guide.

In another embodiment, the block and tackle window balance device includes a top guide including a top angled portion and a bottom portion. The bottom portion of the top guide is connected to one end of the channel. In still another embodiment, the top angled portion of the top guide is sized to receive a member from a window sash.

In yet another embodiment, the block and tackle window device includes a bottom guide that extends beyond the rigid channel. In still yet another embodiment, the bottom guide of the device further includes a channel to receive a portion of a window sash.

In general, in one aspect, the invention relates to a method of providing increased travel of a window sash slidably mounted in a window frame. The method includes three steps. A first step is to provide a window assembly that includes a window frame with jambs with jamb pockets, an upper window sash, a lower window sash, and at least one block and tackle window balance device having a channel and a bottom roller for dispensing a cord. The channel has a first end and a second end. The bottom roller is mounted proximate to the second end of the channel with a first distance between the first end of the channel and the bottom roller. A second step is to remove the block and tackle window balance device from the window assembly. A final step is to provide and install an increased travel window balance device. The increased window balance device has a channel with a first end and a second end and a bottom guide roller for dispensing a cord. The bottom guide roller is mounted proximate to the second end of the channel and a second distance is defined as the length between the first end of the channel and the bottom guide roller. The second distance of the increased window balance device is greater than the first distance of the removed block and tackle window balance device.

The foregoing and other objects, aspects, features, and advantages of the invention will become more apparent from the following description and from the claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIG. 1 is a perspective view of a double hung window.

FIG. 2A is a perspective view of a prior art block and tackle window balance.

FIG. 2B is another perspective view of the prior art block and tackle window balance of FIG. 2A with one of two side walls of the U-shaped channel removed.

FIG. 3 is a perspective rear view of the prior art block and tackle window balance.

FIG. 4A is a perspective view of an embodiment of a block and tackle window balance of the invention.

FIG. 4B is perspective view of the block and tackle window balance of FIG. 4A with one of two side walls of the U-shaped channel removed.

FIG. 5 is a perspective view of an embodiment of a block and tackle window balance of the invention mounted within a window jamb.

FIG. 6 is an enlarged front view of a top guide of the block and tackle window balance of FIG. 4A attached to a cam.

FIG. 7A is a front view showing a closed position of a window assembly with prior art block and tackle window balances.

FIG. 7B is a front view showing an open position of the window assembly with prior art block and tackle window balances.

FIG. 8A is a front view showing a closed position of a window assembly with an embodiment of a block and tackle window balances of the invention.

FIG. 8B is a front view showing an open position of a window assembly with block and tackle window balances of the invention.

## DETAILED DESCRIPTION

Referring to FIG. 1, shown is a double hung window assembly 100 in which a block and tackle window balance constructed in accordance with the teachings of the present

C000558

US 6,598,264 B2

3

invention can be used. The double hung window assembly 100 includes a window frame 102, a lower window sash 104, an upper window sash 106, and a pair of window jambs 107. Within each window jamb 107, jamb pockets 108 are defined. The lower window sash 104 and upper window sash 106 slide vertically within the jamb pockets 108. Generally, window balances are attached to the lower and upper window sashes 104, 106 to balance the weight of the window sashes at any vertical position within the jamb pockets 108.

FIGS. 2A, 2B, and 3 show perspective views of a prior art block and tackle window balance 200. FIG. 2A shows the prior art block and tackle window balance 200 in full, whereas FIG. 2B shows the prior art block and tackle window balance 200 with one side wall of a rigid U-shaped channel 205 cut away so that components within the window balance 200 are more visible. FIG. 3 shows a rear view of the window balance 200.

The block and tackle window balance 200 includes a spring 220, a translatable pulley unit 230, a fixed pulley unit 235, a roller 239, and cord 240 all housed with the rigid U-shaped channel 205 with fasteners 212, 216 are a top guide 210 and a bottom guide 215 that are used to connect the window balance 200 to either the upper or lower window sashes 104, 106 and to help guide the vertical motion of the window balance 200 within the jamb pockets 108. The top guide 210 includes an upper portion 202 and a lower portion 203. The upper portion 202 of the top guide 210 is angled and is sized to be received by a member attached to a window sash, such as a cam. The bottom guide 215 includes a back portion 213, best seen in FIG. 3, that encases a portion of the rigid channel 205. Within the back portion 213 of the bottom guide 215 is a channel 214 sized to receive a portion of a window sash.

The rigid U-shaped channel 205 has a back wall 206 and two side walls 207, 208 that in combination form the U-shape. The rigid U-shaped channel 205 serves as an external frame to which the components of the window balance 200 can be secured. The rigid U-shaped channel 205 also keeps components located within the rigid U-shaped channel 205 free of debris and particulate matter. The spring 220, the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239 are located inside the rigid U-shaped channel 205. Both of the translatable pulley unit 230 and the fixed pulley unit 235 include one or more pulleys rotatable around respective axles.

Components within the rigid U-shaped channel 205 work in combination to create a force to counterbalance the weight of the attached sash at any vertical position within the window frame 102. These components are attached to each other such that a first end 219 of the spring 220 is connected to the translatable pulley unit 230, and the translatable pulley unit 230 is connected to the fixed pulley unit 235 and the roller 239 via the cord 240. A pulley in the fixed pulley unit 235 and the roller 239 may be contained in a frame 236. To secure the components within the rigid U-shaped channel 205, the second end 221 of the spring 220 and the frame 236 are fixed to opposite ends of the rigid U-shaped channel 205 via respective fasteners 218, 243. The frame 236 is also used to secure a pulley axle 237 and a roller axle 238, around which the pulley in the fixed pulley unit 235 and the roller 239 respectively rotate. A first distance "AA" 275 is defined by a length extending between the upper portion 202 of the top guide 210 and the roller axle 238. The spring 220 and the translatable pulley unit 230 are connected together by hooking the first end 219 of the spring 220 through an upper slot

4

opening 229 in a frame 225. The frame 225 houses the translatable pulley unit 230 and a pulley axle 232 around which a pulley in the translatable pulley unit 230 rotates. The cord 240, which can be a rope, string, or cable, has a first end 241 and a second end 242. The first end 241 of the cord 240 is secured to the frame 225 and the second end 242, which is a free cord end, is threaded through the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239, thereby connecting all three components together. After the cord 240 connects the three components together, a jamb mounting attachment 245 is secured to the second end 242 of the cord 240. When the prior art window balance 200 is located in the jamb pocket 108, the jamb mounting attachment 245 engages an opening 430 (FIG. 5) within one of the jamb pockets 108, securing the window balance 200 to the window jamb 107.

The spring 220 provides the force required to balance the sashes. The spring 220 is extended when the second end 242 of the cord 240 with the jamb mounting attachment 245 is pulled, causing the frame 225 to move within the rigid U-shaped channel 205 towards the frame 236, which is fixed. As the frame 225 moves towards the frame 236, the spring 220 is extended.

FIGS. 4A and 4B show an embodiment of a block and tackle window balance 300 in accordance with the teachings of the present invention. The window balances 300 act to counterbalance the weight of the window sashes 104, 106 at any vertical position within the window frame 102. FIG. 4A show one perspective view of the window balance 300 and FIG. 4B shows another perspective view of the same balance, but with a side wall of the rigid U-shaped channel 305 removed. The window balance 300 includes the rigid U-shaped channel 305, a top guide 310, a bottom guide 315, a spring 320, a translatable pulley unit 330, a fixed pulley unit 335, a bottom guide roller 350, and a cord 340. The top guide 310 and the bottom guide 315 are fixed to the rigid U-shaped channel 305 by fasteners 312, 316. The top guide 310 is used to help connect the block and tackle window balance 300 to the window sash 104, 106 and to help guide the movement of the block and tackle window balance 300 within the jamb pocket 108. The top guide 310 may include a top angled portion 302 and a bottom portion 303 as shown in FIGS. 4A and 4B. The bottom guide 315 is also used for connection and guidance purposes, but the bottom guide 315 further serves as a frame for housing the bottom guide roller 350. The bottom guide 315 extends beyond the rigid U-shaped channel 305 and, therefore, the bottom guide roller 350 is located outside of the rigid U-shaped channel 305. A back portion 313 of the bottom guide 315 may include a channel 314 for receiving a portion of the window sash, as depicted in FIG. 5. Some windows have a groove running along a bottom rail of the sash. On conventional balances, the bottom guide can drop into this groove so a manufacturer needs to use a shorter balance to avoid dropping into the groove. This effectively reduces the amount of travel, because shorter balances have to be used. The bottom guide 315 of the present invention is configured so the contact point of the bottom guide 315 to the sash is higher on the balance 300 so the groove is avoided and a longer balance with a greater spring force can be used. This can afford increased force for balancing the sash at any vertical position, as well as increased amount of travel resulting from the longer balance.

The spring 320, the translatable pulley unit 330, and the fixed pulley unit 335 are located within the rigid U-shaped channel 305. In the embodiment shown in FIGS. 4A and 4B, the translatable pulley unit 330 includes two pulleys 326,

5

327 that are rotatable about a single pulley axle 328, however, in other embodiments, the translatable pulley unit 330 may contain one or more pulleys rotatable about the pulley axle 328. Similarly, the fixed pulley unit 335, as shown in FIGS. 4A and 4B, includes two pulleys 331, 332 that rotate about a single pulley axle 333; however, in other embodiments, the fixed pulley unit 335 may contain one or more pulleys that rotate about the pulley axle 333. A first end 319 of the spring 320 is fixed with respect to the rigid U-shaped channel 305 via a fastener 318. In the disclosed embodiment, the fastener is a rivet; however the fastener could also be a support member welded between the two side walls of the rigid U-shaped channel 305, a hook secured to or formed in the rigid U-shaped channel 305, or any other device which secures the first end 319 of the spring 320 to the rigid U-shaped channel 305. The second end 321 of the spring 320 is attached to a frame 325, which houses the translatable pulley unit 330. To connect the spring 320 to the frame 325, the second end 321 of the spring 320 hooks through an opening 329 in the frame 325. The cord 340 has a first end 341 and a second end 342. The first end 341 of the cord 340 is attached to the frame 325 through a frame opening 322. The second end 342 is attached to a jamb mounting hook 345. The cord 340 is threaded through the translatable pulley unit 330, the fixed pulley unit 335, and around the bottom guide roller 350, connecting the three components together. The cord 340 in the disclosed embodiment is a string, however it may also be a rope, or a cable. Both the fixed pulley unit 335 and bottom guide roller 350 are fixed with respect to the rigid U-shaped channel 305. The fixed pulley unit 335 is housed within a frame 336 and rotates around the pulley axle 333. The frame 336 is secured within the rigid U-shaped channel 305 with a fastener 337. In an alternative embodiment, the frame 336 is not required, the fixed pulley unit 335 rotates around an axle supported between side walls of the rigid U-shaped channel 305. In yet another alternative embodiment, the fixed pulley unit 335 can be integral with the bottom guide 315 and as a result, fasteners 337 and 316 can be eliminated because tension of the spring 320 will keep the bottom guide 315 engaged with or connected to the rigid U-shaped channel 305. The bottom guide roller 350 is located within the bottom guide 315 and rotates around a bottom guide axle 352. A second distance "BB" 375 is defined as the length extending between the top angled portion 302 of the top guide 310 and the bottom guide axle 352. It should be noted that the second distance "BB" 375 is greater than the first distance "AA" 275 of the window balance 200.

To use the block and tackle window balance 300 within the window assembly, the balance is connected to both the window jamb 107 and to either the lower window sash 104 or the upper window sash 106. Referring to FIG. 5, the block and tackle window balance 300 is attached to the window jamb 107 via the jamb mounting hook 345. The jamb mounting hook 345 is secured within an opening 430 within the jamb pocket 108. The window balance 300 is then connected to a window sash by inserting a portion of the window sash into the channel 314 of the bottom guide 315 and connecting a cam 405 mounted on the top of the window sash 400 to the top angled portion 302 of the top guide 310, as shown in FIG. 6.

The spring 320 of the window balance 300 creates the force required to counterbalance the weight of the window sash. However, because the bottom guide roller 350 is located in the bottom guide 315, instead of within the rigid U-shaped channel 305 as in prior art balances, window sashes with the block and tackle window balances 300 as

6

disclosed in this application provide greater travel distance. FIG. 7A is an illustration of a window assembly 500 with two prior art window balances 200 attached to a lower window sash 504. In FIG. 7A, the lower window sash 504 is in a closed position. FIG. 7B shows the window assembly 500, but with the lower window sash 504 in a fully open position. The standard travel distance of a window sash attached to the prior art window balance 200 is labeled "CC" 520 in FIG. 7B. The window sash 504, as shown in FIGS. 7A and 7B, is prevented from achieving a greater travel distance by the roller 239, located within the rigid U-shaped channel 205, hitting the jamb mounting hook 245.

FIGS. 8A and 8B show a schematic of the window assembly 600 with block and tackle balances 300 of the present invention. FIG. 8A shows the window assembly 600 in the closed position, while FIG. 8B shows the window assembly 600 in the fully open position. Because the bottom guide roller 350 is mounted within the bottom guide 315 instead of within the rigid U-shaped channel 305, the window sash 604 can travel a greater distance before the bottom guide roller 350 hits the jamb mounting hook 345, resulting in a greater travel distance, labeled "DD" 530 in FIG. 8B. It should be noted that the distance "DD" 530 is greater than the distance "CC" 520. The greater travel distance is an important feature, because it allows for an increased window clearance that will help persons who are using the window assembly as an emergency

Variations, modifications, and other implementations of what is described herein will occur to those of ordinary skill in the art without departing from the spirit and the scope of the invention as claimed. Accordingly, the invention is to be defined not by the preceding illustrative description but instead by the spirit and scope of the following claims.

What is claimed is:

1. A block and tackle window balance device comprising:

   a channel comprising a first end and a second end;

   a top guide connected to the first end of the channel;

   a bottom guide connected to the second end of the channel;

   a bottom guide roller rotatably mounted in the bottom guide;

   a fixed pulley block unit connected to the channel;

   a translatable pulley block unit moveable within the channel;

   a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

   a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord being attachable to a jamb.

2. The device of claim 1 wherein the bottom guide roller is located external to the channel.

3. The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash.

4. The device according to claim 1 wherein a portion of the bottom guide is external to the channel.

5. The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash.

6. The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle.

US 6,598,264 B2

7

7. The device according to claim 6 wherein the axle is located within the frame.

8. The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member.

9. The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle.

10. The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel.

11. The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide.

12. A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

13. A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and

8

a bottom guide roller rotatably mounted in the bottom guide.

14. The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto.

15. The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto.

16. The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

17. The device of claim 13 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

18. A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

19. The device of claim 18 wherein the bottom guide roller is located external to the channel.

20. The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel.

21. The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

22. The device according to claim 18 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

23. A window balance device comprising:

a bottom guide connected to an end of a window balance channel, the bottom guide slidable in a jamb pocket when installed in a window frame, the bottom guide including:

a bottom guide axle mounted within the bottom guide, the bottom guide axle located outside the window balance channel; and

a bottom guide roller rotatably mounted on the bottom guide axle.

* * * * *

C000561

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

PTO-1556
(5/87)

'U.S. GPO: 1099-459-082/19144

Page 1 of 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

Bio Data Sheet

CONFIRMATION NO. 6163

| SERIAL NUMBER 09/810,868 | FILING DATE 03/16/2001 RULE | CLASS 016 | GROUP ART UNIT ~~3626~~ 3676 | ATTORNEY DOCKET NO. BSI-015 |
|---|---|---|---|---|

**APPLICANTS**
   Gary Roger Newman, Valley Springs, SD;

\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IF REQUIRED, FOREIGN FILING LICENSE
GRANTED \*\* 04/23/2001

| Foreign Priority claimed ☐ yes ☑ no 35 USC 119 (a-d) conditions ☐ yes ☑ no ☐ Met after met Allowance Verified and Acknowledged   Examiner's Signature    Initials | STATE OR COUNTRY SD | SHEETS DRAWING 10 | TOTAL CLAIMS 13 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|

**ADDRESS**
021323

**TITLE**
Block and tackle window balance with bottom guide roller

| FILING FEE RECEIVED 710 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

C000563

<u>BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER</u>

<u>Abstract</u>

Disclosed are apparatus for a block and tackle window balance to be incorporated in single and double hung window assemblies.  In one embodiment the block and tackle window balance includes a roller secured within a bottom guide to increase range of travel of a window sash.

1129431_1

14

C000564

EXPRESS MAIL LABEL NO.: EL653443466US
PATENT
Atty. Docket No.: BSI-015

BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

Technical Field

[0001]   This invention relates to block and tackle window balance devices for single and double hung windows and, more particularly, to a block and tackle window balance device that provides an increased range of travel within a window frame.

Background Information

[0002]   Hung window assemblies generally include a window frame, a lower window sash, an upper window sash, a pair of window jambs, two sets of jamb pockets, and at least one window balance device for offsetting the weight of a window sash throughout a range of travel within the window frame.  Block and tackle window balance devices use a combination of a spring and pulleys located within a channel to balance the weight of the window sash at any position within the jamb pockets.

[0003]   In some block and tackle window balance devices, the channel containing both the spring and pulleys is attached to the window sash, and a cord, which connects the pulleys together, is attached to a jamb mounting hook that is connected to a side jamb.  A disadvantage of this type of device is that the travel distance of the window sash is limited by some of the pulleys located within the rigid channel interfering with the jamb mounting hook that attaches the window balance to the window jamb.

C000565

## Summary of the Invention

[0004]    In general, in one aspect, the invention relates to a block and tackle window balance device for use with single and double hung windows that affords increased window opening travel distance. In one embodiment, the block and tackle window balance device includes a channel, a spring with a first end and a second end, a translatable pulley block unit, a fixed pulley block unit, a cord, a top guide, and a bottom guide with a bottom guide roller. The top and bottom guides are connected to opposite ends of the channel. The spring, the translatable pulley block unit, and the fixed pulley block unit are all located within the channel. The first end of the spring and the fixed pulley block unit are fixed at opposite ends of the channel. The second end of the spring is connected to the translatable pulley block unit. The translatable and fixed pulley block units are connected by the cord. The cord is threaded around both the translatable and fixed pulley block units and extends around the bottom guide roller located within the bottom guide.

[0005]    In another embodiment, the block and tackle window balance device includes a top guide including a top angled portion and a bottom portion. The bottom portion of the top guide is connected to one end of the channel. In still another embodiment, the top angled portion of the top guide is sized to receive a member from a window sash.

[0006]    In yet another embodiment, the block and tackle window device includes a bottom guide that extends beyond the rigid channel. In still yet another embodiment, the bottom guide of the device further includes a channel to receive a portion of a window sash.

[0007]    In general, in one aspect, the invention relates to a method of providing increased travel of a window sash slidably mounted in a window frame. The method includes three steps. A first step is to provide a window assembly that includes a window frame with jambs with jamb pockets, an upper window sash, a lower window sash, and at least one block and tackle window balance device having a channel and a bottom roller for dispensing a cord. The channel has a first end and a second end. The bottom roller is mounted proximate to the second end of the channel with a first distance between the first end of the channel and the bottom roller. A second

2

step is to remove the block and tackle window balance device from the window assembly. A final step is to provide and to install an increased travel window balance device. The increased window balance device has a channel with a first end and a second end and a bottom guide roller for dispensing a cord. The bottom guide roller is mounted proximate to the second end of the channel and a second distance is defined as the length between the first end of the channel and the bottom guide roller. The second distance of the increased window balance device is greater than the first distance of the removed block and tackle window balance device.

[0008]    The foregoing and other objects, aspects, features, and advantages of the invention will become more apparent from the following description and from the claims.

3

## Brief Description of the Drawings

[0009]    In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

[0010]    FIG. 1 is a perspective view of a double hung window.

[0011]    FIG. 2A is a perspective view of a prior art block and tackle window balance.

[0012]    FIG. 2B is another perspective view of the prior art block and tackle window balance of FIG. 2A with one of two side walls of the U-shaped channel removed.

[0013]    FIG. 3 is a perspective rear view of the prior art block and tackle window balance.

[0014]    FIG. 4A is a perspective view of an embodiment of a block and tackle window balance of the invention.

[0015]    FIG. 4B is perspective view of the block and tackle window balance of FIG. 4A with one of two side walls of the U-shaped channel removed.

[0016]    FIG. 5 is a perspective view of an embodiment of a block and tackle window balance of the invention mounted within a window jamb.

[0017]    FIG. 6 is an enlarged front view of a top guide of the block and tackle window balance of FIG. 4A attached to a cam.

[0018]    FIG. 7A is a front view showing a closed position of a window assembly with prior art block and tackle window balances.

[0019]    FIG. 7B is a front view showing an open position of the window assembly with prior art block and tackle window balances.

[0020]    FIG. 8A is a front view showing a closed position of a window assembly with an embodiment of a block and tackle window balances of the invention.

[0021]    FIG. 8B is a front view showing an open position of a window assembly with block and tackle window balances of the invention.

4

C000568

## Detailed Description

[0022]    Referring to FIG. 1, shown is a double hung window assembly 100 in which a block and tackle window balance constructed in accordance with the teachings of the present invention can be used.  The double hung window assembly 100 includes a window frame 102, a lower window sash 104, an upper window sash 106, and a pair of window jambs 107.  Within each window jamb 107, jamb pockets 108 are defined.  The lower window sash 104 and upper window sash 106 slide vertically within the jamb pockets 108.  Generally, window balances are attached to the lower and upper window sashes 104, 106 to balance the weight of the window sashes at any vertical position within the jamb pockets 108. ·

[0023]    FIGS. 2A, 2B, and 3 show perspective views of a prior art block and tackle window balance 200.  FIG. 2A shows the prior art block and tackle window balance 200 in full, whereas FIG. 2B shows the prior art block and tackle window balance 200 with one side wall of a rigid U-shaped channel 205 cut away so that components within the window balance 200 are more visible.  FIG. 3 shows a rear view of the window balance 200.

[0024]    The block and tackle window balance 200 includes a spring 220, a translatable pulley unit 230, a fixed pulley unit 235, a roller 239, and a cord 240 all housed with the rigid U-shaped channel 205.  Attached to the two ends of the rigid U-shaped channel 205 with fasteners 212, 216 are a top guide 210 and a bottom guide 215 that are used to connect the window balance 200 to either the upper or lower window sashes 104, 106 and to help guide the vertical motion of the window balance 200 within the jamb pockets 108.  The top guide 210 includes an upper portion 202 and a lower portion 203.  The upper portion 202 of the top guide 210 is angled and is sized to be received by a member attached to a window sash, such as a cam.  The bottom guide 215 includes a back portion 213, best seen in FIG. 3, that encases a portion of the rigid channel 205.  Within the back portion 213 of the bottom guide 215 is a channel 214 sized to receive a portion of a window sash.

[0025]    The rigid U-shaped channel 205 has a back wall 206 and two side walls 207, 208 that in combination form the U-shape.  The rigid U-shaped channel 205 serves as an external frame

5

to which the components of the window balance 200 can be secured. The rigid U-shaped channel 205 also keeps components located within the rigid U-shaped channel 205 free of debris and particulate matter. The spring 220, the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239 are located inside the rigid U-shaped channel 205. Both of the translatable pulley unit 230 and the fixed pulley unit 235 include one or more pulleys rotatable around respective axles.

[0026] Components within the rigid U-shaped channel 205 work in combination to create a force to counterbalance the weight of the attached sash at any vertical position within the window frame 102. These components are attached to each other such that a first end 219 of the spring 220 is connected to the translatable pulley unit 230, and the translatable pulley unit 230 is connected to the fixed pulley unit 235 and the roller 239 via the cord 240. A pulley in the fixed pulley unit 235 and the roller 239 may be contained in a frame 236. To secure the components within the rigid U-shaped channel 205, the second end 221 of the spring 220 and the frame 236 are fixed to opposite ends of the rigid U-shaped channel 205 via respective fasteners 218, 243. The frame 236 is also used to secure a pulley axle 237 and a roller axle 238, around which the pulley in the fixed pulley unit 235 and the roller 239 respectively rotate. A first distance "AA" 275 is defined by a length extending between the upper portion 202 of the top guide 210 and the roller axle 238. The spring 220 and the translatable pulley unit 230 are connected together by hooking the first end 219 of the spring 220 through an upper slot opening 229 in a frame 225. The frame 225 houses the translatable pulley unit 230 and a pulley axle 232 around which a pulley in the translatable pulley unit 230 rotates. The cord 240, which can be a rope, string, or cable, has a first end 241 and a second end 242. The first end 241 of the cord 240 is secured to the frame 225 and the second end 242, which is a free cord end, is threaded through the translatable pulley unit 230, the fixed pulley unit 235, and the roller 239, thereby connecting all three components together. After the cord 240 connects the three components together, a jamb mounting attachment 245 is secured to the second end 242 of the cord 240. When the prior art window balance 200 is located in the jamb pocket 108, the jamb mounting attachment 245 engages an opening 430 (FIG.5) within one of the jamb pockets 108, securing the window balance 200 to the window jamb 107.

6

C000570

[0027]    The spring 220 provides the force required to balance the sashes.  The spring 220 is extended when the second end 242 of the cord 240 with the jamb mounting attachment 245 is pulled, causing the frame 225 to move within the rigid U-shaped channel 205 towards the frame 236, which is fixed.  As the frame 225 moves towards the frame 236, the spring 220 is extended.

[0028]    FIGS. 4A and 4B show an embodiment of a block and tackle window balance 300 in accordance with the teachings of the present invention.  The window balances 300 act to counterbalance the weight of the window sashes 104, 106 at any vertical position within the window frame 102.  FIG. 4A show one perspective view of the window balance 300 and FIG. 4B shows another perspective view of the same balance, but with a side wall of the rigid U-shaped channel 305 removed.  The window balance 300 includes the rigid U-shaped channel 305, a top guide 310, a bottom guide 315, a spring 320, a translatable pulley unit 330, a fixed pulley unit 335, a bottom guide roller 350, and a cord 340.  The top guide 310 and the bottom guide 315 are fixed to the rigid U-shaped channel 305 by fasteners 312, 316.  The top guide 310 is used to help connect the block and tackle window balance 300 to the window sash 104, 106 and to help guide the movement of the block and tackle window balance 300 within the jamb pocket 108.  The top guide 310 may include a top angled portion 302 and a bottom portion 303 as shown in FIGS. 4A and 4B.  The bottom guide 315 is also used for connection and guidance purposes, but the bottom guide 315 further serves as a frame for housing the bottom guide roller 350.  The bottom guide 315 extends beyond the rigid U-shaped channel 305 and, therefore, the bottom guide roller 350 is located outside of the rigid U-shaped channel 305.  A back portion 313 of the bottom guide 315 may include a channel 314 for receiving a portion of the window sash, as depicted in FIG. 5.  Some windows have a groove running along a bottom rail of the sash.  On conventional balances, the bottom guide can drop into this groove so a manufacturer needs to use a shorter balance to avoid dropping into the groove.  This effectively reduces the amount of travel, because shorter balances have to be used.  The bottom guide 315 of the present invention is configured so the contact point of the bottom guide 315 to the sash is higher on the balance 300 so the groove is avoided and a longer balance with a greater spring force can be used.  This can afford increased force for balancing the sash at any vertical position, as well as increased amount of travel resulting from the longer balance.

7

C000571

[0029]    The spring 320, the translatable pulley unit 330, and the fixed pulley unit 335 are located within the rigid U-shaped channel 305. In the embodiment shown in FIGS. 4A and 4B, the translatable pulley unit 330 includes two pulleys 326, 327 that are rotatable about a single pulley axle 328, however, in other embodiments, the translatable pulley unit 330 may contain one or more pulleys rotatable about the pulley axle 328. Similarly, the fixed pulley unit 335, as shown in FIGS. 4A and 4B, includes two pulleys 331, 332 that rotate about a single pulley axle 333; however, in other embodiments, the fixed pulley unit 335 may contain one or more pulleys that rotate about the pulley axle 333. A first end 319 of the spring 320 is fixed with respect to the rigid U-shaped channel 305 via a fastener 318. In the disclosed embodiment, the fastener is a rivet; however the fastener could also be a support member welded between the two side walls of the rigid U-shaped channel 305, a hook secured to or formed in the rigid U-shaped channel 305, or any other device which secures the first end 319 of the spring 320 to the rigid U-shaped channel 305. The second end 321 of the spring 320 is attached to a frame 325, which houses the translatable pulley unit 330. To connect the spring 320 to the frame 325, the second end 321 of the spring 320 hooks through an opening 329 in the frame 325. The cord 340 has a first end 341 and a second end 342. The first end 341 of the cord 340 is attached to the frame 325 through a frame opening 322. The second end 342 is attached to a jamb mounting hook 345. The cord 340 is threaded through the translatable pulley unit 330, the fixed pulley unit 335, and around the bottom guide roller 350, connecting the three components together. The cord 340 in the disclosed embodiment is a string, however it may also be a rope, or a cable. Both the fixed pulley unit 335 and the bottom guide roller 350 are fixed with respect to the rigid U-shaped channel 305. The fixed pulley unit 335 is housed within a frame 336 and rotates around the pulley axle 333. The frame 336 is secured within the rigid U-shaped channel 305 with a fastener 337. In an alternative embodiment, the frame 336 is not required, the fixed pulley unit 335 rotates around an axle supported between side walls of the rigid U-shaped channel 305. In yet another alternative embodiment, the fixed pulley unit 335 can be integral with the bottom guide 315 and as a result, fasteners 337 and 316 can be eliminated because tension of the spring 320 will keep the bottom guide 315 engaged with or connected to the rigid U-shaped channel 305. The bottom guide roller 350 is located within the bottom guide 315 and rotates around a bottom guide axle 352. A second distance "BB" 375 is defined as the length extending between the top angled portion 302 of the top guide 310 and the bottom guide axle 352. It should be noted that

8

the second distance "BB" 375 is greater than the first distance "AA" 275 of the window balance 200.

[0030]    To use the block and tackle window balance 300 within the window assembly, the balance is connected to both the window jamb 107 and to either the lower window sash 104 or the upper window sash 106. Referring to FIG. 5, the block and tackle window balance 300 is attached to the window jamb 107 via the jamb mounting hook 345. The jamb mounting hook 345 is secured within an opening 430 within the jamb pocket 108. The window balance 300 is then connected to a window sash by inserting a portion of the window sash into the channel 314 of the bottom guide 315 and connecting a cam 405 mounted on the top of the window sash 400 to the top angled portion 302 of the top guide 310, as shown in FIG. 6.

[0031]    The spring 320 of the window balance 300 creates the force required to counterbalance the weight of the window sash. However, because the bottom guide roller 350 is located in the bottom guide 315, instead of within the rigid U-shaped channel 305 as in prior art balances, window sashes with the block and tackle window balances 300 as disclosed in this application provide greater travel distance. FIG. 7A is an illustration of a window assembly 500 with two prior art window balances 200 attached to a lower window sash 504. In FIG. 7A, the lower window sash 504 is in a closed position. FIG. 7B shows the window assembly 500, but with the lower window sash 504 in a fully open position. The standard travel distance of a window sash attached to the prior art window balance 200 is labeled "CC" 520 in FIG. 7B. The window sash 504, as shown in FIGS. 7A and 7B, is prevented from achieving a greater travel distance by the roller 239, located within the rigid U-shaped channel 205, hitting the jamb mounting hook 245.

[0032]    FIGS. 8A and 8B show a schematic of the window assembly 600 with block and tackle balances 300 of the present invention. FIG. 8A shows the window assembly 600 in the closed position, while FIG. 8B shows the window assembly 600 in the fully open position. Because the bottom guide roller 350 is mounted within the bottom guide 315 instead of within the rigid U-shaped channel 305, the window sash 604 can travel a greater distance before the bottom guide roller 350 hits the jamb mounting hook 345, resulting in a greater travel distance, labeled "DD" 530 in FIG. 8B. It should be noted that the distance "DD" 530 is greater than the distance "CC"

9

520. The greater travel distance is an important feature, because it allows for an increased window clearance that will help persons who are using the window assembly as an emergency exit.

[0033]    Variations, modifications, and other implementations of what is described herein will occur to those of ordinary skill in the art without departing from the spirit and the scope of the invention as claimed.  Accordingly, the invention is to be defined not by the preceding illustrative description but instead by the spirit and scope of the following claims.

[0034]    What is claimed is:

10

C000574

<u>Claims</u>

1. A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted to the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein

the first end is fixed relative to the channel and the second end is connected to the

translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded

through the translatable pulley block unit and the fixed pulley block unit and extends

around the bottom guide roller, the first cord end being attached to the translatable

pulley block unit and the second cord end being attachable to a jamb.

2. The device of claim 1 wherein the bottom guide roller is located external to the channel.

3. The device according to claim 1 wherein a portion of the bottom guide is external to the channel.

4. The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash.

5. The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle.

6. The device according to claim 5 wherein the axle is located within the frame.

11

7.    The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member.

8.    The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle.

9.    The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel.

10.    The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash.

11.    The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide.

12.    A window assembly comprising:
      a window frame with two jambs with jamb pockets;
      at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and
      at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:
            a channel comprising a first end and a second end;
            a top guide connected to the first end of the channel;
            a bottom guide connected to the second end of the channel;
            a bottom guide roller rotatably mounted to the bottom guide;
            a fixed pulley block unit connected to the channel;
            a translatable pulley block unit moveable within the channel;
            a spring comprising a first end and a second end, wherein
      the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

12

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

13.     A method of providing increased travel of a window sash slidably mounted in a window frame, the method comprising the steps of:

providing a window assembly having a window frame with two jambs with jamb pockets, at least one of an upper window sash and a lower window sash slidably receivable by the jamb pockets, and at least one block and tackle window balance device having a channel with a first end and a second end and a bottom roller mounted proximate the second end for dispensing a cord with a first distance between the first end and the bottom roller;

removing the at least one block and tackle window balance device; and

providing and installing an increased travel window balance device having a channel with a first end and a second end and a bottom guide roller mounted proximate the second end for dispensing a cord with a second distance between the first end and the bottom guide roller, wherein the second distance is greater than the first distance.

13

C000577

EXPRESS MAIL MAILING LABEL

MAR-16-01 14:15 FROM:    No. _EL 653443466 US_    PAGE    2/8

| DECLARATION AND POWER OF ATTORNEY FOR UTILITY OR DESIGN PATENT APPLICATION | Attorney Docket No. | BSI-015 |
|---|---|---|
| | First Named Inventor | NEWMAN |
| | *COMPLETE IF KNOWN* | |
| ☒ Declaration Submitted with Initial Filing | Application Serial Number | NOT YET ASSIGNED |
| ☐ Declaration Submitted after Initial Filing (surcharge 37 CFR 1.16(e) required) | Filing Date | HEREWITH |
| | Group Art Unit | NOT YET ASSIGNED |
| | Examiner Name | NOT YET ASSIGNED |

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

*(Title of the Invention)*

the specification of which

☒    is attached hereto

OR

☐    was filed on (MM/DD/YYYY) _____ as United States Application Serial Number or PCT International Application Number _____ and was amended on (MM/DD/YYYY) _____ *(if applicable)*.

I hereby state that I have reviewed and understand the contents of the above-identified application, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose to the Patent Office all information known by me to be material to patentability as defined in 37 CFR 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. 119(a)-(d) or 365(b) of any foreign application(s) for patent or inventor's certificate, or 365(a) of any PCT international application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or of any PCT international application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Not Claimed | Certified Copy Attached? | |
|---|---|---|---|---|---|
| | | | | YES | NO |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |

☐    Additional foreign application numbers are listed on a supplemental priority data sheet attached hereto.

I hereby claim the benefit under 35 U.S.C. 119(e) of any United States provisional application(s) listed below.

| Application Serial Number(s) | Filing Date (MM/DD/YYYY) | |
|---|---|---|
| | | ☐ Additional provisional application serial numbers are listed on a supplemental priority data sheet attached hereto. |

C000578

MAR-16-01 14:15 FROM:                          ID:                          PAGE   3/8

Declaration and Power of Attorney for Utility or Design Patent Application
Serial No.
Atty. Docket No. BSI-015
Page 2 of 3

## DECLARATION – Utility or Design Patent Application

I hereby claim the benefit under 35 U.S.C. 120 of any United States application(s), or 365(c), of any PCT international application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56 which become available between the filing date of the prior application and the national or PCT international filing date of this application.

| U.S. Parent Application or PCT Parent Serial Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|
|  |  |  |
|  |  |  |

☐ Additional U.S. or PCT international application numbers are listed on a supplemental priority data sheet attached hereto.

As a named inventor, I hereby appoint the following registered practitioners to prosecute this application and to transact all business in the Patent and Trademark Offices connected therewith: ☐ Customer Number [                    ]

OR → Place Customer Number Bar-Code Label Here

☒ Registered practitioner(s) name/registration number listed below

| Name | Registration Number | Name | Registration Number |
|---|---|---|---|
| Michael J. Bastian | P-47,411 | Kurt W. Lockwood | 40,704 |
| Steven M. Bauer | 31,481 | Thomas C. Meyers | 36,989 |
| Elias C. Behrakis | P-47,416 | Joseph B. Milstein | 42,897 |
| John V. Bianco | 36,748 | David G. Miranda | 42,898 |
| Isabelle A.S. Blundell | 43,321 | Ronda P. Moore | 44,244 |
| Maureen A. Bresnahan | 44,559 | Indranil Mukerji | P-46,944 |
| Michael H. Brodowski | 41,640 | Edmund R. Pitcher | 27,829 |
| Jennifer A. Camacho | 43,526 | Michael A. Rodriguez | 41,274 |
| Joseph A. Capraro, Jr. | 36,471 | Jamie H. Ross | 45,054 |
| John J. Cotter | 38,116 | R. Stephen Rosenholm | 45,283 |
| John V. Forcier | 42,545 | Christopher W. Stamos | 35,370 |
| Steven J. Frank | 33,497 | Diana M. Steel | 43,153 |
| Kia L. Freeman | P-47,577 | Joseph P. Sullivan | 45,349 |
| Brian M. Gaff | 44,691 | Robert J. Tosti | 35,393 |
| Michael J. Giannetta | 42,574 | Thomas A. Turano | 35,722 |
| Duncan A. Greenhalgh | 38,678 | Michael J. Twomey | 38,349 |
| William G. Guerin | 41,047 | Christina C. Vito | 39,061 |
| Jonathan A. Harris | 44,744 | Patrick R.H. Waller | 41,418 |
| Ira V. Heffan | 41,059 | Daniel A. Wilson | 45,508 |
| Danielle L. Herritt | 43,670 | Gerald E. Worth | 45,238 |
| Douglas J. Kline | 35,574 | Yin P. Zhang | 44,372 |
| John D. Lanza | 40,060 |  |  |

☐ Additional registered practitioners named on supplemental Registered Practitioner Information sheet attached hereto.

Direct all correspondence to:     Patent Administrator
                                  Testa, Hurwitz & Thibeault, LLP
                                  High Street Tower
                                  125 High Street
                                  Boston, MA  02110
                                  Tel. No.: (617) 248-7000
                                  Fax No.: (617) 248-7100

C000579

Declaration and Power of Attorney for Utility or Design Patent Application
Serial No.
Atty. Docket No. BSI-015
Page 3 of 3

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Name of Sole or First Inventor: | | ☐ A petition has been filed for this unsigned inventor | | | | | |
|---|---|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | | Family Name or Surname | | | |
| GARY ROGER | | | | NEWMAN | | | |
| Inventor's Signature | | *Gary Roger Newman* | | | | Date | 3/16/01 |
| Residence | City | VALLEY SPRINGS | State | SD | Country | USA | Citizenship | US |
| Mailing Address | | 26403 484ᵗʰ AVENUE | | | | | |
| Mailing Address (ln. 2) | City | VALLEY SPRINGS | State | SD | ZIP | 57068 | Country | USA |
| ☐ Additional inventors are being named on the _____ supplemental Additional Inventor(s) sheet(s) attached hereto. | | | | | | | |

| Name of Additional Joint Inventor, if any: | | ☐ A petition has been filed for this unsigned inventor | | | | | |
|---|---|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | | Family Name or Surname | | | |
| | | | | | | | |
| Inventor's Signature | | | | | | Date | |
| Residence | City | | State | | Country | | Citizenship |
| Mailing Address | | | | | | | |
| Mailing Address (ln. 2) | City | | State | | ZIP | | Country |

| Name of Additional Joint Inventor, if any: | | ☐ A petition has been filed for this unsigned inventor | | | | | |
|---|---|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | | Family Name or Surname | | | |
| | | | | | | | |
| Inventor's Signature | | | | | | Date | |
| Residence | City | | State | | Country | | Citizenship |
| Mailing Address | | | | | | | |
| Mailing Address (ln. 2) | City | | State | | ZIP | | Country |

VER 1/01
1121824

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Express Mail Label No: EL653443466US

Title: Tackle Window Balance with Bottom Guide

To Be Assigned / Atty Docket No.: BSI-01.

16
191



Fig. 1

PRINT OF DRAWINGS
AS ORIGINALLY FILED

el No: EL653443466US
- Tackle Window Balance with Bottom Guide
rman
et Assigned / Atty Docket No.: BS1-



FIG. 2A

C000582

PRINT OF DRAWINGS
AS ORIGINALLY FILED

... No: EL653443466US
... ackle Window Balance with Bottom Guide
... Assigned / Atty Docket No.: BSI-

200



FIG. 2B

C000583

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Label No: EL653443466US
and Tackle Window Balance with Bottom Guide
Newman
ot Yet Assigned / Atty Docket No.: E.
Sheet 4 of 10



200

210

202

203

212

205

207

206

208

213

216

214

215

FIG.3

C000584

PRINT OF DRAWINGS
AS ORIGINALLY FILED



Io: EL653443466US
kle Window Balance with Bottom Guide
.signed / Atty Docket No.: BSI-01.
Sheet 5 of 10

300



FIG. 4A

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Application No: EL653443466US
Title: ackle Window Balance with Bottom Guide

Assigned / Atty Docket No.: BSI-~
Sheet 6 of 10



FIG. 4B

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Express Mail Label No: EL653443466US
and Tackle Window Balance with Bottom Guide

Newman

ot Yet Assigned / Any Docket No..



FIG.5

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Serial No: EL653434660US
Title: Tackle Window Balance with Bottom Guide
Inventor: man
Docket Assigned / Any Docket No.: BSI



FIG. 6









C000589

PRINT OF DRAWINGS
AS ORIGINALLY FILED





03 - 19 - 01

A

1c853 U.S. PTO 03/16/01

**Express Mail Mail** Label No. EL653443466US

| Attorney Docket No. | BSI-015 |
|---|---|
| First Named Inventor | NEWMAN |
| Title | BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER |

### UTILITY PATENT APPLICATION TRANSMITTAL
(Only for new nonprovisional applications under 37 CFR 1.53(b))

1c853 U.S. PTO 03/16/01

J-97e U.S. PTO 09/810668 03/16/01

| APPLICATION ELEMENTS | ADDRESS TO:  Box Patent Application<br>Assistant Commissioner for Patents<br>Washington, D.C. 20231 |
|---|---|
| 1. ☒ Fee Transmittal Form | |
| 2. ☐ Small Entity Status<br>☐ Applicant claims small entity status<br>☐ Status established in prior application and is still proper and desired | **ACCOMPANYING APPLICATION PARTS** |
| 3. ☒ Specification and Drawings  [Total Pages 24]<br>- Written Description - (10 pages)<br>- Claims - (3 pages)<br>- Abstract - (1 page)<br>- Sheets of Drawings - (10 sheets)<br>☐ Formal<br>☒ Informal | 8. ☐ 37 CFR 3.73(b) Statement (when there is an assignee)<br>☐ Power of Attorney<br><br>9. ☐ English Translation Document *(if applicable)*<br><br>10. ☒ Information Disclosure Statement (IDS)/PTO-1449<br>☒ Copies of IDS Citations |
| 4. ☒ Oath or Declaration  [Total Pages 3]<br>a. ☒ Newly executed (original)<br>b. ☐ Copy from a prior application (37 CFR 1.63(d))<br>*(for continuation/divisional with Box 17 completed)*<br>*[Note Box 5 below]* | 11. ☐ Preliminary Amendment<br>☐ Drawings [Total Sheets   ]<br>☐ Letter to Official Draftsperson Including Drawings [Total Pages   ] |
| | 12. ☒ Return Receipt Postcard |
| 5. ☐ Incorporation by Reference (usable if Box 4b is checked)<br>The entire Disclosure of the prior application, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein. | 13. ☐ Certified Copy of Priority Document(s) |
| 6. ☐ Application Data Sheet | 14. ☐ Deletion of Inventor(s)<br>Signed statement attached deleting inventor(s) named in the prior application. |
| 7. ☐ Nucleotide and/or Amino Acid Sequence Submission<br>☐ Computer Readable Copy<br>☐ Paper Copy (identical to computer copy)<br>☐ CD (identical to computer copy)<br>☐ Statement verifying identity of above copies. | 15. ☐ CD in duplicate for large table or computer program. |
| | 16. ☐ Other: |

17. ☐ If a CONTINUING APPLICATION, amend the specification by inserting on page 1, before the first line, the sentence:
-This is a
☐ continuation   ☐ divisional   ☐ continuation-in-part of prior application Serial No. _____ / _____ , filed on , , the entire disclosure of which is incorporated by reference herein.--
Priority to the above application(s) is claimed under 35 U.S.C. 120.
Prior application information: Examiner: _____ .  Group/Art Unit: _____

18. ☐ Priority - 35 U.S.C. 119
☐ Priority of application Serial No. _____ filed on _____ in _____ is claimed under 35 U.S.C. 119.
☐ The certified copy has been filed in prior U.S. application Serial No. _____ / _____ on _____ .
☐ The certified copy will follow.

| CORRESPONDENCE ADDRESS | SIGNATURE BLOCK |
|---|---|
| Direct all correspondence to:   Patent Administrator<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA 02110<br>Tel. No.: (617) 248-7000<br>Fax No.: (617) 248-7100 | Respectfully submitted,<br>Date:  March 16, 2001<br>Reg. No. 44,691<br>Tel. No.: (617) 310-8085   Brian M. Gaff<br>Fax No.: (617) 248-7100   Attorney for Applicant(s)<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA  02110 |

VER 1/01
1121682

C000591

Express Mail Label No.: EL653443466US

## FEE TRANSMITTAL
### FY 2001

| | |
|---|---|
| Application Serial Number | Not Yet Assigned |
| Filing Date | Herewith |
| First Named Inventor | Newman |
| Group Art Unit | Not Yet Assigned |
| Examiner Name | Not Yet Assigned |
| Attorney Docket No. | BSI-015 |

| METHOD OF PAYMENT |
|---|
| 1. ☒ Payment Enclosed: |
| ☒ Check ☐ Money Order ☐ Other |
| 2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531. |
| ☐ Required Fees (copy of this sheet enclosed). |
| ☒ Additional fee required under 37 CFR 1.16 and 1.17. |
| ☒ Overpayment Credit. |
| 3. ☐ Applicant claims small entity status. |

### FEE CALCULATION

#### 1. FILING FEE

Large Entity

| Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 710 | Utility filing fee | 710.00 |
| 320 | Design filing fee | |
| 150 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | 13 | - 20 = 0 | x $ 18.00 = | 0 |
| Independent Claims | 3 | - 3 = 0 | x $ 80.00 = | 0 |
| ☐ Multiple Dependent Claim(s), if any | | | $270.00 = | 0 |

TOTAL: 710.00
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)  ($)  710.00

#### 2. AMENDMENT CLAIM FEES

| Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|
| Total | - | = | x $ 18.00 = | |
| Indep. | - | = | x $ 80.00 = | |
| ☐ First Presentation of Multiple Dep. Claim | | | + $270.00 = | |

TOTAL: ($)
SMALL ENTITY DISCOUNT: ($)
SUBTOTAL (2)  ($)0.00

### FEE CALCULATION (continued)

#### 3. ADDITIONAL FEES

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | For filing a request for reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 390 | 195 | Extension for reply within second month | |
| 890 | 445 | Extension for reply within third month | |
| 1,390 | 695 | Extension for reply within fourth month | |
| 1,890 | 945 | Extension for reply within fifth month | |
| 310 | 155 | Notice of Appeal | |
| 310 | 155 | Filing a brief in support of an appeal | |
| 270 | 135 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 50 | 50 | Petitions related to provisional applications | |
| 180 | 180 | Submission of Information Disclosure Statement | |
| 710 | 355 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 710 | 355 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| Other fee (Specify) | | | |
| Other fee (Specify) | | | |

SUBTOTAL (3)  ($) 0.00

| | |
|---|---|
| SUBTOTAL (1) | 710.00 |
| SUBTOTAL (2) | 0.00 |
| SUBTOTAL (3) | 0.00 |
| TOTAL ($) | 710.00 |

| CORRESPONDENCE ADDRESS | SIGNATURE BLOCK |
|---|---|
| Direct all correspondence to: Patent Administrator Testa, Hurwitz & Thibeault, LLP High Street Tower-125 High Street Boston, MA 02110 Tel. No.: (617) 248-7000 Fax No.: (617) 248-7100 | Respectfully submitted, Date: March 16, 2001  Reg. No.:44,691  Tel. No. (617)-310-8085  Fax No.: (617) 248-7100  Brian M. Gaff Attorney for the Applicants Testa, Hurwitz & Thibeault, LLP High Street Tower-125 High Street Boston, MA 02110 |

VERNONDM\341\6.2048545_1



Express Mail Label No.: EL653443466US

PATENT
Attorney Docket No. BSI-015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(S):   Newman

SERIAL NO.:   Not Yet Assigned   GROUP NO.:   Not Yet Assigned

FILING DATE:   Herewith   EXAMINER:   Not Yet Assigned

TITLE:   Block and Tackle Window Balance with Bottom Guide Roller

Assistant Commissioner for Patents
Washington, D.C. 20231

### INFORMATION DISCLOSURE STATEMENT

Sir:

In accordance with the provisions of 37 C.F.R. 1.97 and 1.98, Applicants hereby make of record the patents and publications listed on the accompanying Form PTO-1449, and other information contained herein, for consideration by the Examiner in connection with the examination of the above-identified patent application. Copies of the patents and publications are enclosed.

### REMARKS

In accordance with the provisions of 37 C.F.R. 1.97, this statement is being filed (CHECK ONE):

☒   (1)   within three (3) months of the **filing date** of a national application other than a continued prosecution application under 37 C.F.R. 1.53(d), or within three (3) months of the **date of entry** of the national stage as set forth in 37 C.F.R. 1.491 in an international application, or before the mailing of the **first Office action** on the merits, or before the mailing of a **first Office action** after the filing of a request for continued examination under 37 C.F.R. 1.114; or

☐   (2)   after the period defined in (1) but before the mailing date of a **final action** or a **notice of allowance** under 37 C.F.R. 1.311, and

      ☐   the requisite Statement is below, OR

      ☐   the requisite fee under 37 C.F.R. 1.17(p), namely **$180.00**, is included herein, or

☐   (3)   after the mailing date of a **final action** or **notice of allowance** but before the payment of the issue fee, **AND**

Information Disclosure Statement
Serial No. Not Yet Assigned
Page 2 of 2

☐   the requisite Statement is below, **AND**

☐   the requisite petition fee under 37 C.F.R. 1.17(p), namely **$180.00** is included herein.

It is respectfully requested that each of the patents and publications listed on the attached Form PTO-1449, and other information contained herein, be made of record in this application.

### STATEMENT

As required under 37 C.F.R. 1.97(e), Applicant(s), through the undersigned, hereby state either that [**check the appropriate space only if either (2) or (3) is checked on the previous page and the Statement is required**]:

☐   1.   Each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application **not more than three months** prior to the filing of the Information Disclosure Statement; or

☐   2.   No item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing this Statement after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to **any individual** designated in 37 C.F.R. 1.56(c) **more than three** months prior to the filing of the Information Disclosure Statement.

Respectfully submitted,

Date: March 16, 2001
Reg. No. 44,691

Brian M. Gaff
Attorney for Applicant(s)
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel. No.: (617) 310-8085
Fax No.: (617) 248-7100

VER 12/00
1122679-1

C000594

EXPRESS MA.    ABEL NO.: EL653443466US

Page 1 of

| FORM PTO - 1449 | ATTORNEY DOCKET NO.: BSI-015 |
|---|---|
| INFORMATION DISCLOSURE STATEMENT | APPLICANT(S): Newman |
| | SERIAL NO.: Not Yet Assigned |
| | FILING DATE: Herewith; GROUP: Not Yet Assigned |

## U.S. PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| DH | A1 | 3,358,403 | 12/19/67 | Dinsmore | | | 01/28/66 |
| DH | A2 | 3,440,683 | 04/29/69 | Wood | 16 | 197 | 07/17/67 |
| DH | A3 | 4,089,085 | 05/16/78 | Fitzgibbon | 16 | 197 | 03/28/77 |
| DH | A4 | 4,134,234 | 01/16/79 | Wood | 49 | 429 | 02/02/78 |
| DH | A5 | 4,190,930 | 03/04/80 | Prosser | 16 | 197 | 02/17/78 |
| DH | A6 | 4,238,907 | 12/16/80 | Swan | 49 | 446 | 07/10/78 |
| DH | A7 | 4,300,316 | 11/17/81 | Ficurilli | 49 | 445 | 10/17/79 |
| DH | A8 | 4,332,054 | 06/01/82 | Paist et al. | 16 | 197 | 06/09/80 |
| DH | A9 | 4,373,295 | 02/15/83 | Starck | 49 | 435 | 11/12/80 |
| DH | A10 | 4,413,445 | 11/08/83 | Trout | 49 | 445 | 04/28/82 |
| DH | A11 | 4,503,641 | 03/12/85 | Swan | 49 | 445 | 05/23/83 |
| DH | A12 | 4,586,291 | 05/06/86 | Swan | 49 | 501 | 11/23/84 |
| DH | A13 | 4,654,928 | 04/07/87 | Flight | 16 | 199 | 04/11/86 |
| DH | A14 | 4,672,713 | 06/16/87 | Newton et al. | 16 | 197 | 08/04/86 |
| DH | A15 | 4,689,850 | 09/01/87 | Flight | 16 | 197 | 06/30/86 |
| DH | A16 | 4,800,680 | 01/31/89 | Westfall et al. | 49 | 429 | 08/14/87 |
| DH | A17 | 4,914,862 | 04/10/90 | Gregory | 49 | 322 | 09/22/88 |
| DH | A18 | 4,949,425 | 08/21/90 | Dodson et al | 16 | 198 | 10/19/88 |
| DH | A19 | 5,174,064 | 12/29/92 | Stark | 49 | 445 | 03/05/92 |
| DH | A20 | 5,530,991 | 07/02/96 | deNormand et al. | 16 | 198 | 01/21/94 |
| DH | A21 | 5,737,877 | 04/14/98 | Meunier et al. | 49 | 445 | 07/26/96 |
| DH | A22 | 6,041,476 | 03/28/00 | deNormand | 16 | 197 | 11/21/97 |

| EXAMINER | | DATE CONSIDERED | 12 November 2002 |
|---|---|---|---|

2042916_1



PATENT
Attorney Docket No. BSI-015

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
JUN 14 2001
Technology Center 2100

| | | | |
|---|---|---|---|
| APPLICANT(S): | Newman | GROUP NO.: | 3626 |
| SERIAL NO.: | 09/810,868 | EXAMINER: | Not Yet Assigned |
| FILING DATE: | March 16, 2001 | | |
| TITLE: | BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER | | |

Assistant Commissioner for Patents
Washington, D.C. 20231

**TRANSMITTAL OF FORMAL DRAWINGS**

Sir:

Submitted herewith are:

(a)    the formal drawings for this application – Number of Sheets - 10

Respectfully submitted,

Date:  June 7, 2001
Reg. No. 45,349

Joseph P. Sullivan
Attorney for the Applicants
Testa, Hurwitz, & Thibeault, LLP
Tel. No.: (617) 248-7677            High Street Tower
Fax No.: (617) 248-7100            125 High Street
Boston, Massachusetts  02110

VERNONDM\3411\6.2109771_1

C000596

Title: Block and Tackle Window Balance
       with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. BSI-015
Sheet 1 of 10

1/10



FIG. 1

C000597

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/610,868
Atty Docket No. BSI-015
Sheet 2 of 10

2/10



FIG. 2A

C000598

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. BSI-015
Sheet 3 of 10

3/10



FIG. 2B

C000599

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. BSI-015
Sheet 4 of 10

4/10



FIG. 3

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. OSI-015
Sheet 5 of 10

5/10



FIG. 4A

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. DSI-015
Sheet 6 of 10

6/10



FIG. 4B

C000602

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. BSI-015
Sheet 7 of 10

7/10



FIG. 5

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. BSI-015
Sheet 8 of 10

8/10



FIG. 6

C000604



Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 07/810,868
Atty Docket No. BSI-015
Sheet 9 of 10

9/10



FIG. 7B



FIG. 7A

C000605

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Inventor(s): Newman
Serial No. 09/810,868
Atty Docket No. USI-015
Sheet 10 of 10

10/10



FIG. 8B



FIG. 8A

C000606



PATENT
Attorney Docket No. BSI-015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(S):     Newman

SERIAL NO.:       09/810,868          GROUP NO.:       3626

FILING DATE:      March 16, 2001       EXAMINER:        Not Yet Assigned

TITLE:            BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

---

### *CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8*

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to the Assistant Commissioner for Patents, Washington, DC 20231 on this 7th day of June, 2001.

Julie Cipullo

---

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Submitted herewith are:

(1) Transmittal Form (1 page);
(2) Transmittal of Formal Drawings (1 page);
(3) Formal Drawings (10 page); and
(4) Return Receipt Postcard.

VERNONDM\341\6.2109895_1

C000607

OIPE
JUN 1 1 2001
PATENT & TRADEMARK OFFICE

RECEIVED
JUN 14 2001
Technology Center 3600

# TRANSMITTAL FORM

| | |
|---|---|
| Application Serial Number | 09/810,868 |
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Group Art Unit | 3626 |
| Examiner Name | Not Yet Assigned |
| Attorney Docket No. | BSI-015 |

## ENCLOSURES *(check all that apply)*

☐ Fee Transmittal Form
   ☐ Check Attached
   ☐ Copy of Fee Transmittal Form

☐ Amendment/Response
   ☐ Preliminary
   ☐ After Final
   ☐ Affidavits/declaration(s)
   ☐ Letter to Official Draftsperson
   including Drawings
   [Total Sheets _____]

☐ Petition for Extension of Time

☐ Information Disclosure Statement
   ☐ Form PTO-1449
   ☐ Copies of IDS Citations

☐ Certified Copy of Priority Document(s)

☐ Sequence Listing submission
   ☐ Paper Copy/CD
   ☐ Computer Readable Copy
   ☐ Statement verifying identity of above

☐ Copy of Notice to File Missing Parts of Application (PTO-1553)

☒ Formal Drawing(s)

☐ Request For Continued Examination (RCE) Transmittal

☐ Power of Attorney (Revocation of Prior Powers)

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ CD(s) for large table or computer program

☐ Amendment After Allowance

☐ Request for Certificate of Correction
   ☐ Certificate of Correction (in duplicate)

☐ Notice of Appeal to Board of Patent Appeals and Interferences

☐ Appeal Brief (in triplicate)

☐ Status Inquiry

☒ Return Receipt Postcard

☒ Certificate of First Class Mailing under 37 C.F.R. 1.8

☐ Certificate of Facsimile Transmission under 37 C.F.R. 1.8

☒ Additional Enclosure(s) *(please identify below)*

☒ Transmittal of Formal Drawings

## CORRESPONDENCE ADDRESS

Direct all correspondence to:  Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

Date: June 7, 2001
Reg. No. 45,349
Tel. No.: (617) 248-7677
Fax No.: (617) 248-7100

Joseph P. Sullivan
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

VERNONDM\3416.2\09904_1

C000608



95

## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/810,868 | 03/16/2001 | Gary Roger Newman | BSI-015 | 6163 |

21323        7590        09/12/2002

TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA  02110

| EXAMINER |
|---|
| HUTTON JR, WILLIAM D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3676 | |

DATE MAILED: 09/12/2002        #4

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

C000609

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 09/810,868 | NEWMAN, GARY ROGER |
| | Examiner | Art Unit |
| | Doug Hutton | 3676 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>1</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>16 March 2001</u> .

2a)☐  This action is FINAL.    2b)☐  This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) <u>1-13</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☐  Claim(s) _____ is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☒  Claim(s) <u>1-13</u> are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐  The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐  The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐  Certified copies of the priority documents have been received.

      2.☐  Certified copies of the priority documents have been received in Application No. _____ .

      3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☐  Notice of References Cited (PTO-892)
2)☐  Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐  Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .

4)☐  Interview Summary (PTO-413) Paper No(s). _____ .
5)☐  Notice of Informal Patent Application (PTO-152)
6)☐  Other: _____

Application/Control Number: 09/810,868                                    Page 2

Art Unit: 3676

### *Election/Restrictions*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 1-12, drawn to a window balance device, classified in Class 16,

        Subclass 197.

II.     Claim 13, drawn to a method of using a window balance, classified in

        Class 29, Subclass 401.1.

Inventions I and II are related as product and process of use. The inventions can

be shown to be distinct if either or both of the following can be shown: (1) the process

for using the product as claimed can be practiced with another materially different

product or (2) the product as claimed can be used in a materially different process of

using that product (MPEP § 806.05(h)). In the instant case, the process as claimed can

be practiced with another materially different product, such as any window balance that

provides a greater "travel distance" than the original window balance it replaces.

Because these inventions are distinct for the reasons given above and have

acquired a separate status in the art as shown by their different classification, restriction

for examination purposes as indicated is proper.

A telephone call was made to Joseph P. Sullivan on 9 September 2002 to

request an oral election to the above restriction requirement, but did not result in an

election being made.

#4
Restrict.

Application/Control Number: 09/810,868                                    Page 3
Art Unit: 3676

      Any inquiry concerning this communication or earlier communications from the examiner should be directed to Doug Hutton whose telephone number is (703) 305-1701. The examiner can normally be reached on Monday-Friday from 8:00 AM to 5:00 PM.

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Anthony Knight, can be reached at (703) 308-1159. The fax phone number for the organization where this application or proceeding is assigned is (703) 305-7687.

      Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 308-2168.

WDH
September 10, 2002

ANTHONY KNIGHT
SUPERVISORY PATENT EXAMINER
TECH CENTER 3600

C000612



*Amdt. A*
*&B*
*11-6-02*

**PATENT**
Atty. Docket No. BSI-015
(354/48)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT:       Newman

SERIAL NUMBER:   09/810,868         ART UNIT:       3676

FILING DATE:     March 16, 2001     EXAMINER:       W. Hutton, Jr.

TITLE:           BLOCK AND TACKLE WINDOW BALANCE WITH
                 BOTTOM GUIDE ROLLER

Assistant Commissioner for Patents
Washington, D.C. 20231

### PRELIMINARY AMENDMENT AND
### RESPONSE TO RESTRICTION REQUIREMENT

In response to the Office Action, mailed from the U.S. Patent and Trademark Office on

September 12, 2002, for which the shortened period of response is set to expire thereafter on

October 12, 2002, and which has been automatically extended under 37 CFR 1.7 to October 15,

2002, Applicant respectfully requests entry of this response, reconsideration, and withdrawal of

the restriction requirement. Applicant further respectfully requests entry of this Preliminary

Amendment to add claims 14-23.

### PRELIMINARY AMENDMENT

Please add claims 14-23 as follows:

14.     (New) A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel, the

bottom guide comprising:

a bottom guide frame adapted to slide in a jamb pocket when installed in a

window frame; and

a bottom guide roller rotatably mounted to the bottom guide frame.

#5     C000613

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

15. (New) The device of claim 14 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto.

16. (New) The device according to claim 14 wherein at least a portion of the bottom guide is external to the channel when attached thereto.

17. (New) The device according to claim 14 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

18. (New) The device of claim 14 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

19. (New) A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel, the bottom guide comprising:

a bottom guide frame adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted to the bottom guide frame.

20. (New) The device of claim 19 wherein the bottom guide roller is located external to the channel.

21. (New) The device according to claim 19 wherein at least a portion of the bottom guide is external to the channel.

2

C000614

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

22.     (New) The device according to claim 19 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

23.     (New) The device of claim 19 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

---

## RESPONSE

The Office Action, has been carefully considered. The application presently stands subject to a restriction requirement for containing claims directed to two inventions, grouped by the Examiner as follows:

> I.   Claims 1-12, drawn to a window balance device, classified in class 16, subclass 197; and
>
> II.  Claim 13, drawn to a method of using a window balance, classified in class 29, subclass 401.1.

Applicant hereby elects Group I, namely claims 1-12, with traverse, expressly reserving the right to file one or more divisional applications directed to the subject matter of the remaining non-elected claim present in the application.

Applicant respectfully requests reconsideration and withdrawal of the restriction requirement. Applicant submits that the claims are not so unrelated as to constitute such a serious burden on searching and examination as would entail imposition of this restriction requirement.

Applicant also submits a Preliminary Amendment which adds new claims 14-23. Support for the new claims can be found throughout the specification and the claims, as filed. No new matter has been added. Further, these claims, drawn to window balance devices, fall within the scope of the elected invention. Accordingly, these claims can be considered in conjunction with claims 1-12. Applicant has enclosed $222.00 for the additional claims. If any additional fees are due, please charge Deposit Account No. 20-0531.

3

C000615

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

    Applicant respectfully requests reconsideration, withdrawal of the restriction requirement, and examination of all of claims 1-23 on the merits. The Examiner is invited to telephone Applicant's undersigned representative to discuss any outstanding issues.

        Respectfully submitted,

Date: October 15, 2002

        Joseph P. Sullivan
        Attorney for Applicant
        Reg. No.: 45,349

Testa, Hurwitz, & Thibeault, LLP
125 High Street
Boston, Massachusetts 02110

Tel. No.: (617) 248-7677
Fax. No.: (617) 248-7100

JSULLIVA\491\17.2453194_1

4

A

C000616



Applicant: Newman
Serial No.: 09/826,068
Filed: March 16, 2001

RECEIVED
OCT 2 9 2002
GROUP 3600

## MARKED UP COPY OF AMENDED CLAIMS

14.    (New)  A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel, the bottom guide comprising:

a bottom guide frame adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted to the bottom guide frame.

15.    (New)  The device of claim 14 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto.

16.    (New)  The device according to claim 14 wherein at least a portion of the bottom guide is external to the channel when attached thereto.

17.    (New)  The device according to claim 14 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

18.    (New)  The device of claim 14 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

19.    (New)  A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel, the bottom guide comprising:

a bottom guide frame adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted to the bottom guide frame.

5

A

C000617

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

20.    (New)  The device of claim 19 wherein the bottom guide roller is located external to the channel.

21.    (New)  The device according to claim 19 wherein at least a portion of the bottom guide is external to the channel.

22.    (New)  The device according to claim 19 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

23.    (New)  The device of claim 19 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

6

C000618



Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

### CLEAN COPY OF PENDING CLAIMS

1.    A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted to the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein

the first end is fixed relative to the channel and the second end is connected to the

translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded

through the translatable pulley block unit and the fixed pulley block unit and extends

around the bottom guide roller, the first cord end being attached to the translatable

pulley block unit and the second cord end being attachable to a jamb.

2.    The device of claim 1 wherein the bottom guide roller is located external to the channel.

3.    The device according to claim 1 wherein a portion of the bottom guide is external to the channel.

4.    The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash.

5.    The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle.

6.    The device according to claim 5 wherein the axle is located within the frame.

7

C000619

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

7.    The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member.

8.    The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle.

9.    The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel.

10.    The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash.

11.    The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide.

12.    A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted to the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

8

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

13.    A method of providing increased travel of a window sash slidably mounted in a window frame, the method comprising the steps of:

providing a window assembly having a window frame with two jambs with jamb pockets, at least one of an upper window sash and a lower window sash slidably receivable by the jamb pockets, and at least one block and tackle window balance device having a channel with a first end and a second end and a bottom roller mounted proximate the second end for dispensing a cord with a first distance between the first end and the bottom roller;

removing the at least one block and tackle window balance device; and

providing and installing an increased travel window balance device having a channel with a first end and a second end and a bottom guide roller mounted proximate the second end for dispensing a cord with a second distance between the first end and the bottom guide roller, wherein the second distance is greater than the first distance.

14.    A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel, the bottom guide comprising:

a bottom guide frame adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted to the bottom guide frame.

9

C000621

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

15.    The device of claim 14 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto.

16.    The device according to claim 14 wherein at least a portion of the bottom guide is external to the channel when attached thereto.

17.    The device according to claim 14 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

18.    The device of claim 14 wherein the bottom guide further comprises a bottom guide axle for mounting the roller.

19.    A window balance device comprising:
       a channel comprising a first end and a second end;
       a top guide connected to the first end of the channel;
       a bottom guide connected to the second end of the channel, the bottom guide comprising;
              a bottom guide frame adapted to slide in a jamb pocket when installed in a
window frame; and
              a bottom guide roller rotatably mounted to the bottom guide frame.

20.    The device of claim 19 wherein the bottom guide roller is located external to the channel.

21.    The device according to claim 19 wherein at least a portion of the bottom guide is external to the channel.

22.    The device according to claim 19 wherein the bottom guide forms a channel to receive a portion of a window sash when installed.

10

C000622

Applicant: Newman
Serial No.: 09/810,868
Filed: March 16, 2001

23.    The device of claim 19 wherein the bottom guide further comprises a bottom guide axle

for mounting the roller.

C000623



3676

**PATENT**
Attorney Docket No. BSI-015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT(S): | Newman | | |
| SERIAL NO.: | 09/810,868 | GROUP NO.: | 3676 |
| FILING DATE: | March 16, 2001 | EXAMINER: | W. Hutton, Jr. |
| TITLE: | BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER | | |

---

### *CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8*

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to the Commissioner for Patents, Washington, DC 20231 on this 15th day of October, 2002.

*Mary E. Higdon*
Mary V. Higdon

---

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

Submitted herewith is/are:  Transmittal Form (1 pg.); Fee Transmittal Form (1 pg.);
Preliminary Amendment and Response to Restriction Requirement (11 pp.);
a check for $222.00; and Return Receipt Postcard.



JSULLIVA\354\48,2512306_1

| Application Serial Number | 09/810,868 |
|---|---|
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Group Art Unit | 3676 |
| Examiner Name | W. Hutton, Jr. |
| Attorney Docket No. | BSI-015 |
| Patent No. | Not applicable |
| Issue Date | Not applicable |

## TRANSMITTAL FORM

### ENCLOSURES (check all that apply)

| | | |
|---|---|---|
| ☒ Fee Transmittal Form | ☐ Copy of Notice to File Missing Parts of Application (PTO-1553) | ☐ Notice of Appeal to Board of Patent Appeals and Interferences |
| ☒ Check Attached ☐ Copy of Fee Transmittal Form | ☐ Formal Drawing(s) | ☐ Appeal Brief (in triplicate) |
| ☐ Amendment/Response | ☐ Request For Continued Examination (RCE) Transmittal | ☐ Status Inquiry |
| ☐ Preliminary ☐ After Final ☐ Affidavits/declaration(s) ☐ Letter to Official Draftsperson including Drawings [Total Sheets _____] | ☐ Power of Attorney (Revocation of Prior Powers) | ☒ Return Receipt Postcard ☒ Certificate of First Class Mailing under 37 C.F.R. 1.8 |
| | ☐ Terminal Disclaimer | ☐ Certificate of Facsimile Transmission under 37 C.F.R. 1.8 |
| ☐ Petition for Extension of Time | ☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application | ☒ Additional Enclosure(s) (please identify below) |
| ☐ Information Disclosure Statement | ☐ Small Entity Statement | Preliminary Amendment and Response to Restriction Requirement |
| ☐ Form PTO-1449 ☐ Copies of IDS Citations | ☐ CD(s) for large table or computer program | |
| ☐ Certified Copy of Priority Document(s) | ☐ Amendment After Allowance | |
| ☐ Sequence Listing submission ☐ Paper Copy/CD ☐ Computer Readable Copy ☐ Statement verifying identity of above | ☐ Request for Certificate of Correction ☐ Certificate of Correction (in duplicate) | |

| CORRESPONDENCE ADDRESS | SIGNATURE BLOCK |
|---|---|
| Direct all correspondence to: Patent Administrator Testa, Hurwitz & Thibeault, LLP High Street Tower 125 High Street Boston, MA 02110 Tel. No.: (617) 248-7000 Fax No.: (617) 248-7100 | Respectfully submitted, Date: October 15, 2002 Reg. No. 45,349 Tel. No.: (617) 248-7677 Fax No.: (617) 248-7100 Joseph P. Sullivan Attorney for Applicant(s) Testa, Hurwitz & Thibeault, LLP High Street Tower 125 High Street Boston, MA 02110 |

JSULLIVA\354\48.2512290_1

C000625

**FEE TRANSMITTAL**

**FY 2003**

| | Complete if Known |
|---|---|
| Application Serial Number | 09/810,868 |
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Group Art Unit | 3676 |
| Examiner Name | W. Hutton, Jr. |
| Attorney Docket No. | BSI-015 |

## METHOD OF PAYMENT

1. ☒ Payment Enclosed:
   ☒ Check ☐ Money Order ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531.
   ☐ Required Fees (copy of this sheet enclosed).
   ☒ Additional fee required under 37 CFR 1.16 and 1.17.
   ☒ Overpayment Credit.

3. ☐ Applicant claims small entity status.

## FEE CALCULATION

### 1. FILING FEE

**Large Entity**

| Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 740 | Utility filing fee | |
| 330 | Design filing fee | |
| 160 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | - 20 = | | x $ 18.00 = | |
| Independent Claims | - 3 = | | x $ 84.00 = | |
| ☐ Multiple Dependent Claim(s), if any | | | $280.00 = | |

TOTAL:
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)  ($)

### 2. AMENDMENT CLAIM FEES

| | Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|---|
| Total | 23 | - 20 = | 3 | x $ 18.00 = | 54.00 |
| Indep. | 5 | - 3 = | 2 | x $ 84.00 = | 168.00 |
| ☐ First Presentation of Multiple Dep. Claim | | | | + $280.00 = | |

TOTAL: ($)222.00
SMALL ENTITY DISCOUNT: ($)
SUBTOTAL (2)  ($)222.00

### 3. ADDITIONAL FEES

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | Request for ex parte reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 400 | 200 | Extension for reply within second month | |
| 920 | 460 | Extension for reply within third month | |
| 1440 | 720 | Extension for reply within fourth month | |
| 1960 | 980 | Extension for reply within fifth month | |
| 320 | 160 | Notice of Appeal | |
| 320 | 160 | Filing a brief in support of an appeal | |
| 280 | 140 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 180 | 180 | Submission of Information Disclosure Statement | |
| 740 | 370 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 740 | 370 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 100 | 100 | Certificate of Correction for applicant's error | |
| Other fee (Specify) | | | |
| Other fee (Specify) | | | |

SUBTOTAL (3)  ($)

| SUBTOTAL (1) | .00 |
|---|---|
| SUBTOTAL (2) | 222.00 |
| SUBTOTAL (3) | .00 |
| TOTAL  ($) | 222.00 |

RECEIVED OCT 2 9 2002

## CORRESPONDENCE ADDRESS

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

Date: October 15, 2002
Reg. No.: 45,349
Tel. No.: (617) 248-7677
Fax No.: (617) 248-7100

Joseph P. Sullivan
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110

JSULLIVA\354\48.2512210_1

C000626



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/810,368 | 03/16/2001 | Gary Roger Newman | BSI-015 | 6163 |

21323    7590    11/20/2002

TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA  02110

| EXAMINER |
|---|
| HUTTON JR, WILLIAM D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3676 | |

DATE MAILED: 11/20/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/810,868 | NEWMAN, GARY ROGER |
| | Examiner | Art Unit |
| | Doug Hutton | 3676 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>21 October 2002</u> .

2a)☐ This action is FINAL.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) _1-23_ is/are pending in the application.

    4a) Of the above claim(s) _13_ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) _1-12 and 14-23_ is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on _16 March 2001_ is/are: a)☐ accepted or b)☒ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____ .

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)    4)☐ Interview Summary (PTO-413) Paper No(s). _____ .

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)    5)☐ Notice of Informal Patent Application (PTO-152)

3)☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _2_ .    6)☐ Other:

U.S. Patent and Trademark Office
PTO-326 (Rev. 04-01)    Office Action Summary    Part of Paper No. 6

C000628

Application/Control Number: 09/810,868                                          Page 2
Art Unit: 3676

## DETAILED ACTION

### *Election/Restrictions*

Applicant's election of Invention I (Claims 1-12) in Paper No. 5 is acknowledged.
Because applicant did not distinctly and specifically point out the supposed errors in the
restriction requirement, the election has been treated as an election without traverse
(MPEP § 818.03(a)).

Claim 13 is withdrawn from further consideration pursuant to 37 CFR 1.142(b) as
being drawn to a nonelected invention, there being no allowable generic or linking claim.
Election was made **without** traverse in Paper No. 5.

### *Drawings*

Figures 1, 2A, 2B, 3, 7A and 7B should be designated by a legend such as –
PRIOR ART – because only that which is old is illustrated.  See MPEP § 608.02(g).

The drawings are objected to under 37 CFR 1.83(a).  The drawings must show
every feature of the invention specified in the claims.  Therefore, the "bottom guide
*frame*" in Claims 14 and 19 must be shown or the feature(s) canceled from the claim(s).
No new matter should be entered.

A proposed drawing correction or corrected drawings are required in reply to the
Office action to avoid abandonment of the application.  The objection to the drawings
will not be held in abeyance.

#6
1st act

C000629

Application/Control Number: 09/810,868                                    Page 3
Art Unit: 3676

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 1-12 and 14-23 are rejected under 35 U.S.C. 102(b) as being anticipated

by the admitted prior art (Admission).

Claim 1:

Admission discloses a block and tackle window balance device, comprising:

- a channel (205, Figure 2A) comprising a first end (see "first end" at top of
  channel 205, Figure 2A) and a second end (see "second end" at bottom of
  channel 205, Figure 2A);

- a top guide (210, Figure 2B) connected to the first end of the channel;

- a bottom guide (215) connected to the second end of the channel;

- a bottom guide roller (239) rotatably mounted to the bottom guide (bottom guide
  roller 239 is rotatably mounted to bottom guide 215 in that roller 239 is rotatably
  mounted within fixed pulley unit 235, which is fixed to channel 205, which is fixed
  to bottom guide 215; thus, bottom guide roller 239 is "rotatably mounted to"
  bottom guide 215);

- a fixed pulley block unit (235) connected to the channel;

- a translatable pulley block unit (230) moveable within the channel;

Application/Control Number: 09/810,868                    Page 4
Art Unit: 3676

- a spring (220) comprising a first end (221) and a second end (219), wherein the first end is fixed relative to the channel (see Figure 2B) and the second end is connected to the translatable pulley block unit (see Figure 2B); and

- a cord (240) comprising a first cord end (241) and a second cord end (242), wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb (see Figure 2B).

*Claim 2:*

Admission discloses a device, wherein the bottom guide roller is located external to the channel (bottom guide roller 239 is located "external" to channel 205 in that a portion of roller 239, the portion that strikes mounting hook 245 when lower sash 104 is raised, is located outside of channel 205, see Figures 2A and 7A).

*Claim 3:*

Admission discloses a device, wherein a portion of the bottom guide is external to the channel (see Figure 2A).

C000631

Application/Control Number: 09/810,868                                      Page 5
Art Unit: 3676

*Claim 4:*

    Admission discloses a device, wherein the bottom guide forms a channel to
receive a portion of a window sash (see *Applicant's Specification* – Page 5, Paragraph
24, last sentence).


*Claim 5:*

    Admission discloses a device, wherein the fixed pulley block unit comprises a
frame (236, Figure 2B), an axle (237), and at least one pulley rotatable around the axle
(see *Applicant's Specification* – Page 6, Paragraph 26, fifth sentence).


*Claim 6:*

    Admission discloses a device, wherein the axle is located within the frame (see
Figure 2B).


*Claim 7:*

    Admission discloses a device, wherein the fixed pulley block unit is connected to
the channel with a support member (237, Figure 2B).


*Claim 8:*

    Admission discloses a device, wherein the translatable pulley block unit
comprises a frame (225, Figure 2B), an axle (232) within the frame, and at least one

Application/Control Number: 09/810,868                    Page 6
Art Unit: 3676

pulley rotatable around the axle (see *Applicant's Specification* – Page 6, Paragraph 26,

eighth sentence).

### Claim 9:

Admission discloses a device, wherein the top guide includes a top angled

portion and a bottom portion, the bottom portion being connected to the first end of the

channel (see Figure 2B).

### Claim 10:

Admission discloses a device, wherein the fixed pulley block unit is sized to

receive a member of a window sash (see *Applicant's Specification* – Page 6, Paragraph

26, last sentence).

### Claim 11:

Admission discloses a device, wherein the fixed pulley block unit is integral with

the bottom guide (see Figure 2B).

### Claim 12:

Admission discloses a window assembly, comprising:

- a window frame (102, Figure 1) with two jambs (107) with jamb pockets (108);

C000633

Application/Control Number: 09/810,868                          Page 7
Art Unit: 3676

- at least one of an upper window sash (106) and a lower window sash (104)

  slidably receivable in the jamb pockets (see *Applicant's Specification* – Page 5,

  Paragraph 22, fourth sentence); and

- at least one block and tackle window balance device attached to the at least one

  of the upper window sash and the lower window sash (see *Applicant's*

  *Specification* – Page 5, Paragraph 24, second sentence), the device comprising:

  o a channel (205, Figure 2A) comprising a first end (see "first end" at top of

    channel 205, Figure 2A) and a second end (see "second end" at bottom of

    channel 205, Figure 2A);

  o a top guide (210, Figure 2B) connected to the first end of the channel;

  o a bottom guide (215) connected to the second end of the channel;

  o a bottom guide roller (239) rotatably mounted to the bottom guide (bottom

    guide roller 239 is rotatably mounted to bottom guide 215 in that roller 239

    is rotatably mounted within fixed pulley unit 235, which is fixed to channel

    205, which is fixed to bottom guide 215; thus, bottom guide roller 239 is

    "rotatably mounted to" bottom guide 215);

  o a fixed pulley block unit (235) connected to the channel;

  o a translatable pulley block unit (230) moveable within the channel;

  o a spring (220) comprising a first end (221) and a second end (219),

    wherein the first end is fixed relative to the channel (see Figure 2B) and

    the second end is connected to the translatable pulley block unit (see

    Figure 2B); and

C000634

   o  a cord (240) comprising a first cord end (241) and a second cord end (242), wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb (see Figure 2B).

*Claim 14:*

Admission discloses a window balance device, comprising:

- a bottom guide (215, Figure 2B) adapted to be connected to an end (see "end" at bottom of channel 205, Figure 2A) of a window balance channel (205, Figure 2A), the bottom guide comprising:

   o  a bottom guide frame (see Figure 3) adapted to slide in a jamb pocket when installed in a window frame (see *Applicant's Specification* – Page 5, Paragraph 24, last sentence); and

   o  a bottom guide roller (239, Figure 2B) rotatably mounted to the bottom guide frame (bottom guide roller 239 is rotatably mounted to bottom guide frame in that roller 239 is rotatably mounted within fixed pulley unit 235, which is fixed to channel 205, which is fixed to bottom guide 215; thus, bottom guide roller 239 is "rotatably mounted to" bottom guide frame).

Application/Control Number: 09/810,868                              Page 9
Art Unit: 3676

*Claim 15:*

    Admission discloses a device, wherein the bottom guide roller is located external

to the channel when the bottom guide is attached thereto (bottom guide roller 239 is

located "external" to channel 205 in that a portion of roller 239, the portion that strikes

mounting hook 245 when lower sash 104 is raised, is located outside of channel 205,

see Figures 2A and 7A).


*Claim 16:*

    Admission discloses a device, wherein a portion of the bottom guide is external

to the channel when attached thereto (see Figure 2A).


*Claim 17:*

    Admission discloses a device, wherein the bottom guide forms a channel to

receive a portion of a window sash when installed (see *Applicant's Specification* – Page

5, Paragraph 24, last sentence).


*Claim 18:*

    Admission discloses a device, wherein the bottom guide further comprises a

bottom guide axle (216, Figure 2B).

    Part of the claim indicates that the bottom guide axle is "for mounting the roller."

This phrase does not limit the bottom guide axle because it describes a functional

feature of the axle. Claims directed to apparatus must be distinguished from the prior

Application/Control Number: 09/810,868                                    Page 10

Art Unit: 3676

art in terms of structure rather than function. *In re Danly*, 263 F.2d 844, 847, 120 USPQ

528, 531 (CCPA 1959).


*Claim 19:*

Admission discloses a window balance device, comprising:

- a channel (205, Figure 2A) comprising a first end (see "first end" at top of

  channel 205, Figure 2A) and a second end (see "second end" at bottom of

  channel 205, Figure 2A);

- a top guide (210, Figure 2B) connected to the first end of the channel;

- a bottom guide (215) connected to the second end of the channel, the bottom

  guide comprising:

  o a bottom guide frame (see Figure 3) adapted to slide in a jamb pocket

    when installed in a window frame (see *Applicant's Specification* – Page 5,

    Paragraph 24, last sentence); and

  o a bottom guide roller (239, Figure 2B) rotatably mounted to the bottom

    guide frame (bottom guide roller 239 is rotatably mounted to bottom guide

    frame in that roller 239 is rotatably mounted within fixed pulley unit 235,

    which is fixed to channel 205, which is fixed to bottom guide 215; thus,

    bottom guide roller 239 is "rotatably mounted to" bottom guide frame).

Application/Control Number: 09/810,868                                    Page 11
Art Unit: 3676

*Claim 20:*

    Admission discloses a device, wherein the bottom guide roller is located external to the channel (bottom guide roller 239 is located "external" to channel 205 in that a portion of roller 239, the portion that strikes mounting hook 245 when lower sash 104 is raised, is located outside of channel 205, see Figures 2A and 7A).

*Claim 21:*

    Admission discloses a device, wherein a portion of the bottom guide is external to the channel (see Figure 2A).

*Claim 22:*

    Admission discloses a device, wherein the bottom guide forms a channel to receive a portion of a window sash when installed (see *Applicant's Specification* – Page 5, Paragraph 24, last sentence).

*Claim 23:*

    Admission discloses a device, wherein the bottom guide further comprises a bottom guide axle (216, Figure 2B).

    Part of the claim indicates that the bottom guide axle is "for mounting the roller." This phrase does not limit the bottom guide axle because it describes a functional feature of the axle.  Claims directed to apparatus must be distinguished from the prior

C000638

Application/Control Number: 09/810,868                                    Page 12
Art Unit: 3676

art in terms of structure rather than function. *In re Danly*, 263 F.2d 844, 847, 120 USPQ
528, 531 (CCPA 1959).

Claims 1-12 and 14-23 are rejected under 35 U.S.C. 102(b) as being anticipated
by Fitzgibbon, U.S. Patent No. 4,089,085.

*Claim 1:*

Fitzgibbon discloses a block and tackle window balance device (20, Figure 1),
comprising:

- a channel (30) comprising a first end (see "first end" at top of channel 30, Figure
  1) and a second end (see "second end" at bottom of channel 30, Figure 1);

- a top guide (36) connected to the first end of the channel;

- a bottom guide (40) connected to the second end of the channel;

- a bottom guide roller (125, Figure 5) rotatably mounted to the bottom guide
  (bottom guide roller 125 is rotatably mounted to bottom guide 40 in that roller 125
  is rotatably mounted within a fixed pulley unit, which is fixed to channel 30, which
  is fixed to bottom guide 40; thus, bottom guide roller 125 is "rotatably mounted to"
  bottom guide 40);

- a fixed pulley block unit (see "fixed pulley block unit," Figures 5-8) connected to
  the channel (see Figure 1);

- a translatable pulley block unit (see "translatable pulley block unit," Figures 3-4)
  moveable within the channel (see Figure 1);

Application/Control Number: 09/810,868                                    Page 13
Art Unit: 3676

- a spring (70, Figure 1) comprising a first end (see "first end" at top of spring 70,

  Figure 1) and a second end (see "second end" at bottom of spring 70, Figure 1),

  wherein the first end is fixed relative to the channel (see Figure 1) and the

  second end is connected to the translatable pulley block unit (see Figure 1); and

- a cord (54) comprising a first cord end (60) and a second cord end (52), wherein

  the cord is threaded through the translatable pulley block unit and the fixed pulley

  block unit and extends around the bottom guide roller (Column 5, Lines 15-19),

  the first cord end being attached to the translatable pulley block unit (see Figure

  1) and the second cord end being attachable to a jamb (see Figure 1).

*Claim 2:*

Fitzgibbon discloses a device, wherein the bottom guide roller is located external
to the channel (bottom guide roller 125 is located "external" to channel 30 in that a
portion of roller 125 is located outside of channel 30, see Figure 1).

*Claim 3:*

Fitzgibbon discloses a device, wherein a portion of the bottom guide is external
to the channel (see Figure 1).

*Claim 4:*

Fitzgibbon discloses a device, wherein the bottom guide forms a channel to
receive a portion of a window sash (see Figure 1).

Application/Control Number: 09/810,868    Page 14
Art Unit: 3676

*Claim 5:*

Fitzgibbon discloses a device, wherein the fixed pulley block unit comprises a frame (56, Figure 1), an axle (158, Figure 8), and at least one pulley (124) rotatable around the axle.

*Claim 6:*

Fitzgibbon discloses a device, wherein the axle is located within the frame (see Figure 8).

*Claim 7:*

Fitzgibbon discloses a device, wherein the fixed pulley block unit is connected to the channel with a support member (76, Figure 1).

*Claim 8:*

Fitzgibbon discloses a device, wherein the translatable pulley block unit comprises a frame (64, Figure 1), an axle (see "axle," Figures 3 and 4) within the frame, and at least one pulley (96, Figure 3) rotatable around the axle.

*Claim 9:*

Fitzgibbon discloses a device, wherein the top guide includes a top angled portion (36, Figure 1) and a bottom portion (see "bottom portion," Figure 1), the bottom portion being connected to the first end of the channel (see Figure 1).

C000641

Application/Control Number: 09/810,868                          Page 15
Art Unit: 3676

*Claim 10:*

Fitzgibbon discloses a device, wherein the fixed pulley block unit is sized to receive a member of a window sash (see Figure 1).

*Claim 11:*

Fitzgibbon discloses a device, wherein the fixed pulley block unit is integral with the bottom guide (see Figure 1).

*Claim 12:*

Fitzgibbon discloses a window assembly, comprising:

- a window frame with two jambs with jamb pockets (Column 4, Lines 36-44);

- at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets (Column 4, Lines 36-44); and

- at least one block and tackle window balance device attached to the at least one of the upper window sash the lower window sash (Column 4, Lines 36-44), the device comprising:

  - a channel (30, Figure 1) comprising a first end (see "first end" at top of channel 30, Figure 1) and a second end (see "second end" at bottom of channel 30, Figure 1);

  - a top guide (36) connected to the first end of the channel;

  - a bottom guide (40) connected to the second end of the channel;

Application/Control Number: 09/810,868                                    Page 16
Art Unit: 3676

- o   a bottom guide roller (125, Figure 5) rotatably mounted to the bottom
     guide (bottom guide roller 125 is rotatably mounted to bottom guide 40 in
     that roller 125 is rotatably mounted within a fixed pulley unit, which is fixed
     to channel 30, which is fixed to bottom guide 40; thus, bottom guide roller
     125 is "rotatably mounted to" bottom guide 40);

- o   a fixed pulley block unit (see "fixed pulley block unit," Figures 5-8)
     connected to the channel (see Figure 1);

- o   a translatable pulley block unit (see "translatable pulley block unit,"
     Figures 3-4) moveable within the channel (see Figure 1);

- o   a spring (70, Figure 1) comprising a first end (see "first end" at top of
     spring 70, Figure 1) and a second end (see "second end" at bottom of
     spring 70, Figure 1), wherein the first end is fixed relative to the channel
     (see Figure 1) and the second end is connected to the translatable pulley
     block unit (see Figure 1); and

- o   a cord (54) comprising a first cord end (60) and a second cord end (52),
     wherein the cord is threaded through the translatable pulley block unit and
     the fixed pulley block unit and extends around the bottom guide roller
     (Column 5, Lines 15-19), the first cord end being attached to the
     translatable pulley block unit (see Figure 1) and the second cord end
     being attachable to a jamb (see Figure 1).

Application/Control Number: 09/810,868                                    Page 17
Art Unit: 3676

*Claim 14:*

    Fitzgibbon discloses a window balance device (20, Figure 1), comprising:

- a bottom guide (40, Figure 1) adapted to be connected to an end (see "end" at bottom of channel 30, Figure 1) of a window balance channel (30), the bottom guide comprising:

  - a bottom guide frame (see Figure 1) adapted to slide in a jamb pocket when installed in a window frame (see Figure 1); and

  - a bottom guide roller (125, Figure 5) rotatably mounted to the bottom guide frame (bottom guide roller 125 is rotatably mounted to bottom guide frame in that roller 125 is rotatably mounted within a fixed pulley unit, which is fixed to channel 30, which is fixed to bottom guide frame; thus, bottom guide roller 125 is "rotatably mounted to" bottom guide frame).

*Claim 15:*

    Fitzgibbon discloses a device, wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto (bottom guide roller 125 is located "external" to channel 30 in that a portion of roller 125 is located outside of channel 30, see Figure 1).

*Claim 16:*

    Fitzgibbon discloses a device, wherein a portion of the bottom guide is external to the channel when attached thereto (see Figure 1).

Application/Control Number: 09/810,868                                    Page 18
Art Unit: 3676

*Claim 17:*

      Fitzgibbon discloses a device, wherein the bottom guide forms a channel to receive a portion of a window sash when installed (see Figure 1).


*Claim 18:*

      Fitzgibbon discloses a device, wherein the bottom guide further comprises a bottom guide axle (42, Figure 1).

      Part of the claim indicates that the bottom guide axle is "for mounting the roller." This phrase does not limit the bottom guide axle because it describes a functional feature of the axle. Claims directed to apparatus must be distinguished from the prior art in terms of structure rather than function. *In re Danly*, 263 F.2d 844, 847, 120 USPQ 528, 531 (CCPA 1959).


*Claim 19:*

      Fitzgibbon discloses a window balance device (20, Figure 1), comprising:

- a channel (30) comprising a first end (see "first end" at top of channel 30, Figure 1) and a second end (see "second end" at bottom of channel 30, Figure 1);
- a top guide (36) connected to the first end of the channel;
- a bottom guide (40) connected to the second end of the channel, the bottom guide comprising:
  - o a bottom guide frame (see Figure 1) adapted to slide in a jamb pocket when installed in a window frame (see Figure 1); and

C000645

Application/Control Number: 09/810,868                          Page 19
Art Unit: 3676

      o   a bottom guide roller (125, Figure 5) rotatably mounted to the bottom

guide frame (bottom guide roller 125 is rotatably mounted to bottom guide

frame in that roller 125 is rotatably mounted within a fixed pulley unit,

which is fixed to channel 30, which is fixed to bottom guide frame; thus,

bottom guide roller 125 is "rotatably mounted to" bottom guide frame).


Claim 20:

    Fitzgibbon discloses a device, wherein the bottom guide roller is located external

to the channel (bottom guide roller 125 is located "external" to channel 30 in that a

portion of roller 125 is located outside of channel 30, see Figure 1).


Claim 21:

    Fitzgibbon discloses a device, wherein a portion of the bottom guide is external

to the channel (see Figure 1).


Claim 22:

    Fitzgibbon discloses a device, wherein the bottom guide forms a channel to

receive a portion of a window sash when installed (see Figure 1).


Claim 23:

    Fitzgibbon discloses a device, wherein the bottom guide further comprises a

bottom guide axle (42, Figure 1).

Part of the claim indicates that the bottom guide axle is "for mounting the roller." This phrase does not limit the bottom guide axle because it describes a functional feature of the axle. Claims directed to apparatus must be distinguished from the prior art in terms of structure rather than function. *In re Danly*, 263 F.2d 844, 847, 120 USPQ 528, 531 (CCPA 1959).

### *Allowable Subject Matter*

The following claim, drafted by the examiner and considered to distinguish patentably over the art of record in this application, is presented to applicant for consideration:

A window balance device, comprising:

- a bottom guide connected to an end of a window balance channel, said bottom guide slidable in a jamb pocket when installed in a window frame, said bottom guide including:
    - o a bottom guide axle mounted within the bottom guide, said bottom guide axle located outside the window balance channel; and
    - o a bottom guide roller rotatably mounted on the bottom guide axle.

C000647

Application/Control Number: 09/810,868                    Page 21
Art Unit: 3676

### Conclusion

The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure: Wood, U.S. Patent No. 3,114,178; and Biro, U.S. Patent No.

3,449,862.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Doug Hutton whose telephone number is (703) 305-1701. The examiner can normally be reached on Monday-Friday from 8:00 AM to 5:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Anthony Knight, can be reached at (703) 308-1159. The fax phone number for the organization where this application or proceeding is assigned is (703) 305-7687.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 308-2168.

WDH
November 15, 2002

ANTHONY KNIGHT
SUPERVISORY PATENT EXAMINER
TECH CENTER 3600

C000648

| | Application/Control No. | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|
| ***Notice of References Cited*** | 09/810,666 | NEWMAN, GARY ROGER | |
| | Examiner | Art Unit | |
| | Doug Hutton | 3676 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| A | | US-3,114,176 | 12-1963 | Wood, Edward H. | 49/446 |
| B | | US-3,449,862 | 06-1969 | Biro, Alexander J. | 49/406 |
| C | | US- | | | |
| D | | US- | | | |
| E | | US- | | | |
| F | | US- | | | |
| G | | US- | | | |
| H | | US- | | | |
| I | | US- | | | |
| J | | US- | | | |
| K | | US- | | | |
| L | | US- | | | |
| M | | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)      Notice of References Cited      Part of Paper No. 6

C000050

Express Mail Mailing Label No. EL934409394US

**PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)**

| Attorney Docket Number | BSI-015 |
| --- | --- |

In re Application of Newman

Application Serial No. 09/810,868

Filed: March 16, 2001

| Group Art Unit: 3676 | Examiner: W. Hutton, Jr. |
| --- | --- |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a response in the above entitled application.

The requested extension and appropriate non-small-entity fee are as follows (check time period desired)

☒ a. One month (37 CFR 1.17(a)(1))  $ 110.00
☐ Two months (37 CFR 1.17(a)(2))  $
☐ Three months (37 CFR 1.17(a)(3))  $
☐ Four months (37 CFR 1.17(a)(4))  $
☐ Five months (37 CFR 1.17(a)(5))  $

☐ Applicant claims small entity status under 37 CFR 1.27, therefore the fee amount shown above is reduced by one-half, and the resulting fee is: $

☐ A check in the amount of $ _____ is enclosed.

☒ The Commissioner is hereby authorized to charge the required fee to Deposit Account No. 20-0531. Enclosed is a duplicate of this sheet.

☒ The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Deposit Account No. 20-0531.

☐ Return receipt postcard enclosed.

I am the
☐ assignee of record of the entire interest.
☒ attorney or agent of record.
☐ attorney or agent acting under 37 CFR 1.34(a).
Registration number if acting under 37 CFR 1.34(a).

**CORRESPONDENCE ADDRESS**
Direct all correspondence to: Patent Administrator
Testa, Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

**SIGNATURE BLOCK**
Respectfully submitted,
John V Forcier
Reg. No. 42,545
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7375
Fax No.: (617) 248-7100
Date: March 20, 2003

2597282

RECEIVED MAR 2 4 2003 GROUP 3600

MAR 2 0 2003

C000651

# TRANSMITTAL FORM

RECEIVED MAR 2 7 2003 GROUP 3600

| | |
|---|---|
| Application Serial Number | 09/810,868 |
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Group Art Unit | 3676 |
| Examiner Name | W. Ilunton, Jr. |
| Attorney Docket No. | BSI-015 |
| BATCH NO. (after allowance) | Not applicable |
| Patent No. | Not applicable |
| Issue Date | Not applicable |

Express Mail Mailing Label No. EL934409394US

## ENCLOSURES (check all that apply)

☐ Notice of Appeal to Board of Patent Appeals and Interferences

☐ Appeal Brief (in triplicate)

☐ Status Inquiry

☒ Return Receipt Postcard

☐ Certificate of First Class Mailing under 37 C.F.R. 1.8

☐ Certificate of Facsimile Transmission under 37 C.F.R. 1.8

☐ Additional Enclosure(s) (please identify below)

☐ Copy of Notice to File Missing Parts of Application (PTO-1533)

☐ Formal Drawing(s)

☐ Request For Continued Examination (RCE) Transmittal

☐ Associate Power of Attorney

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ CD(s) for large table or computer program

☐ Amendment After Allowance

☐ Request for Certificate of Correction

☐ Certificate of Correction (in duplicate)

☒ Fee Transmittal Form

☒ Check Attached Copy of Fee Transmittal Form

☒ Amendment/Response
 ☐ After Final
 ☐ Preliminary

☐ Affidavit/declaration(s)

☒ Including Drawings [Total Sheets 6]

☒ Petition for Extension of Time

☐ Information Disclosure Statement
 ☐ Form PTO-1449
 ☐ Copies of IDS Citations

☐ Certified Copy of Priority Documents(s)

☐ Sequence Listing submission
 ☐ Paper Copy/CD
 ☐ Computer Readable Copy
 ☐ Statement verifying identity of above

## CORRESPONDENCE ADDRESS

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
125 High Street
High Street Tower
Boston, MA 02110
Tel. No: (617) 248-7000
Fax No: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

_[signature]_

John V. Poirier
Reg. No. 42,545
Date: March 20, 2003
Testa, Hurwitz & Thibeault, LLP
Attorney for Applicants
High Street Tower
125 High Street
Tel. No: (617) 248-7675
Fax No: (617) 248-7100
Boston, MA 02110

2597289

CC000652

1297277

Express Mail Mailing Label No. EL934409394US

**FEE TRANSMITTAL**
**FY 2003**



Complete if Known

| | |
|---|---|
| Application Serial Number | 09/810,868 |
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Examiner Name | W. Hutton, Jr. |
| Group Art Unit | 3676 |
| Attorney Docket No. | BSI-015 |

**METHOD OF PAYMENT**

1. ☒ Payment Enclosed:
   ☐ Check   ☒ Money Order   ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531.
   ☒ Required Fees (copy of this sheet enclosed).
   ☐ Additional fee required under 37 CFR 1.16 and 1.17.
   ☐ Overpayment Credit.

3. ☐ Applicant claims small entity status.

**FEE CALCULATION**

**1. FILING FEE**

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 750 | 375 | Utility filing fee | |
| 330 | 165 | Design filing fee | |
| 160 | 80 | Provisional filing fee | |

| | Fee from below | Number Filed | Rate | Extra | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | | – 20 = | X $ 18.00 = | | |
| Independent Claims | | – 3 = | X $ 84.00 = | | |
| ☐ Multiple Dependent Claim(s), if any | +$280.00 = | | | | |

TOTAL:
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)    ($)

**2. AMENDMENT CLAIM FEES**

| | Claims Remaining After Amendment | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|---|
| Total | | | X $ 18.00 = | | |
| Indep. | | | X $ 84.00 = | | |
| ☐ First Presentation of Multiple Dep. Claim | +$280.00 = | | | | |

TOTAL:
SMALL ENTITY DISCOUNT:    ($)
SUBTOTAL (2)    ($)

**3. ADDITIONAL FEES**

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge – late filing fee or oath | |
| 50 | 25 | Surcharge – late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | Request for ex parte reexamination | |
| 110 | 55 | Extension for reply within first month | 110.00 |
| 410 | 205 | Extension for reply within second month | |
| 930 | 465 | Extension for reply within third month | |
| 1450 | 725 | Extension for reply within fourth month | |
| 1970 | 985 | Extension for reply within fifth month | |
| 320 | 160 | Notice of Appeal | |
| 320 | 160 | Filing a brief in support of an appeal | |
| 280 | 140 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 180 | 180 | Submission of Information Disclosure Stmt | |
| 750 | 375 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 750 | 375 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 100 | 100 | Certificate of Correction for applicant's error | |
| | | Other fee (Specify) | |
| | | Other fee (Specify) | |

SUBTOTAL (3)    ($) 110.00

SUBTOTAL (1)    0.00
SUBTOTAL (2)    0.00
SUBTOTAL (3)    110.00
TOTAL    ($) 110.00

**SIGNATURE BLOCK**

Respectfully submitted,

John V. Forcier
Reg. No.: 42,345

Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower–125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7100
Fax No.: (617) 248-7675

Date: March 20, 2003

**CORRESPONDENCE ADDRESS**

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower–125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

RECEIVED
MAR 27 2003
GROUP 3600

Express Mail Mailing Label No. EL934409394US

#8  Amdt. β
BtB
4-2-03

**PATENT**
Atty. Docket No. BSI-015
(354/48)

OIPE
MAR 2 0 2003
PATENT & TRADEMARK

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT: | Newman | CONFIRMATION NO.: | 6163 |
| SERIAL NUMBER: | 09/810,868 | ART UNIT: | 3676 |
| FILING DATE: | March 16, 2001 | EXAMINER: | W. Hutton, Jr. |
| TITLE: | BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER | | |

Commissioner for Patents
Washington, DC 20231

RECEIVED
MAR 27 2003
GROUP 3600

### AMENDMENT AND RESPONSE

This paper is submitted in response to a pending Office action, Paper No. 6, mailed from the U.S. Patent and Trademark Office on November 20, 2002.

Applicant respectfully requests entry of the following amendments, reconsideration and withdrawal of all grounds of objection and rejection, and passage of the claims to allowance.

Please amend the application, without prejudice, and consider the following remarks.

In the Drawings:

Replace existing sheets 1-4, 8, and 9 of the drawings depicting FIGS. 1, 2A, 2B, 3, 6, 7A, and 7B with the enclosed proposed sheets 1-4, 8, and 9 of the drawings with amended FIGS. 1, 2A, 2B, 3, 6, 7A, and 7B.

In the Claims:

Please cancel claim 13, amend claims 1, 12, 14, and 19, and add claim 24 to read as follows. In accordance with 37 C.F.R. § 1.121(c)(1)(ii), a marked up version of the claim

Amendment and Response
Serial No.: 09/810,868

amendments is attached at the end of this Amendment and Response.

 1.    (Amended) A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

12.    (Amended) A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is

2

C000654

Amendment and Response
Serial No.: 09/810,868

threaded through the translatable pulley block unit and the fixed pulley block unit and extends
around the bottom guide roller, the first cord end being attached to the translatable pulley block
unit and the second cord end being attachable to a jamb.

14. (Amended) A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel and
adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

19. (Amended) A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel and adapted to slide in a jamb
pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

24. (New) A window balance device comprising:

a bottom guide connected to an end of a window balance channel, the bottom guide
slidable in a jamb pocket when installed in a window frame, the bottom guide including:

a bottom guide axle mounted within the bottom guide, the bottom guide axle
located outside the window balance channel; and

a bottom guide roller rotatably mounted on the bottom guide axle.

## REMARKS

Applicant appreciates the Examiner's courtesy in conducting the telephonic interview
with Applicant's undersigned representative on March 18, 2003. During the interview, the
Examiner called attention to FIG. 4 of U.S. Patent Number 3,449,862 to Biro (hereinafter
"Biro"). After careful review of Biro, Applicant considers that the amended claims are
patentable over Biro. Specifically, Applicant notes that "[t]he lower support slide 125 is secured
to the lower end of the counterbalance housing by the rivets 134 and is provided with a toe

3

C000655

Amendment and Response
Serial No.: 09/810,868

portion 135 having an inclined surface 136. A shoe 137 is provided on the opposite side of the

toe 135 of the supporting slide 125 to engage the panel 101 of the sash channel 102." See

column 13, lines 4-9, of Biro. Biro is silent with respect to the location and mounting details of

the "bottom guide roller" (unnumbered) relative to the support slide 125; however, as shown in

FIG. 4, the roller appears to be mounted to the counterbalance housing 114 above the lower

support slide 125, not in the lower support slide 124. The lower support slide 125 is held in

place by the rivets 134 and appears to terminate below the axis of the roller. See also, for

example, FIGS. 2A and 2B of Applicant's specification. Accordingly, Biro fails to disclose or

suggest "a bottom guide roller rotatably mounted in the bottom guide."

The drawings are objected to for failing to designate FIGS. 1, 2A, 2B, 3, 7A, and 7B as

prior art, and for not showing every feature specified in the claims. Claims 1-12, and 14-23 are

rejected under 35 U.S.C. § 102(b) as being anticipated by admitted prior art[1] and U. S. Patent

Number 4,089,085 to Fitzgibbon (hereinafter "Fitzgibbon").

Applicant hereby cancels claim 13, amends independent claims 1, 12, 14, and 19, and

adds claim 24. Claims 1, 12, 14, and 19 are amended to more clearly define the subject matter of

Applicant's invention. Specifically, the claims are amended to clarify that the bottom guide

roller is rotatably mounted in the bottom guide. Claims 14 and 19 are further amended to remove

reference to the bottom guide frame. New claim 24 incorporates the subject matter indicated as

allowable by the Examiner. Support for claim 24 can be found at least at page 8, paragraph

0029. No new matter has been entered thereby.

---

[1] Applicant does not necessarily agree with statements in the Office action regarding the admitted prior art, other
than that shown in Applicant's figures designated as such.

4

Amendment and Response
Serial No.: 09/810,868

Claims 1-12, and 14-23 are currently pending and presented for reconsideration. Claim 24 is presented for examination. In view of the above amendments and following remarks, reconsideration and withdrawal of all grounds of objection and rejection are respectfully requested.

1.    The drawings are objected to for failing to designate FIGS. 1, 2A, 2B, 3, 7A, and 7B as prior art. The drawings are also objected to for not showing every feature specified in the claims, specifically the bottom guide "frame" recited in claims 14 and 19.

FIG. 1 is amended to include the legend "PRIOR ART" and to add a missing vertical line to the bottom window sash. The vertical line was shown in the originally filed informal FIG. 1. FIGS. 2A, 2B, 3, 7A, and 7B are also amended to include the legend "PRIOR ART." FIG. 6 is amended to be consistent with originally filed FIGS. 4A, 4B, 8A, and 8B. Approval of the proposed changes is respectfully requested. No new matter is being entered thereby.

Claims 14 and 19 were amended to remove the reference to the bottom guide "frame", thereby rendering the second objection moot.

Accordingly, Applicant respectfully requests reconsideration and withdrawal of the objection to the drawings.

2.    Claims 1-12, and 14-23 are rejected under 35 U.S.C. § 102(b) as being anticipated by admitted prior art and to Fitzgibbon.

Applicant has amended independent claims 1, 12, 14, and 19 to recite that the "bottom guide roller [is] rotatably mounted **in** the bottom guide." None of the prior art of record teaches or suggests a bottom guide roller rotatably mounted in a bottom guide.

5

C000657

Amendment and Response
Serial No.: 09/810,868

For at least this reason, Applicant respectfully submits that independent claims 1, 12, 14, and 19 as amended, are patentable over Fitzgibbon and any other prior art of record. Because claims 2-11, 15-18, and 20-23 depend, either directly or indirectly, from amended independent claims 1, 14, and 19, respectively, Applicant submits that these claims are patentable as well.

Accordingly, Applicant respectfully requests reconsideration and withdrawal of the rejection of claims 1-12 and 14-23 under 35 U.S.C. § 102(b) as being anticipated by the admitted prior art and Fitzgibbon.

3.    New independent claim 24 includes the subject matter indicated as allowable by the Examiner. Applicant appreciates the Examiner's suggestion and respectfully requests allowance of claim 24 in due course.

## CONCLUSION

In view of the foregoing, Applicant respectfully requests reconsideration, withdrawal of all grounds of objection and rejection, approval of the proposed drawing changes, and allowance of claims 1-12 and 14-24 in due course. The Examiner is invited to contact Applicant's undersigned representative by telephone at the number listed below to discuss any outstanding issues.

Respectfully submitted,

Date: March 20, 2003
Reg. No. 42,545
Tel. No. (617) 248-7675
Fax No. (617) 790-0100

John V. Forcier
Attorney for Applicant
Testa, Hurwitz, & Thibeault, LLP
125 High Street
Boston, MA  02110

2595440_1

6

Amendment and Response
Serial No.: 09/810,868

## MARKED UP VERSION OF CLAIMS SHOWING AMENDMENTS

1.    (Amended) A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted [to] in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

12.    (Amended) A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted [to] in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed

7

C000659

relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

14.    (Amended) A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel[, the **bottom guide comprising:  a bottom guide frame**] <u>and</u> adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted [to] <u>in</u> the bottom guide[ frame].

19.    (Amended) A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel[, **the bottom guide comprising:  a bottom guide frame**] <u>and</u> adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted [to] <u>in</u> the bottom guide[ frame].

8

C000660



Title: Block and Tackle Window Balance
with Bottom Guide Roller
Atty Docket No. BSI-015
U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US

1/10



Approved
DH
4/3/03

PRIOR ART

FIG. 1

C000661



Title: Block and Tackle Window Balance
with Bottom Guide Roller
Atty Docket No. BSI-015
U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US
2/10



Approved
BH
4/3/03



200

210
202
212        203
218        221
           220
           207
208
           225
           230
205        240
           245
           242
235
239
243
216
215    PRIOR ART

# FIG. 2A

Title: Block and Tackle Window Balance
with Bottom Guide Roller
 Atty Docket No. BSI-015
U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US

3/10







PRIOR ART

## FIG. 2B



Title:    ck and Tackle Window Balance
with ?    om Guide Roller
   Atty Docket No. BSI-015
   U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US

4/10

Approved
DH
4/3/03



PRIOR ART

FIG. 3

C000664



Title: Block and Tackle Window Balance
with Bottom Guide Roller
Atty Docket No. BSI-015
U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US
8/10





**FIG. 6**

C000665

Title: Block and Tackle Window Balance
with Bottom Guide Roller
Atty Docket No. BSI-015
U.S.S.N. 09/810,868    Inventor: Newman
Atty: John V. Forcier
Express Mail Label. EL934409394US

9/10



PRIOR ART

FIG. 7B

PRIOR ART

FIG. 7A

C000666

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 09/810,868 | NEWMAN, GARY, ROGER |
| | Examiner | Art Unit |
| | Doug Hulton | 3676 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address*--

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Paper No. 8*.

2. ☒ The allowed claim(s) is/are *1-12 and 14-24*.

3. ☒ The drawings filed on *20 March 2003* are accepted by the Examiner.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

5. ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    (a) ☐ The translation of the foreign language provisional application has been received.

6. ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE**

7. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

8. ☐ CORRECTED DRAWINGS must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No. _____ .

    (b) ☐ including changes required by the proposed drawing correction filed _____ , which has been approved by the Examiner.

    (c) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No: _____ .

    Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the top margin (not the back) of each sheet. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

9. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1 ☐ Notice of References Cited (PTO-892)

2 ☐ Notice of Informal Patent Application (PTO-152)

3 ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

4 ☐ Interview Summary (PTO-413), Paper No. _____ .

5 ☐ Information Disclosure Statements (PTO-1449), Paper No. _____ .

6 ☐ Examiner's Amendment/Comment

7 ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

8 ☒ Examiner's Statement of Reasons for Allowance

9 ☐ Other

U.S. Patent and Trademark Office
PTO-37 (Rev. 04-01)               Notice of Allowability              Part of Paper No. 9

C000667

Application/Control Number: 09/810,868                                    Page 2
Art Unit: 3676

### Applicant's Response

In Paper No. 8, Applicant amended Claims 1, 12, 14 and 19, added new Claim 24, cancelled Claim 13, submitted a proposed amendment to the drawings, and argued against all objections and rejections previously set forth in Paper No. 6.

All objections and rejections are withdrawn.

### Drawings

The corrected or substitute drawings were received on 20 March 2003. These drawings are acceptable.

### Allowable Subject Matter

Claims 1-12 and 14-24 are allowed.

The following is an examiner's statement of reasons for allowance:

*Claims 1, 12, 14 and 19:*

The prior art fails to disclose or suggest window balance comprising a bottom guide connected to an end of a window balance channel and a bottom guide roller rotatably mounted in the bottom guide, as argued by Applicant in Paper No. 8.

*Claims 2-11, 15-18 and 20-23:*

These claims are dependent upon Claims 1, 14 and 19 and are thus allowable.

Application/Control Number: 09/810,868                                    Page 3
Art Unit: 3676

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Doug Hutton whose telephone number is (703) 305-
1701.  The examiner can normally be reached on Monday-Friday from 8:00 AM to 5:00
PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Anthony Knight, can be reached at (703) 308-1159.  The fax phone number
for the organization where this application or proceeding is assigned is (703) 305-7687.

Any inquiry of a general nature or relating to the status of this application or
proceeding should be directed to the receptionist whose telephone number is (703) 308-
2168.

WDH
April 3, 2003

ANTHONY KNIGHT
SUPERVISORY PATENT EXAMINER
TECH CENTER 3600



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patents and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

021323     7590     04/04/2003

TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA 02110

| EXAMINER |
| --- |
| HUTTON JR; WILLIAM D |

| ART UNIT | CLASS-SUBCLASS |
| --- | --- |
| 3676 | 016-197000 |

DATE MAILED: 04/04/2003

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 09/810,868 | 03/16/2001 | Gary Roger Newman | BSI-015 | 6163 |

TITLE OF INVENTION: BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1300 | $300 | $1600 | 07/07/2003 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY
PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT
FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT)
MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS
ABANDONED.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current
SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown
above.

B. If the status is changed, pay the PUBLICATION FEE (if required)
and twice the amount of the ISSUE FEE shown above and notify the
United States Patent and Trademark Office of the change in status, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now
claiming SMALL ENTITY status, check the box below and enclose
the PUBLICATION FEE and 1/2 the ISSUE FEE shown above.

☐  Applicant claims SMALL ENTITY status.
        See 37 CFR 1.27.

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with
your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be
completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be
completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to
Box ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

C000670

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>  **Box ISSUE FEE**
**Commissioner for Patents**
**Washington, D.C. 20231**
<u>Fax</u>  **(703)746-4000**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

```
021323     7590     04/04/2003
```

TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA 02110

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/810,868 | 03/16/2001 | Gary Roger Newman | BSI-015 | 5163 |

TITLE OF INVENTION: BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1300 | $300 | $1600 | 07/07/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HUTTON JR, WILLIAM D | 3676 | 016-197000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent)  ☐ individual  ☐ corporation or other private group entity  ☐ government

4a. The following fee(s) are enclosed:

☐ Issue Fee
☐ Publication Fee
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s):

☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

_____ (Authorized Signature)          _____ (Date)

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**TRANSMIT THIS FORM WITH FEE(S)**

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

C000671



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|---|
| 09/810,868 | 03/16/2001 | | Gary Roger Newman | BSI-015 | 6163 |

| 02/323    7590    04/04/2003 | EXAMINER |
|---|---|
| TESTA, HURWITZ & THIBEAULT, LLP | HUTTON JR., WILLIAM D |
| HIGH STREET TOWER | |
| 125 HIGH STREET | ART UNIT | PAPER NUMBER |
| BOSTON, MA 02110 | 3676 | |

DATE MAILED: 04/04/2003

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The patent term adjustment to date is 91 days. If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the term adjustment will be 91 days.

If a continued prosecution application (CPA) was filed in the above-identified application, the filing date that determines patent term adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) system. (http://pair.uspto.gov)

Any questions regarding the patent term extension or adjustment determination should be directed to the Office of Patent Legal Administration at (703)305-1383.

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

C000672



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/810,868 | 03/16/2001 | Gary Roger Newman | BSI-015 | 6163 |

| | | |
|---|---|---|
| 021323 7590 04/04/2003 | | EXAMINER |
| TESTA, HURWITZ & THIBEAULT, LLP | | HUTTON JR, WILLIAM D |
| HIGH STREET TOWER | | |
| 125 HIGH STREET | | ART UNIT | PAPER NUMBER |
| BOSTON, MA 02110 | | 3676 |
| UNITED STATES | | |

DATE MAILED: 04/04/2003

### Notice of Fee Increase on January 1, 2003

If a reply to a "Notice of Allowance and Fee(s) Due" is filed in the Office on or after January 1, 2003, then the amount due will be higher than that set forth in the "Notice of Allowance and Fee(s) Due" since there will be an increase in fees effective on January 1, 2003. See Revision of Patent and Trademark Fees for Fiscal Year 2003; Final Rule, 67 Fed. Reg. 70847, 70849 (November 27, 2002).

The current fee schedule is accessible from: http://www.uspto.gov/main/howtofees.htm.

If the issue fee paid is the amount shown on the "Notice of Allowance and Fee(s) Due," but not the correct amount in view of the fee increase, a "Notice to Pay Balance of Issue Fee" will be mailed to applicant. In order to avoid processing delays associated with mailing of a "Notice to Pay Balance of Issue Fee," if the response to the Notice of Allowance and Fee(s) due form is to be filed on or after January 1, 2003 (or mailed with a certificate of mailing on or after January 1, 2003), the issue fee paid should be the fee that is required at the time the fee is paid. If the issue fee was previously paid, and the response to the "Notice of Allowance and Fee(s) Due" includes a request to apply a previously-paid issue fee to the issue fee now due, then the difference between the issue fee amount at the time the response is filed and the previously paid issue fee should be paid. See Manual of Patent Examining Procedure, Section 1308.01 (Eighth Edition, August 2001).

Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (703) 305-8283.

Page 4 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

C000673



**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s) to, to: **Mail**  Box ISSUE FEE
Commissioner for Patents
Washington, D.C. 20231
**Fax**  (703)746-4000

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1) | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission. |
|---|---|

023123       7590       04/04/2003

TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA 02110

Certificate of Mailing or Transmission
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee Address above, or being facsimile transmitted to the USPTO, on the date indicated below.

Diane Racicot _____ (Depositor's name)

Diane Racicot _____ (Signature)

4/11/03 _____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/810,568 | 03/16/2001 | Gary Roger Newman | BSI-015 | 6163 |

TITLE OF INVENTION: BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1300 | $300 | $1600 | 07/07/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HUTTON JR, WILLIAM D | 3676 | 016-197000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Testa, Hurwitz &
   Thibeault, LLP

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Amesbury Group, Inc.                    Amesbury, Massachusetts

Please check the appropriate assignee category or categories (will not be printed on the patent)   ☐ Individual   ☒ corporation or other private group entity   ☐ government

4a. The following fee(s) are enclosed:          4b. Payment of Fee(s):

☒ Issue Fee                                    ☒ A check in the amount of the fee(s) is enclosed.
☐ Publication Fee                              ☐ Payment by credit card. Form PTO-2038 is attached.
☒ Advance Order - # of Copies  15              ☒ The Commissioner is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

(Authorized Signature) _____   (Date) 4/11/03

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

04/17/2003 NAHMED2   00000011 09810868

01 FC:1501   1300.00 OP
02 FC:1504    300.00 OP
03 FC:8001     45.00 OP

TRANSMIT THIS FORM WITH FEE(S)

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE





PATENT
Attorney Docket No. BSI-015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT: | Newman | CONFIRMATION NO. | 6163 |
| SERIAL NO.: | 09/810,686 | GROUP NO.: | 3676 |
| FILING DATE: | March 16, 2001 | EXAMINER: | W. Hutton, Jr. |
| TITLE: | Block and Tackle Window Balance with Bottom Guide Roller | | |

Box Issue Fee
Commissioner for Patents
Washington, D.C. 20231

**RECEIVED**

MAY 0 6 2003

**GROUP 3600**

### TRANSMITTAL OF FORMAL DRAWINGS

Sir:

    Enclosed please find replacement formal drawings for the above patent application -
Number of Sheets: 10

Respectfully submitted,

Date: April 11, 2003
Reg. No. 42,545

John V. Forcier
Attorney for Applicant
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

2608207

C000675



Title Block and Tackle Window Balance
with Bottom Guide Roller
 Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier

1/10

**6598264**



FIG. 1
PRIOR ART

C000676



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier

2/10



**FIG. 2A**

PRIOR ART

C000677



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868    Atty: John V. Forcier

3/10



## FIG. 2B
### PRIOR ART

C000678



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868    Atty: John V. Forcier
4/10



## FIG. 3
### PRIOR ART

C000679



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier
5/10



FIG. 4A

C000680



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier

6/10



FIG. 4B

C000681



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier
7/10



FIG. 5

C000682



Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868   Atty: John V. Forcier
8/10



FIG. 6

C000683



Title Block and Tackle Window Balance
with Bottom Guide Roller
 Inventor: Newman
 Atty Docket No. BSI-015
 Art Unit: 3676    Confirmation No. 6163
 U.S.S.N. 09/810,868   Atty; John V. Forcier

9/10



FIG. 7B
PRIOR ART



FIG. 7A
PRIOR ART

OIPE JC18
APR 16 2003
PATENT & TRADEMARK OFFICE

Title Block and Tackle Window Balance
with Bottom Guide Roller
Inventor: Newman
Atty Docket No. BSI-015
Art Unit: 3676    Confirmation No. 6163
U.S.S.N. 09/810,868    Atty: John V. Forcier

10/10



FIG. 8B



FIG. 8A

C000685



*11  Rev't 1*

# RECEIVED
### MAY 0 6 2003
## GROUP 3600

**PATENT**
Attorney Docket No. BSI-015
(354/48)

*B*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT: | Newman | CONFIRMATION NO: | 6163 |
| SERIAL NO.: | 09/810,686 | GROUP NO.: | 3676 |
| FILING DATE: | March 16, 2001 | EXAMINER: | W. Hutton, Jr. |
| TITLE: | Block and Tackle Window Balance with Bottom Guide Roller | | |

---

***CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8***

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to Box Issue Fee, Commissioner for Patents, Washington, DC 20231 on the 11th day of April, 2003.

*Diane Racicot*
Diane Racicot

---

Box Issue Fee
Commissioner for Patents
Washington, DC 20231

Submitted herewith are:

1. Transmittal Form (1 pg.);

2. Transmittal of Formal Drawings (1 pg.);

3. Formal Drawings (10 sheets);

4. Return receipt postcard.

2608237

C000686

**TRANSMITTAL FORM**

| | |
|---|---|
| Application Serial Number | 09/810,868 |
| Filing Date | March 16, 2001 |
| First Named Inventor | Newman |
| Group Art Unit | 3676 |
| Examiner Name | W. Hutton, Jr. |
| Attorney Docket No. | BSI-015 |
| BATCH NO. (after allowance) | Not applicable |
| Patent No. | Not applicable |
| Issue Date | Not applicable |

## ENCLOSURES (check all that apply)

☐ Fee Transmittal Form

  ☐ Check Attached
  ☐ Copy of Fee Transmittal Form

☐ Amendment/Response

  ☐ Preliminary
  ☐ After Final

  ☐ Affidavits/declaration(s) including Drawings [Total Sheets 6]

☐ Petition for Extension of Time

☐ Information Disclosure Statement
  ☐ Form PTO-1449
  ☐ Copies of IDS Citations

☐ Certified Copy of Priority Document(s)

☐ Sequence Listing submission
  ☐ Paper Copy/CD
  ☐ Computer Readable Copy
  ☐ Statement verifying identity of above

☐ Copy of Notice to File Missing Parts of Application (PTO-1553)

☒ Formal Drawings (10 sheets)

☐ Request For Continued Examination (RCE) Transmittal

☐ Associate Power of Attorney

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ CD(s) for large table or computer program

☐ Amendment After Allowance

☐ Request for Certificate of Correction
  ☐ Certificate of Correction (in duplicate)

☐ Notice of Appeal to Board of Patent Appeals and Interferences

☐ Appeal Brief (in triplicate)

☐ Status Inquiry

☒ Return Receipt Postcard

☒ Certificate of First Class Mailing under 37 C.F.R. 1.8

☐ Certificate of Facsimile Transmission under 37 C.F.R. 1.8

☒ Additional Enclosure(s) (please identify below)

☒ Transmittal of Formal Drawings

**RECEIVED**

**MAY 0 6 2003**

**GROUP 3600**

| CORRESPONDENCE ADDRESS | SIGNATURE BLOCK |
|---|---|
| Direct all correspondence to: Patent Administrator<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA 02110<br>Tel. No.: (617) 248-7000<br>Fax No.: (617) 248-7100 | Respectfully submitted,<br><br>Date: April 11, 2003<br>Reg. No. 42,545<br>Tel. No.: (617) 248-7675<br>Fax No.: (617) 248-7100<br><br>John V. Forcier<br>Attorney for Applicants<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA 02110 |

2608230

C000687

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2000

Application or Docket Number

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 13 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 13 minus 20= | * 0 |
| INDEPENDENT CLAIMS | 3 minus 3 = | * 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 355.00 | | BASIC FEE | 710.00 |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL | | OR | TOTAL | 710 |

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * 23 | Minus | ** 3 | = |
| Independent | * 3 | Minus | *** 1 | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | 84 |
| X40= | | OR | X80= | 160 |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 8/00)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

C000688

## CLAIMS ONLY

| SERIAL NO. | | FILING DATE |
|---|---|---|
| APPLICANT(S) | | |

### CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | * | | * | | * | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | / | | | | | | 51 | | | | | | |
| 2 | | / | | | | | 52 | | | | | | |
| 3 | | / | | | | | 53 | | | | | | |
| 4 | | / | | | | | 54 | | | | | | |
| 5 | | / | | | | | 55 | | | | | | |
| 6 | | / | | | | | 56 | | | | | | |
| 7 | | / | | | | | 57 | | | | | | |
| 8 | | / | | | | | 58 | | | | | | |
| 9 | | / | | | | | 59 | | | | | | |
| 10 | | / | | | | | 60 | | | | | | |
| 11 | | / | | | | | 61 | | | | | | |
| 12 | / | | | | | | 62 | | | | | | |
| 13 | / | | | | | | 63 | | | | | | |
| 14 | | | | | | | 64 | | | | | | |
| 15 | | | | | | | 65 | | | | | | |
| 16 | | | | | | | 66 | | | | | | |
| 17 | | | | | | | 67 | | | | | | |
| 18 | | | | | | | 68 | | | | | | |
| 19 | | | | | | | 69 | | | | | | |
| 20 | | | | | | | 70 | | | | | | |
| 21 | | | | | | | 71 | | | | | | |
| 22 | | | | | | | 72 | | | | | | |
| 23 | | | | | | | 73 | | | | | | |
| 24 | | | | | | | 74 | | | | | | |
| 25 | | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 3 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 10 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | 13 | | | | | | TOTAL CLAIMS | | | | | | |

*MAY BE USED FOR ADDITIONAL CLAIMS OR ADMENDMENTS

FORM PTO-2022 (1-98)

U.S.DEPARTMENT OF COMMERCE
Patent and Trademark Office

Inventor Information

Inventor One Given Name ::  GARY ROGER
Family Name ::              NEWMAN
Postal Address Line One ::  26403 484th AVENUE
City ::                     VALLEY SPRINGS
State/Province ::           SD
Country ::                  USA
Postal or Zip Code ::       57068
City of Residence ::        VALLEY SPRINGS
State/Prov. of Residence :: SD
Country of Residence ::     USA
Citizenship ::              U.S.


Correspondence Information

Correspondence Customer Number:: 021323

Application Information

Title Line One::            BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM
                            GUIDE ROLLER
Total Drawing Sheets::      10
Formal Drawings::           NO
Application Type::          UTILITY
Docket Number::             BSI-015
Licensed US Govt. Agency::
Contract or Grant Numbers::
Secrecy Order in Parent Application::

Representative Information

Representative Customer Number:: 021323

1

C000690

| L Number | Hits | Search Text | DB | Time stamp |
|---|---|---|---|---|
| 1 | 2 | ("3114178" "3358404").pn. | USPAT | 2003/04/03 09:58 |
| 2 | 335 | (16/197).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:13 |
| 3 | 113 | (16/193).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:13 |
| 4 | 76 | (16/400).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:13 |
| 5 | 106 | (16/401).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:13 |
| 6 | 77 | (16/dig.16).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:14 |
| 7 | 60 | (16/210).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:14 |
| 8 | 60 | (16/215).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:14 |
| 9 | 277 | (49/445).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:14 |
| 10 | 125 | (49/446).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:14 |
| 11 | 124 | (49/447).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:16 |
| 12 | 2546 | window with sash | USPAT | 2003/04/03 10:16 |
| 13 | 144 | (window with sash) and counterbalance | USPAT | 2003/04/03 10:17 |
| 14 | 213 | (window with sash) and (guide with bottom) | USPAT | 2003/04/03 10:18 |
| - | 333 | (16/197).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:12 |
| - | 8 | "swan charles".in. | USPAT | 2002/11/13 15:53 |
| - | 112 | (16/193).CCLS. | USPAT; US-PGPUB | 2003/04/03 10:13 |
| - | 76 | (16/400).CCLS. | USPAT; US-PGPUB | 2002/11/15 08:31 |
| - | 105 | (16/401).CCLS. | USPAT; US-PGPUB | 2002/11/15 08:33 |
| - | 77 | (16/dig.16).CCLS. | USPAT; US-PGPUB | 2002/11/15 08:38 |
| - | 60 | (16/210).CCLS. | USPAT; US-PGPUB | 2002/11/15 08:43 |
| - | 60 | (16/215).CCLS. | USPAT; US-PGPUB | 2002/11/15 08:44 |
| - | 276 | (49/445).CCLS. | USPAT; US-PGPUB | 2002/11/15 09:03 |
| - | 125 | (49/446).CCLS. | USPAT; US-PGPUB | 2002/11/15 09:09 |
| - | 124 | (49/447).CCLS. | USPAT; US-PGPUB | 2002/11/15 09:09 |

C000691

US006840011B2

(12) **United States Patent**
    Thompson et al.

(10) Patent No.: **US 6,840,011 B2**
(45) Date of Patent: **Jan. 11, 2005**

(54) **WINDOW PANEL BALANCE APPARATUS AND METHOD**

(75) Inventors: **Roy A. Thompson**, Dorchester, MA (US); **Douglas W. Kroncke**, Boston, MA (US); **John C. Costello**, Wellesley, MA (US); **David P. Chastain**, Acton, MA (US); **Jack D. Gundlach**, Acton, MA (US); **Timothy J. Kelley**, Stillwater, MN (US); **Larry Versteeg**, Sioux Falls, SD (US); **Thomas Hansel**, Rockford, IL (US); **Arthur R. King, IV**, River Falls, WI (US); **James R. Harger**, Rockford, IL (US); **Michael L. Doll**, Osceola, WI (US); **James L. Peterson**, New Richmond, WI (US); **Dennis A. Galowitz**, Stillwater, MN (US); **Richard M. Fischer**, Stillwater, MN (US)

(73) Assignee: **Andersen Corporation**, Bayport, MN (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/149,181**

(22) PCT Filed: **Dec. 13, 2000**

(86) PCT No.: **PCT/US00/33789**

§ 371 (c)(1),
(2), (4) Date: **Oct. 24, 2002**

(87) PCT Pub. No.: **WO01/42605**

PCT Pub. Date: **Jun. 14, 2001**

(65) **Prior Publication Data**

US 2003/0226317 A1 Dec. 11, 2003

**Related U.S. Application Data**

(60) Provisional application No. 60/170,307, filed on Dec. 13, 1999.

(51) Int. Cl.[7] ............................................... E05D 15/22
(52) U.S. Cl. .......................................... 49/181; 49/445
(58) Field of Search ......................... 49/176, 181, 445, 49/446, 447; 16/196, 197, 198, 199

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,262,990 A    11/1941   Cross et al.
2,952,884 A    9/1960   Dinmore

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

GB     2 276 655    10/1994

OTHER PUBLICATIONS

The 'Invisible' Balance for Custom Wood Windows, *SHELTER Magazine*, describing Strybuc Industries' concealed balance as being on the market since before Dec. 13, 1998, p. 37 (Jul. 2000).

(List continued on next page.)

Primary Examiner—Jerry Redman
(74) Attorney, Agent, or Firm—Womble Carlyle Sandridge & Rice, PLLC

(57)     **ABSTRACT**

A window having a window panel that slides in a frame and at least one balancer that is secured to the window panel is disclosed. The window is of the tiltable hung type having a vertical operating position in which the balancer slides with the window panel in the frame and a tilted position in which the balancer remains secured to the window panel. The balancer includes an extensible member having a first end operatively coupled to the balancer and a second end operatively coupled to a frame so that the balancer can exert a force on the window panel to assist against the force of gravity when the window panel is in the vertical operating position. A method of constructing a tiltable hung window with a balancer secured to the window panel is also disclosed.

**18 Claims, 7 Drawing Sheets**



**US 6,840,011 B2**

Page 2

---

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,054,152 | A | 9/1962 | Trammell, Jr. |
| 3,055,044 | A | 9/1962 | Dinsmore |
| 3,091,797 | A | 6/1963 | Prosser |
| 3,114,178 | A | 12/1963 | Wood |
| 3,147,517 | A | 9/1964 | Dinsmore |
| 3,358,403 | A | 12/1967 | Dinsmore |
| 3,676,956 | A | 7/1972 | Taylor et al. |
| 4,078,336 | A | 3/1978 | Prosser |
| 4,089,085 | A | 5/1978 | Fitzgibbon |
| 4,190,930 | A | 3/1980 | Prosser |
| 4,332,054 | A | * 6/1982 | Paist et al. ..................... 16/197 |
| 4,642,845 | A | * 2/1987 | Marshik ..................... 16/194 |
| 4,654,928 | A | 4/1987 | Flight |
| 4,675,948 | A | 6/1987 | Bengtsson |
| 4,704,821 | A | 11/1987 | Berndt |
| 4,718,194 | A | 1/1988 | FitzGibbon et al. |
| 4,724,577 | A | 2/1988 | Langley |
| 4,763,447 | A | 8/1988 | Haltof et al. |
| 4,949,425 | A | 8/1990 | Dodson et al. |
| 5,542,212 | A | 8/1996 | Erickson et al. |
| 5,544,450 | A | 8/1996 | Schmidt et al. |
| 5,615,452 | A | 4/1997 | Habbersett |
| 5,737,877 | A | 4/1998 | Meunier et al. |
| 5,784,840 | A | 7/1998 | Dodson |
| 5,873,199 | A | 2/1999 | Meunier et al. |
| 6,467,128 | B1 | * 10/2002 | Damani ..................... 16/197 |
| 6,622,342 | B1 | * 9/2003 | Annes et al. ................. 16/197 |

### OTHER PUBLICATIONS

Take Out System for Single/Double Hung Windows 100 Series brochure (color copy submitted, 6 pages) This balancer product is believed to have been sold since before Dec. 13, 1998.

Take Out System for Single/Double Hung Windows 400 Series brochure (color copy submitted, 6 pages) This balancer product is believed to have been sold since before Dec. 13, 1998.

Take Out System for Single/Double Hung Windows 650 Series brochure (color copy submitted, 6 pages) This balancer product is believed to have been sold since before Dec. 13, 1998.

* cited by examiner



**Fig. 1**



**Fig. 6**          **Fig. 5**



Fig. 2

Fig. 3

Fig. 4



**Fig. 7**



**Fig. 8**



**Fig. 9**



**Fig. 10**



**Fig. 11**



**Fig. 12**



**Fig. 13**    **Fig. 14**



**Fig. 15**



**Fig. 16**



**Fig. 17**



**Fig. 18**



**Fig. 19**

**Fig. 20**



Fig. 23

Fig. 22

Fig. 21

US 6,840,011 B2

1

## WINDOW PANEL BALANCE APPARATUS AND METHOD

This application is being filed as a PCT International Patent Application in the name of Andersen Corporation, a U.S. national corporation and resident, (Applicant for all countries except US), Roy A. Thompson, a U.S. citizen (Applicant for US only), Douglas W. Kroncke a U.S. citizen (Applicant for US only), John C. Costello, a U.S. citizen (Applicant for US only), David P. Chastain, a U.S. citizen (Applicant for US only), Jack D. Gundlach, a U.S. citizen (Applicant for US only), Timothy J. Kelley, a U.S. citizen (Applicant for US only), Larry Versteeg, a U.S. citizen (Applicant for US only), Thomas Hansel, a U.S. citizen (Applicant for US only), Arthur R. King IV, a U.S. citizen (Applicant for US only), James R. Hager, a U.S. citizen (Applicant for US only), Michael L. Doll, a U.S. citizen (Applicant for US only), James L. Peterson, a U.S. citizen (Applicant for US only), Dennis A. Galowitz, a U.S. citizen (Applicant for US only), and Richard M. Fischer, a U.S. citizen (Applicant for US only) on 13, Dec. 2000, designating all countries.

### FIELD OF THE INVENTION

This invention relates generally to tilting hung windows. More specifically, this invention relates to a tilting hung window having a balancer secured to the window panel.

### BACKGROUND OF THE INVENTION

This invention relates generally to double and single hung windows. Specifically, this invention relates to balancers secured to the window panel.

Hung windows such as double and single hung windows typically include a balancer secured to the frame such that the balancer assists the sash against gravity. The balancer typically includes a spring which provides the lifting force. Many balancers also include a block and tackle assembly which provides a combination of the necessary internal friction and mechanical advantage such that a relatively limited change in the compression of the spring provides a much larger range of movement of the sash itself.

In the prior art, the balancer is located and secured in the jamb or jamb liner. Balancers in jamb liners cause jamb liners to be thick and complex in shape. Furthermore, the complex shape makes it difficult to appropriately color the jamb liner. The jamb/jamb liner combination must be disassembled to gain access to the balancer for service or replacement. When a window is replaced, it is sometimes necessary to install an additional jamb liner so that the balancer can be placed in the jamb liner. This added jamb liner takes space away from the clear glass area.

Many hung windows include a sash that can be tilted inward for ease of cleaning. Typically, the lower rail of the sash remains in the plane of the window while the top rail tilts inward. The sash typically pivots about a pivot mechanism that is a separate component from the balancer. This separate component requires additional assembly time when constructing the window.

On the tilting type hung windows, it is important to prevent the lower rail from vertical movement during cleaning or replacement. Different mechanisms have been used to "lock" the vertical position of the sash when in its tilted position. However, these prior art mechanisms are bulky and costly and are separate components that must be assembled to the window separately from the balancer. This separate assembly results in time consuming construction of the window.

2

### SUMMARY OF THE DISCLOSURE

In accordance with this invention the above and other problems have been solved by a hung window having a frame, a window panel and a balancer secured to one of the sides of the window panel. The frame includes two oppositely disposed side members. The window panel includes two oppositely disposed sides such that the window panel is slidably mounted in the frame. The window panel has a vertical operating position and a tilted position. The balancer includes a housing, extensible member and latching mechanism. The housing is secured to the first side member of the window panel. The housing includes a pivot end about which the housing pivots when the window moves from its vertical position to its tilted position. The first end of the extensible member is operatively coupled to the balancer and the second end of the extensible member is operatively coupled to the first side member of the frame wherein the balancer exerts a force on the window panel through the extensible member in the direction substantially opposite the force of gravity when the window panel is in the vertical operating position. The latching mechanism communicates with the balancer to prevent the pivot end of the housing from moving vertically in the direction of gravity when the window panel is in the tilted position.

In accordance with another aspect of the invention, a spring loaded block and tackle balance assembly is provided. The spring loaded block and tackle assembly includes a housing having a first and second end and defining an elongated chamber. A pulley wheel is operatively coupled to the second end of the housing wherein the pulley wheel includes a first and second circumferential edge portions defining a groove there between. The block and tackle balance assembly includes a biasing member positioned in the elongated chamber. A block and tackle are located in the housing and are operatively coupled to each other and to the housing. The block and tackle include an extensible member that has two positions relative to the pulley wheel. The first position of the extensible member is in the groove of the pulley wheel. The extensible member is extensible when in the first position. The second position of the extensible member is between one of the first and second circumferential edge portions and a pinching member that is operatively coupled to the housing. The extensible member is not extensible when in the second position. The first position of the extensible member occurs when the window panel is in its vertical position within the frame. When the window panel is tilted from the vertical position to the tilted position the extensible member moves from the first position to the second position.

In accordance with another aspect of the invention, a balancer including a housing, an extensible member, a pulley wheel having a circumferential portion, a brake and a rotatable cam member is disclosed. The extensible member passes partially around the circumferential portion of the pulley wheel. The brake includes a braking surface adjacent the extensible member and an oppositely disposed force receiving surface. The brake has a locked position and an unlocked position. In the unlocked position the braking surface is not in forceful contact with the extensible member. In the locked position the brake is in contact with the extensible member such as to compress the extensible member between the circumferential portion of the pulley wheel and the braking surface. The rotatable cam includes a camming surface that when rotated contacts the force receiving surface of the brake forcing the brake into the locked position.

US 6,840,011 B2

3

In accordance with another aspect of the invention, a balancer for a hung window is provided. The balancer includes a housing, extensible member, rotatable block and pulley wheel. The housing includes a first pinching surface defining an opening. The extensible member includes a first end connected to the housing. The rotatable block is rotationally coupled to the housing and includes a second pinching surface substantially parallel to the first pinching surface. The rotatable block is configured to communicate with a frame side member such that tilting of the housing relative to the frame side member results in rotation of the rotatable block relative to the housing along an axis perpendicular to the first and second pinching surfaces. The pulley wheel is rotatably coupled to the rotatable block. The extensible member passes through the opening in the first pinching surface and partially around the circumferential surface of the pulley wheel. When the balancer is in a vertical upright position, the opening in the first pinching surface and the circumferential portion of the pulley wheel are aligned to allow the movement of the extensible member there through. When the balancer is in a tilted non-vertical position relative to an associated window frame, the rotatable block rotates to place the opening and the pulley wheel out of alignment such that longitudinal movement of the extensible member is prevented.

In accordance with another aspect of the invention a balancer having a housing, extensible member, pivot pin, pulley wheel and rotatable pinching member is provided.

In accordance with another aspect of the invention, a balance, pin and latch mechanism for attachment to a window panel is provided. The mechanism includes balance means for applying the force to the window panel. The mechanism also includes a pivot pin connected to balance means such that the window panel can be pivoted about the pivot pin. A latch means is also provided for preventing vertical motion of the window panel when in its tilted position. The latch means is also connected to balance means.

In accordance with another aspect of the invention, a method of constructing a hung window is provided. The method includes building a frame, obtaining a window panel and securing a pair of balancers to respective sides of the window panel. The balancers include an extensible member. The method also includes the step of coupling the extensible member to the frame wherein the pair of balancers bias the window panel in a direction substantially opposite the force of gravity when the window panel is in the vertical untilted position.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is front view of a hung window in accordance with the principles of the invention.

FIG. 2 is a perspective view of a portion of a hung window of a first embodiment in accordance with the principles of the invention.

FIG. 3 is a side sectional view of a bottom rail of a sash and its interaction with the frame bottom member.

FIG. 4 is a perspective view of a balancer and a portion of a jamb liner and frame of a first embodiment in accordance with the principles of the invention.

FIG. 5 is a side sectional view of a latching mechanism of a balancer of a first embodiment in accordance with the principles of the invention.

FIG. 6 is a side sectional view of a latching mechanism of a first embodiment in accordance with the principles of the invention.

4

FIG. 7 is a front sectional view of a latching mechanism of a balancer of a second embodiment in accordance with the principles of the invention.

FIG. 8 is a front sectional view of a latching mechanism of a balancer of a second embodiment in accordance with the principles of the invention.

FIG. 9 is a side sectional view of latching mechanism of a balancer of a second embodiment in accordance with the principles of the invention.

FIG. 10 is a top sectional view of a brake of a second embodiment in accordance with the principles of the invention.

FIG. 11 is a front sectional view of a latching mechanism of a balancer of a third embodiment in accordance with the principles of the invention.

FIG. 12 is a front sectional view of a latching mechanism of a balancer of a third embodiment in accordance with the principles of the invention.

FIG. 13 is a top sectional view of a brake of a third embodiment in accordance with the principles of the invention.

FIG. 14 is a side sectional view of a housing of a third embodiment in accordance with the principles of the invention.

FIG. 15 is a side sectional view of a latching mechanism of a balancer of a fourth embodiment in accordance with the principles of the invention.

FIG. 16 is a side sectional view of a latching mechanism of a balancer of a fourth embodiment in accordance with the principles of the invention.

FIG. 17 is a front sectional view of a latching mechanism of a balancer of a fourth embodiment in accordance with the principles of the invention.

FIG. 18 is a side sectional view of a rotatable block of a balancer of a fourth embodiment in accordance with the principles of the invention.

FIG. 19 is a perspective view of a rotatable pinching member of a balancer of a fifth embodiment in accordance with the principles of the invention.

FIG. 20 is a perspective view of an end of a housing of a fifth embodiment in accordance with the principles of the invention.

FIG. 21 is a perspective view of a latching mechanism of a balancer of a fifth embodiment in accordance with the principles of the invention.

FIG. 22 is a perspective view of a latching mechanism of a balancer of a fifth embodiment in accordance with the principles of the invention.

FIG. 23 is a perspective view of a latching mechanism of a balancer of a fifth embodiment in accordance with the principles of the invention.

DETAILED DESCRIPTION

In the following description of preferred embodiments, reference is made to the accompanying drawings which form a part hereof, and in which is shown by way of illustration specific embodiments in which the invention may be practiced. It is to be understood that other embodiments may be utilized and structural changes may be made without departing from the scope of the preferred embodiments of the present invention.

FIG. 1 is a front view of a hung window 100 of this invention. The window 100 includes a frame 102 having oppositely disposed side members 104 and 106. The frame

US 6,840,011 B2

5

102 also has a top member 108 and a bottom member 110. A sash 112 supports a window panel 114. The sash 112 has two oppositely disposed sides 116 and 118 parallel to the frame side members 104 and 106. The sash also includes a top rail 120 and a bottom rail 122.

FIG. 2 illustrates a preferred embodiment of the invention in which a sash 200 that supports a window panel 201 is shown in a tilted position with respect to the frame 202. A balancer 208 is secured to the sash side 212 by a screw 213. The balancer 208 is preferably positioned within a groove 210 in the sash side 212. The sash 200 is tilted along an axis substantially along the bottom rail 204. A first pivot pin 206 and a second pivot pin (not shown) provide the tilting mechanism. The pivot pin preferably slides in a groove in a jamb liner (not shown in FIG. 2) but it could also slide directly in the frame. The second pivot pin is positioned opposite the first pivot pin 206 on the side 207. The first pivot pin is operatively coupled to the balancer 208. The balancer 208 is further secured to the sash side 212 by a screw or other fastener through hole 215 in the pivot pin 206. Alternatively, the balancer 208 may be secured to the sash side 212 by a snap mechanism.

A balancer includes a pivot end. A pivot end is an end of a balancer around which the remainder of the balancer pivots when the balancer and its associated window panel rotate from a vertical operating position to a tilted position. One embodiment of a pivot end is pivot end 299 shown in FIGS. 2 and 4.

A second pivot pin (not shown) is coupled to a second balancer (not shown). The second balancer (not shown) is secured to the sash side 207 symmetrically to the way first balancer 208 is secured to sash side 212. Since the structure and operation of the second balancer is symmetric to the first balancer 208, this discussion is limited to the first balancer 208.

An extensible member such as a cord 214 or a chain, cable or other member that is extensible extends from the first balancer 208 at a location near the bottom rail 204. The portion of the cord 214 outside the balancer 208 extends substantially parallel to the frame side member 216 and is secured to the frame side member 216 by an anchor 218. The anchor 218 is preferably located in the same groove of the jamb liner or frame side member as the pivot pin 206 slides in. The anchor 218 may be a block that is attached to the side member 216 with a screw or other fastener. The cord 214 is held in the anchor 218 by being knotted on the opposite side of a hole in the anchor 218.

The balancer 208, secured to the sash 200, in conjunction with the cord 214 and its anchor 218 applies a biasing force to the sash 200 in an upward direction against the direction of gravitational acceleration. This biasing force augments the force applied by a user of the window in lifting the sash 200 upward in the frame 202 when the window panel is in the vertical untilted position.

In a preferred embodiment of the invention the sash may be tilted from a vertical position to a tilted position. When it is desired to tilt the sash 200, the top rail 220 is disengaged from the frame 202 or jamb liner (not shown) by operation of the lever 222 and its symmetrical counterpart (not shown) located on the opposite end of the top rail 220. When the sash 200 is in its vertical position, the lever end 224 is positioned in the same groove of the jamb liner or frame side member as is located the anchor 218. In this position the top rail 220 cannot be pulled away from the plane of the frame 202. By lifting the lever handle 223 up and away from the top rail 220, the lever end 224 is rotated downward such that

6

the lever end 224 becomes positioned within the groove 210. When the lever end 224 is so positioned in the groove 210, the top of the sash 200 including the top rail 220 can be tilted from its vertical position to its tilted position as shown in FIG. 2. Note that as positioned in FIG. 2 the lever handle 223 is substantially down near the surface of the top rail 220 and hence the lever end 224 is not located in the groove 210. This position of the lever is the position that would be associated with the untilted or vertical position of the sash 200.

FIG. 3 illustrates a cross section of one embodiment of the bottom rail 204 and its interaction with the bottom member 203 of the frame when the sash 200 is in its vertical position. As shown in FIG. 3 the bottom rail 204 of the sash 200 defines a groove 300 that is substantially an upside down U shape. The bottom member 203 of the frame 202 has a U shaped extension 302 that mates with the groove 300. When the sash 200 is at its lowest vertical position in the frame 202, the extension 302 is mated with the groove 300 for insulation and other purposes. It is important that the person operating the window not be allowed to tilt the sash 200 when the extension 302 is mated into the groove 300 because tilting in this position would result in the extension 302 or part of the bottom rail 204 being broken. To avoid this problem, a preferred embodiment of the present invention requires placement of the anchor 218 in a specific vertical location on the frame side member 216. The general idea is to place the anchor 218 in such a position that when the extension 302 is mated even partially with the groove 300, the lever end 224 cannot be rotated into the groove 210 because the lever end 224 physically contacts the anchor 218. The user must lift the sash 200 vertically upward until the lever end 224 can be rotated into groove 210 without interference by the anchor 218. The anchor is vertically positioned such that the distance the sash 200 must be lifted corresponds with the vertical distance required to remove the extension 302 from the groove 300 sufficiently such that the sash can be tilted without interference between the extension 302 and the sash bottom rail 204.

FIG. 4 is a perspective view of a preferred embodiment of a balancer 208 of this invention. A balancer is defined as being any mechanism that provides a biasing force to a window sash. The balancer could be a spring biased block and tackle mechanism or it could be some other mechanism such as a weight and pulley system. While the preferred embodiments of this invention relate to a spring biased block and tackle mechanism, this invention is not so limited.

A housing is any structural member that supports the elements of a balancer. A housing may be made of steel or other materials including plastic. A housing may have multiple components or it may be one integral piece. A housing may include a housing extension which may be a separate member secured to the main part of the housing.

In a preferred embodiment, the balancer 208 includes a housing 402 that includes an elongated U-shaped housing 403 and a housing extension 423 attached to one end of the elongated U-shaped housing 403. The elongated U-shaped housing 403 is made of steel having a pair of parallel, laterally spaced sidewalls 404 and 406 and an outer wall 408 interconnecting the side walls 404 and 406 together. The elongated U-shaped housing 403 defines an elongated chamber 410. The housing 402 is secured to a side of sash such as sash 200 by means of screw 213 which is held in place by fastening block 412 which in turn is fastened to the housing 402 by a press fit. The housing extension 423 can be made of any structural material including steel and plastic.

A coil spring 414 has an anchored end connected to a pin 416 by a hook that hooks around the pin 416. The pin 416

7

is riveted or otherwise fastened to the side walls 404 and 406 of the housing 402. The opposite end of the spring 414 is connected to a block and tackle 418. The block and tackle 418 includes a first pulley member 420 and a second pulley member 422 that are conventionally interconnected by a cord 214 that passes back and forth between the two pulley members. The cord has a first end that is connected to the block and tackle 418. The cord 420 exits the block and tackle 418 by extending around the circumference of a pulley wheel 426 that is adjacent second pulley member 422. In a preferred embodiment of the invention, the pulley wheel 426 is slightly elliptical in shape. Preferably, pulley wheel 426 is supported at its axis by a pin 428 that is supported by housing extension 423 that is integral with second pulley member 422. The pulley wheel 426 changes the direction of the cord 214 by approximately 180 degrees. After this 180 degree turn, the cord extends parallel to the balancer 208 and a second end 219 of the cord 214 is anchored to the frame side member 216. The cord 214 is anchored to the frame side member 216 by attaching the cord 214 to anchor 218 as described above and then screwing the anchor 218 through the jamb liner 432 and into the frame side member 216 with screw 434.

The pin 206 is made of plastic and is an integral part of the housing extension 423 and second pulley member 422. During normal vertical up and down movement of the sash in the frame, the pin 206 slides up and down with the sash in the groove 436 of the jamb liner 432. The large head 438 on the pin 206 prevents the pin from being removed from the groove 436. When the sash is tilted out of the plane of the frame, the tilt axis is along the line between the pin 206 and its counterpart pin (not shown) located on the opposite side of the sash near the bottom rail. The housing extension 423 which is integral with the pin 206 is attached to the housing 402 by rivet pins 440 and 442 that extend through the second pulley member 422.

A latching mechanism is a component of a balancer, which operates to prevent a pivot end of a balancer from moving in a vertical downward direction when the window panel to which the balancer is attached is in a tilted position relative to the frame side members. Various embodiments of latching mechanisms are provided below. However, the scope of this invention is not limited to the specific embodiments of latching mechanisms provided. Other latching mechanisms including commercially available mechanisms may be used.

One embodiment of a latching mechanism is shown in FIGS. 5 and 6 taken along the line 5—5 of FIG. 4. FIG. 5 illustrates the unlocked position of the cord 214 with respect to pulley wheel 426 and housing extension 423 that occurs when the sash 200 is in a vertical untilted position. Note that housing extension 423 is part of the housing 402. FIG. 6 illustrates a locked position of the cord 214 with respect to the pulley wheel 426 and the housing extension 423 that occurs when the sash 200 is in its tilted position.

As can be seen in both FIGS. 5 and 6, the pulley wheel has a first and second circumferential edge portions 502 and 504 and a groove 506 between them. These circumferential edge portions have a larger radius than the groove 506. As shown in FIG. 5, when the sash is in its vertical position the cord 214 rides in the groove 506 and because of the circumferential edge portions 502 and 504 cannot be displaced out of the groove 506. When the sash is in its vertical position, the cord 214 is extensible such that it may freely be drawn and withdrawn during rotation of pulley wheel 426 as the window panel is moved vertically.

In FIG. 6 the cord 214 is pinched or caught between the circumferential edge portion 502 and the housing extension

8

423. Tilting the sash 200 relative to the frame causes this position of the cord 214 shown in FIG. 6. The second end 219 of the cord 214 is anchored to the frame and so the tilting action pulls the cord 214 out of the groove 506 and into a position in which it is between the pulley wheel and the housing extension 423. In the position shown in FIG. 6, the cord may not be extended in or out of the pulley wheel because the cord 214 is frictionally engaged between the pulley wheel 426 and the pinch point 510. The housing extension 423 is preferably shaped as shown in FIGS. 5 and 6. The housing extension 423 includes a right-angled pinch point 510 and a recess 512. The recess 512 is located closer to the axis of the pulley wheel 426 than is the pinch point 510. When the sash is tilted, the cord 214 is pulled into the recess 512 and necessarily between the circumferential edge portion 502 of the pulley wheel 426 and the pinch point 510.

A preferred embodiment of the circumferential edge portions discussed throughout the various embodiments of the invention is chamfered or rounded so that damage to the extensible member is minimized when the extensible member is pinched against a circumferential edge portion. Such a chamfered or rounded edge is shown in the drawing figures.

The latching mechanisms shown in FIGS. 7-23 may be utilized within the same window construction as discussed above with respect to FIGS. 1-4. The latching mechanisms shown in FIGS. 7-23 are possible replacements for the latching mechanism identified in FIGS. 5-6. The remaining portion of the balancers not shown in FIGS. 7-23 is the same as those balancer portions as described above with regard to both general concepts and specific embodiments.

One embodiment of a latching mechanism of a balancer is shown in FIGS. 7-9. Specifically a portion of balancer 600 is provided. As described above, the portions of balancer 600 not shown in FIGS. 7-9 would be the same as described above and shown in FIGS. 1-4. FIGS. 7 and 8 are side views with a portion of the housing extension cut away so that the underlying brake can be seen. FIG. 9 is a rear sectional view taken along lines 9—9 of FIG. 8.

The balancer 600 shown in FIGS. 7-9 includes a housing 602 that includes an elongated U-shaped housing (not shown but the same as described above and shown in FIGS. 1-4) and a housing extension 604. Balancer 600 includes a pulley wheel 606 that is rotatably coupled to housing extension 604 by axis 608. Pulley wheel 606 includes a first circumferential edge portion 610 and a second circumferential edge portion 612. The portion of the outer circumference of the pulley wheel 606 between the circumferential edge portions 610 and 612 is referred to as the circumferential portion 614. It should be noted that a circumferential portion might in general be any shape that will accommodate passage of an extensible member around the circumferential portion. Circumferential portion 614 is but one embodiment of a circumferential portion.

Extensible member 616 is centered on the circumferential portion 614 between the first and second circumferential edge portions 610 and 612 as it wraps around the pulley wheel 606. End 618 of the extensible member is configured to be secured to a frame side member as described above with respect to earlier embodiments. End 617 of the extensible member 616 continues to be utilized by the block and tackle also as described above with respect to earlier embodiments.

A brake is any member having a braking surface wherein the braking surface is configured so that when forceful contact is made between the braking surface and the exten-

bottom
guide-
to
channel

US 6,840,011 B2

9

sible member supported by a pulley wheel, longitudinal movement of the extensible member is prevented. A brake may be stationary such that the extensible member and pulley wheel move toward and away from the stationary brake. Alternatively, the brake may move.

FIGS. 7 and 8 illustrate one embodiment of a brake, namely brake 620. Brake 620 includes an anchored end 622 and an oppositely disposed braking end 624. Anchored end 622 is nonrotatably secured to housing extension 604. Braking end 624 includes a braking surface 626 and a force-receiving surface 628. A braking surface is any surface which forcefully made to contact an extensible member is configured to prevent longitudinal movement of the extensible member because of frictional contact and/or pinching of the extensible member between the braking surface and another member. The braking surface 626 is rounded to a radius that approximates the radius of the circumferential portion 614 of the pulley wheel 606. This shaping of the braking surface to match the shape of the pulley wheel increases the surface area of contact between the braking surface and the extensible member.

Balancer 600 includes a pivot pin 630 that is the same as pivot pin 206 except that pivot pin 630 is made of steel. Pivot pin 630 performs the same function as pivot pin 206.

A camming surface is any surface that rotates about an axis and which has at least one point of varying distance from the axis. A rotatable cam member is a rotatable member that includes a camming surface configured to contact a brake upon rotation of the rotatable cam member.

Rotatable cam member 634 shown in FIG. 9 is one embodiment of a rotatable cam member. Pivot pin 630 provides an axis 632 about which rotatable cam member 634 rotates. Rotatable cam member 634 includes a circular section 636 that travels less than the full circumference of the cam member 634. The radius from circular section 636 to the axis 632 is constant. Rotatable cam member 634 also includes a notch defined by a recessed edge 638. A recessed edge is an edge comprising points that are a shorter distance to the axis of rotation than the circular section. The transition from the recessed edge 638 to the circular edge 636 is a smooth transition to provide camming surface 640.

Note that many alternative designs for a rotatable cam member and its associated camming surface are possible. For example, a rotatable cam member could be a generally circular member with a bulge or bump along which the radius or distance from the outer edge of the rotatable cam member to the axis of rotation is greater than along the generally circular portion. Many other shapes for the camming surface are possible.

Rotatable cam member 634 includes transferring end 642, which is designed to be slidably received by a jamb liner channel. If a window panel secured to this embodiment of a balancer is moved from its vertical operating position to a tilted position, the sides of the jamb liner channel will prevent the transferring end 642, and hence the rotatable cam member 634, from tilting with the window panel thereby causing rotation of the rotatable cam member relative to and about the pivot pin 630.

FIG. 8 shows the positioning of the brake 620 and other elements of the balancer 600 when the associated window panel is in its vertical operating position. As shown in FIG. 8, the notch formed by the recessed edge 638 is aligned with the brake 620. In this vertical operating position, there is a gap between the braking surface 626 and the extensible member 616. As the window panel is moved from its vertical operating position to the tilted position, the camming surface

10

640 comes into forceful contact with the force-receiving surface 628 of the brake 620. The force applied by the rotatable cam member 634 onto the brake 620 causes the brake to flex in the direction of the extensible member 616 and the pulley wheel 606. Continued tilting of the window panel eventually results in the braking surface of the brake 620 forcefully pressing the extensible member against the circumferential portion 614 of the pulley wheel 606. Such pressure on the extensible member prevents longitudinal movement of the extensible member 616 and hence prevents the window panel from dropping downward by the force of gravity or by the force of any washing action on the window panel. FIG. 7 illustrates brake 620 in forceful contact with extensible member 616 as would be seen when the window panel is in its tilted position.

FIG. 10 is a sectional view of brake 620 taken along lines 10—10 in FIG. 8. Brake 620 is generally T-shaped having ends 621 and 623. The ends 621 and 623 are designed to be inserted into receiving slots 625 and 627 in the housing extension 604 shown in FIG. 9.

Turning now to FIGS. 11 and 12, another embodiment of a latching mechanism for a balancer is provided. Balancer 650 is the same as balancer 600 except that the brake utilized in balancer 650 has a rotational end instead of an anchored end. A rotational end is an end of a brake designed and positioned so that it can pivot about an axis. Brake 652 includes a rotational end 654 and a braking end 656. Braking end 656 is the same as braking end 624 of the embodiment shown in FIGS. 7-9. Rotational end 654 is not anchored, as was anchored end 622 in FIGS. 7-9. Rotational end 654 is designed to rotate about axis 658.

Operation of brake 652 is similar to brake 620 except that brake 652 rotates around axis 658 instead of flexing along the length of the brake when the rotatable cam member presses on the brake.

FIG. 13 is a sectional view of brake 652 taken along lines 13—13 in FIG. 12. As can be seen in FIG. 13, brake 652 in this view is T-shaped.

FIG. 14 is a portion of the balancer 650 taken along lines 14—14 in FIG. 12. Rotational end 654 of brake 652 can be seen positioned in a slot formed by slot edge 659 in housing extension 660.

FIGS. 15-18 illustrate another embodiment of a balancer. FIGS. 15-18 do not show the entire balancer but rather components of the balancer. Components of the balancer not shown in FIGS. 15-18 are the same as shown in the earlier discussed embodiments.

FIGS. 15 and 16 are sectional views as would be viewed from an adjacent frame side member when the balancer is secured to a window panel. Balancer 700 includes housing extension 702 configured with an opening 704 for receipt of a rivet for attaching housing extension 702 to an elongated U-shaped housing (not shown).

A pivot pin 706 is integrally connected to housing extension 702. Pivot pin 706 is configured for sliding interaction with a channel in a frame jamb liner that would be adjacent to the balancer.

A rotatable block is a rotatable member configured to rotate about a pivot pin when a window panel to which the associated window panel is attached is moved from a vertical operating position to a tilted position or vice versa. Rotatable block 708 is one embodiment of a rotatable block. Rotatable block 708 rotates about pivot pin 706. In its normal operating position, rotatable block 708 is situated in a groove of a jamb liner such as groove 436 in FIG. 4. Therefore, as the window panel is moved from its vertical operating position

US 6,840,011 B2

11

to its tilted position, rotatable block **708** rotates about pivot pin **706** relative to housing extension **702**. FIG. 15 shows rotatable block **708** in the position associated with the vertical operating position of the window panel and balancer. FIG. 16 illustrates the position of the rotatable block **708** when the window panel and balancer are in a tilted position.

A pinching surface is any surface capable of compressing or pinching an extensible member between itself and another member. Housing extension **702** includes one embodiment of a pinching surface, specifically first pinching surface **710**. First pinching surface **710** is a planar surface.

Housing extension **702** is shown with a cutaway view in FIG. 16 to show the positioning of pulley wheel **714**. Housing extension **702** defines an opening **712** for passage of the extensible member **720** there through. Pulley wheel **714** receives the extensible member from the block and tackle (not shown). Extensible member passes partially around pulley wheel **714** and through the opening **712** and around pulley wheel **716** that is rotationally mounted to the rotatable block **708**. As can be seen in FIG. 15, the opening **712** in extension housing **702** is aligned with pulley wheel **716** when the rotatable block is aligned with the housing extension **702**. In FIG. 16, the rotation of rotatable block **708** causes the circumferential portion **718** of the pulley wheel **716** to move out of alignment with the opening **712**.

Rotatable block **708** includes a second pinching surface **722** as shown in FIG. 17. As rotatable block **708** moves into a position in which it is not aligned with the housing extension as shown in FIG. 16, extensible member **720** is pressed or pinched between the first pinching surface **710** and the second pinching surface **722**. The pinching of extensible member **720** between the first and second pinching surfaces **710** and **722** when the balancer **700** is in the tilted position prevents the extensible member **720** from longitudinal movement which prevents the pivot pin **706** and the connected window panel from moving downward in the direction of gravity during tilting of the window panel and balancer.

Rotatable block **708** includes hinge clasp **724**. Hinge clasp **724** allows for removable attachment of the rotatable block **708** to the pivot pin **706**. Hinged clasp **724** includes hinge portion **726** and attachment end **728**. Hinge clasp **724** hingably rotates about the hinged portion **726**. Attachment end **728** is removably attached to lip **730** of rotatable block **708**.

Rotatable block **708** is preferably made of plastic. Housing extension **702** is preferably made of steel. However other materials and combinations of materials may be used.

Housing extension **702** includes jag **732**. Jag **732** is a protrusion in the housing extension. Rotatable block **708** includes jag **734**, which is a protrusion in the rotatable block **708**. The purpose of jags **732** and **734** is twofold. First, the jags **732** and **734** provide the desired spacing between the first pinching surface and the second pinching surface **722**. The desired distance between the first and second pinching surfaces which is set by the height of the jags **732** and **734** varies depending on the type and size extensible member used and should be engineered to prevent slippage of the extensible member when the window panel is in the tilted position without causing unnecessary damage to the extensible member. A distance between first pinching surface and second pinching surface of between 0.1 and 1.0 mm is preferred. More preferably, a distance between 0.2 and 0.4 mm is used. But of course these dimensions can vary outside these ranges, as they are heavily dependant on the type of extensible member used.

12

Jags **732** and **734** also perform the function of preventing the rotatable block **708** from being moved more than a small distance away from the pivot pin **706**. If the rotatable block **708** begins to move away from the pivot pin **706** the jags **732** and **734** will contact each other to prevent further movement of the rotatable block **708**.

Housing extension **702** includes hemispherically shaped bumps **736** and **738** on the first pinching surface **710**. The hemispherical bumps **736** and **738** are approximately the same height as the jags **732** and **734**. The bumps **736** and **738** provide a more discrete movement of the rotatable block **708** from an aligned position as shown in FIG. 15 to a nonaligned or tilted position as shown in FIG. 16 and vice versa. Because of the frictional fit between the hemispherical bumps **736** and **738** and the surface **740** of the rotatable block **708**, the rotatable block **708** is prevented from too easily sliding from an aligned position to a nonaligned or tilted position. The bumps **736** and **738** help prevent pre-installation accidents wherein the rotatable block **708** may accidentally be moved from a nonaligned position to an aligned position causing release of a loaded spring.

Pulleys **742** and **744** form the pulleys for a block in the block and tackle (tackle not shown and extensible member not shown in relation to pulleys **742** and **744**) the same as in block and tackle **418** disclosed earlier.

FIG. 18 is a view of a rotatable block **708** taken along the lines 18—18 in FIG. 17. Rotatable block **708** defines an opening **748** for placement of pulley wheel **716**. Rotatable block **708** also defines an opening **746** for passage of the extensible member **720** there through where the extensible member **720** would then pass through the opening **712** in the housing extension **702**. Second pinching surface **722** can be seen adjacent to the opening **746**. Jag **734** extends across the rotatable member **708** with a curvature.

Hinge clasp **728** can be seen in its open position wherein the rotatable member **708** is ready to be placed on the pivot pin **706**.

Turning now to FIGS. 19-23, another embodiment of a latching mechanism for a balancer is disclosed. FIGS. 19-23 do not show the entire balancer but rather illustrate a portion of the housing extension and the latching mechanism that would be utilized by replacing the latching mechanism shown in FIGS. 5 and 6.

FIGS. 19 and 20 illustrate two components of a balancer shown separately. Specifically FIG. 19 illustrates one embodiment of a rotatable pinching member **806** and FIG. 20 illustrates one embodiment of a housing extension **802** and related parts. The components in FIGS. 19 and 20 are combined, as they would be in normal operation in FIGS. 21-23.

Turning first to FIG. 20, a portion of housing extension **802** is provided. Housing extension **802** is configured to be secured to an elongated U-shaped housing as disclosed above with respect to embodiments shown in FIGS. 1-5. Housing extension **802** defines an opening along surface **804**. The opening defined by surface **804** is generally cylindrical and is shaped for receipt of a rotatable pinching member **806** shown in FIG. 19. A pivot pin **808** is integrally secured to the housing extension **802** and passes through the surface defined by surface **804**. Pivot pin **808** serves the same function with respect to sliding interaction with a jamb liner as described above with respect to the embodiments disclosed with respect to FIGS. 1-5. Pulley wheel **810** is rotatably secured to housing extension **802** along axis **812** by axle **813**. Pulley wheel **810** includes a first circumferential edge portion **814** and a second circumferential edge

US 6,840,011 B2

**13**

portion 816. The circumferential edge portions 814 and 816 extend into the opening past the surface 804 so as to provide an appropriate pinching surface with the rotatable pinching member as will be described below.

Turning now to FIG. 19, rotatable pinching member 806 includes a pivot pin-engaging end 818 and a locking end 820 opposite the pivot pin engaging end 818.

A pivot pin-engaging end of a rotatable pinching member may be any shape or design capable of rotatably interacting with the pivot pin so that the rotatable pinching member can rotate about the pivot pin.

Pivot pin-engaging end 818 is one embodiment of a pivot pin-engaging end. Pivot pin engaging end 818 defines a generally circular opening 822 that is approximately the same diameter as the post portion 824 of the pivot pin 808. Rotatable pinching member 806 is attached to the pivot pin 808 with the opening 822 surrounding the post portion 824 of the pivot pin 808. Locking end 820 is positioned in the opening of the housing extension 802 formed by surface 804.

A locking end of a rotatable pinching member is any surface shaped such that rotation of the locking end within a housing extension causes pinching of an extensible member against its associated pulley wheel. Locking end 820 is generally a truncated cone-shape with a first edge 826 and a second edge 828 forming a channel 830 there between.

FIG. 21 illustrates the positioning of the rotatable pinching member 806 with the housing extension 802 when the balancer 800 is in a vertical operating position. As can be seen, pivot-engaging end 818 receives pivot pin 808 around post portion 824. In the position shown in FIG. 21, channel 830 is aligned with the pulley wheel 810. The alignment of channel 830 with the pulley wheel 810 allows the extensible member 832 to pass around the pulley wheel 810 without interference from the rotatable pinching member 806.

Pivot pin engaging end 818 of the rotatable pinching member 806 is slidably received by a groove in a jamb liner such as groove 436 as described above with respect to FIG. 4. Therefore, as the balancer 800 is tilted with respect to its associated frame side member, the rotatable pinching member 806 rotates relative to the housing extension 802 and the pulley wheel 810. Since end 834 of extensible member 832 is attached to the frame side member, the extensible member 832 is pulled out of alignment with the pulley wheel 810 when the balancer is moved to a tilted position.

FIG. 22 illustrates the positioning of the various components of the balancer 800 when the balancer 800 is moving from a vertical operating position to a tilted position. FIG. 23 illustrates the components of balancer 800 and their positions when the balancer 800 is in a tilted position. As can be seen in FIG. 23, rotation of the rotatable pinching member 806 relative to the housing extension 802 and the pulley wheel 810 results in the extensible member 832 becoming pinched or compressed between edge 828 and first circumferential edge portion 814 of pulley wheel 810. This pinching or compression of the extensible member 832 prevents longitudinal movement of the extensible member 832 when in the tilted position.

As with all of the embodiments of this invention, as the balancer 800 is moved back from a tilted position to a vertical operating position, the extensible member moves back from a pinched or compressed state to its normal operating state in which longitudinal movement is allowed.

It should be noted that if the rotatable pinching member 806 is designed with two edges such as edges 826 and 828, the balancer could be used for either side of a window panel.

**14**

It should also be noted that in a preferred embodiment, edges 826 and 828 are chamfered as shown in FIG. 19. The chamfered edge allows for pinching of the extensible member without unnecessary abrasion or damage to the extensible member.

It should be noted that in one preferred embodiment of this invention, the balancer is operatively coupled to the window panel. The window panel may be a pane of glass or it may be an insulated glass assembly. The balancer may also be operatively coupled to the window panel through connection to a sash as has been illustrated above.

The foregoing description of preferred embodiments of the invention has been presented for the purposes of illustration and description. It is not intended to be exhaustive or to limit the invention to the precise form disclosed. It is intended that the scope of the invention be limited not by this detailed description, but rather by the claims appended hereto.

What is claimed is:

1. A sliding window comprising:

(a) frame having a first vertical side member and an oppositely disposed second vertical side member wherein the first and second side members define a plane;

(b) a sash housing a window panel, the sash having a first side member and an oppositely disposed second side member, the sash having a first substantially vertical operating position in which the sash is slidably mounted in the frame with the first and second side members substantially parallel to the first and second frame side members, and the sash having a tilted position wherein the sash is positioned at an angle with respect to the plane of the frame; and

(c) balancer comprising:

(i) housing secured to the first side of the sash wherein the housing comprises a pivot end about which the housing pivots when the sash rotates from the vertical operating position to the tilted position;

(ii) extensible member having a first end operatively coupled to the balancer and a second end operatively coupled to the first side member of the frame, wherein the balancer exerts a force on the sash through the extensible member in the direction substantially opposite the force of gravity when the sash is in the vertical operating position; and

(iii) latching mechanism communicating with the balancer wherein the latching mechanism prevents the pivot end of the housing from moving vertically in the direction of gravity when the sash is in the tilted position.

2. The window of claim 1 wherein the housing comprises an elongated housing defining an elongated chamber, the housing comprising a second end opposite the pivot end, and wherein the balancer further comprises:

(a) biasing member for providing a biasing force, the biasing member having an anchored end and an opposite movable end, wherein the anchored end is connected to the second end of the housing and located in the elongated chamber;

(b) block and tackle located in the elongated chamber, the block secured to the housing near the pivot end, the tackle operatively coupled to the movable end of the biasing member, wherein the extensible member operatively connects the block to the tackle; and

(c) pulley wheel operatively coupled to the housing substantially near the pivot end of the housing, the

US 6,840,011 B2

15                                                     16

pulley wheel comprising a circumferential portion wherein the extensible member passes partially around the circumferential portion of the pulley wheel wherein the pulley wheel causes a change in direction of the extensible member of about 180 degrees.

3. The window of claim 1 wherein the biasing member is a spring.

4. The window of claim 1 comprising a second balancer secured to the side of the sash opposite the first balancer.

5. The window of claim 4 wherein a first sash groove is defined in the first sash side member and a second sash groove is defined in the second sash side member wherein the first balancer is mounted in the first sash groove and the second balancer is mounted in the second sash groove.

6. The window of claim 1 wherein the housing comprises an elongated housing defining an elongated chamber, the elongated housing having a second end wherein the balancer further comprises:

(a) pulley wheel operatively coupled to the housing substantially near the pivot end of the housing, the pulley wheel including a first and second circumferential edge portion defining a groove there between;

(b) biasing member located in the elongated chamber for providing a biasing force, the biasing member having an anchored end and an oppositely disposed movable end, wherein the anchored end of the biasing member is connected to the second end of the housing;

(c) block and tackle located in the elongated chamber, wherein the tackle is operatively coupled to the movable end of the biasing member and the block is operatively coupled to the pivot end of the housing, wherein the extensible member operatively connects the block to the tackle, wherein the extensible member has a first end, second end and central portion, wherein the first end of the extensible member is operatively coupled to the block and tackle, the central portion connects the block to the tackle and the central portion is operatively coupled to the pulley wheel wherein the central portion has a first position relative to the pulley wheel in which the central portion of the extensible member is in the groove of the pulley wheel, the extensible member being in the first position when the sash is in the vertical position, wherein the second end of the extensible member is anchored to the first frame side member, wherein the extensible member is extensible when in the first position;

(d) pinching member adjacent one of the first and second edge portions of the pulley wheel wherein the extensible member has a second position relative to the pulley wheel in which the extensible member has a second position relative to the pulley wheel in which the extensible member is positioned between the pinching member and one of the first and second edge portions wherein the extensible member is not extensible when in the second position, and the extensible member is in the second position when the sash is in the tilted position.

7. The window of claim 6 further comprising a jamb liner substantially parallel to and operatively coupled to the first frame side member, the jamb liner having a front face, the front face having an elongate channel, and wherein a pivot pin that slides in the elongate channel is operatively coupled to the balancer wherein the sash can be pivoted at the pivot pin from the vertical position to the tilted position, and wherein the extensible member moves from the first position to the second position when the sash is moved from the vertical position to the tilted position.

8. The hung window of claim 1 wherein the latching mechanism comprises:

(a) pulley wheel rotatably connected to the pivot end of the housing, the pulley wheel comprising a circumferential portion wherein the extensible member passes partially around the circumferential portion of the pulley wheel;

(b) brake comprising a braking surface adjacent the extensible member and the circumferential portion of the pulley wheel wherein the pulley wheel and brake have a first relative position wherein a space is provided between the braking surface and the extensible member, and wherein the pulley wheel and brake have a second relative position wherein the extensible member is pinched between the circumferential portion and the braking surface; and

(c) rotatable cam member comprising a camming surface, wherein the rotatable cam member operatively interacts with the first frame side member such that movement of the sash from the vertical operating position to the tilted position causes rotation of the cam member wherein movement of the sash from the vertical operating position to the tilted position results in the camming surface contacting one of the pulley wheel and brake wherein the pulley wheel and brake are moved from the first relative position to the second relative position.

9. The hung window of claim 1 wherein the latching mechanism comprises:

(a) pulley wheel rotatably connected to the pivot end of the housing, the pulley wheel comprising a circumferential portion wherein the extensible member passes partially around the circumferential portion of the pulley wheel;

(b) brake having an unlocked position and a locked position relative to the extensible member, the brake comprising:

(i) braking surface wherein the braking surface is adjacent but not in forceful contact with the extensible member when the brake is in the unlocked position, and the braking surface is in contact with the extensible member such as to compress the extensible member between the circumferential portion of the pulley wheel and the braking surface to prevent longitudinal movement of the extensible member when the brake is in the locked position; and

(ii) force receiving surface opposite the braking surface; and

(c) rotatable cam member comprising a camming surface, wherein the rotatable cam member operatively interacts with the first frame side member such that movement of the sash from the vertical operating position to the tilted position causes rotation of the cam member wherein movement of the sash from the vertical operating position to the tilted position results in the camming surface contacting the force receiving surface of the brake forcing the brake into the locked position.

10. The hung window of claim 9 wherein the brake comprises a rotational end and an oppositely disposed braking end, wherein the braking surface and the force receiving surface are on the braking end, and the rotational end is in pivotal engagement with the housing such that the brake rotates around the rotational end when the camming surface of the cam member contacts the force receiving surface of the brake.

11. The hung window of claim 9 wherein the brake comprises an anchored end and an oppositely disposed

US 6,840,011 B2

17

braking end, wherein the braking surface and the force receiving surface are on the braking end, and the anchored end is nonpivotally anchored to the housing such that the brake bends in the direction of the pulley wheel when the camming surface of the cam member contacts the force receiving surface of the brake.

12. The hung window of claim 9 wherein the cam member comprises:

(a) center axis wherein the cam member rotates around the center axis;

(b) circular section comprising a circular outer edge wherein the distance from the center axis to the circular outer edge is constant along the circular outer edge; and

(c) recessed edge forming a notch wherein the distance from the center axis to the recessed edge is less than the distance from the center axis to the circular outer edge and is wherein the camming surface comprises the recessed edge.

13. The hung window of claim 1 wherein the housing further comprises a first pinching surface at the pivot point end, wherein the pinching surface defines an opening and wherein the latching mechanism further comprises:

(a) rotatable block rotatably coupled to the pivot end of the housing wherein the rotatable block comprises a second pinching surface substantially parallel to the first frame side member such that movement of the sash from the vertical operating position to the tilted position causes rotation of the rotatable block relative to the housing along an axis perpendicular to the first and second pinching surfaces; and

(b) pulley wheel rotatably coupled to the rotatable block, wherein the pulley wheel comprises a circumferential portion, wherein the extensible member passes through the opening in the housing and partially around the circumferential portion of the pulley wheel, wherein the opening in the housing and the circumferential portion of the pulley wheel are aligned when the sash is in its vertical operating position, and the opening in the housing and the circumferential portion of the pulley wheel are out of alignment when the sash is moved into the tilted position wherein the extensible member is pinched between the first pinching surface and the second pinching surface wherein longitudinal movement of the extensible member is prevented when the sash is moved to the tilted position.

14. The hung window according to claim 13 wherein the rotatable block comprises plastic.

15. The hung window according to claim 13 wherein the balancer further comprises a pivot pin connected to the pivot end of the housing wherein the pivot pin is configured for sliding interaction with the frame side member adjacent the

18

balancer and wherein the rotatable block is rotatably coupled to the pivot pin to provide rotation of the rotatable block relative to the housing.

16. The hung window according to claim 1 wherein the housing is configured to further define an opening, wherein the balancer further comprises a pivot pin connected to the pivot end of the housing wherein the pivot pin is configured for sliding interaction with the first frame side member, and wherein the latching mechanism further comprises:

(a) pulley wheel rotatably coupled to the pivot end of the housing, wherein the pulley wheel comprises a circumferential edge portion extending into the opening defined by the housing; and

(b) rotatable pinching member rotatably coupled to the pivot pin, the rotatable pinching member operatively interacting with the first frame side member such that movement of the sash from the vertical operating position to the tilted position causes rotation of the rotatable pinching member relative to the housing along an axis parallel to the pivot pin, wherein the rotatable pinching member comprises:

(i) pivot pin engaging end defining a pivot pin receiving opening for receiving the pivot pin wherein the rotatable pinching member operatively interacts with the frame side member adjacent the balancer to pivot around the pivot pin when the sash is moved from the vertical operating position to the tilted position;

(ii) locking end opposite the pivot pin engaging end wherein the locking end is positioned in the housing opening, wherein the locking end includes a first edge and a second edge wherein the first and second edges define a channel therebetween, wherein when the sash is in the vertical operating position the channel is aligned with the pulley wheel to allow longitudinal movement of the extensible member through the channel, and when the sash is in the tilted position the channel is not aligned with the pulley wheel wherein the extensible member is pinched between the circumferential edge portion of the pulley wheel and one of the first and second edges of the locking end of the rotatable pinching member wherein longitudinal movement of the extensible member is prevented.

17. The hung window according to claim 16 wherein one of the first and second edges of the rotatable pinching member is chamfered.

18. The hung window of claim 1 wherein the latching mechanism prevents longitudinal movement of the extensible member when the sash is tilted.

* * * * *

BEST AVAILABLE COPY

**U.S. UTILITY Patent Application**

| | PATENT NUMBER and ISSUE DATE |
|---|---|

| APPL NUM | FILING DATE | CLASS | SUBCLASS | GAU | EXAMINER |
|---|---|---|---|---|---|
| 10446279 | 05/23/2003 | 049 | | 3634 | |

**APPLICANTS:**    Stuart Uken; Gary Newman; Lawrence VerSteeg;

*ok HTSI*

**CONTINUING DATA VERIFIED:**

This application is a CON of 10/044,005 01/11/2002, *now U.S. Patent # 6,679,000*, which claims benefit of 60/261,501 01/12/2001

**FOREIGN APPLICATIONS VERIFIED:**

PG-PUB DO NOT PUBLISH ☐    RESCIND ☐

Foreign priority claimed ☐ yes ☐ no
35 USC 119 conditions met ☐ yes ☐ no
Verified and Acknowledged Examiner's Initials

| | ATTORNEY DOCKET NO |
|---|---|
| | BSI-018C1 |

**TITLE :** Snap lock balance shoe and system for a pivotable window

U.S. DEPT. OF COMM./PAT.& TM-PTO-436L(Rev. 12-99)

**NOTICE OF ALLOWANCE MAILED**

| | | CLAIMS ALLOWED |
|---|---|---|
| **ISSUE FEE** | Assistant Examiner | Total Claims / Print Claim for O.G. |
| Amount Due | Date Paid | | **DRAWING** |
| | | | Sheets Drwg. / Figs. Drwg. |
| ☐ TERMINAL DISCLAIMER | Primary Examiner | Application Examiner |
| | **PREPARED FOR ISSUE** | |

**WARNING:** The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

**FILED WITH:** ☐ DISK (CRF)    ☐ CD-ROM
(Attached in pocket on right inside flap)

C000692

BEST AVAILABLE COPY

| SEARCH | | | | | SEARCH NOTES (List databases searched. Attach search strategy inside.) | | |
|---|---|---|---|---|---|---|---|
| Class | Sub. | Date | Exmr. | | | Date | Exmr. |
| 49 | 181 | 9-15-03 | HYS | | | 9-15-03 | HYS |
| | 183 | | | | patent checked 10/014,005 | | |
| | 184 | | | | | | |
| | 185 | | | | | | |
| | 186 | | | | | | |
| | 445 | | | | | | |
| | 446 | | | | | | |
| | 449 | | | | | | |
| | 455 | | | | | | |
| | 453 | | | | | | |
| | 454 | | | | | | |
| | 176 | | | | | | |
| | 177 | | | | | | |
| | 161 | | | | | | |
| 292 | 174 | | | | | | |
| | 175 | | | | | | |
| | 263 | | | | | | |
| | 47 | | | | | | |
| 16 | 192 | ↓ | ↓ | | | | |
| updated above | | 4-13-04 | HYS | | | | |
| updated above | | 7-27-04 | HYS | | | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| same as above | | 7-27-04 | HYS |

C000693

| *Index of Claims* | | Application No. | Applicant(s) |
|---|---|---|---|
| | | 10/446,279 | UKEN ET AL. |
| | | Examiner | Art Unit |
| | | Hugh B. Thompson II | 3634 |

| | | | | | |
|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected |
| = | Allowed | + | Restricted | I | Interference |

| | |
|---|---|
| A | Appeal |
| O | Objected |

| Claim | | Date | Claim | | Date | Claim | | Date |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | Final | Original | | Final | Original | |
| | 1 | | | 51 | | | 101 | |
| | 2 | | | 52 | | | 102 | |
| | 3 | | | 53 | | | 103 | |
| | 4 | | | 54 | | | 104 | |
| | 5 | | | 55 | | | 105 | |
| | 6 | | 1 | 56 | | | 106 | |
| | 7 | | 2 | 57 | | | 107 | |
| | 8 | | 3 | 58 | | | 108 | |
| | 9 | | 4 | 59 | | | 109 | |
| | 10 | | 5 | 60 | | | 110 | |
| | 11 | | 6 | 61 | | | 111 | |
| | 12 | | 7 | 62 | | | 112 | |
| | 13 | | 8 | 63 | | | 113 | |
| | 14 | | 9 | 64 | | | 114 | |
| | 15 | | 10 | 65 | | | 115 | |
| | 16 | | 11 | 66 | | | 116 | |
| | 17 | | | 67 | | | 117 | |
| | 18 | | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

U.S. Patent and Trademark Office

Part of Paper No. 20040727

C000694

| Issue Classification | Application No. 10/446,279 | Applicant(s) UKEN ET AL. |  |
|---|---|---|---|
|  | Examiner Hugh B. Thompson II | Art Unit 3634 |  |

## ISSUE CLASSIFICATION

| ORIGINAL | | CROSS-REFERENCE(S) | |
|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
| 049 | 181 | 049 | 176  197  446 |
| INTERNATIONAL CLASSIFICATION | | 016 | 197 |
| E 0 5 D  15  22 | | | |
| E 0 5 F  1  00 | | | |

Assistant Examiner (Date) 9/1/04

HUGH B. THOMPSON II
PRIMARY EXAMINER
TECHNOLOGY CENTER 3600

Hugh B. Thompson II  7-28-04
(Primary Examiner) (Date)

Total Claims Allowed: 11

O.G. Print Claim(s)     O.G. Print Fig.  3c

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1 |  | 31 | 6 | 61 |  | 91 |  | 121 |  | 151 |  | 181 |
|  | 2 |  | 32 | 7 | 62 |  | 92 |  | 122 |  | 152 |  | 182 |
|  | 3 |  | 33 | 8 | 63 |  | 93 |  | 123 |  | 153 |  | 183 |
|  | 4 |  | 34 | 9 | 64 |  | 94 |  | 124 |  | 154 |  | 184 |
|  | 5 |  | 35 | 10 | 65 |  | 95 |  | 125 |  | 155 |  | 185 |
|  | 6 |  | 36 | 11 | 66 |  | 96 |  | 126 |  | 156 |  | 186 |
|  | 7 |  | 37 |  | 67 |  | 97 |  | 127 |  | 157 |  | 187 |
|  | 8 |  | 38 |  | 68 |  | 98 |  | 128 |  | 158 |  | 188 |
|  | 9 |  | 39 |  | 69 |  | 99 |  | 129 |  | 159 |  | 189 |
|  | 10 |  | 40 |  | 70 |  | 100 |  | 130 |  | 160 |  | 190 |
|  | 11 |  | 41 |  | 71 |  | 101 |  | 131 |  | 161 |  | 191 |
|  | 12 |  | 42 |  | 72 |  | 102 |  | 132 |  | 162 |  | 192 |
|  | 13 |  | 43 |  | 73 |  | 103 |  | 133 |  | 163 |  | 193 |
|  | 14 |  | 44 |  | 74 |  | 104 |  | 134 |  | 164 |  | 194 |
|  | 15 |  | 45 |  | 75 |  | 105 |  | 135 |  | 165 |  | 195 |
|  | 16 |  | 46 |  | 76 |  | 106 |  | 136 |  | 166 |  | 196 |
|  | 17 |  | 47 |  | 77 |  | 107 |  | 137 |  | 167 |  | 197 |
|  | 18 |  | 48 |  | 78 |  | 108 |  | 138 |  | 168 |  | 198 |
|  | 19 |  | 49 |  | 79 |  | 109 |  | 139 |  | 169 |  | 199 |
|  | 20 |  | 50 |  | 80 |  | 110 |  | 140 |  | 170 |  | 200 |
|  | 21 |  | 51 |  | 81 |  | 111 |  | 141 |  | 171 |  | 201 |
|  | 22 |  | 52 |  | 82 |  | 112 |  | 142 |  | 172 |  | 202 |
|  | 23 |  | 53 |  | 83 |  | 113 |  | 143 |  | 173 |  | 203 |
|  | 24 |  | 54 |  | 84 |  | 114 |  | 144 |  | 174 |  | 204 |
|  | 25 |  | 55 |  | 85 |  | 115 |  | 145 |  | 175 |  | 205 |
|  | 26 | 1 | 56 |  | 86 |  | 116 |  | 146 |  | 176 |  | 206 |
|  | 27 | 2 | 57 |  | 87 |  | 117 |  | 147 |  | 177 |  | 207 |
|  | 28 | 3 | 58 |  | 88 |  | 118 |  | 148 |  | 178 |  | 208 |
|  | 29 | 4 | 59 |  | 89 |  | 119 |  | 149 |  | 179 |  | 209 |
|  | 30 | 5 | 60 |  | 90 |  | 120 |  | 150 |  | 180 |  | 210 |

U.S. Patent and Trademark Office

Part of Paper No. 20040727

C000695

# File History Report - References

**Other Publications** – While copying the 'Other Publications' section of your file history we noticed that one or more pages and/or publications are missing from this portion of the file wrapper contents. Please note that all references have been copied as they appear in the file history. At your request, we will attempt to obtain the missing publication(s) from alternative resources. Please note that additional charges will apply to this service.

5350 Shawnee Road • Suite 110 • Alexandria, VA 22312
Phone: 800.445.9760 or 703.916.1500 • fax: 800.445.9761 or 703.916.1727
www.faxpat.com  www.optipat.com

C000696



US006820368B2

(12) **United States Patent**
Uken et al.

(10) Patent No.:     **US 6,820,368 B2**
(45) Date of Patent:     **Nov. 23, 2004**

(54) **SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW**

(75) Inventors: **Stuart J. Uken**, Sioux Falls, SD (US); **Gary R. Newman**, Valley Springs, SD (US); **Lawrence J. VerSteeg**, Sioux Falls, SD (US)

(73) Assignee: **Amesbury Group, Inc.**, Amesbury, MA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/446,279**

(22) Filed: **May 23, 2003**

(65) **Prior Publication Data**

US 2003/0192257 A1 Oct. 16, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 10/044,005, filed on Jan. 11, 2002, now Pat. No. 6,679,000.
(60) Provisional application No. 60/261,501, filed on Jan. 12, 2001.

(51) Int. Cl.⁷ ............................. E05D 15/22; E05F 1/00
(52) U.S. Cl. ............................. 49/181; 49/176; 49/446; 16/197
(58) Field of Search ..................... 49/181, 183, 184, 49/185, 186, 445, 446, 449, 455, 453, 454, 176, 177, 161; 292/174, 175, DIG. 63, DIG. 47, DIG. 37; 16/197

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,007,212 A | 10/1911 | Lasersohn | |
| 1,312,665 A | 8/1919 | Almquist | |
| 2,178,533 A | 10/1939 | Viehweger | |
| 2,952,884 A | 9/1960 | Dinsmore | |
| 3,007,194 A | 11/1961 | Griswold | |
| 3,105,576 A | 10/1963 | Jones et al. | |
| 3,461,608 A | 8/1969 | Johnson | |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

CA      2382933      4/2002

OTHER PUBLICATIONS

BSI's Hidden Advantage: It's as Easy as 1–2–3, Balance Systems—BSI, Amesbury Group, Inc., 2001. (3 pgs.), no month available.

(List continued on next page.)

*Primary Examiner*—Hugh B. Thompson, II
(74) *Attorney, Agent, or Firm*—Testa, Hurwitz & Thibeault, LLP

(57)     **ABSTRACT**

The invention relates to a snap lock balance shoe and balance systems to be incorporated in pivotable double hung windows and installation methods of such systems. In one embodiment, the snap lock balance shoe includes a pair of retractable tabs that partially extend through openings within an inverted window balance. In one embodiment of the method, an elongated end of the balance shoe is inserted into a window jamb and then rotated into position.

**11 Claims, 13 Drawing Sheets**



**US 6,820,368 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,497,999 A | 3/1970 | Ilendra | |
| 3,529,381 A | 9/1970 | Grossman | |
| 3,676,956 A | 7/1972 | Taylor et al. | |
| 3,732,594 A | 5/1973 | Mills | |
| 3,869,754 A | 3/1975 | Foster | |
| 4,028,849 A | 6/1977 | Anderson | |
| 4,068,406 A | 1/1978 | Wood | 49/181 |
| 4,079,549 A | 3/1978 | Wood | 49/181 |
| 4,089,085 A | 5/1978 | Fitzgibbon | |
| 4,190,930 A | 3/1980 | Prosser | |
| 4,300,316 A | 11/1981 | Ficurilli | |
| 4,332,054 A | 6/1982 | Paist et al. | 16/197 |
| 4,506,478 A | 3/1985 | Anderson | 49/181 |
| 4,510,713 A | 4/1985 | Anderson | 49/175 |
| 4,610,108 A | 9/1986 | Marshik | 49/181 |
| 4,697,304 A | 10/1987 | Overgard | |
| 4,930,254 A | 6/1990 | Valentin | 49/181 |
| 4,941,285 A | 7/1990 | Westfall | 49/176 |
| 4,949,425 A | 8/1990 | Dodson et al. | |
| 4,958,462 A | 9/1990 | Cross | 49/181 |
| 5,089,001 A | 12/1991 | Makarowski | 49/176 |
| 5,127,192 A | 7/1992 | Cross | 49/181 |
| 5,140,769 A | 8/1992 | Hickson et al. | |
| 5,189,838 A | 3/1993 | Westfall | 49/181 |
| 5,251,401 A | 10/1993 | Prete et al. | 49/181 |
| 5,301,467 A | 4/1994 | Schmidt et al. | 49/181 |
| 5,353,548 A | 10/1994 | Westfall | |
| 5,371,971 A | 12/1994 | Prete | |
| 5,377,384 A | 1/1995 | Riegelman | 16/193 |
| D355,262 S | 2/1995 | Chaney et al. | |
| 5,445,364 A | 8/1995 | Tibbals, Jr. | |
| 5,448,858 A | 9/1995 | Briggs et al. | |
| 5,452,495 A | 9/1995 | Briggs | |
| 5,463,793 A | 11/1995 | Westfall | |
| 5,530,991 A | 7/1996 | deNormand et al. | |
| 5,553,903 A | 9/1996 | Prete et al. | 292/163 |
| 5,566,507 A | 10/1996 | Schmidt et al. | |
| 5,572,828 A | 11/1996 | Westfall | 49/181 |
| 5,615,452 A | 4/1997 | Habbersett | 16/194 |
| 5,632,117 A | 5/1997 | Prete et al. | 49/181 |
| 5,632,118 A | 5/1997 | Stark | 49/181 |
| 5,661,927 A | 9/1997 | Polowinczak et al. | 49/447 |
| 5,669,180 A | 9/1997 | Maier | |
| 5,697,188 A | 12/1997 | Fullick et al. | 49/181 |
| 5,704,165 A | 1/1998 | Slocomb et al. | 49/181 |
| 5,737,877 A | 4/1998 | Meunier et al. | 49/445 |
| 5,802,767 A | 9/1998 | Slocomb et al. | 49/181 |
| 5,806,243 A | 9/1998 | Prete et al. | 49/181 |
| 5,806,900 A | 9/1998 | Bratcher et al. | 292/137 |
| 5,829,196 A | 11/1998 | Maier | 49/181 |
| 5,855,092 A | 1/1999 | Ranp et al. | |
| 5,873,199 A | 2/1999 | Meunier et al. | 49/181 |
| 5,924,243 A | 7/1999 | Polowinczak et al. | 49/181 |
| 5,927,013 A | 7/1999 | Slocomb et al. | 49/181 |
| 5,943,822 A | 8/1999 | Slocomb et al. | 49/181 |
| 6,032,417 A | 3/2000 | Jakus et al. | 49/181 |
| 6,041,475 A | 3/2000 | Nidelkoff | 16/193 |
| 6,041,476 A | 3/2000 | deNormand | 16/197 |
| 6,041,550 A | 3/2000 | Tix | 49/404 |
| 6,058,653 A | 5/2000 | Slocomb et al. | 49/181 |
| 6,119,398 A | 9/2000 | Yates, Jr. | |
| D434,637 S | 12/2000 | Habeck et al. | |
| 6,155,615 A | 12/2000 | Schultz | 292/163 |
| 6,161,335 A | 12/2000 | Beard et al. | |
| 6,178,696 B1 | 1/2001 | Liang | 49/185 |
| 6,226,923 B1 | 5/2001 | Hicks et al. | |
| 6,467,128 B1 | 10/2002 | Damani | |
| 6,470,530 B1 | 10/2002 | Trunkle | |
| D467,490 S | 12/2002 | Uken et al. | |
| 6,622,342 B1 | 9/2003 | Annes et al. | |
| 6,679,000 B2 | 1/2004 | Uken et al. | |
| 2002/0092241 A1 | 7/2002 | Uken et al. | |
| 2002/0129463 A1 | 9/2002 | Newman | |

### OTHER PUBLICATIONS

BSI Tilt Balance Systems, Balance Systems—BSI, Amesbury Group, Inc., 1996–2001. (4 pgs.), no month available.

Crossbow Balance! Another New Balance in BSI's Quiver, Balance Systems—BSI, Amesbury Group, Inc., Jun. 7, 1999. (3 pgs.).

C000698



FIG. 1

C000699

U.S. Patent    Nov. 23, 2004    Sheet 2 of 13    US 6,820,368 B2



PRIOR ART

FIG. 2A

C000700



FIG. 2B

C000701

**U.S. Patent**    Nov. 23, 2004    Sheet 4 of 13    US 6,820,368 B2



**FIG. 3A**



**FIG. 3B**



FIG. 3C

C000703



U.S. Patent     Nov. 23, 2004     Sheet 6 of 13     US 6,820,368 B2



210

230

FIG. 3D



210

240

250     250

FIG. 3E

210

250

FIG. 3F

C000704



**FIG. 4**

C000705

410



FIG. 5A

410



FIG. 5B

C000706



FIG. 6A

FIG. 6B

C000707



FIG. 6C

FIG. 6D

C000708

U.S. Patent    Nov. 23, 2004    Sheet 11 of 13    US 6,820,368 B2

FIG. 7A

FIG. 7B

FIG. 8A

FIG. 8B

C000709



FIG. 9



FIG. 10A

FIG. 10B

FIG. 11A

FIG. 11B

FIG. 12A

FIG. 12B

FIG. 13A

FIG. 13B

C000711

US 6,820,368 B2

1

# SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW

## RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/044,025 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on Jan. 11, 2002, now U.S. Pat. No. 6,679,000, which application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Ser. No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on Jan. 12, 2001.

## FIELD OF THE INVENTION

This invention relates to a window balance system for use in a pivotable window assembly.

## BACKGROUND OF THE INVENTION

This invention relates to the field of tilt-in windows. More particularly this invention relates to a balance shoe of a window balance system used in conjunction with a pivot bar mounted on a window sash for rotating the window sash relative to a window frame.

Typical pivotable double hung windows include two window sashes disposed in tracks located in a window frame to allow vertical sliding movement of the sashes. Pivot bars are provided to allow rotational movement of a pivotable window sash about the pivot bars to facilitate cleaning of glazing. To control vertical movement, window balances are used so that the window sashes remain in a position in which they are placed. Balance shoes are used to guide the rotational movement of the window sashes with respect to the window frame. Typically, the balance shoes are coupled to window balances with a connecting member. See, for example, U.S. Pat. No. 6,119,398, entitled "Tilt Window Balance Shoe Assembly with Three Directional Locking" issued to H. Dale Yates, Jr., the disclosure of which is herein incorporated by reference in its entirety.

One of the problems with balance shoes and window balances for pivotable double hung windows is that they are difficult to install. In order to install a pivotable double hung window with balance shoes and window balances, the following installation steps typically must be followed. First, before the window frame is assembled, the balance shoes are inserted into jamb tracks. Next, connecting members are used to attach the balance shoes to the window balances. The balance shoes generally have an opening to accept the pivot bars that are mounted on window sashes. Finally, the sashes are made operable by inserting the pivot bars into the balance shoes and rotating the window sash up to a vertical position in the jamb tracks. The installation process is rather complex and difficult. Repair costs for replacing balance shoes are also significant. In order to change a malfunctioning or failed balance shoe, the jamb tracks either need to be deformed or replaced to gain access to the problematic balance shoe for removal and replacement.

## SUMMARY OF THE INVENTION

In general, in one aspect, the invention relates to a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within a window balance. Embodiments of the invention can include the

2

following features. The connecting device can include one or more retractable tabs that engage the window balance directly. The frame can further include a frame pocket sized to receive a fastener. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

In another aspect, the invention relates to an inverted window balance system for use within a pivotable double hung window assembly. The inverted window balance system includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, which include an extension spring, a system of pulleys, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. Embodiments of this aspect of the invention can include the following features. At least a portion of the balance shoe is disposed within the rigid U-shaped channel. The connecting device can include one or more retractable tabs for engaging the rigid U-shaped channel. The retractable tabs can partially extend through at least one of the plurality of openings in the rigid U-shaped channel. The balance shoe can be further secured to the rigid U-shaped channel with a fastener that interfaces with a frame pocket in the balance shoe. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

In still another aspect, the invention relates to a method of installing an inverted window balance system within a window jamb in a window frame. The method includes four basic steps. The first step is to provide an inverted window balance system that includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, an extension spring and a system of pulleys disposed within the rigid U-shaped channel, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member located at least partially

C000712

US 6,820,368 B2

3

within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. The frame of the balance shoe has a frame bottom surface, a frame front surface, and two frame edge surfaces. The second step is to insert the inverted window balance system into a jamb track of the window jamb, such that an axis extending along a longitudinal direction of the rigid U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track. The third step is to rotate the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the rigid U-shaped channel, such that the frame front surface faces in a downward direction. The final step is to rotate the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces, such that the frame bottom surface faces in the downward direction.

These and other features of the invention will be made apparent from the following description taken in conjunction with the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIG. 1 is a perspective view of a pivotable double hung window assembly;

FIG. 2A is a rear view of inverted window balance system for use with a prior art balance shoe;

FIG. 2B is a rear view of a window balance;

FIG. 3A is one perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 3B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 3A;

FIG. 3C is a rear view of one embodiment of a snap lock inverted balance system;

FIG. 3D is a bottom view of one embodiment of a snap lock balance shoe;

FIG. 3E is a front view of one embodiment of a snap lock balance shoe;

FIG. 3F is a side view of one embodiment of a snap lock balance shoe;

FIG. 4 is a perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 5A is one perspective view of another embodiment of a snap lock balance shoe of the present invention;

FIG. 5B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 5A;

FIG. 6A is a perspective view of one embodiment of a balance shoe of the invention and a rigid U-shaped channel;

FIG. 6B is a perspective view showing the first step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6C is a perspective view showing the second step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6D is a perspective view showing one embodiment of the balance shoe of the invention connected to the rigid U-shaped channel;

FIG. 7A is a front view of a prior art balance shoe attached to a rigid U-shaped channel;

4

FIG. 7B is a side view of the prior art balance shoe attached to the rigid U-shaped channel;

FIG. 8A is a front view of one embodiment of a snap lock balance shoe of the present invention attached to a rigid U-shaped channel;

FIG. 8B is a side view of one embodiment of the snap lock balance shoe of the present invention attached to the rigid U-shaped channel;

FIG. 9 is a front view of a window assembly including one snap lock inverted window balance system of the present invention and one prior art inverted window balance system installed in a window frame;

FIG. 10A is a side view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 10B is a front view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 11A is a side view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 11B is a front view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12A is a side view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12B is a front view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 13A is a side view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track; and

FIG. 13B is a front view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track.

DETAILED DESCRIPTION OF THE INVENTION

Referring to FIG. 1, shown is a pivotable double hung window assembly 100 in which a snap lock balance shoe constructed in accordance with the teachings of the present invention can be used. The pivotable double hung window assembly 100 includes a window frame 102, a pivotable lower window sash 104, a pivotable upper window sash 106, and a window jamb 107. The pivotable lower window sash 104 and the pivotable upper window sash 106 slide vertically in jamb track 108 within the window jamb 107, while also being able to pivot about a pivot bar 114, as shown in FIG. 9.

FIG. 2A shows a rear view of an inverted window balance system 120 for use in the pivotable double hung window assembly 100. The inverted window balance system 120 includes an inverted window balance 122 used for balancing the weight of either the pivotable lower window sash 104 or the pivotable upper window sash 106 at any vertical position within the window frame 102, and a prior art balance shoe 110 for guiding the rotation of the pivotable lower window sash 104 about the pivot bar 114. A hanging connector 112 connects the prior art balance shoe 110 to the inverted window balance 122. The inverted window balance 122 includes an extension spring 126 connected to a system of pulleys 128 housed within a rigid U-shaped channel 130, and a cord 132 for connecting the system of pulleys 128 to a jamb mounting attachment 134. The jamb mounting

C000713

US 6,820,368 B2

5

attachment 134 is used for connecting the inverted window balance system 120 to the window jamb 107. One difference between the inverted window balance 122 and a window balance 140, shown in FIG. 2B, includes the placement of the extension spring 146 above a system of pulleys 148 within the rigid U-shaped channel 150. A cord 152 connects the system of pulleys 148 to a jamb mounting attachment 154. Another difference is that while inverted window balances 122 travel with either the pivotable lower window sash 104 or pivotable upper window sash 106, the window balance 140 remains in a fixed position in the window jamb 107 due to an attachment to the window jamb 107 through an attachment opening 155.

FIGS. 3A and 3B are perspective views of a snap lock balance shoe 210 of one embodiment of the present invention. The snap lock balance shoe 210 has a frame 211 in which is housed a connecting device 212, a locking device 214, and a cam 218. The connecting device 212 can be integral with the frame 211 and attaches the snap lock balance shoe 210 directly within an inverted window balance 622, shown in FIG. 3C. The inverted window balance 622 in combination with the snap lock balance shoe 210 forms a snap lock inverted window balance system 600. The inverted window balance 622 includes an extension spring 626 connected to a system of pulleys 628 housed within a rigid U-shaped channel 630, and a cord 632 for connecting the system of pulleys 628 to a jamb mounting attachment 634, such as a cord terminal or hook.

In the depicted embodiment, the connecting device 212 is a pair of retractable tabs that snap into the rigid U-shaped channel 630. In other embodiments, other connecting devices such as a screw, may be used to secure the frame 211 to the rigid U-shaped channel 630. A fastener 635 located in the inverted window balance 622 can be used to further secure the connection between the snap lock balance shoe 210 and the inverted window balance 622. To accommodate the fastener 635, the snap lock balance shoe 210 can form a connection pocket 213 sized to receive or mate with the fastener 635.

Another element of the snap lock balance shoe 210 visible in FIG. 3A is a keyhole opening 219 located within the cam 218. The keyhole opening 219 is sized to accept the pivot bar 114 extending from either the pivotable lower window sash 104 or the pivotable upper window sash 106, and serves as a connection point between the pivotable lower or upper window sash 104, 106 and the snap lock balance shoe 210. FIG. 3B shows a perspective view of the snap lock balance shoe 210 showing another face of the cam 218.

In the embodiment shown in FIG. 3B, the locking device 214 surrounds the cam 218 and includes of a pair of opposing ends 215 connected by a spring member 216. When the pivotable lower window sash 104 is tilted open, the pivot bar 114 rotates, which in turn rotates the cam 218 forcing the opposing ends 215 outward to engage the jamb track 108 of the window frame 102, thereby locking the balance shoe 210 in that location.

FIGS. 3D–3F show different views of one of the embodiments of the snap lock balance shoe 210 of the invention. FIG. 3D is a bottom view of the snap lock balance shoe 210 that shows a frame bottom surface 230. FIG. 3E is a front view of the same embodiment of the snap lock balance shoe 210 that illustrates a frame front surface 240, and FIG. 3F is an side view that shows one of the two frame edge surfaces 250 of the snap lock balance shoe 210.

FIG. 4 shows another embodiment of a snap lock balance shoe 310. The snap lock balance shoe 310 has an elongated

6

frame 311 in which is housed a connecting device 312, a locking device 314, and a cam 318. Within the cam is a keyhole opening 319 sized to receive the pivot bar 114. The elongated frame 311 has a length L 325 that is greater than about 1.25 inches. When attached to the rigid U-shaped channel 630, the balance shoe 310 extends further outward from the rigid U-shaped channel 630 than the balance shoe 210 attached to a similar sized rigid U-shaped channel 630. The balance shoe 310 allows a fixed-sized rigid U-shaped channel 630 to be used in a larger window having a greater travel distance by extending the length of the entire window balance system by having a longer balance shoe 310. One of the advantages of the present invention is that an installer can create a custom window balance system for a particular window by fitting a fixed-length rigid U-shaped channel 630 with an appropriately sized snap lock balance shoe.

Referring to FIGS. 5A–5B, shown is another embodiment of the present invention of a snap lock balance shoe 410. The snap lock balance shoe 410 has a locking member 422 which engages a back wall of the jamb track 108 locking the balance shoe 410 in that location. The locking member 422 is partially disposed in the frame 411 and includes a plate 423 that engages the back wall of the jamb track 108. The balance shoe 410 also includes a frame 411, a connecting device 412, and a cam 418. The cam 418 is partially disposed within the frame 411 in a space enclosed by the locking member 422. The cam 418 includes a keyhole opening 419 sized to receive the pivot bar 114. Upon rotation of the cam 418 with the pivot bar 114, the locking member 422 is forced away from the frame 411 towards the back wall of the jamb track 108, thereby anchoring the balance shoe 410 in that location within the window frame 102.

FIGS. 6A–6D show one embodiment of a method for securing the snap lock balance shoe 210 within a rigid U-shaped channel 630 with multiple openings 638. It should be noted that each opening 638 on one side of the rigid U-shaped channel 630 has a corresponding opening 638 on the other side of the rigid U-shaped channel 630 to form a pair of openings. The first step, shown in FIG. 6A, is to place a fastener 635, such as a rivet, in one of the pairs of openings 638 in the rigid U-shaped channel 630. The next step, as depicted in FIG. 6B, is to slide the snap lock balance shoe 210 into the rigid U-shaped channel 630 such that the fastener 635 is received in the connection pocket 213 of the snap lock balance shoe 210. As shown in FIG. 6C, the snap lock balance shoe 210 is then rotated down so that the front frame surface 240 is aligned with a bottom wall 636 of the rigid U-shaped channel 630. FIG. 6D shows the last step of attaching the snap lock balance shoe 210 within the rigid U-shaped channel 630. In this step, the connecting device 212 of the snap lock balance shoe 210 snaps into one of the pairs of openings 638 located on the rigid U-shaped channel 630. In alternative embodiments the connection device 212 of the snap lock balance shoe 210 can extend through off-set openings in the rigid U-shaped channel 630. In some embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 with the fastener 635. In other embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 without the fastener 635. It should also be noted that in some embodiments, the snap lock balance shoe 210 can be aligned and secured to the rigid U-shaped channel 630 such that the front frame surface 240 faces upwards instead of downwards as depicted in FIG. 6D.

FIG. 7A is a front view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130. The rigid

US 6,820,368 B2

7

U-shaped channel 130 is connected to the prior art balance shoe 110 by the hanging connector 112. No part of the prior art balance shoe 110 lies within the rigid U-shaped channel 130. FIG. 7B is a view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130, illustrating channel openings 137. Fasteners (not shown) are installed through the channel openings 137 to secure the hanging connector 112 to the rigid U-shaped channel 130.

Referring to FIGS. 8A and 8B, shown is an embodiment of the snap lock balance shoe 210 of the present invention attached to the rigid U-shaped channel 630. The snap lock balance shoe 210 is directly attached within the rigid U-shaped channel 630 by a connecting device 212 located on the frame 211 of the snap lock balance shoe 210. The connecting device 212 extends through a pair of openings 638 located on the rigid U-shaped channel 630.

FIG. 9 is a front view of a pivotable double hung window assembly 800 in which an inverted window balance 122 is attached to a prior art balance shoe 110 by using the hanging connector 112, and the inverted window balance 622 is attached to the snap lock balance shoe 210 of an embodiment of the present invention. Pivot bars 114, as shown in FIG. 9, are secured to the pivotable lower window sash 104. The pivot bars 114 are slidably receivable by both the prior art balance shoe 110 and the snap lock balance shoe 210 and serve as connections between the pivotable lower window sash 104 and respective inverted window balances 122, 622.

An advantage of the type of balance shoe presently disclosed is that the snap lock balance shoe 210 is attached within the rigid U-shaped channel 630 resulting in a longer rigid U-shaped channel 630 than in the inverted window balance systems 120 for a given window sash. The longer rigid U-shaped channel 630 of the inverted window balance 622 allows for the use of longer extension springs that provide greater control of the vertical positioning of the window sash than a shorter rigid U-shaped channel 130 with a shorter extension spring. Another advantage of the present invention is that the snap lock balance shoe 210 contains a smaller number of parts than prior art balance shoes 110.

One installation method used to place a snap lock inverted window balance system 600 within the jamb tracks 108 is schematically illustrated in the remaining figures. The snap lock inverted window balance system 600 includes one of inverted window balance 622 and one snap lock window balance 210. FIGS. 10A, 11A, 12A, and 13A show the installation method from a side view, while FIGS. 10B, 11B, 12B, and 13B show the method from a front view. The installation method involves an orientation step, a first rotation step, and a second rotation step FIGS. 10A and 10B show the orientation step in the installation method. In the orientation step, the snap lock inverted window balance system 600 is inserted the jamb tracks 108 such that an axis CC 510 in FIG. 10A is perpendicular to a back wall 530 of the jamb tracks 108, while an axis DD 520 in FIG. 10A is parallel to the back wall 530 and the frame front surface 240 is adjacent to a side wall 532 of the jamb tracks 108. FIGS. 11A and 11B show the snap lock inverted window balance system 600 inserted in the jamb tracks 108 as well as an arrow 550 indicating the direction of rotation of the snap lock inverted window balance system 600 required to complete the first rotation step. The first rotation step involves rotating the snap lock inverted window balance system 600 90-degrees about the axis CC 510 such that the frame front surface 240 faces downward. FIGS. 12A and 12B show the snap lock inverted window balance system 600 after the

8

90-degree rotation around the axis CC 510 has been completed. The second rotation step involves a 90-degree rotation about the axis DD 520. An arrow 560 showing the direction of the second rotation step is shown in FIGS. 12A and 12B. FIGS. 13A and 13B show in two different views the snap lock inverted window balance system 600 after the installation method has been completed. The cord terminal or any other jamb mounting attachment 634 (see FIG. 9) can then be screwed or hooked into place to anchor the snap lock inverted window balance system 600.

The installation method just described can be carried out in reverse to remove the snap lock inverted window balance system 600 from the jamb track 108 of the window frame 102 to allow for easy replacement of the snap lock balance shoe 210 or the snap lock inverted window balance system 600 itself. In order to replace inverted window balance systems 120 with prior art balance shoes 110, either the jamb tracks 108 need to be warped or completely removed in order to replace the prior art balance shoe 110 of the inverted window balance system 120.

While there have been described several embodiments of the invention, other variants and alternatives will be obvious to those skilled in the art. Accordingly, the scope of the invention is not limited to the specific embodiments shown.

What is claimed is:

1. A window balance system comprising:
   a U-shaped channel comprising a plurality of openings;
   a spring connected to a system of pulleys located within the U-shaped channel;
   a cord with a first cord end and a second cord end, the fist cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and
   a balance shoe, wherein the balance shoe comprises:
      a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel;
      a locking member proximal to the enlarged first end;
      a cam in communication with the locking member; and
      a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of openings of the plurality of openings in the U-shaped channel.

2. A window balance system comprising:
   a U-shaped channel comprising a plurality of openings;
   a spring connected to a system of pulleys located within the U-shaped channel;
   a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and
   a balance shoe, wherein the balance shoe comprises:
      a frame comprising an enlarged fist end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet;
      a locking member proximal to the enlarged first end;
      a cam in communication with the locking member; and
      a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

C000715

US 6,820,368 B2

9

3. The window balance system of claim 2 wherein the connecting device comprises a rivet.

4. The window balance system of claim 2 wherein the connecting device comprises a screw.

5. The window balance system of claim 2 wherein the connecting device comprises a resilient tab.

6. The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

7. The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member.

8. The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of

10

the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

9. The window balance system of claim 2 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

10. The window balance system of claim 9 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

11. The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

* * * * *

C000716

5.T
7-30-03

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

05/30/2003 GGEBREGI 00000074 10446279

01 FC:1001                    750.00 DP
02 FC:1202                    234.00 DP
03 FC:1201                     84.00 DP

Repln. Ref: 05/30/2003 GGEBREGI 0022270700
DA#:200531   Name/Number:10446279
FC: 9204                       $10.00 CR

PTO-1556
(5/87)

*U.S. Government Printing Office: 2002 – 489-267/69033

C000717

SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW

Abstract of the Disclosure

Disclosed are apparatus for a snap lock balance shoe and system to be incorporated in pivotable double hung windows. In one embodiment, the snap lock balance shoe includes a pair of retractable tabs that partially extend through openings within an inverted window balance.

2247346_1

-16-

C000718

10446279.052303

Express Mail Mailing Label No. EV289512750US

PATENT
Attorney Docket No. BSI-018C1

SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW

### Related Application

[0001]   This application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Serial No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 12, 2001.

### Field of the Invention

[0002]   This invention relates to a window balance system for use in a pivotable window assembly.

### Background of the Invention

[0003]   This invention relates to the field of tilt-in windows.  More particularly this invention relates to a balance shoe of a window balance system used in conjunction with a pivot bar mounted on a window sash for rotating the window sash relative to a window frame.

[0004]   Typical pivotable double hung windows include two window sashes disposed in tracks located in a window frame to allow vertical sliding movement of the sashes. Pivot bars are provided to allow rotational movement of a pivotable window sash about the pivot bars to facilitate cleaning of glazing.  To control vertical movement, window balances are used so that the window sashes remain in a position in which they are placed.  Balance shoes are used to guide the rotational movement of the window sashes with respect to the window frame.  Typically, the balance shoes are coupled to window balances with a connecting member.  See, for example, U.S. Pat. No. 6,119,398, entitled "Tilt Window Balance Shoe Assembly with Three Directional Locking" issued to H. Dale Yates, Jr., the disclosure of which is herein incorporated by reference in its entirety.

[0005]   One of the problems with balance shoes and window balances for pivotable double hung windows is that they are difficult to install.  In order to install a pivotable double hung window with balance shoes and window balances, the following installation steps typically must be followed.  First, before the window frame is assembled, the

C000719

10446279.052303

balance shoes are inserted into jamb tracks. Next, connecting members are used to attach the balance shoes to the window balances. The balance shoes generally have an opening to accept the pivot bars that are mounted on window sashes. Finally, the sashes are made operable by inserting the pivot bars into the balance shoes and rotating the window sash up to a vertical position in the jamb tracks. The installation process is rather complex and difficult. Repair costs for replacing balance shoes are also significant. In order to change a malfunctioning or failed balance shoe, the jamb tracks either need to be deformed or replaced to gain access to the problematic balance shoe for removal and replacement.

### Summary of the Invention

[0006]    In general, in one aspect, the invention relates to a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within a window balance. Embodiments of the invention can include the following features. The connecting device can include one or more retractable tabs that engage the window balance directly. The frame can further include a frame pocket sized to receive a fastener. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

[0007]    In another aspect, the invention relates to an inverted window balance system for use within a pivotable double hung window assembly. The inverted window balance system includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, which include an extension spring, a

-2-

C000720

system of pulleys, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member at least partially disposed within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. Embodiments of this aspect of the invention can include the following features. At least a portion of the balance shoe is disposed within the rigid U-shaped channel. The connecting device can include one or more retractable tabs for engaging the rigid U-shaped channel. The retractable tabs can partially extend through at least one of the plurality of openings in the rigid U-shaped channel. The balance shoe can be further secured to the rigid U-shaped channel with a fastener that interfaces with a frame pocket in the balance shoe. The cam can include at least one camming surface and a keyhole opening for receiving a pivot bar attached to a window sash. The cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member. Upon rotating the cam with the pivot bar, the locking member engages the window jamb. In one embodiment, the locking member includes two opposing ends integrally connected by a spring member. The cam is located within a space between the opposing ends of the locking member, and upon rotating the cam with the pivot bar, the opposing ends engage the window jamb. In another embodiment, the locking member includes a plate, which is parallel to a back surface of the frame. The cam is located within a space between the plate and the frame such that rotating the cam with the pivot bar forces the plate to engage the window jamb.

[0008]    In still another aspect, the invention relates to a method of installing an inverted window balance system within a window jamb in a window frame. The method includes four basic steps. The first step is to provide an inverted window balance system that includes a rigid U-shaped channel with a plurality of openings in the channel walls for securing the contents in the channel, an extension spring and a system of pulleys disposed within the rigid U-shaped channel, a cord to connect the extension spring via the system of pulleys with the window sash, and a balance shoe. The balance shoe includes a frame, a locking member located at least partially within the frame, a cam in communication with the locking member, and a connecting device for attaching the balance shoe within the rigid U-shaped channel. The frame of the balance shoe has a frame bottom surface, a

-3-

C000721

*Supplemental Amendment and Response*
*Serial No. 10/446,279*

frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

58. (New) The balance shoe of claim 57 wherein the connecting device comprises a rivet.

59. (New) The balance shoe of claim 57 wherein the connecting device comprises a screw.

60. (New) The balance shoe of claim 57 wherein the connecting device comprises a resilient tab.

61. (New) The balance shoe of claim 57 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

62. (New) The balance shoe of claim 57 wherein the locking member comprises two opposing ends integrally connected by a spring member.

63. (New) The balance shoe of claim 62 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

64. (New) The balance shoe of claim 57 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

65. (New) The balance shoe of claim 64 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

66. (New) The balance shoe of claim 57 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

*Page 3 of 5*

C000825

frame front surface, and two frame edge surfaces. The second step is to insert the inverted window balance system into a jamb track of the window jamb, such that an axis extending along a longitudinal direction of the rigid U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track. The third step is to rotate the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the rigid U-shaped channel, such that the frame front surface faces in a downward direction. The final step is to rotate the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces, such that the frame bottom surface faces in the downward direction.

[0009]    These and other features of the invention will be made apparent from the following description taken in conjunction with the accompanying drawings.

## Brief Description of the Drawings

[0010]    In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIG. 1 is a perspective view of a pivotable double hung window assembly;

FIG. 2A is a rear view of inverted window balance system for use with a prior art balance shoe;

FIG. 2B is a rear view of a window balance;

FIG. 3A is one perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 3B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 3A;

FIG. 3C is a rear view of one embodiment of a snap lock inverted balance system;

FIG. 3D is a bottom view of one embodiment of a snap lock balance shoe;

FIG. 3E is a front view of one embodiment of a snap lock balance shoe;

FIG. 3F is a side view of one embodiment of a snap lock balance shoe;

-4-

C000722

10446279.052303

FIG. 4 is a perspective view of an embodiment of a snap lock balance shoe of the present invention;

FIG. 5A is one perspective view of another embodiment of a snap lock balance shoe of the present invention;

FIG. 5B is another perspective view of the embodiment of the snap lock balance shoe of FIG. 5A;

FIG. 6A is a perspective view of one embodiment of a balance shoe of the invention and a rigid U-shaped channel;

FIG. 6B is a perspective view showing the first step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6C is a perspective view showing the second step of connecting one embodiment of the balance shoe of the invention to the rigid U-shaped channel;

FIG. 6D is a perspective view showing one embodiment of the balance shoe of the invention connected to the rigid U-shaped channel;

FIG. 7A is a front view of a prior art balance shoe attached to a rigid U-shaped channel;

FIG. 7B is a side view of the prior art balance shoe attached to the rigid U-shaped channel;

FIG. 8A is a front view of one embodiment of a snap lock balance shoe of the present invention attached to a rigid U-shaped channel;

FIG. 8B is a side view of one embodiment of the snap lock balance shoe of the present invention attached to the rigid U-shaped channel;

FIG. 9 is a front view of a window assembly including one snap lock inverted window balance system of the present invention and one prior art inverted window balance system installed in a window frame;

FIG. 10A is a side view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 10B is a front view illustrating the first step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 11A is a side view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

C000723

10446279.052303

FIG. 11B is a front view illustrating the second step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12A is a side view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 12B is a front view illustrating the third step of installing the snap lock inverted window balance system of the invention into the jamb track;

FIG. 13A is a side view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track; and

FIG. 13B is a front view illustrating the last step of installing the snap lock inverted window balance system of the invention into the jamb track.

### Detailed Description of the Invention

[0011]    Referring to FIG. 1, shown is a pivotable double hung window assembly 100 in which a snap lock balance shoe constructed in accordance with the teachings of the present invention can be used. The pivotable double hung window assembly 100 includes of a window frame 102, a pivotable lower window sash 104, a pivotable upper window sash 106, and a window jamb 107. The pivotable lower window sash 104 and the pivotable upper window sash 106 slide vertically in jamb track 108 within the window jamb 107, while also being able to pivot about a pivot bar 114, as shown in FIG. 9.

[0012]    FIG. 2A shows a rear view of an inverted window balance system 120 for use in the pivotable double hung window assembly 100. The inverted window balance system 120 includes an inverted window balance 122 used for balancing the weight of either the pivotable lower window sash 104 or the pivotable upper window sash 106 at any vertical position within the window frame 102, and a prior art balance shoe 110 for guiding the rotation of the pivotable lower window sash 104 about the pivot bar 114. A hanging connector 112 connects the prior art balance shoe 110 to the inverted window balance 122. The inverted window balance 122 includes an extension spring 126 connected to a system of pulleys 128 housed within a rigid U-shaped channel 130, and a cord 132 for connecting the system of pulleys 128 to a jamb mounting attachment 134. The jamb mounting attachment 134 is used for connecting the inverted window balance

-6-

C000724

10446279.052303

system 120 to the window jamb 107. One difference between the inverted window balance 122 and a window balance 140, shown in FIG. 2B, includes the placement of the extension spring 146 above a system of pulleys 148 within the rigid U-shaped channel 150. A cord 152 connects the system of pulleys 148 to a jamb mounting attachment 154. Another difference is that while inverted window balances 122 travel with either the pivotable lower window sash 104 or pivotable upper window sash 106, the window balance 140 remains in a fixed position in the window jamb 107 due to an attachment to the window jamb 107 through an attachment opening 155.

[0013]    FIGS. 3A and 3B are perspective views of a snap lock balance shoe 210 of one embodiment of the present invention. The snap lock balance shoe 210 has a frame 211 in which is housed a connecting device 212, a locking device 214, and a cam 218. The connecting device 212 can be integral with the frame 211 and attaches the snap lock balance shoe 210 directly within an inverted window balance 622, shown in FIG 3C. The inverted window balance 622 in combination with the snap lock balance shoe 210 forms a snap lock inverted window balance system 600. The inverted window balance 622 includes an extension spring 626 connected to a system of pulleys 628 housed within a rigid U-shaped channel 630, and a cord 632 for connecting the system of pulleys 628 to a jamb mounting attachment 634, such as a cord terminal or hook.

[0014]    In the depicted embodiment, the connecting device 212 is a pair of retractable tabs that snap into the rigid U-shaped channel 630. In other embodiments, other connecting devices such as a screw, may be used to secure the frame 211 to the rigid U-shaped channel 630. A fastener 635 located in the inverted window balance 622 can be used to further secure the connection between the snap lock balance shoe 210 and the inverted window balance 622. To accommodate the fastener 635, the snap lock balance shoe 210 can form a connection pocket 213 sized to receive or mate with the fastener 635.

[0015]    Another element of the snap lock balance shoe 210 visible in FIG. 3A is a keyhole opening 219 located within the cam 218. The keyhole opening 219 is sized to accept the pivot bar 114 extending from either the pivotable lower window sash 104 or the pivotable upper window sash 106, and serves as a connection point between the pivotable lower or upper window sash 104, 106 and the snap lock balance shoe 210.

-7-

C000725

10446279.052303

FIG. 3B shows a perspective view of the snap lock balance shoe 210 showing another face of the cam 218.

[0016]    In the embodiment shown in FIG. 3B, the locking device 214 surrounds the cam 218 and includes of a pair of opposing ends 215 connected by a spring member 216. When the pivotable lower window sash 104 is tilted open, the pivot bar 114 rotates, which in turn rotates the cam 218 forcing the opposing ends 215 outward to engage the jamb track 108 of the window frame 102, thereby locking the balance shoe 210 in that location.

[0017]    FIGS. 3D-3F show different views of one of the embodiments of the snap lock balance shoe 210 of the invention. FIG. 3D is a bottom view of the snap lock balance shoe 210 that shows a frame bottom surface 230. FIG. 3E is a front view of the same embodiment of the snap lock balance shoe 210 that illustrates a frame front surface 240, and FIG. 3F is an side view that shows one of the two frame edge surfaces 250 of the snap lock balance shoe 210.

[0018]    FIG. 4 shows another embodiment of a snap lock balance shoe 310. The snap lock balance shoe 310 has an elongated frame 311 in which is housed a connecting device 312, a locking device 314, and a cam 318. Within the cam is a keyhole opening 319 sized to receive the pivot bar 114. The elongated frame 311 has a length L 325 that is greater than about 1.25 inches. When attached to the rigid U-shaped channel 630, the balance shoe 310 extends further outward from the rigid U-shaped channel 630 than the balance shoe 210 attached to a similar sized rigid U-shaped channel 630. The balance shoe 310 allows a fixed-sized rigid U-shaped channel 630 to be used in a larger window having a greater travel distance by extending the length of the entire window balance system by having a longer balance shoe 310. One of the advantages of the present invention is that an installer can create a custom window balance system for a particular window by fitting a fixed-length rigid U-shaped channel 630 with an appropriately sized snap lock balance shoe.

[0019]    Referring to FIGS. 5A-5B, shown is another embodiment of the present invention of a snap lock balance shoe 410. The snap lock balance shoe 410 has a locking member 422 which engages a back wall of the jamb track 108 locking the balance shoe 410 in that location. The locking member 422 is partially disposed in the frame 411 and

-8-

C000726

10446279.052303

includes a plate 423 that engages the back wall of the jamb track 108. The balance shoe 410 also includes a frame 411, a connecting device 412, and a cam 418. The cam 418 is partially disposed within the frame 411 in a space enclosed by the locking member 422. The cam 418 includes a keyhole opening 419 sized to receive the pivot bar 114. Upon rotation of the cam 418 with the pivot bar 114, the locking member 422 is forced away from the frame 411 towards the back wall of the jamb track 108, thereby anchoring the balance shoe 410 in that location within the window frame 102.

[0020]    FIGS. 6A - 6D show one embodiment of a method for securing the snap lock balance shoe 210 within a rigid U-shaped channel 630 with multiple openings 638. It should be noted that each opening 638 on one side of the rigid U-shaped channel 630 has a corresponding opening 638 on the other side of the rigid U-shaped channel 630 to form a pair of openings. The first step, shown in FIG. 6A, is to place a fastener 635, such as a rivet, in one of the pairs of openings 638 in the rigid U-shaped channel 630. The next step, as depicted in FIG. 6B, is to slide the snap lock balance shoe 210 into the rigid U-shaped channel 630 such that the fastener 635 is received in the connection pocket 213 of the snap lock balance shoe 210. As shown in FIG. 6C, the snap lock balance shoe 210 is then rotated down so that the front frame surface 240 is aligned with a bottom wall 636 of the rigid U-shaped channel 630. FIG. 6D shows the last step of attaching the snap lock balance shoe 210 within the rigid U-shaped channel 630. In this step, the connecting device 212 of the snap lock balance shoe 210 snaps into one of the pairs of openings 638 located on the rigid U-shaped channel 630. In alternative embodiments the connection device 212 of the snap lock balance shoe 210 can extend through off-set openings in the rigid U-shaped channel 630. In some embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 with the fastener 635. In other embodiments, the snap lock balance shoe 210 is attached to the rigid U-shaped channel 630 without the fastener 635. It should also be noted that in some embodiments, the snap lock balance shoe 210 can be aligned and secured to the rigid U-shaped channel 630 such that the front frame surface 240 faces upwards instead of downwards as depicted in FIG. 6D.

[0021]    FIG. 7A is a front view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130. The rigid U-shaped channel 130 is connected to the prior art balance shoe 110 by the hanging connector 112. No part of the prior art balance shoe 110

-9-

C000727

lies within the rigid U-shaped channel 130. FIG. 7B is a side view of the prior art balance shoe 110 attached to the rigid U-shaped channel 130 illustrating channel openings 137. Fasteners (not shown) are installed through the channel openings 137 to secure the hanging connector 112 to the rigid U-shaped channel 130.

[0022]    Referring to FIGS. 8A and 8B, shown is an embodiment of the snap lock balance shoe 210 of the present invention attached to the rigid U-shaped channel 630. The snap lock balance shoe 210 is directly attached within the rigid U-shaped channel 630 by a connecting device 212 located on the frame 211 of the snap lock balance shoe 210. The connecting device 212 extends through a pair of openings 638 located on the rigid U-shaped channel 630.

[0023]    FIG. 9 is a front view of a pivotable double hung window assembly 800 in which an inverted window balance 122 is attached to a prior art balance shoe 110 by using the hanging connector 112, and the inverted window balance 622 is attached to the snap lock balance shoe 210 of an embodiment of the present invention. Pivot bars 114, as shown in FIG. 9, are secured to the pivotable lower window sash 104. The pivot bars 114 are slidably receivable by both the prior art balance shoe 110 and the snap lock balance shoe 210 and serve as connections between the pivotable lower window sash 104 and respective inverted window balances 122, 622.

[0024]    An advantage of the type of balance shoe presently disclosed is that the snap lock balance shoe 210 is attached within the rigid U-shaped channel 630 resulting in a longer rigid U-shaped channel 630 than in the inverted balance systems 120 for a given window sash. The longer rigid U-shaped channel 630 of the inverted window balance 622 allows for the use of longer extension springs that provide greater control of the vertical positioning of the window sash than a shorter rigid U-shaped channel 130 with a shorter extension spring. Another advantage of the present invention is that the snap lock balance shoe 210 contains a smaller number of parts than prior art balance shoes 110.

[0025]    One installation method used to place a snap lock inverted window balance system 600 within the jamb tracks 108 is schematically illustrated in the remaining figures. The snap lock inverted window balance system 600 includes one inverted window balance 622 and one snap lock window balance 210. FIGS. 10A, 11A, 12A, and 13A show the installation method from a side view, while FIGS. 10B, 11B, 12B, and 13B

-10-

C000728

show the method from a front view. The installation method involves an orientation step, a first rotation step, and a second rotation step. FIGS. 10A and 10B show the orientation step in the installation method. In the orientation step, the snap lock inverted window balance system 600 is inserted the jamb tracks 108 such that an axis CC 510 in FIG. 10A is perpendicular to a back wall 530 of the jamb tracks 108, while an axis DD 520 in FIG. 10A is parallel to the back wall 530 and the frame front surface 240 is adjacent to a side wall 532 of the jamb tracks 108. FIGS. 11A and 11B show the snap lock inverted window balance system 600 inserted in the jamb tracks 108 as well as an arrow 550 indicating the direction of rotation of the snap lock inverted window balance system 600 required to complete the first rotation step. The first rotation step involves rotating the snap lock inverted window balance system 600 90-degrees about the axis CC 510 such that the frame front surface 240 faces downward. FIGS. 12A and 12B show the snap lock inverted window balance system 600 after the 90-degree rotation around the axis CC 510 has been completed. The second rotation step involves a 90-degree rotation about the axis DD 520. An arrow 560 showing the direction of the second rotation step is shown in FIGS. 12A and 12B. FIGS. 13A and 13B show in two different views the snap lock inverted window balance system 600 after the installation method has been completed. The cord terminal or any other jamb mounting attachment 634 (see FIG. 9) can then be screwed or hooked into place to anchor the snap lock inverted window system 600.

[0026]    The installation method just described can be carried out in reverse to remove the snap lock inverted window balance system 600 from the jamb track 108 of the window frame 102 to allow for easy replacement of the snap lock balance shoe 210 or the snap lock inverted window balance system 600 itself. In order to replace inverted window balance systems 120 with prior art balance shoes 110, either the jamb tracks 108 need to be warped or completely removed in order to replace the prior art balance shoe 110 of the inverted window balance system 120.

[0027]    While there have been described several embodiments of the invention, other variants and alternatives will be obvious to those skilled in the art. Accordingly, the scope of the invention is not limited to the specific embodiments shown.

[0028]    What is claimed is:

-11-

10446279.062303

Claims

1.      A balance shoe for an inverted window balance system, the balance shoe comprising:

      a frame;

      a locking member at least partially disposed within the frame;

      a cam in communication with the locking member; and

      a connecting device for attaching the balance shoe within an inverted window balance.

2.      The balance shoe of claim 1 wherein the connecting device comprises one or more retractable tabs.

3.      The balance shoe of claim 1 wherein the frame further comprises a pocket formed within the frame adapted to mate with a fastener.

4.      The balance shoe of claim 1 wherein the cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

5.      The balance shoe of claim 1 wherein the locking member comprises two opposing ends integrally connected by a spring member.

6.      The balance shoe of claim 5 wherein the cam is at least partially housed within the frame and is disposed within a space formed between the opposing ends of the locking member, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

7.      The balance shoe of claim 1 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the frame.

-12-

C000730

10446279 .052303

8.   The balance shoe of claim 7 wherein the cam is at least partially housed within the frame and is disposed within a space formed between the locking member and the frame, wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

9.   The balance shoe of claim 1 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

10.   An inverted window balance system comprising:
     a U-shaped channel comprising a plurality of openings;
     a spring connected to a system of pulleys located within the U-shaped channel;
     a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and
     a balance shoe, wherein the balance shoe comprises:
          a frame;
          a locking member at least partially disposed within the frame;
          a cam in communication with the locking member; and
          a connecting device for attaching the balance shoe within the U-shaped channel.

11.   The inverted window balance system of claim 10 wherein at least a portion of the balance shoe is disposed within the U-shaped channel.

12.   The inverted window balance system of claim 10 wherein the connecting device comprises one or more retractable tabs.

13.   The inverted window balance system of claim 12 wherein the retractable tabs extend at least partially through at least one of the plurality of openings in the U-shaped channel.

-13-

C000731

10446279.052303

14.   The inverted window balance system of claim 10 wherein the frame of the balance shoe further forms a pocket positioned in the frame adapted to mate with a fastener.

15.   The inverted window balance system of claim 14 wherein the fastener is a rivet.

16.   The inverted window balance system of claim 10 wherein the cam is at least partially housed within the frame and is disposed within a space enclosed by the locking member; wherein rotating the cam forces the locking member to engage a jamb track when the inverted window balance system is installed in a window jamb.

17.   The inverted window balance system of claim 10 wherein the locking member of the balance shoe comprises two opposing ends integrally connected by a spring member.

18.   The inverted window balance system of claim 17 wherein the cam is at least partially housed within the frame and is disposed within a space formed between the opposing ends of the locking member, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb pocket when the inverted window balance system is installed in a window jamb.

19.   The inverted window balance system of claim 10 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the frame.

20.   The inverted window balance system of claim 19 wherein the cam is at least partially housed within the frame and is disposed within a space formed between the locking member and the frame, wherein rotating the cam forces the plate of the locking member to engage a jamb track when the inverted window balance system is installed in a window jamb.

21.   The inverted window balance system of claim 10 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

-14-

10446279.052303

22.    A method for installing an inverted window balance system within a window jamb in a window frame comprising the steps of:

providing an inverted window balance system comprising:

a U-shaped channel with a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe comprising:

a frame comprising a frame bottom surface, a frame front surface and two frame edge surfaces;

a locking member at least partially disposed within the frame;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel;

inserting the inverted window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the inverted window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the inverted window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

-15-

C000733

104462?9.052303
Express Mail Mailing Label No. EV2895 1275OUS

| DECLARATION AND POWER OF ATTORNEY FOR UTILITY OR DESIGN PATENT APPLICATION | Attorney Docket No. | BSI-018 |
|---|---|---|
| | First Named Inventor | Uken |
| | **COMPLETE IF KNOWN** | |
| | Application Serial Number | Not Yet Assigned |
| ☒ Declaration    ☐ Declaration | Filing Date | Herewith |
| Submitted with    Submitted after Initial | Group Art Unit | Not Yet Assigned |
| Initial Filing    Filing (surcharge 37 CFR 1.16(e) required) | Examiner Name | Not Yet Assigned |

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE WINDOW

*(Title of the Invention)*

the specification of which

☒ is attached hereto

OR

☐ was filed on (MM/DD/YYYY) [            ] as United States Application Serial Number or PCT International

Application Number [            ] and was amended on (MM/DD/YYYY) [            ] *(if applicable).*

I hereby state that I have reviewed and understand the contents of the above-identified application, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose to the Patent Office all information known by me to be material to patentability as defined in 37 CFR 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. 119(a)-(d) or 365(b) of any foreign application(s) for patent or inventor's certificate, or 365(a) of any PCT international application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or of any PCT international application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Not Claimed | Certified Copy Attached? YES    NO |
|---|---|---|---|---|
| | | | ☐ | ☐    ☐ |
| | | | ☐ | ☐    ☐ |
| | | | ☐ | ☐    ☐ |

☐ Additional foreign application numbers are listed on a supplemental priority data sheet attached hereto.

I hereby claim the benefit under 35 U.S.C. 119(e) of any United States provisional application(s) listed below.

| Application Serial Number(s) | Filing Date (MM/DD/YYYY) | |
|---|---|---|
| 60/261,501 | January 12, 2001 | ☐ Additional provisional application serial numbers are listed on a Supplemental priority data sheet Attached hereto. |



COPY

10446279 .052303

Declaration and Power of Attorn.   or Utility or Design Patent Application
Serial No. Not Yet Assigned
Atty. Docket No. BSI-018
Page 2 of 3

## DECLARATION – Utility or Design Patent Application

I hereby claim the benefit under 35 U.S.C. 120 of any United States application(s), or 365(c), of any PCT international application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application.

| U.S. Parent Application or PCT Parent Serial Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|
| | | |

☐ Additional U.S. or PCT international application numbers are listed on a supplemental priority data sheet attached hereto.

As a named inventor, I hereby appoint the following registered practitioners to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:  ☐ Customer Number _____    →    *Place Customer Number Bar Code Label Here*

OR

☒ Registered practitioner(s) name/registration number listed below

| Name | Registration Number | Name | Registration Number |
|---|---|---|---|
| Michael J. Bastian | 47,411 | Kurt W. Lockwood | 40,704 |
| Steven M. Bauer | 31,481 | Thomas C. Meyers | 36,989 |
| Elias C. Behrakis | 47,416 | Joseph B. Milstein | 42,897 |
| John V. Bianco | 36,748 | David G. Miranda | 42,898 |
| Isabelle A.S. Blundell | 43,321 | Ronda P. Moore | 44,244 |
| Maureen A. Bresnahan | 44,559 | Indranil Mukerji | P-46,944 |
| Michael H. Brodowski | 41,640 | Edmund R. Pitcher | 27,829 |
| Jennifer A. Camacho | 43,526 | Michael A. Rodriguez | 41,274 |
| Joseph A. Capraro, Jr. | 36,471 | Jamie H. Rose | 45,054 |
| John J. Cotter | 38,116 | R. Stephen Rosenholm | 45,283 |
| John V. Forcier | 42,545 | Christopher W. Stamos | 35,370 |
| Steven J. Frank | 33,497 | Diana M. Steel | 43,153 |
| Kin L. Freeman | 47,577 | Joseph P. Sullivan | 45,349 |
| Brian M. Gaff | 44,691 | Robert J. Tosti | 35,393 |
| Michael J. Giannetta | 42,574 | Thomas A. Turano | 35,722 |
| Duncan A. Greenhalgh | 38,678 | Christine C. Vito | 39,061 |
| William G. Guerin | 41,047 | Patrick R.H. Waller | 41,418 |
| Jonathan A. Harris | 44,744 | Daniel A. Wilson | 45,508 |
| Ira V. Heffan | 41,059 | Gerald E. Worth | 45,238 |
| Danielle L. Herritt | 43,670 | Yin P. Zhang | 44,372 |
| Douglas J. Kline | 35,574 | | |
| John D. Lanza | 40,060 | | |

☐ Additional registered practitioners named on supplemental Registered Practitioner Information sheet attached hereto.

Direct all correspondence to:    Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

10446279.052303

Serial No. Not Yet Assigned
Atty. Docket No.: BSI-018
Page 3 of 3

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Name of Sole or First Inventor: | ☐ A petition has been filed for this unsigned inventor | | | | |
|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | Family Name or Surname | | |
| Stuart J. | | | Uken | | |
| Inventor's Signature | | | Date 1/10/02 | | |
| Residence | City Sioux Falls | State SD | Country U.S.A. | Citizenship | U.S. |
| Mailing Address | 1409 E 60th St North | | | | |
| Mailing Address (ln. 2) | City Sioux Falls | State SD | ZIP 57104 | Country | U.S.A. |

☐ Additional inventors are being named on the ____ supplemental Additional Inventor(s) sheet(s) attached hereto.

| Name of Additional Joint Inventor, if any: | ☐ A petition has been filed for this unsigned inventor | | | | |
|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | Family Name or Surname | | |
| Gary R. | | | Newman | | |
| Inventor's Signature | | | Date 1/10/02 | | |
| Residence | City Valley Springs | State SD | Country U.S.A. | Citizenship | U.S. |
| Mailing Address | 26403 484th Avenue | | | | |
| Mailing Address (ln. 2) | City Valley Springs | State SD | ZIP 57068 | Country | U.S.A. |

☐ Additional inventors are being named on the ____ supplemental Additional Inventor(s) sheet(s) attached hereto.

| Name of Additional Joint Inventor, if any: | ☐ A petition has been filed for this unsigned inventor | | | | |
|---|---|---|---|---|---|
| Given Name (first and middle [if any]) | | | Family Name or Surname | | |
| Lawrence J. | | | VerSteeg | | |
| Inventor's Signature | | | Date 1/10/02 | | |
| Residence | City Sioux Falls | State SD | Country U.S.A. | Citizenship | U.S. |
| Mailing Address | 5001 Quail Run | | | | |
| Mailing Address (ln. 2) | City Sioux Falls | State SD | ZIP 57108 | Country | U.S.A. |

VERNONDM\3410.2254112_1





FIG 1

C000737

10446279.052303



FIG 2A

10446279.052303



FIG 2B

C000739

10446279.052303



FIG 3B



FIG 3A

C000740

10446279.052303

600
634
632
628
622
630
626
635
212
216
218
214
215
215
210

FIG 3C

[redacted]

10446279.052303



FIg3F

250

210



FIG3E

246

250

210

250



FIG3D

236

210



FIG. 4

FIG 5B

FIG 5A

C000744



FIG. 6A

FIG. 6B

FIG. 6C

FIG 6D

C000745

10446279.062303





FIG. 7A

FIG. 7B

FIG. 8A

FIG. 8B

C000746

10446279.052303





FIG. 9

C000747

10446279 .052303





C000748

10446279.052303

## APPLICATION DATA SHEET

### Application Information

Application Type::            Regular
Subject Matter::              Utility
Title::                       Snap Lock Balance Shoe and System
                              for a Pivotable Window

Attorney Docket Number::      BSI-018C1
Request for Early Publication?::    No
Request for Non-Publication?::      No
Suggested Drawing Figure::          3C
Total Drawing Sheets::              12
Small Entity?::               No

### Applicant Information

Applicant Authority Type::          Inventor
Primary Citizenship Country::       US
Status::                      Unknown
Given Name::                  Stuart
Middle Name::                 J.
Family Name::                 Uken
City of Residence::           Sioux Falls
State or Province of Residence::    SD
Country of Residence::        US
Street of Mailing Address::   1409 East 60th Street North
City of Mailing Address::     Sioux Falls
State or Province of Mailing Address::    SD
Country of Mailing Address::        US
Postal or Zip Code of Mailing Address::    57104

Applicant Authority Type::          Inventor

Page 1                    Initial 05/23/03

C000749

10446279.052303

Primary Citizenship Country::          US
Status::                               Unknown
Given Name::                           Gary
Middle Name::                          Roger
Family Name::                          Newman
City of Residence::                    Valley Springs
State or Province of Residence::       SD
Country of Residence::                 US
Street of Mailing Address::            26403 484th Avenue
City of Mailing Address::              Valley Springs
State or Province of Mailing Address:: SD
Country of Mailing Address::           US
Postal or Zip Code of Mailing Address:: 57068


Applicant Authority Type::             Inventor
Primary Citizenship Country::          US
Status::                               Unknown
Given Name::                           Lawrence
Middle Name::                          J.
Family Name::                          VerSteeg
City of Residence::                    Sioux Falls
State or Province of Residence::       SD
Country of Residence::                 US
Street of Mailing Address::            5001 Quail Run
City of Mailing Address::              Sioux Falls
State or Province of Mailing Address:: SD
Country of Mailing Address::           US
Postal or Zip Code of Mailing Address:: 57108
**Correspondence Information**

Correspondence Customer Number::       021323
**Representative Information**

Representative Customer Number::        021323

Page 2                          Initial 05/23/03

10446279.052303

**Domestic Priority Information**

| Application:: | Continuity Type:: | Parent Application:: | Parent Filing Date:: |
|---|---|---|---|
| This application | Continuation of | 10/044,005 | 01/11/2002 |
| 10/044,005 | Non-Provisional of | 60/261,501 | 01/12/2001 |
| | | | |

**Assignee Information**

Assignee Name::                             Amesbury Group, Inc.

City of Mailing Address::          Amesbury

State or Province of Mailing Address::   MA

Country of Mailing Address::   US

C000751

05-27-03  10446279.052303 A

05/23/03

Express Mail Mailing Label No. EV289512750US

| UTILITY PATENT APPLICATION TRANSMITTAL (Only for new nonprovisional applications under 37 CFR 1.53(b)) | Attorney Docket No. | BSI-018C1 |
| | First Named Inventor | Uken |
| | Title | Snap Lock Balance Shoe and System for a Pivotable Window |

10/15 U.S. PTO
10/446279
05/23/03

| **APPLICATION ELEMENTS** | ADDRESS TO:  Mail Stop Patent Application<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA  22313-1450 |

**APPLICATION ELEMENTS**

1. ☒ Fee Transmittal Form
2. ☐ Small Entity Status
   ☐ Applicant claims small entity status
   ☐ Status established in prior application and is still proper and desired
3. ☒ Specification and Drawings  [Total Pages 28]
   - Written Description - (11 pages)
   - Claims - (4 pages)
   - Abstract - (1 page)
   - Sheets of Drawings - (12 sheets)
      ☐ Formal
      ☒ Informal
4. ☒ Oath or Declaration          [Total Pages 3]
   a. ☐ Newly executed (original)
   b. ☒ Copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 17 completed)*
      *[Note Box 5 below]*
5. ☒ Incorporation by Reference (usable if Box 4b is checked) The entire Disclosure of the prior application, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein.
6. ☒ Application Data Sheet
7. ☐ Nucleotide and/or Amino Acid Sequence Submission
   ☐ Computer Readable Form (CRF)
   ☐ Paper Copy (identical to computer copy)
   ☐ CD (2 copies) (identical to computer copy)
   ☐ Statement verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

8. ☐ 37 CFR 3.73(b) Statement *(when there is an assignee)*
   ☐ Power of Attorney
9. ☐ English Translation Document *(if applicable)*
10. ☒ Information Disclosure Statement (IDS)/PTO-1449
    ☒ Copies of IDS Citations A1-A41
11. ☒ Preliminary Amendment
    ☐ Drawings [Total Sheets  ]
12. ☒ Return Receipt Postcard *(specifically itemized)*
13. ☐ Certified Copy of Priority Document(s) *(if foreign priority claimed)*
14. ☐ Nonpublication Request Under 35 U.S.C. 122(b)
15. ☐ CD in duplicate for large table or computer program
16. ☒ Other:
    Formal Drawings (13 sheets)

17. ☒  If a CONTINUING APPLICATION:  Amend the specification by inserting on page 1, before the first line, the sentence:
--This is a
☒ continuation   ☐ divisional   ☐ continuation-in-part of prior application Serial No. 10/044,005, filed on January 11, 2002, which claims the benefit of provisional application Serial No. 60/261,501, filed on January 12, 2001, the entire disclosure of which is incorporated by reference herein.--
   Priority to the above application(s) is claimed under 35 U.S.C. 120.
   Prior application information:  Examiner: H. Thompson, Group/Art Unit: 3634.

18. ☐  Priority - 35 U.S.C. 119
   ☐ Priority of application Serial No. _____ filed on _____ in _____ is claimed under 35 U.S.C. 119.
   ☐ The certified copy has been filed in prior U.S. application Serial No. _____/_____ on _____.
   ☐ The certified copy will follow.

| **CORRESPONDENCE ADDRESS** | **SIGNATURE BLOCK** |
| Direct all correspondence to:  Patent Administrator<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA  02110<br>Tel. No.: (617) 248-7000<br>Fax No.: (617) 248-7100<br>Customer No. 021323 | Respectfully submitted,<br><br>Date: May 23, 2003<br>Reg. No.: 42,545<br>Tel. No.: (617) 248-7675<br>Fax No.: (617) 248-7100 | John V. Forcier<br>Attorney for Applicant(s)<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA  02110 |

VER 10/01
2G29938

C000752

10446279.052303

**Express Mail Mailing Label No. EV289512750US**

| | Complete if Known | |
|---|---|
| **FEE TRANSMITTAL** **FY 2003** | Application Serial Number | Not yet assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Uken |
| | Group Art Unit | Not yet assigned |
| | Examiner Name | Not yet assigned |
| | Attorney Docket No. | BSI-018C1 |

## METHOD OF PAYMENT

1. ☒ Payment Enclosed:
   ☒ Check ☐ Money Order ☐ Other
2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531.
   ☐ Required Fees (copy of this sheet enclosed).
   ☒ Additional fee required under 37 CFR 1.16 and 1.17.
   ☒ Overpayment Credit.
3. ☐ Applicant claims small entity status.

## FEE CALCULATION

### 1. FILING FEE

| Large Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 750 | Utility filing fee | 750.00 |
| 330 | Design filing fee | |
| 160 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | 33 | - 20 = 13 | x $ 18.00 = | 234.00 |
| Independent Claims | 4 | - 3 = 1 | x $ 84.00 = | 84.00 |
| ☐ Multiple Dependent Claim(s), if any | | | x $280.00 = | |

TOTAL: 1078.00
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)  ($)  1078.00

### 2. AMENDMENT CLAIM FEES

| | Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|---|
| Total | | | | x $ 18.00 = | |
| Indep. | | | | x $ 84.00 = | |
| ☐ First Presentation of Multiple Dep. Claim | | | | + $280.00 = | |

TOTAL: ($)
SMALL ENTITY DISCOUNT: ($)
SUBTOTAL (2)  ($)0.00

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | Request for ex parte reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 410 | 205 | Extension for reply within second month | |
| 930 | 465 | Extension for reply within third month | |
| 1450 | 725 | Extension for reply within fourth month | |
| 1970 | 985 | Extension for reply within fifth month | |
| 320 | 160 | Notice of Appeal | |
| 320 | 160 | Filing a brief in support of an appeal | |
| 280 | 140 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 180 | 180 | Submission of Information Disclosure Statement | |
| 750 | 375 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 750 | 375 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 100 | 100 | Certificate of Correction for applicant's error | |
| | | Other fee (Specify) | |
| | | Other fee (Specify) | |

SUBTOTAL (3)  ($) 0.00

SUBTOTAL (1)  1078.00
SUBTOTAL (2)  0.00
SUBTOTAL (3)  0.00
TOTAL  ($)  1078.00

## SIGNATURE BLOCK

Respectfully submitted,

Date: May 23, 2003
Reg. No.: 42,545
Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

John V. Forcier
Attorney for the Applicant
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110

## CORRESPONDENCE ADDRESS

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

2629951

C000753

10446279.052303

Express Mail Mailing Label No. EV289512750US

**PATENT**
Attorney No. BSI-018C1
(354/51)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANTS:    Uken et al.

SERIAL NO.:    Not yet assigned          GROUP NO.:    3634

FILING DATE:    Herewith                      EXAMINER:    Not yet assigned

TITLE:    SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE
              WINDOW

Mail Stop Patent Application
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## PRELIMINARY AMENDMENT

Prior to examination, please enter this Preliminary Amendment and consider the accompanying remarks.  Amend the application as follows, without prejudice.  In accordance with 37 CFR 1.121, marked up versions of the amendments are attached at the end of this Preliminary Amendment.

In the Specification

On page 1, please amend paragraph [0001] to read as follows:

[0001]    This application is a continuation of U.S. Application No. 10/044,005 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 11, 2002, which application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Serial No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 12, 2001.

C000754

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 2 of 9

<u>In the Claims</u>

Please cancel claims 1-22 without prejudice, and add new claims 23-55 as follows.

23. (New) A balance shoe for a window balance system, the balance shoe comprising:

a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of a window balance;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

24. (New) The balance shoe of claim 23 wherein the connecting device comprises one or more resilient tabs.

25. (New) The balance shoe of claim 23 wherein the connecting device comprises a screw.

26. (New) The balance shoe of claim 23 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

27. (New) The balance shoe of claim 23 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

28. (New) The balance shoe of claim 23 wherein the locking member comprises two opposing ends integrally connected by a spring member.

29. (New) The balance shoe of claim 28 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

1044279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 3 of 9

30. (New) The balance shoe of claim 23 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

31. (New) The balance shoe of claim 30 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

32. (New) The balance shoe of claim 23 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

33. (New) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

   providing a window balance system comprising:

      a U-shaped channel;

      a spring connected to a system of pulleys located within the U-shaped channel;

      a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

         a balance shoe comprising:

            a frame comprising:

               an enlarged first end comprising a frame bottom surface; and

               a second end comprising a frame front surface and two frame edge surfaces;

            a locking member proximal to the enlarged first end of the frame;

            a cam in communication with the locking member; and

            a connecting device for attaching the balance shoe to the U-shaped channel;

   inserting the enlarged first end of the frame of the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular

C000756

1044ᴳ279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 4 of 9

to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

34. (New) The method of claim 33 wherein the connecting device comprises one or more resilient tabs and the U-shaped channel comprises a plurality of openings.

35. (New) The method of claim 33 wherein the connecting device comprises a screw.

36. (New) The method of claim 33 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

37. (New) The method of claim 33 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

38. (New) The method of claim 33 wherein the locking member comprises two opposing ends integrally connected by a spring member.

39. (New) The method of claim 38 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

40. (New) The method of claim 33 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 5 of 9

41. (New) The method of claim 40 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

42. (New) The method of claim 33 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

43. (New) A window balance system comprising:

    a U-shaped channel comprising a plurality of openings;

    a spring connected to a system of pulleys located within the U-shaped channel;

    a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

    a balance shoe, wherein the balance shoe comprises:

        a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of an invented window balance;

        a locking member proximal to the enlarged first end;

        a cam in communication with the locking member; and

        a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

44. (New) The window balance system of claim 43 wherein at least a portion of the second end of the frame is disposed within the U-shaped channel.

45. (New) The window balance system of claim 43 wherein the connecting device comprises one or more resilient tabs.

46. (New) The window balance system of claim 45 wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 6 of 9

47. (New) The window balance system of claim 43 wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a fastener.

48. (New) The window balance system of claim 47 wherein the fastener is a rivet.

49. (New) The window balance system of claim 43 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the window balance system is installed in a window jamb.

50. (New) The window balance system of claim 43 wherein the locking member of the balance shoe comprises two opposing ends integrally connected by a spring member.

51. (New) The window balance system of claim 50 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb pocket when the window balance system is installed in a window jamb.

52. (New) The window balance system of claim 43 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the frame.

53. (New) The window balance system of claim 52 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the plate of the locking member to engage a jamb track when the window balance system is installed in a window jamb.

54. (New) The window balance system of claim 43 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 7 of 9

55. (New) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

proviging a window balance system comprising:

a U-shaped channel; and

a balance shoe comprising a frame including a frame bottom surface, a frame front surface and two frame edge surfaces;

inserting the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 8 of 9

### REMARKS

The specification is hereby amended to claim priority to its parent application. Claims 1-22 are hereby cancelled and claims 23-55 are hereby added. Claims 23-55 are fully supported by the specification as originally filed. No new matter is added thereby.

### CONCLUSION

Applicants respectfully request entry of this amendment and allowance of claims 23-55 in due course. The Examiner is invited to contact Applicants' undersigned representative by telephone at the number listed below to discuss any outstanding issues.

Respectfully submitted,

Date: May 23, 2003
Reg. No.: 42,545

John V. Forcier
Attorney for Applicants
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel.:     (617) 248-7675
Fax:      (617) 248-7100

2629932

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 9 of 9

## MARKED UP VERSION SHOWING AMENDMENTS

Page 1, first paragraph:

[0001]    This application is a continuation of U.S. Application No. 10/044,005 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 11, 2002, which application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Serial No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 12, 2001.

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 1

C000763

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.: EV289512750US



PRIOR ART

FIG. 2A

C000764

Title. Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors:   Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.:   EV289512750US



FIG. 2B

C000765

10446279 .052303

Title: Snap Lock Balance Shoe and System for a
Pivotable  Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.:  EV289512750US



**FIG. 3A**



**FIG. 3B**

C000766

10446279 .062303

Title:  Snap Lock Balance Shoe and System for a
Pivotable  Window
Inventors:  Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 3C

Title: Snap Lock Balance Shoe and System for a
Pivotable  Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.: EV289512750US

210



230

**FIG. 3D**

210



240

250        250

**FIG. 3E**

210



250

**FIG. 3F**

C000768

10446279.052303

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 4

C000769

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.: EV289512750US



**FIG. 5A**



**FIG. 5B**

C000770

Title: Snap Lock Balance Shoe and System for a
Pivotable  Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018CI
Express Mail Mailing Label No.:  EV289512750US



FIG. 6A

FIG. 6B

C000771

10446279 .062303

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 6C

FIG. 6D

10446279 .052303

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 7A

FIG. 7B

FIG. 8A

FIG. 8B

C000773

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 9

C000774

Title: Snap Lock Balance Shoe and System for a
Pivotable Window
Inventors: Uken et al.
Serial No.: Not Yet Assigned
Atty Docket No.: BSI-018C1
Express Mail Mailing Label No.: EV289512750US



FIG. 10A

FIG. 10B

FIG. 11A

FIG. 11B

FIG. 12A

FIG. 12B

FIG. 13A

FIG. 13B

C000775



Express Mail Mail Label No. EV289512750US

**PATENT**
Attorney No. BSI-018CI
(354/51)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANTS:    Uken et al.

SERIAL NO.:    Not yet assigned       GROUP NO.:    3634

FILING DATE:    Herewith       EXAMINER:    Not yet assigned

TITLE:    SNAP LOCK BALANCE SHOE AND SYSTEM FOR A PIVOTABLE
WINDOW

Mail Stop Patent Application
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## PRELIMINARY AMENDMENT

Prior to examination, please enter this Preliminary Amendment and consider the
accompanying remarks. Amend the application as follows, without prejudice. In accordance
with 37 CFR 1.121, marked up versions of the amendments are attached at the end of this
Preliminary Amendment.

In the Specification

On page 1, please amend paragraph [0001] to read as follows:



[0001]    This application is a continuation of U.S. Application No. 10/044,005 entitled Snap
Lock Balance Shoe and System for a Pivotable Window filed on January 11, 2002, which
application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent
Application Serial No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable
Window filed on January 12, 2001.

1044-6279.052303



Preliminary Amendment
Atty Docket BSI-018C1
Page 2 of 9

### In the Claims

Please cancel claims 1-22 without prejudice, and add new claims 23-55 as follows.

23) (New) A balance shoe for a window balance system, the balance shoe comprising:

a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of a window balance;    *irrelevant for this size of a shoe!*

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

24. (New) The balance shoe of claim 23 wherein the connecting device comprises one or more resilient tabs.

25. (New) The balance shoe of claim 23 wherein the connecting device comprises a screw.

26. (New) The balance shoe of claim 23 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

27. (New) The balance shoe of claim 23 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

28. (New) The balance shoe of claim 23 wherein the locking member comprises two opposing ends integrally connected by a spring member.

29. (New) The balance shoe of claim 28 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 3 of 9

30. (New) The balance shoe of claim 23 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

31. (New) The balance shoe of claim 30 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

32. (New) The balance shoe of claim 23 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

33. (New) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

    providing a window balance system comprising:

        a U-shaped channel;

        a spring connected to a system of pulleys located within the U-shaped channel;

        a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

        a balance shoe comprising:

            a frame comprising:

                an enlarged first end comprising a frame bottom surface; and

                a second end comprising a frame front surface and two frame edge surfaces;

            a locking member proximal to the enlarged first end of the frame;

            a cam in communication with the locking member; and

            a connecting device for attaching the balance shoe to the U-shaped channel;

    inserting the enlarged first end of the frame of the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular

10446279.052303

Preliminary Amendment
Atty Docket BSI-018CI
Page 4 of 9

to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

34. (New) The method of claim 33 wherein the connecting device comprises one or more resilient tabs and the U-shaped channel comprises a plurality of openings.

35. (New) The method of claim 33 wherein the connecting device comprises a screw.

36. (New) The method of claim 33 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

37. (New) The method of claim 33 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

38. (New) The method of claim 33 wherein the locking member comprises two opposing ends integrally connected by a spring member.

39. (New) The method of claim 38 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

40. (New) The method of claim 33 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

C000779

10446279.052303

Preliminary Amendment
Atty Docket BSI-018CI
Page 5 of 9



41. (New) The method of claim 40 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

42. (New) The method of claim 33 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

43. (New) A window balance system comprising:
    a U-shaped channel comprising a plurality of openings;
    a spring connected to a system of pulleys located within the U-shaped channel;
    a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and
    a balance shoe, wherein the balance shoe comprises:
        a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of an invented window balance;
        a locking member proximal to the enlarged first end;
        a cam in communication with the locking member; and
        a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

44. (New) The window balance system of claim 43 wherein at least a portion of the second end of the frame is disposed within the U-shaped channel.

45. (New) The window balance system of claim 43 wherein the connecting device comprises one or more resilient tabs.

46. (New) The window balance system of claim 45 wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

C000780

10446279.052303

Preliminary Amendment
Atty Docket BSI-018CI
Page 6 of 9



47. (New) The window balance system of claim 43 wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a fastener.  *Does not recite that the correcting device comprises a fastener - see claim 26, 36*



48. (New) The window balance system of claim 47 wherein the fastener is a rivet.

49. (New) The window balance system of claim 43 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the window balance system is installed in a window jamb.

50. (New) The window balance system of claim 43 wherein the locking member of the balance shoe comprises two opposing ends integrally connected by a spring member.

51. (New) The window balance system of claim 50 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb pocket when the window balance system is installed in a window jamb.

52. (New) The window balance system of claim 43 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the frame.

53. (New) The window balance system of claim 52 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the plate of the locking member to engage a jamb track when the window balance system is installed in a window jamb.

54. (New) The window balance system of claim 43 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

C000781

10446279.052303

Preliminary Amendment
Atty Docket BSI-018C1
Page 7 of 9

55. (New) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

provi" ding a window balance system comprising:

a U-shaped channel; and

a balance shoe comprising a frame including a frame bottom surface, a frame front surface and two frame edge surfaces;

inserting the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

C000782

10446279.052303

## REMARKS

The specification is hereby amended to claim priority to its parent application. Claims 1-22 are hereby cancelled and claims 23-55 are hereby added. Claims 23-55 are fully supported by the specification as originally filed. No new matter is added thereby.

## CONCLUSION

Applicants respectfully request entry of this amendment and allowance of claims 23-55 in due course. The Examiner is invited to contact Applicants' undersigned representative by telephone at the number listed below to discuss any outstanding issues.

Respectfully submitted,

Date: May 23, 2003
Reg. No.: 42,545

John V. Forcier
Attorney for Applicants
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel.:    (617) 248-7675
Fax:    (617) 248-7100

2629932

Preliminary Amendment
Atty Docket BSI-018CI
Page 9 of 9

## MARKED UP VERSION SHOWING AMENDMENTS

Page 1, first paragraph:

[0001]   This application is a continuation of U.S. Application No. 10/044,005 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 11, 2002, which application incorporates by reference in its entirety and claims priority to U.S. Provisional Patent Application Serial No. 60/261,501 entitled Snap Lock Balance Shoe and System for a Pivotable Window filed on January 12, 2001.

C000784

EXPRESS MAIL MAILING LABEL NO. EV289512750US

PATENT
Attorney Docket No. BSI-018C1
(354/51)



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(S):    Uken et al.

SERIAL NO.:    Not yet assigned    GROUP NO.:    3634

FILING DATE:    Herewith    EXAMINER:    Not yet assigned

TITLE:    Snap Lock Balance Shoe and System for a Pivotable Window

Mail Stop Patent Application
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT

Sir:

In accordance with the provisions of 37 C.F.R. 1.97 and 1.98, Applicants hereby make of record the patents and publications listed on the accompanying Form PTO-1449, and other information contained herein, for consideration by the Examiner in connection with the examination of the above-identified patent application.  Copies of the patents and publications are enclosed.

## REMARKS

In accordance with the provisions of 37 C.F.R. 1.97, this statement is being filed (CHECK ONE):

☒    (1)    within three (3) months of the **filing date** of a national application other than a continued prosecution application under 37 C.F.R. 1.53(d), or within three (3) months of the **date of entry of the national stage** as set forth in 37 C.F.R. 1.491 in an international application, or before the mailing of the **first Office action** on the merits, or before the mailing of a **first Office** action after the filing of a request for continued examination under 37 C.F.R. 1.114; or

☐    (2)    after the period defined in (1) but before the mailing date of a **final action** or a **notice of allowance** under 37 C.F.R. 1.311, and

Information Disclosure Statement
Serial No.  Not yet assigned
Atty. Docket No. BSI-018C1
Page 2 of 3

☐      the requisite Statement is below, **OR**

☐      the requisite fee under 37 C.F.R. 1.17(p), namely **$180.00**, is included herein, or

☐    (3)    after the mailing date of a **final action** or **notice of allowance** but before the payment of the issue fee, **AND**

☐      the requisite Statement is below, **AND**

☐      the requisite petition fee under 37 C.F.R. 1.17(p), namely **$180.00** is included herein.

It is respectfully requested that each of the patents and publications listed on the attached Form PTO-1449, and other information contained herein, be made of record in this application.

## STATEMENT

As required under 37 C.F.R. 1.97(e), Applicant(s), through the undersigned, hereby state either that [check the appropriate space only if either **(2)** or **(3)** is checked on the previous page **and** the Statement is required]:

☐    1.    Each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application **not more than three months** prior to the filing of the Information Disclosure Statement; or

☐    2.    No item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing this Statement after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to **any individual designated in 37 C.F.R. 1.56(c) more than three months** prior to the filing of the Information Disclosure Statement.

C000786

Information Disclosure Statement
Serial No. Not yet assigned
Atty. Docket No. BSI-018CI
Page 3 of 3

Respectfully submitted,

Date: May 23, 2003
Reg. No. 42,545

John V. Forcier
Attorney for Applicant(s)
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

2629942

Express Mail Mailing Label No. EV289512750US

SHEET 1 OF 2

| FORM PTO - 1449 | | | ATTORNEY DOCKET NO.: BSI-018C1 | | | |
|---|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT | | | APPLICANT(S): Uken et al. | | | |
| | | | SERIAL NO.: Not yet assigned | | | |
| | | | FILING DATE: Herewith | | | |
| | | | GROUP: 3634      Examiner: Not yet assigned | | | |

*(Right margin vertical stamp: JC71B U.S. PTO  10/446279  05/233/03)*

## U.S. PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| H.B.T | A1 | 4,068,406 | 01/17/78 | Wood | 49 | 181 | 08/19/76 |
| | A2 | 4,079,549 | 03/21/78 | Wood | 49 | 181 | 08/26/76 |
| | A3 | 4,332,054 | 06/01/82 | Paist et al. | 16 | 197 | 06/09/80 |
| | A4 | 4,506,478 | 03/26/85 | Anderson | 49 | 181 | 08/16/83 |
| | A5 | 4,510,713 | 04/16/85 | Anderson | 49 | 175 | 08/16/83 |
| | A6 | 4,610,108 | 09/09/86 | Marshik | 49 | 181 | 12/20/84 |
| | A7 | 4,930,254 | 06/05/90 | Valentin | 49 | 181 | 10/17/98 |
| | A8 | 4,941,285 | 07/17/90 | Westfall | 49 | 176 | 10/17/89 |
| | A9 | 4,958,462 | 09/25/90 | Cross | 49 | 181 | 06/05/89 |
| | A10 | 5,069,001 | 12/03/91 | Makarowski | 49 | 176 | 11/21/90 |
| | A11 | 5,127,192 | 07/07/92 | Cross | 49 | 181 | 08/07/91 |
| | A12 | 5,189,838 | 03/02/93 | Westfall | 49 | 181 | 06/10/92 |
| | A13 | 5,251,401 | 10/12/93 | Prete et al. | 49 | 181 | 10/02/91 |
| | A14 | 5,301,467 | 04/12/94 | Schmidt et al. | 49 | 181 | 09/02/93 |
| | A15 | 5,377,384 | 01/03/95 | Riegelman | 16 | 193 | 04/05/93 |
| | A16 | 5,553,903 | 09/10/96 | Prete et al. | 292 | 163 | 08/22/94 |
| | A17 | 5,572,828 | 11/12/96 | Westfall | 49 | 181 | 02/13/95 |
| | A18 | 5,615,452 | 04/01/97 | Habbersett | 16 | 194 | 05/05/95 |
| | A19 | 5,632,117 | 05/27/97 | Prete et al. | 49 | 181 | 01/13/95 |
| | A20 | 5,632,118 | 05/27/97 | Stark | 49 | 181 | 11/01/95 |
| | A21 | 5,661,927 | 09/02/97 | Polowinczak, et al. | 49 | 447 | 03/06/96 |
| | A22 | 5,697,188 | 12/16/97 | Fullick et al. | 49 | 181 | 12/08/95 |
| | A23 | 5,704,165 | 01/06/98 | Slocomb et al. | 49 | 181 | 07/19/96 |
| | A24 | 5,737,877 | 04/14/98 | Meunier et al. | 49 | 445 | 07/26/96 |

| EXAMINER *Hugh B. Thompson* | DATE CONSIDERED *9-15-03* |
|---|---|

Sheet 2 of 2

| FORM PTO - 1449 | ATTORNEY DOCKET NO.: BSI-018CI |
|---|---|
| INFORMATION DISCLOSURE STATEMENT | APPLICANT(S): Uken et al. |
| | SERIAL NO.: Not yet assigned |
| | FILING DATE: Herewith |
| | GROUP: 3634    Examiner: Not yet assigned |

## U.S. PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| 11-1 | A25 | 5,802,767 | 09/08/98 | Slocomb et al. | 49 | 181 | 12/16/96 |
| | A26 | 5,806,243 | 09/15/98 | Prete et al. | 49 | 181 | 05/21/97 |
| | A27 | 5,806,900 | 09/15/98 | Bratcher et al. | 292 | 137 | 11/05/96 |
| | A28 | 5,829,196 | 11/03/98 | Maier | 49 | 181 | 05/30/97 |
| | A29 | 5,873,199 | 02/23/99 | Meunier et al. | 49 | 181 | 06/23/97 |
| | A30 | 5,924,243 | 07/20/99 | Polowinczak et al. | 49 | 181 | 07/11/97 |
| | A31 | 5,927,013 | 07/27/99 | Slocomb et al. | 49 | 181 | 01/05/98 |
| | A32 | 5,943,822 | 08/31/99 | Slocomb et al. | 49 | 181 | 08/27/98 |
| | A33 | 6,032,417 | 03/07/00 | Jakus et al. | 49 | 181 | 08/19/97 |
| | A34 | 6,041,475 | 03/28/00 | Nidelkoff. | 16 | 193 | 05/22/97 |
| | A35 | 6,041,476 | 03/28/00 | deNormand | 16 | 197 | 11/21/97 |
| | A36 | 6,041,550 | 03/28/00 | Tix | 49 | 404 | 11/05/96 |
| | A37 | 6,058,653 | 05/09/00 | Slocomb et al. | 49 | 181 | 01/19/99 |
| | A38 | 6,119,398 | 09/19/00 | Yates, Jr. | 49 | 181 | 11/05/98 |
| | A39 | 6,155,615 | 12/05/00 | Schultz | 292 | 163 | 07/22/98 |
| | A40 | 6,161,335 | 12/19/00 | Beard et al. | 49 | 181 | 12/02/99 |
| | A41 | 6,178,696 | 01/30/01 | Liang | 49 | 185 | 10/29/99 |

## FOREIGN PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | COUNTRY CODE | CLASS | SUB CLASS | FILING DATE | ABSTRACT ONLY | ENGLISH LANG (Y/N) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

## OTHER ART, JOURNAL ARTICLES, ETC.

| EXAM. INIT. | OTHER DOCUMENTS: (Including Author, Title, Date, Relevant Pages, Place of Publication) |
|---|---|
| | |

| EXAMINER | *Hugh B. Thompson* | DATE CONSIDERED | 9-15-03 |
|---|---|---|---|

2629954



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/446,279 | 05/23/2003 | Stuart J. Uken | BSI-018C1 | 1684 |

21323          7590          09/16/2003
TESTA, HURWITZ & THIBEAULT, LLP
HIGH STREET TOWER
125 HIGH STREET
BOSTON, MA  02110

| EXAMINER |
|---|
| THOMPSON, HUGH B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3614 | |

DATE MAILED: 09/16/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/446,279 | UKEN ET AL. |
| | Examiner | Art Unit |
| | Hugh B. Thompson | 3634 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspond nce address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _____ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .

2a) ☐ This action is FINAL.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) 23-55 is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) 23-45,47 and 49-55 is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☒ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☒ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) 4 .
4) ☐ Interview Summary (PTO-413) Paper No(s). _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: .

C000791

Application/Control Number: 10/446,279                                    Page 2
Art Unit: 3634

## DETAILED ACTION

### *Specification*

1.      Applicant is reminded of the proper language and format for an abstract of the disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a

separate sheet within the range of 50 to 150 words.  It is important that the abstract not exceed

150 words in length since the space provided for the abstract on the computer tape used by the

printer is limited.  The form and legal phraseology often used in patent claims, such as "means"

and "said," should be avoided.  The abstract should describe the disclosure sufficiently to assist

readers in deciding whether there is a need for consulting the full patent text for details.

The language should be clear and concise and should not repeat information given in the

title.  It should avoid using phrases which can be implied, such as, "The disclosure concerns,"

"The disclosure defined by this invention," "The disclosure describes," "*Disclosed are,*"etc.

### *Claim Rejections - 35 USC § 102*

I.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –
(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on
sale in this country, more than one year prior to the date of application for patent in the United States.1.      Claims 1-
9 are rejected under 35 U.S.C. 102(b) as being anticipated by Schmidt #5,301,467. Schmidt discloses a balance shoe
assembly 20 for a sash comprised of frame 24, plate-like spring locking member 34, having opposed ends 35
engageable with the sash jamb track/channel 18 when cam 32 is rotated, the cam having a key hole therein, a
connecting device 28, which connects the shoe to a counter-balance spring and has a pocket therein, and is received
within the frame 24, a pivot bar/fastener 29, which engages the cam, and a frame pocket 30, which can receive a
fastener.

C000792

Application/Control Number: 10/446,279                                    Page 3
Art Unit: 3634

Claims 23-32 are rejected under 35 U.S.C. 102(b) as being anticipated by Schmidt

#5,301,467. Schmidt discloses a balance shoe assembly 20 for a sash comprised of frame 24,

plate-like spring locking member 34, having opposed ends 35 engageable with the sash jamb

track/channel 18 when cam 32 is rotated, the cam having a key hole therein, a connecting device

28, which connects the shoe to a counter-balance spring and has a pocket therein, and is received

within the frame 24, a pivot bar/fastener/connecting device 22, 29, which engages the cam and is

secured to the sash by fasteners (unnumbered; col. 3, lines 59-64), and a frame pocket 30, which

can receive a fastener.


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the
> subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill
> in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the
> invention was made.

Claims 33-45, 47, and 49-55 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Schmidt as applied to claims 23-32 above, and further in view of de Normand #6,041,476.

Schmidt fails to disclose a pulley system within a U-shaped channel for a sash assembly having a

counter-balance spring and cords there attached. de Normand teaches the utility of a

counterbalance assembly comprised of spring 4, U-shaped channel 2, 3, pulleys 10-12, 30-32,

pulley cord 6, cord attachment end 8, which can be attached to the sash frame or balance shoe

50, and connecting devices 5 receivable within apertures (unnumbered) within the channel.

Application/Control Number: 10/446,279

Art Unit: 3634

Page 4

An arrangement such as this provides an excellent means for counterbalancing sash assemblies. Therefore, to one of ordinary skill in the art, it would have been obvious, as matter of engineering design choice, to provide a balance system of Schmidt with a pulley system/counterbalance system as taught by de Normand so as to provide an excellent means for counterbalancing a sash assembly, while producing no new and unexpected results. It would have been further obvious to install the system in the manner as claimed, i.e., inserting the system within a window jamb, rotating the system within the jamb track, while producing no new and unexpected results.

### Allowable Subject Matter

Claims 46 and 48 are objected to as being dependent upon rejected claim 43, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. The primary reason for the allowable subject matter of claim 46 is the inclusion of resilient tabs of the connecting device being received within openings within the U-shaped channel. For claim 48 it is the inclusion of a fastener adapted to mate with the pocket formed in the second end of the frame, the fastener being a rivet. The prior art of record fails to teach or suggest the claimed features absent the applicants' own disclosure.

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

Application/Control Number: 10/446,279                                    Page 5
Art Unit: 3634

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 23-55 are provisionally rejected under the judicially created doctrine of double patenting over claims 1-22 of copending Application No. 10/044,005. This is a provisional double patenting rejection since the conflicting claims have not yet been patented.

The subject matter claimed in the instant application is fully disclosed in the referenced copending application and would be covered by any patent granted on that copending application since the referenced copending application and the instant application are claiming common subject matter, as follows: the structure of the balance shoe and balance system as claimed.

Furthermore, there is no apparent reason why applicant would be prevented from presenting claims corresponding to those of the instant application in the other copending application. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Examiner Hugh B. Thompson whose telephone number is (703) 305-0102. The examiner can normally be reached on Monday through Friday from 8:30 am to 5:00 pm.

Application/Control Number: 10/446,279                                           Page 6
Art Unit: 3634

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Daniel Stodola, can be reached on (703) 308-2686. The official fax phone number for this Group is (703) 305-3597, and the unofficial fax phone number (for drafts) is (703) 746-3641.

     Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the Group receptionist whose telephone number is (703) 308-2168.

Hugh B. Thompson

Hugh B. Thompson
Art Unit 3634
September 15, 2003

*Amendment and Response*
*Serial No. 10/446,279*

<u>AMENDMENTS TO THE SPECIFICATION</u>

Please delete the original Abstract of the Disclosure in its entirety and replace with the

following:

The invention relates to a snap lock balance shoe and balance systems to be incorporated

in pivotable double hung windows and installation methods of such systems. In one

embodiment, the snap lock balance shoe includes a pair of retractable tabs that partially extend

through openings within an inverted window balance. In one embodiment of the method, an

elongated end of the balance shoe is inserted into a window jamb and then rotated into position.

*Page 2 of 16*

C000799



Form PTO-948 (Rev. 03/03)
Application No. 10/446279

U.S. DEPARTMENT OF COMMERCE
U.S. Patent and Trademark Office

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

The drawing(s) filed (insert date) 5/23/03 are:
A. ____ approved by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ✗ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 for the reasons indicated below. Corrected drawings are required.

**1. DRAWINGS.** 37 CFR 1.84(a): Acceptable categories of drawings: Black ink or Color (3 sets required).
____ Color drawings are not acceptable until petition is granted. Fig(s)____
____ Pencil and non black ink not permitted. Fig(s)____

**2. PHOTOGRAPHS.** 37 CFR 1.84(b)
____ 1 full-tone set is required. Fig(s)____
____ Photographs may not be mounted. 37 CFR 1.84(e)
____ Photographs must meet paper size requirements of of 37 CFR 1.84(f). Fig(s)____
____ Poor quality (half-tone). Fig(s)____

**3. TYPE OF PAPER.** 37 CFR 1.84(c)
____ Paper not flexible, strong, white, and durable. Fig(s)____
____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not accepted. Fig(s)____

**4. SIZE OF PAPER.** 37 CFR 1.84(f): Acceptable sizes:
21.0 cm by 29.7 cm (DIN size A4) or
21.6cm by 27.9cm (8 1/2x 11 inches)
____ All drawing sheets not the same size. Sheet(s)____
____ Drawings sheets not an acceptable size. Fig(s)____

**5. MARGINS.** 37 CFR 1.84(g): Acceptable margins:
Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
____ Margins not acceptable. Fig(s)____
____ Top (T)    ____ Left (L)
____ Right (R)    ____ Bottom (B)

**6. VIEWS.** 37 CFR 1.84(h)
REMINDER: Specification may require revision to correspond to drawing changes. e.g., if Fig. 1 is changed to Fig. 1A, Fig 1B and Fig. 1C, etc., the specification, at the Brief Description of the Drawings, must likewise be changed.
____ Views not labeled separately or properly. Fig(s)____

**7. SECTIONAL VIEWS.** 37 CFR 1.84(h)(3)
____ Sectional designation should be noted with Arabic or Roman numbers. Fig(s)____

**8. ARRANGEMENT OF VIEWS.** 37 CFR 1.84(i)
____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)____

**9. SCALE.** 37 CFR 1.84(k)
____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction. Fig(s)____

**10. CHARACTER OF LINES, NUMBERS, & LETTERS.** 37 CFR 1.84(l)
✗ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (poor line quality). Fig(s)____ 13B

**11. SHADING.** 37 CFR 1.84(m)
____ Solid black areas pale. Fig(s)____
____ Solid black shading not permitted. Fig(s)____

**12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.** 37 CFR 1.84(p)
✗ Numbers and reference characters not plain and legible. Fig(s)____ 13B
✗ Figure legends are poor. Fig(s)____ 13B
____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(1) Fig(s)____
____ English alphabet not used. 37 CFR 1.84(p)(2) Fig(s)____
✗ Numbers, letters and reference characters must be at least 32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3). Fig(s)____ 13B

**13. LEAD LINES.** 37 CFR 1.84(q)
____ Lead lines missing. Fig(s)____

**14. NUMBERING OF SHEETS OF DRAWINGS.** 37 CFR 1.84(t)
____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Sheet(s)____

**15. NUMBERING OF VIEWS.** 37 CFR 1.84(u)
____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)____

**16. DESIGN DRAWINGS.** 37 CFR 1.152
____ Surface shading shown not appropriate. Fig(s)____
____ Solid black surface shading is not permitted except when used to represent the color black as well as color contrast. Fig(s)____

**COMMENTS:**

Reviewer Tany    Date 9/20/03
If you have questions, call (703) 305-8404.    Attachment to Paper No. 5

C000797



**PATENT**
Attorney Docket No. BSI-018C1
(354/51)

#6/C
DN
2/17/04

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANTS:   Uken et al.      CONFIRMATION NO:   1684

SERIAL NO.:   10/446,279      GROUP NO.:   3634

FILING DATE:   May 23, 2003      EXAMINER:   H. B. Thompson

TITLE:   Snap Lock Balance Shoe and System for a Pivotable Window

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RECEIVED**

DEC 30 2003

**GROUP 3600**

### AMENDMENT and RESPONSE

This paper is submitted in response to an Office action, Paper No. 5, mailed from the U.S. Patent and Trademark Office on September 16, 2003.

Applicants respectfully request entry of the following amendments, reconsideration and withdrawal of all grounds of rejection and objection, and passage of the claims to allowance.

Please amend the above-identified application, without prejudice, as follows:

- Amendments to the Specification appear on page 2 of this Amendment and response.

- Amendments to the Claims are reflected in the Listing of Claims which begins on page 3 of this Amendment and Response.

- Remarks/Arguments begin on page 10 of this Amendment and Response.

12/24/2003 BDIRETA1 00000013 200531    10446279
01 FC:1608        36.00 DA
02 FC:1201        172.00 DA

*Amendment and Response*
*Serial No. 10/446,279*

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application.

### Listing of Claims:

23. (Previously presented) A balance shoe for a window balance system, the balance shoe comprising:

a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of a window balance;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.



24. (Previously presented) The balance shoe of claim 23 wherein the connecting device comprises one or more resilient tabs.

25. (Previously presented) The balance shoe of claim 23 wherein the connecting device comprises a screw.

26. (Previously presented) The balance shoe of claim 23 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

27. (Previously presented) The balance shoe of claim 23 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

28. (Previously presented) The balance shoe of claim 23 wherein the locking member comprises two opposing ends integrally connected by a spring member.

*Page 3 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

29. (Previously presented) The balance shoe of claim 28 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

30. (Previously presented) The balance shoe of claim 23 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

31. (Previously presented) The balance shoe of claim 30 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

32. (Previously presented) The balance shoe of claim 23 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

33. (Previously presented) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

    providing a window balance system comprising:

        a U-shaped channel;

        a spring connected to a system of pulleys located within the U-shaped channel;

        a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

        a balance shoe comprising:

            a frame comprising:

                an enlarged first end comprising a frame bottom surface; and

                a second end comprising a frame front surface and two frame edge surfaces;

            a locking member proximal to the enlarged first end of the frame;

            a cam in communication with the locking member; and

*Page 4 of 16*

C000801

*Amendment and Response*
*Serial No. 10/446,279*

a connecting device for attaching the balance shoe to the U-shaped

channel;

inserting the enlarged first end of the frame of the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

34. (Previously presented) The method of claim 33 wherein the connecting device comprises one or more resilient tabs and the U-shaped channel comprises a plurality of openings.

35. (Previously presented) The method of claim 33 wherein the connecting device comprises a screw.

36. (Previously presented) The method of claim 33 wherein the connecting device comprises a fastener that mates with a pocket formed within the second end of the frame.

37. (Previously presented) The method of claim 33 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

38. (Previously presented) The method of claim 33 wherein the locking member comprises two opposing ends integrally connected by a spring member.

*Page 5 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

39. (Previously presented) The method of claim 38 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

40. (Previously presented) The method of claim 33 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the enlarged first end of the frame.

41. (Previously presented) The method of claim 40 wherein the cam is at least partially housed within the enlarged first end of the frame wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

42. (Previously presented) The method of claim 33 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

43. (Currently amended) A window balance system comprising:

    a U-shaped channel comprising a plurality of openings;

    a spring connected to a system of pulleys located within the U-shaped channel;

    a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

    a balance shoe, wherein the balance shoe comprises:

        a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by a U-shaped channel of an ~~invented~~ <u>inverted</u> window balance;

        a locking member proximal to the enlarged first end;

        a cam in communication with the locking member; and

        a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

44. (Previously presented) The window balance system of claim 43 wherein at least a portion of the second end of the frame is disposed within the U-shaped channel.

C000803

45. (Previously presented) The window balance system of claim 43 wherein the connecting device comprises one or more resilient tabs.

46. (Previously presented) The window balance system of claim 45 wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

47. (Previously presented) The window balance system of claim 43 wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a fastener.

48. (Previously presented) The window balance system of claim 47 wherein the fastener is a rivet.

49. (Previously presented) The window balance system of claim 43 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the window balance system is installed in a window jamb.

50. (Previously presented) The window balance system of claim 43 wherein the locking member of the balance shoe comprises two opposing ends integrally connected by a spring member.

51. (Previously presented) The window balance system of claim 50 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb pocket when the window balance system is installed in a window jamb.

52. (Previously presented) The window balance system of claim 43 wherein the locking member comprises a plate, wherein the plate is parallel to a back surface of the frame.

*Page 7 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

53. (Previously presented) The window balance system of claim 52 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the plate of the locking member to engage a jamb track when the window balance system is installed in a window jamb.

54. (Previously presented) The window balance system of claim 43 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar.

55. (Previously presented) A method for installing a window balance system within a window jamb in a window frame comprising the steps of:

  providing a window balance system comprising:

    a U-shaped channel; and

    a balance shoe comprising a frame including a frame bottom surface, a frame front surface and two frame edge surfaces;

  inserting the window balance system within a jamb track of the window jamb such that an axis extending along a longitudinal direction of the U-shaped channel is perpendicular to a back wall of the jamb track and an axis that is perpendicular to the two frame edge surfaces is parallel to the back wall while the frame front surface faces a side wall of the jamb track;

  rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down; and

  rotating the window balance system 90 degrees about the axis that is perpendicular to the two frame edge surfaces such that the frame bottom surface faces in a downward direction.

56. (New) A window balance system comprising:

  a U-shaped channel comprising a plurality of openings;

  a spring connected to a system of pulleys located within the U-shaped channel;

  a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

*Page 8 of 16*

C000805

*Amendment and Response*
*Serial No. 10/446,279*

a balance shoe, wherein the balance shoe comprises:

a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

57. (New) A window balance system comprising:

a U-shaped channel comprising a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe, wherein the balance shoe comprises:

a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.

*Page 9 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

## REMARKS/ARGUMENTS

Before entry of this Amendment and Response, the status of the application according to the pending Office action is as follows:

- Applicants are reminded of the proper language and format for an abstract of the disclosure.

- Claims 23-32 are rejected under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 5,301,467 to Schmidt ("Schmidt").

- Claims 33-45, 47, and 49-55 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Schmidt, and further in view of U.S. Patent No. 6,041,476 to deNormand ("deNormand").

- Claims 46 and 48 are objected to as being dependent upon rejected base claim 43, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

- Claims 23-55 are provisionally rejected under the judicially created doctrine of double patenting over claims 1-22 of copending Application No. 10/044,005.

Applicants hereby delete the original Abstract and present a new Abstract of the Disclosure. Support for the amendment can be found at least in the Abstract as filed, FIGS. 3C and 3E, and claims 23 and 33.

Applicants hereby amend claim 43 to replace the word "invented" with "inverted." No new matter has been added thereby. Support for the amendment can be found at least in paragraph [0013] and FIG. 3C. Applicants assert that this amendment was not necessary to distinguish over the prior art.

New claim 56 is hereby presented incorporating the subject matter of original claims 43-46. In view of the objection to claim 46, new claim 56 is now in condition for allowance.

*Page 10 of 16*

New claim 57 is hereby presented incorporating the subject matter of original claims 43,

47, and 48. In view of the objection to claim 48, new claim 57 is now in condition for allowance.

Claims 23-57 are currently pending. In view of above amendments and following

remarks, Applicants respectfully request reconsideration and withdrawal of all rejections and

objections and passage of all pending claims to allowance.

1.    Applicants are reminded of the proper language and format for an abstract of the

disclosure. Applicants have replaced the original Abstract with a new Abstract that conforms

with all language and format requirements. Entry and approval are respectfully requested.

2.    Claims 23-32 are rejected under 35 U.S.C. § 102(b) as being anticipated by Schmidt.

Applicants respectfully traverse this rejection as applied to the claims.

Schmidt appears to describe a locking slide block 20 for a tilt out window. Schmidt

includes a housing 24, a locking cam 32 and spring 34, and a plate 28 for connecting the block 20

to a counter-balance spring. Schmidt, col. 3, ll. 27-40. Additionally, the housing 24 is

constructed with sliding surfaces 25 on opposite sides of the block 20. Schmidt, col. 3, ll. 28-29.

These sliding surfaces 25 appear generally parallel and continuous along the entire length of the

sliding block housing 24. See Schmidt, FIG. 3. When installed in a jamb channel 18, the

position of the sliding surfaces 25 is proximate the side 40 of jamb channel 18, thereby guiding

the block 20 as it slides within the channel 18. See Schmidt, col. 3, ll. 66-68; FIG. 5.

In contrast to Schmidt, Applicants claim a balance shoe for a window balance system that

includes "a frame comprising an enlarged first end and a second end, wherein the second end is

adapted to be received within a U-shaped channel of a window balance." See Applicants' claim

23 and FIG. 3C. Applicants respectfully submit that Schmidt, at a minimum, fails to anticipate

Applicants' independent claim 23, because Schmidt fails to disclose at least "a frame comprising

*Page 11 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

an enlarged first end <u>and</u> *a second end*, wherein the second end is *adapted to be received by a U-shaped channel* of a window balance." Schmidt only appears to describe a generally rectangular-shaped balance shoe of a *continuous width*, see Schmidt, FIG. 5, not a shoe with an enlarged first end. Moreover, even if Schmidt describes a balance shoe with an enlarged first end, which it does not, Schmidt also does not describe a second end *adapted to be received by* a U-shaped channel of a window balance. If Schmidt was received by a window balance channel, the purpose of the sliding surfaces 25 would be defeated, as the outer sides of the wider balance channel would likely drag against the window jamb channel.

Accordingly, Applicants respectfully submit that independent claim 23 is patentable over Schmidt under 35 U.S.C. § 102(b). Because claims 24-32 depend either directly or indirectly from claim 23, and include all the respective limitations thereof, Applicants respectfully submit that these claims are patentable as well. Applicants respectfully request reconsideration and withdrawal of the rejection of claims 23-32 under 35 U.S.C. § 102(b).

3.      Claims 33-45, 47, and 49-55 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Schmidt, and further in view of deNormand. Applicants respectfully traverse this rejection as applied to the claims.

DeNormand appears to describe an inverted block and tackle window balance. The window balance includes a channel 2 supporting a series of pulleys 11, 12, 31, and 32, and a cord 6 wound around the pulleys. DeNormand, col. 2, ll. 26-27. A spring 4 attaches at one end to the channel 2, and at the other end, to a sliding support plate 35 that connects to a support plate end 7 of the cord 6. DeNormand, col. 2, ll. 29-32. Additionally, the balance channel 2 is "attached at one end to a sash shoe 50." DeNormand, col. 2, ll. 21-23 and FIG. 1. The balance of

*Page 12 of 16*

C000809

deNormand can apparently be mounted to move with the sash of a window or to remain fixed relative to the frame of the window. DeNormand, col. 1, ll. 65-67.

Schmidt appears to describe a locking slide block 20 for a tilt out window, as described above in Section 2. Additionally, Schmidt indicates that slide block 20 is slidably mounted within a jamb channel 18 and connected by a pivot 22 to a side of a window sash 14, 16. Schmidt, col. 3, ll. 20-26. The slide block 20 is also held within the jamb channel 18 by a flexible raised jamb channel face 42 having an opening 44. Schmidt, col. 3, l. 68 – col. 4, l. 2. It appears that the balance shoe of Schmidt is installed in a close sliding fit within the jamb track on all sides (see FIGS. 5, 6-8) to prevent excessive play of the shoe within the jamb channel and to slide along the slide surfaces 25 of the frame 24.

In contrast, and as indicated above, Applicants claim in original claim 33 and amended claim 43, a method for installing a window balance system (claim 33) and a window balance system (claim 43), which include a balance shoe including "a frame comprising an enlarged first end." Applicants also claim, in independent claim 55, a method for installing a window balance system within a window jamb, which includes "rotating the window balance system within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down."

Applicants respectfully submit that the combination of Schmidt and deNormand fails to render obvious Applicants' independent claims 33 and 43, because the combination fails to disclose at least a method for installing a window balance system (claim 33) or a window balance system (claim 43) which includes a balance shoe including "a frame comprising an *enlarged first end*" or any similar structure. As discussed above, Schmidt appears to disclose a generally rectangular balance shoe of *uniform width*, as does deNormand.

*Page 13 of 16*

C000810

*Amendment and Response*
*Serial No. 10/446,279*

Moreover, the combination of Schmidt and deNormand fails to render obvious Applicants' amended independent claim 43, which includes "a frame comprising an enlarged first end and a second end, *wherein the second end is adapted to be received by a U-shaped channel* of an inverted window balance." FIG. 1 of deNormand shows a generally square or rectangular balance shoe 50 located near a terminal end of the balance channel 2. DeNormand indicates that the balance shoe is attached *to* the channel, but is silent as to *how* it is attached. DeNormand, col. 2, l. 23. As the balance shoe 50 is shown to be generally square or rectangular in shape, it appears that it would be impossible to install it *within* the channel 2. See DeNormand, FIG. 1. Moreover, combining deNormand with the generally square or rectangular balance shoe described in Schmidt does not teach a balance system including a balance shoe with *"a second end . . . adapted to be received by a U-shaped channel"* of the balance system.

Applicants respectfully submit that that the combination of Schmidt and deNormand, at a minimum, fails to render obvious Applicants' independent claim 55, because that combination fails to disclose at least a method for inserting a window balance system within a jamb track including the step of "*rotating the window balance system within the jamb track 90 degrees* about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down." Even if Schmidt and deNormand were combined into a window balance system, the combination still does not teach or suggest a window balance system "rotat[ed] . . . within the jamb track 90 degrees about the axis extending along the longitudinal direction of the U-shaped channel such that the frame front surface faces down." In fact, the very construction of the jamb channel 18 described in Schmidt with the raised jamb channel face 42 having the opening 44 prevents "*rotating the window balance system within the jamb track 90 degrees* about the axis extending along the longitudinal direction of the U-shaped channel such

*Page 14 of 16*

*Amendment and Response*
*Serial No. 10/446,279*

that the frame front surface faces down." It appears that the sliding surfaces 25 of frame 24 would contact the raised jamb channel face 42, preventing complete rotation of the window balance system.

Accordingly, Applicants respectfully submit that independent claims 33, 43, and 55 are patentable over Schmidt, and further in view of deNormand under 35 U.S.C. § 103(a). Because claims 34-42, 44-45, 47, and 49-54 depend, either directly or indirectly, from independent claims 33 or 43, and include all the respective limitations thereof, Applicants respectfully submit that these claims are patentable as well. Applicants respectfully request reconsideration and withdrawal of the rejection of claims 33-45, 47, and 49-55 under 35 U.S.C. § 103(a).

4.     Claim 46 is objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. In accordance with the suggestion in the Office action, Applicants have rewritten claim 46 in independent form to include all of the limitations of claims 43-46. This new claim appears as independent claim 56. Allowance of claim 56 is respectfully requested.

5.     Claim 48 is objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. In accordance with the suggestion in the Office action, Applicants have rewritten claim 48 in independent form to include all of the limitations of claims 43, 47, and 48. This new claim appears as independent claim 57. Allowance of claim 57 is respectfully requested.

6.     Claims 23-55 are provisionally rejected under the judicially created doctrine of double patenting over claims 1-22 of copending Application No. 10/044,005. Applicants request that this provisional rejection be held in abeyance until such time as a determination of allowable

*Page 15 of 16*

C000812

*Amendment and Response*
*Serial No: 10/446,279*

subject matter in the instant application is made and the '005 application issues as a patent.

Applicants will consider filing a terminal disclaimer, should one be necessary, at the appropriate

time.

## CONCLUSION

In view of the foregoing, Applicants respectfully request reconsideration, withdrawal of

all grounds of rejection and objection, and allowance of claims 23-57 in due course.  The

Examiner is invited to contact Applicants' undersigned representative by telephone at the number

listed below to discuss any outstanding issues.

Respectfully submitted,

Date:  December 16, 2003
Reg. No. 42,545
Tel. No. (617) 248-7675
Fax No. (617) 248-7100

John V. Forcier
Attorney for Applicants
Testa, Hurwitz, & Thibeault, LLP
125 High Street
Boston, MA 02110

2720085_1

*Page 16 of 16*

| | |
|---|---|
| Application Serial Number | 10,446,279 |
| Filing Date | May 23, 2003 |
| First Named Inventor | Uken |
| Group Art Unit | 3634 |
| Examiner Name | H. B. Thompson |
| Attorney Docket No. | BSI-018C1 |
| Patent No. | Not applicable |
| Issue Date | Not applicable |

# TRANSMITTAL FORM

**(Stamp: DEC 19 2003 — PATENT & TRADEMARK OFFICE)**

## ENCLOSURES *(check all that apply)*

- [x] Fee Transmittal Form
  - [ ] Check Attached
  - [x] Copy of Fee Transmittal Form
- [x] Amendment/Response
  - [ ] Preliminary
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
  - [ ] Letter to Official Draftsperson
  - Including Drawings
  - [Total Sheets _____]
- [ ] Petition for Extension of Time
- [ ] Information Disclosure Statement
  - [ ] Form PTO-1449
  - [ ] Copies of IDS Citations
- [ ] Certified Copy of Priority Document(s)
- [ ] Sequence Listing submission
  - [ ] Paper Copy/CD
  - [ ] Computer Readable Copy
  - [ ] Statement verifying identity of above

- [ ] Copy of Notice to File Missing Parts of Application
- [ ] Formal Drawing(s)
- [ ] Request For Continued Examination (RCE) Transmittal
- [ ] Power of Attorney (Revocation of Prior Powers)
- [ ] Terminal Disclaimer
- [ ] Executed Declaration and Power of Attorney for Utility or Design Patent Application
- [ ] Small Entity Statement
- [ ] CD(s) for large table or computer program
- [ ] Amendment After Allowance
- [ ] Request for Certificate of Correction
  - [ ] Certificate of Correction (in duplicate)

- [ ] Notice of Appeal to Board of Patent Appeals and Interferences
- [ ] Appeal Brief (in triplicate)
- [ ] Status Inquiry
- [x] Return Receipt Postcard
- [x] Certificate of First Class Mailing under 37 C.F.R. 1.8
- [ ] Certificate of Facsimile Transmission under 37 C.F.R. 1.8
- [ ] Additional Enclosure(s) *(please identify below)*

**RECEIVED**
**DEC 30 2003**
**GROUP 3600**

### CORRESPONDENCE ADDRESS

Direct all correspondence to: Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

### SIGNATURE BLOCK

Respectfully submitted,

*[signature]*

Date: December 16, 2003
Reg. No.: 42,545
Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

John V. Forcier
Attorney for Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

2725543_1

C000814

FEE TRANSMITTAL
FY 2004

PTO/TRADE... DEC 19 2003

| | Complete if Known |
|---|---|
| Application Serial Number | 10/446,279 |
| Filing Date | May 23, 2003 |
| First Named Inventor | Uken |
| Group Art Unit | 3634 |
| Examiner Name | H. B. Thompson |
| Attorney Docket No. | BSI-018CI |

## METHOD OF PAYMENT

1. ☐ Payment Enclosed:
   ☐ Check ☐ Money Order ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531.
   ☒ Required Fees (copy of this sheet enclosed).
   ☐ Additional fee required under 37 CFR 1.16 and 1.17.
   ☐ Overpayment Credit.

3. ☐ Applicant claims small entity status.

## FEE CALCULATION

### 1. FILING FEE

| Large Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 770 | Utility filing fee | |
| 340 | Design filing fee | |
| 160 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | =20= | | x $ 18.00 = | |
| Independent Claims | =3= | | x $ 86.00 = | |
| ☐ Multiple Dependent Claim(s), if any | | | $290.00 = | |

TOTAL:
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)    ($)    0.00

### 2. AMENDMENT CLAIM FEES

| Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|
| Total 35 | -33 = | 2 | x $ 18.00 = | 36.00 |
| Indep. 6 | - 4 = | 2 | x $ 86.00 = | 172.00 |
| ☐ First Presentation of Multiple Dep. Claim | | | + $290.00 = | |

TOTAL:    ($) 208.00
SMALL ENTITY DISCOUNT:    ($)
SUBTOTAL (2)    ($) 208.00

### 3. ADDITIONAL FEES

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | Request for ex parte reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 420 | 210 | Extension for reply within second month | |
| 950 | 475 | Extension for reply within third month | |
| 1480 | 740 | Extension for reply within fourth month | |
| 2010 | 1005 | Extension for reply within fifth month | |
| 330 | 165 | Notice of Appeal | |
| 330 | 165 | Filing a brief in support of an appeal | |
| 290 | 145 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 180 | 180 | Submission of Information Disclosure Statement | |
| 770 | 385 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 770 | 385 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 100 | 100 | Certificate of Correction for applicant's error | |
| 110 | 55 | Submission of Terminal Disclaimer | |
| Other fee (Specify) | | | |
| Other fee (Specify) | | | |

SUBTOTAL (3)    ($)    0.00

RECEIVED
DEC 30 2003
GROUP 3600

SUBTOTAL (1)    0.00
SUBTOTAL (2)    208.00
SUBTOTAL (3)    0.00

TOTAL    ($)    208.00

## CORRESPONDENCE ADDRESS

Direct all correspondence to:

Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

*[signature]*

Date: December 16, 2003
Reg. No.: 42,545
Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

John V. Forcier
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA 02110

2726152_1

C000815

#7



Express Mail Label No. EL988705228US
PATENT
Attorney Docket No. BSI-018C1 (354/51)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| APPLICANT(S): | Uken et al. |
| SERIAL NO.: | 10/446,279 |
| FILING DATE: | May 23, 2003 |
| TITLE: | Snap Lock Balance Shoe and System for a Pivotal Window |

| | |
|---|---|
| GROUP NO.: | 3634 |
| EXAMINER: | H. B. Thompson |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RECEIVED**

**FEB 0 9 2004**

**GROUP 3600**

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with the provisions of 37 C.F.R. 1.97 and 1.98, Applicants hereby make of record the patents and publications listed on the accompanying Form PTO-1449, and other information contained herein, for consideration by the Examiner in connection with the examination of the above-identified patent application. Copies of the patents and publications are enclosed. Applicants believe Reference C1 was published in 2001. Applicants believe Reference C2 was published between 1996 and 2001.

## REMARKS

In accordance with the provisions of 37 C.F.R. 1.97, this statement is being filed (CHECK ONE):

☐    (1)    within three (3) months of the filing date of a national application other than a continued prosecution application under 37 C.F.R. 1.53(d), or within three (3) months of the date of entry of the national stage as set forth in 37 C.F.R. 1.491 in an international application, or before the mailing of the first Office action on the merits, or before the mailing of a first Office action after the filing of a request for continued examination under 37 C.F.R. 1.114; or

☒    (2)    after the period defined in (1) but before the mailing date of a final action or a notice of allowance under 37 C.F.R. 1.311, and

     ☐    the requisite Statement is below, **OR**

     ☒    the requisite fee under 37 C.F.R. 1.17(p), namely $180.00, is included herein, or

01/29/2004 JBALIHAN 00000145 10446279
01 FC:1806        180.00 OP

Supplemental Information Disclosure Statement
Serial No. 10/446,279
Page 2 of 2

☐　　(3)　after the mailing date of a final action or notice f allowance but before the payment of the issue fee, AND

　　　　☐　the requisite Statement is below, AND

　　　　☐　the requisite petition fee under 37 C.F.R. 1.17(p), namely $180.00 is included herein.

It is respectfully requested that each of the patents and publications listed on the attached Form PTO-1449, and other information contained herein, be made of record in this application.

### STATEMENT

As required under 37 C.F.R. 1.97(e), Applicant(s), through the undersigned, hereby state either that [check the appropriate space only if either (2) or (3) is checked on the previous page **and** the Statement is required]:

　　　☐　1.　Each item of information contained in the Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application **not more than three months** prior to the filing of the Information Disclosure Statement; or

　　　☐　2.　No item of information contained in the Information Disclosure Statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing this Statement after making reasonable inquiry, no item of information contained in the Information Disclosure Statement was known to any individual designated in 37 C.F.R. 1.56(c) **more than three months** prior to the filing of the Information Disclosure Statement.

Respectfully submitted,

Date: January 23, 2004
Reg. No. 42,545

Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

2725735_1

John V. Forcier
Attorney for Applicants
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts  02110

41



3634

PATENT
Attorney Docket No. BSI-018C1

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| APPLICANT(S): | Uken et al. |
| APPLICATION NO.: | 10/446,279 |
| FILING DATE: | May 23, 2003 |
| TITLE: | Snap Lock Balance Shoe and System for a Pivotal Window |

GROUP NO.: 3634

EXAMINER: H. B. Thompson

---

### CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on this 16th day of December 2003.

*Jacqueline I. Andreu*
Jacqueline I. Andreu

---

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

Submitted herewith is/are:

Transmittal Form (1 page);
Fee Transmittal Form (1 page);
Copy of Fee Transmittal Form (1 page);
Amendment and Response (16 pages);
A return-receipt postcard.

**RECEIVED**
DEC 3.0 2003
**GROUP 3600**

2725514_1

Express Mail Label No. EL988705228US
SHEET 1 OF 2

| FORM PTO – 1449 | ATTORNEY DOCKET NO.: BSI-018C1 |
|---|---|
| SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT | APPLICANT(S): Uken et al. |
| | SERIAL NO.: 10/446,279 |
| | FILING DATE: May 23, 2003  GROUP: 3634 |

### U.S. PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A42 | D355,262 | 02/07/95 | Chaney et al. | | | |
| | A43 | D434,637 | 12/05/00 | Habeck et al. | | | |
| | A44 | D467,490 | 12/24/02 | Uken et al. | | | |
| | A45 | 1,007,212 | 10/31/11 | Lasersohn | | | |
| | A46 | 1,312,665 | 08/12/19 | Almquist | | | |
| | A47 | 2,178,533 | 10/31/39 | Viehweger | | | |
| | A48 | 2,952,884 | 09/20/60 | Dinsmore | | | |
| | A49 | 3,007,194 | 11/07/61 | Griswold | | | |
| | A50 | 3,105,576 | 10/01/63 | Jones et al. | | | |
| | A51 | 3,461,608 | 08/19/69 | Johnson | | | |
| | A52 | 3,497,999 | 03/03/70 | Hendra | | | |
| | A53 | 3,529,381 | 09/22/70 | Grossman | | | |
| | A54 | 3,676,956 | 07/18/72 | Taylor et al. | | | |
| | A55 | 3,732,594 | 05/15/73 | Mills | | | |
| | A56 | 3,869,754 | 03/11/75 | Foster | | | |
| | A57 | 4,028,849 | 06/14/77 | Anderson | | | |
| | A58 | 4,089,085 | 05/16/78 | Fitzgibbon | | | |
| | A59 | 4,190,930 | 03/04/80 | Prosser | | | |
| | A60 | 4,300,316 | 11/17/81 | Ficurilli | | | |
| | A61 | 4,697,304 | 10/06/87 | Overgard | | | |
| | A62 | 4,949,425 | 08/21/90 | Dodson et al. | | | |
| | A63 | 5,140,769 | 08/25/92 | Hickson et al. | | | |
| | A64 | 5,353,548 | 10/11/94 | Westfall | | | |
| | A65 | 5,371,971 | 12/13/94 | Prete | | | |
| | A66 | 5,445,364 | 08/29/95 | Tibbals, Jr. | | | |

SHEET 2 OF 2

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | A67 | 5,448,858 | 09/12/95 | Briggs et al. | | | | |
| | A68 | 5,452,495 | 09/26/95 | Briggs | | | | |
| | A69 | 5,463,793 | 11/07/95 | Westfall | | | | |
| | A70 | B1 5,463,793 | 07/15/97 | Westfall | | | | |
| | A71 | 5,530,991 | 07/02/96 | deNormand et al. | | | | |
| | A72 | 5,566,507 | 10/22/96 | Schmidt et al. | | | | |
| | A73 | 5,669,180 | 09/23/97 | Maier | | | | |
| | A74 | 5,855,092 | 01/05/99 | Raap et al. | | | | |
| | A75 | 6,119,398 | 09/19/00 | Yates, Jr. | | | | |
| | A76 | 6,161,335 | 12/19/00 | Beard et al. | | | | |
| | A77 | 6,226,923 | 05/08/01 | Hicks et al. | | | | |
| | A78 | 6,467,128 | 10/22/02 | Damani | | | | |
| | A79 | 6,470,530 | 10/29/02 | Trunkle | | | | |
| | A80 | 6,622,342 | 09/23/03 | Annes et al. | | | | |
| | A81 | 6,679,000 | 01/20/04 | Uken et al. | | | | |
| | A82 | 2002/0092241 | 07/18/02 | Uken et al. | | | | |
| | A83 | 2002/0129463 | 09/19/02 | Newman | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAM. INIT. | | DOCUMENT NUMBER | DATE | COUNTRY CODE | CLASS | SUB CLASS | FILING DATE | ABSTRACT ONLY | ENGLISH LANG (Y/N) |
|---|---|---|---|---|---|---|---|---|---|
| | B1 | 2382933 | 04/22/02 | CA | | | | No | Yes |

## OTHER ART, JOURNAL ARTICLES, ETC.

| EXAM. INIT. | | OTHER DOCUMENTS: (Including Author, Title, Date, Relevant Pages, Place of Publication) |
|---|---|---|
| | C1 | BSI's Hidden Advantage: It's as Easy as 1-2-3, Balance Systems – BSI, Amesbury Group, Inc., 2001. (3 pgs.) |
| | C2 | BSI Tilt Balance Systems, Balance Systems – BSI, Amesbury Group, Inc., 1996-2001. (4 pgs.) |
| | C3 | Crossbow Balance! Another New Balance in BSI's Quiver, Balance Systems – BSI, Amesbury Group, Inc., June 7, 1999. (3 pgs.) |

*no month available* *no month available*

| EXAMINER | *Hugh B. Thompson* | DATE CONSIDERED | 4-12-04 |
|---|---|---|---|

2725761_1

01-26-04    3634/4

Express Mail Label No. EL988705228US

| | |
|---|---|
| Application Serial Number | 10/446,279 |
| Filing Date | May 23, 2003 |
| First Named Inventor | Uken |
| Group Art Unit | 3634 |
| Examiner Name | H. B. Thompson |
| Attorney Docket No. | BSI-018C1 |
| Patent No. | Not applicable |
| Issue Date | Not applicable |

# TRANSMITTAL FORM

## ENCLOSURES *(check all that apply)*

☒ Fee Transmittal Form
  ☒ Check Attached
  ☐ Copy of Fee Transmittal Form

☐ Amendment/Response
  ☐ Preliminary
  ☐ After Final
  ☐ Affidavits/declaration(s)
  ☐ Letter to Official Draftsperson
  Including Drawings
  [Total Sheets_____]

☐ Petition for Extension of Time

☒ Supplemntal Information Disclosure Statement
  ☒ Form PTO-1449
  ☒ Copies of IDS Citations (A42 – A83, B1, C1-C3)

☐ Certified Copy of Priority Document(s)

☐ Sequence Listing submission
  ☐ Paper Copy/CD
  ☐ Computer Readable Copy
  ☐ Statement verifying identity of above

☐ Copy of Notice to File Missing Parts of Application

☐ Formal Drawing(s)

☐ Request For Continued Examination (RCE) Transmittal

☐ Power of Attorney (Revocation of Prior Powers)

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ CD(s) for large table or computer program

☐ Amendment After Allowance

☐ Request for Certificate of Correction
  ☐ Certificate of Correction (in. duplicate)

☐ Notice of Appeal to Board of Patent Appeals and Interferences

☐ Appeal Brief (in triplicate)

☐ Status Inquiry

☒ Return Receipt Postcard

☐ Certificate of First Class Mailing under 37 C.F.R. 1.8

☐ Certificate of Facsimile Transmission under 37 C.F.R. 1.8

☐ Additional Enclosure(s) *(please identify below)*

RECEIVED
FEB 1 1 2004
GROUP 3600

## CORRESPONDENCE ADDRESS

Direct all correspondence to:    Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

Date: January 23, 2004
Reg. No. 42,545
Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

John V. Forcier
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

VER 12/00
3006497_1



**Express Mail Label No. EL988705228US**

## FEE TRANSMITTAL
## FY 2004

| Complete if Known | |
|---|---|
| Application Serial Number | 10/446,279 |
| Filing Date | May 23, 2003 |
| First Named Inventor | Uken |
| Group Art Unit | 3634 |
| Examiner Name | H. B. Thompson |
| Attorney Docket No. | BSI-018C1 |

### METHOD OF PAYMENT

1. ☒ Payment Enclosed:
   ☒ Check  ☐ Money Order  ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below for this submission to Deposit Account No. 20-0531.
   ☐ Required Fees (copy of this sheet enclosed).
   ☒ Additional fee required under 37 CFR 1.16 and 1.17.
   ☒ Overpayment Credit.

3. ☐ Applicant claims small entity status.

### FEE CALCULATION

**1. FILING FEE**

| Large Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 770 | Utility filing fee | |
| 340 | Design filing fee | |
| 160 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | - 20 = | | x $ 18.00 = | |
| Independent Claims | - 3 = | | x $ 86.00 = | |
| ☐ Multiple Dependent Claim(s), if any | | | $290.00 = | |

TOTAL:
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)  ($)  0.00

**2. AMENDMENT CLAIM FEES**

| Claims | Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|---|
| Total | - | = | | x $ 18.00 = | |
| Indep. | - | = | | x $ 86.00 = | |
| ☐ First Presentation of Multiple Dep. Claim | | | | + $290.00 = | |

TOTAL:  ($)
SMALL ENTITY DISCOUNT:  ($)
SUBTOTAL (2)  ($) 0.00

### FEE CALCULATION (continued)

**3. ADDITIONAL FEES**

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | Request for ex parte reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 420 | 210 | Extension for reply within second month | |
| 950 | 475 | Extension for reply within third month | |
| 1480 | 740 | Extension for reply within fourth month | |
| 2010 | 1005 | Extension for reply within fifth month | |
| 330 | 165 | Notice of Appeal | |
| 330 | 165 | Filing a brief in support of an appeal | |
| 290 | 145 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 180 | 180 | Submission of Supplemental Information Disclosure Statement | $180.00 |
| 770 | 385 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 770 | 385 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 100 | 100 | Certificate of Correction for applicant's error | |
| 110 | 55 | Submission of Terminal Disclaimer | |
| | | Other fee (Specify) | |
| | | Other fee (Specify) | |

SUBTOTAL (3)  ($) 180.00

SUBTOTAL (1)  0.00
SUBTOTAL (2)  0.00
SUBTOTAL (3)  180.00

TOTAL  ($)  180.00

### CORRESPONDENCE ADDRESS

Direct all correspondence to:

Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA  02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

### SIGNATURE BLOCK

Respectfully submitted,

Date: January 23, 2004
Reg. No.: 42,545
Tel. No.: (617) 248-7675
Fax No.: (617) 248-7100

John V. Forcier
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower-125 High Street
Boston, MA  02110

3010544_1

C000822

.04/13/04  TUE 16:30 FAX                                                    ☑006

PATENT
Attorney Docket No. BSI-018C1
(354/51)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANTS: | Uken et al. | CONFIRMATION NO: | 1684 |
| SERIAL NO.: | 10/446,279 | GROUP NO.: | 3634 |
| FILING DATE: | May 23, 2003 | EXAMINER: | H. B. Thompson |
| TITLE: | Snap Lock Balance Shoe and System for a Pivotable Window | | |

OFFICIAL

RECEIVED
CENTRAL FAX CENTER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

APR 1 3 2004

### SUPPLEMENTAL AMENDMENT and RESPONSE

This paper is submitted in response to the telephonic interviews held on April 7, 2004 and

April 13, 2004, and to supplement the Amendment and Response that was filed with the U.S.

Patent Office on December 16, 2003.

Applicants respectfully request entry of the following amendments, reconsideration and

withdrawal of all grounds of rejection and objection, and passage of the claims to allowance.

Please amend the above-identified application, without prejudice, as follows:

- Amendments to the Claims are reflected in the Listing of Claims that begins on page

  2 of this paper.

- Remarks begin on page 4 of this paper.

PAGE 6/12 * RCVD AT 4/13/2004 4:29:18 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/7 * DNIS:7468000 * CSID: * DURATION (mm-ss):03-44

C000823

.04/13/04· TUE 16:31 FAX                                                                    ☑007

*Supplemental Amendment and Response*
*Serial No. 10/446,279*

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application.

**Listing of Claims:**

23.-55. (Cancelled)

56. (Previously presented) A window balance system comprising:

a U-shaped channel comprising a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe, wherein the balance shoe comprises:

a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel;

a locking member proximal to the enlarged first end;

a cam in communication with the locking member; and

a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel.

57. (Previously presented) A window balance system comprising:

a U-shaped channel comprising a plurality of openings;

a spring connected to a system of pulleys located within the U-shaped channel;

a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and

a balance shoe, wherein the balance shoe comprises:

a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the

*Page 2 of 5*

C000824



US005301467A

# United States Patent [19]

## Schmidt et al.

[11] Patent Number: **5,301,467**

[45] Date of Patent: **Apr. 12, 1994**

[54] **LOCKING SLIDE BLOCK**

[75] Inventors: **Melvin J. Schmidt**, Lakeland, Minn.; **Gary J. Marshik**, Canton, S. Dak.

[73] Assignee: **Andersen Corporation**, Bayport, Minn.

[21] Appl. No.: **116,039**

[22] Filed: **Sep. 2, 1993**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 903,368, Jun. 24, 1992, Pat. No. 5,243,783.

[51] Int. Cl.5 ............................................. E05D 15/22
[52] U.S. Cl. ................................. 49/181; 49/176
[58] Field of Search ................. 49/161, 176, 177, 181, 49/380, 453, 454, 455; 16/197

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,720,682 | 10/1955 | Perry | 20/12 |
| 2,731,287 | 1/1956 | Haynes | 292/76 |
| 2,883,226 | 4/1959 | Haynes | 292/76 |
| 3,044,062 | 9/1962 | Peters et al. | 20/42 |
| 3,195,174 | 7/1965 | Nobes | 16/202 |
| 3,377,747 | 4/1968 | Donkin | 49/414 |
| 3,399,490 | 9/1968 | Hettinger | 49/414 |
| 3,434,236 | 3/1969 | Weidner et al. | 49/176 |
| 3,524,282 | 8/1970 | Kraft et al. | 49/181 |
| 3,676,956 | 7/1972 | Taylor et al. | 49/446 |
| 3,789,549 | 2/1974 | Yip | 49/181 |
| 3,797,168 | 3/1975 | Trout | 49/181 |
| 3,842,540 | 10/1974 | Anderson | 49/181 |
| 3,844,066 | 10/1974 | Nobes | 49/182 |
| 4,068,406 | 1/1978 | Wood | 49/181 |
| 4,079,549 | 3/1978 | Wood | 49/181 |
| 4,115,973 | 9/1978 | Anderson | 52/773 |
| 4,137,671 | 2/1979 | Miller | 49/417 |
| 4,226,050 | 10/1980 | Kessler | 49/181 |
| 4,363,190 | 12/1982 | Anderson | 49/181 |
| 4,364,199 | 12/1982 | Johnson et al. | 49/181 |
| 4,452,012 | 6/1984 | Deal | 49/181 |
| 4,590,708 | 5/1986 | Campodonico | 49/181 |
| 4,610,108 | 9/1986 | Marshik | 49/181 |
| 4,683,676 | 8/1987 | Sterner | 49/181 |
| 4,718,194 | 1/1988 | Fitzgibbon et al. | 49/181 |
| 4,799,333 | 1/1989 | Westfall et al. | 49/446 |
| 4,813,180 | 3/1989 | Scalzi | 49/181 X |
| 4,922,657 | 5/1990 | Foss | 49/181 |
| 4,941,285 | 7/1990 | Westfall | 49/176 |
| 4,958,462 | 9/1990 | Cross | 49/181 |
| 5,077,939 | 1/1992 | Erickson | 49/380 |
| 5,243,783 | 9/1993 | Schmidt et al. | 49/181 |

#### FOREIGN PATENT DOCUMENTS

2121099 12/1983 United Kingdom .

*Primary Examiner*—Peter M. Cuomo
*Assistant Examiner*—Jerry R. Redman
*Attorney, Agent, or Firm*—Merchant, Gould, Smith, Edell, Welter & Schmidt

[57] **ABSTRACT**

The present invention is directed to a locking slide block slidably and pivotally mounting a window sash to a side member of a window frame having a vertical jamb channel. The locking slide block has a housing with oppositely disposed sliding surfaces for guiding the housing in the jamb channel. Operably connected to the housing is a locking means for selectively engaging the jamb channel and locking the housing in a fixed position, and a cam for selectively operating the locking means. A sash pivot operatively connected to the cam is operably connectable to the sash. The housing also has a sash pivot retainer spring. A retaining means is utilized to protect a free second end of the retainer spring from bowing and deforming due to forces applied to the window sash in operation.

**14 Claims, 4 Drawing Sheets**



**U.S. Patent**          Apr. 12, 1994          Sheet 1 of 4          **5,301,467**



FIG.1

FIG.3

FIG.2



FIG. 1

FIG. 3

FIG. 2

U.S. Patent        Apr. 12, 1994        Sheet 2 of 4        5,301,467



FIG.5

FIG.4



FIG.6

FIG.7

FIG.8



FIG. 9

U.S. Patent          Apr. 12, 1994          Sheet 4 of 4          5,301,467



FIG. 10



FIG. 11

5,301,467

**1**

### LOCKING SLIDE BLOCK

· This application is a continuation-in-part of U.S. Ser. No. 07/903,368 filed on Jun. 24, 1992 by Melvin J. Schmidt et al, now U.S. Pat. No. 5,243,783.

### FIELD OF THE INVENTION

This invention generally relates to a locking slide block for double-hung tilt-out type windows.

### BACKGROUND OF THE INVENTION

Double-hung, tilt-out type windows have become increasingly popular. Much of this popularity is due to the tilt-out feature which allows both inside and outside surfaces of the window to be cleaned from the inside.

Tilt-out windows have been equipped with locking slide blocks such as the one disclosed in U.S. Pat. No. 4,610,108 to Marshik. Marshik discloses a double-hung window having a frame with a set of parallel jamb channels on opposite sides of the frame. Within each jamb channel is a slidably mounted locking block. A spring counter-balance mechanism is attached to a headplate on each block. A pivot extends from proximate the lower end of opposite sides of a sash into a locking cam housed within the block. The pivots allow the sash, which holds a window pane, to be rotated or tilted toward the inside. As the pivots rotate, the cam forces serrated ends of a spring into opposite sides of the jamb channel to prevent the counter-balance spring from pulling up the blocks and sash while cleaning.

U.S. Pat. No. 4,813,180 to Scalzi discloses another locking sliding block for double-hung windows. Like the '108 patent, a locking block is slidably mounted within jamb channels and a pivot extends from opposite sides of the sash into a pivot button or cam in each locking block. Unlike the '108 patent, however, the pivot has a slot which engages a retaining ridge in the pivot button. This is intended to prevent dislocation of the pivots during transport and installation of the window due to deflection or bowing of the frame away from the sash. The locking block disclosed by Scalzi, although allowing the sash to pivot inside for easy cleaning of the window pane, does not allow the window to be conveniently removed from the inside.

### SUMMARY OF THE INVENTION

The invention addresses many of the problems associated with the prior art in providing a locking slide block which enables the sash of a double-hung, tilt-out type window to be tilted to the inside to facilitate the cleaning, insertion and removal of the window sash and panes from a window frame. A sash pivot retaining spring configuration is utilized thereon to provide reliable, simple and relatively effortless operation of a locking slide block during shipping and installation, as well as in normal use.

In accordance with the invention, a locking slide block is provided for slidably and pivotably mounting a window sash to a side member of a window frame having a vertical jamb channel with oppositely disposed sides. The block has a housing with oppositely disposed sliding surfaces for guiding the housing in the jamb channel. Within the block is a locking means for selectively engaging the oppositely disposed sides of the jamb channel to lock the block in a fixed position relative to the jamb channel. A cam is disposed within the housing. The cam has at least one camming surface

**2**

which selectively operates the locking means. The cam also has a sash pivot opening with an open top slot, for attaching a sash pivot thereto. Sash pivots are operatively connectable to each lower opposite side of a sash, for operatively connecting the sash to the cam.

The locking slide block also has a sash pivot retainer spring having a first end operatively connected to the housing and a second end proximate the cam. The second end has a first position for allowing the sash pivot to be inserted or removed from the sash pivot opening through the open top slot. The second end also has a second position for preventing removal of the sash pivot through the open top slot. The second end is normally biased to the second position, and may be depressed to the first position.

The locking slide block also preferably includes a second end retaining means. The second end retaining means is operatively connected to the housing, and it operates to restrict movement of the second end of the retainer spring past the second position in a direction opposite that of the first position. This protects the second end from deforming due to forces applied to the window sash in operation, and thus increases the overall reliability of the slide block.

In a preferred embodiment, the second end retaining means utilizes at least one spring retaining flange which extends across a portion of a spring receiving recess to cooperatively about the second end of the spring in its second position. Further, cooperative flanges may also be utilized on the retainer spring to facilitate this abutting relationship between the spring and the spring retaining flange.

These and other advantages and features, which characterize the invention, are pointed out with particularity in the claims annexed hereto and forming a part hereof. However, for a better understanding of the invention, its advantages and objectives attained by its use, reference should be made t drawing which forms a further part hereof and to the accompanying descriptive matter, in which there is described a preferred embodiment of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a double-hung window with a partially tilted sash.

FIG. 2 shows an exploded perspective view of a locking slide block with sash pivot consistent with the invention, for use in the double-hung window in FIG. 1.

FIG. 3 shows an assembled locking slide block without sash pivot with the invention.

FIG. 4 shows a perspective view of the sash pivot.

FIG. 5 shows a locking slide block in an unlocked position a jamb channel.

FIG. 6 shows a locking slide block in a locked position a jamb channel.

FIG. 7 shows a mirror image of the locking slide block of FIG. 5.

FIG. 8 shows parallel jamb channels, one with a counter-balance spring cover and the other having a locking slide block with sash pivot.

FIG. 9 shows a cross-section of the locking slide block shown in FIG. 6.

FIG. 10 shows an exploded perspective view of an alternative housing and retaining spring consistent with the invention.

FIG. 11 shows a perspective view of an assembled locking slide block without sash pivot, and with the housing and retaining spring of FIG. 10.

5,301,467

| 3 | 4 |

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawing, wherein like referenced numerals designate identical or corresponding parts throughout the several views, FIG. 1 shows a double-hung tilt-out window 10. The window 10 has a frame 12 and an upper sash 14 and a lower sash 16 supporting window panes 15 and 17, respectively. The frame 12 also has four jamb channels 18, one of which is shown in FIG. 1, on a side member 13 of frame 12. One jamb channel is proximate opposite sides of the upper sash 14, and one is proximate opposite sides of lower sash 16. As shown in FIG. 1, the lower sash 16 is partially tilted so that both sides of the window pane 17 within the lower sash 16 are accessible for cleaning from the same side of window 10.

FIG. 2 shows an exploded view of a locking slide block, generally referred to as 20, and sash pivot 22 of the present invention. One locking slide block 20 is slidably mounted within each jamb channel 18. Fastened to lower opposite sides of each sash 14 and 16 is one sash pivot 22. These sash pivots 22 are supported for rotation by the locking slide blocks 20. Each sash is tiltable about a longitudinal axis through pivots 22 disposed on opposite sides of sashes 14 and 16.

As shown in FIG. 2, locking slide block 20 has a housing 24, preferably of rigid plastic. This housing 24 has sliding surfaces 25 with slots 27. The housing 24 has an aperture 49 and a plate groove 51 for attaching a sash pivot retainer spring 26 and a metal plate 28, respectively. A counter-balance spring (not shown) is attached to metal plate 28. The housing 24 has a circular channel 30, which extends into housing 24 generally parallel to sliding surfaces 25, for receiving a locking cam 32 having camming surfaces 31. Housing 24 also has a box-like area for receiving locking spring 34 which has serrated end portions 35. Locking cam 32 has a head 35 which, as known to those skilled in the art, retains spring 34 in the box-like area of housing 24.

Sash pivot retainer spring 26, as shown in FIG. 2, has a hooked first end 48 which is received by aperture 49 to operably connect retainer spring 26 to housing 24. Retainer spring 26 also has a free end 50. Retainer spring 26 is preferably constructed of spring steel.

Locking cam 32, as shown in FIG. 2, has a sash pivot opening 33 with an open top slot 37. Located proximate a front side of locking cam 32, on opposite sides of sash pivot opening 33 are inwardly disposed cam flanges 39.

FIG. 3 shows a perspective view of the assembled locking slide block 20 without sash pivot 22. Retainer spring 26 and plate 28 are shown installed within housing 24. Free end 50 of spring 26 is in a normal position proximate the front side of locking cam 32. Locking cam 32 is shown inserted within circular channel 30, and is retained within block 20 by a tab 38. FIG. 3 also shows one serrated end portion 35 of spring 34 retracted within slot 27 in sliding surface 25.

FIG. 4 is a front view of sash pivot 22 having oppositely disposed flanges 21 at one end of an elongated portion 29, and a back 23. Sash pivots 22 are fastened to the lower opposite sides of sashes 14 and 16 so that the lengthwise axis of back 23 is parallel to the lengthwise axis of the sash side.

FIG. 5 shows locking slide block 20 inserted in jamb channel 18 having sides 40. Sliding surfaces 25 of sliding locking block 20 are proximate side 40 of jamb channel 18. Locking slide block 20 is held within jamb channel 18 by a flexible raised jamb channel face 42 having opening 44.

As shown in FIG. 6, the serrated surfaces of spring 34 are engaged with sliding surfaces 25 to prevent the counter-balance spring from pulling locking slide block 20 and sash 14 or 16 upward when sash 14 or 16, respectively, is tilted. When sash 14 or 16 and, thus back 23, is rotated from vertical, locking cam 32 rotates so that camming surfaces 31 force serrated end portions 35 of spring 34 out slots 27. In FIG. 6, back 23 is tilted to a horizontal position at approximately 90° to jamb channel 18. This position also corresponds to sash 14 or 16 tilted at 90° to jamb channel 18.

Also shown in FIG. 6, sash pivot 22 is operably connected to locking cam 32 by rotating cam 32 (by a tool not shown) so that open top slot 37 opens upward beneath retainer spring 26. Sash pivot 22 is inserted into sash pivot opening 33 by depressing the free end 50 of retainer spring 26 inwardly away from the front side of locking cam 32 to a first depressed position. After sash pivot 22 is inserted in sash pivot opening 33, the free end of retainer spring 26 moves back to a normal, second position over opening 33. Once retainer spring 26 moves back over opening 33, sash pivot 22 cannot slip out of opening 33. Without retainer spring 26, sash pivot 22 might slip out of opening 33 when sash 14 or 16 is tilted.

As best shown in FIG. 9, a cross-sectional view of cam 32 and sash pivot 22 taken from FIG. 6, when sash pivot 22 is inserted into sash pivot opening 33, the elongated portion 29 extends into the opening beyond cam flanges 39. Flanges 21 of sash pivot 22 are disposed widely enough that when sash pivot 22 is inserted in this manner, flanges 21 engage with cam flanges 39 so that sash pivot 22 cannot be pulled out of the pivot opening in a direction proximately parallel to a longitudinal axis of the elongated portion 29. This feature is particularly important during transport and installation of window 10. During transport and installation, side members 13 of frame 12 may bow outwardly away from sashes 14 and/or 16 so that without the engagement of flanges 21 with cam flanges 39, elongated portion 29 of sash pivot 22 could be pulled out of sash pivot opening 33.

FIG. 7 shows back 23 of sash pivot 22 oriented vertically. This position of back 23 corresponds to the closed or vertical position of sash 14 or 16. Serrated end portions 35 of spring 34 are not engaged with sides 40 of jamb channel 18. Locking slide block 20 and sash 14 or 16 is thus free to slide vertically within jamb channel 18. The counter-balance spring (not shown) attached to plate 28 assists in sliding locking slide block 20 and sashes 14 or 16 upward in jamb channels 18.

FIG. 8 shows a cross-sectional view of parallel jamb channels 18. In one of the jamb channels 18 is shown locking slide block 20 without serrated end portions 35 of spring 34 extending beyond sides 25 of locking slide block 20. As previously shown in FIG. 7, back 23 of sash pivot 22 is positioned vertically. Flexible jamb channel face 42 is engaged with a sash groove 46 to retain sash 16 vertically within frame 12 (not shown).

FIGS. 10 and 11 show an alternative embodiment of the locking slide block consistent with the invention. It has been discovered that in certain instances, forces applied to a sash may be applied by a sash pivot to the retainer spring in a locking slide block, causing the retainer spring to "buckle" and bow outward from the force. In certain circumstances, this may result in the sash pivot becoming partially dislodged from the sash

5,301,467

5                                                           6

pivot opening in the cam, thereby jamming the slide block and preventing the sash from moving up or down in the jamb channel.

For example, as best seen in FIG. 6, when sash 14 or 16 is tilted, normal top slot 37 may be oriented upward and directly opposite retainer spring 26. An upward force on sash 14 or 16, for instance applied by gripping the sash on the sides near sash pivots 22, tends to urge elongated portion 29 of sash pivot 22 against the free end 50 of retainer spring 26. Since spring 26 extends generally away from housing 24 at the hooked first end 48, any force applied to free end 50 may induce this end to bow outward from housing 24. Given a sufficient force, free end 50 may buckle outward and allow sash pivot 22 to become partially dislodged from its operating position.

The alternative embodiment shown in FIGS. 10 and 11 includes a retaining means for protecting the free end of a retainer spring from the upward forces that could possibly cause failure of the locking slide block. As shown in FIG. 10, locking slide block 20' includes an alternative housing 24' and retainer spring 26'.

Housing 24' has a spring receiving recess 62 which extends into housing 24' for housing retainer spring 26' in operation. This recess 62 is integrally joined to the cam receiving channel 30' which, in operation, houses the locking cam. In order to protect retainer spring 26' from the above-described forces, a pair of spring retaining flanges 61a and 61b are provided which extend across a portion of recess 62. In the preferred embodiment, flanges 61a and 61b extend outward from walls 60a and 60b of recess 62. Other flange configurations may also be used in lieu of that shown for flanges 61a and 61b.

Sash pivot retainer spring 26' has a hooked first end 48' which is received by aperture 49' to operably connect retainer spring 26' to housing 24'. Further, retainer spring 26' includes a free end 50', which has a pair of oppositely disposed and outwardly projecting spring flanges 52a and 52b.

FIG. 11 shows an assembled locking slide block 20' without a sash pivot installed. Here, retainer spring 26' is installed, with metal plate 28' holding the spring in position. Free end 50' is housed within recess 62, proximate flanges 61a and 61b, and proximate cam 32'. In the configuration shown, when free end 50' is not depressed and in the normal position, spring flanges 52a and 52b cooperatively abut spring retaining flanges 61a and 61b. This cooperatively abutting relationship protects spring 26' when upward forces are applied to free end 50' by a sash pivot. Free end 50' is not capable of bowing outward in a direction opposite the normal direction in which free end 50' is depressed (such as when inserting or removing a sash pivot). Thus, the free end is substantially protected from deforming due to these forces.

Returning to FIG. 10, it may also be seen that it is preferable to leave sufficient space, i.e., a channel 63, in between flanges 61a and 61b. This enables a sash pivot to be inserted and removed from locking slide block 20' through channel 63.

One skilled in the art will appreciate that various modifications may be made without departing from the scope of the invention. For example, a number of different sizes and configurations of spring retaining flanges may be used to abut with free end 50' to protect it from bowing outward. In addition, other spring flanges could be incorporated into free end 50' to cooperatively abut with the flanges over recess 62. Further, spring flanges

52a and 52b could be eliminated altogether as long as flanges 61a and 61b extend a sufficient distance across recess 62 to abut with free end 50' during normal use. It is further not necessary that flanges 52a and 52b abut flanges 61a and 61b in normal operation, as the normal operating position of free end 50' may be disposed away from the plane of flanges 61a and 61b in its normal position.

Although characteristics and advantages, together with details of structure and function, have been described in reference to the preferred embodiments herein, it is understood that the disclosure is illustrative. To that degree, various changes made, especially in matters of shape, size and arrangement, to the full extent extended by the general meaning of the terms in which the appended claims are expressed, are within the principles of the present invention.

We claim:

1. A locking slide block for slidably and pivotably mounting a window sash to a side member of a window frame having a vertical jamb channel, the slide block comprising:

(a) a housing having oppositely disposed sliding surfaces for guiding the housing in a jamb channel;

(b) locking means for selectively engaging the jamb channel and locking the slide block in a fixed position relative to the jamb channel;

(c) a cam disposed in the housing, the cam having at least one camming surface arranged and configured to selectively operate the locking means, and wherein the cam includes a sash pivot opening having an open top slot;

(d) a sash pivot operatively connected to the cam in the sash pivot opening, and wherein the sash pivot is operatively connectable to a window sash;

(e) a sash pivot retainer spring, the retainer spring having a first end operatively connected to the housing and a second end proximate the cam, wherein the second end has a first position for allowing the sash pivot to be inserted or removed from the sash pivot opening through the open top slot and a second position for preventing removal of the sash pivot through the open top slot, the second end being normally biased to the second position and depressible to the first position; and

(f) second end retaining means, operatively connected to the housing, for restricting movement of the second end past the second position in a direction opposite the first position; whereby the second end is protected from deforming due to forces applied to the window sash in operation.

2. The locking slide block of claim 1, wherein the retaining spring is disposed within a spring receiving recess extending into the housing, and wherein the second end retaining means comprises at least one spring retaining flange, extending across at least a portion of the spring receiving recess, and arranged and configured to cooperatively abut the second end of the retaining spring when the retaining spring is in the second position.

3. The locking slide block of claim 2, wherein the retainer spring comprises at least one spring flange, disposed on the second end, and arranged and configured to cooperatively abut with the at least one spring retaining flange when the second end is in the second position.

4. The locking slide block of claim 1, wherein the second end is disposed proximate the sash pivot open-

5,301,467

7

ing, and wherein the second position at least partially covers the open top slot for preventing removal of the sash pivot through the open top slot.

5. The locking slide block of claim 1, wherein the locking means is a locking spring having oppositely disposed serrated end portions.

6. The locking slide block of claim 1, further comprising a plate for attaching a counterbalance spring.

7. The locking slide block of claim 1, wherein:

(a) the sash pivot has a longitudinal axis and two flanges, located at one end of an elongated portion of the sash pivot and oppositely and outwardly disposed from the longitudinal axis of the sash pivot; and

(b) the open top slot is defined by a bottom, a first side and a second side, the first and second sides each having a cam flange, wherein the elongated portion of the sash pivot may be inserted into the open top slot such that the flanges of the sash pivot engage with the cam flanges to prevent the sash pivot from being pulled out of the sash pivot opening in a direction generally parallel to the longitudinal axis of the elongated portion of the pivot.

8. A locking slide block for slidably and pivotably mounting a window sash to a side member of a window frame having a vertical jamb channel, the slide block comprising:

(a) a housing having:

(i) oppositely disposed sliding surfaces for guiding the housing in a jamb channel;

(ii) a cam receiving channel extending into the housing generally parallel to the sliding surfaces;

(iii) a spring receiving recess extending into the housing and integrally joined to the cam receiving channel; and

(iv) at least one spring retaining flange, extending across at least a portion of the receiving recess proximate the cam receiving channel;

(b) locking means for selectively engaging the jamb channel and locking the slide block in a fixed position relative to the jamb channel;

(c) a cam disposed in the cam receiving channel, the cam having at least one camming surface arranged and configured to selectively operate the locking means, and wherein the cam includes a sash pivot opening having an open top slot;

(d) a sash pivot operatively connected to the cam in the sash pivot opening, and wherein the sash pivot is operatively connectable to a window sash; and

(e) a sash pivot retainer spring disposed in the spring receiving recess, the retainer spring having a first end operatively connected to the housing and a second end proximate the at least one spring retaining flange, wherein the second end has a first position for allowing the sash pivot to be inserted or

8

removed from the sash pivot opening through the open top slot and a second position for preventing removal of the sash pivot through the open top slot, the second end being normally biased to the second position and depressible to the first position, and wherein the second end is arranged and configured such that the at least one spring retaining flange restricts movement of the second end past the second position in a direction opposite the first position; whereby the second end is protected from deforming due to forces applied to the window sash in operation.

9. The locking slide block of claim 8, wherein the retainer spring comprises at least one spring flange, disposed on the second end, and arranged and configured to cooperatively abut with the at least one spring retaining flange on the housing when the second end is in the second position.

10. The locking slide block of claim 8, wherein the housing comprises two oppositely disposed spring retaining flanges, each spring retaining flange extending across at least a portion of the receiving recess proximate the cam receiving channel, wherein the spring retaining flanges define a channel therebetween, the channel being sized such that the sash pivot is capable of passing through the channel when the sash pivot is being inserted or removed from the open top slot through the open top slot.

11. The locking slide block of claim 8, wherein the second end is disposed proximate the sash pivot opening, and wherein the second position at least partially covers the open top slot for preventing removal of the sash pivot through the open top slot.

12. The locking slide block of claim 8, wherein the locking means is a locking spring having oppositely disposed serrated end portions.

13. The locking slide block of claim 8, further comprising a plate for attaching a counterbalance spring.

14. The locking slide block of claim 8, wherein:

(a) the sash pivot has a longitudinal axis and two flanges, located at one end of an elongated portion of the sash pivot and oppositely and outwardly disposed from the longitudinal axis of the sash pivot; and

(b) the open top slot is defined by a bottom, a first side and a second side, the first and second sides each having a cam flange, wherein the elongated portion of the sash pivot may be inserted into the open top slot such that the flanges of the sash pivot engage with the cam flanges to prevent the sash pivot from being pulled out of the sash pivot opening in a direction generally parallel to the longitudinal axis of the elongated portion of the pivot.

* * * * *