**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AMESBURY GROUP, INC., and<br>AMESBURY SPRINGS LTD.,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE CALDWELL MANUFACTURING<br>COMPANY,<br><br>        Defendant. | Civil Action No. 05-10020-DPW |

## OPPOSITION TO DEFENDANT'S MOTION TO COMPEL 30(B)(6) WITNESS

Plaintiffs Amesbury Group, Inc., and Amesbury Springs Ltd. (collectively, "Amesbury") hereby oppose defendant Caldwell Manufacturing Company's ("Caldwell") motion to compel Amesbury to designate a 30(b)(6) witness on its infringement contentions. Caldwell was already presented with the opportunity to depose a competent, prepared 30(b)(6) witness on the facts underlying Amesbury's infringement contentions, yet declined to do so. Moreover, Caldwell has not been prejudiced in any way by its failure to depose a witness on this issue, since Amesbury's infringement contentions are clearly delineated in Amesbury's interrogatory responses, and because Caldwell has elicited testimony at other depositions on the factual basis for Amesbury's infringement claims. Simply put, Caldwell can point to no fact or issue appropriate for a fact witness for which Caldwell has sought and been denied deposition testimony. Caldwell's motion should be denied.

## FACTUAL BACKGROUND

Caldwell seeks to compel a witness on Amesbury's infringement contentions. But the bases for Amesbury's infringement claims have been well known to Caldwell since at least July

5, 2005, when Amesbury served its Objections and Responses to Caldwell's First Set of Interrogatories ("Amesbury's Interrogatory Responses") (copy attached hereto as Exhibit A). Amesbury's Interrogatory Responses include detailed charts showing that each claim element of the patents-in-suit is present in Caldwell's accused products, and further include marked-up Caldwell product literature to demonstrating exactly where each claim element is present in the accused products.[1]  *See* Amesbury's Interrogatory Responses at 15-22.3.

On August 16, Caldwell issued separate Rule 30(b)(6) notices of deposition to Amesbury Group, Inc. and Amesbury Springs Ltd.  In each deposition notice, Topic No. 1 addressed Amesbury's "contentions that the Caldwell products infringe the patents-in-suit."  On September 14, Amesbury filed its objections to the Rule 30(b)(6) notices.  With respect to Topic No. 1, Amesbury objected on the grounds that the topic, as written, seeks expert opinion and testimony concerning legal contentions or conclusions, rather than facts known to Amesbury.  *See* Amesbury Group, Inc.'s Objections to the Deposition Notice Served by Caldwell at 2; Amesbury Springs Ltd.'s Objections to the Deposition Notice Served by Caldwell at 2 (Sep. 14, 2005) (copies attached hereto as Exhibit B).  Amesbury also objected on the ground that its contentions were already set forth in its Interrogatory Responses.  *See id.*  Accordingly, Amesbury did not agree to provide a fact witness on the broad topic of its infringement contentions.  Caldwell did

---

[1] Amesbury's transparency on its infringement position stands in stark contrast to Caldwell's interrogatory responses on the same topic.  Amesbury issued an interrogatory to Caldwell asking for Caldwell's position on why its products do not infringe the patents-in-suit.  In response, Caldwell initially refused to provide any answer until the parties exchanged claim charts.  After Amesbury filed a motion to compel an adequate response, Caldwell supplemented its answer, but even then did not adequately explain its position with respect to each claim of the patent-in-suit.  For example, for many of the dependent claims of each patent, Caldwell merely has stated that it does not infringe the claims, without stating whether it bases its non-infringement position of a specific element of the dependent claim or its belief that it does not infringe the underlying independent claim.  Caldwell's refusal to explain its non-infringement defenses is especially egregious in view of Caldwell's affirmative counterclaim for a declaratory judgment of non-infringement, filed in this Court on March 7, 2005 with its Answer to Amesbury's Complaint.

not respond to Amesbury's objection or otherwise demand that Amesbury provide a witness on Topic No. 1 at that time.

On October 6, 2005, counsel for the parties conferred on deposition scheduling. Counsel for Caldwell asked whether Amesbury would agree to Caldwell using different attorneys to ask questions on different Rule 30(b)(6) topics, and more specifically, whether Amesbury would agree to one Caldwell attorney for examination on "technical topics" and one attorney for "non-technical topics." On October 7, Amesbury responded by letter, stating that its was amenable to this approach as long as Caldwell designated in advance which topics would be covered by which attorney, and that the first attorney completed questioning on his topics before the second attorney commenced questioning on the second set of topics. *See* Letter from Jordan M. Singer, Esq. to Neal L. Slifkin, Esq., dated October 7, 2005 (copy attached hereto as Exhibit C).

Caldwell took the 30(b)(6) deposition of Amesbury's representative Gary Newman on October 18, 2005. The deposition covered the topics of "the conception and/or reduction to practice of the inventions underlying the patents-in-suit" and Amesbury's "knowledge of the designs and/or concepts for window balances created by Carl Shelton" – that is, the technical topics listed in the deposition notices.[2] At no point prior to, during, or after the 30(b)(6) deposition of Mr. Newman did Caldwell state that it considered Topic No. 1 to be a "technical" topic, attempt to ask Mr. Newman questions on that topic, or inquire why Mr. Newman was not designated on that topic.

Amesbury designated Richard Koopmann as its representative on the non-technical topics of Amesbury's damages and the Amesbury Group/Amesbury Springs corporate relationship, and the parties agreed to a 30(b)(6) deposition of Mr. Koopmann on November 2. On October 26,

---

[2] The remaining, non-technical topics were Amesbury's damages, the corporate relationship between Amesbury Group, Inc. and Amesbury Springs Ltd., and Amesbury's infringement contentions (Topic No. 1). *See* Exhibit B.

less than one week before the deposition and without any warning to Amesbury, Caldwell served amended 30(b)(6) notices that included all the topics previously noticed – including those on which Mr. Newman had fully testified the week before – as well as a host of entirely new topics. Topic No. 1 was unchanged from the original 30(b)(6) notices.  On October 28, Amesbury served its objections to the amended 30(b)(6) notices.  Amesbury objected to Topic No. 1 on the same grounds as it had before.  *See* Amesbury Group, Inc.'s Objections to the Amended Deposition Notices Served by Caldwell at 2-3; Amesbury Springs Ltd.'s Objections to the Amended Deposition Notices Served by Caldwell at 2-3 (copies attached hereto as Exhibit D).

Although Amesbury's objections to Topic No. 1 had been on record since mid-September, it was not until October 31, well after the first day of the 30(b)(6) deposition had been completed and only ***two days*** before the scheduled final day of the 30(b)(6) deposition, that Caldwell contacted Amesbury's counsel to discuss, for the first time, Amesbury's objection to Topic No. 1.  To clarify its objection and propose a reasonable middle ground, Amesbury sent a letter to Caldwell that same day offering to make a witness available on Topic No. 1 to testify as to "the facts in Amesbury's possession that led it to believe that Caldwell's products infringe its patents."  Letter from Jordan M. Singer, Esq. to Neal L. Slifkin, Esq., dated October 31, 2005 (copy attached hereto as Exhibit E).[3]

The next day, on November 1, 2005, less than 24 hours before the scheduled deposition, Caldwell responded by letter, asking Amesbury to "designate a representative to testify on what you believe to be the 'factual issues.'"  Letter from Neal L. Slifkin, Esq. to Jordan M. Singer, Esq., dated November 1, 2005 (copy attached hereto as Exhibit F).

---

[3] On October 31, Amesbury also designated Richard Koopmann as its representatives on all remaining 30(b)(6) topics – Topic Nos. 3-8 for one notice (the one at issue here), and Topic Nos. 1-4 for the other notice.

Prior to the start of the 30(b)(6) deposition on November 2, Amesbury informed Caldwell's counsel that it was designating Mr. Koopmann on Topic No. 1 and that Mr. Koopmann was available and ready to testify on that topic with respect to the facts in Amesbury's possession that led it to believe that Caldwell's products were infringing. Amesbury's counsel made that designation on the record again just a few minutes into the deposition:

> MR. SINGER:  Well, let me clarify before the witness answers that Amesbury Group and Amesbury Springs submitted their objections to these notices beforehand.  And under the course of these objections, topics two and nine –
>
> MR. EDWARDS:  Yes.
>
> MR. SINGER:  – were not designated and ***topic one was designated with the caveat we discussed earlier***.

Rule 30(b)(6) Deposition Transcript of Richard Koopmann, dated November 2, 2005, at 21:3-12 ("Koopmann 30(b)(6) Tr.") (emphasis added) (copies of relevant pages attached hereto as Exhibit G).[4,5]

Caldwell's counsel did not say anything in response to Amesbury's designation prior to the start of the deposition, or Amesbury's repetition of that designation in the first few minutes of the deposition.  Furthermore, Caldwell did not ask a single question concerning Topic No. 1 during the deposition.  Finally, late in the day, with six-and-a-half hours of the deposition already complete, Caldwell for the first time challenged Amesbury's designation of Mr. Koopmann on Topic No. 1.  In response, Amesbury again made clear that Mr. Koopmann had been available to

---

[4] In its Motion, Caldwell misleadingly cites only to the portion of the Koopmann 30(b)(6) Transcript immediately following this exchange, implying that Mr. Koopmann was designated only on Topics Nos. 3-8.  *See* Caldwell's Motion at 5.  The transcript makes clear, however, that Mr. Koopmann was designated and ready to testify on Topic No. 1 with respect to the facts underlying Amesbury's belief that Caldwell's products infringe its patents.

[5] To the extent the Koopmann 30(b)(6) deposition is quoted in this memorandum, the quotations are indisputably from non-confidential material – *i.e.*, statements on the record by attorneys for Caldwell and Amesbury.

testify on the topic throughout the day, and was still available to testify for the time remaining in the deposition. *See* Koopmann 30(b)(6) Tr. at 204:17 – 206:14. Caldwell nevertheless declined to ask any questions related to Topic No. 1. *See id.*

Mr. Koopmann appeared on November 3 to be deposed in his individual capacity. Once again, Caldwell proceeded with the deposition without saying anything about Amesbury's designation of Mr. Koopmann on Topic No. 1 the previous day. Instead, Caldwell asked Mr. Koopmann a number of questions related to his knowledge of the patents-in-suit and Caldwell's products, which Mr. Koopmann answered fully. It was not until November 14, almost two weeks after Mr. Koopmann appeared ready to testify, that Caldwell brought this motion.

## ARGUMENT

A.    **Caldwell's Topic No. 1, As Written, Is Vastly Overbroad and Calls for Testimony Inappropriate for a Fact Witness.**

Topic No. 1 seeks testimony on Amesbury's "contentions that the Caldwell products infringe the patents-in-suit." Amesbury objected to Topic No. 1 because, among other things, it seeks expert opinion and testimony concerning legal contentions or conclusions, rather than facts known to Amesbury. Put another way, Topic No. 1 inappropriately seeks testimony from a ***fact*** witness representative of Amesbury on issues which require a detailed ***legal*** analysis.

Amesbury's position is well-grounded in case law. In *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 285-86 (N.D. Cal. 1991), for example, the Court rejected a 30(b)(6) deposition as an appropriate mechanism for detailing the bases for the contentions made and the positions taken by a patent infringement plaintiff. First, the Court concluded that "in a case like this, no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party." *Id.* at 286.

6

Next, the Court expressed concern "about asking a non-lawyer to undertake this kind of task." *Id.* at 286-87. The Court's reasoning is worth quoting at length:

> In a patent case like this, the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident…. Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent at issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions. ***A non-lawyer deponent might have great knowledge about the products in issue here, but be quite ill-equipped to reason reliably about the legal implications of the relationship between those products, or their components, and the various claims of the patent in suit or of other patents or prior art.*** Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and ***describing the relationship that serve as the bases for a given part[y's] contentions, is something best done by patent lawyers***, and best done after at least most other discovery has been completed. After all, in cases like these, a substantial part of "the bases for contentions" really consists of quasi-legal argument.

*Id.* at 287 (emphases added). *See also Exxon Research & Eng'g Co. v. U.S.*, 44 Fed. Cl. 597, 602 (1999) (favoring contention interrogatories over a 30(b)(6) deposition because "the legal issue (construing patent claims) may be too complex for a deponent, who is not an attorney, to answer questions competently").

Notwithstanding the overbroad nature of Topic No. 1 and the fact that, as written, it called for expert testimony and legal conclusions, Amesbury agreed to provide a witness to testify as to the ***facts*** in its possession that led Amesbury to believe that Caldwell's products infringe its patents.[6] This resolution, which Amesbury offered on the same day that Caldwell first raised the issue with Amesbury, properly distinguished between broad legal questions of

---

[6] Examples of facts in Amesbury's possession would include Amesbury's physical examination of Caldwell's products and product literature and those products' similarity to the inventions described in Amesbury's patents, prior correspondence between Amesbury and Caldwell regarding Amesbury's patents and Caldwell's products, and the fact that Caldwell's products were marketed and sold to similar customers for identical purposes as Amesbury's products that practice the patents-in-suit.

infringement and patentability, which are inappropriate for a fact witness, and questions narrowly tailored to elicit information on the specific facts in Amesbury's possession that led it to suspect or conclude that Caldwell's products infringe its patents. *See McCormick-Morgan*, 134 F.R.D. at 285-86; *Exxon*, 44 Fed. Cl. at 602; *Lee v. Elec. Prods. Co.*, 37 F.R.D. 42, 46 (N.D. Ohio 1963) (sustaining plaintiff's objections "as to that portion of the interrogatories which inquire in what respect the devices described would be considered infringements, as those answers would require a detailed technical comparison of the patent and the described devices").

Even Caldwell's primary supporting case clearly makes the distinction between legal analyses and underlying facts. *See AMP Inc. v. Molex Inc.*, 227 U.S.P.Q. 172, 172 (N.D. Ill. 1985) (citing *Moore's Federal Practice* for the proposition that "questions concerning ***factual basis*** for allegations [is] proper") (emphases added). Furthermore, the *AMP* court's conclusion that comparison of the devices and patent claims was appropriate was based entirely on *Lee*, *supra*, which in fact drew an explicit distinction between merely identifying the products that infringe patent claims (which is proper) and "inquiring in what respect the devices would be considered infringements" (which is not). *Lee*, 37 F.R.D. at 46.

## B. Caldwell Had Ample Opportunity to Depose Mr. Koopmann on Topic No. 1, and Refused to Do So.

Although Caldwell knew of Amesbury's objection to Topic No. 1 as far back as September 14, it did not raise the issue with Amesbury until October 31, less than two days before the 30(b)(6) deposition of Richard Koopmann. On November 1, Caldwell insisted that Amesbury designate a witness on Topic No. 1. Amesbury did so prior to the deposition on November 2, indicating to counsel that Mr. Koopmann was available and prepared to testify on Topic No. 1 as it related to the facts in Amesbury's possession that led it to believe that Caldwell's products infringed its patents.

Caldwell, however, made no effort to depose Mr. Koopmann on Topic No. 1. Indeed, Caldwell did not even say anything about Topic No. 1 until less than 30 minutes remained in the deposition.[7] At that time, and for the first time that day, Caldwell complained about the timing of Amesbury's designation. *See* Koopmann 30(b)(6) Tr. at 202:11-15. In response, Amesbury made clear on the record that: (1) Amesbury's objection to Topic No. 1 as written had been known to Caldwell since mid-September, (2) when Caldwell formally raised the issue for the first time on October 31, Amesbury made clear that it would agree to designate a representative to testify as to the facts underlying its infringement contentions, (3) Mr. Koopmann had in fact been available all day to testify on Amesbury's knowledge of the facts underlying its infringement contentions, and (4) Caldwell was welcome to question Mr. Koopmann on that topic in the time it had remaining in the deposition. *See id*. at 204:6—206:14. Despite this invitation, Caldwell declined to ask any questions of Mr. Koopmann on Topic No. 1.

The case law is clear that Caldwell's failure to depose Mr. Koopmann on Topic No. 1 during his 30(b)(6) deposition precludes Caldwell from seeking the same testimony at this late date. For example, in *Novartis Pharmaceutical Corp. v. Abbott Laboratories*, 203 F.R.D. 159, 162 (D. Del. 2001) – a case cited by Caldwell – Abbott designated two 30(b)(6) witnesses "on short notice" and Novartis refused to go through with the depositions. The court denied Novartis's subsequent motion to compel the deposition testimony, since Novartis "had ample opportunity to obtain the discovery it now moves to compel." *Id*. at 162. Similarly, here Caldwell had ample opportunity to depose Mr. Koopmann on Topic No. 1, and made the conscious decision not to do so.

---

[7] At the time, Caldwell had deposed Mr. Koopmann for approximately six-and-a-half hours. It is well-settled that a deposition of a Rule 30(b)(6) witness is limited to seven hours. *See* Fed. R. Civ. P. 30(d)(2); *see also* Committee Note, 192 F.R.D. 395 (2000) (confirming application of seven-hour rule to 30(b)(6) depositions).

Caldwell cannot reasonably argue that it was unprepared to ask Mr. Koopmann questions related to Topic No. 1 during the 30(b)(6) deposition on November 2. First, the issue itself was simple and straightforward – Caldwell merely had to ask Mr. Koopmann to state what facts Amesbury knew about Caldwell's accused products that led Amesbury to believe or suspect that those products infringed Amesbury's patents. No extensive preparation, exhibits or documentation were necessary for such a line of questioning. Furthermore, even if some preparation time had been necessary, Caldwell's counsel had several breaks during the deposition, including a lunch break, to organize his questions on the topic. Alternatively, Caldwell's counsel could have requested a recess at any time during the day to collect his thoughts or confer with his client or co-counsel on the topic. He did not do so.

The 30(b)(6) deposition was taken by David Edwards, an attorney for Caldwell. Caldwell now appears to argue that questioning on Topic No. 1 had to be conducted by another of its attorneys, Neal Slifkin, and that it was somehow unfair for Mr. Edwards to be put in the position to ask questions on Topic No. 1. This argument makes no sense. Mr. Edwards is an experienced attorney who has represented Caldwell from the commencement of this case. He is presumably quite familiar with the products and patents at issue, and was certainly capable of asking Mr. Koopmann questions about the facts underlying Amesbury's belief that Caldwell's products infringed its patents.[8] In any event, Mr. Slifkin was present the next day to take Mr. Koopmann's individual deposition; if Mr. Slifkin was needed to ask questions on Topic No. 1, he could have raised the issue then and requested re-opening the 30(b)(6) deposition to address that

---

[8] Indeed, it was Mr. Edwards who appeared on behalf of Caldwell at the scheduling hearing on October 27, 2005. At that hearing, Mr. Edwards asked the Court to schedule the *Markman* hearing in this case on December 22 to accommodate his own schedule. If Mr. Edwards is capable of representing Caldwell at a *Markman* hearing, where complex issues of claim construction are presented, he was certainly capable of asking questions at a deposition concerning the facts underlying Amesbury's infringement claims.

topic.  But Mr. Slifkin did not even mention Topic No. 1.  He just proceeded with the individual deposition.[9]

Caldwell sat across from Richard Koopmann for two straight days, knowing full well that he was prepared and willing to testify as to the factual basis for Amesbury's infringement claims, yet made no effort whatsoever to depose him on this issue.  Caldwell cannot now reasonably complain that it has been denied the opportunity to collect testimony on Topic No. 1.  For this reason alone, Caldwell's motion should be denied.[10]

## C.    Caldwell Has Suffered No Prejudice From Its Refusal to Depose Amesbury's Representative

Caldwell's motion should also be denied because Caldwell cannot point to a single fact or issue for which it has been deprived of an answer as a result of its decision not to depose Mr. Koopmann on Topic No. 1.  Certainly Caldwell has not been deprived of an adequate comparison between the patents-in-suit and Amesbury's products; Amesbury provided detailed element-by-element comparisons as part of its reponses to Caldwell's First Set of Interrogatories on July 5, 2005.  *See* Exhibit A at 15-22.3.  This fact alone distinguishes several of the cases on which Caldwell relies.  In *Ecrix Corp. v. Exabyte Corp.*, the accused infringer provided incomplete claim charts and argued that basic discovery on infringement should be barred as a general matter.  Likewise, *Haworth, Inc. v. Herman Miller, Inc*. gives no indication that the defendant provided adequate interrogatory responses with respect to its infringement position.

---

[9] Caldwell cannot credibly claim that it was unprepared to ask questions on Topic No. 1.  Caldwell noticed the topic originally on August 16, 2005 and has had access to Amesbury's interrogatory responses on the same subject as of July 5, 2005.  Furthermore, on November 1, 2005, Caldwell itself demanded that Amesbury designate a witness on Topic No. 1.  Caldwell should have been ready to inquire on the topic, and cannot now blame Amesbury for Caldwell's failure to do so.

[10] In light of Caldwell's decision not to discuss Amesbury's objection to Topic No. 1 until two days before the deposition, and further decision not to raise the topic at all with Mr. Koopmann at his deposition on November 2, Caldwell's accusation of "bad faith" action by Amesbury is highly disturbing and obviously false.

By contrast, Caldwell has not asserted – and cannot reasonably assert – that Amesbury's detailed claim charts do not adequately set forth Amesbury's infringement position. Nor has Caldwell identified a single question or issue with respect to Amesbury's infringement position that Caldwell asserts needs clarification or further explanation.

Moreover, Caldwell has not claimed – and cannot claim – that it is unaware of the facts underlying Amesbury's infringement contentions. During its depositions of Amesbury employees, Caldwell frequently asked questions about Amesbury's patents and Caldwell's products, and elicited responsive answers. Furthermore, Caldwell deposed Richard Koopmann on November 3, and asked a number of questions in his individual deposition concerning the facts which led Amesbury to believe that Caldwell's products infringed its patents. Caldwell has not identified a single issue related to Amesbury's infringement contentions for which it does not already have an answer.

<u>**CONCLUSION**</u>

For the reasons set forth above, Amesbury Group, Inc. and Amesbury Springs Ltd. respectfully request that this Court deny defendant's Motion to Compel.

Respectfully submitted,

/s/ Jordan M. Singer
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
Dated: November 28, 2005        **AMESBURY SPRINGS LTD.**
LIBA/1648109.1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

          Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

          Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OBJECTIONS AND RESPONSES TO
## CALDWELL'S FIRST SET OF INTERROGATORIES (NOS. 1 - 19)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") hereby respond and object to The Caldwell Manufacturing Company's ("Caldwell") First Set of Interrogatories ("the Interrogatories") as follows:

### GENERAL RESPONSES AND OBJECTIONS

The following General Objections are incorporated into each of the Amesbury's Responses to the Interrogatories as if set forth there in full, even if not repeated therein:

1. Amesbury objects to the Interrogatories to the extent that they call for disclosure of information subject to the attorney-client privilege, work-product protection, and/or any other privilege or immunity. In the event that any response given by Amesbury contains privileged or protected information, its disclosure is inadvertent and shall not constitute a waiver of any privilege or protection with respect to the divulged information or any other information, and Amesbury expressly reserves its right to demand that Caldwell return any inadvertently produced information and all copies thereof.

2. Amesbury objects to the Interrogatories (as well as the Definitions therein) to the extent that they call for information not required to be produced by the Federal Rules of Civil Procedure, or the Local Rules for the U.S. District Court for the District of Massachusetts.

3. Amesbury objects to the Interrogatories to the extent that they seek information already in Caldwell's possession and/or readily accessible to Caldwell.

4.    Amesbury objects to the Interrogatories to the extent that they seek information that is equally available to Caldwell through other sources, on the grounds that such Interrogatories subject Amesbury to unreasonable and undue burden and expense.

5.    Amesbury objects to the Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive and designed solely to harass Amesbury.

6.    Amesbury objects to the Interrogatories to the extent that they seek information not reasonably calculated to lead to the discovery of admissible evidence.

7.    Amesbury objects to the Interrogatories to the extent that they seek information beyond the relevant time period.

8.    Amesbury objects to the definition of the term "Amesbury" to the extent that it seeks information from affiliates that are corporate entities separate and distinct from Amesbury and who are not parties to this action.

9.    Amesbury objects generally to the Interrogatories to the extent they seek information that is neither relevant to any claim or defense of any party in this case, including, without limitation, information relating to matters that are not raised in the Complaint or Caldwell's Answer and Counterclaim.

10.    Amesbury objects generally to the Interrogatories to the extent they seek information not in Amesbury's possession, custody or control.

11.    Amesbury objects generally to the Interrogatories to the extent they seek information about which Amesbury lacks information or knowledge.

12.    Amesbury objects generally to the Interrogatories to the extent they are vague, ambiguous, or contain incorrect factual assumptions.

13.    Amesbury objects generally to the Interrogatories to the extent that they seek legal conclusions and/or ultimate factual determinations.

14.    Amesbury objects generally to the Interrogatories to the extent that they seek to define terms and/or characterize the evidence in this matter.  To the extent Amesbury adopts any terms used by Caldwell in the Interrogatories, such adoption specifically is limited solely to these responses.

15.    All objections as to relevance, authenticity or admissibility of any information or documents referred to herein are expressly reserved.

16.    Amesbury has responded to the Interrogatories as it interprets and understands them.  If Caldwell subsequently asserts an interpretation of any Interrogatory that differs from the understanding of Amesbury, Amesbury reserves the right to supplement or amend its objections and/or responses.  In addition, the responses set forth below are based upon

information now available to Amesbury after having made a diligent inquiry of Amesbury's employees and a diligent search of files in Amesbury's possession, custody, or control. Amesbury expressly reserves the right to complete its legal investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon documents and information provided regardless of whether such documents or information is newly discovered or currently in existence. In addition, Amesbury may, in the future, obtain or locate additional information responsive to the Interrogatories. Amesbury therefore reserves the right, at any time, to revise, amend, correct, supplement, modify, or clarify its response set forth below to the extent required by Fed. R. Civ. P. 26(e).

17.    Amesbury reserves the right to rely, at the time of trial or in other proceedings in this action, upon documents, responses, and evidence in addition to those provided in response to the Interrogatories.

18.    Amesbury's responses to the Interrogatories are not a concession that their subject matter is relevant to this action.

19.    The presence or absence of any General or Specific Objection to any Interrogatory does not mean that Amesbury does not object on any other grounds.

20.    These responses represent the results of Amesbury's diligent and reasonable investigation of the information requested. No admissions of any nature whatsoever are implied or should be inferred from these responses. The fact that a response to any interrogatory has been provided should not be taken as an admission or an acceptance of the existence of any fact set forth or assumed by that interrogatory.

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 1:

Identify each individual Caldwell product, device, system, process, or service that Amesbury alleges infringes the Patents-In-Suit, and identify the specific claims of the Patents-In-Suit that are allegedly infringed by such product, the persons most knowledgeable and all documents concerning such allegations of infringement.

## RESPONSE:

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory because it is premature as discovery of the products, made, sold, offered for sale, imported, or distributed by Caldwell is far from complete. Amesbury further objects to this interrogatory as unduly burdensome. Additionally, Amesbury objects to this interrogatory to the extent that it is vague.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminary states that:

a) Caldwell's Quick-Tilt product infringes at least claims 1, 2, 3, and 8 of the '638 Patent;

b) Caldwell's Series 86xt product infringes at least claims 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, and 21 of the '264 Patent; and

c) Caldwell's Series 97ez product infringes at least claims 2, 3, 6, 7, 8 and 11 of the '368 Patent

The Amesbury persons most knowledgeable of the above-listed infringement are Richard Koopmann, Howard Babbitt, and Gary Newman. Furthermore, the documents concerning such infringement are in Caldwell's possession, including the Patents-In-Suit and documents illustrating and describing Caldwell's Quick-Tilt, Series 86xt, and Series 97ez products.

Amesbury's investigations are ongoing and Amesbury reserves the right to supplement or amend this response.

**INTERROGATORY NO. 2:**

Separately for each Accused Caldwell Product and for each claim of the Patents-In-Suit allegedly infringed by such product, using a claim chart format, indicate the element(s) component(s), or step(s) of such Accused Caldwell Product that allegedly meet or satisfy each individual limitation of such claim and specify whether each such limitation is met literally or under the doctrine of equivalents.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory because it is premature as discovery of the products, made, sold, offered for sale, imported, or distributed by Caldwell is far from complete. Amesbury further objects to this interrogatory as unduly burdensome. Additionally, Amesbury objects to this interrogatory to the extent that it is vague.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that the Caldwell products listed in the response to Interrogatory No. 1 infringe the Patents-In-Suit literally. Should the court adopt a claim construction different from that on which Amesbury relies as establishing literal infringement, Amesbury asserts that those products infringe under the doctrine of equivalents as any such construction must encompass the embodiments disclosed by the patents, and the differences between those embodiments and the accused products are insubstantial. Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily demonstrates this infringement using the claim chart in Exhibit A and corresponding annotated Caldwell advertisement materials that depict certain features of Accused Caldwell Products, all attached hereto.

**INTERROGATORY NO. 3:**

Separately for each Asserted Amesbury Claim, specify each claim term that should be

construed to have a meaning other than its ordinary dictionary meaning and state the proper construction of each such term.

**RESPONSE:**

Amesbury objects to this interrogatory as it prematurely seeks Amesbury's contentions in view of the court's order that claim construction charts be simultaneously exchanged by both parties on July 30, 2005.

**INTERROGATORY NO. 4:**

Separately for each Asserted Amesbury Claim, state the dates of conception and reduction to practice of the alleged invention that is the subject matter of that claim, describe in detail all facts concerning such conception and reduction to practice, and identify the persons most knowledgeable and all documents concerning such conception and reduction to practice.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks legal conclusions. Amesbury further objects to this interrogatory as premature, overly broad, unduly burdensome, and vague. Amesbury objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Furthermore, subject to these objections, Amesbury states that the date of conception and reduction to practice of all claims of the '638 Patent occurred at least as early as January 21, 1993. The date of conception and reduction to practice of all claims of the '368 Patent occurred at least as early as January 12, 2001. The date of conception and reduction to practice of all claims of the '264 Patent occurred at least as early as March 16, 2001.

The persons most knowledgeable of the conception and reduction to practice of the inventions of the '638 Patent are Harold K. Braid and Simon C. Braid. The persons most knowledgeable of the conception and reduction to practice of the inventions of the '368 Patent are Stuart J. Uken, Gary R. Newman, and Lawrence J. VerSteeg. The person most knowledgeable of the conception and reduction to practice of the inventions of the '264 Patent is Gary R. Newman.

**INTERROGATORY NO. 5:**

State each named inventor's contribution to and involvement with the invention claimed in the Patents-In-Suit, and identify all documents concerning each inventor's contribution to and involvement with such invention.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Subject to these objections Amesbury states the inventors of the '368 Patent were all involved with the inventions claimed in the '368 Patent and all worked together in their contribution towards these inventions. The sole inventor of the '264 Patent was involved fully and contributed fully to the inventions claimed in the '264 Patent.

**INTERROGATORY NO. 6:**

Identify each person other than a named inventor who contributed to or was involved with the conception or reduction to practice of the claimed invention in the Patents-In-Suit, state such person's contribution or involvement, and identify all documents concerning such contribution or involvement.

**RESPONSE:**

Amesbury objects to this interrogatory as overly broad, unduly burdensome, and vague. Amesbury further objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Furthermore, subject to these objections Amesbury states that Richard Koopmann was involved with the inventions as he approved the finances for the inventions claimed in the '264 Patent and the '368 Patent. Amesbury furthers states that Howard Babbit was involved with the

inventions as he approved the designs for the claimed inventions of the '264 Patent and the '368 Patent.

## INTERROGATORY NO. 7:

Identify all counterparts of the Patents-In-Suit; identify all prior art cited during prosecution of each counterpart thereof, indicating to which counterpart(s) each item of prior art relates, and identify all documents concerning such counterpart.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that counterparts to the '264 Patent include Canadian Patent Application No. 2,376,418, U.S. Patent No. 6,877,187, and U.S. Patent Application No. 11/029,074. Counterparts to the '368 Patent include Canadian Patent Application No. 2,367,733, U.S. Patent No. 6,679,000, U.S. Patent No. D467,490, and U.S. Patent Application Nos. 11/101,689, 60/261,501, and 10/862,950.

## INTERROGATORY NO. 8:

Identify all prior art of which Amesbury is aware concerning the claimed invention of the Patents-In-Suit (including counterparts) or all related patent applications, including without limitation, all public uses, offers for sale, or sales in the United States and all patents and publications, dated prior to or occurring prior to the latest filing date on which the Patents-In-Suit or such applications rely and identify all documents concerning such identified prior art.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in

Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 9:

Identify all searches directed to the subject matter claimed at any time in the Patents-In-Suit and counterparts thereof; and separately for each such search, identify who conducted the search, when it was conducted, the particular subject matter to which the search was directed, and all prior art located as a result of such search.

## RESPONSE:

Amesbury objects to this interrogatory as it is overly broad, unduly burdensome, and vague. Amesbury also objects to this interrogatory to the extent that the term "prior art" is not limited to prior art material to patentability. Amesbury further objects to this interrogatory to the extent that it seeks subject matter protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks information not in Amesbury's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive non-privileged confidential documents, or provide any responsive non-privileged confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 10:

Separately for each Asserted Amesbury Claim, state all facts concerning, and identify the persons most knowledgeable concerning, and all documents concerning, any objective indicia of non-obviousness of the claimed invention.

## RESPONSE TO INTERROGATORY NO. 10:

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury also objects to this interrogatory as it seeks information that is neither relevant to any claim or defense of any party in this case. In particular, Caldwell has not alleged with particularity that any Asserted Amesbury Claim is obvious. Caldwell further failed to articulate with any specificity that any Asserted Amesbury Claim is obvious in response to Amesbury's Interrogatory No. 6.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Subject to these objections, Amesbury states that the products embodying the inventions of the Patents-In-Suit have been commercially successful. For example, in 2004 Amesbury sold approximately 5.3 million products that used the patented inventions of the '638 patent. In the same year Amesbury sold approximately 13.8 million products that used the patented inventions of the '368 patent. Also in 2004, Amesbury sold approximately 3.5 million products that used the patented inventions of the '264 patent.

Amesbury also states that other objective indicia of non-obviousness include a long felt need and unsuccessful attempts by others to find the solution described in the Patents-In-Suit; copying by others including Caldwell; and superior results.

Subject to these objections, Amesbury states that Richard Koopmann is the person most knowledgeable of these and other objective indicia of non-obviousness. Amesbury reserves the right to supplement this interrogatory as discovery develops.

## INTERROGATORY NO. 11:

Identify all Patented Amesbury Products by name and model number, and for each identified product list all Asserted Amesbury Claim that covers such product.

## RESPONSE:

Amesbury objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury objects to this interrogatory to the extent it seeks trade secret and/or other confidential information. Amesbury further objects to this interrogatory as its seeks information that is not relevant to any of the claims or defenses of either party.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 12:

Separately for each Patented Amesbury Product, identify each public use, sale, and offer for sale of such product before the filing date of the Patents-In-Suit, and identify the persons most knowledgeable and all documents concerning such public uses sales, and offers for sale.

**RESPONSE:**

Amesbury objects to this interrogatory as overly broad, unduly burdensome, vague, and indefinite. Amesbury objects to this interrogatory to the extent it seeks trade secret and/or other confidential information.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that it is aware of no such public use, sale, or offer for sale, of any Patented Amesbury Product before the effective filing date of its respective patent.

**INTERROGATORY NO. 13:**

Separately for each Accused Caldwell Product, state the total amount of damages allegedly sustained by Amesbury due to Caldwell's alleged infringement, Amesbury's theory of damages, and the method used to calculate damages including but not limited to whether the calculation is based on lost profits, reasonable royalty, or some other measure of damages, whether Amesbury alleges it is entitled to prejudgment interest on such damages and, if so, the interest rate and how that interest rate was determined and identify the persons most knowledgeable and all documents concerning such calculations.

**RESPONSE:**

Amesbury objects to this interrogatory as it is premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Amesbury preliminarily states that Amesbury is entitled to no less than a reasonable royalty for the use made by Caldwell of the inventions of the Patents-In-Suit, together with interest and costs, pursuant to 35 U.S.C. § 284. Furthermore, Amesbury is entitled to a tripling of damages due to Caldwell's willful infringement of Amesbury's asserted patents. Amesbury reserves the right to modify these damages calculations and theories or seek damages under different theories as appropriate in view of the information discovered in this case or in expert opinion.

**INTERROGATORY NO. 14:**

Separately for each product of Amesbury as to which Amesbury alleges that it suffered

damages due to lost sales, lost profits, or price erosion, state all facts concerning such damages, including but not limited to how the damages were calculated, identification of each Accused Caldwell Product alleged to have caused such damages, any alleged demand for the product of Amesbury in the market, the presence or absence of acceptable non-infringing substitute(s), and Amesbury's manufacturing and marketing capability to exploit the alleged demand, and identify the persons most knowledgeable and all documents concerning such facts.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent that it is duplicative of Interrogatory No. 13. Amesbury objects to this interrogatory as premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 15:

Separately for each product of Amesbury as to which Amesbury alleges that it suffered damages due to lost sales, lost profits, or price erosion, state for each month during the alleged damages period, the number of each such product sold; the number of each such product made; the gross revenues and net revenues on sales on each such product; the gross profits on each such product; the net income or net profit/net income before taxes on each such product; the marginal profit on each such product; the cost of goods sold on each such product; and the fixed and variable costs of each such product; and identify the three (3) persons most knowledgeable and documents sufficient to evidence such facts.

**RESPONSE:**

Amesbury objects to this interrogatory to the extent that it is duplicative of Interrogatories No. 13 and 14. Amesbury also objects to this interrogatory as it is premature. Because a calculation of Amesbury's damages depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 16:

Separately for each Accused Caldwell Product as to which Amesbury alleges that it is entitled a reasonable royalty, state all facts concerning such reasonable royalty, including but not limited to how the royalty rate and royalty base were determined, and identify the persons most knowledgeable and all documents concerning such facts.

## RESPONSE:

Amesbury objects to this interrogatory as premature. Because a calculation of Amesbury's damages, including a calculation of reasonable royalties, depends on information in Caldwell's possession, Amesbury cannot now provide a detailed calculation. Amesbury also objects to this interrogatory as premature as it seeks information that is the subject of expert discovery.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information concerning licenses from or to Amesbury relating to building products until an appropriate protective order is entered in this case.

## INTERROGATORY NO. 17:

Separately for each of the Patents-In-Suit (and/or counterparts thereof) and Patented Amesbury Product, identify all agreements, assignments, or licenses concerning same, and identify the persons most knowledgeable and all documents concerning each such agreement, assignment, or license.

## RESPONSE:

Amesbury objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product immunity. Amesbury also objects to this interrogatory to the extent it seeks trade secret and/or other highly confidential information.

Subject to and without waiving the foregoing general and specific objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Amesbury will produce non-privileged documents from which responsive information may be obtained. Amesbury however will not produce any responsive, non-privileged, confidential documents, or provide any responsive, non-privileged, confidential information until an appropriate protective order is entered in this case.

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily identifies Richard Koopmann as the person most knowledgeable and the following responsive documents: an assignment of the rights to the invention from inventors of the '638 Patent to Omega Balance Co. Ltd., with subsequent changes of name to Omega International

Ltd. and Amesbury Springs Ltd.; an assignment of the rights to the invention from the inventors of the '264 Patent to Amesbury Group, Inc.; an assignment of the rights of the invention from the inventors of the '368 Patent to Amesbury Group, Inc.; a settlement agreement and consent judgment between Amesbury Group, Inc. and Pomeroy, Inc. d/b/a Unique Balance relating to U.S. Patent No. 6,679,000 and U.S. Patent No. D467,490.

## INTERROGATORY NO. 18:

State in detail each and every fact concerning Amesbury's allegation in its Complaint that Caldwell's alleged infringement of the Patents-In-Suit is or will be willful, and identify the persons most knowledgeable and all documents concerning such facts.

## RESPONSE:

Amesbury objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and work product immunity. Amesbury further objects to this interrogatory as premature, as to answer this interrogatory fully Amesbury requires further information from Caldwell, including a complete answer to Amesbury's Interrogatory No. 10

Subject to and without waiving the foregoing general and specific objections, Amesbury preliminarily states that Caldwell, in its response to Amesbury's Interrogatory No. 10, did not identify any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into, the United States, any of the infringing Caldwell products, including the Quick-Tilt, the Series 86xt, and the Series 97ez products. Furthermore, Caldwell did not provide any rational basis for its contention that the Patents-In-Suit are invalid and/or not infringed.

## INTERROGATORY NO. 19:

Identify all persons consulted or who provided information concerning responses to these interrogatories.

## RESPONSE:

Amesbury objects to this interrogatory as overly broad and vague. Amesbury incorporates by reference each of its objections and responses to the foregoing interrogatories.

Subject to and without waiving the foregoing general and specific objections, Amesbury identifies the following persons as knowledgeable about the foregoing responses: Richard Koopmann, Gary Newman, and Travis Steen.

Respectfully submitted,

Douglas J. Kline (BBO# 556680)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD**.

Dated: July 5, 2005

## EXHIBIT A

## INFRINGEMENT CLAIM CHARTS

| Claim Element | Amesbury's U.S. Patent No. 5,365,638 | Present in Caldwell's Quick-Tilt Product? |
|---|---|---|
| 638/1 | A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | This element is present when the Quick-Tilt product is incorporated in a window sash frame. |
| 638/1.A | a sash frame support means slidable in said channel means, | Yes |
| 638/1.B | a coiled ribbon spring having a first end engaged with said sash frame support means, and | Yes |
| 638/1.C | a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, | Yes |
| 638/1.D | said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited. | Yes, the spine of the Quick-Tilt product is positioned between flanges when installed. |
| 638/2 | The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means. | Yes. |
| 638/3 | The mounting assembly of claim 2 wherein said mounting means has | |
| 638/3.A | a body portion having an aperture therein, | Yes. |
| 638/3.B | a fixing screw positioned in said aperture by which the mounting means is secured relative to said | This element is present when the Quick-Tilt product is |

| Claim Element | Amesbury's U.S. Patent No. 5,365,638 | Present in Caldwell's Quick-Tilt Product? |
|---|---|---|
| | channel means, | incorporated in a window sash frame. |
| 638/3.C | a surface of said body portion being concavely curved, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion. | Yes. |
| | | |
| 638/8.A | A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | This element is present when the Quick-Tilt product is incorporated in a window sash frame. |
| 638/8.B | a sash frame support means slidable in said channel means, | Yes |
| 638/8.C | a coiled ribbon spring having an outer end engaged with said sash frame support means, and | Yes |
| 638/8.D | a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and | Yes. |
| 638/8.E | the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited. | Yes.  The spine is the projection means. |

# Quick-Tilt*nc
CONSTANT FORCE BALANCE



**Build on it.**

## *"New Construction" friendly Quick-Tilt®*

If new construction debris was holding you back from considering a Constant Force balance, you now have a dependable solution with Caldwell's **Quick-Tilt*nc** balance.



Caldwell's pre-assembled **Quick-Tilt** Constant Force balance just got better with its evolution to the **Quick-Tilt*nc** – or "new construction" friendly version.   Until now most Constant Force balances weren't ready for the abuse caused by construction site dust and debris.  With the launch of **Quick-Tilt*nc**, air-borne contaminants are kept from lodging inside the moving coil assembly.   The integrated coil nest and cover is specifically engineered to keep the coils dust-free and operating in the smooth, quiet manner for which **Quick-Tilt** balances are renowned.

**Call us at 585-352-3790.  Let's talk about _your_ window.**

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| 264/1 | A block and tackle window balance device comprising: | |
| 264/1.A | a channel comprising a first end and a second end; | Yes. |
| 264/1.B | a top guide connected to the first end of the channel; | Yes. |
| 264/1.C | a bottom guide connected to the second end of the channel; | Yes. |
| 264/1.D | a bottom guide roller rotatably mounted in the bottom guide; | Yes. |
| 264/1.E | a fixed pulley block unit connected to the channel; | Yes. |
| 264/1.F | a translatable pulley block unit moveable within the channel; | Yes. |
| 264/1.G | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes. |
| 264/1.H | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes. |
| | | |
| 264/2 | The device of claim 1 wherein the bottom guide roller is located external to the channel. | Yes. |
| | | |
| 264/3 | The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash. | Yes. |
| | | |
| 264/4 | The device according to claim 1 wherein a portion | Yes. |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| | of the bottom guide is external to the channel. | |
| | | |
| 264/5 | The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash. | Yes. |
| | | |
| 264/6 | The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle. | Yes. |
| | | |
| 264/7 | The device according to claim 6 wherein the axle is located within the frame. | Yes. |
| | | |
| 264/9 | The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle. | Yes. |
| | | |
| 264/10 | The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel. | Yes. |
| | | |
| 264/11 | The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide. | Yes. |
| | | |
| 264/12 | A window assembly comprising: | |
| 264/12.A | a window frame with two jambs with jamb pockets; | Yes. |
| 264/12.B | at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and | Yes. |
| 264/12.C | at least one block and tackle window balance device attached to the at least one of the upper | Yes. |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| | window sash and the lower window sash, the device comprising: | |
| 264/12.D | channel comprising a first end and a second end; | Yes. |
| 264/12.E | a top guide connected to the first end of the channel; | Yes. |
| 264/12.F | a bottom guide connected to the second end of the channel; | Yes. |
| 264/12.G | a bottom guide roller rotatably mounted in the bottom guide; | Yes. |
| 264/12.H | a fixed pulley block unit connected to the channel; | Yes. |
| 264/12.I | a translatable pulley block unit moveable within the channel; | Yes. |
| 264/12.J | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes. |
| 264/12.K | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes. |
| | | |
| 264/13 | A window balance device comprising: | |
| 264/13.A | a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes. |
| 264/13.B | a bottom guide roller rotatably mounted in the bottom guide. | Yes. |
| | | |
| 264/14 | The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto. | Yes. |
| | | |

| Claim Element | Amesbury's U.S. Patent No. 6,598,264 | Present in Caldwell's Series 86xt Product? |
|---|---|---|
| 264/15 | The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto. | Yes. |
| | | |
| 264/16 | The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | Yes. |
| | | |
| 264/18 | A window balance device comprising: | |
| 264/18.A | a channel comprising a first end and a second end; | Yes. |
| 264/18.B | a top guide connected to the first end of the channel; | Yes. |
| 264/18.C | a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes. |
| 264/18.D | a bottom guide roller rotatably mounted in the bottom guide. | Yes. |
| | | |
| 264/19 | The device of claim 18 wherein the bottom guide roller is located external to the channel. | Yes. |
| | | |
| 264/20 | The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel. | Yes. |
| | | |
| 264/21 | The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | Yes. |



20.1



# BLOCK & TACKLE SYSTEM



**GALVANIZED STEEL CHANNEL**
Provides maximum strength corrosion resistance and durability

**HEMMED EDGES**
For greater safety when handling

**RE-ENGINEERED BOTTOM GUIDE**
Specially designed to allow for application advantages in PVC welded sash. The sash side contact area has been lengthened creating an option to increase sash opening

**SPRINGS BY CALDWELL**
We ve made our own springs for over 100 years continually improving our manufacturing process to deliver high quality and consistent performance

**MUSIC WIRE**
This high-quality material is more fatigue resistant and has a greater consistency of performance than the hard-drawn and oil tempered steel commonly used by other balance manufacturers

**STAMPED METAL**
Our parts are made of stamped metal for maximum durability

**GUIDE BLOCK**
Designed to dampen sound during operation and prevent twisting of the tackle

**INDEPENDENTLY ROTATING PULLEY WHEELS**
Selected specifically for their lubricity low frictional characteristics and resistance to developing flat spots allowing for remarkably smooth and consistent operation

**SELF-ALIGNING STAINLESS STEEL HOOK**
The balance mounting hook is positively parked in a fixed position when retracted Installation into the window is easier than ever Pull off strength of the corrosion-resistant crimped terminal exceeds maximum load by more than 2 times The low profile of the hook minimizes clearance issues and only requires a single jamb punch

20.2

# Series 86xt TECHNICAL SPECIFICATIONS

For more complete specifications and design assistance, please contact your Caldwell sales representative.

| CHANNEL LENGTH (INCHES) | SERIES 86xt SASH WEIGHTS SUPPORTED (LBS) | SERIES 86xt SASH WEIGHTS SUPPORTED (LBS) |
|---|---|---|
| 9 | 3-12 | |
| 11-12 | 3-18 | |
| 14 | 3-22 | |
| 17-18 | 5-26 | |
| 20-24 | 5-30 | |
| 26-34 | 5-36 | |
| 36-38 | 8-40 | |
| 41-46 | 9-42 | |



Balance Travel

Balance Number + 1" Equals Channel Length

2" Cord Over-Travel Allowed
- for increased sash opening (egress)
- for potential inventory reduction

0.70" Hook Fully Retracted

X

## Other custom accessories also available.













15P32    15P142

15P90    15P180

15P6    15P02

15B22

1.B  12.E  18.B    1.C  12.F  13.A
18.C

20:3

| Claim Element | Amesbury's U.S. Patent No. 6,820,368 | Present in Caldwell's Series 97ez Product? |
|---|---|---|
| 368/2 | A window balance system comprising: | |
| 368/2.A | a U-shaped channel comprising a plurality of openings; | Yes. |
| 368/2.B | a spring connected to a system of pulleys located within the U-shaped channel; | Yes. |
| 368/2.C | a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes. |
| 368/2.D | a balance shoe, wherein the balance shoe comprises: | |
| 368/2.E | a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet; | Yes. |
| 368/2.F | a locking member proximal to the enlarged first end; | Yes. The locking member is the outer limit of the enlarged end. |
| 368/2.G | a cam in communication with the locking member, and | Yes. |
| 368/2.H | a connecting device for attaching the balance shoe within the U-shaped channel of the window balance. | Yes. |
| 368/3 | The window balance system of claim 2 wherein the connecting device comprises a rivet. | Yes. |
| 368/6 | The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | Yes. |

| | | |
|---|---|---|
| 368/7 | The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member. | Yes. |
| | | |
| 368/8 | The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame, wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | Yes. |
| | | |
| 368/11 | The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar. | Yes. |

# CALDWELL

# Series 97ez
## BLOCK & TACKLE SYSTEM



Easy installation
for tilt applications



# Series 97ez
## BLOCK & TACKLE SYSTEM

The Series 97ez improves on the inverted balance design that Caldwell first invented in 1996. Through an innovative, elongated carrier design, the sash drops more easily into place. This provides for faster installation, thereby reducing manufacturing costs. Designed for tilt applications for residential and commercial windows, the Series 97ez is rated Class 2 on the American Architectural Manufacturers Association (AAMA) Verified Components List.

**ELONGATED CARRIER DESIGN**
Made of glass-filled nylon, this innovative, attached carrier design allows the pivot bar to drop more easily into the cam.

**GALVANIZED STEEL CHANNEL**
Provides maximum strength, corrosion resistance, and durability.

**SPRINGS BY CALDWELL**
We've made our own springs for over 100 years, continually improving our manufacturing process to deliver high quality and consistent performance.

**GUIDE BLOCK**
Designed to dampen sound during operation and prevent twisting of the tackle.

**ROUNDED CORNERS**
For handling safety, our steel channel has gently rounded corners.

**MUSIC WIRE**
This high quality material is more fatigue-resistant and has greater consistency of performance than the hard-drawn and oil-tempered steel commonly used by other balance manufacturers.

**STAMPED METAL**
Our parts are made of stamped metal for maximum durability.

**INDEPENDENTLY ROTATING PULLEY WHEELS**
Selected specifically for their lubricity, low frictional characteristics and resistance to developing flat spots, allowing for remarkably smooth and consistent operation.

**STAINLESS STEEL TERMINALS**
Corrosion-resistant screw-mount or hook-mount options are crimped onto the cord ends. Pull-off strength exceeds maximum load by more than 2 times.

22.2

# Series 97ez TECHNICAL SPECIFICATIONS

**For more complete specifications and design assistance, please contact your Caldwell sales representative.**

| CHANNEL LENGTHS (INCHES)* | SASH WEIGHTS SUPPORTED (LBS.) |
|---|---|
| 7-8 | 2-9 |
| 9 | 2-10 |
| 10 | 2-12 |
| 11-12 | 3-18 |
| 13 | 3-19 |
| 14 | 3-22 |
| 15 | 3-23 |
| 16 | 3 24 |
| 17-18 | 4-25 |
| 19 | 5-26 |
| 20-22 | 5-28 |
| 23 | 6-30 |
| 24-26 | 6-34 |
| 27 | 7-34 |
| 28 | 7-36 |
| 29-31 | 8-38 |
| 32 | 8-39 |
| 33-34 | 9-40 |
| 35 | 10-42 |
| 36-44 | 11-42 |

*Channel length = balance number.

## Pivot Shoe ACCESSORIES

Side-locking pivot shoes accommodate
a range of pocket depth dimensions.



**EASY-IN SERIES**

| Carrier (in.) | Channel (in.) |
|---|---|
| 552 x 980 | 562 x 1 000 |
| 552 x 1 237 | 562 x 1 292 |

## INSTALLATION



**Slide** the Series 97ez Block & Tackle balance into the frame pocket

**Insert** a mounting screw through the terminal or a mounting hook into the jamb opening to fasten securely to the jamb

**Rotate** cam to lock shoe in place Shoes should be offset slightly to ease sash installation

**Install** the sash by dropping the bottom corner pivot bar into the shoe opening Make sure pivot bar is properly seated into the metal cam

**Tilt** sash upward into the normal operating position Ensure tilt latches are engaged

**The Series 97ez** is now installed Your window is operated by the industry's finest Block & Tackle balance

SHOWN
**SCREW MOUNT,
SHORT CARRIER**

SHOWN
**HOOK MOUNT,
LONG CARRIER**

22-3

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, certify that I caused the foregoing AMESBURY'S OBJECTIONS AND RESPONSES TO CALDWELL'S FIRST SET OF INTERROGATORIES (NOS. 1 - 19) to be served on July 5, 2005 on the following via First Class Mail.

David J. Edwards
HARRIS BEACH LLP
99 Garnsey Road
Pittsford, NY 14534
(585)-419-8800

Attorney for Defendant

THE CALDWELL MANUFACTURING
COMPANY

Date: July 5, 2005

Safraz W. Ishmael

LIBA/1562443.2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY GROUP, INC.'S OBJECTIONS TO
## THE DEPOSITION NOTICE SERVED BY CALDWELL

Plaintiff Amesbury Group, Inc. objects to the Deposition Notice served by defendant The Caldwell Manufacturing Company ("Caldwell") as follows:

### GENERAL OBJECTIONS

Amesbury Group, Inc. objects to Caldwell's Deposition Notice to the extent it:

1.      Seeks to obtain information protected from discovery by the attorney-client privilege, the work product immunity, or any other privilege or immunity.

2.      Attempts to impose obligations on Amesbury Group, Inc. that are inconsistent with, or beyond the scope of, those imposed by or authorized under the Federal Rules of Civil Procedure and the applicable local rules.

3.      Seeks to obtain information that is neither relevant to the issues raised in this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Attempts to define "Amesbury Group, Inc." as encompassing any entity or person other than plaintiff Amesbury Group, Inc.

1

5.    Seeks to obtain information beyond the matters reasonably known by, or reasonably available to, Amesbury Group, Inc.

6.    Seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc.

7.    Seeks expert testimony.

8.    Is vague, ambiguous, overly broad, or unduly burdensome.

Amesbury Group, Inc. specifically incorporates each of these General Objections into its specific responses to each of Caldwell's numbered topics, whether or not each such General Objection is expressly referred to in Amesbury Group, Inc.'s response to a specific topic.

Amesbury Group, Inc. reserves the right to assert additional or supplemental objections should Amesbury Group, Inc. discover additional grounds for such objections.

## SPECIFIC OBJECTIONS

### TOPIC NO. 1:

Amesbury Group's contentions that the Caldwell products infringe the patents-in-suit.

### RESPONSE:

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Group, Inc. also objects that this topic seeks expert opinion. Amesbury Group, Inc. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc. Amesbury Group, Inc. also objects to this topic as it seeks information that has already been provided to Caldwell in Amesbury Group, Inc.'s response to Caldwell's Interrogatories Nos. 1 and 2.

**TOPIC NO. 2:**

Amesbury Group's damages.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Group, Inc. also objects that this topic seeks expert opinion. Amesbury Group, Inc. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 3:**

The conception and/or reduction to practice of the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects that this topic is overly broad and unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it concerns the subject matter of claims not asserted in this lawsuit. Amesbury Group, Inc. also objects to this topic to the extent it seeks information not in Amesbury Group, Inc.'s possession. Amesbury Group, Inc. further objects that the phrase "inventions underlying the patents-in-suit" is vague and ambiguous. Amesbury Group, Inc. also objects to this topic to the extent it seeks information protected by the attorney-client privilege or

3

the work product immunity. Amesbury Group, Inc. also objects to this topic to the extent it seeks expert opinion. Amesbury Group, Inc. further objects to this topic to the extent it seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

## TOPIC NO. 4:

Amesbury Group's knowledge of designs and/or concepts for window balances created by Carl Shelton.

## RESPONSE:

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Group, Inc. further objects that the phrase "designs and/or concepts for window balances created by Carl Shelton" is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: September 14, 2005.

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, hereby certify that I caused the foregoing AMESBURY GROUP, INC.'S OBJECTIONS TO THE DEPOSITION NOTICE SERVED BY CALDWELL to be served on September 14, 2005, by First Class Mail and by facsimile, on the following:

Neil L. Slifkin, Esq.
David J. Edwards, Esq.
Laura W. Smalley, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534
Fax: (585) 419-8801

David E. Lurie, Esq.
Thomas E. Lent, Esq.
Lurie & Krupp, LLP
One McKinley Square,
Boston, MA 02109
Fax: (617) 367-1971

Attorneys for Defendant

THE CALDWELL MANUFACTURING
COMPANY

Date: September 14, 2005

_____
Safraz W. Ishmael

LIBA/1582138.1

6

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY SPRINGS LTD., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

     v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY SPRINGS LTD.'S OBJECTIONS TO
## THE DEPOSITION NOTICE SERVED BY CALDWELL

Plaintiff Amesbury Springs Ltd. objects to the Deposition Notice served by defendant

The Caldwell Manufacturing Company ("Caldwell") as follows:

## GENERAL OBJECTIONS

Amesbury Springs Ltd. objects to Caldwell's Deposition Notice to the extent it:

1.     Seeks to obtain information protected from discovery by the attorney-client

privilege, the work product immunity, or any other privilege or immunity.

2.     Attempts to impose obligations on Amesbury Springs Ltd. that are inconsistent

with, or beyond the scope of, those imposed by or authorized under the Federal Rules of Civil

Procedure and the applicable local rules.

3.     Seeks to obtain information that is neither relevant to the issues raised in this

action nor reasonably calculated to lead to the discovery of admissible evidence.

4.     Attempts to define "Amesbury Springs Ltd." as encompassing any entity or

person other than plaintiff Amesbury Springs Ltd.

1

5.     Seeks to obtain information beyond the matters reasonably known by, or reasonably available to, Amesbury Springs Ltd.

6.     Seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.

7.     Seeks expert testimony.

8.     Is vague, ambiguous, overly broad, or unduly burdensome.

Amesbury Springs Ltd. specifically incorporates each of these General Objections into its specific responses to each of Caldwell's numbered topics, whether or not each such General Objection is expressly referred to in Amesbury Springs Ltd.'s response to a specific topic.

Amesbury Springs Ltd. reserves the right to assert additional or supplemental objections should Amesbury Springs Ltd. discover additional grounds for such objections.

## SPECIFIC OBJECTIONS

### TOPIC NO. 1:

Amesbury Springs's contentions that the Caldwell products infringe the patents-in-suit.

### RESPONSE:

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Springs Ltd. also objects that this topic seeks expert opinion. Amesbury Springs Ltd. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd. Amesbury Springs Ltd. also objects to this topic as it seeks information that has already been provided to Caldwell in Amesbury Springs Ltd.'s response to Caldwell's Interrogatories Nos. 1 and 2.

## TOPIC NO. 2:

Amesbury Springs's damages.

## RESPONSE:

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Springs Ltd. also objects that this topic seeks expert opinion. Amesbury Springs Ltd. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

## TOPIC NO. 3:

The conception and/or reduction to practice of the inventions underlying the patents-in-suit.

## RESPONSE:

Amesbury Springs Ltd. objects that this topic is overly broad and unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it concerns the subject matter of claims not asserted in this lawsuit. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information not in Amesbury Springs Ltd.'s possession. Amesbury Springs Ltd. further objects that the phrase "inventions underlying the patents-in-suit" is vague and ambiguous. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information protected by the attorney-client privilege or

the work product immunity. Amesbury Springs Ltd. also objects to this topic to the extent it seeks expert opinion. Amesbury Springs Ltd. further objects to this topic to the extent it seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 4:**

Amesbury Springs's knowledge of designs and/or concepts for window balances created by Carl Shelton.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Springs Ltd. further objects that the phrase "designs and/or concepts for window balances created by Carl Shelton" is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 5:**

The corporate relationship(s) between Amesbury Group, Inc. and Amesbury Springs Ltd.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury

Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Phone: (617) 570-1000
Fax: (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.
AMESBURY SPRINGS LTD.**

Dated: September 14, 2005.

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, hereby certify that I caused the foregoing AMESBURY SPRINGS LTD.'S OBJECTIONS TO THE DEPOSITION NOTICE SERVED BY CALDWELL to be served on September 14, 2005, by First Class Mail and by facsimile, on the following:

Neil L. Slifkin, Esq.
David J. Edwards, Esq.
Laura W. Smalley, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534
Fax: (585) 419-8801

David E. Lurie, Esq.
Thomas E. Lent, Esq.
Lurie & Krupp, LLP
One McKinley Square,
Boston, MA 02109
Fax: (617) 367-1971

Attorneys for Defendant

THE CALDWELL MANUFACTURING
COMPANY

Date: September 14, 2005

_____
Safraz W. Ishmael

LIBA/1582179.1

6

GOODWIN | PROCTER

Jordan M. Singer
617.570.1096
jsinger@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

October 7, 2005

**By Facsimile and First Class Mail**

Neal L. Slifkin, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:    ***Amesbury Group, Inc. et al. v. The Caldwell Manufacturing Co.,***
       **U.S. District Court, D. Mass., Case No. 05-10020-DPW**

Dear Neal:

        I wanted to memorialize our conversation yesterday afternoon on a series of outstanding discovery issues.

        First, as of yesterday, we had not heard back from you on the exchange of privilege logs, an issue I first raised more than a week ago, on September 28. You informed me yesterday that Caldwell's privilege log is still not ready. Amesbury's privilege log is ready, and it is essential that we set a date for a mutual exchange of logs so that Amesbury is not further prejudiced by Caldwell's delay. Amesbury reserves its right to keep open any depositions taken until Caldwell produces its privilege log and Amesbury has had adequate opportunity to review it.

        Second, you told me yesterday that Caldwell would not be supplementing its response to Interrogatory No. 5 at the current time, as I requested in my September 28 letter. The request for supplementation is essentially one for clarification: it is impossible to tell from Caldwell's current response whether a "No" on Caldwell's claim charts with respect to a dependent claim means that Caldwell does not believe its product(s) infringe the dependent claim itself, or whether Caldwell does not believe the product(s) infringe the underlying independent claim. As I understand your position, Caldwell asserts that it need not supplement until after depositions have been completed. If my understanding is incorrect, please let me know. Otherwise, I fail to see how a clarification or supplementation of the sort Amesbury has requested is dependent on deposition testimony.

        Third, we confirmed that the deposition of Doug Zinter will proceed at 9:30 a.m. on Tuesday, October 11. You should have received a revised deposition notice for Mr. Zinter yesterday.

GOODWIN | PROCTER

Neal L. Slifkin, Esq.
October 7, 2005
Page 2

Fourth, we agreed to begin the deposition of Gary Newman on October 18, with October 19 held open in case another day was necessary. We are confirming Mr. Newman's availability on the 19th, but I do not perceive any difficulty with that date. Similarly, we discussed the possibility of condensing Richard Koopmann's depositions (as a 30(b)(6) witness for Amesbury Group and Amesbury Springs) into one day, an issue which we have left open for the time being. We also need to schedule another day of James Kellum, as well as one day for Stuart Uken. Please let me know when you have dates available for Mr. Kellum.

According to my notes, the current schedule of depositions is as follows:

| October 11 | Doug Zinter | Rochester |
| October 18 (and 19) | Gary Newman | Boston |
| October 20-21 | Richard DeNormand | Rochester |
| October 28 | James Kellum | Rochester |
| November 2-3 | Richard Koopmann | Boston |
| November 4 | Lawrence Ver Steeg | Boston |
| November 9 | Bob Lelio | Rochester |

With respect to the 30(b)(6) depositions of Amesbury Group and Amesbury Springs, you asked whether Amesbury would agree to have different attorneys for Caldwell ask questions on different topics (i.e., one set of questioning on technical topics and another set of questioning on non-technical topics). Amesbury is amenable to this approach, provided that: (1) Caldwell designate in advance which topics in each deposition notice will be handled by each attorney, and (2) the first attorney completes his questioning before the second attorney begins questioning on a different set of topics.

Finally, you informed me that your office was finalizing the draft motion to extend the deadline to take depositions. We look forward to seeing the draft as soon as possible. As I noted to you, it is important that the parties get the motion on file before the current close of discovery.

Sincerely yours,

Jordan Singer

Jordan M. Singer

cc:    Douglas J. Kline, Esq.
       Safraz W. Ishmael, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

     v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

### AMESBURY SPRINGS LTD.'S OBJECTIONS TO
### THE AMENDED DEPOSITION NOTICES SERVED BY CALDWELL

Plaintiff Amesbury Springs Ltd. hereby objects to the Amended Deposition Notices

served by defendant The Caldwell Manufacturing Company ("Caldwell"), dated October 26,

2005.[1]

### GENERAL OBJECTIONS

Amesbury Springs Ltd. objects to Caldwell's Amended Deposition Notices to the extent

they:

1.     Seek to obtain information protected from discovery by the attorney-client

privilege, the work product immunity, or any other privilege or immunity.

2.     Attempt to impose obligations on Amesbury Springs Ltd. that are inconsistent

with, or beyond the scope of, those imposed by or authorized under the Federal Rules of Civil

Procedure and the applicable local rules.

---

[1] Caldwell served two separate "Amended Deposition Notices" on Amesbury Springs Ltd. on October 26, 2005. Amesbury Springs Ltd. responses and objects to both notices here.

3.    Seek to obtain information that is neither relevant to the issues raised in this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Attempt to define "Amesbury Springs" or "Amesbury Springs Ltd." as encompassing any entity or person other than plaintiff Amesbury Springs Ltd.

5.    Seek to obtain information beyond the matters reasonably known by, or reasonably available to, Amesbury Springs Ltd.

6.    Seek testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.

7.    Seek expert testimony.

8.    Are vague, ambiguous, overly broad, or unduly burdensome.

Amesbury Springs Ltd. specifically incorporates each of these General Objections into its specific responses to each of Caldwell's numbered topics, whether or not each such General Objection is expressly referred to in Amesbury Springs Ltd.'s response to a specific topic.

Amesbury Springs Ltd. reserves the right to assert additional or supplemental objections should Amesbury Springs Ltd. discover additional grounds for such objections.

## SPECIFIC OBJECTIONS TO AMENDED NOTICE #1

### TOPIC NO. 1:

Amesbury Springs's contentions that the Caldwell products infringe the patents-in-suit.

### RESPONSE:

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Springs Ltd. also objects that this topic seeks expert opinion. Amesbury

Springs Ltd. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.  Amesbury Springs Ltd. also objects to this topic as it seeks information that has already been provided to Caldwell in Amesbury Springs Ltd.'s response to Caldwell's Interrogatories Nos. 1 and 2.

**TOPIC NO. 2:**

The conception and/or reduction to practice of the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic on the ground that Amesbury Springs Ltd.'s testimony on this topic, through its corporate designee, was already taken and concluded at a deposition on October 18, 2005.  Amesbury Springs Ltd. expressly incorporates its objections and responses to this topic as set forth in its Objections to the Deposition Notice Served by Caldwell, dated September 14, 2005.

**TOPIC NO. 3:**

The gross sales, sales returns and allowances, sales discounts and net sales of the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome.  Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 4:**

The expenses and costs incurred in connection with the manufacture and sale of the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 5:**

Any license or other agreement, including but not limited to distribution agreements, involving the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 6:**

Amesbury Springs's patent licensing policies.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 7:**

The royalties paid by Amesbury Springs in connection with the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 8:**

The pricing by country, including any reductions and/or discounts, of the inventions underlying the patents-in-suit, from the date of first sale to the present.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 9:**

Amesbury Springs's knowledge of designs and/or concepts for window balances created by Carl Shelton.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic on the ground that Amesbury Springs Ltd.'s testimony on this topic, through its corporate designee, was already taken and concluded at a deposition on October 18, 2005. Amesbury Springs Ltd. expressly incorporates its objections and responses to this topic as set forth in its Objections to the Deposition Notice Served by Caldwell, dated September 14, 2005.

## SPECIFIC OBJECTIONS TO AMENDED NOTICE #2

### TOPIC NO. 1

Amesbury Springs's claimed damages as a result of Caldwell's alleged infringement of the patents-in-suit.

### RESPONSE:

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Springs Ltd. also objects that this topic seeks expert opinion. Amesbury Springs Ltd. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Springs Ltd.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

### TOPIC NO. 2:

The corporate relationship(s) between Amesbury Group, Inc. and Amesbury Springs Ltd.

### RESPONSE:

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

### TOPIC NO. 3:

Amesbury Springs's recordkeeping practices (for both electronic and paper records), record retention policies and record destruction policies.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 4:**

Amesbury Springs's production of electronic records and documents in this action.

**RESPONSE:**

Amesbury Springs Ltd. objects to this topic to the extent that it is vague, overly broad or unduly burdensome.  Amesbury Springs Ltd. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Springs Ltd. will provide one or more designated representatives to testify regarding this topic.

Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: October 28, 2005

## CERTIFICATE OF SERVICE

I, Jordan M. Singer, hereby certify that I caused the foregoing AMESBURY SPRINGS LTD.'S OBJECTIONS TO THE AMENDED DEPOSITION NOTICES SERVED BY CALDWELL to be served on October 28, 2005, by First Class Mail and by facsimile, on counsel for the defendant.

Date: October 28, 2005

_____
Jordan M. Singer

LIBA/1642033.1

8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMESBURY GROUP, INC., and<br>AMESBURY SPRINGS LTD.,<br><br>       Plaintiffs,<br><br>  v.<br><br>THE CALDWELL MANUFACTURING<br>COMPANY,<br><br>       Defendant. | Civil Action No. 05-10020-DPW |

## AMESBURY GROUP, INC.'S OBJECTIONS TO
## THE AMENDED DEPOSITION NOTICES SERVED BY CALDWELL

Plaintiff Amesbury Group, Inc. hereby objects to the Amended Deposition Notices served by defendant The Caldwell Manufacturing Company ("Caldwell"), dated October 26, 2005.[1]

### GENERAL OBJECTIONS

Amesbury Group, Inc. objects to Caldwell's Amended Deposition Notices to the extent they:

1.    Seek to obtain information protected from discovery by the attorney-client privilege, the work product immunity, or any other privilege or immunity.

2.    Attempt to impose obligations on Amesbury Group, Inc. that are inconsistent with, or beyond the scope of, those imposed by or authorized under the Federal Rules of Civil Procedure and the applicable local rules.

---

[1] Caldwell served two separate "Amended Deposition Notices" on Amesbury Group, Inc. on October 26, 2005. Amesbury Group, Inc. responds and objects to both notices here.

3.    Seek to obtain information that is neither relevant to the issues raised in this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Attempt to define "Amesbury Group" or "Amesbury Group, Inc." as encompassing any entity or person other than plaintiff Amesbury Group, Inc.

5.    Seek to obtain information beyond the matters reasonably known by, or reasonably available to, Amesbury Group, Inc.

6.    Seek testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc.

7.    Seek expert testimony.

8.    Are vague, ambiguous, overly broad, or unduly burdensome.

Amesbury Group, Inc. specifically incorporates each of these General Objections into its specific responses to each of Caldwell's numbered topics, whether or not each such General Objection is expressly referred to in Amesbury Group, Inc.'s response to a specific topic.

Amesbury Group, Inc. reserves the right to assert additional or supplemental objections should Amesbury Group, Inc. discover additional grounds for such objections.

## SPECIFIC OBJECTIONS TO AMENDED NOTICE #1

### TOPIC NO. 1:

Amesbury Group's contentions that the Caldwell products infringe the patents-in-suit.

### RESPONSE:

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Group, Inc. also objects that this topic seeks expert opinion. Amesbury

Group, Inc. further objects that this topic seeks testimony concerning legal contentions or

conclusions, rather than facts known to Amesbury Group, Inc. Amesbury Group, Inc. also

objects to this topic as it seeks information that has already been provided to Caldwell in

Amesbury Group, Inc.'s response to Caldwell's Interrogatories Nos. 1 and 2.

**TOPIC NO. 2:**

The conception and/or reduction to practice of the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic on the ground that Amesbury Group, Inc.'s

testimony on this topic, through its corporate designee, was already taken and concluded at a

deposition on October 18, 2005. Amesbury Group, Inc. expressly incorporates its objections and

responses to this topic as set forth in its Objections to the Deposition Notice Served by Caldwell,

dated September 14, 2005.

**TOPIC NO. 3:**

The gross sales, sales returns and allowances, sales discounts and net sales of the
inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad or

unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks

information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury

Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 4:**

The expenses and costs incurred in connection with the manufacture and sale of the
inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 5:**

Any license or other agreement, including but not limited to distribution agreements, involving the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 6:**

Amesbury Group's patent licensing policies.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 7:**

The royalties paid by Amesbury Group in connection with the inventions underlying the patents-in-suit.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 8:**

The pricing by country, including any reductions and/or discounts, of the inventions underlying the patents-in-suit, from the date of first sale to the present.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 9:**

Amesbury Group's knowledge of designs and/or concepts for window balances created by Carl Shelton.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic on the ground that Amesbury Group, Inc.'s testimony on this topic, through its corporate designee, was already taken and concluded at a deposition on October 18, 2005. Amesbury Group, Inc. expressly incorporates its objections and responses to this topic as set forth in its Objections to the Deposition Notice Served by Caldwell, dated September 14, 2005.

## SPECIFIC OBJECTIONS TO AMENDED NOTICE #2

### TOPIC NO. 1

Amesbury Group's claimed damages as a result of Caldwell's alleged infringement of the patents-in-suit.

### RESPONSE:

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad and/or unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or the work product immunity. Amesbury Group, Inc. also objects that this topic seeks expert opinion. Amesbury Group, Inc. further objects that this topic seeks testimony concerning legal contentions or conclusions, rather than facts known to Amesbury Group, Inc.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

### TOPIC NO. 2:

The corporate relationship(s) between Amesbury Group, Inc. and Amesbury Springs Ltd.

### RESPONSE:

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

### TOPIC NO. 3:

Amesbury Group's recordkeeping practices (for both electronic and paper records), record retention policies and record destruction policies.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

**TOPIC NO. 4:**

Amesbury Group's production of electronic records and documents in this action.

**RESPONSE:**

Amesbury Group, Inc. objects to this topic to the extent that it is vague, overly broad or unduly burdensome. Amesbury Group, Inc. also objects to this topic to the extent it seeks information or documents protected by the attorney-client privilege or work product immunity.

Subject to and without waiving the foregoing general and specific objections, Amesbury Group, Inc. will provide one or more designated representatives to testify regarding this topic.

_Jordan Singer_

Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: October 28, 2005

## CERTIFICATE OF SERVICE

I, Jordan M. Singer, hereby certify that I caused the foregoing AMESBURY GROUP, INC.'S OBJECTIONS TO THE AMENDED DEPOSITION NOTICES SERVED BY CALDWELL to be served on October 28, 2005, by First Class Mail and by facsimile, on counsel for the defendant.

Date: October 28, 2005

_____
Jordan M. Singer

LIBA/1642012.1

GOODWIN | PROCTER

Jordan M. Singer
617.570.1096
jsinger@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

October 31, 2005

**By Facsimile and First Class Mail**

Neal L. Slifkin, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:    ***Amesbury Group, Inc. et al. v. The Caldwell Manufacturing Co.,***
       <u>**U.S. District Court, D. Mass., Case No. 05-10020**</u>

Dear Neal:

I am following up on our conversation this morning concerning the scope of Caldwell's Rule 30(b)(6) deposition of Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury"). Caldwell's amended deposition notices seek testimony from an Amesbury representative on the subject of Amesbury's "contentions that Caldwell products infringe the patents-in-suit." As you know, Amesbury objected to this topic on the grounds that, among other things, it seeks expert opinion and legal conclusions rather than facts known to Amesbury.

As I understood from our discussion this morning, Caldwell intends to ask Amesbury's designee to identify elements of Caldwell products that correspond to specific claims of the patents-in-suit, and to otherwise testify about the application of the patent claims to the accused products. This line of questioning calls for legal and expert analysis, and is not appropriate for a fact witness. Accordingly, Amesbury will not permit its representative to testify on these legal issues. Amesbury, however, does not object to Caldwell inquiring into the <u>factual</u> basis of Amesbury's infringement allegations – that is, the facts in Amesbury's possession that led it to believe that Caldwell's products infringe its patents.

I expect that this letter clarifies Amesbury's position. If Caldwell will limit its questioning on Amesbury's infringement contentions to the factual issues discussed above, please let me know and we will designate a representative to testify on this topic.

Sincerely yours,

Jordan M. Singer

GOODWIN | PROCTER

Neal L. Slifkin, Esq.
October 31, 2005
Page 2


cc:    David J. Edwards, Esq.
       Douglas J. Kline, Esq.
       Safraz W. Ishmael, Esq.

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

NEAL L. SLIFKIN

DIRECT:   (585) 419-8636
FAX:      (585) 419-8813
NSLIFKIN@HARRISBEACH.COM

*By Facsimile  617/523-1231*
November 1, 2005

Jordan M. Singer, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

      Re:    Amesbury Group, Inc., et al. v. The Caldwell Manufacturing Co.
            U.S. District Court, D. Mass, Case No. 05-10020

Dear Jordan:

      I am responding to your letter of October 31, 2005 regarding Caldwell's 30(b)(6) deposition for Amesbury Group, Inc. and Amesbury Springs, Ltd. Frankly, we do not understand the distinction you are drawing between the "factual basis of Amesbury's infringement allegations" and asking Amesbury to "testify about the application of the patent claims to the accused products." Because we do not understand the distinction you are drawing, we are unable to agree, in advance, to limit questioning to the "factual issues." Accordingly, we ask that you designate a representative to testify on what you believe to be the "factual issues." You will then be able to object to the questions as permitted under the Federal Rules of Civil Procedure.

      As required by the local rules, this is our attempt to resolve the dispute prior to filing a motion to compel.

            Sincerely,

            Neal L. Slifkin

NLS:nac

T:\user\nos\caLDWELL\Singer ltr.doc
11/1/2005 10:00:17 AM

00001

1           UNITED STATES DISTRICT COURT

2           DISTRICT OF MASSACHUSETTS

3

4
                    NO. 05-CV-10020 (DPW)
5

6
   ****************************************
7  AMESBURY GROUP, INC., and AMESBURY     *
   SPRINGS LTD.,                          *
8                         *
       Plaintiffs,          *
9                          *
   v.                      *
10                         *
   THE CALDWELL MANUFACTURING COMPANY,  *
11      Defendant.          *
   ****************************************
12

13

14

15           RULE 30(b)(6) DEPOSITION OF
   RICHARD KOOPMANN, taken pursuant to the
16  applicable provisions of the Federal Rules of
   Civil Procedure, before Susan L. Prokopik,
17  Registered Merit Reporter and Notary Public in
   and for the Commonwealth of Massachusetts, at the
18  offices of Goodwin Procter LLP, Exchange Place,
   Boston, Massachusetts, on Wednesday, November 2,
19  2005, at 9:29 a.m.

20

21

22           KACZYNSKI REPORTING
            72 CHANDLER STREET, SUITE 3
23         BOSTON, MASSACHUSETTS 02116
              (617) 426-6060
24      CONFIDENTIAL - ATTORNEYS' EYES ONLY

00002
 1  APPEARANCES:

 2
       ON BEHALF OF THE PLAINTIFFS:
 3
       JORDAN M. SINGER, ESQ.
 4      Goodwin Procter LLP
       Exchange Place
 5      Boston, MA  02109
       (617) 570-1000
 6

 7
       ON BEHALF OF THE DEFENDANT:
 8
       DAVID J. EDWARDS, ESQ.
 9      Harris Beach PLLC
       99 Garnsey Road
10      Pittsford, NY  14534
       (585) 419-8714
11

12

13

14

15

16

17

18

19

20

21

22

23

24

00020

1        MR. SINGER:  I would like to keep

2    copies if you have any.

3        MR. EDWARDS:  I do.

4        MR. SINGER:  Okay.

5 Q. Have you seen Exhibits 1 or 2 before?

6 A. I don't -- this was just sent out October 26th?

7 Q. Correct.

8 A. I don't believe I have.

9 Q. Okay.  And then look at Exhibit 2 as well.  It's

10   also October 26th but just take a look at it.

11 A. I don't believe I have.

12 Q. Okay.  Well, let's look at Exhibit No. 1.

13 A. Okay.

14 Q. Exhibit No. 1 is directed to Amesbury Group and

15    then immediately behind that is an identical

16    notice that's directed to Amesbury Springs.  But

17    what I'm interested in are the numbered items

18    starting about midway down the page there.  Do

19    you see where I'm referring to?

20 A. Okay.  Yes.

21 Q. Okay.  And today is your lucky day because I

22    gather you have been designated as Amesbury

23    Group's witness as well as Amesbury Springs'

24    witness.  And I would just like you to look down

00021

1    that list and tell me whether you're prepared to

2    testify on those subjects.

3         MR. SINGER:  Well, let me clarify

4    before the witness answers that Amesbury Group

5    and Amesbury Springs submitted their objections

6    to these notices beforehand.  And under the

7    course of those objections, topics two and nine

8    --

9         MR. EDWARDS:  Yes.

10        MR. SINGER:  -- were not designated and

11   topic one was designated with the caveat we

12   discussed earlier.

13        MR. EDWARDS:  Let's back up for a bit.

14   Yes.  Jordy, in accordance with the conversation

15   that we had before this deposition took place by

16   telephone a couple days ago, I understood that

17   you were producing Mr. Koopmann on topics three,

18   four, five, six, seven and eight.  Is that right?

19        MR. SINGER:  That's correct.

20        MR. EDWARDS:  Okay.  Referring to

21   Exhibit 1.

22 Q. So why don't we just look at those topics for the

23   moment?  Three through eight.

24 A. Okay.

00202

1  A.  Not that I recall.

2  Q.  Was there any discovery conducted?

3  A.  Yes.

4  Q.  Documents were exchanged?

5  A.  Yes.

6  Q.  And was there any prior art disclosed in that

7     case that you're aware of that was not set forth

8     on the face of the '368 patent?

9         MR. SINGER:  Objection.

10  A.  I don't know.

11        MR. EDWARDS:  All right.  Now, I think

12     I am about done but we began this morning with --

13     it sounded like you were changing your position

14     on the -- on topic number one in our 30(b)(6)

15     notice.

16        MR. SINGER:  No.  I mean, our position

17     has not changed from -- well, from the time we

18     originally received the notice and we filed our

19     objections.  Our position is simply this:

20        We are not putting up a representative

21     to discuss -- basically to match up claims of any

22     patent with any Caldwell product or to do any

23     sort of detailed analysis with respect to

24     infringement.  Mr. Koopmann is here and available

00203

1    today to discuss underlying facts that led

2    Amesbury to believe that its products were being

3    infringed or its patents were being infringed by

4    Caldwell.

5        MR. EDWARDS:  Well, yesterday and in

6    fact up until yesterday you were objecting to

7    producing anyone on topic number one.

8        MR. SINGER:  We were objecting -- yes.

9    We were objecting to producing anyone on the

10    basis of -- a number of bases which are available

11    in the documents.  Yesterday, you may recall, we

12    had a conversation, a phone conversation, you and

13    I, Neal Slifkin, I believe, on Monday where we

14    discussed the issue.  I said I would discuss it

15    with the client.  Get back to you.

16        That afternoon, I did send a letter,

17    which should be in your possession, stating that

18    we would make a representative available to

19    discuss underlying facts with respect to topic

20    number one.

21        MR. EDWARDS:  If we agreed that the

22    examination was limited to what you just

23    described, the underlying facts, and not

24    infringement generally.

00204

1       MR. SINGER:  I'm not sure if there was

2    an agreement on your part necessarily or not.  We

3    were simply stating that our position was we were

4    making a representative available to discuss

5    underlying facts.

6       MR. EDWARDS:  Okay.  And well, you are

7    not now telling me that Mr. Koopmann's presence

8    here today is your 30(b)(6) representative on

9    that first topic, are you?

10       MR. SINGER:  On underlying facts,

11    that's exactly what I'm telling you, as I told

12    you this morning before this deposition started.

13       MR. EDWARDS:  Well, you can't object to

14    producing anybody on a Tuesday and then when we

15    show up at the deposition on Wednesday say, Here

16    we are.

17       MR. SINGER:  Well, Mr. Edwards, let's

18    put this chronology in context.  An amended

19    original -- an original notice of deposition was

20    placed back in September.  We objected at that

21    time.  An amended notice was placed on October

22    26, just last week.

23       MR. EDWARDS:  Which had the same --

24       MR. SINGER:  Which had the same thing

**Koopman, Richard, 11/2/05**        **Page 204**

00205

1    and we objected in the same way.

2        MR. EDWARDS: Correct.

3        MR. SINGER: Okay. Then just on Monday

4    we had a conversation about this precise issue

5    because there was some confusion we believe on

6    your part as to -- we believe and correct me if

7    I'm wrong, we believe what came out of our

8    conversation last week at the status hearing

9    before the Court was that you believed that we

10   were actually going to be producing someone on

11   topic number one.

12       In order to remedy that confusion, we

13   had a conversation on Monday. I followed up with

14   a letter Monday afternoon stating precisely what

15   we would be presenting a representative for with

16   respect to topic number one.

17       MR. EDWARDS: No. On Monday there was

18   still not going to be anyone coming on topic

19   number one is my recollection.

20       MR. SINGER: My letter stated that we

21   would make a representative available and --

22       MR. EDWARDS: That was Tuesday.

23       MR. SINGER: No. The letter went out

24   Monday. Letter went out Monday saying, Please

00206

1   let us know and we will designate a

2   representative.

3        MR. EDWARDS:  Well, all right.  My

4   position is simply you can't -- you have to give

5   some notice as to who you're going to be

6   producing.  It can't be done at the deposition.

7        MR. SINGER:  We feel that notice -- I

8   mean, given the timing, notice was proper.  I

9   gave you -- I informed you when you walked in

10  this morning Mr. Koopmann was available.  We just

11  don't think there is that many questions you

12  could ask on, you know, the issue as it is.  You

13  know, you have 15 minutes left in this deposition

14  if you want to ask some questions on that.

15       MR. EDWARDS:  Well, we're going to

16  bring a motion to compel a 30(b)(6) witness on

17  infringement.  There's simply no way that that

18  topic can be covered with this sort of notice.

19       MR. SINGER:  That's your prerogative.

20  I think our position is clear.

21       MR. EDWARDS:  All right.  Well, we're

22  going to reserve our right to continue the

23  deposition with whoever Amesbury wishes to

24  designate on our first topic, that is

00207

1    infringement, and continue the deposition at that

2    time.  Other than that, I think we're done.

3          MR. SINGER:  Well, I have one question.

4    Do you want me to ask that question now?  Why

5    don't I ask the question now and we'll go

6    forward?

7          MR. EDWARDS:  Go ahead.

8

9    EXAMINATION BY MR. SINGER:

10   Q.  Mr. Koopmann, you may recall at the very

11       beginning of this deposition Mr. Edwards showed

12       you Exhibits 1 and 2.  Do you remember those?

13   A.  Yes.

14   Q.  And at the time he showed you those exhibits, he

15       asked you whether you had reviewed or seen those

16       documents before.  Do you remember that?

17   A.  Yes.

18   Q.  Do you remember what your testimony was on that

19       question?

20   A.  I said I had not seen them.

21   Q.  Have you had a chance over the course of the day

22       to think about your response to that question?

23   A.  Yes.  I think I did see them yesterday.

24   Q.  Okay.  I have nothing further.

00208

1          MR. SINGER:  I will just say before we

2     go that respecting Caldwell's rights to argue

3     that this deposition should be continued, it is

4     Amesbury's position that this deposition is now

5     concluded.  And we also will designate this

6     entire deposition as confidential counsel only

7     under the protective order.

8          MR. EDWARDS:  We're done.

9          (Whereupon, the deposition was

10    adjourned at 4:57 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24