IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

Plaintiffs,

vs.                                                    Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

Defendant.

## RESPONSE TO MOTION TO COMPEL

This memorandum is submitted in response to Plaintiffs' Amesbury Group, Inc. and

Amesbury Springs Ltd.'s (collectively "Amesbury") motion to compel discovery.  There are

three discrete groups of items Amesbury has sought to compel:  (1) the production of certain

documents requested at the deposition of Robert Lelio on November 22, 2005; (2) a more

detailed privilege log relating to e-mails withheld by Caldwell on the basis of privilege; and

(3) supplemental responses to Amesbury's interrogatory regarding patent invalidity.

**I.    Caldwell Has Agreed to Produce The Documents Requested At the Lelio Deposition.**

By letter dated November 23, 2005, Amesbury requested certain documents at the

**November 22, 2005** deposition of Robert Lelio.  Caldwell has not yet obtained Mr. Lelio's

deposition transcript.  As indicated in its letter of December 5, 2005, attached as Exhibit "1",

Caldwell has agreed to provide these items to the extent they exist and are not privileged.

Caldwell will also produce electronic versions of the spreadsheets requested, although Caldwell

also requested electronic documents from Amesbury and has yet received the same.

(Exhibit "4").

In its motion, Amesbury accuses Caldwell of withholding documents that "fall within the scope of requests propounded by Amesbury in May...." (Amesbury's Mem., at p. 5). As a preliminary matter, many of Amesbury's requests were impermissibly overbroad and Caldwell objected to producing many documents on that basis. In response to specific requests, Caldwell will, as it is obligated to, produce any relevant and non-privileged documents in its possession, as it has done in this litigation, producing over 5,000 e-mails and thousands of pages of documents.

Furthermore, Amesbury itself failed to produce many documents within the scope of Caldwell's requests. Attached as Exhibit "3" is a letter from Neal Slifkin to Douglas Kline of Goodwin Proctor outlining the documents whose existence Caldwell first discovered at depositions of Amesbury representatives. These documents sent by mail on November 29, 2005 and received by Caldwell on December 2, 2005. (See Exhibit "4").

Caldwell has refused to produce its tax returns because they are confidential. United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y.1988) ("[J]udicial consensus is that, while tax returns are not privileged, courts, as a matter of policy, should be cautious in ordering their disclosure. ... The policy concerns are based upon 'a balancing of the policy of liberal discovery against the policy of maintaining confidentiality of tax returns.'"). This Court has held that tax returns are not discoverable unless the requesting party shows that: (1) they are relevant; and (2) the information contained therein is otherwise unobtainable. "The burden to show relevancy lies on the party seeking the returns." Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40, 43 (D.Mass.2001). See also, Buntzman v. Springfield Redevelopment Authority, 146 F.R.D. 30, 32 (D.Mass.1993), citing Pogharian v. Croce, C.A. 81-1307-F (D.Mass.1985). On this motion to compel, Amesbury has not shown, nor even attempted to show, that Caldwell's tax returns are relevant. Furthermore, Caldwell has

provided detailed financial information, including the gross revenues and profits, relating to the products at issue, as well as audited financial statements, making the production of its tax returns unnecessary.

## II.    Caldwell Has Agreed to Supplement Its Privilege Log.

In its motion to compel, Amesbury demands that Caldwell supplement its privilege log for electronic documents. Although not admitting that its log was deficient, Caldwell has agreed to provide a list of attorneys and employees at Caldwell to assist Amesbury in evaluating the claims of privilege, as well as to expand the descriptions of the documents withheld as privileged. (See Exhibit "1").

In its motion, Amesbury argues at length about Caldwell's alleged misdesignation of certain e-mails as "work product" and/or "attorney client privileged." Its motion, however, only points to a handful of e-mails out of 372 e-mails withheld as privileged (which were themselves culled from over 5,000 e-mails). In any event, that issue is not before the Court because Amesbury has not moved to compel the production of specific e-mails.

## III.    Caldwell Has Supplemented Its Interrogatory on Invalidity But Objects to Providing an Invalidity Claim Chart Before Retaining an Expert.

The final item that Amesbury seeks to compel is supplemental responses to its interrogatory on invalidity, including requiring Caldwell "to identify what elements in [the prior art references disclosed] are relevant to its invalidity assertion [and] to apply [the] elements of these references to the claim terms of the patents-in-suit." (Amesbury's Mem. at p. 2).

Caldwell has supplemented its response to Amesbury's invalidity interrogatory (Interrogatory No. 6) with information regarding an invalidating prior art reference, the 728 series balance. Caldwell did not obtain this information until the inventor on the patent, Gary Newman, was deposed on October 18, 2005.

Caldwell did not receive this information earlier because of Amesbury's deficient discovery responses. Caldwell served document demands on Amesbury on May 31, 2005 requesting, among other things:

**REQUEST NO. 34**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to occurring prior to March 16, 2001, concerning any devices or methods that increase the range of travel of a window sash balanced in a window frame with a block and tackle window balance.

**REQUEST NO. 29**

All documents and things concerning the scope, novelty, patentability, validity or enforceability of any claim of the Patents-In-Suit and counterparts thereof, including but not limited to, documents produced or provided to Amesbury by any person and asserted or suggested by such person to be relevant to the scope, novelty, patentability, validity or enforceability of the claimed inventions of the Patents-In-Suit and/or counterparts thereof.

(See Exhibit "5", Document Requests). Although the 728 series balance has the same allegedly novel feature as that disclosed in the '264 Patent and although that balance was a block and tackle window balance with a feature designed to increase travel, Amesbury did not disclose information about this balance in response to these demands. Upon discovering the existence of this balance from a third party, Caldwell issued a second set of interrogatories specifically requesting information about the balance. (Exhibit "6"). Amesbury produced this information on the date of the inventor's deposition in Boston by delivering it to counsel's office in Pittsford, New York on October 18th. (Exhibit "8").

After reviewing the inventor's deposition transcript (received in mid-November) and the documents received from Amesbury, Caldwell has supplemented its interrogatory response with the information obtained about the device. (Exhibit "2").

Caldwell's response to this interrogatory is otherwise sufficient. That response, attached as Exhibit "7", details the element of each patent which was represented to be novel during the prosecution of the patent. Caldwell then lists the prior art references that may anticipate and/or render that element of applicable patent obvious, thus invalidating it. Amesbury cites no authority for the proposition that this disclosure is insufficient or that Caldwell is required to provide additional detail. See Abbott Labs. v. Syntron Bioresearch, Inc., 2001 W.L. 34082555, 98-CV-2359 (S.D. Cal. Aug. 24, 2001) (findings that items listed as prior art references, but not mentioned as invalidating prior art were sufficiently disclosed to allow at trial). Amesbury's only cited authority, Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 2005 W.L. 1457696, 03 Civ. 8253, does not address the sufficiency of invalidity interrogatory responses and only deals with a party's failure to disclose an invalidating reference, which is not the case here.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Amesbury's motion to compel in its entirety.

Dated: December 7, 2005

Respectfully submitted,

HARRIS BEACH PLLC


By:    /s/Neal L. Slifkin
Paul J. Yesawich, III
Neal L. Slifkin
David J. Edwards
Laura W. Smalley
*Attorneys for Defendant*

5

99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

-and-

David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: 617-367-1970

210199 21503.2
12/7/2005

Exhibit 1

**HARRIS BEACH** ᴾᴸᴸᶜ

ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

**LAURA W. SMALLEY**

DIRECT:   585-419-8736
FAX:        (585) 419-8813
LSMALLEY@HARRISBEACH.COM

December 5, 2005

Safraz W. Ishmael, Esq.
Goodwin Proctor LLP
Exchange Place
Boston, MA  02109-2881                    <u>Via Telecopy and Regular Mail</u>

      Re:    Amesbury Group, Inc. and Amesbury Springs, Ltd. v.
               The Caldwell Manufacturing Company

Dear Safraz:

      I am in receipt of your firm's letters regarding our discovery responses and your call on November 30th regarding the same.  Just so you are aware, I was on vacation the week of November 21st and had a Markman Hearing on November 30th.  With respect to your request that we supplement the privilege log, we will provide you with a list of Caldwell attorneys and personnel so that you can evaluate claims of privilege.  We will expand our descriptions of the documents.

      With regard to your request that we supplement our interrogatory response to Amesbury's interrogatory on validity, we intend to supplement that interrogatory with information about the Anderson 728 series balance.  We do not intend to provide you a "claim chart" on invalidity.  We have provided you with the allegedly novel element of the inventions at issue and the references which we believe that, either singly or in combination, anticipate or render that allegedly novel element obvious.  A "claim chart" on invalidity of the type you request requires expert opinion, and we have not yet retained an expert.

      Indeed, we note that Amesbury refused to answer Caldwell's interrogatories on damages claiming that expert opinion was needed for that calculation.  Although it is improbable that your client cannot provide any answer to that type of interrogatory (because it presumably knows its profit margins on the products at issue, for example), it has chosen to withhold all such information before hiring an expert.  Given your client's stance on that issue, it is improper for you to demand that we provide an analysis of the prior art without expert opinion.

      With regard to the documents requested, we note that these items were requested at the deposition of Robert Lelio on November 22, 2005.  Once we receive and review the transcript, we intend to provide you with such documents to the extent they exist and are not protected by privilege.

Safraz W. Ishmael, Esq.
December 5, 2005
Page 2

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

Thank you for your consideration in this matter.

Sincerely,

Laura W. Smalley

LWS:kjj

pc:  Douglas J. Kline, Esq.
     Jordan Singer, Esq.
     Paul J. Yesawich, III, Esq.
     Neal L. Slifkin, Esq.
     David J. Edwards, Esq.

Exhibit 2

HARRIS BEACH ⌐ᴾᴸᴸᶜ

ATTORNEYS AT LAW

December 5, 2005

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

LAURA W. SMALLEY

Safraz W. Ishmael, Esq.
Goodwin Proctor LLP
Exchange Place
Boston, MA  02109-2881

DIRECT:    585-419-8736
FAX:       (585) 419-8813
LSMALLEY@HARRISBEACH.COM

Via Telecopy and
 Regular Mail

Re:    Amesbury Group, Inc. and Amesbury Springs, Ltd. v.
       The Caldwell Manufacturing Company

Dear Safraz:

This letter is to supplement Caldwell's response to Amesbury's Interrogatory No. 6, which requests the factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid.

The Interrogatory supplemented is:

**INTERROGATORY NO. 6**:

State the full factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States as set forth in, *inter alia*, 35 U.S.C. §§102, 103 and 112.

Caldwell's supplemental answer to this Interrogatory, which is in addition to, but does not replace the text of its prior answers and objections, is as follows:

**Answer**:    U.S. Patent No. 6,598,264 ("'264 patent") is invalid because it is anticipated by, or is in obvious in light of, a block and tackle window balance designed and/or manufactured by Amesbury for Anderson Corporation. This balance, known as the 728 series balance, was first sold in January 2000 according to the testimony of Amesbury employee Gary Newman. According to Mr. Newman, the 728 series balance had a guide roller located beneath the channel as did the invention disclosed in the '264 patent. Because the only allegedly novel element of the '264 patent was locating the guide roller beneath the channel, the 728 series balance is an invalidating prior art reference to the '264 patent. In addition, the sale of the 728 series balance renders the '264 patent invalid under 35 U.S.C. §102(b).

As to further supplementation of a claim chart for the prior art previously disclosed, Caldwell intends to provide such an analysis if and when it obtains an expert.

Sincerely,

Laura W. Smalley

LWS:kjj

Safraz W. Ishmael, Esq.
December 5, 2005
Page 2

HARRIS BEACH <sub>PLLC</sub>
ATTORNEYS AT LAW

pc:  Douglas J. Kline, Esq.
     Jordan Singer, Esq.
     Paul J. Yesawich, III, Esq.
     Neal L. Slifkin, Esq.
     David J. Edwards, Esq.

Exhibit 3

**HARRIS BEACH** ᴾᴸᴸᶜ

ATTORNEYS AT LAW

**99 GARNSEY ROAD**
**PITTSFORD, NY** 14534
**(585) 419-8800**

**NEAL L. SLIFKIN, ESQ.**
MEMBER
DIRECT:    (585) 419-8636
FAX:    (585) 419-8813
NSLIFKIN@HARRISBEACH.COM

November 29, 2005

*By Facsimile*

Douglas J. Kline, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA  02109-2881

      Re:  <u>Amesbury Group, Inc., et al. v. The Caldwell Manufacturing Company</u>
          <u>Civil Action No. 05-10020-DPW, District of Massachusetts</u>

Dear Doug:

      During the depositions of Amesbury's witnesses, we requested that Amesbury produce certain documents. Attached is a list of those documents. These documents were all within the scope of our requests for the production of documents, but were apparently overlooked by Amesbury. Some of the depositions during which the documents were requested took place over one month ago. To date, we have not received any additional documents responsive to those requests. If we do not receive the documents by tomorrow morning, we will be forced to file a motion to compel by the end of the day tomorrow.

      Please consider this letter as our good faith effort to resolve a dispute prior to filing a motion to compel.

                    Sincerely,

                    Neal L. Slifkin

NLS:nac
Enclosure
cc:  Jordan Singer
     Safraz Ishmael
     Paul J. Yesawich, III, Esq.

**AMESBURY VS. CALDWELL**

*DOCUMENTS REQUESTED AT DEPOSITIONS*

| DEPONENT | DATE | REQUEST | PAGE REFERENCE |
|---|---|---|---|
| Koopman 30(b)(6) | 11/2/2005 | Invoices on CDs | 196 - 199 |
| Koopman 30(b)(6) | 11/2/2005 | Exhibit 18 - produced in electronic format | 146 |
| Koopman 30(b)(6) | 11/2/2005 | Paper reports located in "Hawaii Room" | 102 and 103 |
| Koopman 30(b)(6) | 11/2/2005 | Costing sheet - cost for the 156 series balance | 167 |
| Koopman 30(b)(6) | 11/2/2005 | Document that relates to the Omega Profits and Losses that would show information such as PBIT, sales revenues etc. | 170 - 171 |
| Newman 30(b)(6) | 10/18/2005 | Andersen 728 - the 4th item on page 3 of Exhibit 4, as well as any other design activity lists or design activity documents relating to the Andersen 700 series products | 35 |
| Newman 30(b)(6) | 10/18/2005 | Any other design activity lists | 36 |
| Newman 30(b)(6) | 10/18/2005 | Documentation of payments made to Fastek for production of tooling | 190-191 |
| Newman 30(b)(6) | 10/18/2005 | Shipping documents indicating Fastek has shipped prototype to Amesbury | 190-191 |
| Newman (rough draft) | 10/19/2005 | An invoice that corresponds to Exhibit 21, a build order for products for Andersen | 6 |

Exhibit 4

GOODWIN | PROCTER

Jordan M. Singer
617.570.1096
jsinger@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

RECD

November 29, 2005

**By Federal Express**

Neal L. Slifkin, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:    ***Amesbury Group, Inc. et al. v. Caldwell Manufacturing Co.,***
       **U.S. District Court, D. Mass., Case No. 05-10020**

Dear Neal:

Following up on my letter of November 22, 2005, I am enclosing documents Bates numbered AME 01949 to AME 02146.

Amesbury is currently working to provide copies of electronic data responsive to Request No. 76, and will produce CDs containing such data as soon as it is able.

Please let me know if you have any questions.

Sincerely yours,

Jordan M. Singer

Enclosures

cc:    Douglas J. Kline, Esq. (w/o enclosures)
       Safraz W. Ishmael, Esq. (w/o enclosures)

Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC. and
AMESBURY SPRINGS LTD.,

                    Plaintiffs,

        v.                                    Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

                    Defendant.

## CALDWELL'S FIRST SET OF DOCUMENT REQUESTS TO PLAINTIFFS AMESBURY GROUP, INC., and AMESBURY SPRINGS LTD.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Caldwell Manufacturing Company ("Caldwell") requests that Plaintiffs Amesbury Group, Inc. ("A.G.I.") and Amesbury Springs LTD. ("A.S.L.") (collectively "Amesbury") produce the following documents within thirty (30) days of the service of this request. The documents are requested to be produced at the offices of Harris Beach PLLC, 99 Garnsey Road, Rochester, New York 14534.

### DEFINITIONS AND INSTRUCTIONS

These requests incorporate, without limiting the scope of the Federal Rules of Civil Procedure, the following definitions and instructions:

1.      As used herein, "Accused Caldwell Products" means all Caldwell products, devices, systems, processes and services that Amesbury alleges infringe the "Patents-In-Suit" (i.e., the products, devices, systems, processes and services of which identification is requested in Caldwell's Interrogatory No. 1).

2.    As used herein, "Patents-In-Suit" shall mean U.S. Patent Nos. 5,365,638, 6,598,264 and 6,820,368.

3.    As used herein, "all" and "each" shall be construed as "all and each."

4.    As used herein, the connectives "and" and "or" shall be construed either as disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside its scope.

5.    As used herein, "Asserted Amesbury Claims" means all claims of the Patents-In-Suit that Amesbury alleges are infringed by any of the Accused Caldwell Products (i.e., the claims of which identification is requested in Caldwell's Interrogatory No. 2).

6.    As used herein, "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.    As used herein, "concerning" means relating to, referring to, describing, evidencing or constituting.

8.    As used herein, "counterclaim" means all counterclaims asserted in Caldwell's Answer to Amesbury's Complaint.

9.    As used herein, "counterparts" of a patent or patent application means any and all parents, continuations, continuations-in-part, divisions, reexaminations, reissues, inventors certificates, provisional applications, and any other applications or patents claiming the benefit of any filing date claimed by the patent or patent application, whether or not abandoned or issued. The foregoing includes United States and foreign patents and patent applications unless the specific discovery request expressly states otherwise.

10.    As used herein, "document" generally includes, without limitation, originals, masters and every non-identical copy of any written, recorded, transcribed, typed, audio, graphic, or

photographic matter, however produced, reproduced, or stored, including but not limited to electronic files, microfilm of any kind or nature, recordings (tape, disc, or other) of oral communications, and other data compilations from which information can be obtained, and all things and matters encompassed, defined, or listed in Federal Rule of Civil Procedure 34 or Federal Rule of Evidence 1001, and all advertisements, agreements, analyses, announcements, articles, audiotapes, bills, binaries, block diagrams, blueprints, books, books of account, brochures, bulletins, calendars, canceled or uncanceled checks, catalogs, charts, circuit schematics, circulars, communications, compilations, computer programming code, contracts, correspondence, data compilations, data sheets, databases, diaries, emails, engineering drawings, evaluations, file labels, files, flow diagrams, flow sheets, formal or informal drawings or diagrams, graphs, hardware description language, interoffice communications, invoices, ledgers, letters, literature, manuals, maps, measurements, mechanical and electronic sound records, memoranda, microcode, minutes, models, notebooks (including but not limited to lab notebooks), notes, order papers, orders, periodicals, pictures, placards, posters, price lists, procedures, recordings, records (including but not limited to research and development records, regulatory compliance records, production records, and records of the sales, marketing, administration, management, patent, and legal departments), reports, schedules, simulations, specifications, statements, studies, summaries, tables, tapes, telegrams, teletypes, tests, transcripts, videotapes, vouchers, and working papers, translated if necessary by Amesbury through detection devices into reasonably usable form.

    11.    As used herein, "identify" when used with respect to a person means to give to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has

been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

12.     As used herein, "identify" when used with respect to documents means to give to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the documents; and (iv) author(s), addressee(s) and recipients(s).

13.     As used herein, "identify" when used with respect to things other than documents means to give, to the extent known, a description of the thing requested, including but not limited to, any and all product names, numbers, codes and other designations (both those used internally within Amesbury and those used externally in sales, marketing and other commercial activities) and an explanation of each such name, number, code and other designation.

14.     As used herein, "identify," when used with respect to prior art, means the following: Each prior art patent should be identified by its patent number, country of origin and date of issue. Each prior art publication should be identified by its title, date of publication, and where feasible, author and publisher. Prior uses, offers for sale or sales should be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identities of the person(s) and entities which made the use or which made and received the offer, or the person(s) and entities which made the information known and to whom it was made known. Prior art under 35 U.S.C. § 102(f) should be identified by identifying the person(s) from whom and the circumstances under which, the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) should be identified by identifying the prior inventors, their dates of invention and the circumstances surrounding the making of their invention.

15.     As used herein, "identify", when used with respect to an activity or event, means to give the date, participants and nature of the activity or event.

16. As used herein, "infringe", "infringed" or "infringement" means all categories of infringement under 35 U.S.C. § 271, including direct infringement, contributory infringement and inducement of infringement.

17. As used herein, "Patented Amesbury Products" means any product, device, system, process or service (excluding the Accused Caldwell Products): (i) the manufacture, use or sale of which is covered by the Patents-In-Suit, including without limitation those products, devices, systems, processes or services that when used or made, incorporate, embody or practice the subject matter of the Asserted Amesbury Claims; (ii) that is marked with any of the patent numbers of the Patents-In-Suit or counterparts thereof; or (iii) that is licensed under any one or more of the Patents-In-Suit or counterparts thereof.

18. As used herein, "person" is defined as any natural person, or any business, legal or governmental entity or association.

19. As used herein, "Amesbury" means Amesbury Group, Inc., Amesbury Springs LTD., separately and collectively, and their officers, directors, employees, partners, subsidiaries, corporate parents, affiliates and divisions.

20. The use of the singular form of any word includes the plural and vice versa.

21. Where Amesbury does not provide an answer to any request, or part of any request, in whole or in part, or does not produce any related responsive document or thing, on the basis of an assertion of privilege:

    (a) Amesbury shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

    (b) Amesbury shall provide the following information in the objection, unless to divulge such information would cause disclosure of the allegedly privileged information:

(c)      For documents: (i) the type of document, _e.g._, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena _duces tecum_, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(d)      For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

22.      In responding to requests, identify documents known to Amesbury regardless of whether they are presently in the direct custody or control of Amesbury or no longer exist.

23.      In the event that Amesbury objects to any request or part thereof, Amesbury is requested to answer all parts of such request to which such objection does not apply.

24.      These requests are continuing so as to require supplemental responses by Amesbury in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

### REQUEST NO. 1

All documents concerning Amesbury's allegations that the Accused Caldwell Products infringe any of the three Patents-In-Suit.

### REQUEST NO. 2

All documents which support or form the basis for the allegations of infringement in paragraphs 10, 19 and 29 of Amesbury's Complaint in this action.

### REQUEST NO. 3

All documents and things concerning any Accused Caldwell Product.

**REQUEST NO. 4**

All documents and things concerning any evaluation, analysis, test or other compilation of data used to determine whether any Accused Caldwell Product falls within the scope of any claim of the three Patents-In-Suit.

**REQUEST NO. 5**

All documents concerning the decision to bring the present action against Caldwell.

**REQUEST NO. 6**

All documents concerning Amesbury's first awareness of each of the Accused Caldwell Products.

**REQUEST NO. 7**

All documents concerning Amesbury's first awareness that each of the Accused Caldwell Products infringe or allegedly infringe one or more of the Patents-In-Suit.

**REQUEST NO. 8**

All A.G.I. or A.S.L board of directors meeting minutes concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**REQUEST NO. 9**

All documents and things concerning any communication with A.G.I.'s or A.S.L.'s board of directors concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**REQUEST NO. 10**

All documents distributed in connection with any meeting of shareholders, venture capitalists, or other corporate partners of Amesbury concerning the Patents-In-Suit or any alleged patent infringement by Caldwell.

**REQUEST NO. 11**

All documents concerning the basis for the allegation in paragraphs 12, 22 and 32 of Amesbury's Complaint that Caldwell's infringement is willful.

**REQUEST NO. 12**

All documents and things concerning the conception of the alleged inventions of each of the Patents-In-Suit.

**REQUEST NO. 13**

All documents and things concerning reduction to practice of the alleged inventions of each of the Patents-In-Suit.

**REQUEST NO. 14**

All documents and things concerning diligence from conception to reduction to practice of the alleged inventions of the Patents-In-Suit.

**REQUEST NO. 15**

All document concerning each named inventor's contribution to and involvement with the claimed inventions of the Patents-In-Suit.

**REQUEST NO. 16**

All documents concerning any contribution to or involvement with the conception or reduction to practice of the subject matter of each claim of the Patents-In-Suit by anyone other than a named inventor(s) of each patent.

**REQUEST NO. 17**

All documents concerning communications with any person who worked with a named inventor on the subject matter of each claim of the Patents-In-Suit.

**REQUEST NO. 18**

All documents and things concerning research, design, development or testing of any of the alleged inventions of the Patents-In-Suit.

**REQUEST NO. 19**

Organizational charts sufficient to identify, both at the times of the alleged inventions of the Patents-In-Suit and currently, (i) all of the alleged inventors of the Patents-In-Suit, (ii) all of their direct supervisors, (iii) all employees reporting to either such inventors or such supervisors, and (iv) all employees to whom such inventors or such supervisors report either directly or indirectly.

**REQUEST NO. 20**

The curriculum vitae or resume for each of the alleged inventors of the Patents-In-Suit.

**REQUEST NO. 21**

All documents concerning any financial compensation or other consideration received by the inventors of the Patents-In-Suit in connection with this lawsuit.

**REQUEST NO. 22**

All documents and things concerning the preparation, filing or prosecution of the patent applications for the Patents-In-Suit and counterparts thereof, including but not limited to: (i) the prosecution histories of said applications; (ii) all documents and things concerning prior art considered in connection with the preparation, filing, or prosecution of said applications; (iii) all documents and things concerning any communication between any of the alleged inventors and their patent attorneys or agents concerning said applications; (iv) all documents and things concerning any information used or supplied by the alleged inventors in connection with said applications; and (v) all documents concerning any actual or proposed opposition, re-examination or reissue proceeding with respect to said applications.

**REQUEST NO. 23**

All documents concerning any paper, article or other publication concerning the subject matter of any of the Patents-In-Suit, including but not limited to any communication concerning the work reflected in any such document.

**REQUEST NO. 24**

All documents and things concerning any seminar, speech, presentation, lecture or talk concerning the subject matter of the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 25**

All documents concerning searches directed to subject matter claimed at any time in the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 26**

All documents and things concerning prior art located as a result of any search directed to the subject matter claimed at any time in the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 27**

All documents and things concerning any actual or potential prior art with respect to the claimed subject matter of any of the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 28**

All documents and things concerning any search, investigation, analysis, review, opinion or study concerning the scope, infringement, novelty, patentability, validity or enforceability of any claim of the Patents-In-Suit and/or counterparts thereof, including but not limited to, all documents comprising prior art located, noted, referred to, or discussed in any such search, investigation, analysis, review, opinion or study.

**REQUEST NO. 29**

All documents and things concerning the scope, novelty, patentability, validity or enforceability of any claim of the Patents-In-Suit and counterparts thereof, including but not limited to, documents produced or provided to Amesbury by any person and asserted or suggested by such person to be relevant to the scope, novelty, patentability, validity or enforceability of the claimed inventions of the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 30**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to January 21, 1993, concerning any devices or methods that can be used in a window sash frame to retain a coiled ribbon spring in position within a window sash frame during uncoiling of the ribbon spring.

**REQUEST NO. 31**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to March 16, 2001, concerning any devices or methods that can be used in a window sash block and tackle balance to increase the range of travel of said window within a window frame.

**REQUEST NO. 32**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to May 23, 2003, concerning any devices or methods that can be used in a pivotable window assembly to (1) facilitate installation, assembly or repair of a balance system with a window jam; or (2) provides for greater control of the vertical positioning of the window sash.

**REQUEST NO. 33**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to January 21, 1993, concerning any devices or methods that retain a coiled spring in position within a window sash frame during uncoiling of said spring.

**REQUEST NO. 34**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to March 16, 2001, concerning any devices or methods that increase the range of travel of a window sash balanced in a window frame with a block and tackle window balance.

**REQUEST NO. 35**

All documents concerning each use, offer for sale and sale in the United States and each patent and publication, dated prior to or occurring prior to May 23, 2003, concerning any devices or methods that use a balance shoe shaped to mate with a rivet attached to a window sash and adapted to be received by a U-shaped channel in the window jam of a pivotable window.

**REQUEST NO. 36**

All documents and things concerning the preparation or prosecution of United States Patent Application Nos. 08/007,628, 09/180,868 and 10/446,279, including but not limited to prior art searches and the documents and things referred to therein.

**REQUEST NO. 37**

All documents and things concerning the structure, function, capabilities, operation, design, or development of any device or method that falls within the scope of the alleged inventions

described or claimed in United States Patent Application Nos. 08/007,628, 09/810,868 and/or 10/446,279 prior to the date(s) on which said applications were granted.

**REQUEST NO. 38**

All documents served or filed in any court, tribunal, or administrative proceeding, whether foreign or domestic, concerning the Patents-In-Suit and counterparts thereof, including but not limited to, any briefs, transcripts, motions, orders, discovery responses, expert reports, affidavits, or declarations.

**REQUEST NO. 39**

All documents and things concerning any litigation, arbitration, or mediation, whether foreign or domestic, concerning the Patented Amesbury Products, including without limitation, documents produced in response to discovery in such litigation, arbitration, or mediation.

**REQUEST NO. 40**

All documents and things concerning any procedure for determining whether anyone has infringed, or might infringe, the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 41**

All documents and things concerning any comparison of the design, structure, function, or operation of any product, device, process, or system against the specifications or any claims of the Patents-In-Suit and/or counterparts thereof

**REQUEST NO. 42**

All documents concerning any allegation of infringement of the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 43**

All documents and things concerning infringement of any claim of the Patents-In-Suit and/or counterparts thereof, including but not limited to any search, investigation, analysis, review, opinion, or study concerning infringement of any such claim.

**REQUEST NO. 44**

All documents concerning any assignment of, or offer to assign, any right, title, or interest in the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 45**

All documents concerning any license, or offer to license, any right or interest in the Patents-In-Suit and/or counterparts thereof.

**REQUEST NO. 46**

All documents and things concerning Amesbury's patent licensing policies.

**REQUEST NO. 47**

All documents concerning any Amesbury policy, strategy, plan, or practice, whether formal or informal, regarding patents, including but not limited to filing patent applications, acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, or marking products with patent numbers.

**REQUEST NO. 48**

All documents concerning agreements (other than assignments or licenses) concerning the Patents-In-Suit and/or counterparts thereof, including but not limited to, development agreements, funding agreements, covenants not to sue, agreements not to assert, and agreements concerning immunity from suit.

**REQUEST NO. 49**

All documents concerning the construction or interpretation of each of the terms in each of the Asserted Amesbury Claims, including but not limited to, documents concerning the usage of such terms by Amesbury or by the alleged inventors of the Patents-In-Suit.

**REQUEST NO. 50**

All documents concerning the best mode of practicing the claimed invention of each of the Asserted Amesbury Claims at the time of filing the application on which the claim is based.

**REQUEST NO. 51**

All documents concerning any commercial success of the claimed invention of any Asserted Amesbury Claim.

**REQUEST NO. 52**

All documents concerning any long felt but unmet need for the claimed invention of any Asserted Amesbury Claim.

**REQUEST NO. 53**

All documents concerning any unexpected results of the claimed invention of any Asserted Amesbury Claim.

**REQUEST NO. 54**

All documents concerning any failure of others to develop the claimed invention of any Asserted Amesbury Claim.

**REQUEST NO. 55**

All documents not produced in response to the previous 4 Requests concerning any objective indicia of non-obviousness of the claimed invention of any Asserted Amesbury Claim.

**REQUEST NO. 56**

Documents sufficient to identify every Patented Amesbury Product.

**REQUEST NO. 57**

For each Patented Amesbury Product, a specimen of such product.

**REQUEST NO. 58**

For each Patented Amesbury Product, a specimen of all prototypes and models.

**REQUEST NO. 59**

All documents and things concerning research, design, development or testing of each of the Patented Amesbury Products.

**REQUEST NO. 60**

All documents concerning the structure, function, operation or capabilities of each of the Patented Amesbury Products.

**REQUEST NO. 61**

All documents concerning the first public disclosure, first public use, first offer for sale, first sale and first manufacture of each of the Patented Amesbury Products.

**REQUEST NO. 62**

All documents and things concerning the first communication of the subject matter of each claim of the Patents-In-Suit to any person.

**REQUEST NO. 63**

All documents concerning each public disclosure, public use, offer for sale, sale and manufacture of each of the Patented Amesbury Products before the relevant filing date for each patent application which resulted in the issuance of the Patents-In-Suit.

**REQUEST NO. 64**

All documents and things concerning each communication of the subject matter of each claim of the Patents-In-Suit to any person prior to the relevant filing date of the patent applications which resulted in the issuance of the Patents-In-Suit.

**REQUEST NO. 65**

Organizational charts sufficient to identify (i) the names and titles of all supervisory or managerial employees involved in the research, development, testing, or marketing of any Patented Amesbury Product; and (ii) all supervisors, whether direct or indirect, of any such employee.

**REQUEST NO. 66**

All documents concerning sales training materials for any Patented Amesbury Product.

**REQUEST NO. 67**

All documents concerning any selling points or techniques proposed or used for any Patented Amesbury Product.

**REQUEST NO. 68**

All documents concerning publications related to, or marketing materials for, any Patented Amesbury Product.

**REQUEST NO. 69**

All licenses granted by another to Amesbury of any right, title, privilege, or interest concerning any patent, including but not limited to exhibits, amendments, attachments, schedules, or appendices thereto.

**REQUEST NO. 70**

All documents concerning marking of any Patented Amesbury Product with the number of one or more of the Patents-In-Suit.

**REQUEST NO. 71**

For each Patented Amesbury Product, documents sufficient to show all markings with the number of the Patents-In-Suit.

**REQUEST NO. 72**

All documents concerning any damages Amesbury alleges it sustained due to patent infringement by Caldwell, as stated in the Prayer for Relief of Amesbury's Complaint.

**REQUEST NO. 73**

All documents concerning an established royalty for the Patents-In-Suit or counterparts thereof.

**REQUEST NO. 74**

For each Patented Amesbury Product, all documents concerning the number of each such product sold.

**REQUEST NO. 75**

For each Patented Amesbury Product, all documents concerning the number of each such product made.

**REQUEST NO. 76**

For each Patented Amesbury Product, electronic data sufficient to completely reconstruct all purchase orders and invoices concerning any such product, including the final amounts of such purchase orders and invoices, together with documents sufficient explain in detail the structure and format of such data.

**REQUEST NO. 77**

For each Patented Amesbury Product, all summaries and period reports concerning purchase orders and invoices concerning any such product.

**REQUEST NO. 78**

For each Patented Amesbury Product, all documents concerning the gross revenues or net revenues on sales on each such product.

**REQUEST NO. 79**

For each Patented Amesbury Product, all documents concerning the gross profit, net income, net profit/net income before taxes on each such product, or the marginal profit on each such product.

**REQUEST NO. 80**

For each Patented Amesbury Product, all documents concerning the cost of goods, cost of sales, cost of development, fixed costs, or variable costs on each such product.

**REQUEST NO. 81**

For each Patented Amesbury Product, all documents concerning the cost of developing the capacity to make, sell, or import each such product.

**REQUEST NO. 82**

For each Patented Amesbury Product, documents sufficient to show Amesbury's average selling price in the United States for such Product, including but not limited to all documents concerning how such average selling price is calculated.

**REQUEST NO. 83**

For each Patented Amesbury Product, all documents concerning pricing of such product.

**REQUEST NO. 84**

For each Patented Amesbury Product, all documents concerning any pricing policy applicable to such product.

**REQUEST NO. 85**

For each Patented Amesbury Product or Accused Caldwell Product, all documents concerning market share.

**REQUEST NO. 86**

For any product (other than a Patented Amesbury Product or Accused Caldwell Product) that Amesbury believes incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-In-Suit, all documents concerning market share.

**REQUEST NO. 87**

All documents and things concerning any product (other than a Amesbury Patented Product or Accused Caldwell Product) that is perceived by Amesbury or that has been identified to Amesbury, as competitive with or substitutable for such Amesbury Patented Product or Accused Caldwell Product.

**REQUEST NO. 88**

All documents and things concerning any product (other than a Amesbury Patented Product or Accused Caldwell Product) that Amesbury believes incorporates, performs, or embodies the subject matter of any of the alleged inventions described or claimed in the Patents-In-Suit.

**REQUEST NO. 89**

All documents concerning the actual, projected, or desired return on investment for the manufacture or sale of any Patented Amesbury Product.

**REQUEST NO. 90**

All documents concerning Amesbury's projections or expectations at any time regarding future sales or actual or anticipated profitability of any Patented Amesbury Product in the United States.

**REQUEST NO. 91**

All documents that reflect the rate at which Amesbury pays interest on incurred debts.

**REQUEST NO. 92**

Documents sufficient to identify the first sale and the last sale in the United States of each Patented Amesbury Product.

**REQUEST NO. 93**

All documents concerning any promotional practices concerning any Patented Amesbury Product, including but not limited to documents concerning the nature, timing, extent, cost, or business rationale of any such promotional practice.

**REQUEST NO. 94**

All documents concerning any marketing strategy, sales strategy, marketing plan, strategic plan, business plan, or promotional effort with respect to any Patented Amesbury Product.

**REQUEST NO. 95**

All marketing forecasts, sales forecasts, or marketing studies concerning any Patented Amesbury Product.

**REQUEST NO. 96**

All documents and things that Amesbury may introduce at trial or at any claim construction hearing in this case.

**REQUEST NO. 97**

All documents referenced or relied upon by Amesbury in forming Amesbury's allegation that this any alleged infringement by Caldwell is willful as alleged in Amesbury's Complaint, or concerning such allegation or facts which tend to support or undermine such allegation.

**REQUEST NO. 98**

All annual reports of Amesbury from January 1999 to the present.

**REQUEST NO. 99**

Documents, such as accounting and controller procedure manuals, sufficient to explain the design, operation, and use of Amesbury's sales, accounting and/or financial systems.

**REQUEST NO. 100**

Documents sufficient to explain the design, operation, and use of Amesbury's document and information management systems.

**REQUEST NO. 101**

For each Patented Amesbury Product, all documents concerning agreements between Amesbury and all reseller(s), distributor(s) and customer(s).

**REQUEST NO. 102**

All contracts between A.G.I. and A.S.L.

**REQUEST NO. 103**

All correspondence between A.G.I. and A.S.L. concerning the Patents-In-Suit.

**REQUEST NO. 104**

All documents and things concerning any Amesbury document retention policy or program.

**REQUEST NO. 105**

All documents and things considered, reviewed or prepared in connection with this case by any persons whom Amesbury may or will call as an expert witness at trial.

**REQUEST NO. 106**

To the extent not produced in response to any of the foregoing requests, all documents identified in Amesbury's Fed. R. Civ. P. 26(a)(i) Initial Disclosures.

**REQUEST NO. 107**

To the extent not produced in response to any of the foregoing requests, all documents identified by or otherwise relied upon in response to Defendant Caldwell's First Set of Interrogatories.

Dated: Pittsford, New York
     May _31_ , 2005

Respectfully submitted,

HARRIS BEACH PLLC

By: _David J. Edwards_
    Paul J. Yesawich, III
    Neal L. Slifkin
    David J. Edwards
    Laura Smalley
    99 Garnsey Road
    Pittsford, NY 14534
    (585) 419-8800 (Telephone)
    (585) 419-8801 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on May **3/** 2005, I served a true and correct copy of the foregoing

document on Amesbury's counsel of record as follows:


Douglas J. Kline
Safraz W. Ishmael
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000


*Attorneys for Plaintiffs*
*AMESBURY GROUP, INC.*
*AMESBURY SPRINGS LTD.*

Via Federal Express Overnight Delivery

_____
DAVID J. EDWARDS


P:\CALDWELL\Caldwell doc request.doc
5/31/2005 4:06:55 PM

Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMESBURY GROUP, INC., and AMESBURY SPRINGS LTD,<br><br>          Plaintiffs,<br><br>vs.<br><br>THE CALDWELL MANUFACTURING COMPANY,<br>          Defendant. | Civil Action No. 05-10020-DPW<br><br>**DEFENDANT'S SECOND SET OF INTERROGATORIES** |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Caldwell Manufacturing Company ("Caldwell") requests that plaintiffs Amesbury Group, Inc. and Amesbury Springs, Ltd. answer the following interrogatories separately and fully, in writing, under oath and within thirty (30) days of the service of this request.

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Caldwell's First Set of Interrogatories to Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively "Amesbury") are hereby incorporated as if fully set forth herein.

## INTERROGATORY NO. 20

Separately for each Patented Amesbury Product, state the date of the earliest public use, sale, and offer for sale of such product, and identify the persons most knowledgeable and all facts and documents concerning such first public use, sale, and offer for sale.

## INTERROGATORY NO. 21

Identify the date of the first sale, offer for sale and/or delivery of a prototype of any product manufactured or designed by or on behalf of Amesbury that was, or was intended to be, sold to Anderson Corporation or any affiliated company for incorporation in, or for use with, any of its 200 Series windows, including but not limited to, its 200 Series Tilt-Wash Double Hung Window.

Dated:  August 31, 2005

**HARRIS BEACH PLLC**

By:

Paul J. Yesawich, III
Neal L. Slifkin
Laura W. Smalley
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

-and-

BROWN & MICHAELS, P.C.
Christopher A. Michaels
Eugene S. Stephens
400 M&T Bank Building
118 North Tioga Street
Ithaca, New York 14850
Telephone: 607-256-2000

-and-

David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: 617-367-1970

Attorneys for Defendant

T:\User\LWS\CALDWELL\2nd interr.doc
8/31/2005 11:47:54 AM

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:

        Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP. That on the 31st day of August, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

> Safraz W. Ishmael, Esq.
> Douglas J. Kline, Esq.
> GOODWIN PROCTER LLP
> Exchange Place
> Boston, MA  02109-2881

by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for September 1,  a.m. delivery.

_____
Karen J. Jenness

Sworn to before me this
31st day of August, 2005

_____
Notary Public

HEATHER MCCURTY
Notary Public, State Of New York
Qualified In Monroe County
Commission Expires March 9, 20 06

Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                                        Plaintiffs,

           vs.

THE CALDWELL MANUFACTURING
COMPANY,

                                        Defendant.

---

**DEFENDANT'S SUPPLEMENTED
ANSWERS TO PLAINTIFFS' FIRST
SET OF INTERROGATORIES**


Civil Action No. 05-10020-DPW

Defendant the Caldwell Manufacturing Company ("Caldwell"), by its attorneys Harris Beach

PLLC, submits the following supplemental answers to plaintiffs' First Set of Interrogatories:

**INTERROGATORY NO. 4**:

For each Window Product identified in response to Interrogatory No. 1, separately state the

full factual and legal basis for Caldwell's assertion that the Window Product does not infringe any

claim of the patents-in-suit, identifying for each claim each element that Caldwell asserts is or is not

present in the Window Product, either literally or under the doctrine of equivalents, and any claim

construction relevant to Caldwell's assertion.

          **ANSWER**:     Amesbury objects to this interrogatory in that is premature in that the

court has not construed the claims at issue.   Additionally, Caldwell objects to this interrogatory for

the reasons stated in response to Interrogatory No. 1 in that the definition of "Window Product" is

vague and overly broad.     Caldwell's preliminary claim charts are attached as Exhibit "A".

Caldwell reserves the right to supplement or amend these responses based on further discovery,

investigation or the Court's claim construction.

**INTERROGATORY NO. 6**:

State the full factual and legal basis for Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States as set forth in, *inter alia*, 35 U.S.C. §§102, 103 and 112.

    **ANSWER**:    Caldwell objects to this interrogatory in that it calls for legal conclusions.  Furthermore, Caldwell requires discovery from Amesbury to answer this interrogatory fully.  Subject to and without waiving these objections, Caldwell states as follows:

    (1)    U.S. Patent No. 6,598,264: The file history indicates that the only potentially novel element of this patent is the location of the bottom guide roller within the bottom guide.  This element is disclosed, or is obvious in light of, the following prior art references, either singly or in combination:  (1) Prosser, U.S. Patent No. 3,091,797; (2) Thompson, U.S. Patent No. 6,840,011, (3) Wood, U.S. Patent No. 3,114,178, (4) Biro, U.S. Patent No. 3,449,862, (5) DeNormand, U.S. Patent No. 6,041,746, (6) Berndt, U.S. Patent No. 4,704,821, (7) Fitzgibbon, U.S. Patent No. 4,089,085, (8) a window balance product manufactured by or for Anderson Corporation that, upon information and belief, incorporated a part sold by Amesbury to Anderson as early as 1999, (9) Japanese Utility Model No. JITSUKAI S62-19485, (10) United Kingdom Patent No. GB1219927, (11) United Kingdom Patent No. GB1244324, and (12) additional prior art cited during the prosecution of the patent.  Additional prior art references may be found through additional prior art searches or in discovery, and Caldwell reserves the right to supplement this response.   Also, the patent is invalid to the extent that Amesbury seeks to construe the claims of this patent to cover rollers that are not attached directly to the bottom guide because, during prosecution of the patent, Amesbury distinguished certain prior art references, including *Biro*, supra, which disclosed a roller indirectly mounted to the bottom guide.

(2)     U.S. Patent No. 6,820,368: The file history indicates that the only potentially novel element of this patent is enlarged end of the balance shoe. The patent also discloses a "pocket" element. These elements are disclosed, or are obvious in light of, the following prior art references, either singly or in combination: (1) DeNormand, U.S. Pat. No. 6,041,746, (2) Berndt, U.S. Patent No. 4,704,821, (3) Schmidt, U.S. Patent No. 5,301,467, (4) additional prior art cited during the prosecution of the patent, (5) United Kingdom Patent Application No. 2280697A, (6) United Kingdom Patent Application No. 2236786A, (7) United Kingdom Patent Application No. 2292168A, (8) United Kingdom Patent No. 740223, (9) Japanese Utility Model JITSUKAI S56-171982, and (10) Japanese Utility Model JITSUKAI S63-3785. Additional references may be discovered, and Caldwell reserves the right to supplement this response. In addition, this patent is invalid to the extent that Amesbury argues that Caldwell's 97ez product infringes this patent because this argument requires a construction of the patent that would require two claim elements to correspond to a single part of Caldwell's product. Caldwell's products do not have both a "pocket ... adapted to mate with a rivet" **and** a "connecting device" as claimed, even assuming that the Caldwell device has any of those elements as those terms are defined by the patent claims and specification. To argue otherwise would render the patent ambiguous and invalid.

(3)     U.S. Patent No. 5,365,638: The file history indicates that the only potentially novel element of this patent is the raised spine that inhibits rotation of the mounting means. This element is disclosed, or is obvious in light of, the following prior art references, either singly or in combination: (1) Makarowksi, U.S. Patent No. 5,069,001, (2) Patterson, U.S Patent No. 2,088,866, (3) Osten, U.S. Patent No. 2,774,119, (4) Arlauskas, U.S. Patent No. 3,069,152, (5) Jones, U.S. Patent No. 3,105,576, (6) Anderson, U.S. Patent No. 3,711,995, (7) Anderson, U.S. Patent No. 3,795,076, (8) Anderson, 4,028,849, (9) Japanese Utility Model No. JIKKOHEI8-9334,

HARRIS BEACH ⸬
ATTORNEYS AT LAW

(9) Japanese Utility Model No. JIKKAIHEI4-119083, (10) Japanese Utility Model No. JIKKAIHEI41-112279, (11) additional prior art cited during the prosecution of the patent, (12) United Kingdom Patent No. 1287756, and (13) United Kingdom Patent No. 329996. Additional references may be discovered, and Caldwell reserves the right to supplement this response. Furthermore, to the extent that Amesbury claims a spine that does not inhibit rotation is covered by the claims, the patent is anticipated and/or obvious in light of Sterner, U.S. Patent No. 5,157,808, and is invalid for lack of enablement in that the specification only discloses a spine that inhibits rotational movement.

**INTERROGATORY NO. 10:**

State the full factual and legal basis for Caldwell's denial that its infringement of the patents-in-suit is willful, including, but not by way of limitation, identifying any legal advice or legal opinion relied upon by Caldwell in deciding to use, make, offer for sale, sell in, or import into, the United States, or in deciding to continue to use, make, offer for sale, sell in, or import into, the United States, any of the Window Products identified in response to Interrogatory No. 1.

**ANSWER:**    Caldwell objects to this interrogatory in that it is overly broad, calls for legal conclusions, and seeks material covered by the attorney-client privilege. Caldwell will not rely upon the opinion of counsel at trial. Caldwell declines to produce opinions of counsel regarding the validity and/or infringement of the patents-in-suit. Subject to and without waiving these objections, Caldwell states that it has a good faith basis for arguing that the patents-at-issue are invalid and/or not infringed, as outlined in its responses to Interrogatories Nos. 5 and 6 above, and as is evident from a comparison of Caldwell's products with the claims of the patents-in-suit. In addition, after Amesbury accused Caldwell of infringement, Caldwell withdrew its 97ez and 86xt products from the market, although Caldwell denies that those products infringed any of the patents-in-suit. Testimony

of Caldwell employees, including those disclosed in Caldwell's Rule 26 disclosures and Thomas E.

Batten, also are evidence of non-willfulness.


Dated: August *31*, 2005                              HARRIS BEACH PLLC


                                            By: _____
                                                 Paul J. Yesawich, III
                                                 Neal L. Slifkin
                                                 David J. Edwards
                                                 Laura W. Smalley
                                                 *Attorneys for Defendant*
                                                 99 Garnsey Road
                                                 Pittsford, New York 14534
                                                 Telephone: 585-419-8800

                                                        -and-

                                                 BROWN & MICHAELS, P.C.
                                                 Christopher A. Michaels
                                                 Eugene S. Stephens
                                                 400 M&T Bank Building
                                                 118 North Tioga Street
                                                 Ithaca, New York 14850
                                                 Telephone: 607-256-2000

                                                 *Attorneys for Defendant*


TO:     GOODWIN PROCTER LLP
        Douglas J. Kline, Esq.
        Safraz W. Ishmael
        *Attorneys for Plaintiffs*
        Exchange Place
        Boston, MA 02109-2881
        Telephone: 617-570-1000

P:\CALDWELL\SuppIntResponses..doc
8/30/2005 2:57:26 PM

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:

        Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP. That on the 31st day of August, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

        Safraz W. Ishmael, Esq.
        Douglas J. Kline, Esq.
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA  02109-2881

by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for September 1, a.m. delivery.

                                _Karen J. Jenness_
                                  Karen J. Jenness

Sworn to before me this
31st day of August 2005

_Heather McCurty_
    Notary Public

HEATHER MCCURTY
Notary Public, State Of New York
Qualified In Monroe County
Commission Expires March 9, 20 06

# EXHIBIT A

| Patent Claims 6,820,368 | Caldwell Series 97EZ | Caldwell Series 97i(H) |
|---|---|---|
| 1. A window balance system comprising: | Yes | Yes |
| a U-shaped channel comprising a plurality of openings; | Yes | Yes |
| a spring connected to a system of pulleys located within the U-shaped channel; | Yes | Yes |
| a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes | Yes |
| a balance shoe, wherein the balance shoe comprises: | Yes | Yes |
| a frame comprising an enlarged first end and a second end, wherein at least a portion of the second end of the frame is disposed within the U-shaped channel; | Yes | Yes |
| a locking member proximal to the enlarged first end; | Yes | Yes |
| a cam in communication with the locking member; and | Yes | Yes |
| a connecting device comprising one or more resilient tabs for attaching the balance shoe within the U-shaped channel | No -- the Caldwell balance does not have resilient tabs | No -- the Caldwell balance does not have resilient tabs |

| | | |
|---|---|---|
| of the window balance, wherein the one or more resilient tabs extend at least partially through a corresponding number of the plurality of openings in the U-shaped channel. | | |
| 2. A window balance system comprising: | Yes | Yes |
| a U-shaped channel comprising a plurality of openings; | Yes | Yes |
| a spring connected to a system of pulleys located within the U-shaped channel; | Yes | Yes |
| a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and | Yes | Yes |
| a balance shoe, wherein the balance shoe comprises: | Yes | Yes |
| a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet; | No. The Caldwell balance does not have a pocket adapted to mate with a rivet. | Caldwell cannot state whether its 97i(h) product has this claim element until the court construes the term "pocket." |
| | Yes | Yes |

| | | |
|---|---|---|
| a locking member proximal to the enlarged first end;<br><br>a cam in communication with the locking member, and<br><br>a connecting device for attaching the balance shoe within the U-shaped channel of the window balance. | Yes<br><br>No -- the Caldwell balance does not have a connecting device as that term is/will be defined by the claims and specification.  To the extent Amesbury claims that this product infringes, Amesbury's construction violates the "all elements" rule in that Amesbury is claiming that two elements of the claim correspond to a single part of Caldwell's product. | Yes<br><br>No -- the Caldwell balance does not have a connecting device as that term is/will be defined by the claims and specification.    To the extent Amesbury claims that this product infringes, Amesbury's construction violates the "all elements" rule in that Amesbury is claiming that two elements of the claim correspond to a single part of Caldwell's product. |
| 3.   The window balance system of claim 2 wherein the connecting device comprises a rivet. | Noh | No |
| 4.   The window balance system of claim 2 wherein the connecting device comprises a screw. | No | No |
| 5.   The window balance system of claim 2 wherein the connecting device comprises a resilient tab. | No | No |
| 6.   The window balance system of claim 2 wherein the cam is at least partially housed within the enlarged first end of the frame; | No | No |
| | No | No |

| | | |
|---|---|---|
| wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | | |
| 7. The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member. | No | No |
| 8. The window balance system of claim 7 wherein the cam is at least partially housed within the enlarged first end of the frame,<br><br>wherein rotating the cam forces the opposing ends of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | No | No |
| 9. The window balance system of claim 2 wherein the locking member comprises a plate,<br><br>wherein the plate is parallel to a back surface of the enlarged first end of the frame. | No | No |

| | | |
|---|---|---|
| 10. The window balance system of claim 9 wherein the cam is at least partially housed within the enlarged first end of the frame | No | No |
| wherein rotating the cam forces the plate of the locking member to engage a jamb track when the balance shoe is installed in a window jamb. | No | No |
| 11. The window balance system of claim 2 wherein the cam comprises at least one camming surface and a keyhole opening sized to receive a pivot bar. | No | No |

P:\CALDWELL\Claim Chart 6820368.doc
8/30/2005 2:59:18 PM

| Patent Claims 5,365,638 | Caldwell Quicktilt |
|---|---|
| 1.    A mounting assembly comprising | Yes |
| a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | Yes |
| a sash frame support means slidable in said channel means, | Yes |
| a coiled ribbon spring having a first end engaged with said sash frame support means, | Yes |
| and a means for mounting said coiled ribbon spring, | Yes |
| the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, | Yes |
| said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, | Yes |
| said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotational motion of said mounting means is inhibited. | **No.   The spine does not inhibit rotational motion. Rotational motion is inhibited through an entirely different mechanism.** |
| 2.    The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means. | No |

| | |
|---|---|
| 3.    The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein,<br><br>a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means,<br><br>a surface of said body portion being concavely curved,<br><br>said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion. | No |
| 4.    The mounting assembly of claim 2 in which the mounting means has at least one inter-engagement means by which a plurality of such mounting means may be stacked in inter-engagement. | No |
| 5.    The mounting assembly of claim 4 in which the inter-engagement means comprises a tooth-like projection cooperable on said first mounting means with a corresponding complementary detente in a second mounting means. | No |
| 6.    The mounting assembly of claim 4 in which the inter-engagement means on said first mounting means is in an interference fit with an inter-engagement means on said second mounting means. | No |
| 7.    The mounting assembly of claim 4 in which the inter-engagement means is formed so as to provide a snap fit. | No |

| | |
|---|---|
| 8.    A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, | Yes |
| a sash frame support means slidable in said channel means, | Yes |
| a coiled ribbon spring having an outer end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, | Yes |
| the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, | Yes |
| said mounting means being secured in said channel means and | Yes |
| the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, whereby rotational movement of the mounting means is inhibited. | **No.    The projection means does not inhibit rotational motion.  Rotational motion is inhibited through an entirely different mechanism.** |

| | Patent Claims 6,598,264 | | Caldwell 86xt Product |
|---|---|---|---|
| 1. | A block and tackle window balance device comprising: | Yes | |
| | a channel comprising a first end and a second end; | Yes | |
| | a top guide connected to the first end of the channel; | Yes | |
| | a bottom guide connected to the second end of the channel; | Yes | |
| | a bottom guide roller rotatably mounted in the bottom guide; | **No - Bottom roller is attached to channel separately from bottom guide** | |
| | a fixed pulley block unit connected to the channel; | Yes | |
| | a translatable pulley block unit moveable within the channel; | Yes | |
| | a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes | |
| | a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes | |
| 2. | The device of claim 1 wherein the bottom guide roller is located external to the channel. | No | |
| 3. | The device according to claim 2 wherein the top angled portion is sized to receive a member of a window sash. | No | |
| 4. | The device according to claim 1 wherein a portion of the bottom guide is external to the channel. | No | |

1

| | | |
|---|---|---|
| 5. | The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of a window sash. | No |
| 6. | The device of claim 1 wherein the fixed pulley block unit comprises a frame, an axle, and at least one pulley rotatable around the axle. | No |
| 7. | The device according to claim 6 wherein the axle is located within the frame. | No |
| 8. | The device according to claim 1 wherein the fixed pulley block unit is connected to the channel with a support member. | No |
| 9. | The device according to claim 1 wherein the translatable pulley block unit comprises a frame, an axle within the frame, and at least one pulley rotatable around the axle. | No |
| 10. | The device according to claim 1 wherein the top guide includes a top angled portion and a bottom portion, the bottom portion being connected to the first end of the channel. | No |
| 11. | The device according to claim 1 wherein the fixed pulley block unit is integral with the bottom guide. | No |
| 12. | A window assembly comprising: | |
| | a window frame with two jambs with jamb pockets; | |
| | at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and | |

2

| | |
|---|---|
| at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising: | |
| channel comprising a first end and a second end; | Yes |
| a top guide connected to the first end of the channel; | Yes |
| a bottom guide connected to the second end of the channel; | Yes |
| a bottom guide roller rotatably mounted in the bottom guide; | **No - Bottom roller is attached to channel separately from bottom guide** |
| a fixed pulley block unit connected to the channel; | Yes |
| a translatable pulley block unit moveable within the channel; | Yes |
| a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and | Yes |
| a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. | Yes |
| 13. A window balance device comprising: | Yes |
| a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and | |
| a bottom guide roller rotatably mounted in the bottom guide. | **No - Bottom roller is attached to channel separately from bottom guide** |

3

| | | |
|---|---|---|
| **14.** | The device of claim 13 wherein the bottom guide roller is located external to the channel when the bottom guide is attached thereto. | No |
| **15.** | The device according to claim 13 wherein at least a portion of the bottom guide is external to the channel when attached thereto. | No |
| **16.** | The device according to claim 13 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | No |
| **17.** | The device of claim 13 wherein the bottom guide further comprises a bottom guide axle for mounting the roller. | No |
| **18.** | A window balance device comprising: | Yes |
| | a channel comprising a first end and a second end; | Yes |
| | a top guide connected to the first end of the channel; | Yes |
| | a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and | Yes |
| | a bottom guide roller rotatably mounted in the bottom guide. | **No - Bottom roller is attached to channel separately from bottom guide** |
| **19.** | The device of claim 18 wherein the bottom guide roller is located external to the channel. | No |
| **20.** | The device according to claim 18 wherein at least a portion of the bottom guide is external to the channel. | No |
| **21.** | The device according to claim 18 wherein the bottom guide forms a channel to receive a portion of a window sash when installed. | No |

4

| | |
|---|---|
| **22.** | The device of claim 18 wherein the bottom guide further comprises a bottom guide axle for mounting the roller. | No |
| | |
| **23.** | A window balance device comprising: | |
| | a bottom guide connected to an end of a window balance channel, the bottom guide slidable in a jamb pocket when installed in a window frame, the bottom guide including: | Yes |
| | a bottom guide axle mounted within the bottom guide; the bottom guide axle located outside the window balance channel; and | **No - Bottom roller is within channel** |
| | a bottom guide roller rotatably mounted on the bottom guide axle. | No |

P:\CALDWELL\Claim Chart 6,598,264.doc
8/30/2005 2:58:02 PM

5

Exhibit 8

GOODWIN | PROCTER

Safraz W. Ishmael, Esq.                     Goodwin Procter LLP
617.570.1729                                 Counsellors at Law
sishmael@goodwinprocter.com          Exchange Place
                                             Boston, MA 02109
                                             T: 617.570.1000
                                             F: 617.523.1231

October 17, 2005

REC'D HBW   OCT 1 8 2005

**Via Federal Express**

Laura W. Smalley, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:     **Amesbury Group, Inc.**, *et al.* **v. The Caldwell Manufacturing Company**
        **C.A. No. 05-10020-DPW, District of Massachusetts**

Dear Laura:

        Further to Amesbury's document production, enclosed are documents bearing Bates
numbers AME 01931 through AME 1948.  Additionally, samples of products sold to Anderson
Corporation that are responsive to Caldwell's document requests are available for inspection at
our offices at Exchange Place, 53 State Street, Boston, MA at a time and date mutually agreeable
to the parties.  Amesbury reserves its right to further supplement its document production should
additional responsive documents be uncovered.

        Also enclosed is a copy of "Amesbury's Objections and Responses to Caldwell's First
Set of Interrogatories (Nos. 1 – 19)" and "Amesbury's Objections and Responses to Caldwell's
Second Set of Interrogatories (Nos. 20 – 21)" with signed verifications by Richard Koopmann on
behalf of Amesbury Group, Inc. and Amesbury Springs Ltd, attached thereto.

Very truly yours,

Safraz W. Ishmael

Enclosures