# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

  v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OPPOSITION TO CALDWELL'S
## MOTION FOR LEAVE TO AMEND ITS ANSWER

The Court should deny The Caldwell Manufacturing Company's futile motion to add an inequitable conduct counterclaim to this case because Caldwell's attempt to add, after the close of fact discovery, this highly fact-intensive counterclaim would not survive a motion to dismiss or summary judgment.[1]  Caldwell never disclosed its new inequitable conduct theory to Amesbury during fact discovery and has failed properly to plead the counterclaim in its proposed Amended Answer.  Caldwell's failure properly to plead inequitable conduct is understandable, given that Caldwell failed during discovery to uncover facts sufficient to support its new theory.

Despite that fact discovery closed in this patent infringement case on November 30, 2005, Caldwell seeks leave to amend its Answer to add a brand new counterclaim based on a theory that the inventor of one of the asserted patents, Gary Newman, and his patent attorneys,

---

[1] Amesbury recognizes that Caldwell's motion to amend and this opposition were not contemplated by the Court's scheduling order of October 27, 2005, setting a schedule for discovery motions. Nevertheless, Amesbury files this opposition one (1) week early, on the day designated as the deadline for oppositions to discovery motions, in the interest of allowing the Court sufficient time to review the opposition should the Court wish to address this motion at the hearing scheduled for December 22, 2005.

committed inequitable conduct by failing to disclose prior art to the U.S. Patent and Trademark Office ("PTO"). Throughout months of fact discovery, however, Caldwell developed absolutely no evidence, because there is none, to show that Mr. Newman or any of his patent prosecuting attorneys (whom Caldwell never even deposed) either (1) intended to deceive the PTO or (2) knew that any undisclosed art was material to patentability. Not surprisingly, because of the utter lack of any evidence to support these two essential elements of inequitable conduct, Caldwell's proposed Amended Answer fails properly to plead its new counterclaim. The Court therefore should deny Caldwell's motion as futile.

The Court also should deny Caldwell's motion because Amesbury would be unfairly prejudiced if the motion were granted. Amesbury first became aware of Caldwell's intention to add an inequitable conduct counterclaim when Caldwell faxed Amesbury a letter to that effect at the close of business on the day before fact discovery closed. Thus, while Caldwell had an abundance of time and opportunity to explore its inequitable conduct theory in discovery, Amesbury had none. Caldwell never articulated its theory in any interrogatory response or otherwise notified Amesbury that it intended to present an inequitable conduct defense or counterclaim. Instead, Caldwell waited until the day before fact discovery closed to spring generally on Amesbury its intent to assert this highly fact-intensive counterclaim.

Caldwell's motion should be denied for the additional reason that Caldwell filed the motion in bad faith. Caldwell knew all the facts used to support its motion near the very beginning of deposition discovery, on October 19, 2005. Yet, Caldwell waited until the day before discovery closed before notifying Amesbury, for the very first time, of its intent to seek leave to add an inequitable conduct counterclaim to the case. Caldwell's conduct suggests strongly that Caldwell acted in bad faith to deny Amesbury fact discovery on this brand new

claim.  Furthermore, Caldwell previously agreed on April 21, 2005 on a proposed case schedule with July 1, 2005 being the last day to amend the pleadings.  Yet, some five months later, Caldwell is seeking to amend the pleadings.  Caldwell's bad faith is further evidenced by Caldwell's sending of a letter, and without placing a single phone call, to Amesbury less than one day before filing its motion to amend.  Caldwell's demand that Amesbury review and take a position on Caldwell's motion in less than a day constitutes a brazen violation of this Court's Local Rule 7.1(a)(2), requiring that counsel confer in good faith before filing motions.

## ARGUMENT

A motion for leave to amend the pleadings under Fed. R. Civ. P 15(a) "should be denied if there is undue delay, bad faith, dilatory motive, or the amendment is futile." Beckley v. Browning Ferris Indus., No. Civ.A. 04-10906RWZ, 2005 WL 483340 at *3 (D. Mass. Mar. 2, 2005) (citing Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995)).  Prejudice to the opposing party is an additional reason for denial of a motion for leave to amend.  See Albertini v. Summit Tech. Serv. 287 F.Supp.2d 92, 95 (D. Mass. 2003) ("Generally leave to amend will be given unless such amendment would be futile, would be prejudicial to the opposing party, or was the result of 'undue or intended delay.'" (citing Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994))).

Any one of these factors – futility, prejudice, bad faith, or undue delay – is enough to deny a motion for leave to amend.  Here, however, *all four factors* are present.  First, the proposed amendment is futile because Caldwell cannot show two essential elements of inequitable conduct – the intent to deceive and knowledge of materiality.  Second, Caldwell's amendment would prejudice Amesbury, as Amesbury had no opportunity to explore the inequitable conduct claim in discovery and discovery has now closed.  Third, Caldwell unduly

delayed in filing the motion for over forty (40) days after having all the pleaded facts in hand. Finally, Caldwell filed its motion in bad faith.

**A.     Caldwell's Proposed Inequitable Conduct Amendment is Futile as Caldwell Cannot Show Intent to Deceive or Knowledge of Materiality.**

Inequitable conduct occurs when the patentee breaches his or her duty of candor to the U.S. Patent and Trademark Office ("PTO") "through 'affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive.'"  Warner-Lambert Co. v. Teva Pharm. USA, 418 F.3d 1326, 1342 (Fed. Cir. 2005) (quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)).  Caldwell alleges in its proposed Amended Answer that Gary Newman, the patentee of the asserted '264 patent, and his patent prosecuting attorneys committed inequitable conduct by failing to disclose allegedly material prior art, namely a "728 Series" window product sold to Andersen Corporation (the "Andersen product").  (Prop. Am. Answer at ¶ 55.)  For Caldwell to show inequitable conduct from a failure to disclose allegedly material prior art, Caldwell has the burden of offering clear and convincing evidence of five (5) distinct elements: "[1] the materiality of the prior art, [2] knowledge chargeable to the applicant of that prior art [3] and of its materiality, and [4] the applicant's failure to disclose the prior art, [5] coupled with an intent to mislead the PTO." Molins PLC, 48 F.3d at 1178 (Fed. Cir. 1995).

Caldwell, however, has presented no evidence to show that Mr. Newman or his patent attorneys had any intent to mislead the PTO.  Additionally, Caldwell has presented no evidence that Mr. Newman or his patent attorneys had knowledge of any materiality of the Andersen product.  Both intent to mislead and knowledge of materiality are essential elements of inequitable conduct and so Caldwell's proposed amendment is futile.  As futility of the proposed amendment is in itself a reason for denial of a motion for leave to amend, Caldwell's motion to

amend should be denied for this reason alone.  See Edsall v. Assumption College, 367 F.Supp.2d
72, 86 (D. Mass 2005) ("Futility of the proposed amendment is, however, a basis for denial of a
motion to amend." (citing Foman v. Davis, 371 U.S. 178, 182 (1962))).

> **1.    Caldwell Cannot Show That The Patentee
>       Or His Attorneys Intended To Mislead The PTO.**

Caldwell presents no facts, in either its motion or in its proposed Amended Answer, to
support a position that the patentee, Gary Newman, or any of his patent attorneys possessed the
requisite intent to mislead or deceive the PTO.  Having no such facts to present, Caldwell instead
resorts to arguing that the intent to deceive the PTO may be inferred simply from the patentee's
knowledge of the allegedly material reference and the patentee's failure to disclose the reference.
(Motion to Amend at 2.) Such an inference is improper.  Indeed, the Federal Circuit reiterated
this year that, "materiality does not presume intent, which is a separate and essential component
of inequitable conduct." Warner-Lambert Co., 418 F.3d at 1346 (Fed. Cir. 2005) (quoting GFI,
Inc. v. Franklin Corp., 265 F.3d 1268, 1274 (Fed. Cir. 2001)).  Yet, this is precisely what
Caldwell asks the Court to do – improperly presume intent from a failure to disclose an allegedly
material reference.

Caldwell bases its theory on a flawed reading of Bruno Ind. Living Aids v. Acorn
Mobility, Ltd., 394 F.3d 1348 (Fed. Cir. 2005).  Bruno does not stand for a proposition that
intent to deceive is inferred merely from a failure by the patentee to disclose a material reference
that was known.  Rather Bruno states that, "in the **absence of a credible explanation,** intent to
deceive is generally inferred from the **facts and circumstances surrounding** a **knowing** failure
to disclose material information." Bruno, 394 F.3d at 1354 (emphasis added).  Thus, Bruno does
not allow for an inference of intent to be drawn simply from a failure to disclose material
information; rather the inference must be drawn from the **facts and circumstances** surrounding

a failure to disclose information the **patentee knew was material,** and there must be an **absence of a credible explanation.**

In <u>Bruno</u>, the inference of intent was proper because an official of the patentee disclosed the prior art to the Food and Drug Administration ("FDA") as relevant to an FDA application relating to the invention, but did not disclose the same prior art to the PTO; the official had no credible explanation for his failure to disclose the prior art to the PTO.  <u>Bruno</u>, 394 F.3d at 1354. In the present case, however, Caldwell can point to no facts to show that Mr. Newman knew the Andersen product to be material.  Indeed, as set forth <u>infra,</u> the evidence shows that Mr. Newman had no knowledge of any materiality of the Andersen product, as he thought it to be irrelevant to the invention of the '264 patent.  Mr. Newman's lack of knowledge as to the materiality of the Andersen product is a credible explanation as to why he did not disclose the product to his patent attorneys and to the PTO and, therefore, intent to deceive cannot be inferred.  See <u>Dayco Prods., Inc. v. Total Containment, Inc.</u>, 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for withholding are plausible.")  Furthermore, Caldwell has chosen not to depose any of the patent prosecuting attorneys of the '264 patent.  As such, Caldwell has absolutely no evidence that Mr. Newman or any of the prosecuting attorneys had an intent to deceive the PTO.[2]

---

[2] <u>LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n</u>, 958 F.2d 1066 (Fed. Cir. 1992) does not require a different result. <u>LaBounty</u> suggests that an inference of intent to deceive might be proper when supported by evidence that the patentee made patentability arguments that could not have been made had the undisclosed prior art been disclosed. <u>Id.</u> at 1076. While Caldwell alleges that Mr. Newman gained issuance of the patent by arguing to the PTO that the prior art did not show a bottom guide roller entirely external to the channel, a feature Caldwell argues can be found in the Andersen product (Prop. Am. Answer at ¶ 72), Mr. Newman in fact made no such argument. Rather, Mr. Newman, through his patent attorneys, explained to the PTO that, "[n]one of the prior art of record teaches or suggests a bottom guide roller **rotatably mounted in the bottom guide."**  (Amendment and Response at AME 00100, Ex. 1.) As such, Mr. Newman's statement to the PTO is accurate even in view of the Andersen product; the Andersen product **does not have a bottom guide** and Caldwell has not claimed that it does.

6

2.    **Caldwell Cannot Show that the Patentee
Was Aware of Any Materiality of the Andersen Product.**

The patentee must be both aware of the reference and its materiality.  Molins, 48 F.3d at

1178 (stating that the patentee must have knowledge of both the undisclosed prior art and of its

materiality).  Caldwell can show no facts to prove that the patentee, Mr. Newman, was aware of

the materiality of the Andersen product.  In fact, the evidence is squarely to the contrary: when

asked in his deposition why he did not disclose the Andersen product to the PTO, Mr. Newman

testified that he did not believe the Andersen product was relevant to patentability of the '264

patent.

> Q.    You don't know whether this 728 series or drawings of the 728 series
> were reviewed by the examiner?
>
> A.    I don't know that, no.
>
> Q.    You think the examiner might have been interested in looking at it?
>
> A.    No.
>
> Q.    Why not?
>
> A.    **It's not relevant.**

(Newman Dep. 35:6-14, Oct. 18, 2005, Ex. 2 (emphasis added).)

Mr. Newman further explained that he based this belief on the fact that the Andersen

product is used in a different application than that of the patented invention.

> Q.    Well, we've established that it has at least many of the components as
> listed in the claim, haven't we?
>
> A.    The application is completely different.
>
> Q.    I understand that. Does the claim talk about the application of the
> invention? We read through the claim word for word.  Did it talk about
> where it's installed, the claim that's column six of Exhibit 6?
>
> A.    **The application of the two balances are completely different.**

(Newman Dep. 35:15-23, Oct. 18, 2005, Ex. 2, (emphasis added).)

Mr. Newman's deposition testimony evidences that Mr. Newman did not think that the Andersen product was relevant to patentability and so was not aware of any materiality of the undisclosed product. Caldwell has offered no evidence to the contrary and, as such, there can be no finding of inequitable conduct. See Warner-Lambert Co., 418 F.3d at 1347 (Fed. Cir. 2005) (upholding the district court's finding of no inequitable conduct when the inventors failed to disclose a highly material reference they knew about because "they simply did not think it had any relevance to their application").

### 3. The Amendment is Futile As Caldwell Cannot Show At Least Two Essential Elements of Inequitable Conduct.

Caldwell's proposed amendment to add a counterclaim of inequitable conduct is futile because, as outlined above, Caldwell cannot show two essential elements of inequitable conduct. As such, the inequitable conduct claim or defense would not survive any of a motion to dismiss under Rule 12(b)(6), a motion to strike under Rule 12(f), or a motion for summary judgment.[3]

### a) Caldwell's Inequitable Conduct Counterclaim Would Not Survive A Motion to Dismiss Under Rule 12(b)(6).

In the context of a motion to amend, a counterclaim amendment is futile if it would be dismissed by a Rule 12(b)(6) motion to dismiss. See Transwitch Corp. v. Galazar Networks, Inc., 377 F.Supp.2d 284, 294 (D. Mass 2005). A motion to dismiss a counterclaim under Rule 12(b)(6) is granted "if it appears, beyond doubt, that the counterclaimant can prove no facts in support of its claim that entitles it to relief." Honeywell Consumer Prods., Inc. v. Windmere Corp., 993 F.Supp. 22, 23 (D. Mass. 1998). As outlined above, Caldwell cannot show that the patentee or his attorneys had an intent to deceive the PTO, nor can Caldwell show that the patentee or his attorneys knew of any materiality of the undisclosed Andersen product. These

---

[3] Caldwell seeks to add inequitable conduct as a counterclaim; however, inequitable conduct is also an affirmative defense.

are two essential elements necessary to prove inequitable conduct.  Discovery in this case is closed and so it is beyond doubt that Caldwell can prove no facts in support of two essential elements of the inequitable conduct claim.  As such, Caldwell's inequitable conduct amendment would be dismissed under Rule 12(b)(6) and so the amendment is futile.

Caldwell's inequitable conduct amendment also would be dismissed under Rule 12(b)(6) as it fails to comply with Rule 9(b) requiring that a claim of inequitable conduct be pled with particularity.  Systemation, Inc. v. Engels Indus., Inc., 183 F.R.D. 49, 52 (D. Mass. 1998).  To plead inequitable conduct with particularity, Caldwell is required to "'specifically plead the time, place, and content of any alleged misrepresentation the plaintiffs made to the PTO **and the requisite intent.**'"  Id. at 51 (quoting Simpson v. Stand, 32 U.S.P.Q.2d 1848, 1850 (S.D. Ind. 1994)) (emphasis added).  As discussed above, Caldwell has failed entirely to plead the intent element of inequitable conduct and it has no facts to support any such contention.  As such, its amendment would be dismissed for lack of compliance with Rule 9(b).

### b)    The Inequitable Conduct Defense Would Not Survive A Motion to Strike Under Rule 12(f).

Caldwell's amendment of an inequitable conduct affirmative defense is also futile, because it would be struck under Rule 12(f).  See Medical Graphics Corp. v. Hartford Fire Ins. Co., 171 F.R.D. 254, 257 (D. Minn. 1997) (motion to amend should be denied if the proposed amended defenses are legally insufficient such that they invite a Rule 12(f) motion to strike).  Rule 12(f) provides that the Court may strike from the pleadings any insufficient defense.  Systemation, Inc. v. Engels Indus., Inc., 183 F.R.D. 49, 51-52 (D. Mass. 1998).

Caldwell's inequitable conduct amendment is legally insufficient under Rule 12(f) for at least the reason that it fails to comply with Rule 9(b), requiring that a claim of inequitable conduct be plead with particularity.  Systemation, Inc., 183 F.R.D. at 52.  To plead inequitable

conduct with particularity, Caldwell is required to "'specifically plead the time, place, and content of any alleged misrepresentation the plaintiffs made to the PTO **and the requisite intent.**'" Id. at 51 (quoting Simpson v. Stand, 32 U.S.P.Q.2d 1848, 1850 (S.D. Ind. 1994)) (emphasis added).  As discussed above, Caldwell has failed entirely to plead the intent element of inequitable conduct and it has no facts to support any such contention.  As such, its amendment would be struck for lack of compliance with Rule 9(b).

Additionally, as Caldwell has failed to plead that the patentee knew of any materiality of the reference, an essential element of inequitable conduct, its defense would alternatively be struck under Rule 12(f) as insufficient.

**c)    The Inequitable Conduct Claim or Defense
Would Not Survive A Motion for Summary Judgment.**

Some courts have held that futility of the amendment should be determined using a summary judgment standard, especially in cases like this one where fact discovery has closed. See, e.g. Warner-Lambert Co. v. Teva Pharm. USA, 289 F. Supp.2d 515, 544 (D.N.J. 2003) (denying leave to amend the pleadings after the close of fact discovery, because the proposed amendment was futile as it could not survive a summary judgment motion); Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., No. 95 C 0673, 1996 WL 680243 (N.D. Ill. Nov. 21, 1996) (finding that a proposed amendment of the pleadings after the close of fact discovery was futile as the amendment would not survive summary judgment).  Summary judgment is granted when "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Tobin v. Liberty Mut. Ins. Co., 428 F.3d 54, 57 (1st Cir. 2005).

Fact discovery in this case is closed and all of the facts that may be used in a summary judgment motion are known.  Caldwell's inequitable conduct claim would not survive a summary judgment motion, as there is no genuine issue of material fact with respect to at least

10

two required elements of the claim; Caldwell has no evidence of intent to deceive the PTO and no evidence that the patentee knew the Andersen product was material. <u>See</u> <u>supra</u>. Indeed, all the evidence in this case suggests the contrary, that the patentee, Mr. Newman, had no intent to deceive the PTO and had no knowledge of the materiality of the reference. As such, Caldwell's proposed amendment is futile, as it would not survive a summary judgment motion. <u>See</u> <u>Warner-Lambert Co.</u>, 289 F. Supp.2d at 544 (denying a motion for leave to amend because the proposed inequitable conduct amendment was futile under a summary judgment standard as the moving party had no evidence pointing to an intent to deceive).

**B.     <u>Amesbury Would Be Unfairly Prejudiced If Caldwell's Motion Is Granted.</u>**

Fact discovery is closed in this case. Inserting an inequitable conduct claim into the case at this time would unfairly prejudice Amesbury, as Amesbury did not have an opportunity to tailor its discovery to account for the inequitable conduct claim, nor did Amesbury have a chance to explore its defenses to this claim during depositions or written discovery. Had Amesbury known that Caldwell intended to add an inequitable conduct claim, Amesbury could have taken the deposition of third parties, like Andersen Corporation, to explore their dealings with the patentee and to find additional support for the defense that the patentee did not believe the Andersen product to be material to the invention of the '264 patent and did not have an intent to deceive the PTO. Amesbury could have also subpoenaed the depositions of third party patent prosecuting attorneys who may have worked with the patentee to prosecute the case.[4]

Even if Amesbury were allowed an extension of fact discovery to explore the inequitable conduct issue, Amesbury still would be unfairly prejudiced as such an extension is sure to delay trial in this case. Furthermore, such an extension would mean that Amesbury would be forced to

---

[4] One such prosecuting attorney is Joseph Sullivan, Esq., who no longer represents Amesbury.

expend additional financial resources to investigate and explore the inequitable conduct issue, and to subpoena and take the depositions of relevant third parties like Andersen Corporation[5] and third party prosecuting attorneys. See Remington Arms Co., Inc. v. Modern Muzzleloading, Inc., No. 2:97CV00660, 1998 WL 1040949 at *3 n.4 (M.D.N.C. Dec. 17, 1998) ("Even assuming the court was willing to reopen discovery . . . Plaintiff would still be prejudiced by an amended answer since Plaintiff would be forced to incur additional expenses in defending against the allegations and would almost certainly be faced with a delay in trial."); John O. Butler Co., Inc. v. Gillette Canada, Inc., No. 91 C 7858, 1993 WL 326898 at *2 (N.D. Ill. Aug. 26, 1993) (denying leave to add an inequitable conduct claim partially because "Butler would be prejudiced in that it would be required to depose two nonparty witnesses in California and doubtless would need to conduct further investigation among its present and past employees"). As Amesbury would suffer unfair prejudice if Caldwell is allowed to amend its Answer as proposed, Caldwell's motion should be denied.

## C.    Caldwell Filed Its Motion to Amend in Bad Faith.

All the facts presented in Caldwell's motion to amend and proposed Amended Answer were known to Caldwell by the afternoon of October 19, 2005, the final day of the Gary Newman deposition.[6]  At that time, the parties were only beginning to take depositions and only

---

[5] Andersen Corporation was served with a subpoena by Caldwell and objected to the subpoena. (See Objection to Deposition and Subpoena, Ex. 3.) Therefore Amesbury, if it were to attempt to subpoena the deposition of Andersen Corporation, is likely to face a similar objection from Andersen Corporation and would be forced to file a motion to compel, thereby resulting in additional legal expenses, delay, and prejudice to Amesbury.

[6] Caldwell disingenuously argues that it did not receive the official transcript of the Newman deposition until later. (Motion to Amend at 3.) However, Caldwell's attorney took the Newman deposition and was aware of all the facts on October 19; furthermore, Caldwell could have used a rough transcript of the deposition on October 19 as support for its Motion. For example, in Caldwell's Motion to Compel A 30(b)(6) Witness, Caldwell relied on the rough transcript of the 30(b)(6) deposition of Amesbury. (See Docket No. 35 at 2, 3.)

two depositions had been taken by Caldwell and none had yet been taken by Amesbury.[7] Over the next forty (40) days of discovery, the parties took some twelve (12) additional depositions. Yet during this extended time period, Caldwell hid from Amesbury that it intended to seek leave to amend its Answer to add an inequitable conduct claim or defense. Amesbury's first notice that Caldwell would seek to amend its Answer came in a faxed letter time stamped at 4:55 pm on November 29, 2005, the day before fact discovery closed. (See Letter from Neal Slifkin, Esq. to Douglas Kline, Esq., Nov. 29, 2005, Ex. 4.) Caldwell waited, with all the pleaded facts in hand, over forty (40) days until the day before fact discovery closed to alert Amesbury of its intent to add an inequitable conduct claim; this set of circumstances is suggestive of a bad faith attempt by Caldwell to deny Amesbury discovery on the inequitable conduct issue.

Additionally, the faxed letter notifying Amesbury for the very first time that Caldwell would file a motion to add an inequitable conduct claim gave Amesbury only until the next morning to take a position on the motion. (See Ex. 4 ("If we do not hear from you **by tomorrow morning,** we intend to file a motion for leave to file the Amended Answer." (emphasis added)).) Caldwell acted in bad faith by not conferring on the motion and by giving Amesbury less than one (1) day to review and take a position on the motion and proposed amendment. Cf. LR 7.1(a)(2) ("No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue.")

Caldwell's motion to amend is also in bad faith, as Caldwell's counsel and Amesbury's counsel jointly agreed on a proposed schedule on April 21, 2005, that the last date to amend the pleadings should be July 1, 2005. (See Rule 26(f) Statement at 2, Ex. 5.) Caldwell now seeks to amend the pleading some five months later without so much as a proper conference.

---

[7] The two depositions taken as of October 19, 2005 were a 30(b)(6) deposition of Amesbury, taken on October 18, 2005, and the Gary Newman deposition taken on October 19, 2005.

**D.    <u>Caldwell Unduly Delayed in Filing Its Motion.</u>**

Caldwell appears to have known about the Andersen product at least as early as June 10, 2005, when it referred to "product information from Anders[e]n Corporation" as prior art to the patents-in-suit, in its response to Amesbury's Request No. 34 for Documents and Things.  (<u>See</u> Def.'s Answers to Pl.s' First Req. for Documents and Things at 15, Ex. 6.)  Further, Caldwell knew of Amesbury's involvement with the Andersen product as far back as September 21, 2005, when Andersen Corporation, in response to a Caldwell subpoena, produced documents relating to the Andersen product to Caldwell, including Amesbury invoices.  (<u>See</u> Email from William Studer, Esq. to Neal Slifkin, Esq. and Safraz Ishmael, Esq., Ex. 7) Additionally, all the facts presented in Caldwell's Motion and proposed Amended Answer were known to Caldwell on October 19, 2005, the last day of the Gary Newman deposition.  Yet, Caldwell waited over forty (40) days later to file its motion to amend on the last day of fact discovery, thereby denying Amesbury an opportunity to explore the inequitable conduct claim in discovery.   As such, Caldwell unduly delayed in filing its motion to amend and the motion should be denied for this additional reason.  <u>See</u> <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u> 43 F.3d 922, 940-41 (4th Cir. 1995) (upholding district court's denial of leave to amend where the moving party waited three months and until the closing days of discovery to file the motion to amend).

## CONCLUSION

For the reasons set forth above, plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. respectfully request that this Court deny Caldwell's Motion for Leave to Amend Its Answer to the Complaint, and grant any other relief that the Court deems proper.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Phone: (617) 570-1000
Fax: (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
Dated: December 7, 2005          **AMESBURY SPRINGS LTD.**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OPPOSITION TO CALDWELL'S
## MOTION FOR LEAVE TO AMEND ITS ANSWER

## EXHIBIT 1

Express Mail Mailing Label No. EL934409394US

PATENT
Atty. Docket No. BSI-015
(354/48)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| APPLICANT: | Newman | CONFIRMATION NO.: | 6163 |
| SERIAL NUMBER: | 09/810,868 | ART UNIT: | 3676 |
| FILING DATE: | March 16, 2001 | EXAMINER: | W. Hutton, Jr. |
| TITLE: | BLOCK AND TACKLE WINDOW BALANCE WITH BOTTOM GUIDE ROLLER | | |

Commissioner for Patents
Washington, DC 20231

### AMENDMENT AND RESPONSE

This paper is submitted in response to a pending Office action, Paper No. 6, mailed from the U.S. Patent and Trademark Office on November 20, 2002.

Applicant respectfully requests entry of the following amendments, reconsideration and withdrawal of all grounds of objection and rejection, and passage of the claims to allowance.

Please amend the application, without prejudice, and consider the following remarks.

<u>In the Drawings:</u>

Replace existing sheets 1-4, 8, and 9 of the drawings depicting FIGS. 1, 2A, 2B, 3, 6, 7A, and 7B with the enclosed proposed sheets 1-4, 8, and 9 of the drawings with amended FIGS. 1, 2A, 2B, 3, 6, 7A, and 7B.

<u>In the Claims:</u>

Please cancel claim 13, amend claims 1, 12, 14, and 19, and add claim 24 to read as follows. In accordance with 37 C.F.R. § 1.121(c)(1)(ii), a marked up version of the claim

AME 00096

Amendment and Response
Serial No.: 09/810,868

amendments is attached at the end of this Amendment and Response.

1.    (Amended) A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

12.    (Amended) A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted in the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is

2

Amendment and Response
Serial No.: 09/810,868

threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

14.    (Amended) A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel and adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

19.    (Amended) A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel and adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted in the bottom guide.

24.    (New) A window balance device comprising:

a bottom guide connected to an end of a window balance channel, the bottom guide slidable in a jamb pocket when installed in a window frame, the bottom guide including:

a bottom guide axle mounted within the bottom guide, the bottom guide axle located outside the window balance channel; and

a bottom guide roller rotatably mounted on the bottom guide axle.

## REMARKS

Applicant appreciates the Examiner's courtesy in conducting the telephonic interview with Applicant's undersigned representative on March 18, 2003. During the interview, the Examiner called attention to FIG. 4 of U.S. Patent Number 3,449,862 to Biro (hereinafter "Biro"). After careful review of Biro, Applicant considers that the amended claims are patentable over Biro. Specifically, Applicant notes that "[t]he lower support slide 125 is secured to the lower end of the counterbalance housing by the rivets 134 and is provided with a toe

AME  00098

Amendment and Response
Serial No.: 09/810,868

portion 135 having an inclined surface 136. A shoe 137 is provided on the opposite side of the

toe 135 of the supporting slide 125 to engage the panel 101 of the sash channel 102." See

column 13, lines 4-9, of Biro. Biro is silent with respect to the location and mounting details of

the "bottom guide roller" (unnumbered) relative to the support slide 125; however, as shown in

FIG. 4, the roller appears to be mounted to the counterbalance housing 114 above the lower

support slide 125, not in the lower support slide 124. The lower support slide 125 is held in

place by the rivets 134 and appears to terminate below the axis of the roller. See also, for

example, FIGS. 2A and 2B of Applicant's specification. Accordingly, Biro fails to disclose or

suggest "a bottom guide roller rotatably mounted in the bottom guide."

The drawings are objected to for failing to designate FIGS. 1, 2A, 2B, 3, 7A, and 7B as

prior art, and for not showing every feature specified in the claims. Claims 1-12, and 14-23 are

rejected under 35 U.S.C. § 102(b) as being anticipated by admitted prior art[1] and U. S. Patent

Number 4,089,085 to Fitzgibbon (hereinafter "Fitzgibbon").

Applicant hereby cancels claim 13, amends independent claims 1, 12, 14, and 19, and

adds claim 24. Claims 1, 12, 14, and 19 are amended to more clearly define the subject matter of

Applicant's invention. Specifically, the claims are amended to clarify that the bottom guide

roller is rotatably mounted in the bottom guide. Claims 14 and 19 are further amended to remove

reference to the bottom guide frame. New claim 24 incorporates the subject matter indicated as

allowable by the Examiner. Support for claim 24 can be found at least at page 8, paragraph

0029. No new matter has been entered thereby.

---

[1] Applicant does not necessarily agree with statements in the Office action regarding the admitted prior art, other than that shown in Applicant's figures designated as such.

4

Amendment and Response
Serial No.: 09/810,868

Claims 1-12, and 14-23 are currently pending and presented for reconsideration. Claim

24 is presented for examination. In view of the above amendments and following remarks,

reconsideration and withdrawal of all grounds of objection and rejection are respectfully

requested.

1.     The drawings are objected to for failing to designate FIGS. 1, 2A, 2B, 3, 7A, and 7B as

prior art. The drawings are also objected to for not showing every feature specified in the claims,

specifically the bottom guide "frame" recited in claims 14 and 19.

FIG. 1 is amended to include the legend "PRIOR ART" and to add a missing vertical line

to the bottom window sash. The vertical line was shown in the originally filed informal FIG. 1.

FIGS. 2A, 2B, 3, 7A, and 7B are also amended to include the legend "PRIOR ART." FIG. 6 is

amended to be consistent with originally filed FIGS. 4A, 4B, 8A, and 8B. Approval of the

proposed changes is respectfully requested. No new matter is being entered thereby.

Claims 14 and 19 were amended to remove the reference to the bottom guide "frame",

thereby rendering the second objection moot.

Accordingly, Applicant respectfully requests reconsideration and withdrawal of the

objection to the drawings.

2.     Claims 1-12, and 14-23 are rejected under 35 U.S.C. § 102(b) as being anticipated by

admitted prior art and to Fitzgibbon.

Applicant has amended independent claims 1, 12, 14, and 19 to recite that the "bottom

guide roller [is] rotatably mounted **in** the bottom guide." None of the prior art of record teaches

or suggests a bottom guide roller rotatably mounted in a bottom guide.

5

AME 00100

Amendment and Response
Serial No.: 09/810,868

For at least this reason, Applicant respectfully submits that independent claims 1, 12, 14,
and 19 as amended, are patentable over Fitzgibbon and any other prior art of record. Because
claims 2-11, 15-18, and 20-23 depend, either directly or indirectly, from amended independent
claims 1, 14, and 19, respectively, Applicant submits that these claims are patentable as well.

Accordingly, Applicant respectfully requests reconsideration and withdrawal of the
rejection of claims 1-12 and 14-23 under 35 U.S.C. § 102(b) as being anticipated by the admitted
prior art and Fitzgibbon.

3.      New independent claim 24 includes the subject matter indicated as allowable by the
Examiner. Applicant appreciates the Examiner's suggestion and respectfully requests allowance
of claim 24 in due course.

### CONCLUSION

In view of the foregoing, Applicant respectfully requests reconsideration, withdrawal of
all grounds of objection and rejection, approval of the proposed drawing changes, and allowance
of claims 1-12 and 14-24 in due course. The Examiner is invited to contact Applicant's
undersigned representative by telephone at the number listed below to discuss any outstanding
issues.

Respectfully submitted,

Date: March 20, 2003
Reg. No. 42,545                                    _____
Tel. No. (617) 248-7675                            John V. Forcier
Fax No. (617) 790-0100                             Attorney for Applicant
                                                   Testa, Hurwitz, & Thibeault, LLP
                                                   125 High Street
2595440_1                                          Boston, MA 02110

6

AME 00101

## MARKED UP VERSION OF CLAIMS SHOWING AMENDMENTS

1.    (Amended) A block and tackle window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted **[to]** __in__ the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

12.    (Amended) A window assembly comprising:

a window frame with two jambs with jamb pockets;

at least one of an upper window sash and a lower window sash slidably receivable in the jamb pockets; and

at least one block and tackle window balance device attached to the at least one of the upper window sash and the lower window sash, the device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel;

a bottom guide roller rotatably mounted **[to]** __in__ the bottom guide;

a fixed pulley block unit connected to the channel;

a translatable pulley block unit moveable within the channel;

a spring comprising a first end and a second end, wherein the first end is fixed

7

AME 00102

Amendment and Response
Serial No.: 09/810,868

relative to the channel and the second end is connected to the translatable pulley block unit; and

a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb.

14.    (Amended) A window balance device comprising:

a bottom guide adapted to be connected to an end of a window balance channel[, the **bottom guide comprising:  a bottom guide frame**] **and** adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted **[to] in** the bottom guide[ **frame**].

19.    (Amended) A window balance device comprising:

a channel comprising a first end and a second end;

a top guide connected to the first end of the channel;

a bottom guide connected to the second end of the channel[, the **bottom guide comprising:  a bottom guide frame**] **and** adapted to slide in a jamb pocket when installed in a window frame; and

a bottom guide roller rotatably mounted **[to] in** the bottom guide[ **frame**].

8

AME 00103

1/10



PRIOR ART

FIG. 1

AME 00104

2/10



PRIOR ART

# FIG. 2A

AME 00105

3/10



PRIOR ART

FIG. 2B

AME 00106

4/10



PRIOR ART

# FIG. 3

AME 00107

8/10



FIG. 6

AME 00108



FIG. 7B

PRIOR ART

FIG. 7A

PRIOR ART

AME 00109

9/10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

**AMESBURY'S OPPOSITION TO CALDWELL'S
MOTION FOR LEAVE TO AMEND ITS ANSWER**

**EXHIBIT 2**

00001
1        UNITED STATES DISTRICT COURT
         DISTRICT OF MASSACHUSETTS
2
                    05-CV-10020 (DPW)
3                     VOLUME I

4

5  ******************************
   AMESBURY GROUP, INC., and    *
6  AMESBURY SPRINGS LTD.,        *
       Plaintiff,        *
7                        *
    v.                   *
8                        *
   THE CALDWELL MANUFACTURING    *
9  COMPANY,             *
       Defendant.       *
10  ******************************

11

12

13

14        VOLUME I OF THE DEPOSITION OF GARY
   ROGER NEWMAN, in his individual capacity, taken
15  pursuant to the applicable provisions of the Federal
   Rules of Civil Procedure, before Michelle Kaczynski, a
16  Registered Professional Reporter and Notary Public in
   and for the Commonwealth of Massachusetts, at the
17  offices of Goodwin Procter LLP, Exchange Place, Boston,
   Massachusetts, on Tuesday, October 18, 2005, at 4:06
18  p.m.

19

20

21

22
         KACZYNSKI REPORTING
23      72 CHANDLER STREET, SUITE 3
        BOSTON, MASSACHUSETTS  02116
24         (617) 426-6060


**Newman, Gary, 10/18/05**                    **Page 1**

00034

1    A.  I believe I did.

2    Q.  Attorney sought your input in responding to

3  an office action, is that correct?

4        MR. SINGER:  Objection.  Again, to the

5  extent you can answer without divulging specific

6  attorney communications, you can go ahead and answer

7  that question.  You can answer yes or no.

8    A.  I -- yes.

9    Q.  I'd like to ask you to take a look at

10  page five of that document, the very last sentence.  It

11  reads, none of the prior art of record teaches or

12  suggests a bottom guide roller rotatably mounted in a

13  bottom guide, do you see that?

14    A.  Where are you reading --

15    Q.  The last sentence of page five on that --

16    A.  Okay, I see it, yes.

17    Q.  Okay.  Do you know if this prior Amesbury

18  product, the 728 series, was prior art of record as

19  mentioned in this sentence?

20        MR. SINGER:  Objection.  Calls for a

21  legal conclusion.

22    Q.  Do you know what of record means?

23    A.  Repeat the question again.

24    Q.  Sure.  Do you know whether this 728 series

00035

1   product we've been discussing was prior art of record

2   in the Patent Office?

3       A.   I don't know.

4       Q.   Do you know what the term of record means?

5       A.   It was reviewed apparently.

6       Q.   You don't know whether this 728 series or

7   drawings of the 728 series were reviewed by the

8   examiner?

9       A.   I don't know that, no.

10      Q.   You think the examiner might have been

11  interested in looking at it?

12      A.   No.

13      Q.   Why not?

14      A.   It's not relevant.

15      Q.   Well, we've established that it has at least

16  many of the components as listed in the claim, haven't

17  we?

18      A.   The application is completely different.

19      Q.   I understand that.  Does the claim talk about

20  the application of the invention?  We read through the

21  claim word for word.  Did it talk about where it's

22  installed, the claim that's column six of Exhibit 6?

23      A.   The application of the two balances are

24  completely different.

00036

1    Q.  I understand that.  I'm asking you in claim

2  one of the patent in suit here, where does it tell you

3  what the application is?  And we've confirmed that

4  they're both block and tackle window balances, haven't

5  we?

6         MR. SINGER:  Objection.  There's

7  multiple questions pending.

8         MR. SLIFKIN:  Okay, I'm sorry.

9    Q.  We have confirmed that the 728 series and the

10  invention described in the '264 patent are both block

11  and tackle window balances, aren't they?

12    A.  They are both block and tackle window

13  balances.

14    Q.  They're both used to maintain the sash in the

15  position in which it's placed, is that right?

16    A.  Yes, they are.

17    Q.  So in terms of application, at least for that

18  application, the application of keeping a window sash

19  where you want it to stay, the applications are

20  identical, aren't they?

21    A.  In a very macro sense they are.

22    Q.  Do you think the examiner might have been

23  interested in an explanation of the differences in the

24  applications?

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OPPOSITION TO CALDWELL'S
## MOTION FOR LEAVE TO AMEND ITS ANSWER

## EXHIBIT 3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Amesbury Group, Inc. and Amesbury          **Case No. 05-10020 DPW**
Springs Ltd.

        Plaintiffs,

    vs.

The Caldwell Manufacturing Company,

        Defendant.

### OBJECTION TO DEPOSITION AND SUBPOENA DUCES TECUM

Andersen Corporation, through its undersigned counsel, hereby objects, pursuant to Federal Rule of Civil Procedure 45c(2)(B), to the subpoena for deposition and subpoena duces tecum served on it on or about June 16, 2005, commanding it to designate someone to testify and to produce documents on July 11, 2005. The bases for its objection include the following:

1.    The subpoenas subject Andersen Corporation to undue burden and expense.

2.    The subpoenas fail to provide adequate assurance that Andersen Corporation will be reasonably compensated for compliance including payment of reasonable attorneys fees.

3.    The subpoenas require disclosure of trade secret or other confidential research, development, or commercial information.

4.    The subpoenas failed to allow reasonable time for compliance.

5.    The subpoenas may require the disclosure of an unretained expert's opinion or information.

6.    The subpoenas may require disclosure of privilege or other protected matter.

06/28/2005 16:18 FAX                    OPPENHEIMER LAW FIRM                    ☒005/005

Andersen Corporation further reserve its rights, under Federal Rules of Civil Procedure 26c, and

45(3)(A) to seek a protective order consistent with those rules and, to the extent appropriate, seek

an award pursuant to Federal Rule of Civil Procedure 37a(4).

Date: June 28, 2005                    **OPPENHEIMER WOLFF & DONNELLY LLP**

By _____

William P. Studer (#106781)
3300 Plaza VII, 45 South Seventh Street
Minneapolis, MN 55402-1609
Telephone: (612) 607-7000
Fax Telephone No.: (612) 607-7100

**ATTORNEY FOR ANDERSEN CORPORATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

      Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

---

**AMESBURY'S OPPOSITION TO CALDWELL'S**
**MOTION FOR LEAVE TO AMEND ITS ANSWER**

**EXHIBIT 4**

# HARRIS BEACH ᴾᴸᴸᶜ
## ATTORNEYS AT LAW

𝔽𝔸𝕏   10/4/2005

99 GARNSEY ROAD
PITTSFORD, NY  14534
(585) 419-8800

**NEAL L. SLIFKIN**

DIRECT:   (585) 419-8636
FAX:        (585) 419-8813
NSLIFKIN@HARRISBEACH.COM

| File No. | 210199 | Page 1 of 17 |
|----------|--------|--------------|

| TO: | Douglas J. Kline | Fax No. | 617/523-1231 |
|-----|------------------|---------|--------------|
| FROM: | Neal L. Slifkin | | |
| RE: | Amesbury v. Caldwell | | |

▶ **This will be the only form of delivery**

**If this fax is incomplete, please contact Nancy Colgrove at (585) 419-8673**

The information contained in this facsimile message is attorney privileged and confidential, intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that dissemination, distribution or copying of this information is prohibited.  If you have received this communication in error, please notify us immediately by telephone.

Circular 230 Disclosure:  In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended to be used, and it cannot be used, by any recipient for the purpose of avoiding penalties that may be imposed on the recipient under United States federal tax laws.

**HARRIS BEACH** <sup>PLLC</sup>

ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8900

NEAL L. SLIFKIN, ESQ.
MEMBER
DIRECT:   (585) 419-8636
FAX:      (585) 419-8813
NSLIFKIN@HARRISBEACH.COM

November 29, 2005

*By Facsimile*

Douglas J. Kline, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA  02109-2881

> Re:  Amesbury Group, Inc., et al. v. The Caldwell Manufacturing Company
>      Civil Action No. 05-10020-DPW, District of Massachusetts

Dear Doug:

　　　Enclosed is an Amended Answer which adds a counterclaim for inequitable conduct. Please indicate whether you consent to our filing of this Amended Answer. Additionally, the Amended Answer contains portions of Mr. Newman's deposition transcript which have been marked "Confidential – Attorneys' Eyes Only." Please let us know whether you will require us to file his testimony under seal. If we do not hear from you by tomorrow morning, we intend to file a motion for leave to file the Amended Answer.

　　　　　　　　　　Sincerely,

　　　　　　　　　　Neal L. Slifkin

NLS:nac
Enclosure
cc: Jordan Singer
    Safraz Ishmael
    Paul J. Yesawich, III, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

**AMESBURY'S OPPOSITION TO CALDWELL'S
MOTION FOR LEAVE TO AMEND ITS ANSWER**

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## JOINT STATEMENT PURSUANT TO FED. R. CIV. P. 26(f) AND LOCAL RULE 16.1

       Plaintiffs Amesbury Group, Inc. and Amesbury Springs, Ltd. (together, "Amesbury") and defendant The Caldwell Manufacturing Company ("Caldwell") hereby submit this Joint Statement in accordance with Fed. R. Civ. P. 26(f) and Local Rule 16.1.

## DISCOVERY PLAN

       The parties propose the following discovery plan:

1. Discovery will be needed on the following subjects
   a. Plaintiffs' allegations that Caldwell has willfully infringed U.S. Patent Nos. 5,365,638, 6,598,264, and 6,820,368 ("the patents-in-suit").
   b. Caldwell's defenses to plaintiffs' allegations including Caldwell's allegations that the patents-in-suit are invalid.
   c. Plaintiffs' alleged damages including, but not by way of limitation, damages under 35 U.S.C. §§ 154 and 284.

2. Except as provided herein, the parties propose no changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure.

3. The parties agree that there will be no limit on the number of document requests and requests for admission that may be served upon another party.

**PROPOSED SCHEDULE**

The parties' good faith efforts to establish a joint proposal has resulted in significant common ground.  The parties agree to the following:

- The parties shall exchange automatic disclosures as required under Local Rule 26.2(A) by May 3, 2005;
- The parties shall have until July 1, 2005 to file amendments and/or supplements to the pleadings;
- The parties shall be ready for the pre-trial conference by March 27, 2006;
- The parties, at this time, do not consent to trial by a magistrate judge.

The parties were not able to agree, however, as to the last date of fact discovery or as to whether to set scheduled dates that depend on the date of occurrence of a specific event, such as the date of a court order.  The parties were also unable to agree to include a *Markman* Hearing schedule in the proposal.  The below table outlines the items on which the parties differ.

| EVENT | AMESBURY'S PROPOSAL | CALDWELL'S PROPOSAL |
|---|---|---|
| Parties submit joint statement of patent claim terms in dispute | Amesbury believes that this date should be set at the court's discretion. | July 30, 2005 |
| All *Markman* expert reports (deposition period runs until 10 days before the hearing) | Amesbury believes that this is not necessary. | September 1, 2005 |
| Plaintiff's *Markman* Brief | Amesbury believes that *Markman* briefs should be exchanged by both sides on a date set at the court's discretion. | September 15, 2005 |
| Defendant's *Markman* Briefs | Amesbury believes that *Markman* briefs should be exchanged by both sides on a date set at the court's discretion. | October 14, 2005 |

| EVENT | AMESBURY'S PROPOSAL | CALDWELL'S PROPOSAL |
|---|---|---|
| *Markman* Hearing | Amesbury believes that this date should be set at the court's discretion. | November 15, 2005 (or as soon thereafter as court can accommodate) |
| Last date for completion of fact discovery, including responses to all written discovery requests, completion of all depositions, and last date for filing and service of motions relating to fact discovery. | September 15, 2005 | January 31, 2006 |
| Last date for parties to disclose the identities and to serve written reports of experts, on issues which each party bears the burden of proof, pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P. | October 17, 2005 | 30 days after *Markman* ruling |
| Last date for parties to disclose the identities of their rebuttal experts and to serve written reports of such experts pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P. | November 15, 2005 | 30 days after exchange of initial expert reports |
| Last date for completion of depositions of experts. | December 15, 2005 | 30 days after rebuttal expert reports |
| Last date for filing and service of dispositive motions. | January 27, 2006 | February 17, 2006 or 45 days after completion of all expert depositions, which ever is later |

**CERTIFICATIONS**

Caldwell's certification pursuant to Local Rule 16.1(D)(3) is attached as Exhibit A. Amesbury's certification pursuant to Local Rule 16.1(D)(3) will be filed separately.

Respectfully submitted,

/s/ David J. Edwards

David E. Lurie (BBO# 542030)
Thomas E. Lent (BBO# 644970)
LURIE & KRUPP, LLP
One McKinley Square
Boston, MA 02109
(617)-367-1970

Paul J. Yesawich, III
Neal L. Slifkin
David J. Edwards
HARRIS BEACH LLP
99 Garnsey Road
Pittsford, NY 14534
(585)-419-8800

Attorneys for Defendant

THE CALDWELL MANUFACTURING
COMPANY

Dated: April 21, 2005

/s/ Douglas J. Kline

Douglas J. Kline (BBO# 556680)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Attorneys for Plaintiffs

AMESBURY GROUP, INC.
AMESBURY SPRINGS LTD.

LIBA/1531970.1

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMESBURY GROUP, INC. and AMESBURY SPRINGS LTD, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CALDWELL MANUFACTURING COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 05-10020-DPW

CALDWELL'S CERTIFICATION
PURSUANT TO LOCAL RULE 16.1(D)(3)

Defendant, The Caldwell Manufacturing Company, and its counsel, certify that we have
conferred:

(a)    with a view to establishing a budget for the costs of conducting the full course - and

various alternative courses - of the litigation; and

(b)    to consider the resolution of the litigation through the use of alternative dispute

resolution programs such as those outlined in Local Rule 16.4

Respectfully submitted,

THE CALDWELL MANUFACTURING
COMPANY

By:    ___s/ David E. Lurie_____
David E. Lurie, Esq. BO #542030
LURIE & KRUPP LLP
One McKinley Square
Boston, Massachusetts  02109

-and-

By:     <u>s/ Neal L. Slifkin</u>

Paul J. Yesawich, III, Esq.
Neal L. Slifkin, Esq.
David J. Edwards, Esq.
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York 14534
*Attorneys for Defendant*
*The Caldwell Manufacturing Company*

-and-

By:     <u>s/ Thomas Batten</u>

Thomas Batten
THE CALDWELL MANUFACTURING
COMPANY

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S OPPOSITION TO CALDWELL'S
## MOTION FOR LEAVE TO AMEND ITS ANSWER

## EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                              Plaintiffs,

vs.

THE CALDWELL MANUFACTURING
COMPANY,

                              Defendant.

**DEFENDANT'S ANSWERS TO
PLAINTIFFS' FIRST REQUEST
FOR DOCUMENTS AND
THINGS (Nos. 1-34)**

Civil Action No. 05-10020-DPW

Defendant, the Caldwell Manufacturing Company ("Caldwell"), by its attorneys Harris

Beach PLLC, submits the following answers to plaintiffs' First Request for Documents and Things

(Nos. 1-34):

**REQUEST NO. 1**:

All documents and things that were reviewed, referred to, relied upon, consulted, or

identified in connection with investigating or responding to Amesbury's First Set of Interrogatories.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome. Subject

to and without waiving these objections, Caldwell that all non-privileged documents reviewed in

responding to these interrogatories will be produced subject to a protective order.

**REQUEST NO. 2**:

All documents and things referring or relating to any of the subjects of Amesbury's First Set

of Interrogatories.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome.

Subject to and without waiving these objections, Caldwell states that the items used in answering

privileges.   Subject to and without waiving these objections, Caldwell will produce copies of all of its patents relating to any Window Product.

**REQUEST NO. 34**:

All documents and things referring to, relating to, or constituting any prior art to the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as overly broad.   Subject to and without waiving this objection, Caldwell will produce (subject to a protective order): (1) the patents-in-suit; (2) the file histories for the patents-in-suit; (3) Prosser, U.S. Patent No. 3,091,797; (4) Thompson, U.S. Patent No. 6,840,011, and its file history; (5) DeNormand, U.S. Pat. No. 6,041,746, (6) Berndt, U.S. Patent No. 4,704,821; and (7) product information from Anderson Corporation. These documents will be produced pursuant to a protective order.

Dated:  June 10, 2005

HARRIS BEACH PLLC

By:

Paul J. Yesawich, III
Neal L. Slifkin
Laura W. Smalley
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

-and-

BROWN & MICHAELS, P.C.
Christopher A. Michaels
Eugene S. Stephens
400 M&T Bank Building
118 North Tioga Street
Ithaca, New York 14850
Telephone: 607-256-2000

*Attorneys for Defendant*

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK )
COUNTY OF MONROE ) SS.:

        Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP.  That on the 10th day of June, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

GOODWIN PROCTER LLP
Douglas J. Kline, Esq.
Safraz W. Ishmael, Esq.
Exchange Place
Boston, MA 02109-2881

by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for June 13th a.m. delivery.

                                    Karen J. Jenness

Sworn to before me this
10th day of June 2005

Notary Public

AMY M. DANN
Notary Public, State of New York
Qualified in Monroe County
NO. 01DA5077858
Commission Expires May 12, 2007

HARRIS BEACH
ATTORNEYS AT LAW

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

      Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

**AMESBURY'S OPPOSITION TO CALDWELL'S**
**MOTION FOR LEAVE TO AMEND ITS ANSWER**

**EXHIBIT 7**

**Ishmael, Safraz W**

| | |
|---|---|
| **From:** | Studer, William P. [WStuder@oppenheimer.com] |
| **Sent:** | Wednesday, September 21, 2005 11:27 AM |
| **To:** | Neal L. Slifkin; Ishmael, Safraz W |
| **Cc:** | Nordaune, Andrea |
| **Subject:** | FW: Andersen Documents Produced |

Attached to this e-mail are the documents being produced by Andersen pursuant to the agreement among it, Amesbury and Caldwell documented and confirmed by e-mail yesterday. The documents are four invoices and an Andersen drawing. All of these documents relate to the in-sash balancer system, patented by Andersen, which is used in the Andersen A 200 Tilt-Wash window. The exclusive supplier to Andersen of this balancer is BSI in Sioux Falls SD. The documents are:

　　1. Invoice 4 - Andersen Purchase Order 40413, dated September 27, 1999, to BSI for prototype tooling for the parts of the in-sash balancer for what intimately was named the A 200 Tilt-Wash window.

　　2. Invoice 3 - Andersen Purchase Order 40891, dated October 12, 1999, to BSI for 220 sample prototype balancers. These were the sample balancers for what was ultimately named the A 200 Tilt-Wash window.

　　3. Invoice 2 - Andersen Purchase Order dated November 3, 1999, to BSI for 120 sample balancers for testing. These sample balancers were for what was ultimately named the A 200 Tilt-Wash window.

　　4. Invoice 1 - Andersen Purchase Order dated January 7, 2000, to BSI for the production requirements for the January build for Value Line Double Hung Units - ultimately named the A 200 Tilt-Wash window.

　　5. Andersen Drawing Number 83724, drawn on January 8, 2000, showing revision BA as released for production on February 3, 2000. I have been advised that this is the Andersen drawing for the in-sash balancer system for the A 200 Tilt-Wash window.

As you will see, each page has been marked "Confidential - Counsel Eyes Only."

If you have any questions, please contact me.

Bill Studer

---

**From:** Czech, Susan R.
**Sent:** Wednesday, September 21, 2005 9:23 AM
**To:** Studer, William P.
**Subject:** AW - Scanned docs

Attached.

---------------------------------------------------------------------------
This message contains confidential information intended only for the use of the addressee(s) named above and may contain information that is legally privileged. If you are not the addressee, or the person responsible for delivering it to the addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message immediately thereafter. Thank you.

12/6/2005

-----------------------------------------------------------------------------------