UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMESBURY GROUP, INC., and<br>AMESBURY SPRINGS, LTD.,<br><br>                    Plaintiffs<br><br>v.<br><br>THE CALDWELL MANUFACTURING<br>COMPANY,<br><br>                    Defendant. | CALDWELL'S REPLY<br>MEMORANDUM IN<br>SUPPORT OF ITS MOTION<br>TO AMEND THE ANSWER<br><br>Civil Action No. 05-10020 DPW |

## INTRODUCTION

This memorandum is submitted on behalf of the defendant Caldwell Manufacturing Company (hereafter "Caldwell" or "defendant") in response to the opposition of the plaintiffs, Amesbury Group, Inc. and Amesbury Springs Ltd. (hereafter "Amesbury" or "plaintiffs") to Caldwell's motion to amend its answer, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. As set forth more fully herein, Caldwell submits that its motion to amend is timely as a matter of law and indisputably states a claim by reciting at length each of the required elements of the inequitable conduct defense. Since nothing more is required under the law, Caldwell's motion should be granted. In addition, the proposed amendment is clearly not frivolous on its face, will not prejudice the plaintiffs, was not made in bad faith and will not unduly delay the proceedings.

## ARGUMENT

## THE DEFENDANT'S MOTION TO AMEND SHOULD BE GRANTED

The Federal Rules provide that "leave to amend shall be *freely* given when justice so requires." Fed. R. Civ. P. 15(a) (emphasis added); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, leave should be granted "absent an adequate basis to deny amendment, such as futility, bad faith, undue delay or a dilatory motive." *Transwich Corporation*, 377 F.Supp.2d 284, 290 (D. Mass. 2005), *quoting Maine State Building and Construction Trades Council, AFLCIO v. United States Department of Labor*, 359 F.3d 14, 19 (1st. Cir. 2004).

**I.     Plaintiffs' argument that the amendment is "futile" fails as a matter of law.**

"[G]iven the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Pharmaceutical Sales and Consulting Corp. v. J. W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D. N.J. 2000). Courts may only deny amendments as futile under very narrow circumstances where the amendment "cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6)" *Tingley Systems, Inc. v. CDC Consulting, Inc.*, 152 F. Supp. 2d 95, 117, *citing Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990).

A plaintiff's assertion that an amendment to an answer is "futile" is "gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Transwich*, 377 F.Supp.2d at 290 (D. Mass. 2005), *quoting Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12 (1st Cir. 2001).

Under this "stringent" standard, the court must accept as true the allegations in the defendant's proposed affirmative defense and construe those allegations in the light most favorable to the defendant. *Estate of Golas v. Paul Revere Ins. Group*, 175 F.R.D. 421, 423 (D. Mass. 1997). Additionally, for the claim to be sufficient at the 12(b)(6) stage "it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." *Garrett v. Tandy Corporation*, 295 F.3d 94, 105 (1st Cir. 2002).

Thus, in making the determination regarding futility, the court looks *only to the pleadings and not to extrinsic evidence. Bausch & Lomb, Inc. v. Allergan, Incorporated,* 136 F.Supp.2d 166, 169 (W.D.N.Y. 2001). "[U]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." *Sterling v. Interlake Industries Inc.*, 154 F.R.D. 579, 589 (E.D.N.Y. 1994); *accord, Bausch & Lomb, Inc.*, 136 F. Supp. 2d at 170 (granting motion for leave to amend answer alleging patent misuse, where patentee's challenge to factual basis for competitor's claim could not be sustained from the face of the pleading); *Pharmaceutical Sales and Consulting Corp. v J.W.S. Delavau Co., Inc.,* 106 F. supp. 2d 761, 764 (D. N.J. 2000) ("A determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as a basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face.")

Amesbury deliberately ignores these governing standards, and premises its "futility" argument on factual assertions and extrinsic evidence which is at best

3

irrelevant to the issue before the court. The Federal Rules simply do not envision any sort of protracted factual analysis when a party moves to amend a pleading. The only issue is whether the amendment is legally deficient on its face. Amesbury makes no effort to demonstrate that Caldwell's amendment is facially deficient, and its extensive citation of extrinsic evidence shows that it cannot.

Quite to the contrary, it is clear that Caldwell's claim of inequitable conduct is hardly frivolous on its face. "[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics* Co., 204 F.3d 1368, 1373 (Fed. Cir. 2000). If an alleged infringer can establish that (1) a material reference was withheld from the Patent and Trademark Office ("PTO"), and (2) it was withheld with an intent to deceive, the patent is rendered unenforceable. *See id.; Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed Cir. 1998).

Here, Caldwell explicitly pleads in its Amended Answer that Amesbury was aware of the existence and materiality of the 728 Series balance, which was developed by Gary Newman and other Amesbury employees, at the time it was prosecuting the patent at issue, the '264 Patent; and that it intentionally withheld this prior art from the examiner with the intent to deceive. For the purposes of this motion, these allegations must be taken as true. Taken as true, these allegations are legally sufficient to state a defense of inequitable conduct under governing Federal Circuit precedent. *See Semiconductor Energy,* 204 F.3d at 1373; *Baxter,* 149 F.3d at 1327. Thus, Amesbury cannot establish "futility" as a matter of law.

It bears emphasis, however, that Caldwell's inequitable conduct defense is powerful and not "futile" under any definition of that term.

**A. The 728 Series balance is highly material prior art.**

A prior art reference is deemed material if there "is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Baxter*, 149 F.3d at 1327. There is simply no question that a reasonable examiner would have considered the 728 Series balance important in deciding whether the patent in suit should have issued.

As set forth in the proposed Amended Answer, the '264 patent was filed on March 21, 2001 and is for a block and tackle window balance with a bottom guide roller. The 728 Series Balance, which was sold more than one year prior to that date, is likewise a block and tackle window balance with such a roller. Mr. Newman acknowledged that many of the elements of the claimed invention are present in the prior art 728 Series balance. The element which allegedly distinguishes the balance of the claimed invention from the prior art is a bottom guide roller rotatably mounted in a bottom guide and located beneath the channel. Mr. Newman admitted that the 728 series balance includes a housing at the bottom of the channel, which performs a guiding function and houses a roller beneath the channel:

**REDACTED**

**REDACTED**

*See,* Exhibit A.

While much of the evidence for the inequitable conduct defense came from the Newman deposition, two additional Amesbury technical witnesses, Stuart Uken and Larry VerSteeg were also questioned about the 728 Series balance. Mr. Uken's deposition was conducted on November 16, 2005, fourteen days before Caldwell filed its motion for leave to amend its answer. In his deposition, Mr. Uken confirmed that the bottom roller is beneath the channel:

**REDACTED**

**REDACTED**

*See,* Exhibit C.

Based upon the foregoing, it is clear that the 728 Series balance is highly material prior art which indisputably was not disclosed to the PTO during the '264 patent proceedings.

**B.    Plaintiffs intended to deceive the patent office by withholding the 728 Series balance.**

As demonstrated above, it is clear that the 728 Series balance was a highly material reference which was not disclosed to the PTO during prosecution. The only remaining proof necessary to establish inequitable conduct is a showing that the reference was withheld with an intent to deceive.

As the Federal Circuit has recently recognized, "[i]ntent need not, and rarely can, be proven by direct evidence." *Bruno Independent Living Aids v. Acorn Mobility Services, Ltd.,* 394 F.3d 1348, 1354 (Fed. Cir. 2005). "Rather, in the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Id.* "The more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa." *Semiconductor Energy,* 204 F.3d at 1375 (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120

F.3d 1253, 1256 (Fed.Cir.1997)). Where a patentee fails to disclose highly material art, "an inference of deceptive intent may fairly be drawn in the absence" of "a credible explanation, for the nondisclosure." *Bruno,* 394 F.3d at 1354.

Relying upon *Bruno*, Amesbury seeks to argue that if the party whose intent is at issue states during discovery that he did not intend to deceive and provides *any* explanation, he has conclusively established the "credible explanation" required by *Bruno*. Stated otherwise, Amesbury contends that since Mr. Newman has stated in his deposition that he had no intent to deceive, no proof to the contrary is either relevant or persuasive and an inequitable conduct defense cannot be maintained. Such an argument is ludicrous. The credibility of Mr. Newman's exculpatory testimony is most assuredly an issue for the trier of fact and cannot be established as a matter of law prior to trial. *See, Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1110 (Fed. Cir. 1986)("The drawing of inferences, particularly in respect of an intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witnesses."). Thus, while Amesbury may have offered an explanation which it hopes a jury will find credible, such an explanation has not been legally proven at this stage of the proceedings. In the absence of a explanation which it finds credible, a jury may infer an intent to deceive the PTO from the fact that Mr. Newman was aware of, and failed to disclose, highly material prior art.

## II.     The inequitable conduct defense would not be subject to dismissal.

Based upon its contention that Caldwell's proposed Amended Answer is legally insufficient, Amesbury contends that it should not be permitted, since it would be subject to dismissal pursuant to Rules 12(b)(6), 12(f) and 56 of the Federal Rules of

Civil Procedure. However, as noted above, the proposed Amended Complaint is not facially insufficient since it pleads the requisite elements of the inequitable conduct defense. Moreover, the proposed Amended Answer provides ample, albeit unnecessary, proof of the materiality of the prior art and the plaintiff's intent to deceive the PTO by withholding the existence thereof. Based upon the existence of such proof, which would have to be viewed in the light most favorable to Caldwell in any such motion to dismiss, any efforts by Amesbury to dismiss the Amended Answer must fail.

Mention should also be made of Amesbury's contention that the Amended Answer would be subject to dismissal since Caldwell purportedly failed to plead the requisite intent with particularity (Plaintiff's Opposition, p.9). In support of this contention, Amesbury cites *Systemation, Inc. v. Engels Indus., Inc.* 183 F.R.D. 49, 52 (D.Mass. 1998) for the proposition that Caldwell is required to "specifically plead the time, place and content of any alleged misrepresentation the plaintiffs made to the PTO **and the requisite intent.**" *Id,* at 51 (emphasis added by plaintiffs). The plaintiff thus contends that the time, place and content of its intent must be specifically pled.

Aside from the sheer impossibility of ascertaining, let alone pleading when and where a person developed a specific intention, such a requirement is not imposed by the Federal Rules. Quite to the contrary, Rule 9(b) specifically states that "[m]alice, intent, knowledge and other conditions of mind of a person may be averred generally." *Systemation* does not hold to the contrary; it simply stands for the proposition that the requisite intent must be pled, not that it must be pled specifically. If it were read in the manner suggested by the plaintiffs, it would be in plain contravention of the Federal

Rules.

### III. Amesbury would not be prejudiced by the amendment of the complaint.

Amesbury contends that it would be unfairly prejudiced by the amendment of the complaint since it did not have an opportunity to explore possible defenses to the inequitable conduct claim prior to the expiration of the discovery deadline. Even if the deadline were extended, Amesbury argues that it would result in the delay of the trial and would cause it to incur additional expense. None of these arguments can withstand scrutiny.

First, Amesbury's claim that it was surprised by the proposed amendment rings hollow. Their counsel were present during the deposition of Mr. Newman when it became abundantly clear that such a defense was available to Caldwell. Rather than simply ignoring such testimony, Amesbury could have taken the depositions they now complain they do not have to opportunity to conduct. Irrespective of this, Caldwell has consented to any extension of time necessary for Amesbury to conduct such depositions. Since no trial date has been established and, indeed, deadline dates for expert disclosure and depositions have not even been set by the Court, it is highly unlikely that a trial is "sure to be delayed." (Plaintiff's Opposition, p.11).

Paradoxically, Amesbury contends that it would be prejudiced by virtue of the fact that it would have to now have to incur the expense of conducting depositions – the same depositions it also contends that it would have conducted had it only known of the asserted defense forty days earlier. Under such circumstances, the prejudice to Amesbury is difficult to discern.

### IV.   Caldwell's motion was not filed in bad faith or delayed.

Amesbury contends that Caldwell was aware of all the facts surrounding the inequitable conduct defense on October 19, 2005[1] and waited forty days- the eve of the close of discovery- prior to submitting its motion to amend, supposedly in an effort "to deny Amesbury discovery on the inequitable conduct issue." (Amesbury Opposition, p.13). Caldwell vigorously denies any allegation that the present motion to amend was brought in bad faith.

Although it is true that the Newman deposition was taken on October 18 and 19, 2005, the transcript of that deposition was not supplied until November 15, 2005. In addition, the depositions of two additional witnesses on this issue were not taken until November 4, 2005 and November 16, 2005. Thus, it was not known until November 16, 2005 what evidence existed to either support or disprove an inequitable conduct defense.

In addition, since Caldwell has explicitly consented to the extension of the discovery deadline, it is hardly logical for Amesbury to assert that Caldwell's purpose in allegedly delaying the filing of the motion to amend was to prevent Amesbury from conducting further discovery on this issue.

Finally, through the use of highly selective wording, Amesbury suggests that Caldwell filed this motion five months late, in alleged derogation of a case schedule which would have required it to file any such motions by July 1, 2005 (Plaintiff's Opposition, pp.3, 13). This is patently untrue. The Court did request that the parties

---

[1] Amesbury alleges that Caldwell actually had notice of the potential relevance of the Andersen product as early as June 10, 2005. As explained in the Affirmation of Neal Slifkin, while Caldwell suspected that the Andersen product might have some relevance, this was not confirmed until the October 18 deposition of Mr. Newman.

11

suggest dates for the amendment of pleadings, the conclusion of discovery, the submission of dispositive motions, etc. In compliance with that order, the parties both suggested that a July 1, 2005 date would be acceptable for the filing of motions to amend the pleadings. However, this date was not adopted by the Court in its scheduling order issued of May 4, 2005. Indeed, the order placed no such limitation on the parties' time to move to amend their pleadings.

Moreover, even if such a time limitation existed, it must obviously be read in conjunction with the parties' necessity of amending their pleadings as discovery reveals additional parties, claims or defenses. No doubt it is for similar reasons that the Federal Rules permit the amendment of pleadings at any time, even after the rendition of judgment. Fed. R. Civ. P. 15(b).

In the present case, the deposition of Mr. Newman revealed that Amesbury had arguably engaged in inequitable conduct constituting a valid counterclaim. Within two weeks of receiving Mr. Newman's deposition transcript, Caldwell moved to amend its answer. Under these circumstances, it can hardly be said that Caldwell engaged in dilatory practice.

## CONCLUSION

Amesbury has offered no legally recognizable basis for denying Caldwell"'s Motion to Amend. For the foregoing reasons, Caldwell's Motion to Amend its Answer should be granted pursuant to the provisions of Federal Rule of Civil Procedure 15(a) permitting the free amendment of pleadings, and pursuant to the scheduling order entered by this Court.

Dated: December 14, 2005

Respectfully submitted,

THE CALDWELL MANUFACTURING COMPANY

By: __/S/ NEAL L. SLIFKIN__
     One of its Attorneys
     Paul J. Yesawich, III, Esq.
     Neal L. Slifkin, Esq.
     Harris Beach PLLC
     99 Garnsey Road
     Pittsford, NY 14534
     (585) 419-8800

L:\cSTEINMAN\CALDWELL MEMORANDUM.doc
12/14/2005 2:45:32 PM