## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

### AMESBURY'S MOTION FOR LEAVE TO FILE
### A SUPPLEMENTAL MEMORANDUM IN SUPPORT
### OF AMESBURY'S MOTION TO COMPEL DISCOVERY

Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury")

hereby move this Court for leave to file a supplemental memorandum in support of Amesbury's

Motion to Compel Discovery (Docket No. 45). The proposed supplemental memorandum is

attached at Tab A. Amesbury should be granted leave to file the proposed supplemental

memorandum because, as explained below, the specific issues raised in the supplemental

memorandum were not ripe for the Court's intervention until yesterday, December 15, 2005,

even though they are closely related to issues already raised in Amesbury's Motion to Compel

Discovery.

1.      Amesbury did not learn of the importance of the documents it seeks to compel in the

supplemental memorandum until it took the deposition of Jeffrey Robertson, a former Caldwell

engineer, on November 29, 2005.

2.      Mr. Robertson's November 29 testimony alerted Amesbury for the first time that the

identified "original" Quick-Tilt product and the Generation I cover may infringe claims of at

least the asserted '638 Patent. Additionally, Mr. Robertson's testimony alerted Amesbury that

other products in Caldwell's Quick-Tilt product line may in fact infringe claims of the '638

Patent.

3.    As such, on December 1, 2005, two days after the Robertson deposition, Amesbury

requested the production of documents relating to these products identified in the Robertson

deposition. (See Tab A, Ex. 1, Letter from Safraz W. Ishmael, Esq. to David J. Edwards, Esq.,

Dec. 1, 2005.)

4.    Amesbury asked that Caldwell produce these documents by December 7, 2005, or in the

alternative let Amesbury know a date in the week of December 4 through December 10 when the

parties may meet and confer on the matter in a discovery conference. (See Tab A, Ex. 1.) As of

December 15, 2005, Amesbury did not receive a single response to its December 1, 2005 letter

requesting documents relating to these products. Amesbury did not receive a response of any

kind regarding Amesbury's December 1, 2005 request for a discovery conference.

5.    As a consequence, Amesbury wrote Caldwell a second time on December 15, 2005,

informing Caldwell that Amesbury had not received a response to its December 1 letter and

asking that Caldwell let Amesbury know immediately whether it will be producing the

documents at issue. (See Tab A, Ex. 3, Letter from Safraz W. Ishmael, Esq. to David J.

Edwards, Esq., Dec. 15, 2005.) That same day, Amesbury followed up on the second letter with

a phone call to Caldwell and was told that Caldwell would respond shortly.

6.    At the close of business on December 15, 2005, fourteen days after Amesbury's first

letter and request in the alternative for a discovery conference, Amesbury received a letter from

Caldwell refusing to produce the long-ago requested and plainly discoverable documents. (See

Tab A, Ex. 4, Letter from David J. Edwards, Esq. to Safraz W. Ishmael, Esq., Dec. 15, 2005.)

7.    After learning of the importance of the documents on November 29, 2005, Amesbury

made a good faith attempt to seek production of the documents from Caldwell and to resolve the

dispute with Caldwell.  Amesbury did not receive a response from Caldwell until Amesbury's

counsel telephoned Caldwell's counsel on December 15, and was informed by letter that

Caldwell will not produce the documents.  (See Tab A, Ex. 4.)

8.    As outlined above, Amesbury used the period from November 30 through December 15

to try to resolve, with Caldwell, the issues raised in the proposed supplemental memorandum.

Therefore, the issues raised in the proposed supplemental memorandum were not ripe for the

Court's intervention until December 16, 2005.  As such, Amesbury today seeks the Court's leave

to file the supplemental memorandum in support of its Motion to Compel Discovery.

WHEREFORE, for the foregoing reasons, this Court should grant Amesbury's Motion

for Leave to File a Supplemental Memorandum in Support of Amesbury's Motion to Compel

Discovery.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.
AMESBURY SPRINGS LTD.**

Dated: December 16, 2005

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned hereby certifies that on December 16, 2005, counsel for Amesbury

contacted counsel for Caldwell by telephone in a good faith attempt to resolve the issues raised

in this Motion, but the parties were not able to narrow or resolve the issues presented.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: December 16, 2005

1657313.1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

  v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S MOTION FOR LEAVE TO FILE A
## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## AMESBURY'S MOTION TO COMPEL DISCOVERY

**TAB A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

      v.                             Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF AMESBURY'S MOTION TO COMPEL DISCOVERY

Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury")

submit this supplemental memorandum in support of their Motion to Compel Discovery. Recent

deposition testimony in this case alerting Amesbury, for the first time, of additional products that

may infringe one of the patents-in-suit, and Caldwell's utter failure to respond to Amesbury's

request for a discovery conference relating to document production on these products, highlight

the need for this supplemental memorandum. For the reasons set forth below, Amesbury

requests that this Court compel Caldwell to produce documents relating to these additional

products.

## BACKGROUND FACTS

On November 29, 2005, Amesbury took the deposition of Mr. Jeffrey Robertson, a third

party, and a former engineer at Caldwell. Mr. Robertson identified in his deposition an

"original" Caldwell Quick-Tilt window product that is similar to the Caldwell Quick-Tilt*nc

window product, accused of patent infringement in this case. Mr. Robertson further explained

that while at Caldwell, he designed various plastic covers for the Quick-Tilt window product line, including covers he identified as a Generation I cover and a Generation II cover. Mr. Robertson indicated that both of these covers include a raised portion or spine element, a feature that is a claimed element in Amesbury's asserted '638 Patent.

Mr. Robertson's November 29 testimony alerted Amesbury for the first time that the identified "original" Quick-Tilt product and the Generation I cover may infringe claims of at least the asserted '638 Patent. Additionally, Mr. Robertson's testimony alerted Amesbury that other products in Caldwell's Quick-Tilt product line may in fact infringe claims of the '638 Patent.

As such, on December 1, 2005, Amesbury in a letter to Caldwell, requested the production of documents, including schematics and drawings, relating to:

- The "original" Quick-Tilt product;
- The Generation I cover; and
- All products in the Quick-Tilt product line, with the exception of the Quick-Tilt*nc product.

(See Ex. 1, Letter from Safraz W. Ishmael, Esq. to David J. Edwards, Esq., Dec. 1, 2005.) Such documents are all responsive to at least Amesbury's Document Requests Nos. 8, 9, 10, 11, 12, 13, 14, and 15. (See Ex. 2, Amesbury's First Req. for Documents, at 4 – 5.)

Amesbury asked that Caldwell produce these documents by December 7, 2005, or in the alternative let Amesbury know a date in the week of December 4 through December 10 when the parties may meet and confer on the matter in a discovery conference. (See Ex. 1.) As of December 15, 2005, Amesbury did not receive a single response to its December 1, 2005 letter requesting documents relating to these products. Even more egregious, Amesbury did not

received a response of any kind regarding Amesbury's December 1, 2005 request for a discovery conference.

As a consequence, Amesbury wrote Caldwell a second time on December 15, 2005, informing Caldwell that Amesbury had not received a response to its December 1 letter and asking that Caldwell let Amesbury know immediately whether it will be producing the documents at issue. (See Ex. 3, Letter from Safraz W. Ishmael, Esq. to David J. Edwards, Esq., Dec. 15, 2005.) That same day, Amesbury followed up on the second letter with a phone call to Caldwell and was told that Caldwell will respond shortly.

At the close of business on December 15, 2005, some fourteen days after Amesbury's first letter and request in the alternative for a discovery conference, Amesbury received a letter from Caldwell refusing to produce the long-ago requested and plainly discoverable documents. (See Ex. 4, Letter from David J. Edwards, Esq. to Safraz W. Ishmael, Esq., Dec. 15, 2005.)

## ARGUMENT

### A. Amesbury's Motion to Compel Should Be Granted Under Local Rule 37.1(A) Because Caldwell Failed Completely to Respond to a Request for Discovery Conference

This Court's Local Rule 37.1(A) states that a "[f]ailure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, *which may include automatic allowance of the motion.*" LR 37.1(A) (emphasis added). Amesbury wrote Caldwell on December 1, 2005 requesting the production of the documents at issue in this supplemental memorandum on December 7, and in the alternative, requesting a discovery conference within the week of December 4 – 10 to meet and confer on the issue. Amesbury did not receive a single response from Caldwell regarding this issue until Amesbury again contacted Caldwell on December 15, some *fourteen (14) days* after requesting a

discovery conference in the alternative.

Caldwell's flouting of this Court's Local Rules by not responding to a request for discovery conference within seven (7) days is grounds for sanctions and should result in the automatic allowance of at least the part of Amesbury's Motion to Compel raised in this supplemental memorandum.

## B. No Order of this Court Allowed Caldwell to Escape its Duty to Supplement its Document Production Under Rule 26(e)

Caldwell on December 15 took the position that Amesbury's request for the documents at issue in this supplemental memorandum is "barred by the Court's Order of October 27, 2005." (See Ex. 4.) The Order referenced by Caldwell was a scheduling order setting a schedule for a *Markman* hearing and setting the last day for discovery motions as November 30, 2005. (See Electronic Clerk's Notes for proceedings held before Judge Woodlock, Oct. 27, 2005.)

Nothing in the Court's Order of October 27 suggests that Caldwell no longer has a duty under Fed. R. Civ. P. 26(e)(2) to seasonably supplement its document production. Indeed, the documents at issue in this supplemental memorandum should have been produced by Caldwell in response to at least Amesbury's Document Requests Nos. 8, 9, 10, 11, 12, 13, 14, and 15, all served on Caldwell on May 5, 2005. Caldwell did not produce these documents at that time and is now refusing to produce these documents after being notified of the deficiency in its document production by Amesbury.

Furthermore, Amesbury was not alerted to the importance of these documents until the Robertson deposition on November 29, 2005, one day before the Court's set deadline for discovery motions. Amesbury promptly sent a letter to Caldwell requesting production of the documents, which Amesbury had requested long ago, and requesting a telephone conference with Caldwell in the hope of resolving the issue. (See Ex 1.) As such, Caldwell should not be

4

allowed to use a court order setting the last day for discovery motions, as an excuse to escape its

duty under the Federal Rules to seasonably supplement its document production.

As such, Amesbury respectfully requests that this Court compel Caldwell to produce the

documents identified in Amesbury's December 1 letter (Ex. 1) and at issue in this supplemental

memorandum.

## CONCLUSION

For the foregoing reasons, this Court should grant Amesbury's Motion to Compel

Discovery, with respect to at least the issues raised in this supplemental memorandum, and grant

Amesbury any other relief the Court may deem appropriate.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: December 16, 2005

## <u>LOCAL RULE 7.1(A)(2) AND 37.1 CERTIFICATION</u>

The undersigned hereby certifies that on December 15, 2005, counsel for Amesbury

contacted counsel for Caldwell in an effort to resolve the issues raised by in this supplemental

memorandum, but the parties were not able to narrow or resolve the issues presented.  The

undersigned further certifies that the provisions of LR 37.1 have been complied with as

Amesbury's counsel requested a discovery conference and did not receive a respond from

Caldwell's counsel within seven (7) days of the request.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: December 16, 2005

1656843.2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## AMESBURY'S MOTION TO COMPEL DISCOVERY

## EXHIBIT 1

# GOODWIN | PROCTER

Safraz W. Ishmael, Esq.
617.570.1729
sishmael@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

December 1, 2005

**By Facsimile (585-419-8801)**

David J. Edwards, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:  **Amesbury Group, Inc., _et al._ v. The Caldwell Manufacturing Company**
     **C.A. No. 05-10020-DPW, District of Massachusetts**

Dear Dave:

In the deposition of Jeffrey Robertson that took place on November 29, 2005, Mr. Robertson identified the existence of a Caldwell original Quick-Tilt product that is different from the Caldwell Quick-Tilt*nc product. Mr. Robertson also identified the existence of both a Generation I cover and a Generation II cover for the Caldwell Quick-Tilt product line, and stated that both of these covers include a raised portion or spine element.

Documents, including drawings and schematics, relating to the original Quick-Tilt product and/or the Generation I cover were not produced by Caldwell even though they are responsive to Amesbury's document requests. Additionally, with the exception of the Quick-Tilt*nc product, documents relating to all the products in the Quick-Tilt product line were not produced by Caldwell even though such documents are responsive to Amesbury's document requests.

Please either produce all these documents by <u>December 7, 2005,</u> or let us know a date next week when we may meet and confer on this matter.

Very truly yours,

Safraz W. Ishmael

cc:    Paul J. Yesawich, III, Esq.
       Neal L. Slifkin, Esq.
       John T. Refermat, Esq.

LIBA/1652966

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**AMESBURY'S MOTION TO COMPEL DISCOVERY**

**EXHIBIT 2**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.                                  Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

## AMESBURY'S FIRST SET OF REQUESTS
## FOR DOCUMENTS AND THINGS (Nos. 1-34)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") request that defendant The Caldwell Manufacturing Company ("Caldwell") produce the following documents and tangible things for inspection and copying in accordance with the definitions and instructions set forth below within thirty (30) days after service hereof at the offices of Goodwin Procter LLP, Exchange Place, 53 State Street, Boston, MA 02109.

## DEFINITIONS AND INSTRUCTIONS

A.     As used herein, "documents" incorporates all documents and things as defined in Fed. R. Civ. P. 34(a) and includes without limitation every writing or record of every type and description, including correspondence, invoices, contracts, purchase orders, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, maps, charts, reports, surveys, minutes, statistical compilations or electronic documents, such as documents on a diskette or hard drive; and every copy of every such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

B.     As used herein, "person" shall mean any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

C.     As used herein, "date" shall mean the exact day, month and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

D.     As used herein, "identify" when used in reference to:

(a)    an individual, means to state his or her full name, present or last known residential and business addresses and present or last known position and/or business affiliation;

(b)    a firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation;

(c)    a document, means to state the date, title (if any), each author, each recipient, type of document (i.e., publication, letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian;

(d)    a communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it and the substance of the communication; and

(e)    a product, means to state the product's description, manufacturer, designation by the manufacturer thereof (e.g., style, model, proprietary name, established name, product classification number and/or catalog number), and brand name or trademark.

E.     As used herein, "Defendant," "you," and "Caldwell" shall mean defendant The Caldwell Manufacturing Company, its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with defendant The Caldwell Manufacturing Company.

F.     As used herein, "patents-in-suit" shall mean U.S. Patent Nos. 5,365,638 (the "'638 patent"), 6,598,264 (the "'264 patent"), and 6,820,368 (the "'368 patent").

G.     As used herein, "Window Product" shall mean each product, including but not limited to Caldwell's Series 86xt balance product and Series 97ez balance product, that includes one or more of a: (1) block and tackle balance; (2) balance shoe; and (3) coiled spring mounting element.

H.     As used herein, "and" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and vice versa.

I.     As used herein, "relating to," "relate to" and words to that effect shall mean, in addition to the customary and usual meaning of those words, refer or refer to, assess, describe, embody, evidence, mention, support, reflect or record.

J.     As used herein, "communication" means any transmission of information by any means including, but not limited to, telephone, letters, telegrams, teletypes, telexes, telecopies, computer linkups, electronic mails ("emails"), written memoranda and face-to-face

*Amesbury's First Request*                    2
*for Documents and Things*

communication.

K.      Requests for production include any and all relevant documents and things within your possession, custody or control, including, without limitation, documents and things located in the personal files of all past and present directors, officers, agents, representatives, employees, attorneys, accountants of or retained by you.

L.      Documents from any single file shall be produced in the same order as they were found in such file, and the files from which they are being produced shall be identified. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

M.      If you object to producing any document responsive to these requests on the ground of attorney-client privilege or attorney work product, or for any other reason, for each such document, state: (1) the identity of the authors or creators; (2) the identity of all addressees and recipients; (3) its subject matter; (4) the identity of persons to whom the document or any portion of it has been already been revealed; (5) the source of the document; (6) the date of the document; and (7) the basis for withholding the document.

N.      In producing the documents requested, indicate the specific request(s) pursuant to which each document or group of documents is being produced.

O.      These requests for the production of documents shall be deemed continuing and supplemental responses should be provided as additional information becomes available.

P.      If any document or thing that would have been responsive has been destroyed or is otherwise no longer in respondent's possession, custody or control:

      (1)     describe the content of the document or thing, and state the location of all copies; and

      (2)     state the date of, and identify the person responsible for its destruction, loss, transfer, or other action by which the document or thing left respondent's possession, custody or control.

## REQUESTS

1.    All documents and things that were reviewed, referred to, relied upon, consulted, or identified in connection with investigating or responding to Amesbury's First Set of Interrogatories.

2.    All documents and things referring or relating to any of the subjects of Amesbury's First Set of Interrogatories.

3.    All documents and things referring or relating to any of the patents-in-suit.

4.    All documents and things referring or relating to the dates and circumstances of Caldwell first becoming aware of each of the patents-in-suit.

5.    All documents and things referring or relating to any opinion, advice or comments of any person involving the validity, enforceability, infringement or scope of any of the patents in-suit.

6.    All documents and things referring or relating to the specification, claims or drawings in any of the patents-in-suit or any portion of the prosecution histories of any of the patents-in-suit.

7.    All documents and things referring or relating to any oral or written statement made by Caldwell or anyone on Caldwell's behalf as to whether or not Caldwell was or is infringing any of the patents-in-suit or that any product of Caldwell infringes any of the patents-in-suit.

8.    All documents and things referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

9.    Representative specimens of each Window Product identified in response to Amesbury's Interrogatory No. 1.

10.    All documents and things referring or relating to any research, design, testing or development work concerning any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

11.    All documents and things referring or relating to any search, consideration or assessment as to whether any of the Window Products identified in response to Amesbury's Interrogatory No. 1 infringe any patent, including, but not limited to, the patents-in-suit.

12.    All documents and things referring or relating to all revenues and profits realized on the sale of any of the Window Products identified in response to Amesbury's Interrogatory No.1, inlcuding but not limited to, sales records, costs records, purchase orders, invoices, receipts, bills of lading, billing ledger sheets, accounts receivable, financial statements and tax returns.

13.    All documents and things referring or relating to the sales and distribution of any

of the Window Products identified in response to Amesbury's Interrogatory No. 1, including, but not limited to, customer lists, sales records, purchase orders, invoices, receipts, bills of lading, billing ledger sheets, accounts receivable, financial statements and tax returns.

14.    All documents and things referring or relating to the promotion, marketing, advertisement, or sale of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including, but not limited to, press releases, price lists, pamphlets, brochures, specification sheets, and catalogs.

15.    All draft and executed contracts referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

16.    All documents and things referring or relating to patent or product licenses or sub-licenses concerning window hardware or fenestration hardware, to which Caldwell is a party or which Caldwell has contemplated or is contemplating being a party.

17.    All documents and things referring or relating to the original design or specifications of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, any changes in the design or specifications of said Window Products, or the reasons for any changes in the design or specifications of said Window Products.

18.    All documents and things referring or relating to the discontinuance of selling or manufacturing of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including but not limited to all documents having a bearing on the reason or reasons for the discontinuance of the Window Product.

19.    All documents and things referring or relating to any recall from the market (including, but not limited to, customers, retailers, wholesalers, distributors and consumers) of any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

20.    All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Counterclaims.

21.    All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Affirmative Defenses.

22.    All documents and things referring or relating to Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States.

23.    All documents and things referring or relating to Caldwell's assertion that Amesbury claims are barred by prosecution history estoppel.

24.    All documents and things referring or relating to Caldwell's assertion that Amesbury's claims for damages are limited by 35 U.S.C. § 286 or § 287.

25.    All documents and things referring or relating to the charges of infringement identified in response to Interrogatory No. 11.

26.    All documents and things referring or relating to Caldwell's denial that the infringement of the patents-in-suit is willful.

27.    All documents and things referring or relating to any claim of damages by Caldwell against Amesbury.

28.    All documents and things that may or will be used at trial or any evidentiary hearing in this matter.

29.    All pages from Caldwell's past and present web sites referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

30.    Copies of documents which describe the corporate structure of Caldwell.

31.    All financial statements and tax returns of Caldwell.

32.    All documents and things identified in Caldwell's Rule 26(a) disclosure.

33.    All documents and things referring to, relating to, or constituting the specification, claims or drawings in any Caldwell patent or patent application relating to any Window Product, or any portion of the prosecution histories relating to any Window Product.

34.    All documents and things referring to, relating to, or constituting any prior art to the patents-in-suit.

Respectfully submitted,

Douglas J. Kline (BBO# 556680)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: May 5, 2005

## CERTIFICATE OF SERVICE

I, Safraz W. Ishmael, a member of the bar, hereby certify that on May 5, 2005, I caused a true and accurate copy of the attached "Amesbury's First Request for Documents and Things (Nos. 1-34)" to be delivered by hand to opposing counsel, Lurie & Krupp LLP, One McKinley Square, Boston, MA 02109.

Safraz W. Ishmael

LIBA/1536454.1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

      Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## AMESBURY'S MOTION TO COMPEL DISCOVERY

## EXHIBIT 3

# GOODWIN┃PROCTER

Safraz W. Ishmael, Esq.
617.570.1729
sishmael@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

December 15, 2005

By Facsimile (585-419-8801)

David J. Edwards, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:    **Amesbury Group, Inc.,** *et al.* **v. The Caldwell Manufacturing Company**
       **C.A. No. 05-10020-DPW, District of Massachusetts**

Dear Dave:

Further to my letter to you on December 1, 2005, relating to the products identified at the Robertson deposition, we have not received a response of any kind from Caldwell. Please let me know immediately whether Caldwell will be producing all the documents requested in my December 1, 2005 letter.

Very truly yours,

Safraz W. Ishmael

cc:    Paul J. Yesawich, III, Esq.
       Neal L. Slifkin, Esq.
       John T. Refermat, Esq.

LIBA/1652966

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## AMESBURY'S MOTION TO COMPEL DISCOVERY

## EXHIBIT 4

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

December 15, 2005

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

DAVID J. EDWARDS

Safraz W. Ishmael, Esq.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881

Re:     Amesbury v. Caldwell Manufacturing

Dear Safraz:

This letter is in response to your letter of December 1, 2005. Caldwell responded to your demands for documents by producing a complete copy of its product catalog, which, at pages C000530-535, shows the entire line of Quick-Tilt products, including both the original Quick-Tilt and the Quick-Tilt* nc. The original Quick-Tilt shown on pages C000531 and 532 is depicted with several of the Generation I covers as optional equipment for single, tandem and triple-spring configurations.

In Caldwell's Answers to Amesbury's First Request for Documents and Things, served June 10, 2005 (a copy of which is enclosed), we specifically stated that Caldwell was initially limiting its production of documents to the accused products identified by Amesbury, but would make material related to additional products available for Amesbury's inspection if requested. Amesbury made no such request until your letter of December 1, 2005, which is after the close of discovery on November 30, 2005. Certainly, you will recall that the November 30 discovery cut-off date was at your insistence.

In any event, we regard your request for additional documents as barred by the Court's Order of October 27, 2005.

Very truly yours,

David J. Edwards

DJE:kjj
Enclosure

pc:     Paul J. Yesawich, III, Esq.
        Neal L. Slifkin, Esq.
        Jordan Singer, Esq. (w/enc.)
        Douglas J. Kline, Esq. (w/enc.)

210189 23101.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMESBURY GROUP, INC., and AMESBURY SPRINGS LTD, Plaintiffs, vs. THE CALDWELL MANUFACTURING COMPANY, Defendant. | **DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST REQUEST FOR DOCUMENTS AND THINGS (Nos. 1-34)** Civil Action No. 05-10020-DPW |

Defendant, the Caldwell Manufacturing Company ("Caldwell"), by its attorneys Harris Beach PLLC, submits the following answers to plaintiffs' First Request for Documents and Things (Nos. 1-34):

**REQUEST NO. 1**:

All documents and things that were reviewed, referred to, relied upon, consulted, or identified in connection with investigating or responding to Amesbury's First Set of Interrogatories.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome. Subject to and without waiving these objections, Caldwell that all non-privileged documents reviewed in responding to these interrogatories will be produced subject to a protective order.

**REQUEST NO. 2**:

All documents and things referring or relating to any of the subjects of Amesbury's First Set of Interrogatories.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome. Subject to and without waiving these objections, Caldwell states that the items used in answering

Amesbury's interrogatories were referred to in request No. 1 above, and, to the extent Caldwell is

able to identify non-privileged, responses documents, the same will be produced in the manner in

which they are kept in the ordinary course of business subject to a protective order.

**REQUEST NO. 3**:

    All documents and things referring or relating to any of the patents-in-suit.

        **ANSWER**:

        Caldwell objects to this document request to the extent it seeks items "relating" to the

patents-in-suit as vague, overly broad and unduly burdensome. Subject to and without waiving these

objections, Caldwell states it has: (1) copies of the patents-in-suit; (2) the file histories for the

patents-in-suit; and (3) correspondence from Amesbury regarding the patents-in-suit.    These

documents will be produced. An ongoing search of Caldwell's records may also produce additional

documents, which will be made available subject to a protective order. Caldwell has withheld as

privileged documents generated by counsel regarding to the patents-in-suit.

**REQUEST NO. 4**:

    All documents and things referring or relating to the dates and circumstances of Caldwell

first becoming aware of each of the patents-in-suit.

        **ANSWER**:

        Caldwell objects to this document request as vague. Subject to and without waiving

this objection, Caldwell will produce non-privileged documents responsive to this request subject to

a protective order. Caldwell has withheld as privileged documents generated by counsel regarding

the patents-in-suit.

**REQUEST NO. 5**:

All documents and things referring or relating to any opinion, advice or comments of any person involving the validity, enforceability, infringement or scope of any of the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as overly broad, and because it seeks information subject to the attorney-client and/or work product privileges against disclosure. Caldwell has withheld as privileged documents generated by counsel regarding the patents-in-suit. Subject to and without waiving its objections, Caldwell will produce non-privileged documents responsive to this request subject to a protective order, to the extent they exist.

**REQUEST NO. 6**:

All documents and things referring or relating to the specification, claims or drawings in any of the patents-in-suit or any portion of the prosecution histories of any of the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as overly broad, and because it seeks information subject to the attorney-client and/or work product privileges against disclosure. Caldwell has withheld as privileged documents generated by counsel relating to the patents-in-suit. Subject to and without waiving these objections, Caldwell states it has: (1) copies of the patents-in-suit; and (2) the file histories for the patents-in-suit. These documents will be produced. An ongoing search of Caldwell's records may also produce additional non-privileged documents, which will be made available subject to a protective order.

**REQUEST NO. 7**:

All documents and things referring or relating to any oral or written statement made by Caldwell or anyone on Caldwell's behalf as to whether or not Caldwell was or is infringing any of the patents-in-suit or that any product of Caldwell infringes any of the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as it is vague and seeks privileged information. Subject to and without waiving this objection, Caldwell will produce correspondence relating to Caldwell's statements regarding the alleged infringement of the patents-in-suit, to the extent it exists, subject to a protective order.

**REQUEST NO. 8**:

All documents and things referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome. Caldwell also objects to the definition of the term "Window Product" in that it potentially implicates hundreds of Caldwell products.    Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. ("Amesbury") have not limited that term to those Caldwell products which may allegedly infringe the patents-in-suit. Caldwell will limit its responses to Request Nos. 9 through 19 and 28 below to those specific products included in the definition of the term "Window Product" and those ascertained from correspondence between the parties.    Subject to and without waiving these objections, Caldwell will produce documents and things relating to its Series 86xt, Series 97ez and Quick-Tilt*nc products, including representative specimens, sales materials, and sales records

subject to a protective order.    As to other products, Caldwell will produce certain sales materials initially and supplement its response, as needed, following Amesbury's review of same.

**REQUEST NO. 9:**

Representative specimens of each Window Product identified in response to Amesbury's Interrogatory No. 1.

**ANSWER:**

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above.    Subject to and without waiving these objections, Caldwell will produce representative specimens for its Series 86xt, Series 97ez and Quick-Tilt*nc products and certain sales materials for its other products, subject to a protective order.  Caldwell will supplement its responses, as needed, following Amesbury's review of same.

**REQUEST NO. 10:**

All documents and things referring or relating to any research, design, testing or development work concerning any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

**ANSWER:**

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above.    Furthermore, many of the requested documents are irrelevant, as an infringement analysis of Caldwell's products can be performed without detailed research, design, testing or development documents.  Subject to and without waiving these objections, Caldwell will produce certain documents as they are kept in the ordinary course of business regarding the design and development of its Series 86xt, Series 97ez and Quick-Tilt*nc products, subject to a protective order.

**REQUEST NO. 11**:

All documents and things referring or relating to any search, consideration or assessment as to whether any of the Window Products identified in response to Amesbury's Interrogatory No. 1 infringe any patent, including, but not limited to, the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as overly broad, and because it seeks information subject to the attorney-client and/or work product privileges against disclosure. Caldwell also objects to this request for the reasons set forth in its response to Request No. 9 above. Caldwell has withheld as privileged documents generated by counsel relating to the patents-in-suit. Subject to and without waiving its objections, Caldwell will produce non-privileged documents responsive to this request subject to a protective order, to the extent they exist.

**REQUEST NO. 12**:

All documents and things referring or relating to all revenues and profits realized on the sale of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including but not limited to, sales records, costs records, purchase orders, invoices, receipts, bills of lading, billing ledger sheets, accounts receivable, financial statements and tax returns.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above. Subject to and without waiving these objections, Caldwell will produce, pursuant to a protective order, documents as they are kept in the ordinary course of business relating to the revenues and profits realized on the sale for its Series 86xt, Series 97ez and Quick-Tilt*nc products, with the exception of its tax returns, which are confidential.

**REQUEST NO. 15**:

All draft and executed contracts referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above. Subject to and without waiving these objections, Caldwell will produce pursuant to a protective order proposed and executed contracts relating to its Series 86xt, Series 97ez and Quick-Tilt*nc products, to the extent such contracts exist and are kept in the ordinary course of business.

**REQUEST NO. 16**:

All documents and things referring or relating to patent or product licenses or sublicenses concerning window hardware or fenestration hardware, to which Caldwell is a party or which Caldwell has contemplated or is contemplating being a party.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome. Caldwell also objects to this interrogatory as vague if, by referring to "fenestration hardware," it seeks information in addition to that relating to "window hardware." Subject to and without waiving these objections, Caldwell will produce licenses relating to its Series 86xt, Series 97ez and Quick-Tilt*nc products, subject to a protective order, to the extent they exist.

**REQUEST NO. 17**:

All documents and things referring or relating to the original design or specifications of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, any changes in

the design or specifications of said Window Products, or the reasons for any changes in the design or specifications of said Window Products.

**ANSWER:**

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above. Furthermore, many of the requested documents are irrelevant, as an infringement analysis of Caldwell's products can be performed without detailed research, design, testing or development documents. Subject to and without waiving these objections, Caldwell will produce the relevant design documents relating to its Series 86xt, Series 97ez and Quick-Tilt*nc products subject to a protective order.

**REQUEST NO. 18:**

All documents and things referring or relating to the discontinuance of selling or manufacturing of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including but not limited to all documents having a bearing on the reason or reasons for the discontinuance of the Window Product.

**ANSWER:**

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above. Subject to and without waiving this objection, Caldwell will produce any documents kept in the ordinary course of business concerning the discontinuance of its Series 86xt products subject to a protective order.

**REQUEST NO. 19:**

All documents and things referring or relating to any recall from the market (including, but not limited to, customers, retailers, wholesalers, distributors and consumers) of any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

**ANSWER**:

Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above.    Caldwell also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving these objections, Caldwell states that none of its Series 86xt, Series 97ez or Quick-Tilt*nc products have been recalled.

**REQUEST NO. 20**:

All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Counterclaims.

**ANSWER**:

Caldwell objects to this document request as overly broad, unduly burdensome and vague.  Upon information and belief, all documents currently in Caldwell's possession that relate to its counterclaims and are not privileged are being produced as they are kept in the ordinary course of business subject to a protective order.  Caldwell reserves its right to supplement this production as additional material is obtained and/or discovered.

**REQUEST NO. 21**:

All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Affirmative Defenses.

**ANSWER**:

Caldwell objects to this document request as overly broad, unduly burdensome and vague. Upon information and belief, all documents currently in Caldwell's possession that relate to its affirmative defenses and are not privileged are being produced as they are kept in the ordinary

HARRIS BEACH ≝
ATTORNEYS AT LAW

course of business subject to a protective order. Caldwell reserves its right to supplement this production as additional material is obtained and/or discovered.

**REQUEST NO. 22:**

All documents and things referring or relating to Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States.

**ANSWER:**

Caldwell objects to this document request as overly broad, unduly burdensome and vague. Upon information and belief, all documents currently in Caldwell's possession that relate to its affirmative defenses and are not privileged are being produced as they are kept in the ordinary course of business subject to a protective order. Caldwell reserves its right to supplement this production as additional material is obtained and/or discovered.

**REQUEST NO. 23:**

All documents and things referring or relating to Caldwell's assertion that Amesbury's claims are barred by prosecution history estoppel.

**ANSWER:**

Caldwell objects to this document request as overly broad and vague. Upon information and belief, all documents currently in Caldwell's possession that relate to its estoppel defense and are not privileged are being produced as they are kept in the ordinary course of business subject to a protective order. Caldwell reserves its right to supplement this production as additional material is obtained and/or discovered.

**REQUEST NO. 24:**

All documents and things referring or relating to Caldwell's assertion that Amesbury's claims for damages are limited by 35 U.S.C. §286 or §287.

**ANSWER:**

Caldwell objects to this document request as overly broad and vague. Subject to and without waiving these objections, Caldwell states that it will seek material responsive to this request from Amesbury and/or other sources in discovery, and will supplement its production at that time.

**REQUEST NO. 25:**

All documents and things referring or relating to the charges of infringement identified in response to Interrogatory No. 11.

**ANSWER:**

Caldwell objects to this document request as overly broad and vague. Caldwell cannot respond to this request because no charges of infringement were the subject of inquiry, or identified in response to Interrogatory No. 11.

**REQUEST NO. 26:**

All documents and things referring or relating to Caldwell's denial that the infringement of the patents-in-suit is willful.

**ANSWER:**

Caldwell objects to this document request as overly broad. Subject to and without waiving this objection, Caldwell states that documents bearing on willfulness include: (1) the patents-in-suit; (2) the file histories for the patents-in-suit; (3) Prosser, U.S. Patent No. 3,091,797; (4) Thompson, U.S. Patent No. 6,840,011, and its file history; (5) DeNormand, U.S. Pat. No. 6,041,746, (6) Berndt, U.S. Patent No. 4,704,821; (7) certain sales and design documents generated by Caldwell; and (8) product information from Anderson Corporation. These documents will be produced pursuant to a protective order. Caldwell has withheld as privileged documents generated by counsel relating to the patents-in-suit.

HARRIS BEACH ℡
ATTORNEYS AT LAW

12

**REQUEST NO. 27**:

All documents and things referring or relating to any claim of damages by Caldwell against Amesbury.

  **ANSWER**: Caldwell objects to this document request as overly broad and vague. Subject to and without waiving these objections, Caldwell has no responsive documents.

**REQUEST NO. 28**:

All documents and things that may or will be used at trial or any evidentiary hearing in this matter.

  **ANSWER**: Caldwell objects to this document request as overly broad, premature and because it seeks information subject to the work product privilege. To the extent not produced in response to another request, Caldwell will produce such non-privileged documents and things at such time required by a scheduling order of the Court.

**REQUEST NO. 29**:

All pages from Caldwell's past and present web sites referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

  **ANSWER**:

  Caldwell objects to this document request as overly broad and unduly burdensome for the reasons set forth in its response to Request No. 9 above. Subject to and without waiving these objections, Caldwell will produce all pages from its current websites, as well as past websites, to the extent they exist.

**REQUEST NO. 30**:

Copies of documents which describe the corporate structure of Caldwell.

**ANSWER:**

Caldwell objects to this document request as overly broad and vague. Subject to and without waiving these objections, Caldwell will produce a current organizational chart subject to a protective order.

**REQUEST NO. 31:**

All financial statements and tax returns of Caldwell.

**ANSWER:**

Caldwell objects to this document request as overly broad, without a limitation as to time, and as seeking confidential materials. Subject to and without waiving these objections, Caldwell will produce financial statements for the fiscal years 2003 through 2004 subject to a protective order.

**REQUEST NO. 32:**

All documents and things identified in Caldwell's Rule 26(a) disclosure.

**ANSWER:**

These items will be produced subject to a protective order.

**REQUEST NO. 33:**

All documents and things referring to, relating to, or constituting the specification, claims or drawings in any Caldwell patent or patent application relating to any Window Product, or any portion of the prosecution histories relating to any Window Product.

**ANSWER:**

Caldwell objects to this document request as overly broad, unduly burdensome and vague. In addition, the request seeks information covered by the attorney-client and/or work product

privileges.    Subject to and without waiving these objections, Caldwell will produce copies of all of its patents relating to any Window Product.

**REQUEST NO. 34**:

All documents and things referring to, relating to, or constituting any prior art to the patents-in-suit.

**ANSWER**:

Caldwell objects to this document request as overly broad.  Subject to and without waiving this objection, Caldwell will produce (subject to a protective order): (1) the patents-in-suit; (2) the file histories for the patents-in-suit; (3) Prosser, U.S. Patent No. 3,091,797; (4) Thompson, U.S. Patent No. 6,840,011, and its file history; (5) DeNormand, U.S. Pat. No. 6,041,746, (6) Berndt, U.S. Patent No. 4,704,821; and (7) product information from Anderson Corporation. These documents will be produced pursuant to a protective order.

Dated:  June 10, 2005

HARRIS BEACH PLLC

By:

Paul J. Yesawich, III
Neal L. Slifkin
Laura W. Smalley
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

-and-

BROWN & MICHAELS, P.C.
Christopher A. Michaels
Eugene S. Stephens
400 M&T Bank Building
118 North Tioga Street
Ithaca, New York 14850
Telephone: 607-256-2000

*Attorneys for Defendant*

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:

       Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP. That on the 10th day of June, 2005 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed upon the following:

GOODWIN PROCTER LLP
Douglas J. Kline, Esq.
Safraz W. Ishmael, Esq.
Exchange Place
Boston, MA 02109-2881

by causing a true copy thereof, properly and securely enclosed in a sealed wrapper for Federal Express marked for June 13th a.m. delivery.

                     Karen J. Jenness

Sworn to before me this
10th day of June 2005

    Notary Public

AMY M. DANN
Notary Public, State of New York
Qualified in Monroe County
NO. 01DA5077658
Commission Expires May 12, 2007

HARRIS BEACH
ATTORNEYS AT LAW