UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

                Plaintiffs,

-vs-                                          Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING COMPANY,

                Defendant.

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO AMESBURY'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL
## MEMORANDUM IN FURTHER SUPPORT OF ITS MOTOIN TO COMPEL

HARRIS BEACH PLLC
Attorneys for Defendant
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

**PRELIMINARY STATEMENT**

This memorandum of law is respectfully submitted in opposition to Amesbury's motion for leave to file a supplemental memorandum in further support of its motion to compel discovery filed with this Court on November 30, 2005 (Docket No. 45). For the reasons set forth below, Amesbury's motion should be denied.

**FACTS**

This motion is confined to documents regarding a Caldwell product known as the original "Quick Tilt" product and covers. Pursuant to this Court's scheduling conference on October 27, 2005, discovery and discovery motions were to be completed on or before November 30, 2005. Amesbury filed a motion to compel on November 30, 2005 seeking an order requiring Caldwell to respond fully to Amesbury's discovery requests and to provide an adequate privileged log. That motion did not request documents regarding the original Quick Tilt product or covers.

In this application that was filed after the November 30, 2005 deadline had expired, Amesbury seeks leave for permission to serve a supplemental memorandum of law. Although Amesbury classifies this application as a "supplemental memorandum", Amesbury's motion is in fact a new motion, which is untimely under the October 27, 2005 Order. It seeks new documents neither requested prior to the November 30, 2005 deadline nor addressed in its original motion. Although Amesbury claims it is entitled to additional discovery at this late juncture, its application should be denied because it failed to request these documents despite knowing of their existence long before the November 30, 2005 deadline.

Indeed, Amesbury claims that it is entitled to discovery relating to a Caldwell product known as the "original" Quick-Tilt product and the Generation I cover. Amesbury knew of the existence of these products as early as June or July, 2005. On or about June 10, 2005, Caldwell

responded to Amesbury's Request for Documents and Things, agreeing to produce documents relating to three products: the Quick-Tilt*nc, 86xt and 97et balances. It also agreed to produce "sales materials" for its other products and supplement its responses as needed:

> **REQUEST NO. 8**:
> All documents and things referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.
>
> **ANSWER**:
> Caldwell objects to this document request as overly broad and unduly burdensome. Caldwell also objects to the definition of the term "Window Product" in that it potentially implicates hundreds of Caldwell products. Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. ("Amesbury") have not limited that term to those Caldwell products which may allegedly infringe the patents-in-suit. Caldwell will limit its responses to Request Nos. 9 through 19 and 28 below to those specific products included in the definition of the term "Window Product" and those ascertained from correspondence between the parties. Subject to and without waiving these objections, Caldwell will produce documents and things relating to its Series 86xt, Series 97ez and Quick-Tilt*nc products, including representative specimens, sales materials, and sales records subject to a protective order. As to other products, Caldwell will produce certain sales materials initially and supplement its response, as needed, following Amesbury's review of same.

On July 19, 2005, Caldwell produced to Amesbury sales materials relating to its products (Bates No. C000744, Ex. "C"), which included the original Quick-Tilt product.

Moreover, Amesbury also had a further opportunity to learn of the existence of the "original" Quick-Tilt product and the Generation I cover at the deposition of Thomas S. Batten, which occurred on November 8, 2005. Thus, although Amesbury now seeks discovery relative to the "original" Quick-Tilt product and the Generation I cover, Amesbury was aware of the existence of these products well before the close of discovery on November 30, 2005. Amesbury's application, thus, should be denied.

ARGUMENT

POINT I

AMESBURY'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM OF LAW SHOULD BE DENIED BECAUSE IT DID NOT FOLLOW THE PROPER PROCEDURE.

Pursuant to Federal Rules of Civil Procedure 16(b), scheduling orders "shall not be modified except upon a showing of good cause". F.R.C.P. 16(b). Good cause will only be shown if the scheduling deadlines cannot be met despite a party's diligence. Tele-Connections, Inc. v. Perception Technology Corp., 1990 WL 180707 (D. Mass. 1990); McLaughlin v. McDonald's Corp., 203 F.R.D. 45 (D. Mass 2001); Carrie v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997); 6A Wright, Miller & Kane, *FEDERAL PRACTICE AND PROCEDURES*, §1522.1 at 231 (2d ed. 1990). "In other words, to demonstrate 'good cause' a party must show that despite their diligence the timetable could not have reasonably been met". Carrie, 175 F.R.D. 439 at 446. Generally, "good cause" may be founded upon proof of newly-discovered evidence or other unforeseeable hardships. Mere attorney inadvertence is insufficient. Id., 175 F.R.D. 439 at 448.

As the Western District of New York Court recently cautioned:

> "[s]trick enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine [but] if the courts do not take seriously their own scheduling orders, who will? The court cannot in good conscience ignore the clear authority applying the good cause requirement, particularly in a case, as here, where the party requesting relief offers no facially persuasive reason to do so".

Id. at 448.

In this case, the Amesbury never made a motion to amend the scheduling order as required. Amesbury makes a backdoor attempt to file a new motion to compel as a

3

"supplemental" memorandum of law without any legal authority. Nowhere in Amesbury's pending motion to compel (Docket No. 45) did Amesbury seek the production of documents relative to the "original" Quick-Tilt product and the Generation I cover despite its awareness of the existence of that product. Amesbury's motion is a new motion that should denied because it was filed after discovery had closed and because, as addressed below, Amesbury has offered no good cause for ignoring the discovery motion deadline.

### POINT II

**AMESBURY FAILED TO PROFFER SUFFICIENT EVIDENCE TO SATISFY THE RULE 16 "GOOD CAUSE" STANDARD.**

Where a motion is brought after the expiration of the time allotted in the applicable scheduling order, the moving party must demonstrate "good cause" to satisfy Federal Rule of Civil Procedure 16(b). F.R.C.P. 16(b). Because it has failed to show good cause for failure to request the relief sought in its motion prior to the November 30, 2005 deadline, Amesbury's motion should be denied.

Amesbury's claims that it did not discover the existence of the "original" Quick-Tilt product and the Generation I cover until the deposition of Jeffrey Robertson on November 29, 2005 is without merit because Caldwell served Amesbury with the Caldwell information binder, Bates numbered. C000744, which included references to the "original" Quick-Tilt product and the Generation I cover on or about July 19, 2005- well before the discovery deadline expired.

Moreover, on or about June 10, 2005 and specifically in response to Amesbury's request No. 8 to its Demand for Documents, Caldwell produced documents relating to its Series 86xt, Series 97ez, and Quick-Tilt*nc products including representative specimens, sales materials, and

4

sales records all subject to the protective order. Accordingly, since Amesbury was aware the "original" Quick-Tilt product and the Generation I cover, its motion should be denied.

Also, Amesbury was aware of the existence of the "original" Quick-Tilt product and the Generation I cover at the November 8, 2005 deposition of Thomas S. Batten. Mr. Batten testified:

> A: And then we have plain Quick Tilt.
>
> Q: 'Plain Quick Tilt,' you said?
>
> A: The original Quick Tilt product.
>
> Q: And that is just called Quick Tilt?
>
> A: Just called Quick Tilt.

See Ex. "D" page 149, lines 23-25, page 150, lines 1-3.

> Q: Does the original Quick Tilt also have a spine?
>
> [Mr. Slifkin:   objection]
>
> A: The original Quick Tilt covers did have a spine, yes.
>
> Q: Did it have a top cover portion that you described as being depicted in Exhibit 16?
>
> A: Yes.

See Ex. "D" page 164, lines 16-23.

Mr. Batten's testimony clearly confirmed the existence of the additional Quick Tilt product and covers. Amesbury, therefore, knew about these products long before the expiration of the November 30, 2005 discovery deadline, but failed to request these documents in a timely manner. As such, its motion should be denied.

## POINT III

### LOCAL RULE 37.1 IS INAPPLICABLE.

Although Local Rule 37.1 requires the parties to a lawsuit to consult one another prior to filing a motion, Caldwell did consult and confer with Amesbury prior to its initial application. Rule 37 provides:

> Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange the conference . . . . Failure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion.

Local Rule 37.1(A).

On the one hand, if this motion is truly supplemental, (a point that Caldwell contests), Local Rule 37.1 was already invoked and fulfilled prior to the time Amesbury filed its initial motion to compel considering the parties did consult one another on a number of occasions prior to Amesbury's original motion to compel. On the other hand, if this motion is a new motion, filed outside the discovery deadline, Caldwell had no obligation to consult and confer with Amesbury because the application was made after discovery closed. Although Amesbury claims it sought a conference within the week of December 4-10, 2005 (a point that Caldwell disputes as it is not clear from Caldwell's December 1, 2005 letter), Caldwell was under no obligation to confer with Amesbury because its original motion was already filed and/or because discovery was closed as of November 30, 2005. As such, Amesbury's allegation that Caldwell failed to comply with Local Rule 37.1 is unpersuasive.

## CONCLUSION

Based on the well-settled case law, Amesbury's motion to file a supplemental memorandum of law should be denied because its application is untimely, lacks good cause, and because Caldwell fully complied with the local rules.

Dated: December 21, 2005

                                          Respectfully submitted,

                                          HARRIS BEACH PLLC

                                        By: /s/ Neal L. Slifkin
                                              Neal L. Slifkin
                                              Laura W. Smalley
                                              Attorneys for Defendant
                                              99 Garnsey Road
                                              Pittsford, New York 14534
                                              Telephone: 585-419-8800

210199 23474.1
12/21/2005 4:59 PM