UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

**AMESBURY'S POST *MARKMAN* HEARING BRIEF**

Amesbury submits this short memorandum of law in response to the Court's request at the December 22, 2005, hearing on claim construction.

**I.    Claim 8 of U.S. Patent No. 5,365,638
Is Not A "Means-Plus-Function" Claim**

A claim that uses the term "means," but that recites sufficient structure to support the claimed function (or that does not recite sufficient function) rebuts the presumption that it should be construed under 35 U.S.C. § 112, ¶ 6. In Cole v. Kimberly-Clark Corp., 102 F.3d 524, 531 (Fed. Cir. 1997), for example, the Federal Circuit affirmed a district court decision that the claim term "perforation means . . . for tearing" is not a § 112, ¶ 6 means-plus-function element, because the term "perforation" recites sufficient structure supporting the claimed tearing function. The court explained:

> The claim describes not only the structure that supports the tearing function, but also its location (extending from the leg band to the waist band) and extent (extending through the outer impermeable layer). An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of [§ 112, ¶ 6]. Here, the claim drafter's perfunctory addition of the word

>    "means" did nothing to diminish the precise structural character of this element.

Id. at 531.  The court declined to apply a means-plus-function analysis and instead construed the term "perforation means" simply to mean "perforations."

Cole is directly on point here.  Claim 8 of Amesbury's '638 patent describes "projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned . . . ."  A "projection" is a "thing or part that extends outward beyond a prevailing line or surface."  The American Heritage Dictionary Of The English Language 1448 (3d ed. 1992).  Claim 8 also describes both the location of the projection – between the inwardly turned opposite flanges of the channel means – and its extent – sufficient to cooperate with the channel flanges.  "An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of [§ 112, ¶ 6]."  Cole, 102 F.3d at 531.

Similarly, many other cases have held that a claim that recites sufficient structure should not be construed under § 112, ¶ 6 despite that it might use the term "means" as well.  See Phillips v. AWH Corp., 415 F.3d 1303, 1311 (Fed. Cir. 2005) (holding that the district court erred in construing the term "means disposed inside the shell for increasing its load bearing capacity" as a means-plus-function element under § 112, ¶ 6 where the claim specifically identified "internal steel baffles" as the structure that performs the recited function of increasing the load bearing capacity); Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1305 (Fed. Cir. 1999) (holding that the district court erred in construing the claim term "positioning means" as a means-plus-function element under § 112, ¶ 6 because the claim recited sufficient structure to perform the claimed function); York Prods., Inc. v. Central Tractor Farm & Family Center, 99 F.3d 1568, 1574 (Fed. Cir. 1996) (holding that the claim term "means formed on the upwardly extending

liner sidewall portions" was not a means-plus-function element as the claim recited structure and the there was no clear link between a function and the "means" element). Several other recent Federal Circuit cases also decline to apply § 112, ¶ 6 where sufficient structure is recited:

- TI Group Automotive Systems (North America), Inc. v. VDO North America, L.L.C., 375 F.3d 1126, 1135 (Fed. Cir. 2004): In a patent for pumping fuel from a fuel tank to an engine, the Federal Circuit found that the district court erred by construing the term "pumping means" as a means-plus-function element when the claim limitation at issue recited sufficient structure. The claim limitation read "pumping means . . . including a nozzle and a venturi tube in alignment with the nozzle …" The Federal Circuit held that there was sufficient structure recited ("including a nozzle and venturi tube in alignment with the nozzle") and therefore means-plus-function analysis was not applicable.

- Allen Engineering Corp. v. Bartell Industries, Inc., 299 F.3d 1336 (Fed. Cir. 2002): In a patent for a riding concrete finishing machine, the Federal Circuit held that nearly all of the claim elements using the word "means" did not fall within the ambit of § 112, ¶ 6. These elements included "pivot steering box means," "friction disk means," "torque rod means," "knuckle spring means," "connecting shaft means," "crank means," "clutch plate means," "fork means," "cable means," and "lever arm means." 299 F.3d at 1347. Although the drafter "was clearly enamored of the word 'means,'" the Federal Circuit held that "the claim drafter's perfunctory addition of the word 'means' did nothing to diminish the precise structural character of [the] element. All of these limitations recite precise structure well understood by those of skill in the art. Accordingly, the word 'means' in these limitation may be ignored." Id. (alterations in original) (internal citations omitted).

- Wenger Manufacturing Co. v. Coating Machinery Systems, Inc., 239 F.3d 1225 (Fed. Cir. 2001): In a patent for an apparatus for coating and drying food products, the Federal Circuit affirmed the district court's conclusion that the claim limitation reading "means defining a plurality of product coating zones … each of said zones including at least one spray nozzle directed toward said sidewall for pressurized spraying of a coating on the food product…" did not fall within § 112, ¶ 6. First, it was "unclear whether there is any function recited that corresponds to the word 'means.'" 239 F.3d at 1237. Second, even if there were a function, "§ 112, ¶ 6 does not apply because the claim recites sufficiently definite structure for performing the function of 'defining.'" Id.

- Envirco Corp. v. Clestra Cleanroom, Inc., 209 F.3d 1360 (Fed. Cir. 2000): The Court reversed the district court, holding that the presumption invoking § 112, ¶ 6 did not apply to claim term "second baffle means," because sufficient structure was recited. First, "baffle" is itself a structural term, and that alone rebuts the presumption. 209 F.3d at 1365. Second, the claim language described the particular structure of the particular baffle. "The recital of this structure conflicts with the statutory requirement that means-plus-function claim elements state a function 'without a recital of structure.'" Id.

3

**II.     The '264 Patent's Written Description And Drawings Are Consistent**

Amesbury has been unable to identify any cases, as the Court requested, concerning patents having written descriptions that appear to conflict with their drawings. More importantly, however, Amesbury's '264 patent includes no such conflict. The patent explains that "FIGS. 4A and 4B show <u>an embodiment</u> of a block and tackle window balance 300 in accordance with the teachings of the present invention." '264 patent, col. 4, ll. 24.26 (emphasis added). The depicted window balance includes a bottom guide 315, a U-shaped channel 305, and a bottom guide roller 350. In the depicted embodiment of the invention, "the bottom guide 315 extends beyond the rigid U-shaped channel 305 and therefore, the bottom guide roller 350 is located outside of the rigid U-shaped channel 305." <u>Id.</u>, col. 4, ll. 46-49. But, the '264 patent's written description never suggests that the invention is limited in all embodiments to such an arrangement of the bottom guide roller and, in fact, the claims make clear that it is not. <u>See, e.g.</u>, <u>Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.</u>, 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration.").

For example, claim 4 describes a block and tackle window balance including a bottom guide, "wherein a portion of the <u>bottom guide</u> is external to the channel." <u>Id.</u>, col. 6, ll. 61-62 (emphasis added). This description plainly allows that a portion of the bottom guide, and thus a portion of the bottom guide roller, might be internal to the channel. Similarly, as discussed at the hearing, claim 2 describes a block and tackle balance, "wherein the <u>bottom guide roller</u> is located external to the channel." <u>Id.</u>, col. 6, ll. 57-58 (emphasis added). Claim 1, therefore, from which claim 2 depends, necessarily allows for a bottom guide roller that may be located either internal or external (or some combination of both) to the channel. <u>See, e.g.</u>, <u>AK Steel Corp. v. Sollac</u>,

4

344 F.3d 1234, 1242 (Fed. Cir. 2003) (noting that under the doctrine of claim differentiation, an independent claim is presumed to be broader the its dependent claims).

### III. The Federal Circuit's December 28, 2005 Opinion in *Cannon Rubber Ltd.*

On December 28, 2005, after this Court's hearing on claim construction, the Federal Circuit issued a non-precedential opinion in Cannon Rubber Ltd. v. The First Years, Inc., No. 05-1063, 2005 WL 3542910 (Fed. Cir. 2005) (copy attached as Ex. 1), that may be of interest to this Court in deciding on the correct construction of the claim terms of the '264 patent.  In Cannon the Federal Circuit held that the district court erred by construing the claim limitation "diaphragm disposed in the body" to mean "diaphragm disposed entirely within the body."  Id. The court explained that, "the term 'in' is a simple, non-technical term, and that under its ordinary meaning, a 'diaphragm disposed in the body' includes both diaphragms contained entirely and partially in the body."  Id.  In accordance with this recent opinion, Caldwell's position that the claim term "'bottom guide roller mounted in the bottom guide' requires the bottom guide roller to be mounted to the bottom guide and be located entirely within the bottom guide" is clearly erroneous.  (Caldwell's Cl. Constr. Brief at 13.)

        Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
Dated: January 6, 2006          **AMESBURY SPRINGS LTD.**

5

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing "AMESBURY'S POST *MARKMAN* HEARING BRIEF," filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 6, 2006.

                        /s/ Safraz W. Ishmael
                        Safraz W. Ishmael

Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2005 WL 3542910 (C.A.Fed. (Ill.))
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.NOTE: Pursuant to Fed.Cir.R. 47.6, this order is not citable as precedent. It is public record. Please use FIND to look at the applicable circuit court rule before citing this opinion. Federal Circuit Rule 47.6. (FIND CTAF Rule 47.6.)
United States Court of Appeals,Federal Circuit.
**CANNON RUBBER** LIMITED and **Avent America**, Inc., Plaintiffs-Appellants,
v.
THE FIRST YEARS, INC., Defendant-Appellee.
**No. 05-1063.**

Dec. 28, 2005.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.
Cannon Rubber Limited and Avent America, Inc. (collectively "Cannon") appeal from the decision of the United States District Court for the Northern District of Illinois granting summary judgment of noninfringement of U.S. Patent 5,749,850 in favor of The First Years, Inc ("TFY"). *Cannon Rubber Ltd. v. The First Years, Inc.,* No. 03-C-4918 (N.D.Ill. Sept. 27, 2004) (*"Decision"* ). Because the district court erred in its construction of the claim limitation "a deformable diaphragm disposed in the body," we *vacate* its decision granting judgment of noninfringement and *remand* for further proceedings consistent with this opinion.

BACKGROUND

The '850 patent is entitled "Breast Pump," and was issued to Cannon Rubber Limited as the assignee. The invention, with one of the two expressly disclosed embodiments shown below, relates to a device that is capable of pumping milk from the breast of a nursing mother. The stated object of the patent is to disclose an improved breast pump having a simpler design than its predecessors, thus making it easier to use and clean. '850 patent, col. 1, II. 46-48. The illustrated breast pump has a body (1) with the following components attached to it: (1) a cone-shaped appendage (8, 9) that fits over the breast and nipple region; (2) an actuating means, shown in the figure below as a lever mechanism consisting of a plastic handle (40) with a nose portion (43) positioned over a pivot (17); (3) a stem connector (26) that connects the nose portion to an elastic diaphragm (20); and (4) a valve (11) located below the diaphragm. A milk receiving container can be screwed onto the body of the pump by screw threads (4).



The invention operates by having the user apply pressure to the actuating means either manually, *e.g.,* squeezing a pump handle, or through an electrical means, *e.g.,* an electric motor. This results in the diaphragm being upwardly distorted. According to the patent, the upward distortion of the diaphragm creates negative pressure in the nipple region sufficient to simulate lactation. *Id .,* col. 1, II. 54-57. The negative pressure is confined to the nipple region and the upper portion of the pump body by a valve that closes when negative pressure is created, but opens as the pressure is being relieved. Opening of the valve allows the milk, which was trapped in the pump body while in the negative-pressure state, to flow into a receiving container. The nursing mother's milk is accumulated by repeatedly applying and releasing pressure to the actuating means, thereby repeatedly creating and relieving negative pressure in the nipple region and the body of the pump.

On July 16, 2003, Cannon filed suit against TFY in the United States District Court for the Northern District of Illinois for infringement of claims 3 and 5 of the '850 patent. TFY manufactures and sells breast pumps. The products accused of infringement are TFY's Easy Comfort Manual Breast Pump and Easy Comfort Deluxe Manual Breast Pump (collectively "accused products"). TFY denied Cannon's allegations of infringement and argued that the patent was invalid under 35 U.S.C. § § 102 and 112, ¶ 1. *Cannon Rubber Ltd. v. The First Years, Inc.,* No. 03-C-4918, slip op. at 1 (Sept. 17, 2004). On September

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17, 2004, after conducting a hearing, the court construed certain limitations contained in claims 1, 3, and 5 of the '850 patent. [FN1] *Id.*

> FN1. Claim 1 of the '850 patent, in pertinent part, reads as follows:
> a breast pump comprising:
> a body, said body having an inlet;
> \* \* \*
> a deformable diaphragm disposed in the body;
> actuating means operatively connected to the diaphragm for cyclically moving said diaphragm to generate a negative pressure in the inlet; and
> a valve means mounted in the body for cyclically releasing the negative pressure which is generated in the inlet.
> Claim 3 depends from claim 1 and claim 5 depends from claim 3. Neither claim 3 nor 5, however, contains additional limitations that are at issue in this appeal.

The court construed the claim limitation "diaphragm disposed in the body" as a diaphragm that is "disposed of or mounted entirely within the body of the pump." *Id., slip op. at 19.* To arrive at its claim construction, the court referenced the patent specification's description of the first, in terms of its appearance in the patent, of two disclosed embodiments and explained that the specification uses the phrase "in the body" to describe a diaphragm that is contained entirely within the body of the pump. *Id., slip op. at 18.* To confirm its claim construction, the court compared the first embodiment to the second, which did not have a diaphragm contained entirely within the body of the pump. In the second embodiment, the upper portion of the diaphragm was located outside of the body of the pump and the remaining portions were located inside of the body of the pump. The court noted that for the second embodiment the specification did not recite the "in the body" language, as it did for the first embodiment, but uses the phrase "mounted thereon" to describe the location of its diaphragm. *Id.*

The district court also construed the means-plus-function limitation "valve means mounted in the body for cyclically releasing the negative pressure which is generated in the inlet." The court identified the function of the limitation to be "cyclically releasing the negative pressure which is generated in the inlet and regulating the flow of air through a passageway by opening, closing or obstructing the passageway." *Id., slip op. at 12.* According to the court, this recited function conforms to the ordinary meaning of the word "valve," and the functional language following the preposition "for." *Id.* The court, relying on portions of the specification explaining how the negative pressure is relieved within the body of the pump, then determined that "the corresponding structure [of the valve means] with respect to the first embodiment is the diaphragm 20, the spring 32, and the plug valve 11. As to the second embodiment, the corresponding structure [of the valve means] is the resilient diaphragm 51 and the button valve 80." *Id., slip op. at 13.*

Based on its claim constructions, the district court addressed the parties' competing motions for summary judgment of infringement. In granting TFY's motion for summary judgment of no infringement, the court held that the accused products did not literally meet the "diaphragm disposed in the body" limitation because the upper portion of the accused products' diaphragms lapped over the upper rim of the body of the pump, like the '850 patent's second embodiment, and thus the diaphragms were not contained entirely within the body of the pump. *Decision,* slip op. at 8-9. The court also held that there was no infringement under the doctrine of equivalents because Cannon did not meet its burden of identifying a genuine issue of material fact whether the partially-contained diaphragms of the accused products were equivalent to a diaphragm that is contained entirely within the body of the pump, as required by the claims. *Id., slip op at 10-12.* According to the court, Cannon did not proffer any evidence, *e.g.,* an expert declaration or witness affidavit, that would have allowed a reasonable trier of fact to find that these two types of diaphragms were equivalent. *Id., slip op at 11.* Once it determined that the accused products did not infringe the '850 patent, the court denied TFY's motion for summary judgment of invalidity as moot.

The district court entered final judgment on September 27, 2004. Cannon timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment *de novo,* reapplying the same standard used by the district court. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998). Summary judgment is appropriate if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 3
Slip Copy, 2005 WL 3542910 (C.A.Fed. (Ill.))
**(Cite as: Slip Copy)**

there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed.Cir.1995) (en banc), that we also review *de novo*, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc).

I. *"Diaphragm disposed in the body"*

On appeal, Cannon argues that the district court's decision was based on an erroneous construction of the claim limitation "diaphragm disposed in the body." According to Cannon, by requiring the diaphragm to be "disposed or mounted entirely within the body of the pump," the court did not give the contested limitation its ordinary meaning. Cannon contends that under the ordinary meaning of the phrase "in the body," the entire diaphragm does not need to be "in the body," and thus the court imported the term "entirely" from the specification to unduly narrow the scope of the claims. Cannon also argues that the patentee did not act as its own lexicographer to specially define the phrase "in the body," or clearly disavow coverage of breast pumps with diaphragms that are partially in the body from the claims. Instead, Cannon directs us to the patent's "Summary of the Invention," which it contends describes the diaphragm of the patent's second embodiment as being "in the body" (neither party questions the district court's determination that a portion of the diaphragm of the second embodiment is located outside of the body of the pump).

TFY disputes Cannon's charge that the district court improperly failed to apply the ordinary meaning in construing the claim limitation "diaphragm disposed in the body." TFY basically repeats the analysis contained in the court's *Markman* decision, which noted that the '850 patent specification uses the phrase "in the body" to describe an entirely-contained diaphragm and uses the phrase "mounted thereon" to describe a partially-contained diaphragm. TFY also asserts that the prosecution history supports the court's claim construction. According to TFY, in response to a § 112 rejection, the patentee amended the language of the original claims from "mounting a [ ] diaphragm" to "diaphragm disposed in the body." Presumably viewing the term "mounting" to encompass only a partially-contained diaphragm,

TFY argues that Cannon should not be allowed to recapture previously surrendered subject matter. TFY also downplays Cannon's reliance on a statement in the "Summary of the Invention" as being too ambiguous to overcome the clear distinction in the way the specification describes entirelyversus partially-contained diaphragms in the body.

We agree with Cannon that the district court improperly added the limitation "entirely" in its interpretation of the claim limitation "diaphragm disposed in the body." As an initial matter, we note that the term "in" is a simple, non-technical term, and that under its ordinary meaning, a "diaphragm disposed in the body" includes both diaphragms contained entirely and partially in the body. *See* Brown v. 3M, 265 F.3d 1349, 1352 (Fed.Cir.2001) (recognizing that claim terms may not be technical terms of art, and do not require elaborate interpretation). For example, a trash bag is "in" a trashcan even though a portion of it is hanging outside of the trashcan.

Moving on from the question of plain meaning, we next address whether there is any justification for deviating from it. As discussed in Phillips v. AWH Corp., 415 F.3d 1303, 1316-17 (Fed.Cir.2005), we may depart from the plain meaning of a claim term when the patentee has acted as a lexicographer or when the patentee has clearly limited the scope of the invention through a disclaimer in the specification or prosecution history. We conclude that neither situation occurred here.

As the district court recognized, the patent uses the phrase "in the body" in one instance to describe a diaphragm that is contained entirely within the body of the pump, and the phrase "mounted thereon" in another instance to describe a diaphragm that is contained partially within the body of the pump. These two cited instances, however, do not clearly indicate that the patentee intended to assign a more narrow definition to the phrase "in the body" than it would otherwise possess. *See, e.g.,* Elekta Instrument S.A. v. O.U.R. Scientific Int'l, 214 F.3d 1302, 1307 (Fed.Cir.2000) (for a patentee to act as its own lexicographer defining a claim term differently from its ordinary meaning, the specification must clearly indicate the patentee's intent to do so). Although the phrase "mounted thereon," which indicates that at least a portion of the diaphragm is on the outer surface of the body of the pump, may have a somewhat different meaning than the phrase "diaphragm disposed in the body," the two phrases are not mutually exclusive, *viz.,* a diaphragm

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                              Page 4
Slip Copy, 2005 WL 3542910 (C.A.Fed. (Ill.))
**(Cite as: Slip Copy)**

"mounted thereon" the body can also be a "diaphragm disposed in the body," as the second embodiment of the specification shows. Thus, the specification uses different words to highlight the different ways that a diaphragm may be placed in the body of the pump. Moreover, contrary to TFY's position, the specification unambiguously uses the phrase "in the body" in the "Summary of the Invention" section to refer to diaphragms that are contained both entirely and partially in the body of the pump. '850 patent, col. 2, II. 16-24. And the fact that the specification contains figures of embodiments that are both entirely and partially in the body is a strong indication that the claims were intended to encompass both.

Our review of the prosecution history also does not clearly indicate that the patentee intended to disclaim coverage in the claims for diaphragms that are not contained entirely within the body of the pump. See *Omega Eng'g v. Raytek Corp.,* 334 F.3d 1314, 1325-26 (Fed.Cir.2003) (requiring a disclaimer of subject matter in the prosecution history to be "clear and unmistakable"). Although the patentee amended the claims, which originally recited "mounting a [ ] diaphragm," to a "diaphragm disposed in the body" in response to a § 112 indefiniteness rejection, that was not a clear disavowal of subject matter that was not completely in the body. In his correspondence, the patent examiner did not reject the originally-filed claims on the grounds that the claims containing the limitation "mounting a[ ] diaphragm" read on the prior art or was unsupported by the specification as filed. Rather, the examiner took issue with the apparatus claims being "narrative in form and replete with indefinite and functional or operational language." In making the amendment, the patentee merely replaced "operational" language, *i.e.,* "mounting a[ ] diaphragm," with definite structural language, *i.e.,* a "diaphragm disposed in the body." We are thus hard-pressed to conclude that there has been a surrender of subject matter when the patentee has merely amended the claims to replace an original phrase with a different, but not narrower, amended phrase. At a minimum, this was not a "clear and unmistakable" disclaimer.

II. *"Valve means"*

As an alternative ground for affirming the district court's judgment of noninfringement, TFY argues that the court's construction of the "valve means" limitation, which included a deformable diaphragm as a corresponding structure, precludes a finding of literal infringement. Because the claims recite the limitations "deformable diaphragm disposed in the body" and "valve means" separately, TFY asserts that an accused device must contain separate structures meeting the respective limitations before there can be literal infringement. To support its position, TFY cites *Gaus v. Conair Corp.,* 363 F.3d 1284 (Fed.Cir.2004), which it interprets as instructing that one component of an accused device cannot perform "double duty" and thereby satisfy two separate limitations of a claim. According to TFY, because the accused products have only one structure, *viz.,* a deformable diaphragm, that meets two separate limitations, there can be no literal infringement of the claims.

We do not agree with TFY that the district court's construction of the claim limitation "valve means" compels us to affirm its judgment of noninfringement. We first note that neither TFY nor Cannon challenges the district court's construction of "valve means ." Thus, for purposes of this appeal only, we will assume that the court properly construed the "valve means" limitation. Using that assumption, we conclude that the '850 patent specification does not require that the "deformable diaphragm" and the "valve means" limitations must be embodied by separate components. In fact, the specification teaches that it is the return of the diaphragm to its original, undistorted position that causes the negative pressure in the body of the pump to be "released," thus performing the function of the "valve means" limitation. '850 patent, col. 7, II. 45-51. Because the district court construed the claims to require a single diaphragm that meets both the "deformable diaphragm" and "valve means" limitations, the fact that the accused products have a single diaphragm that meets those claim limitations does not preclude a finding of literal infringement. See *In re Kelley,* 305 F.2d 909, 914 (CCPA 1962) (explaining that "[w]e see no reason why a single structural element ... which performs two separate functions, cannot support a claim reciting broadly these two separate functions"). On the contrary, such a finding would prove that the two limitations have been met. Moreover, under TFY's position that a single diaphragm cannot meet two separate limitations as a matter of law, no device could literally infringe the '850 patent because the district court construed the claims to require a single diaphragm to meet the two limitations. That would be an illogical result.

Moreover, TFY's reliance on *Gaus* to support its position is misplaced. The facts here are readily

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3542910 (C.A.Fed. (Ill.))
**(Cite as: Slip Copy)**

Page 5

distinguishable from *Gaus.* In *Gaus,* the patent at issue was directed to a safety mechanism that prevents fatal shocks to users of electrical appliances, *e.g.,* when the user drops a hairdryer into a bathtub. 363 F.3d at 1285. As TFY notes, the relevant claim language provided that the housing of the claimed device was comprised of "an electrical operating unit" and "a pair of spaced-apart electrically exposed conductive probe networks." In *Gaus* we determined that, based on the description contained in the patent specification, the two limitations were embodied as two separate structural components of the claimed invention. *Id.* at 1288-90. The accused product in *Gaus,* however, did not have two separate components meeting the respective limitations, and thus we held there was no literal infringement. *Id.* at 1290. That is not our case. As explained above, there is nothing in the '850 patent specification or the claims that require the "deformable diaphragm" and "valve means" limitations to be embodied as two separate structural components. On the contrary, the court's construction of those limitations *requires* that both be embodied by the same single structure, *viz.,* a deformable diaphragm. Tellingly, TFY does not cite any case law prohibiting a claim from reciting two limitations embodied by the same structural component.

As another alternative ground for affirming the district court's judgment, TFY argues that the claims are invalid because the "valve means" limitation does not comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 1, in particular, that the specification contains no structure corresponding to the claimed function of the "valve means." TFY's invalidity argument attempts to broaden the district court's judgment. Because the district court did not decide that issue, it is inappropriate for us to do so in this appeal. The matter may be considered on remand.

COSTS

Each party shall bear its own costs.

C.A.Fed. (Ill.),2005.
Cannon Rubber Ltd. v. The First Years, Inc.
Slip Copy, 2005 WL 3542910 (C.A.Fed. (Ill.))

Briefs and Other Related Documents (Back to top)

• 2005 WL 1397789 (Appellate Brief) Reply Brief of Plaintiffs-Appellants Cannon Rubber Limited and Avent America, Inc. (May. 13, 2005) Original Image of this Document (PDF)

• 2005 WL 1178155 (Appellate Brief) Brief for Defendant-Appellee (Apr. 27, 2005)

• 2005 WL 676601 (Appellate Brief) Brief of Plaintiffs-Appellants Cannon Rubber Limited and Avent America, Inc. (Feb. 17, 2005) Original Image of this Document with Appendix (PDF)

• 05-1063 (Docket) (Nov. 05, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.