# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER

Amesbury regrets having to burden the Court with this Motion.  However, Amesbury is left with no other choice as Caldwell has refused to comply fully with this Court's December 22, 2005 Order allowing Amesbury's Motion to Compel Discovery.  Specifically, Caldwell is refusing to produce documents that it previously told the Court it would produce, including critical sales documents relating to an accused product in this case.  After numerous telephone conferences and exchanges of letters, Amesbury has exhausted efforts to resolve this dispute directly.  As a last resort, Amesbury now seeks the Court's intervention to require Caldwell to produce documents in full and immediate compliance with the Court's December 22 Order.

The documents at issue contain sales and invoice data for Caldwell's original Quick-Tilt product and its accessory covers, which Amesbury asserts infringe U.S. Patent No. 5,365,638 ("the '638 patent").  Caldwell previously represented to this Court that it would produce these documents, and the Court ordered it to do so by January 12, 2006.  To date, however, Caldwell has refused to produce the documents.  There is no question that the documents are in Caldwell's

possession and that they are crucial to Amesbury's damages case.  Indeed, the sales figures for the original Quick-Tilt are believed to be significantly higher than for any other accused product. It is imperative that Caldwell produce documents containing complete and accurate sales and invoice figures for all products in all accused product lines immediately – as it already promised *and was ordered* to do – so that Amesbury can have full damages information before the close of expert discovery.  Amesbury's motion to enforce compliance with the Court's Order should be granted.

## <u>INTRODUCTION AND BACKGROUND</u>

Caldwell is refusing to produce documents responsive to Amesbury's Document Request No. 13, which was served on Caldwell on May 5, 2005.  That Request seeks "[a]ll documents and things referring or relating to the sales and distribution of any of the Window Products identified in response to Amesbury's Interrogatory No. 1…" where "Window Product" was defined as "each product … that includes one or more of a: (1) block and tackle balance; (2) balance shoe; and (3) coiled spring mounting element."  Amesbury's First Set of Requests for Documents at 2, 4-5 (copy attached as Exhibit A).  In its initial document productions, however, Caldwell did not include documents related to the original Quick-Tilt product, or documents related to some other products falling within the scope of Request No. 13.

On November 22, 2005, Caldwell's Rule 30(b)(6) representative, Robert Lelio, confirmed that the documents containing sales and invoice data related to the other products in the requested product lines existed and were in Caldwell's possession.  *See, e.g.*, Lelio Dep., 11/22/2005, 106:22 – 108:2  (copy of relevant pages attached as Exhibit B).  The next day, Amesbury followed up by letter, specifically requesting the production of "All sales and invoice data and analysis relating to all products in the Caldwell Series 97 product line … in the Series

86 product line …, and in the Quick-Tilt product line." Letter from Safraz W. Ishmael, Esq. to

David J. Edwards, Esq. dated November 23, 2005 ("November 23 letter") (copy attached as

Exhibit C).

Caldwell did not reply to the November 23 letter or to Amesbury's request for a

discovery conference prior to the Court's November 30, 2005 deadline for filing discovery

motions. Accordingly, on November 30, Amesbury filed a Motion to Compel Discovery seeking

production of (among other things) the documents requested in the November 23 letter, including

"[a]ll sales and invoice data and analyses related to all products in the accused product lines."

Amesbury's Memorandum in Support of Its Motion to Compel Discovery, dated November 30,

2005, at 4 (Docket No. 45).

On December 5, Caldwell finally responded to Amesbury's November 23 letter, agreeing

to produce the requested documents:

> With regard to the documents requested, we note that these items were requested
> at the deposition of Robert Lelio on November 22, 2005. Once we receive and
> review the transcript, *we intend to provide you with such documents to the extent*
> *they exist and are not protected by privilege*.

Letter from Laura W. Smalley, Esq. to Safraz W. Ishmael, Esq., dated December 5, 2005

(emphasis added) ("December 5 letter") (copy attached as Exhibit D).

Two days later, in its Response to Amesbury's Motion to Compel, Caldwell again stated

that it would produce the documents requested in Amesbury's motion and November 23 letter:

> **By letter dated November 23, 2005, Amesbury requested certain documents** at
> the November 22, 2005 deposition of Robert Lelio. Caldwell has not yet obtained
> Mr. Lelio's deposition transcript. As indicated in its letter of December 5, 2005,
> attached as Exhibit "1", **Caldwell has agreed to provide these items to the extent**
> **they exist and are not privileged.**

Response to Motion to Compel, dated December 7, 2005, at 1 (emphasis added) ("December 7

Response") (Docket No. 49).

Caldwell repeated its pledge to produce the requested documents at the motion hearing on December 22. Specifically, the Court asked Caldwell's counsel, Neal Slifkin, about the status of the documents and Mr. Slifkin expressly stated that the documents were being prepared for production and would be produced:

> THE COURT: As to the documents that are sought here –
>
> MR. SLIFKIN: Yes, Your Honor. We have agreed and are ready in a writing[1] to produce the documents that were identified in Mr. Le[l]io's deposition. We are gathering those documents.

Transcript of Motion Hearing, dated December 22, 2005, at 22:2-6 (copy of relevant pages attached as Exhibit E).

With Caldwell repeatedly representing that it would produce all the requested documents, this Court allowed Amesbury's Motion to Compel and gave Caldwell until January 12, 2006 to supplement its production. *See* December 22 Order. Despite counsel's promise, Caldwell never produced and now refuses to produce documents reflecting sales data, invoice data, or analyses for the original Quick-Tilt or any other product in the requested product lines for years prior to 2003 – documents that plainly fall within the scope of Amesbury's Motion to Compel and November 23 letter.[2]

In support of this sudden change of heart, Caldwell relies on a single statement made by its counsel during the December 22 hearing. In response to the Court's questions about the documents sought under the November 23 letter, Caldwell's counsel stated that "We have agreed

---

[1] Amesbury respectfully suggests that the phrase "We … are ready in a writing" may be a transcription error. Given that Caldwell had already confirmed in the December 5 Letter and December 7 Response that it would produce the requested documents, this language is likely best read as Mr. Slifkin's acknowledgement at the hearing that Caldwell had ***already*** agreed in writing to produce the documents.

[2] Amesbury's November 23 letter and November 30 Motion to Compel also sought production of Caldwell's financial information in native electronic form. Caldwell pledged to provide these documents in its December 7 Response. *See* December 7 Response at 1. To the extent Caldwell is required to produce sales documents consistent with the Court's December 22 Order, it should of course also produce that data in manipulable electronic form.

and are ready in a writing to produce the documents that were identified in Mr. Le[l]io's deposition." Transcript of Motion Hearing at 22:3-6. Caldwell now asserts that by this statement, it agreed to produce only those documents that were specifically identified by Mr. Lelio at his deposition.

Caldwell's new position directly contradicts every statement and action it has previously made to the Court and to Amesbury on this matter. Indeed, Caldwell stated in both its December 5 letter and December 7 Response that it would produce the documents requested in the November 23 letter, without restriction to documents specifically identified by Mr. Lelio. Even Caldwell's January 12, 2006 letter purporting to transmit its supplemental production[3] stated that the production contained the "documents requested in [Amesbury's] letter of November 23, 2005," without any mention of a self-imposed limitation. Letter from David J. Edwards, Esq. to Safraz W. Ishmael, Esq., dated January 12, 2006 ("January 12 letter") (copy attached as Exhibit F). Until Amesbury specifically raised the issue of the documents missing from Caldwell's supplemental production, Caldwell's position had always been that it was producing all of the requested documents.

Caldwell's new position cannot stand. Sales data for each product in each of the accused product lines, including the original Quick-Tilt, is necessary for Amesbury to accurately assess its damages. Caldwell's representative testified that the costs allocated to a particular product are calculated using a percentage of net sales approach across the entire product line. *See* Lelio Depo., 41:2 – 42:23 ("Lelio Tr.") (copy of relevant pages attached as Exhibit B). Without

---

[3] Conspicuously absent from this document production were the sales and invoice data for each product in the accused product lines prior to 2003, including sales and invoice data for the original Quick-Tilt product and its accessory covers. These missing documents triggered several rounds of discovery conferences and, ultimately, this motion.

documents showing the net sales across the entire product line of each accused product, Amesbury will be at a disadvantage in calculating the costs Caldwell attributes to each accused product. More specifically, if documents related to the sales of the original Quick-Tilt product and its accessory covers are not produced, Amesbury will not be able to assess its damages from the sales of that product and will be forced to file a separate patent infringement suit to recover damages. As this Court has already ordered, Amesbury is entitled to all the requested documents and Caldwell should be compelled to produce them immediately.

## ARGUMENT

### I. CALDWELL ALREADY PROMISED THE COURT THAT IT WOULD PRODUCE THE REQUESTED DOCUMENTS.

Amesbury's November 23 letter and November 30 motion to compel sought production of "[a]ll sales and invoice data and analyses related to all products in the accused product lines." Caldwell repeatedly said that it would produce these documents. Caldwell's December 5 letter to Amesbury plainly stated that "we intend to provide you with such documents [requested in the November 23 letter] to the extent they exist and are not protected by privilege." December 5 letter at 1. Caldwell's Response to Amesbury's Motion to Compel likewise stated unequivocally that Caldwell "has agreed to provide those items" requested in Amesbury's November 23 letter "to the extent they exist and are not privileged."[4] December 7 Response at 1. And at the motion hearing, Caldwell's counsel told the Court that Caldwell had agreed "to produce the documents" and that "We are gathering those documents." Hearing Transcript at 22:3-6.

The Court subsequently issued an Order allowing Amesbury's motion to compel. The Order did not limit or qualify Caldwell's obligation to produce all the documents requested here, noting only that Caldwell "may supplement" by January 12, 2006. Electronic Clerk's Notes for

---

[4] Caldwell has never argued that the pre-2003 sales data and analyses do not exist.

Motion Hearing, dated December 22, 2005.  Based on the Caldwell's repeated representations and the Court's Order, Amesbury fully expected to receive from Caldwell all documents responsive to the November 23 letter.

## II.    CALDWELL'S REFUSAL TO COMPLY WITH THE COURT'S ORDER IS INCONSISTENT WITH ITS PRIOR ACTIONS AND REPRESENTATIONS.

Caldwell's partial supplementation on January 12 did not include sales data on the original Quick-Tilt and its accessory covers, and provided no basis for this omission.  When Amesbury contacted Caldwell about the missing docuemnts, Caldwell, for the first time, advanced the theory that its obligation to produce documents was limited to those specifically identified by Robert Lelio at his deposition.  Specifically, Caldwell refused to produce requested sales data because "Mr. Lelio did not identify anything at his deposition relating to the sales of the original Quick-Tilt."  *See* Letter from David Edwards, Esq. to Safraz W. Ishmael, Esq., dated February 9, 2006 (copy attached as Exhibit G)

Caldwell's sudden conclusion that it is obligated to produce only those documents identified by Mr. Lelio is wholly inconsistent with the Court's Order and with Caldwell's prior representations.  Indeed, it contradicts ***every other statement and representation*** Caldwell has made with respect to producing the documents requested in the November 23 letter.  *See* December 5 letter ("we intend to provide you with such documents to the extent they exist and are not protected by privilege"); December 7 Response at 1 ("Caldwell has agreed to provide those items [in the November 23 letter] to the extent they exist and are not privileged.").

Caldwell's new position also conflicts with its own actions.  The letter accompanying Caldwell's January 12 partial supplementation stated without qualification that the supplemental production included "the various documents requested in [Amesbury's] letter of November 23, 2005."  January 12 letter at 1.  Nowhere in Caldwell's January 12 letter did it purport to limit its

supplemental production to documents specifically or individually identified by Mr. Lelio at his deposition, or for that matter, any subset of documents comprising less than all documents requested in Amesbury's November 23 letter. If Caldwell really believed that its statement at the December 22 hearing limited its obligation to produce documents to those specifically identified in the Lelio deposition, it surely would have said so and produced a smaller set of documents in January.

Further, Caldwell's current position is in conflict with its previous admission that the documents sought in the November 23 letter **were** identified at the Lelio deposition. *See* December 5 Letter ("With regard to the documents requested, we note that these items were requested at the deposition of Robert Lelio on November 22, 2005.") (copy attached as Exhibit D).[5] Having already conflated the documents identified at the deposition and the documents requested in the November 23 letter before the December 22 hearing, Caldwell cannot be allowed to argue now that it always understood the categories to be different.

Finally, it is simply unrealistic for Caldwell to imply that it was engaged in a negotiation with the Court to produce only documents specifically identified by Mr. Lelio at his deposition. Rather, it seems far more likely that Mr. Slifkin understood the documents sought in Amesbury's motion to compel to be coextensive with documents specifically identified by Mr. Lelio. Indeed, given Caldwell's earlier representations that: (1) it would produce all the requested documents in the November 23 letter; and (2) it understood those documents to have been raised specifically at the Lelio deposition, the only reasonable interpretation of Mr. Slifkin's remarks is that Caldwell agreed to produce all the categories of documents identified in the November 23 letter. Caldwell

---

[5] During his deposition, Mr. Lelio specifically identified a Caldwell database called the Enterprise Reporting System or MAPICS. *See* Lelio Tr. at 38:16-39:4 (copy of relevant pages attached as Exhibit B). This MAPICS database system is, according to Mr. Lelio, used to create and store Caldwell sales invoice data. *See id.* at 72:13-24.

8

should not now be able to take advantage of its own apparent mischaracterization at the hearing, particularly since the only interpretation of Mr. Slifkin's words consistent with Caldwell's prior (and subsequent) representations is that Caldwell agreed to produce all non-privileged documents responsive to Amesbury's November 23 letter.

Caldwell's justification is nothing more than a thinly disguised attempt to avoid producing sales and invoice data on the original Quick-Tilt, likely because the original Quick-Tilt is believed to have been a strong seller and a significant source of damages to Amesbury. But Caldwell has produced the requested sales and invoice data for the other accused product families without objection. Indeed, Caldwell has willingly provided sales and invoice documents related to the Quick-Tilt*nc, another accused product substantially identical to the original Quick-Tilt, and in the same product family. There is no meaningful basis for Caldwell to produce sales information for one Quick-Tilt product but not the other. Consistent with the Court's December 22 Order, Caldwell should be compelled to produce the requested information immediately.

## CONCLUSION

For the reasons set forth above, Amesbury respectfully requests that Court issue an Order requiring Caldwell to fully comply with the Court's December 22, 2005 Order, and setting forth additional relief that the Court deems just and proper.

Respectfully submitted,

/s/ Safraz W. Ishmael
Douglas J. Kline (BBO# 556680)
Jordan M. Singer (BBO# 651068)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: March 24, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 24, 2006.

/s/ Safraz W. Ishmael

LIBA/1676112.34

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER**

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

      Plaintiffs,

      v.

THE CALDWELL MANUFACTURING
COMPANY,

      Defendant.

Civil Action No. 05-10020-DPW

## AMESBURY'S  FIRST SET OF REQUESTS
## FOR DOCUMENTS AND THINGS (Nos. 1-34)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") request that defendant The Caldwell Manufacturing Company ("Caldwell") produce the following documents and tangible things for inspection and copying in accordance with the definitions and instructions set forth below within thirty (30) days after service hereof at the offices of Goodwin Procter LLP, Exchange Place, 53 State Street, Boston, MA 02109.

## DEFINITIONS AND INSTRUCTIONS

A.     As used herein, "documents" incorporates all documents and things as defined in Fed. R. Civ. P. 34(a) and includes without limitation every writing or record of every type and description, including correspondence, invoices, contracts, purchase orders, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, maps, charts, reports, surveys, minutes, statistical compilations or electronic documents, such as documents on a diskette or hard drive; and every copy of every such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

B.     As used herein, "person" shall mean any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

C.     As used herein, "date" shall mean the exact day, month and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

D.    As used herein, "identify" when used in reference to:

(a)    an individual, means to state his or her full name, present or last known residential and business addresses and present or last known position and/or business affiliation;

(b)    a firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation;

(c)    a document, means to state the date, title (if any), each author, each recipient, type of document (i.e., publication, letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian;

(d)    a communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it and the substance of the communication; and

(e)    a product, means to state the product's description, manufacturer, designation by the manufacturer thereof (e.g., style, model, proprietary name, established name, product classification number and/or catalog number), and brand name or trademark.

E.    As used herein, "Defendant," "you," and "Caldwell" shall mean defendant The Caldwell Manufacturing Company, its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with defendant The Caldwell Manufacturing Company.

F.    As used herein, "patents-in-suit" shall mean U.S. Patent Nos. 5,365,638 (the "'638 patent"), 6,598,264 (the "'264 patent"), and 6,820,368 (the "'368 patent").

G.    As used herein, "Window Product" shall mean each product, including but not limited to Caldwell's Series 86xt balance product and Series 97ez balance product, that includes one or more of a: (1) block and tackle balance; (2) balance shoe; and (3) coiled spring mounting element.

H.    As used herein, "and" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and vice versa.

I.    As used herein, "relating to," "relate to" and words to that effect shall mean, in addition to the customary and usual meaning of those words, refer or refer to, assess, describe, embody, evidence, mention, support, reflect or record.

J.    As used herein, "communication" means any transmission of information by any means including, but not limited to, telephone, letters, telegrams, teletypes, telexes, telecopies, computer linkups, electronic mails ("emails"), written memoranda and face-to-face

*Amesbury's First Request
for Documents and Things*

2

communication.

K.    Requests for production include any and all relevant documents and things within your possession, custody or control, including, without limitation, documents and things located in the personal files of all past and present directors, officers, agents, representatives, employees, attorneys, accountants of or retained by you.

L.    Documents from any single file shall be produced in the same order as they were found in such file, and the files from which they are being produced shall be identified. If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

M.    If you object to producing any document responsive to these requests on the ground of attorney-client privilege or attorney work product, or for any other reason, for each such document, state: (1) the identity of the authors or creators; (2) the identity of all addressees and recipients; (3) its subject matter; (4) the identity of persons to whom the document or any portion of it has been already been revealed; (5) the source of the document; (6) the date of the document; and (7) the basis for withholding the document.

N.    In producing the documents requested, indicate the specific request(s) pursuant to which each document or group of documents is being produced.

O.    These requests for the production of documents shall be deemed continuing and supplemental responses should be provided as additional information becomes available.

P.    If any document or thing that would have been responsive has been destroyed or is otherwise no longer in respondent's possession, custody or control:

(1)    describe the content of the document or thing, and state the location of all copies; and

(2)    state the date of, and identify the person responsible for its destruction, loss, transfer, or other action by which the document or thing left respondent's possession, custody or control.

# REQUESTS

1.     All documents and things that were reviewed, referred to, relied upon, consulted, or identified in connection with investigating or responding to Amesbury's First Set of Interrogatories.

2.     All documents and things referring or relating to any of the subjects of Amesbury's First Set of Interrogatories.

3.     All documents and things referring or relating to any of the patents-in-suit.

4.     All documents and things referring or relating to the dates and circumstances of Caldwell first becoming aware of each of the patents-in-suit.

5.     All documents and things referring or relating to any opinion, advice or comments of any person involving the validity, enforceability, infringement or scope of any of the patents in-suit.

6.     All documents and things referring or relating to the specification, claims or drawings in any of the patents-in-suit or any portion of the prosecution histories of any of the patents-in-suit.

7.     All documents and things referring or relating to any oral or written statement made by Caldwell or anyone on Caldwell's behalf as to whether or not Caldwell was or is infringing any of the patents-in-suit or that any product of Caldwell infringes any of the patents-in-suit.

8.     All documents and things referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

9.     Representative specimens of each Window Product identified in response to Amesbury's Interrogatory No. 1.

10.     All documents and things referring or relating to any research, design, testing or development work concerning any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

11.     All documents and things referring or relating to any search, consideration or assessment as to whether any of the Window Products identified in response to Amesbury's Interrogatory No. 1 infringe any patent, including, but not limited to, the patents-in-suit.

12.     All documents and things referring or relating to all revenues and profits realized on the sale of any of the Window Products identified in response to Amesbury's Interrogatory No.1, inlcuding but not limited to, sales records, costs records, purchase orders, invoices, receipts, bills of lading, billing ledger sheets, accounts receivable, financial statements and tax returns.

13.     All documents and things referring or relating to the sales and distribution of any

of the Window Products identified in response to Amesbury's Interrogatory No. 1, including, but not limited to, customer lists, sales records, purchase orders, invoices, receipts, bills of lading, billing ledger sheets, accounts receivable, financial statements and tax returns.

14.    All documents and things referring or relating to the promotion, marketing, advertisement, or sale of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including, but not limited to, press releases, price lists, pamphlets, brochures, specification sheets, and catalogs.

15.    All draft and executed contracts referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

16.    All documents and things referring or relating to patent or product licenses or sub-licenses concerning window hardware or fenestration hardware, to which Caldwell is a party or which Caldwell has contemplated or is contemplating being a party.

17.    All documents and things referring or relating to the original design or specifications of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, any changes in the design or specifications of said Window Products, or the reasons for any changes in the design or specifications of said Window Products.

18.    All documents and things referring or relating to the discontinuance of selling or manufacturing of any of the Window Products identified in response to Amesbury's Interrogatory No. 1, including but not limited to all documents having a bearing on the reason or reasons for the discontinuance of the Window Product.

19.    All documents and things referring or relating to any recall from the market (including, but not limited to, customers, retailers, wholesalers, distributors and consumers) of any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

20.    All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Counterclaims.

21.    All documents and things not heretofore specifically requested that refer or relate to any of the subjects raised in Caldwell's Affirmative Defenses.

22.    All documents and things referring or relating to Caldwell's assertion that each of the patents-in-suit is invalid for failure to meet the requirements of the patent laws of the United States.

23.    All documents and things referring or relating to Caldwell's assertion that Amesbury claims are barred by prosecution history estoppel.

24.    All documents and things referring or relating to Caldwell's assertion that Amesbury's claims for damages are limited by 35 U.S.C. § 286 or § 287.

25.    All documents and things referring or relating to the charges of infringement identified in response to Interrogatory No. 11.

26.    All documents and things referring or relating to Caldwell's denial that the infringement of the patents-in-suit is willful.

27.    All documents and things referring or relating to any claim of damages by Caldwell against Amesbury.

28.    All documents and things that may or will be used at trial or any evidentiary hearing in this matter.

29.    All pages from Caldwell's past and present web sites referring or relating to any of the Window Products identified in response to Amesbury's Interrogatory No. 1.

30.    Copies of documents which describe the corporate structure of Caldwell.

31.    All financial statements and tax returns of Caldwell.

32.    All documents and things identified in Caldwell's Rule 26(a) disclosure.

33.    All documents and things referring to, relating to, or constituting the specification, claims or drawings in any Caldwell patent or patent application relating to any Window Product, or any portion of the prosecution histories relating to any Window Product.

34.    All documents and things referring to, relating to, or constituting any prior art to the patents-in-suit.

Respectfully submitted,

Douglas J. Kline (BBO# 556680)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.
AMESBURY SPRINGS LTD.**

Dated: May 5, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Safraz W. Ishmael, a member of the bar, hereby certify that on May 5, 2005, I caused a true and accurate copy of the attached "Amesbury's First Request for Documents and Things (Nos. 1-34)" to be delivered by hand to opposing counsel, Lurie & Krupp LLP, One McKinley Square, Boston, MA 02109.

_____
Safraz W. Ishmael

LIBA/1536454.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER

EXHIBIT B

00001

1

2          UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF MASSACHUSETTS

3    - - - - - - - - - - - - - - - - - - -x

     AMESBURY GROUP, INC., and

4    AMESBURY SPRINGS LTD.,

          Plaintiffs,

5

6          v.    Civil Action No. 05-10020-DPW

7    THE CALDWELL MANUFACTURING
     COMPANY,

          Defendant.

8    - - - - - - - - - - - - - - - - - - -x

          C O N F I D E N T I A L

9

     Videotaped Deposition Upon Oral Examination Of:

10          Robert J. Lelio

11

     Location:    Harris Beach PLLC

12          99 Garnsey Road
            Pittsford, New York  14534

13

14   Date:      November 22, 2005

15

16   Time:      9:06 a.m.

17

18

19   Reported By:   Joanne N. Pero

20          Alliance Shorthand, Inc.

21          Suite 1500 - The Penthouse

22          Alliance Building

23          183 Main Street East

24          Rochester, New York  14604

25

**Lelio, Robert J., 11/22/05**                **Page 1**

00038

1

2    A.  Yes, I do.

3    Q.  What is it?

4    A.  It is an analysis that we prepared to

5  summarize the results of the sales of the products

6  under questioning.

7    Q.  Was this prepared for this litigation?

8    A.  Yes, this was.

9    Q.  So this wouldn't be something you prepare

10  on an ordinary basis?

11    A.  That is correct.

12    Q.  Let's go to the second page of this

13  document.  Was this page also prepared for this

14  litigation?

15    A.  Yes, it was.

16    Q.  Okay.  Now, let's look at line item 1,

17  the first sentence says "Used file CUSINVID2 for

18  sales data by product."  What is that referring to?

19    A.  That is referring to a query that we

20  would have run off of our ERP system to obtain this

21  information.

22    Q.  What is the ERP system?

23    A.  MAPICS, M-A-P-I-C-S.

24    Q.  What does "ERP" stand for?

25    A.  Enterprise Reporting System.

00039

1

2    Q.   So this sales data would be in a file

3 with that title "CUSINVID2"?

4    A.   Yes.

5    Q.   Now, the next sentence in line item 1

6 says "All sales data is for balances only and ties

7 the the YTD margin report."  What does that mean

8 "tie the YTD margin report"?

9    A.   What that is intended to say is that it

10 ties to the year-to-date margin report and the

11 year-to-date margin report is a report that we do

12 use in our normal reporting, so this would be --

13 this statement is saying that it agrees to that, so

14 we would consider all the sales.

15    Q.   Does it mean that the year-to-date margin

16 report was used to calculate the sales data?

17    A.   No, it does not.

18    Q.   So it simply means that the sales data in

19 this report marked as Exhibit 5 agrees with the

20 year-to-date margin report?

21    A.   Can you ask -- can you restate that

22 question.

23    (The reporter read back the pending

24 question.)

25    A.   Well, I think what it says is that the

**Lelio, Robert J., 11/22/05**                    **Page 39**

00041

1

2   Q.  Line item 7 reads "All cost information

3  was calculated using a percentage of net sales

4  approach with one exception in S 86xt."

5      Do you know what it means to be

6  "calculated using a percentage of net sales

7  approach"?

8   A.  Yes.

9   Q.  What does that mean?

10   A.  Our accounting system accumulates cost by

11  product line.  If there are a number of different

12  sub products within that product line, the costs

13  will not be accumulated separately for each sub

14  product; so therefore, in order to allocate the

15  costs among various product -- sub products within

16  a product line, we used a percentage of sales ratio

17  to allocate those costs.

18   Q.  Now, is this a product-wide thing or is

19  it just within a product line?

20      MR. EDWARDS:  Object to the form.

21   A.  It is -- I don't understand your

22  question.

23   Q.  Now, you say you accumulate all the costs

24  for a product line.  Do you also accumulate all the

25  costs for all of the products Caldwell sells?

**Lelio, Robert J., 11/22/05**          **Page 41**

00042

1

2        MR. EDWARDS:  Object to the form.

3    A.   We -- our system will, if you will,

4    bucket costs or accumulate costs by product line

5    and then each -- if we add up all the product

6    lines, we will get to the total costs for Caldwell.

7    Q.   And when you get the total costs for all

8    the products, do you use that total cost to

9    determine the percentage of net sales?

10    A.   No.  No.  What we did was we would look

11    at a product line, for example, the product line

12    would be Series 86, and included in that product

13    line is a sub product of Series 86xt, so we would

14    allocate the costs to Series 86xt using a ratio of

15    Series 86xt's net sales -- I am sorry, using a

16    ratio of Series 86xt's net sales to the total

17    product line of Series 86.

18    Q.   So is it fair to say that the -- strike

19    that, please.

20        Is it fair to say that the cost

21    calculation for the Series 86xt is really an

22    average of the costs of the entire Series 86 line?

23    A.   Yes, that is fair.

24    Q.   Now, how many products are in the Series

25    86 line?

**Lelio, Robert J., 11/22/05**                    **Page 42**

00072

1

2  payroll records.  They would review information in

3  pension -- for use in calculating pension and

4  profit-sharing calculations.  They would review any

5  loan documents, bank statements and they would

6  select any number of transactions that they would

7  wish to review.  They would test certain documents

8  related to -- or documents related to certain fixed

9  asset additions, retirements.  They would review

10  any what they would refer to as material agreements

11  that the company would enter into.  That is a

12  partial listing of what they would look at.

13     Q.  Is there a particular accounting system

14  or software that is used to collect invoice data?

15     A.  Yes.

16     Q.  And what is that?

17     A.  That is collected on our MAPICS,

18  M-A-P-I-C-S, system.

19     Q.  So would someone typically scan the

20  invoice into the system?

21     A.  No.  That system is used actually to

22  create the invoices.

23     Q.  I see.

24     A.  And therefore it tracks them.

25     Q.  I see.  Are you aware of any price lists

**Lelio, Robert J., 11/22/05**                    **Page 72**

00106

1

2  am not sure what those specific sub products are

3  called other than the nc.

4      Q.  So is it your understanding that Quick

5  Tilt is a line of products rather than a specific

6  product?

7      A.  Yes.

8      Q.  Are you familiar with a product called

9  the 97sl?

10     A.  No, I am not.

11     Q.  Are you familiar with a customer known as

12  Silver Line?

13     A.  Yes, I am.

14     Q.  Does that refresh your memory what a 97sl

15  is?

16         MR. EDWARDS:  Object to form.

17     A.  Not per se in that I don't recall hearing

18  the Silver Line balance referred to as a 97sl.  I

19  know that we sell a Series 97 balance to Silver

20  Line but I am not familiar with that product

21  designation.

22     Q.  Would you expect sales of the 97sl to be

23  reflected in the documentation in Exhibit 5?

24     A.  No.

25     Q.  Why not?

00107

1

2    A.  It is -- the Series 97 balance that we

3  sell to Silver Line is not a Series 97ih or a

4  Series 97i.

5    Q.  Would the invoices for the 97sl be

6  included in the CUSINVID2 file?

7       MR. EDWARDS:  Object to the form.

8    A.  Yes.

9    Q.  Are you familiar with a product known as

10  the Series 86hp?

11   A.  Yes, I am.

12   Q.  What is this product?

13   A.  It is another version of the Series 86 --

14  in the Series 86 product line.  I am not familiar

15  with the product beyond that.

16   Q.  Would you expect that sales of the Series

17  86hp are included in the documentation in Exhibit

18  5?

19   A.  No.

20   Q.  Why not?

21   A.  Because a Series 86hp is a different

22  product from a Series 86xt.

23   Q.  But you would expect that the invoices

24  that reflect Series 86hp sales are in the CUSINVID2

25  file?

00108

1

2    A.  Yes.

3    Q.  Do you know where the Series 86hp is

4  manufactured?

5    A.  It has traditionally been manufactured in

6  Jackson, Mississippi and today is also being

7  manufactured in Juarez, Mexico.

8    Q.  Is it shipped from both those plants?

9    A.  It is shipped from Jackson and it is

10  shipped from El Paso.

11    Q.  Is it shipped from any other plants?

12    A.  No.  One clarification, if I can, on the

13  Series 97 products and the Series 86 products is

14  that today any Series 97 and Series 86 products

15  that we make that we previously made in Jackson are

16  now being made in Mexico, in Juarez, Mexico.

17    Q.  And that would be the Series 97 line,

18  rather than --

19    A.  Yes.

20    Q.  Do you know if Caldwell still sells a

21  Series 86hp?

22    A.  Yes.

23    Q.  It does?

24    A.  Yes.

25    Q.  Do you know when Caldwell began selling

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

           Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER**

# EXHIBIT C

GOODWIN PROCTER

Safraz W. Ishmael, Esq.
617.570.1729
sishmael@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

November 23, 2005

**Via Facsimile (585-419-8801)**

David J. Edwards, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

Re:    **Amesbury Group, Inc., *et al.* v. The Caldwell Manufacturing Company**
        **C.A. No. 05-10020-DPW, District of Massachusetts**

Dear Dave:

In yesterday's 30(b)(6) deposition of Caldwell, Robert Lelio, the designated Caldwell witness, confirmed the existence of several documents responsive to Amesbury's document requests that have not been produced by Caldwell. These documents include:

- All Caldwell Manufacturing Company Product Line Income Contribution charts for the Series 86, Series 97, and Quick-Tilt product lines, with the exception of the December 2004 charts that were already produced at Bates numbers C 000086 through C 000101.

- All Caldwell Manufacturing Company Consolidated Income Statements, on a monthly basis, from January 2001 to present.

- All sales and invoice data and analysis relating to all products in the Caldwell Series 97 product line (including the 97i and 97sl products), in the Series 86 product line (including the 86hp product), and in the Quick-Tilt product line. Mr. Lelio stated in the deposition that such data is kept by Caldwell in the Enterprise Reporting System (MAPICS system) and in the CUSINVID2 file. Please produce this data in a native format that is viewable with widely available software, for example Microsoft Excel format.

- The October 2005 updated version of the income analysis and invoice spreadsheets that Mr. Lelio indicated is now available. For your reference, the February 2005 version is Bates numbered C 000140 through C 000306.

- The agreement between Caldwell and Intek relating to the jamb liner product, identified yesterday by Mr. Lelio.

# GOODWIN | PROCTER

David J. Edwards, Esq.
November 23, 2005
Page 2

Please produce these documents no later than <u>December 2, 2005</u>, and please confirm that you will produce them by the close of business on <u>November 29, 2005</u>.   Amesbury reserves its right to continue the 30(b)(6) deposition upon review of these documents.

Very truly yours,

Safraz W. Ishmael

cc:     Neal L. Slifkin, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

        Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

        Defendant.

Civil Action No. 05-10020-DPW

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER**

# EXHIBIT D

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

LAURA W. SMALLEY

DIRECT:  585-419-8736
FAX:    (585) 419-8813
LSMALLEY@HARRISBEACH.COM

December 5, 2005

Safraz W. Ishmael, Esq.
Goodwin Proctor LLP
Exchange Place
Boston, MA  02109-2881                          <u>Via Telecopy and Regular Mail</u>

      Re:    Amesbury Group, Inc. and Amesbury Springs, Ltd. v.
             The Caldwell Manufacturing Company

Dear Safraz:

      I am in receipt of your firm's letters regarding our discovery responses and your call on November 30th regarding the same. Just so you are aware, I was on vacation the week of November 21st and had a Markman Hearing on November 30th. With respect to your request that we supplement the privilege log, we will provide you with a list of Caldwell attorneys and personnel so that you can evaluate claims of privilege. We will expand our descriptions of the documents.

      With regard to your request that we supplement our interrogatory response to Amesbury's interrogatory on validity, we intend to supplement that interrogatory with information about the Anderson 728 series balance. We do not intend to provide you a "claim chart" on invalidity. We have provided you with the allegedly novel element of the inventions at issue and the references which we believe that, either singly or in combination, anticipate or render that allegedly novel element obvious. A "claim chart" on invalidity of the type you request requires expert opinion, and we have not yet retained an expert.

      Indeed, we note that Amesbury refused to answer Caldwell's interrogatories on damages claiming that expert opinion was needed for that calculation. Although it is improbable that your client cannot provide any answer to that type of interrogatory (because it presumably knows its profit margins on the products at issue, for example), it has chosen to withhold all such information before hiring an expert. Given your client's stance on that issue, it is improper for you to demand that we provide an analysis of the prior art without expert opinion.

      With regard to the documents requested, we note that these items were requested at the deposition of Robert Lelio on November 22, 2005. Once we receive and review the transcript, we intend to provide you with such documents to the extent they exist and are not protected by privilege.

12/05/2005  15:00    15854198813                    HARRIS BEACH 1D                    PAGE  03/03

Safraz W. Ishmael, Esq.                                        HARRIS BEACH PLLC
December 5, 2005                                               ATTORNEYS AT LAW
Page 2

Thank you for your consideration in this matter.

Sincerely,

Laura W. Smalley

LWS:kjj

pc:  Douglas J. Kline, Esq.
     Jordan Singer, Esq.
     Paul J. Yesawich, III, Esq.
     Neal L. Slifkin, Esq.
     David J. Edwards, Esq.

# HARRIS BEACH
### ATTORNEYS AT LAW

**FAX**  December 5, 2005

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

LAURA W. SMALLEY

FAX.   (585) 419-8813

| File No. | 210199 | Page 1 of 3 |
|---|---|---|

| TO: | Safraz W. Ishmael, Esq.<br>Douglas J. Kline, Esq.<br>Jordan Singer, Esq. | Fax No. | (617) 523-1231 |
|---|---|---|---|
| FROM: | Laura W. Smalley | | |
| RE: | Amesbury v. Caldwell | | |

► **Original will be delivered by U.S. Postal Service**

**If this fax is incomplete, please contact K Jenness at (585) 419-8800**

The information contained in this facsimile message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that dissemination, distribution or copying of this information is prohibited. If you have received this communication in error, please notify us immediately by telephone.

Circular 230 Disclosure: In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

               Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

               Defendant.

Civil Action No. 05-10020-DPW

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER

# EXHIBIT E

```
 1                   UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS

 3      * * * * * * * * * * * * * * * *
                                      *
 4      AMESBURY GROUP, INC., ET AL   *
                        Plaintiff     *
 5                                    *
            VERSUS                    *      CA-05-10020-DPW
 6                                    *
        CALDWELL MANUFACTURING CO.    *
 7                       Defendant    *
                                      *
 8      * * * * * * * * * * * * * * * *

 9           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10              UNITED STATES DISTRICT COURT JUDGE

11                       MOTION HEARING

12                    DECEMBER 22, 2005

13      APPEARANCES:

14          DOUGLAS J. KLINE, ESQ., JORDAN M. SINGER, ESQ.
            AND SAFRAZ W. ISHMAEL, ESQ., Goodwin, Procter,
15          LLP, Exchange Place, Boston, Massachusetts  02109,
            on behalf of the Plaintiff
16
            PAUL J. YESAWICH, III, ESQ. AND NEAL SLIFKIN,
17          ESQ., Harris, Beach, 99 Garnsey Road, Pittsford,
            New York  14534, on behalf of the Defendant
18
            THOMAS E. LENT, ESQ., Lurie & Krupp, LLP,
19          One McKinley Square, Boston, Massachusetts
            02109, on behalf of the Defendant
20
21                          Courtroom No.  1 - 3rd Floor
                            1 Courthouse Way
22                          Boston, Massachusetts 02210
                            11:00 A.M. - 11:50 A.M.
23
              Pamela R. Owens - Official Court Reporter
24             John Joseph Moakley District Courthouse
                 1 Courthouse Way - Suite 3200
25                Boston, Massachusetts  02210
```

1    respect to that.

2             As to the documents that are sought here --

3             MR. SLIFKIN:  Yes, Your Honor.  We have agreed

4    and are ready in a writing to produce the documents that

5    were identified in Mr. Levio's deposition.  We are

6    gathering those documents.  We have agreed to supplement

7    our privilege log.  We have a very thick privilege log

8    because we produced thousands and thousands of e-mails.

9             THE COURT:  There was a columnist for the New

10   Yorker in the '50s, I think.  His name was A.J. Liebman.

11   He used to write under the Wayward Pressman.  He wrote

12   about the press.  And one of his targets frequently was

13   Colonel McCormick who ran the Chicago Tribune who was

14   a convenient target because he would make remarkable

15   statements from time to time, one of which was that

16   the Chicago Tribune was the world's greatest newspaper,

17   because if you took the Sunday newspaper and weighed it,

18   it was heavier than any other Sunday newspaper anywhere

19   in the world.  Liebman them proceeded to demonstrate

20   that Queens was a more important borough than Manhattan

21   by using the telephone book weight analysis.  So,

22   telling me that it's a thick privilege log tells me

23   nothing at all.

24            MR. SLIFKIN:  I understand, Your Honor.  We

25   have produced a privilege log which identifies the

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

               Plaintiffs,

     v.

THE CALDWELL MANUFACTURING
COMPANY,

               Defendant.

Civil Action No. 05-10020-DPW

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER**

# EXHIBIT F

**HARRIS BEACH** ᴾᴸᴸᶜ
ATTORNEYS AT LAW

January 12, 2006

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

DAVID J. EDWARDS

Safraz W. Ishmael, Esq.
GOODWIN PROCTER LLP                    Via Federal Express
Exchange Place
Boston, MA  02109-2881                 *(Letter Only Via Fax)*

Re:    Amesbury v. Caldwell Manufacturing

Dear Safraz:

We are shipping to you with this letter two boxes containing the various documents requested in your letter of November 23, 2005, following the deposition of Robert Lelio. Enclosed are Bates numbered documents C000017606-C000022928, comprising (a) product line income contribution charts, (b) consolidated income statements from January 2001 to present, (c) a print-out of the sales and invoice data analysis relating to the Series 97, Series 86 and Quick-Tilt product lines, (d) an updated version of the income analysis identified in your letter and (e) the agreement between Caldwell and Intek.

You should be aware that the product line income contribution charts and the sales and invoice data analysis contain information relating to sales other than the products which Amesbury has accused of infringement in this litigation, i.e., the data relating to Series 86, for instance, contains information relating to sales of *all* Series 86 products as you requested, not simply the Series 86xt. However, we are producing what you requested.

Further, in your letter you referred to "the October 2005 updated version" of the income analysis and invoice spread sheets. No such document exists as such. I believe you misunderstood Mr. Lelio's testimony which was simply that he had updated information available to him. Thus, he has rerun the report referred to in your letter as the February 2005 version Bates numbered C000140-306 so as to include all current data.

Please contact me if you have any questions.

Very truly yours,

David J. Edwards

DJE:kjj
Enclosures
pc:    Paul J. Yesawich, III, Esq.
       Neal L. Slifkin, Esq.
       Jordan Singer, Esq.
       Douglas J. Kline, Esq.

Safraz W. Ishmael, Esq.
December 15, 2005
Page 2

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF MONROE ) SS.:

   Karen J. Jenness, being duly sworn, deposes and says that I reside in the Town of Irondequoit, New York; I am over twenty-one years of age, and am a legal secretary for the office of Harris Beach LLP. That on the 12th day of January, 2006 before five-thirty o'clock p.m., at the City of Rochester, County of Monroe and State of New York, deponent served a copy of the annexed letter upon the following:

   Safraz W. Ishmael, Esq.
   GOODWIN PROCTER LLP
   Exchange Place
   Boston, MA 02109-2881

via telecopy at (617) 523-1231 and the original letter with two boxes of documents as indicated in the letter via Federal Express marked for January 13th delivery.

Karen J. Jenness

Sworn to before me this
12th day of January, 2006

Notary Public

VICKI SIERSMA
Notary Public, State of New York
No. 01SI6125298
Qualified in Ontario County
Commission Expires April 11, 20 09

210199 28627 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

           Plaintiffs,

    v.

THE CALDWELL MANUFACTURING
COMPANY,

           Defendant.

Civil Action No. 05-10020-DPW

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER

# EXHIBIT G

**HARRIS BEACH** ꜱ
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

DAVID J. EDWARDS

February 9, 2006

Safraz W. Ishmael, Esq.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881                    Via Telecopy and Regular Mail

       Re:    Amesbury v. Caldwell Manufacturing

Dear Safraz:

      I write in response to yours of February 8, 2006.  Your letter omits certain key points in reaching your conclusion that Caldwell's document production is incomplete.

      First, what the Court ordered on December 22, 2005, with respect to Amesbury's motion to compel documents was simply that Caldwell may supplement its production as represented. Mr. Slifkin represented, as noted in your letter, that we would produce the documents that were identified in Mr. Lelio's deposition.  We have done precisely that.  The sales and invoice data identified by Mr. Lelio is reproduced at Bates Nos. 18175 through 22928.  Mr. Lelio did not identify anything at his deposition relating to sales of the original Quick-Tilt.

      You are now asking that we produce sales data for years prior to 2003 before the products you had previously accused of infringement went on sale.[1]  Please show me where in Mr. Lelio's deposition transcript you made that request.

      None of the accused products were sold prior to 2003, and the shifting focus in your letter between accused products and "product lines" does not change the result.  I might point out that if you are accusing entire product lines, then the Series 86 product line includes both the Series 86XT and the Series 86, which would then be invalidating prior art to Amesbury's patent.

      Given that we have produced exactly what you asked for in connection with the Lelio deposition, you must now be asking that we produce something else.  The request in your letter to expand the production so as to include the "accused original Quick-Tilt product" is clearly inconsistent with the position Amesbury took in connection with the supplemental motion which the Court denied as a ruse for seeking to compel new discovery.  In that motion, Amesbury claimed to be unaware of the composition of the original Quick-Tilt until Mr. Robertson's

---

[1]  See my letter of December 15, 2005, laying out the history of when Amesbury first accused the original Quick-Tilt of the infringement after the close of discovery, notwithstanding that you had been offered, but declined to inspect, documents relating to other Caldwell Products.

02/09/2006  16:43    15854198813              HARRIS BEACH 1D                    PAGE  03/03

Safraz W. Ishmael, Esq.                                        **HARRIS BEACH** PLLC
February 9, 2006                                               ATTORNEYS AT LAW
Page 2

deposition on November 29, 2005, after you had made your request for the production of the
electronic sales data identified by Mr. Lelio.  If what you are now requesting in connection with
the "accused original Quick-Tilt product" was indeed part of the original motion, how is it that
you represented to the Court that you were unaware of the original Quick-Tilt, or its significance,
when you requested leave to file a supplemental motion?  Indeed, what was the point of the
supplemental motion?  Since the Court denied that application as a belated motion to compel, so
too should it deny any request that we re-open discovery on sales of the original Quick-Tilt.

        In any event, as I have now twice confirmed, Mr. Lelio has produced what you asked for.
If you still believe it necessary for us to speak about this issue, please e-mail me with times on
Friday, February 10.  I am in a meeting expected to last all day and will have to break away.

                                        Very truly yours,

                                        David J. Edwards

DJE:kjj

pc:     Paul J. Yesawich, III, Esq.
        Neal L. Slifkin, Esq.

210199 41905.1



**YEARS OF LOOKING AHEAD**

## HARRIS BEACH PLLC
ATTORNEYS AT LAW
99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

DAVID J. EDWARDS

F A X  February 9, 2006

| | | | |
|---|---|---|---|
| File No. | | Page 1 of 3 | |
| TO: | Safraz W. Ishmael, Esq. | Fax No. | (617) 523-1231 |
| FROM: | David J. Edwards | | |
| RE: | Amesbury v. Caldwell | | |

▶ **Original will be delivered by U.S. Postal Service**

**If this fax is incomplete, please contact K Jenness at (585) 419-8800.**

The information contained in this facsimile message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that dissemination, distribution or copying of this information is prohibited. If you have received this communication in error, please notify us immediately by telephone.

Circular 230 Disclosure: In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.