FILED
IN CLERKS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2006 APR -7  P 3: 42

U.S. DISTRICT COURT
DISTRICT OF MASS.

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD,

                   Plaintiffs,

      vs.

THE CALDWELL MANUFACTURING
COMPANY,

                   Defendant.

Civil Action No. 05-10020-DPW

## MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S DECEMBER 22, 2005 ORDER

Amesbury's most recent motion is inaptly titled. Its papers should be captioned: "Motion to Obtain the Identical Documents Sought on its Previously-Denied 'Supplemental Motion' to Compel," or perhaps "Motion to Obtain Documents that Amesbury Realized it Needed Only After Discovery Closed." Regardless of what Amesbury chooses to call its motion, it should be denied because:

1.     Caldwell complied with Court's December 22, 2005 Order, which allowed Amesbury's motion to compel to the extent Caldwell agreed to produce the documents identified in the deposition of Robert Lelio;

2.     Amesbury's current motion seeks the same relief sought in its motion to submit a supplemental memorandum in further support of its motion to compel, which was denied by the Court as untimely;

3.     Amesbury is now seeking some four months after the close of discovery to obtain documents relating to newly accused products it did not seek to obtain during the discovery period; and

4.     Amesbury's motion, coming after the initial exchange of expert reports, is highly prejudicial to Caldwell, as it would be required to re-do its damages expert report.

## AMESBURY DID NOT ACCUSE THE ORIGINAL QUICK-TILT OF INFRINGEMENT UNTIL JANUARY 12, 2006

Before discussing the merits of the motion to enforce compliance, Caldwell will address Amesbury's assertions that Caldwell wrongly failed to provide documents related to the original Quick-Tilt product. Amesbury **never** accused the original Quick-Tilt of infringement until after the close of discovery. The original Quick-Tilt is a stand-alone product constructed differently from the accused Quick-Tilt*nc in that, among other things, it has an optional cover that is sold separately from the product.

Amesbury's initial document requests and interrogatories requested information about "Window Products," which were defined as "each product including but not limited to Caldwell's Series 86xt balance product and Series 97ez balance product, that includes one or more of a: (1) block and tackle balance; (2) balance shoe; and (3) coiled spring mounting element." (Amesbury's First Set of Interrogatories, attached as Exhibit "1", at p. 2). None of the Quick-Tilt products were identified, and Amesbury's document requests were not limited to products it had accused or had a reasonable basis for accusing, but encompassed broad categories of products. Because Caldwell's business is the manufacture of hundreds of window products, with many different configurations, Amesbury's requests implicated literally all of the documents generated at each of Caldwell's three manufacturing facilities. As such, Amesbury's document requests and interrogatories were clearly overbroad and unduly burdensome.

Caldwell raised this objection in its discovery responses and limited the documents and information provided to those products listed in Amesbury's definition of "Window Product" or accused by Amesbury in previous correspondence. For example, in response to Document Request No. 8, Caldwell stated that it:

2

> [O]bjects to this document request as overly broad and unduly burdensome. **Caldwell also objects to the definition of the term "Window Product" in that it potentially implicates hundreds of Caldwell products.** Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. ("Amesbury") have not limited that term to those Caldwell products which may allegedly infringe the patents-in-suit. **Caldwell will limit its responses to Request Nos. 9 through 19 and 28 below to those specific products included in the definition of the term "Window Product" and those ascertained from correspondence between the parties.** Subject to and without waiving these objections, Caldwell will produce documents and things relating to its Series 86xt, Series 97ez and **Quick-Tilt*nc products**, including representative specimens, sales materials, and sales records subject to a protective order. **As to other products, Caldwell will produce certain sales materials initially and supplement its response, as needed, following Amesbury's review of same.**

(Defendant's Answers to Plaintiff's First Request for Documents and Things, attached as Exhibit "2", at p. 4 [emphasis added]).

On July 19, 2005, Caldwell produced sales literature regarding its complete product line. This production included pictures of the original Quick-Tilt product, which was produced as Bates No. C000531 and 532. (A copy of the letter transmitting the production is attached as Exhibit "3"). Thus, Caldwell notified Amesbury of the existence of the original Quick-Tilt and provided information on its configuration nearly one year ago.

Amesbury never requested any information on the original Quick-Tilt until after the close of discovery and never accused the original Quick-Tilt of infringement until after discovery closed. Amesbury's initial interrogatory responses accused the Quick-Tilt*nc of infringement, but did not accuse the original Quick-Tilt. (Amesbury's Objections and Responses to Caldwell's First Set of Interrogatories, attached as Exhibit "4", at page 16.1). In its First Supplemental Responses to Caldwell's Interrogatories (Nos.1-2), served on November 30, 2005, Amesbury accused two additional products, the 97i and 97ih, as allegedly infringing, but again did not accuse the original Quick-Tilt. (Amesbury's First Supplemental Interrogatory Answers, attached as Exhibit "5"). Thus, despite having a complete depiction of the original Quick-Tilt as early as

3

July 19, 2005, Amesbury never accused the product of infringement. Caldwell therefore had no obligation to produce financial information regarding this product because it was not accused.[1]

## ARGUMENT

## I. CALDWELL COMPLIED WITH THE COURT'S DECEMBER 22, 2005 ALLOWANCE OF AMESBURY'S MOTION TO COMPEL, WHICH REQUIRED CALDWELL TO PRODUCE THE DOCUMENTS IDENTIFIED AT THE DEPOSITION OF ROBERT LELIO.

The Court's December 22, 2005 Order required Caldwell to produce the documents identified at the deposition of Robert Lelio. At the Court's hearing on the discovery issues, Caldwell's counsel represented that: "We have agreed [al]ready in a writing to produce the documents that were identified in Mr. Le[l]io's deposition." (Transcript of Motion Hearing, dated December 22, 2005, at 22:2-6 [Amesbury Exhibit "E"]). Based on that representation, the Court allowed the motion to compel to that extent.   (Electronic Clerk's Notes dated December 22, 2005). Amesbury neither objected to Caldwell's offer to produce the documents identified at the Lelio deposition nor claimed that the Court's Order was inaccurate.

Caldwell's representation at the hearing is consistent with its prior statements on the matter. On November 23, 2005, Amesbury sent a letter to Caldwell purporting to summarize the items identified at the Lelio deposition. (Amesbury Motion to Enforce Compliance, Ex. "C"). Caldwell's original response to Amesbury's November 23, 2005 letter stated that: "[W]e note that these items were requested at the deposition of Robert Lelio on November 22, 2005. *Once we receive and review the transcript, we intend to provide you with such documents to the extent they exist and are not protected by privilege."* (Amesbury Motion to Enforce Compliance, Exhibit "D" [emphasis added]).  In response to Amesbury's November 30, 2005 Motion to

---

[1] Amesbury also complains in its motion that Caldwell did not provide it with sales data prior to 2003. None of the accused products (97ez, 97i, 97ih, 86xt or the Quick-Tilt*nc) were sold prior to 2003.  Amesbury has been advised of this fact on multiple occasions, yet it has filed this motion anyway.

4

Compel, Caldwell stated: "By letter dated November 23, 2005, Amesbury requested certain documents at the November 22, 2005 deposition of Robert Lelio. ***Caldwell has not yet obtained Mr. Lelio's deposition transcript.*** As indicated in its letter of December 5, 2005, ... Caldwell has agreed to provide these items to the extent they exist and are not privileged." (Response to Motion to Compel, dated December 7, 2005, at 1 [emphasis added], filed as Docket No. 49). Thus, Caldwell's representation at the hearing was consistent with the position it always took in response to Amesbury's requests -- that it would produce the items identified at the deposition of Robert Lelio after reviewing the transcript to determine what was identified.

After the Court conference, Caldwell complied with its obligation to produce the identified documents. As noted in its letter of January 12, 2006, attached to Amesbury's motion Exhibit "F", Caldwell produced the items identified at the Lelio deposition. A copy of the relevant portions of the transcript are attached as Exhibit "6".

The following items were "identified" in the Lelio deposition:

| Identification | Deposition Line | Produced |
|---|---|---|
| Product line income statements | 11:16-18 | 1/12/06 |
| Caldwell consolidated income statements | 29:19-30:5 | 1/12/06 |
| CUSINDV2 File Referenced In Exhibit 5[2] | 38:16-21 | 1/12/06 |
| Update of invoice analysis and invoice spreadsheets previously produced | 70:4-6 | 1/12/06 |
| Agreement relating to jamb liner product | 119:2-25 | 1/12/06 |

---

[2] The "CUSINVID2 file" is not a "file" per se, but a query run on Caldwell's MAPICS accounting system. Caldwell used this query to generate the report marked as Exhibit "5" in Mr. Lelio's deposition and, at Amesbury's request, ran the same query to create the file containing up-to-date data that was produced to Amesbury. (Ex. "6", at 38:16-21).

By producing the items outlined above, Caldwell complied fully with its obligation under the Court's December 22 Order.

On its motion to "enforce compliance," Amesbury has neither claimed nor demonstrated that it requested the sales and invoice data regarding the original Quick-Tilt in the Lelio deposition. During the meet and confer process, Caldwell requested that Amesbury make such an identification, which it failed to do. (Letter from David J. Edwards to Safraz Ishmael, dated February 9, 2006, attached as Exhibit "7"; Letter from Safraz Ishmael to David J. Edwards, dated February 10, 2006, attached as Exhibit "8"). What is even more telling, Amesbury appears to concede on this motion that the documents sought were **not** identified in the Lelio deposition. As stated in Amesbury's motion: "Caldwell ... refuses to produce documents reflecting the sales data, invoice data or analyses for the original Quick-Tilt or any other product in the requested product lines before years prior to 2003 -- *documents that plainly fall within the scope of Amesbury's Motion to Compel and November 23 letter.*" (Amesbury's Motion to Enforce Compliance, at p. 4 [emphasis added]). Amesbury does not state that the documents were identified at the Lelio deposition, tacitly conceding that they were not, and thus has no basis to complain that this new request was rejected.

Furthermore, any representation by Amesbury that it identified the documents regarding the original Quick-Tilt at the November 22, 2005 deposition or in its November 23, 2005 letter would be flatly contradicted by its own statements to the Court. In "Amesbury's Motion for Leave to File A Supplemental Memorandum in Support of Amesbury's Motion to Compel Discovery," untimely filed December 16, 2005, Amesbury claimed that it did not learn of the existence of the original Quick-Tilt product or the fact that it may infringe the patents-in-suit until November 29, 2005: "Mr. Robertson's November 29 testimony alerted Amesbury **for the**

6

**first time** that the identified 'original' Quick-Tilt product and the Generation I cover **may infringe** claims of at least the asserted '638 Patent." (Amesbury's Motion to File A Supplemental Memorandum, attached as Exhibit "8", at pp. 1-2 and at Exhibit "1" [Docket No. 57]). Given that it claims not to have learned of the "existence" or "importance" of the original Quick-Tilt until November 29, how could Amesbury now claim to have requested documents regarding this product at the November 22 Lelio deposition or in its November 23 letter?

Clearly, Amesbury's current motion amounts to nothing more than a *post factum* attempt to expand its requests to include documents that it failed to request during discovery. Amesbury's motion to enforce compliance should be denied because: (1) the Court allowed Amesbury's earlier motion on Caldwell's representation that it would produce the items identified at the Lelio deposition; and (2) Caldwell in fact produced those items. Because Amesbury never identified sales and invoice information on the original Quick-Tilt product at Mr. Lelio's deposition — or at any other time prior to the close of discovery — Caldwell was not required to produce those items as they were not encompassed by the Court's December 22, 2005 Order. By its own admission, Amesbury had not accused that product of infringement, and even though Caldwell had produced its entire product catalog much earlier in discovery, Amesbury claimed to have been unaware of its existence. Its current position simply boggles the mind.

## II. AMESBURY'S MOTION SHOULD BE DENIED BECAUSE THE RELIEF SOUGHT IS DUPLICATIVE OF THE RELIEF SOUGHT ON ITS DENIED MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM.

Amesbury's motion for compliance with the Court's December 22, 2005 Order seeks relief identical to that sought in its Motion for Leave to File A Supplemental Memorandum in Support of Amesbury's Motion to Compel Discovery," which was denied by the Court as a "belated motion to compel" (Electronic Clerk's Note dated December 22, 2005). On this

motion, Amesbury seeks to compel documents responsive to Amesbury's Document Request No. 13, including sales and invoice data relating to the original Quick-Tilt product. (Motion to Enforce Compliance, at p. 2).

In its motion for leave to file a supplemental memorandum, Amesbury sought to compel "documents, including drawings and schematics, relating to the original Quick-Tilt product and/or the Generation I cover" which, according to Amesbury, "should have been produced by Caldwell in response to at least Amesbury's Document Requests Nos. 8, 9, 10, 11, 12, 13, 14, and 15 .... " (Exhibit "8", Memorandum at p. 4 [emphasis added]). As noted above, that motion was denied by the Court as untimely. Amesbury's attempt to seek the same relief on this motion is simply another "ruse" to obtain the relief denied by the Court on the previous motion (Transcript of December 22, 2005 Hearing, at p. 3 [attached as Exhibit "10"]).

III.    **THE MOTION SHOULD BE DENIED AS UNTIMELY.**

The parties' exchange of correspondence on this issue ended on February 15, 2006. Pursuant to the Court's scheduling order, the parties were required to disclose experts on March 24, 2006 and must submit their rebuttal expert reports on April 18, 2006. Amesbury disclosed a damages expert on March 24, 2006 and made this motion on the same day. Thus, although Amesbury was aware that Caldwell firmly believed that it had fully complied with all of its discovery obligations as of February 15, 2006, it waited nearly **6 weeks** to make this motion and served it on the same date it disclosed its expert report on damages.

Presumably, if the motion is granted, Amesbury will want to supplement its expert report on damages with information regarding the original Quick-Tilt, in response to which Caldwell will have to submit an additional rebuttal. Amesbury's expert will have the benefit of reviewing Caldwell's rebuttal report before providing his "supplemental report" on damages. Both parties

8

will incur additional, unneeded expense in preparing an additional expert report. Furthermore, expert depositions have to be completed by May 5, 2006, and will likely have to be delayed if Amesbury's motion is granted. The late filing of this motion (nearly 4 months after motions to compel were due, nearly 2 1/2 months after the disputed document production in question, and 6 weeks after being informed that Caldwell would not be producing additional documents) will result in additional delay and expense which could have been avoided if the motion were made earlier, compelling its denial.

## CONCLUSION

For the foregoing reasons, Amesbury's motion should be denied in all respects, and Caldwell should also be entitled to additional relief as the Court deems just and proper.

Dated: April 7, 2006                    HARRIS BEACH PLLC


By:    /s/ Neal L. Slifkin
       Paul J. Yesawich, III
       Neal L. Slifkin
       David J. Edwards
       Laura W. Smalley
       *Attorneys for Defendant*
       99 Garnsey Road
       Pittsford, New York 14534
       Telephone: 585-419-8800

                    -and-

       David E. Lurie, BBO# 542030
       Thomas E. Lent, BBO# 644970
       Lurie & Krupp, LLP
       One McKinley Square
       Boston, MA 02109
       Telephone: 617-367-1970

210199 57554.1

9

CERTIFICATE OF SERVICE

I, Thomas Lent, hereby certify that on April 7, 2006, I caused a copy of Caldwell Manufacturing Company's Response to Plaintiff's Motion to Enforce Compliance with the Court's December 22, 2005 Order with Exhibit Nos. 1-10 to be served by hand upon Jordan, Goodwin Procter LLP, Exchange Place, Boston, Massachusetts 02109, attorney for Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd.

Thomas E. Lent