**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

---

Civil Action No. 05-10020-DPW

**MEMORANDUM IN SUPPORT OF AMESBURY'S MOTION FOR**
**SUMMARY JUDGMENT OF INFRINGEMENT AND**
**<u>THAT THE ASSERTED CLAIMS ARE NOT INVALID</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

ARGUMENT ............................................................................................... 4

    I.      SUMMARY JUDGMENT IS APPROPRIATE IN PATENT CASES................. 4

          A.      INFRINGEMENT................................................................ 5

          B.      INVALIDITY ..................................................................... 5

              1.    Anticipation........................................................ 6

              2.    Obviousness ....................................................... 6

    II.     AMESBURY'S '264 PATENT ............................................................ 7

          A.      CALDWELL'S SERIES 86xt BALANCE INFRINGES CLAIMS 1, 2, 4 AND 5 OF AMESBURY'S '264 PATENT ................................. 8

              1.    Caldwell's Series 86xt Balance Infringes Independent Claim 1 Of Amesbury's '264 Patent. ......................... 10

              2.    Caldwell's Series 86xt Balance Also Infringes Claim 1 Of Amesbury's '264 Patent Under The Doctrine of Equivalents............................................................ 12

              3.    Caldwell's Series 86xt Balance Infringes Dependent Claims 2, 4 And 5 Of Amesbury's '264 Patent .......................... 13

          B.      CLAIMS 1, 2, 4 AND 5 OF AMESBURY'S '264 PATENT ARE NOT INVALID................................................................ 14

              1.    Claims 1, 2, 4 And 5 Of The '264 Patent Are Not Anticipated By Prosser .............................................. 15

              2.    Claims 1, 2, 4 And 5 Of The '264 Patent Are Not Obvious In View Of The Prior Art............................................. 17

                  a.    Caldwell's Obviousness Analysis Is Legally Defective ...................................................... 17

                  b.    Caldwell Has Presented No Evidence Of A Motivation To Combine ............................... 17

                  c.    There Is No Motivation To Combine Prosser With The Prior Art.............................................. 18

                  d.    There Is No Motivation To Combine Thompson With The Prior Art...................................... 18

                  e.    Claims 1, 2, 4 And 5 Of The '264 Patent Are Also Not Obvious Over Other Prior Art References ................ 19

i

III.  AMESBURY'S '368 PATENT ....................................................................... 20

    A.  CALDWELL'S SERIES 97ez BALANCE INFRINGES CLAIMS
       2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT ................................. 21

       1.  Caldwell's Series 97ez Balance Infringes ................................... 22

          a.  Caldwell's Series 97ez Balance Features The
             Claimed "Pocket" ................................................................ 22

          b.  Caldwell's Series 97ez Balance Features The
             Claimed "Pocket" Under The Doctrine Of
             Equivalents ....................................................................... 25

          c.  Caldwell's Series 97ez Balance Features The
             Claimed "Connecting Device" ......................................... 26

       2.  Caldwell's Series 97ez Balance Infringes Dependent
          Claims 3, 6 And 7 Of Amesbury's '368 Patent .......................... 27

    B.  CALDWELL'S SERIES 97i BALANCE INFRINGES CLAIMS 2,
       3, 6 AND 7 OF AMESBURY'S '368 PATENT ................................... 27

       1.  Caldwell's Series 97i Balance Infringes Independent Claim
          2 Of The '368 Patent ................................................................. 28

          a.  Caldwell's Series 97i Balance Features The
              Claimed "Pocket" ................................................................ 28

          b.  Caldwell's Series 97i Balance Features the Claimed
             "Connecting Device" ....................................................... 29

       2.  Caldwell's Series 97i Balance Infringes Dependent Claims
          3, 6 And 7 Of Amesbury's '368 Patent ..................................... 30

    C.  CALDWELL'S SERIES 97ih BALANCE INFRINGES CLAIMS
       2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT ................................. 30

    D.  CLAIMS 2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT ARE
       NOT INVALID .................................................................................. 31

IV.  AMESBURY'S '638 PATENT ....................................................................... 32

    A.  CALDWELL'S QUICK-TILT*nc BALANCE INFRINGES
       CLAIMS 1, 2, 3 AND 8 OF AMESBURY'S '638 PATENT ................. 33

       1.  The Caldwell Quick-Tilt*nc Balance Infringes Independent
          Claims 1 And 8 Of The '638 Patent .......................................... 35

       2.  The Caldwell Quick-Tilt*nc Balance Infringes Dependent
          Claims 2 And 3 Of The '638 Patent ........................................... 36

B.     CLAIMS 1, 2, 3 AND 8 OF AMESBURY'S '638 PATENT ARE
        NOT INVALID.......................................................................................... 37

        1.     Sterner Does Not Anticipate Amesbury's '638 Patent................. 37

        2.     Sterner Does Not Render The '638 Patent Obvious..................... 40

CONCLUSION ................................................................................................................ 41

## TABLE OF AUTHORITIES

### FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) .......................................5

Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000) .......................6

Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1569 (Fed. Cir. 1996).......................................5

Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988) .......................................4

Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc., 249 F.3d 1341, 1353-55 (Fed. Cir. 2001) .......................................6

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) .......................................4

Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989) .......................................5

C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1351 (Fed. Cir. 1988)…………..………..17

Crown Operations Int'l, LTD v. Solutia, Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) ...............6

Dawn Equip. Co. v. Kentucky Farms, Inc., 140 F.3d 1009, 1016 (Fed. Cir. 1998)................. 13

Gechter v. Davidson, 116 F.3d 1454, 1457 (Fed. Cir. 1997).......................................6

Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327 (Fed. Cir. 2004) ..................... 17, 32, 40

Graham v. John Deere Co., 86 S. Ct. 684, 694 (1966).......................................7, 17

In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998).......................................7

Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir. 1998) .......................................6

Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)...................5

Motorola, Inc. v. Interdigital Tech. Corp., 121 F.3d 1461, 1473 (Fed. Cir. 1997) ...................6

National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1189 (Fed. Cir. 1996) ...............5

iv

<u>Nike Inc. v. Wolverine World Wide, Inc.,</u> 43 F.3d 644, 646 (Fed. Cir. 1994) ..........................4

<u>Panduit Corp. v. Dennison Mfg. Co.,</u> 810 F.2d 1561, 1569 (Fed. Cir. 1987) .....................7, 17

<u>Seal-Flex, Inc. v. Athletic Track & Court Construction,</u> 172 F.3d. 836, 842 (Fed. Cir. 1999) .................................................................................................................................5

<u>Smithkline Diagnostics, Inc. v. Helena Labs. Corp.,</u> 859 F.2d 878, 885 (Fed. Cir. 1988)......5, 7

<u>Transmatic, Inc. v. Gulton Indus., Inc.,</u> 53 F.3d 1270, 1274-75 (Fed. Cir. 1995) ....................6

<u>Uniroyal, Inc. v. Rudkin-Wiley Corp.,</u> 837 F.2d 1044, 1050 (Fed. Cir. 1988) ..................7, 17

<u>Vitronics Corp. v. Conceptronic, Inc.,</u> 90 F.3d 1576, 1581-82 (Fed. Cir. 1996)......................5

<u>Zygo Corp. v. Wyko Corp.,</u> 79 F.3d. 1563, 1568 (Fed. Cir. 1996)...........................................5

## FEDERAL STATUTES

35 U.S.C. § 102 ...................................................................................................................6

35 U.S.C. § 103 ...................................................................................................................6

35 U.S.C. § 112 .................................................................................................................16

35 U.S.C. § 282 ...................................................................................................................5

v

## PRELIMINARY STATEMENT

Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") request summary judgment of patent infringement and that certain of the asserted claims of the patents-in-suit are not invalid. Five products sold by defendant the Caldwell Manufacturing Company ("Caldwell") infringe three Amesbury patents: U.S. Patent Nos. 6,598,264 ("'264 patent") (copy attached as Ex. 1[1]), 6,820,368 ("'368 patent") (copy attached as Ex. 2), and 5,365,638 ("'638 patent") (copy attached as Ex. 3), and Caldwell has failed to identify clear and convincing evidence sufficient to prove that any claim of these patents is invalid.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Caldwell has made a business practice of copying Amesbury's innovative window balance products and infringing Amesbury's patents. Five Caldwell window balance systems, the Series 86xt, Series 97ez, Series 97i, Series 97ih, and the Quick-Tilt*nc Constant Force System, infringe Amesbury patents. Neither inadvertent nor isolated, Caldwell's conduct constitutes a deliberate and sustained business strategy to infringe Amesbury's patents. Caldwell has admitted repeatedly that its balances feature nearly all of the elements of the asserted claims of the patents-in-suit. Regarding the few claim elements Caldwell has contested, Caldwell has failed to identify evidence sufficient to raise any genuine issue of material fact concerning its infringement. Amesbury, on the other hand, has established by a preponderance of evidence that the Caldwell balances do in fact feature all the elements of the asserted claims. As a result, the Court should enter summary judgment that Caldwell has infringed Amesbury's '264, '368, and '638 patents.

---

[1] Unless otherwise noted, all exhibits referenced herein accompany the Declaration of Safraz W. Ishmael, filed herewith.

In addition, Caldwell has failed to come forward with clear and convincing evidence sufficient to prove that any claim of the patents-in-suit is invalid.  Caldwell has entirely failed substantively to challenge the validity of the '368 patent.  It offered no expert report on the topic; only an interrogatory response that, at best, conclusorily argues that one claim element "is disclosed, or is obvious in light of" certain prior art references.   Regarding the other two Amesbury patents at issue here, Caldwell has admitted that each of its so-called "anticipating" prior art references fails to disclose at least one element of each asserted claim.  Thus, these references cannot as a matter of law anticipate any claim of the patents-in-suit.  And with respect to obviousness, Caldwell has failed to present any evidence at all that any person of ordinary skill in the relevant art would be motivated to combine the disparate prior art references upon which Caldwell has relied, and to combine them in the manner in which Caldwell has argued they should be combined, to pick and choose various elements to arrive at the inventions claimed in Amesbury's patents.

Each of the patents-in-suit relates to improved window balances for use in hung windows.  Hung windows, the type found in many residential and commercial buildings, generally comprise at least one window sash that holds a pane of glass and moves up and down within a window frame.  Double-hung windows include two window sashes.  The vertical sides of the window frame, called jambs, include tracks on their interior faces, which guide the window sashes as they slide up and down.  In some windows, the sashes may also be designed to tilt inward (*i.e.,* into the building) to facilitate cleaning.  Hung windows utilize window balances to offset sash weight, allowing even heavy sashes to be moved with ease.

The '264 patent concerns a block and tackle window balance that features a roller mounted in a bottom guide of the balance.  The innovative configuration of the balance, its

bottom guide, and its bottom guide roller afford a variety of advantages over prior art balances, including increased sash travel within the window jamb frame.  Caldwell manufactures and sells in the United States a Series 86xt window balance that infringes claims 1, 2, 4 and 5 of Amesbury's '264 patent.  Caldwell and its expert concede that the Series 86xt balance incorporates all of the elements of the asserted claims, with the single exception of the recited "bottom guide roller rotatably mounted in the bottom guide."  Caldwell's argument that its Series 86xt balance omits this feature is easily refuted, however, by Caldwell's own expert testimony, the language of the '264 patent specification, and the actual physical characteristics of the Series 86xt balance.  Caldwell has failed, therefore, to raise any genuine issue of material fact concerning its infringement.

Amesbury's '368 patent concerns a tiltable block and tackle window balance including a locking shoe comprising an enlarged end.  The innovative features of this patented balance enable it to easily be installed as a replacement balance in preexisting window jambs.  A connecting device connects the locking shoe to the balance channel, and the locking shoe includes a pocket adapted to mate with a rivet.  Caldwell manufactures and sells in the United States several window balances, including the Series 97ez, Series 97i, and Series 97ih, that infringe claims 2, 3, 6 and 7 of the '368 patent.  Caldwell has conceded that its Series 97ez, 97i, and 97ih balances feature all of the elements of the asserted claims, with the exception of the "pocket . . . adapted to mate with a rivet" and the "connecting device for attaching the balance shoe with the U-shaped channel."  Caldwell's expert and other witnesses, however, have admitted that Caldwell's Series 97ez, 97i, and 97ih balances incorporate the "connecting device" element of the '368 patent.  In addition, Caldwell's argument that its balances omit the "pocket" element of the '368 patent completely disregards this Court's claim construction and is therefore

irrelevant. Thus, Caldwell again has failed to raise any genuine issue of fact sufficient to preclude summary judgment of infringement of claims 2, 3, 6 and 7 of the '368 patent.

Finally, Amesbury's '638 patent concerns a constant force spring balance featuring a raised projection or spine on a spring mounting element. The raised projection or spine inhibits rotation of the mounting element in a jamb channel during balance operation, which is a significant problem with prior art constant force balances. Caldwell manufactures and sells in the United States constant force spring balances, including the Quick-Tilt*nc System, that infringe claims 1, 2, 3 and 8 of Amesbury's '638 patent. Caldwell has admitted that its Quick-Tilt*nc System incorporates all of the elements of the asserted claims, with the exception, according to Caldwell, that its raised spine does not inhibit "rotational motion of [the] mounting" device. Caldwell's own expert, however, has admitted that Caldwell's Quick-Tilt*nc balance includes a spine that can inhibit rotation of the mounting means. Thus, the undisputed material facts mandate summary judgment that Caldwell has infringed Amesbury's '638 patent.

**ARGUMENT**

## I.    SUMMARY JUDGMENT IS APPROPRIATE IN PATENT CASES

The Supreme Court favors summary judgment as an efficient means of resolving lawsuits. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). This view is fully applicable to patent cases. Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994). Indeed, the Federal Circuit has "repeatedly emphasized that summary judgment is as appropriate in a patent case as in any other," and has encouraged use of Rule 56 where appropriate, explaining that, "[w]here no issue of material fact is present . . . court[s] should not hesitate to avoid an unnecessary trial by proceeding under Fed.R.Civ.P. 56 . . . ." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988).

4

The summary judgment standards are well known to this Court. Summary judgment should be granted when the moving party demonstrates that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A party opposing summary judgment may not simply rest on denials in its pleadings, but has the burden of demonstrating the existence of a genuine dispute of material fact. Matsushita Elect. Indus, Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## A.    INFRINGEMENT

To determine infringement in this case, the Court must first construe the claims at issue, and then determine whether the accused balances infringe on the claims as properly construed. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). To prove infringement of a particular claim, Amesbury needs only to show by a preponderance of the evidence that "every [claim] element or its substantial equivalent [is present] in the accused device." Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1568 (Fed. Cir. 1996); Seal-Flex, Inc. v. Athletic Track & Court Construction, 172 F.3d 836, 842 (Fed. Cir. 1999); see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d. 1251, 1259 (Fed. Cir. 1989).

## B.    INVALIDITY

The asserted claims of each of the patents-in-suit "shall be presumed valid." 35 U.S.C. § 282. Accordingly, Caldwell bears the burden of proving invalidity by clear and convincing evidence. See, e.g., Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1569 (Fed. Cir. 1996); National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1189 (Fed. Cir. 1996); Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 885 (Fed. Cir. 1988). The clear and convincing burden of proof makes a Caldwell's invalidity

defense particularly susceptible to summary judgment. See, e.g., Biotec Biologische

Naturverpackungen GmbH v. Biocorp, Inc., 249 F.3d 1341, 1353-55 (Fed. Cir. 2001);

Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274-75 (Fed. Cir. 1995).

### 1.  Anticipation

To establish anticipation under 35 U.S.C. § 102, Caldwell must show that a single prior

art reference discloses each and every limitation of a claimed invention. Apple Computer, Inc. v.

Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000).  Indeed, "every limitation of a claim must

identically appear in [the] single prior art reference for it to anticipate the claim." Gechter v.

Davidson, 116 F.3d 1454, 1457 (Fed. Cir. 1997).  Even more, "[a]n anticipating reference must

describe the patented subject matter with sufficient clarity and detail to establish that the subject

matter existed in the prior art and that such existence would be recognized by persons of ordinary

skill in the field of the invention." Crown Operations Int'l, LTD v. Solutia, Inc., 289 F.3d 1367,

1375 (Fed. Cir. 2002).  Expert testimony based on the skill in the art "cannot supplant the

requirement of anticipatory disclosure in the prior art reference itself."  Motorola, Inc. v.

Interdigital Tech. Corp., 121 F.3d 1461, 1473 (Fed. Cir. 1997).

### 2.  Obviousness

A patent claim can only be invalid as obvious if it claims an invention that would be

obvious in view of the combined teachings of the prior art.  See 35 U.S.C. § 103.  The issue

under § 103 is "whether the claimed invention as a whole would have been obvious to a person

of ordinary skill in the art at the time the invention was made." Kahn v. General Motors Corp.,

135 F.3d 1472, 1479 (Fed. Cir. 1998).  A finding of obviousness pursuant to 35 U.S.C. § 103 is a

legal conclusion involving a preliminary determination of facts regarding: "(1) the scope and

content of the prior art; (2) the differences between the claims and the prior art; (3) the level of

ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed. Cir. 1988); see also Graham v. John Deere Co., 86 S. Ct. 684, 694 (1966); Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1569 (Fed. Cir. 1987). Furthermore, "[o]bviousness is determined from the vantage point of a hypothetical person having ordinary skill in the art to which the patent pertains." In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

"When prior art references require selective combination by the court to render obvious a subsequent invention, there must be some reason for the combination other than the hindsight gleaned from the invention itself." Uniroyal, 837 F.2d at 1051. As such, the party contesting validity "has the burden to show some teaching or suggestion in the references to support their use in the particular claimed combination." Smithkline, 859 F.2d at 887. In other words, Caldwell must show a motivation, in the form of a suggestion or teaching, to combine references because "[t]he notion ... that combination claims can be declared invalid merely upon finding similar elements in separate prior patents would necessarily destroy virtually all patents and cannot be the law under the statute, § 103." Panduit, 810 F.2d at 1575.

## II.    AMESBURY'S '264 PATENT

Amesbury's '264 patent relates to a block and tackle window balance. This type of balance includes a guide attached to the bottom of a rigid channel. As shown in Figure 4A of the patent, the rigid channel **305** contains a spring **320**, and a series of pulleys with a cord. The spring is fixed at one end to the top of the rigid channel, and at the other end to the pulley system. The pulleys are configured as a block and tackle, allowing a compact spring to counter the weight of the window sash over a relatively long sash travel distance. The cord is anchored to the window jamb with a hook **345** or other device. The entire balance, including guide and



FIG. 4A

channel, is installed within a slot along the side of the window sash. As the sash moves, the entire balance – guide, channel, and all components therein – move with the sash, with the bottom guide **315** sliding along with the jamb track. Sashes utilizing prior art block and tackle balances were limited in their range of travel, because the lowermost roller was located in the channel, above the bottom guide, and a considerable distance above the bottom of the balance. To allow greater sash travel, the '264 patent mounts the lowermost roller **350** (called the "bottom guide roller" in the patent) within the bottom guide, at the bottom of the balance. (See generally Ex. 1, '264 patent.)

### A. CALDWELL'S SERIES 86xt BALANCE INFRINGES CLAIMS 1, 2, 4 AND 5 OF AMESBURY'S '264 PATENT

Caldwell concedes that its Series 86xt balance incorporates all of the elements of claims 1, 2, 4 and 5 the '264 patent, with the single exception of "a bottom guide roller rotatably mounted in the bottom guide." (See Ex. 5, Def.'s Supp. Answers to Pls.' First Set of Interrogs., at Exhibit A; Ex. 6, Still April 17 Report, Exhibit B, at 1 – 3; Statement of Material Facts Of Record As To Which There Is No Genuine Issue To Be Tried ("SOF") at ¶¶ 7 – 11, 13 – 16, 18 – 19.) Caldwell's expert confirmed:

> Q. So the only element of Amesbury's '264 patent claim 1 that you contend is absent from Caldwell's Series 86xt balance is the bottom roller being mounted in the bottom guide, correct?

> A. That is correct.

> Q. You concede that all other elements of the claim are incorporated into Caldwell's Series 86xt balance system; isn't that correct?

8

A. Yes.

Q. And if we were to go through all of these claims in your Exhibit B, we would find that the only element of Amesbury's '264 patent claims that you contend is omitted from Caldwell's Series 86xt balance is the bottom roller mounted in the bottom guide, correct?

A. Yes.

Q. You concede that all other elements appear in the Caldwell series 86xt balance system, correct?

A. Yes.

(Ex. 7, Still Dep. Tr. at 127:6-25.)

Thus, to prove infringement Amesbury needs only to show that the Caldwell Series 86xt balance includes "a bottom guide roller rotatably mounted in the bottom guide." This Court construed this claim term to mean a "roller mounted in the bottom guide in a way that permits its rotation." (Ex. 8, Claim Construction Order, Dkt. No. 64, at 54, 73.) As explained in detail below, there is no genuine issue of material fact that Caldwell's Series 86xt balance includes "a bottom guide roller rotatably mounted in the bottom guide" and infringes at least independent claim 1 and dependent claims 2, 4 and 5 of the '264 patent.[2] (See SOF ¶ 12.)

---

[2] Independent claim 1 of the '264 patent reads:

A block and tackle window balance device comprising: a channel comprising a first end and a second end; a top guide connected to the first end of the channel; a bottom guide connected to the second end of the channel; **a bottom guide roller rotatably mounted in the bottom guide;** a fixed pulley block unit connected to the channel; a translatable pulley block unit moveable within the channel; a spring comprising a first end and a second end, wherein the first end is fixed relative to the channel and the second end is connected to the translatable pulley block unit; and a cord comprising a first cord end and a second cord end, wherein the cord is threaded through the translatable pulley block unit and the fixed pulley block unit and extends around the bottom guide roller, the first cord end being attached to the translatable pulley block unit and the second cord end being attachable to a jamb. (emphasis added).

Dependent claims 2, 4 and 5 of the '264 patent read:

2. The device of claim 1 wherein the bottom guide roller is located external to the channel.

4. The device according to claim 1 where a portion of the bottom guide is external to the channel.

9



### 1.    Caldwell's Series 86xt Balance Infringes Independent Claim 1 Of Amesbury's '264 Patent

As shown in the Figure above, the accused Caldwell Series 86xt balance clearly has a roller that is mounted in the bottom guide; the roller is mounted in the bottom guide by its connection, via a metal frame, to the fixed pulley block unit.  Furthermore, "the roller is mounted in the bottom guide in a manner that permits its rotation."  (Ex. 9, Shina March 23, 2006 Report, at 23.)  Thus, Caldwell's Series 86xt balance incorporates all of the elements of claim 1 and infringes claim 1 of Amesbury's '264 patent.  (See SOF ¶¶ 7 – 19.)

The arguments raised by Caldwell in an attempt to avoid infringement fail to raise any genuine issue of material fact and can be dismissed as follows:

Caldwell has argued that the Series 86xt balance does not contain "a bottom guide roller rotatably mounted in the bottom guide" because, according to Caldwell, the lower pulley of the Series 86xt is not a roller.  (See Ex. 6, Still April 17 Report, at Ex. B, at 1.)  Caldwell's own

---

5. The device according to claim 1 wherein the bottom guide forms a channel to receive a portion of the window sash.

expert refuted this argument, however, when he admitted that, in the context of the '264 patent,

there is "not much difference" between a pulley wheel and a roller:

> Q.   What if any differences are there in your opinion between a
> pulley wheel and a roller as the '264 patent uses the term?
>
> A.   **There is really not much difference.**  The patent calls for
> bottom roller and bottom guide.  If I were describing that, I would
> call it a pulley.

(Ex. 7, Still Dep. Tr. 110:11-17, May 2, 2006 (emphasis added); SOF at ¶12.)  Caldwell's

semantic argument cannot raise a genuine issue of material fact.  That Caldwell may refer to its

bottom guide roller as a pulley instead of a roller does not change its location or function, as

further described below.

        Similarly, Caldwell has asserted that even if the Series 86xt pulley is a roller, it is not

mounted in the bottom guide. (See Ex. 6, Still April 17 Report, at Ex. B, at 1.)  According to

Caldwell, because the bottom guide roller is mounted to the fixed pulley block unit via the metal

frame, it cannot be mounted in the bottom guide as it is not mounted directly to the bottom guide.

The above annotated Figure of Caldwell's Series 86xt balance, however, clearly shows that

while the bottom guide roller may be mounted to the fixed pulley block unit via the metal frame,

it is nevertheless mounted in the bottom guide.  Indeed, the Court specifically allowed for this

possibility in its Claim Construction Order by noting that, "the ordinary meaning of the roller

being mounted in the bottom guide could encompass the idea that the roller is 'in' the bottom

guide, yet not necessarily mounted directly to the bottom guide . . ."  (Ex. 8, Claim Construction

Order, at 44.)

        Caldwell also has argued that the Series 86xt lower pulley is part of the claimed fixed

pulley block, a claim element distinct from the bottom guide roller, and therefore cannot be the

claimed bottom guide roller.  (See Ex. 6, Still April 17 Report, at Ex. B, at 1.)  As an initial

matter, this argument is refuted by the specification of the '264 patent, which describes one

embodiment of the fixed pulley block unit as one or more pulleys that rotate about a single

pulley axle.[3]  The Series 86xt bottom pulley or roller does not rotate about the same pulley axle

of the fixed pulley block unit as shown in the annotated Figure of the Series 86xt balance above.

Moreover, in another embodiment, the '264 patent specification describes making the entire

fixed pulley block unit integral with the bottom guide.  (See Ex. 1, '264 patent, col. 5, ll. 36 –

41.)  Accordingly, whether the fixed pulley block unit is located in the channel or in the bottom

guide is irrelevant.  Similarly, whether the Series 86xt bottom pulley or roller is somehow

connected to the fixed pulley block also is irrelevant.  All that claim 1 requires in this regard is

the location and operation of the bottom pulley or roller, namely "a bottom guide roller rotatably

mounted in the bottom guide."  There is no dispute that the Series 86xt bottom pulley or roller is

located in the bottom guide and that it is also rotatably mounted.

### 2. Caldwell's Series 86xt Balance Also Infringes Claim 1 Of Amesbury's '264 Patent Under The Doctrine of Equivalents

Even if Caldwell's Series 86xt balance did not literally incorporate the claimed bottom

guide roller, which it does, Caldwell's bottom pulley nevertheless performs the same function of

the claimed bottom guide roller, in the same way to achieve the same result, and therefore is

equivalent to the claimed bottom guide roller.

--------

[3] The specification of the '264 patent states:

> Similarly, the fixed pulley unit 335, as shown in FIGS. 4A and 4B, includes two pulleys 331, 332 that **rotate about a single pulley axle** 333; however, in other embodiments, the fixed pulley unit 335 may contain one or more pulleys that **rotate about the pulley axle** 333.

(Ex. 1, '264 patent, col. 5, ll. 4 – 8 (emphasis added).)

12

More specifically, the bottom pulley of the Series 86xt balance smoothly reverses the direction of the cord, by providing a curved surface about which the cord is wrapped, to allow the cord to be attached to the jamb and run parallel to the balance, and at the same time to slide smoothly as it extends with the movement of the balance with the window sash. The bottom pulley, by way of its location lower in the balance, also allows further travel of the window sash, thereby providing greater window egress. (See Ex. 9, Shina March 23 Report, at 23; SOF at ¶ 12.) The claimed bottom guide roller performs the same two functions of reversing the direction of the cord and of permitting further travel of the window sash. It performs these functions in the same way by providing a curved surface about which the cord is wrapped and by being located lower in the balance than a conventional roller or pulley. It achieves the same results of allowing the cord to be attached to the jamb and at the same time run parallel to the balance, and of providing greater window egress. Id. As such, the Caldwell Series 86xt balance infringes claim 1 of the '264 patent under the doctrine of equivalents. See Dawn Equip. Co. v. Kentucky Farms, Inc., 140 F.3d 1009, 1016 (Fed. Cir. 1998); (see also Ex. 9, Shina March 23 Report, at 23; SOF at ¶ 12).

### 3.    Caldwell's Series 86xt Balance Infringes Dependent Claims 2, 4 And 5 Of Amesbury's '264 Patent

Caldwell has admitted that its Series 86xt balance features the additional limitations of claims 2, 4 and 5 of the '264 patent, all of which depend from independent claim 1. With respect to claim 2, Caldwell's expert admits that the bottom pulley of the Series 86xt "is partially located internal and external to the channel" thereby meeting the only additional limitation of claim 2: that the "roller is located external to the channel." (Ex. 6, Still April 17 Report, at Ex. B, at 3; SOF at ¶ 17.) Caldwell's expert further admits that the Series 86xt bottom guide meets the only

13

additional limitation of dependent claim 4, namely, that the "bottom guide is external to the channel."

> Q. Now, in Still Deposition Exhibit 16, can we agree that part of the bottom guide is located external to the channel?
>
> A. Yes.

(Ex. 7, Still Dep. Tr. 121:5-8; see also Ex. 6, Still April 17 Report, at Ex. B, at 3; SOF at ¶ 18.) Caldwell's expert also admits that "Caldwell's Series 86xt bottom guide forms a channel to receive a portion of a window sash," thereby meeting the only additional limitation of dependent claim 5. (Ex. 6, Still April 17 Report, at Ex. B, at 3; SOF at ¶ 19.) The Court therefore should enter summary judgment of infringement of claims 1, 2, 4 and 5 of the '264 patent.

## B.  CLAIMS 1, 2, 4 AND 5 OF AMESBURY'S '264 PATENT ARE NOT INVALID

Caldwell cannot prove by clear and convincing evidence that claims 1, 2, 4, and 5 of Amesbury's '264 patent are invalid.  Caldwell contends that the asserted claims of the '264 patent are invalid because they are anticipated by U.S. Patent No. 3,091,797 to Prosser ("Prosser"), and/or obvious in view of Prosser in combination with U.S. Patent No. 6,840,011 to Thompson *et al.* ("Thompson") and the prior art admitted in the '264 patent.[4]  However, as Prosser, Thompson, and the other prior art references fail to disclose several elements of the claimed invention, none of the references or combination thereof invalidates the '264 patent.

---

[4] Caldwell's catch all language that its invalidity arguments are based upon all the prior art admitted in the '264 patent prosecution is inappropriate.  As discussed, Caldwell must prove invalidity with clear and convincing evidence.  As a result, Amesbury has only considered those prior art references which have been specifically identified by Caldwell as invalidating prior art.

14

1.    <u>Claims 1, 2, 4 And 5 Of The '264 Patent Are Not Anticipated By Prosser</u>

Caldwell's argument that Prosser anticipates the '264 patent is specious – Caldwell's own expert admits that Prosser fails to disclose several elements of claim 1 of the '264 patent. Thus, Prosser simply cannot anticipate any of the asserted claims of the '264 patent. Prosser discloses a window balance designed to be mounted to a window jamb. (<u>See</u> Ex. 10, Prosser, col. 1, ll. 8-28.) In sharp contrast, the '264 patent balance attaches to a window sash, not the jamb. The Prosser window balance is stationary in the jamb and includes a bottom plate that is attached to the window sash. (<u>See</u> Ex. 10, Prosser, col. 3, ll. 18-26.) The bottom plate alone moves with the sash while the rest of the balance is stationary and is mounted to the jamb. <u>Id.</u> Thus, Prosser's stationary balance is significantly different from the '264 patent balance which rides with the sash.



Caldwell's own expert concedes that Prosser does not disclose a balance including a "first cord end being attached to the translatable pulley block unit," a necessary element of claim 1 of the '264 patent:

Q.  Now, Prosser does not have a first cord end attached to a translatable pulley block unit, correct?

A.  That is true.

(Ex. 7, Still Dep. Tr. 97:6-9; SOF at ¶ 80.)

Instead, as shown in Prosser's Figure 5 (above), one end of the cable or cord **17** is attached to pin **36** while the other is attached to the bottom plate **15**. (<u>See also</u> Ex. 10, Prosser, col. 3, ll. 18 – 22.) No cord end attaches to a translatable pulley block unit. Prosser, therefore, fails to disclose at least one claimed element of claim 1 of the '264 patent.

15

While one missing claim element is sufficient to preclude anticipation, Prosser further fails to disclose several other elements of claim 1 of the '264 patent including: (a) "a top guide connected to the first end of the channel;" (b) "a bottom guide connected to the second end of the channel;" (c) "a bottom guide roller rotatably mounted in the bottom guide;" and (d) "the second cord end being attachable to a jamb."

Caldwell's expert concedes that Prosser's tongue **25** and stop **26**, which Caldwell has tried to correlate to the '264 patent's top and bottom guides, differ structurally and functionally from the top and bottom guides of the '264 patent.  (Ex. 7, Still Dep. Tr. 100:15 – 101:2;  102:15 – 104:3.)  These features cannot constitute a disclosure, therefore, of the claimed top and bottom guides.  (See, also Ex. 11, Shina April 18 Report, at 21, 22; SOF at ¶ 79.)

Finally, Prosser omits any disclosure of a "second cord end being attachable to a jamb," yet another necessary element of claim 1 of the '264 patent.  (SOF at ¶ 81.)  Prosser's Figure 5 shows that one end of the cord in that balance is attached to pin **36** while the other is attached to the bottom plate **15**.  (See also Ex. 10, Prosser, col. 3, ll. 18 – 22.)  As such, there is no cord end that is attachable to the jamb.  (See Ex. 11, Shina April 18 Report, at 23; SOF at ¶ 81.)

As a result, even Caldwell's own expert agrees that Prosser fails to disclose several essential elements of claim 1 of the '264 patent.  Therefore it cannot anticipate claim 1.  Because Prosser cannot anticipate claim 1 of the '264 patent, it also cannot anticipate dependent claims 2, 4 or 5.  See 35 U.S.C. § 112 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.")

16

2.    **Claims 1, 2, 4 And 5 Of The '264 Patent Are Not Obvious In View Of The Prior Art**

Furthermore, Caldwell has not and cannot prove with clear and convincing evidence that the asserted claims of the '264 patent would be obvious in view of Prosser and/or Thompson in combination with other prior art references.

a.    *Caldwell's Obviousness Analysis Is Legally Defective*

A finding of obviousness, on which Caldwell bears the burden of proof, requires, *inter alia*, an examination of the level of ordinary skill in the art and any relevant secondary considerations of nonobviousness. Uniroyal, 837 F.2d at 1050; see also, Graham, 86 S. Ct. at 694; Panduit Corp., 810 F.2d at 1569. Caldwell, however, has failed to present any evidence regarding these issues. While a proper obviousness analysis must be conducted from the point of view of the person of ordinary skill in the art, neither Caldwell nor its expert has ever defined the person of ordinary skill in the art. As a result, Caldwell's obviousness argument fails for at least this reason.

b.    *Caldwell Has Presented No Evidence Of A Motivation To Combine*

Furthermore, regardless of the content and substance of the references Caldwell has identified, Caldwell's failure to provide any evidence of a motivation to combine Prosser and/or Thompson with any other prior art is a fatal defect in its obviousness defense. (See SOF at ¶¶ 82, 86.) The "lack of evidence of a motivation to combine is a critical defect in [Caldwell's] obviousness defense, because there must be 'some suggestion, motivation, or teaching in the prior art whereby the person of ordinary skill would have selected the components that the inventor selected and use them to make the new device.'" Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327 (Fed. Cir. 2004) (quoting C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1351

17

(Fed. Cir. 1988)).  Without evidence of a motivation to combine, Caldwell cannot prove its

obviousness defense.

> **c.      There Is No Motivation To Combine Prosser With The Prior Art**

The asserted claims of the '264 patent are also not obvious in view of Prosser and other

prior art because there is no motivation to combine references to achieve the claimed invention.

As discussed above, Prosser fails to disclose several elements of the invention claimed in the

'264 patent, including, *inter alia*, a top guide and a bottom guide.  The function of the claimed

top guide is to connect the balance to the window sash and to guide the movement of the balance

within the jamb as the sash is moved up and down.  (See Ex. 1, '264 patent, col. 4, ll. 38 – 41.)

Because Prosser's balance is mounted to the window jamb, is stationary, and does not ride with

the sash, no top and bottom guide is needed to guide a stationary balance within the jamb.  (See

Ex. 11, Shina April 18 Report, at 21.)  Neither are guides needed to connect the Prosser balance

to the window sash, as the balance is already connected to the sash by the bottom plate **15**.

Therefore, one skilled in the art would not be motivated to combine a top and bottom guide from

another reference with the disclosure of Prosser.  As Prosser does not disclose a top guide, and as

there is no motivation for one skilled in the art to combine a top guide from another reference

with the Prosser balance, the asserted claims of the '264 patent are not obvious over Prosser, or

over Prosser in combination with any other reference.

> **d.      There Is No Motivation To Combine Thompson With The Prior Art**

Similarly, the asserted claims of the '264 patent are not obvious in view of Thompson

and any other prior art because again, there is no motivation to combine these references to

achieve the claimed invention.  Thompson discloses a window balance for a tiltable window,

18

where the top end of the balance is screwed into the window sash. (<u>See</u> Ex. 12, Thompson, Abstract, and Fig. 4 above.)  Caldwell concedes that Thompson does not disclose a "top guide," as recited in claim 1 of the '264 patent.  (<u>See</u> Ex. 13, Def.'s Second Supp. Ans. to Pls.' First Set of Interrogs.; Ex. 14, Still March 8 Report, at Ex. A, at 1 ("'011 Pat. has no top guide . . ."); SOF at ¶ 84.)  As the top of the Thompson balance is screwed into the window sash, (<u>see</u> Ex. 12, Thompson, col. 5, ll. 8-9), there is no need for a top guide to connect the balance to the sash. (<u>See</u> Ex. 11, Shina April 18 Report, at 11.)  Furthermore, the top of the window sash is secured in the jamb channel by a set of levers and, as such, no top guide is needed to guide the window sash within the jamb.  (<u>See</u> Ex. 11, Shina April 18 Report, at 11.)  As Thompson does not disclose a top guide, and as there is no motivation for one skilled in the art to combine a top guide from another reference with the balance of Thompson, the asserted claims of the '264 patent are not obvious in view of Thompson, or in view of Thompson in combination with any other reference.  (<u>See</u> SOF at ¶ 86.)

> **e.    Claims 1, 2, 4 And 5 Of The '264 Patent Are Also Not Obvious Over Other Prior Art References**

The references Caldwell cited and annotated in its responses to Amesbury's Interrogatory No. 6 do not, either alone or in combination, invalidate any claim of the '264 patent.  (<u>See</u> Ex. 13, Def.'s Second Supp. Answers to Pls.' First Set of Interrogs.)  Indeed, it is quite telling that, with the exception of Prosser and Thompson, Caldwell's expert chose not to rely upon any of these references in his expert report on invalidity.  (<u>See generally</u> Ex. 14, Still March 8 Report.)

There is no dispute that each of these references lacks at least one essential element of the asserted claims, as outlined in Amesbury's Statement Of Material Facts of Record As To Which There Is No Genuine Issue To Be Tried.  (<u>See</u> SOF at ¶¶ 92 - 96.)  Furthermore, even a brief

19

inspection of these references makes clear that they are inapposite. (<u>See generally</u> Ex. 21 - Ex. 25.)  Moreover, Caldwell has failed to identify any evidence of a motivation to combine these prior art references.[5]

Thus, Caldwell has not and cannot meet its burden to establish that any of the asserted claims of the '264 patent are invalid.

## III.    AMESBURY'S '368 PATENT



Amesbury's '368 patent concerns a tiltable block and tackle window balance.  Unlike a standard block and tackle balance which is mounted to the window sash, a tiltable balance is mounted within the jamb track, allowing the sash to tilt inward.  As shown in the Fig. 3C of the '368 patent, a locking shoe **210** is hung from or connected to the bottom of the balance channel **630**.  Prior art tiltable block and tackle balances were difficult to install because of the dimensions of the shoe, which would have to be forced between the jamb's flanges into the track, then awkwardly hung from or connected to the balance channel.  The '368 patent eliminates this problem by configuring one end of the shoe or balance carrier with a "T"-shaped design to fit within the balance channel itself, without losing the locking capability required during tilting. With this "T"-shaped design improvement, fully assembled tiltable block and tackle balance assemblies may be installed in a jamb track with ease.  (<u>See generally</u>, Ex. 2, '368 patent.)

---

[5] Caldwell's catch all language in its interrogatory responses that it's invalidity arguments are also based on numerous references that were simply identified, but not annotated or discussed, including all the cited prior art in prosecution history of the '264 patent, is inappropriate.  As discussed, Caldwell must prove invalidity with clear and convincing evidence.  As a result, Amesbury has only considered those prior art references which have been annotated and/or further discussed by Caldwell as invalidating prior art.

A.    **CALDWELL'S SERIES 97ez BALANCE INFRINGES CLAIMS 2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT**

Caldwell concedes that its Series 97ez balance incorporates all of the elements of the asserted claims of the '368 patent, with two exceptions: a "pocket . . . adapted to mate with a rivet" and a "connecting device for attaching the balance shoe with the U-shaped channel." (See Ex. 5, Def.'s Supp. Answers to Pls.' First Set of Interrogs. at Exhibit A; Ex. 6, Still April 17 Report, at Exhibit D; SOF at ¶¶ 20 – 26, 28 – 29, 32 – 34.) Caldwell's expert confirmed:

> Q. And again, the only elements of the asserted patent claims that you contend are absent from Caldwell's 97ez balance are first the pocket, correct?
>
> A. Yes.
>
> Q. And second, the connecting device, correct?
>
> A. Yes.
>
> Q. But you concede that all of the other elements of the claims asserted by Amesbury in this litigation are incorporated in the Caldwell 97ez balance that we designated as Still Deposition Exhibit 21, correct?
>
> A. Yes….

(Ex. 7, Still Dep. Tr. 139:14 – 140:4)

To establish infringement of the '368 patent, therefore, Amesbury needs only to establish that the Series 97ez balance contains a "pocket . . . adapted to mate with a rivet" and a "connecting device for attaching the balance shoe with the U-shaped channel." This Court construed "pocket" to mean "a notch with an opening shaped to mate (i.e. "to join or fit together") with a rivet, thereby aiding to secure the balance shoe within the U-shaped channel of the inverted window balance." (Ex. 8, Claim Construction Order, at 63.) The Court construed "connecting device" to mean "[a] device, such as a rivet, screw, or resilient tabs, that connects the balance shoe to the U-shaped channel of the inverted window balance." (Ex. 8, Claim

21

Construction Order, at 72.)

There is no genuine issue of material fact that Caldwell's Series 97ez block and tackle window balance incorporates both the claimed "pocket" and "connecting device" and infringes independent claim 2 and dependent claims 3, 6, and 7 of the '368 patent.[6]  As a result, the Court should grant summary judgment of infringement of the '368 patent.

### 1.    Caldwell's Series 97ez Balance Infringes Independent Claim 2 Of The Amesbury's '368 Patent

#### a.    Caldwell's Series 97ez Balance Features The Claimed "Pocket"



As the picture of the Series 97ez balance shown here depicts, Caldwell's 97ez balance features a notch that is shaped to fit together with a rivet.  (SOF at ¶ 27.)

_____

[6] Independent claim 2 of the '368 patent reads:

A window balance system comprising: a U-shaped channel comprising a plurality of openings; a spring connected to a system of pulleys located within the U-shaped channel; a cord with a first cord end and a second cord end, the first cord end connected and threaded through the system of pulleys, the second cord end connected to a jamb mounting attachment; and a balance shoe, wherein the balance shoe comprises: a frame comprising an enlarged first end and a second end, wherein the second end is adapted to be received by the U-shaped channel, and **wherein the second end of the frame of the balance shoe further forms a pocket positioned in the second end of the frame adapted to mate with a rivet;** a locking member proximal to the enlarged first end; a cam in communication with the locking member, and **a connecting device for attaching the balance shoe within the U-shaped channel of the window balance.** (emphaisis added).

Dependent claims 3, 6 and 7 of the '368 patent read:

3. The window balance system of claim 2 wherein the connecting device comprises a rivet.

6. The window balance system of claim 2 wherein the cam is at least partailly housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in a window jamb.

7. The window balance system of claim 2 wherein the locking member comprises two opposing ends integrally connected by a spring member.

The notch is shaped to contact and to fit together with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance.  (See Ex. 9, Shina March 23 Report, at 33 item "2G"; SOF at ¶ 27.)

In fact, Jeffrey Robertson, an engineer who designed the 97ez shoe, confirmed that the notch contacts the rivet if the shoe or carrier is forcibly rotated, as may occur during shipping and handling:

> Q.  Is there any circumstance in which F would touch the rivet D?
>
> MR. REFERMAT:  Objection.
>
> A.  If the shoe is rotated forcibly in the direction opposite to that we were just discussing.
>
> Q.  And when would that happen?
>
> MR. REFERMAT:  Objection.
>
> A.  Possibly in shipping or in handling.

(Ex. 15, Robertson Dep. Tr. 51:9-16, Nov. 29, 2005.)

Robertson also confirmed that the very purpose of the notch is to prevent the rotation of the shoe or carrier during shipping and handling:

> Q.  Now, in the 97ez, what is the purpose of the plastic part you labeled as "F"?
>
> MR. REFERMAT:  Objection.
>
> A.  Prevent rotation in the carrier in the channel.
>
> Q.  Is this to prevent rotation of the carrier while in operation?
>
> A.  No.
>
> Q.  When is it to prevent rotation?
>
> A.  During handling of the balance or shipping of the balance.

(Ex. 15, Robertson Dep. Tr. 49:9-19.)

23

In an attempt to avoid a finding of infringement, Caldwell has argued that the Series 97ez balance does not have a "pocket … adapted to mate with a rivet," by ignoring the Court's construction of "pocket" and instead relying on Caldwell's rejected construction of the element as a U or C-shaped channel bounded on three sides:

> Q.  What definition of pocket did you have in mind when you reached that conclusion?
>
> A.  Well, something that is -- **that is going to hook around the balance like it does in the Amesbury balance** where it creates a pivot point for the sash shoe to be rotated.
>
> . . .
>
> Q.  So when you concluded that Caldwell's 97ez balance omits any pocket, did you have in mind the same definition of pocket that you described to me earlier?
>
> A.  Yes.
>
> **Q.  Have you ever considered any other definition of pocket in connection with your analysis in this matter?**
>
> **A.  No.**

(Ex. 7, Still Dep. Tr. 135:15-20, 142:24 -143:8 (emphasis added).)

Caldwell's analysis based on a claim construction different from the Court's is not relevant and cannot raise an issue of fact.[7]  Therefore, there is no genuine issue of material fact that the Caldwell Series 97ez balance incorporates the "pocket" element of the '368 patent.

---

[7] On redirect examination, Caldwell's attorney attempted to rehabilitate the testimony given by Caldwell's expert on this issue.  (See Ex. 7, Still Dep. Tr. 152:21 – 154:8.)  Caldwell's expert contradicted his own testimony cited above and stated that he had considered the Court's construction of the claimed "pocket"  when conducting his infringement analysis.  However, regardless of whether Caldwell's expert "considered" the Court's claim construction, the argument presented does not rely on the Court's definition of the claimed "pocket."  It is clear that the 97ez balance includes a notch that mates with the rivet.

### b.   Caldwell's Series 97ez Balance Features The Claimed "Pocket" Under The Doctrine Of Equivalents

Even if the "pocket" component of Caldwell's Series 97ez balance does not literally meet the Court's claim construction – which it does – that component is equivalent to the claimed "pocket" of the '368 patent under the doctrine of equivalents.  (SOF at ¶ 27.)  As the Court construed the term, the claimed "pocket" secures the balance shoe within the U-shaped channel. It achieves this result by functioning to "prevent displacement or rotation of the balance shoe during shipping, handling and in use" by contacting a rivet.  (Ex. 9, Shina March 23 Report, at 33; SOF at ¶ 27.)  In the same way, the "pocket" component of the Caldwell Series 97ez balance performs the same function as the claimed pocket of preventing unwanted rotation of the shoe, as it "stop[s] displacement (rotation) in the same manner as the invention by contacting a rivet, thus achieving the same result of securing the balance shoe in the channel during shipment, handling, and usage."  (Ex. 9, Shina March 23 Report, at 34.)  Thus, the component identified by Amesbury's expert as a notch on the Series 97ez balance is at least equivalent to the claimed "pocket."  See Dawn Equip. Co., 140 F.3d at 1016.

Caldwell has never rebutted Amesbury's argument that the Caldwell Series 97ez balance is equivalent to the claimed "pocket."  Therefore, there is no genuine issue of material fact that the Caldwell Series 97ez balance contains at least the equivalent of the "pocket" element of the '368 patent.

c.    **Caldwell's Series 97ez Balance Features The Claimed "Connecting Device"**

The below annotated picture plainly shows that the Caldwell's Series 97ez balance includes a rivet that connects the balance shoe to the U-shaped channel, precisely as Amesbury's '368 patent claims. (See also Ex. 9, Shina March 23 Report, at 34; SOF at ¶ 30.) Caldwell's own expert admits this fact in his April 17 Report and at his deposition. (See Ex. 6, Still April 17 Report, at Ex. D; Ex. 7, Still Dep. Tr. 140:13 – 17; SOF at ¶ 30. )



Further, Caldwell's own 30(b)(6) witness on the accused balances admits that a rivet is used to connect the Series 97ez balance shoe or carrier to the balance:

> Q.   When the carrier is inserted into the channel of the inverted balance, does it connect or lock into place in that balance?
>
> MR. SLIFKIN:  Objection.
>
> A.   Not by itself, no.
>
> Q.   How does it connect to the balance?
>
> MR. SLIFKIN:  Form.
>
> A.   **It is connected with a rivet** that passes through the carrier body and through the side walls of the channel.

(Ex. 16, Batten Dep. Tr. 128:10-19, Nov. 8, 2005.)

Caldwell's Series 97ez balance therefore, incorporates all claimed elements of claim 2 of

26

the '368 patent and infringes the patent, either literally or under the doctrine of equivalents.

> **2.    Caldwell's Series 97ez Balance Infringes Dependent Claims 3, 6 And 7 Of Amesbury's '368 Patent**

Claim 3 of Amesbury's '368 patent describes that "the connecting device comprises a rivet." As shown above, a rivet serves as the connecting device in the Series 97ez balance. (See SOF at ¶ 31.) Similarly, Caldwell's expert concedes that the Series 97ez balance meets the only additional limitation of claim 6, namely, that the "cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in the window jamb." (See Ex. 6, Still April 17 Report, at Ex. D; SOF at ¶¶ 32, 33.) Regarding claim 7, Caldwell's expert concedes that the only additional limitation, a locking member comprising "two opposing ends integrally connected by a spring member," is present in the Series 97ez balance. (See Ex. 6, Still April 17 Report, at Ex. D; SOF at ¶ 34.)

> **B.    CALDWELL'S SERIES 97i BALANCE INFRINGES CLAIMS 2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT**

As with its Series 97ez balance, Caldwell also concedes that its Series 97i balance incorporates all of the elements of the asserted claims of the '368 patent, with two exceptions: a "pocket . . . adapted to mate with a rivet" and a "connecting device for attaching the balance shoe within the U-shaped channel of the window balance." (See Ex. 5, Def.'s Supp. Answers to Pls.' First Set of Interrogs., at Ex. A; Ex. 6, Still April 17 Report, at Ex. C; Ex. 7, Still Dep. 132:5 – 134:10; SOF at ¶¶ 36 – 41, 43 – 44, 47 – 49.) However, as demonstrated below and based on an analysis very similar to that performed regarding the Series 97ez balance, both of these elements are incorporated in the Series 97i balance and the Court should grant summary judgment of infringement of the '368 patent.

1.    **Caldwell's Series 97i Balance Infringes Independent Claim 2 Of The '368 Patent**

a.    *Caldwell's Series 97i Balance Features The Claimed "Pocket*

The Caldwell's Series 97i balance, illustrated in Exhibit 36 (filed under seal), has a "pocket" or notch that is shaped to fit together with the rivet, that also serves as the claimed connecting device, to secure the balance shoe with the U-shaped channel.  (See also Ex. 9, Shina March 23 Report at 43-45; SOF at ¶ 42.)  This is the exact possibility envisioned by the Court, which specifically noted that "[c]laim 2 ought to be construed to include the possibility that the rivet could serve as the 'connecting device' when it locks into the frame 'pocket' shaped to mate with it."  (Ex. 8, Claim Construction Order, at 72.)  Additionally, as discussed above, Caldwell's position that its Series 97i balance does not feature a "pocket" does not comport with the Court's construction of the term, and is without merit:

> Q. . . . Your report expresses the view that the shoe in Caldwell's 97i balance omits any pocket; is that correct?
>
> A.   That is correct.
>
> Q.   What definition of pocket did you have in mind when you reached that conclusion?
>
> A.   Well, **something that is -- that is going to hook around the balance like it does in the Amesbury balance where it creates a pivot point for the sash shoe to be rotated**.
>
> Q.   So when you **concluded that Caldwell's 97i balance omits any pocket, that is the definition of pocket you had in mind**; is that right?
>
> A.   **That is my explanation of a pocket, yes.**

(Ex. 7, Still Dep. Tr. 135:9-24.)

Caldwell's analysis, which is based on a claim construction different from the Court's, is not relevant and cannot raise an issue of material fact.  Therefore, there is no genuine issue of

28

material fact that Caldwell's Series 97i balance incorporates the "pocket" element of the '368 patent.

    **b.**  **Caldwell's Series 97i Balance Features the Claimed "Connecting Device"**

As noted above, this Court construed "connecting device" to mean a "device, such as a



rivet, screw, or resilient tabs, that connects the balance shoe to the U-shaped channel of the inverted window balance." (Ex. 8, Claim Construction Order, at 72.) As shown in the figure (at left), the Series 97i balance includes a rivet for connecting the balance shoe to the U-shaped channel. Moreover, Caldwell's expert concedes that the Series 97i balance incorporates a rivet for connecting the balance shoe to the U-shaped channel, the Court's very construction of the term "connecting device":

> Q. Now, the **balance shoe is connected within the U-shaped channel**, isn't it?
>
> A.  It is.
>
> Q.  What holds it there?
>
> A.  **A rivet.**

(Ex. 7, Still Dep. Tr. 134:11-15; <u>see also</u> SOF at ¶ 45.)

Further, Jeffrey Robertson, the engineer that designed the Series 97i shoe, testified that the annotated rivet performs the function of connecting the shoe or carrier to the channel:

> Q.  Is it also correct to say that the left-most rivet connects the carrier to the channel?
>
> MR. REFERMAT:  Objection.
>
> A.  Yes.

29

(Ex. 15, Robertson Dep. 26:15-19; see also Ex. 9, Shina March 23 Report, at 40.)

As such, there is no genuine issue of fact that the Caldwell Series 97i balance incorporates the claimed "connecting device" (SOF at ¶ 45) and therefore infringes the '368 patent.

### 2.    Caldwell's Series 97i Balance Infringes Dependent Claims 3, 6 And 7 Of Amesbury's '368 Patent

Claim 3 of Amesbury's '368 patent describes that "the connecting device comprises a rivet." As shown above, a rivet serves as the connecting device in Caldwell's Series 97i balance. (SOF at ¶ 46.) Similarly, Caldwell's expert concedes that the Series 97i balance meets the only additional limitation of claim 6, namely, that the "cam is at least partially housed within the enlarged first end of the frame; wherein rotating the cam forces the locking member to engage a jamb track when the balance shoe is installed in the window jamb." (See Ex. 6, Still April 17 Report, at Ex. C; SOF at ¶¶ 47, 48.) Regarding claim 7, Caldwell's expert further concedes that the only additional limitation, a locking member comprising "two opposing ends integrally connected by a spring member," is also present in the Series 97i balance. (See Ex. 6, Still April 17 Report, at Ex. C; SOF at ¶ 49.)

### C.    CALDWELL'S SERIES 97ih BALANCE INFRINGES CLAIMS 2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT

Caldwell never offered a rebuttal to Amesbury's expert opinion that Caldwell's Series 97ih balance infringes claims 2, 3, 6 and 7 of the '368 patent. However, as Amesbury's expert noted from his examination of the engineering drawings and deposition testimony, it appears that the Series 97ih balance is, for the purposes of infringement analysis, similarly configured to the Series 97i balance discussed above. (See Ex. 9, Shina March 23 Report, at 38.) For instance, as one of Caldwell's 30(b)(6) representatives testified, the Series 97ih balance comprises the same

30

shoe or carrier structure and design as the Series 97i balance:

> Q.  Is there any difference in the shoe between the 97i and the 97ih?
>
> A.  No.

(Ex. 16, Batten Dep. Tr. 74:22-24, Nov. 8, 2005; SOF at ¶ 50.)

As such, for the same reasons presented above regarding the Series 97i balance, the Court should enter summary judgment that Caldwell's Series 97ih balance infringes claims 2, 3, 6 and 7 of Amesbury's '368 patent.  (See SOF at ¶¶ 51 – 64.)

### D.    CLAIMS 2, 3, 6 AND 7 OF AMESBURY'S '368 PATENT ARE NOT INVALID

Caldwell did not serve an expert report concerning the validity of any of the claims of Amesbury's '368 patent, and so cannot offer expert testimony at trial regarding the invalidity of claims 2, 3, 6 and 7 of the '368 patent, an issue on which Caldwell bears the burden of proof. See Fed. R. Civ. P. 26(a)(2).

In its responses to Amesbury's Interrogatory No. 6, Caldwell annotated a number of prior art references and conclusorily states that they invalidate the asserted claims of Amesbury's '368 patent.  (See Ex. 13, Def.'s Second Supp. Answers to Pls.' First Set of Interrogs.)  However, there is no dispute that each of these references lacks at least one essential element of the asserted claims and even a brief inspection of these references makes clear that these references are inapposite.  (See Exs. 23, 26 - 27; SOF at ¶¶ 97 – 99.)  Further, Caldwell never offered any evidence, or even argument, concerning any motivation to combine any of these references to achieve any of the claimed inventions.[8]  Failing to anticipate, and in the absence of any evidence

---

[8] Caldwell's catch all language in its interrogatory responses that it's invalidity arguments are also based on numerous references that were simply identified, but not annotated or discussed, including all the cited prior art

31

of a motivation to combine any of these references, these references cannot invalidate any of the claims of the '368 patent. See Golight, 355 F.3d at 1336 (stating that the lack of evidence of a motivation to combine is a critical defect in an obviousness defense and affirming a non-obviousness finding by the district court). There is no genuine issue of material fact, therefore, regarding the validity of the '368 patent, and the Court should grant summary judgment that the asserted claims are not invalid.

## IV.    **AMESBURY'S '638 PATENT**

Amesbury's '638 patent discloses a coiled spring window balance that is installed within a channel **16** of a window jamb track, as shown in Figure 1 of the '638 patent. The shoe **28** of a



coiled spring balance may be virtually any type that slides within a jamb track, including shoes that lock in place when the sash is tilted inward. Opposed flanges **F** on the front of the jamb track prevent the shoe from inadvertently exiting the track during operation. As apparent from its name, this balance includes a coiled spring **S**, attached at one end **26** to the shoe **28**, to provide the balancing force for the sash. As the coil winds or unwinds with movement of the sash, the opposite end of the spring **S** freely rotates within the central portion of the coil **22**. A support surface **20** of a spring mounting element **M** holds the coiled portion in place near the top of the jamb. The spring support of prior art balance springs tended to rotate during use, impeding the

---

in prosecution history of the '368 patent, is inappropriate. As discussed, Caldwell must prove invalidity with clear and convincing evidence. As a result, Amesbury has only considered those prior art references which have been annotated and/or further discussed by Caldwell as invalidating prior art.

functionality of the balance.  The '638 patent describes securing the spring mounting element in the jamb track channel.  The mounting element can include a raised portion or spine on the spring mounting element which is adapted to contact the jamb track flanges, which helps inhibit unwanted rotation.  Examples of such a raised spine **110** are illustrated in the Figures 10 and 11 of the '638 patent. (See generally, Ex. 3, '638 patent.)



### A.  CALDWELL'S QUICK-TILT*nc BALANCE INFRINGES CLAIMS 1, 2, 3 AND 8 OF AMESBURY'S '638 PATENT

Caldwell concedes that its Quick-Tilt*nc balance incorporates all of the elements of claims 1, 2, 3 and 8 of the '638 patent, with a single exception of, "whereby rotational motion of said[the] mounting means is inhibited." (See Ex. 5, Def.'s Supp. Answers to Pls.' First Set of Interrogs., at Ex. A;  Ex. 6, Still April 17 Report, at Ex. A; SOF at ¶¶ 65 – 72, 74 – 75.) Caldwell's expert confirms:

> Q. Throughout your claim charts relating to your opinion that Caldwell's Quick-Tilts do not infringe Amesbury's '638 patent, the only feature of any of those claims that you contend Caldwell's Quick-Tilt products omit is a raised spine that inhibits rotation, isn't that right?
>
> A. That's right.
>
> Q. You concede that the products include all of the other limitations of the asserted claims, correct?
>
> A. Yes.

(Ex. 7, Still Dep. Tr. 78: 8-18.)

Thus, to prove infringement Amesbury needs only to show that the Caldwell Quick-Tilt*nc balance features a raised spine that inhibits rotation. This Court construed this claim term in both claims 1 and 8[9] to mean:

> The mounting means is to be secured in the channel means. And the mounting means is to have a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means whereby rotation motion of said mounting means is inhibited.

(Ex. 8, Claim Construction Order, at 39.)

As explained below, there is no genuine issue of material fact that Caldwell's Quick-Tilt*nc balance features this element of the '638 patent and therefore infringes claims 1, 2, 3 and

---

[9] Independent claim 1 of the '638 patent reads:

> A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having a first end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring having the other end of said coiled ribbon spring within the coil being positioned in said mounting means, said other end of said coiled ribbon spring being free and unattached to said mounting means and said mounting means being secured in said channel means, said mounting means having a raised spine positioned between and in the same plane as said inwardly turned opposed flanges of said channel means **whereby rotational motion of said mounting means is inhibited**. (emphasis added).

Independent claim 8 of the '638 patent is very similar to claim 1 and reads:

> A mounting assembly comprising a channel means having a rear wall, side walls and at extremities of said side walls, inwardly turned opposed flanges, a sash frame support means slidable in said channel means, a coiled ribbon spring having an outer end engaged with said sash frame support means, and a means for mounting said coiled ribbon spring, the coiled body portion of said coiled ribbon spring with the other end of said coiled ribbon spring positioned in said mounting means, said mounting means being secured in said channel means and the mounting means having projection means positioned between said inwardly turned opposite flanges of the channel means which cooperate with said flanges of the channel means within which the mounting means is positioned, **whereby rotational movement of the mounting means is inhibited**. (emphasis added).)

Dependent claims 2 and 3 of the '638 patent read:

2. The mounting assembly of claim 1 wherein the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coiled ribbon spring as said sash support means moves in said channel means.

3. The mounting assembly of claim 2 wherein said mounting means has a body portion having an aperture therein, a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means, a surface of said body portion being concavely curved, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion.

34

8 of the '638 patent.

1.    **The Caldwell Quick-Tilt\*nc Balance Infringes Independent Claims 1 And 8 Of The '638 Patent**

Upon inspection of a Caldwell Quick-Tilt\*nc balance and its related documentation, Amesbury's expert observed that the "geometry of [the] Caldwell coil nest [mounting means] molded together with a cover assembly will inhibit the rotational movement of the coil nest assembly, when installed in a window jamb channel." (Ex. 9, Shina March 23 Report, at 12; SOF at ¶¶ 73, 76.) Amesbury's expert also observed the Quick-Tilt\*nc balance installed in a window jamb channel and noted that, "the spine fitted snugly between channel flanges thereby inhibiting rotation of the Caldwell [Quick-Tilt\*nc] balance while allowing the balance to ride smoothly inside the channel." (Ex. 9, Shina March 23 Report, at 12; SOF at ¶¶ 73, 76.)

Furthermore, Caldwell's own expert testified that when the Quick-Tilt\*nc balance is installed in the window jamb channel inspected by Amesbury's expert, and marked in this case as Still Deposition Exhibit 10, the spine inhibits rotation:

> Q. ... Independent of whether additional features of the Caldwell balance inhibit rotation, in this assembly, this spine also inhibits rotation of the balance, correct?
>
> A. It can.

(Ex. 7, Still Dep. Tr. 72: 4-8.)

Customers of the Caldwell Quick-Tilt\*nc balance, including at least Tri-State Wholesale Building Supplies, Inc. of Cincinnati, Ohio ("Tri-State"), use the Caldwell Quick-Tilt\*nc balance in window jambs of the same geometry and configuration as the window jamb marked as Still Deposition Exhibit 10. (See Ex. 37 (showing that Caldwell sold Quick-Tilt\*nc Constant Force balances to Tri-State at least in 2005); Ex. 38 (Tri-State website advertising that Tri-State

35

currently uses and is offering for sale the Caldwell constant force balance system in its Earthwise brand of double hung windows); SOF ¶¶ 104,105)  As Caldwell's own expert testified, when installed in these jambs rotational motion of the Quick-Tilt*nc balance mounting means is inhibited.  Because the Caldwell Quick-Tilt*nc balance incorporates all of the claimed elements of claims 1 and 8, it infringes the '638 patent.

### 2.     The Caldwell Quick-Tilt*nc Balance Infringes Dependent Claims 2 And 3 Of The '638 Patent

Caldwell's expert concedes that Caldwell's Quick-Tilt*nc balance features the only additional limitation of claim 2, namely, that "the mounting means has a support surface disposed in contact with the outer surface of said coiled body portion of said coiled ribbon spring during movement of said coupled ribbon spring as said sash support means moves in said channel means."  (See Ex. 6, Still April 17 Report, at Ex. A, at 2; Ex. 9, Shina March 23 Report, at 14-15; SOF at ¶ 74.)

Caldwell's expert further concedes that the Caldwell Quick-Tilt*nc balance incorporates the only additional limitation of claim 3, namely, that "the mounting means has a body portion having an aperture therein, a fixing screw positioned in said aperture by which the mounting means is secured relative to said channel means, said coiled body portion of said coiled ribbon spring being in contact with and supported by said curved surface of said body portion."  (See Ex. 6, Still April 17 Report, at Ex. A, at 3; see also Ex. 9, Shina March 23 Report, at 14 – 15; SOF at ¶ 75.)  Therefore, the Caldwell Quick-Tilt*nc balance also infringes claims 2 and 3 of the '638 patent.

**B.    CLAIMS 1, 2, 3 AND 8 OF AMESBURY'S '638 PATENT ARE NOT INVALID**

Caldwell has not and cannot establish with clear and convincing evidence that claims 1, 2, 3 and 8 of the '638 patent are invalid.  Caldwell's own expert contradicted Caldwell's argument that the asserted claims of the '638 patent are anticipated and/or rendered obvious by U.S. Patent No. 5,157,808 to Sterner ("Sterner") (copy attached as Ex. 18).[10]  (Ex. 17, Still March 13 Report at 6.)  Thus, the Court should enter summary judgment that the asserted claims of the '638 patent are not invalid.

**1.    Sterner Does Not Anticipate Amesbury's '638 Patent**

Caldwell's argument that Sterner anticipates the '638 patent is specious because Caldwell's expert admits that Sterner fails to disclose a key element of both claims 1 and 8 of the '638 patent.  Sterner simply cannot anticipate, therefore, any of the asserted claims of the '638 patent.

Caldwell's expert concedes that Sterner does not disclose the element that recites, "whereby rotational motion of said mounting means is inhibited":

> Q.  There is no reference in Sterner to rotation of the mounting element at all, is there?
>
> A.  No.
>
> Q.  And there is no description in Sterner of the need to prevent that rotation, is there?

---

[10] Caldwell's expert also offers the opinion that the asserted claims are obvious over the Sterner '808 patent in view of other patents that Caldwell never previously identified.  (See, Ex. 17, Still March 13 Report, at 6.) However, Caldwell's counsel has represented in writing that its expert will not rely on these references.  (See Ex. 19, April 7, 2006 Letter from Neal Slifkin, Esq. to Jordan Singer, Esq.)  Based on this representation by Caldwell, and because these references were not timely disclosed to Amesbury, Caldwell cannot rely on either of these two references as invalidating prior art.  (See Ex. 20, December 22 Hearing Tr. 29:24 – 30:5.)  As such, these two references are not addressed further in this brief.

       A.  No.

(Ex. 7, Still Dep. Tr. 40:11-16; SOF at ¶ 90.)

       While one missing claim element is enough to preclude anticipation, Sterner further fails



FIG. 12

to disclose other elements of claims 1 and 8 of the '638 patent including: (a) "mounting means having a raised spine,"  a required element of claim 1; and (b) any such spine or projection is "positioned between and in the same plane as said inwardly turned opposed flanges of said channel means," a required element of both claims 1 and 8, as construed by this Court.

       Under the Court's claim construction[11], Sterner's mounting means is annotated as **68/76** in Sterner's Figure 12, as it is the only body supporting the coiled spring that also contains an aperture for a screw. However, there is no raised portion of the Sterner mounting means and so there can be no raised spine based on the Court's claim construction.  As Amesbury's expert noted, "the whole back side [of the mounting means] … is smooth and does not appear to have any raised features such as a protrusion or spine."  (Ex. 11, Shina April 18 Report, at 2; SOF at ¶ 87.)  For the same reasons, Sterner does not disclose a projection on the mounting means, a required element of claim 8 of the '638 patent. (SOF at ¶ 88.)

---

[11]This Court construed  the "mounting means" element to be a structure for mounting the coiled ribbon spring that includes "some method of fixing, such as aperture to receive a fixing screw, to secure the structure to a window jamb channel."  (Ex. 8, Claim Construction Order, at 23-24.)  The Court further construed the "raised spine" element to mean, "[a] raised portion of the mounting element that resembles or suggests the spine of the mounting element, shaped to cooperate with the window jamb flanges to inhibit the rotational motion of the mounting means."  Id.

Furthermore, Sterner clearly does not disclose that any portion of the mounting means is "positioned between and in the same plane as said inwardly turned opposed flanges of said channel means," a required element of both claims 1 and 8. (SOF at ¶ 89.) As Sterner's Figures 3 and 6 clearly show, the balance is located well inside the channel, behind the flanges, and is not positioned between the flanges of the channel. (See also Ex. 11, Shina April 18 Report, at 3.). Additionally, Caldwell's own expert admitted that Sterner does not show the mounting element in the same plane as the flanges:



> Q.  Let me ask you this:  Do you have an understanding of what would be required of the disclosure of the Sterner '808 patent for it to anticipate any claim of the Braid patent?
>
> A.  Well, as I first looked at this, it had all the elements of '638.
>
> **Q.  But it doesn't show the face of the mounting element in the same plane as any flanges, correct?**
>
> **A.  In their drawings, they don't do a good job of that.**
>
> Q.  I am sorry?
>
> A.  As an ordinary skilled person, I would look at this and know what it is and what it means.
>
> **Q.  But again, the drawings don't show that, right?**
>
> **A.  That is correct.**
>
> **Q.  And the specification doesn't describe it, correct?**
>
> **A.  That's right.**

(Ex. 7, Still Dep. Tr. 53:22 – 54:17 (emphasis added).)

## 2.    Sterner Does Not Render The '638 Patent Obvious

Furthermore, Caldwell has not and cannot prove with clear and convincing evidence that the asserted claims of the '638 patent would be obvious in view of Sterner and/or the in combination with other prior art references.

Once again, Caldwell fails to present any evidence regarding the person of ordinary skill in the art or any motivation to combine references to achieve the claimed invention. Therefore, regardless of the content and substance of Caldwell's references, Caldwell's failure to provide this crucial evidence is a fatal defect in its obviousness defense.

Furthermore, each of the references Caldwell identifies in its responses to Amesbury's Interrogatory No. 6, fails to disclose at least one element of each of the asserted claims. (See Ex. 13, Def.'s Second Supp. Answers to Pls.' First Set of Interrogs.; SOF at ¶¶ 100 - 103.) Even a brief inspection of these references makes clear that they are not relevant. (See Ex. 28 – Ex. 31.) Indeed, it is quite telling that, with the exception of Sterner, Caldwell's expert chose not to rely upon any of these other prior art references to attempt to invalidate the '638 patent. (See generally Ex. 17, Still March 13 Report.)

As none of these references anticipates any of the asserted claims, given their lack of at least one essential claim element, and as there is no evidence of a motivation to combine any of these references, these references cannot invalidate any of the asserted claims of the '638 patent.[12] See Golight, 355 F.3d at 1336 (stating that the lack of evidence of a motivation to

---

[12] Caldwell's catch all language in its interrogatory responses that it's invalidity arguments are also based on numerous references that were simply identified, but not annotated or discussed, including all the cited prior art in prosecution history of the '638 patent, is inappropriate. As discussed, Caldwell must prove invalidity with clear and convincing evidence. As a result, Amesbury has only considered those prior art references which have been annotated and/or further discussed by Caldwell as invalidating prior art.

combine is a critical defect in an obviousness defense and affirming a non-obviousness finding by the district court).

<b><u>CONCLUSION</u></b>

For the reasons set forth above, Amesbury respectfully requests that the Court grant Amesbury's motion for summary judgment of infringement and that the asserted claims are not invalid.

Respectfully submitted,


 /s/ Douglas J. Kline
Douglas J. Kline (BBO# 556680)
Terese Dillingham (BBO# 644520)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: May 19, 2006

## LOCAL RULE 7.1 CERTIFICATION AND CERTIFICATE OF SERVICE

Pursuant to Local Rule 7.1(A)(2), the undersigned counsel hereby certifies that counsel for Amesbury conferred with counsel for Caldwell in a good faith effort to determine whether defendant would assent to this Motion.  The issues could not be resolved or narrowed and counsel for Caldwell declined to assent to the Motion.

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 19, 2006.

/s/ Terese Dillingham

42