UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC. and
AMESBURY SPRINGS, LTD.,

        Plaintiffs,

vs.

        Civil Action No. 05-CV-10020

THE CALDWELL MANUFACTURING CO.,

        Defendant.

**AMESBURY'S REPLY TO
<u>CALDWELL'S LOCAL RULE 56.1 STATEMENT OF ADDITIONAL FACTS</u>**

Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") submit this Reply, pursuant to this Court's Local Rule 56.1, in further support of Amesbury's Motion For Summary Judgment Of Infringement And That The Asserted Claims Are Not Invalid. All record materials, not previously filed with the Court, and referenced herein with exhibit numbers, accompany the Declaration of Safraz W. Ishmael submitted with Amesbury's initial brief and the Supplemental Declaration of Safraz W. Ishmael, filed herewith.

<u>'264 Patent Non-infringement</u>

1.     The Caldwell Series 86xt balance includes a fixed pulley block connected to the channel having three pulleys therein (Still Dec. Ex. "C" at p. 7).

**Amesbury's Response:**    Disputed.  The Caldwell Series 86xt balance includes a fixed pulley block unit having two pulleys that cooperate with the two pulleys of the translatable movable pulley block.  (*See* Ex. 9, Shina March 23 Report, at 23 and at FIGS. 5.1.E and 5.1.F, thereof.)  The Caldwell Series 86xt balance also includes a separate bottom guide roller for reversing the direction of the cord that exits the fixed and movable pulley block system to permit further travel of the window sash.  (*See* Ex. 9, Shina March 23 Report, at 23 and at FIG. 6.1.D, thereof.)

2. The Caldwell Series 86xt balance does not include a bottom guide roller (Still Dec. Ex. "C" at p. 7).

**Amesbury's Response:** Disputed. Caldwell has admitted that the Series 86xt balance includes a "pulley." (Ex. 6, Still April 17 Report at 7). The bottom guide "roller" of the '264 patent fits the definition of a "pulley" given by Caldwell's expert. (Still Aff. at ¶ 12.) Furthermore, Caldwell's expert testified that in the specific context of the '264 patent, "[t]here is really not much difference" between a "roller" and a "pulley." (Ex. 40, Still Dep. Tr. 110:11-17).

3. A pulley is not a roller (Ex. 11, Newman Dep. Tr. 23:12-13; Ex. 9, Still Dep. Tr. 99:4-20; Still Dec. ¶¶ 10-12; Still Dec. Ex. "C" at p. 7).

**Amesbury's Response:** This statement should be stricken because no evidence relevant in the context of the '264 patent has been cited in support. *See Cordero-Soto v. Island Fin, Inc.*, 418 F.3d 114, 118 (1st Cir. 2005); *Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995). In addition, this statement should be stricken because claim construction is a question of law for the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). If the statement is not stricken, it is disputed. The bottom guide "roller" of the '264 patent fits the definition of a "pulley" given by Caldwell's expert. (Still Aff. at ¶ 12.) Furthermore, Caldwell's expert testified that in the specific context of the '264 patent, "[t]here is really not much difference" between a "roller" and a "pulley." (Ex. 40, Still Dep. Tr. 110:11-17)

4. There is no evidence of record that a pulley performs substantially the same function in substantially the same way to achieve substantially the same result as a roller.

**Amesbury's Response:** This statement should be stricken because claim construction is a question of law for the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). If the statement is not stricken, it is disputed. The bottom guide "roller" of the '264 patent fits the definition of a "pulley" given by Caldwell's expert. (Still Aff. at ¶ 12.) Furthermore, Caldwell's expert testified that in the specific context of the '264 patent, "[t]here is really not much difference" between a "roller" and a "pulley." (Ex. 40, Still Dep. Tr. 110:11-17) The bottom guide roller of the '264 patent performs the same two functions as the "pulley" in the Series 86xt balance: reversing the direction of the cord and of permitting further travel of the window sash. (*See* Ex. 9, Shina March 23 Report, at 23.) It performs these functions in the same way by providing a curved surface about which the cord is wrapped and by being located lower in the balance than a conventional roller or pulley. *Id.* It achieves the same results of allowing the cord to be attached to the jamb and at the same time run parallel to the balance, and of providing greater window egress. *Id.*

5. A pulley does not perform substantially the same function as a roller (Still Dec. ¶ 12).

**Amesbury's Response:** This statement should be stricken because claim construction is a question of law for the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). If the statement is not stricken, it is disputed. The bottom guide "roller" of the '264 patent fits the definition of a "pulley" given by Caldwell's expert. (Still Aff. at ¶ 12.) Furthermore, Caldwell's expert testified that in the specific context of the '264 patent, "[t]here is really not much difference" between a "roller" and a "pulley." (Ex. 40, Still Dep. Tr. 110:11-17) The bottom guide roller of the '264 patent performs the same two functions as the "pulley" in the Series 86xt balance: reversing the direction of the cord and of permitting further travel of the window sash. (*See* Ex. 9, Shina March 23 Report, at 23.) It performs these functions in the same way by providing a curved surface about which the cord is wrapped and by being located lower in the balance than a conventional roller or pulley. *Id*. It achieves the same results of allowing the cord to be attached to the jamb and at the same time run parallel to the balance, and of providing greater window egress. *Id*.

'264 Patent Invalidity

6. Fig. 2A in U.S. Patent No. 6,598,264 (the '264 Patent) discloses the admitted prior art ('264 Patent, Fig. 2A, '264 Patent, Col. 2:32-33).

**Amesbury's Response:** Undisputed.

7. The admitted prior art includes a spring, a translatable pulley a fixed pulley, a roller, and a cord housed within a channel ('264 Patent Col. 3:19-22).

**Amesbury's Response:** Undisputed.

8. The admitted prior art includes a top guide and a bottom guide. The top guide is angled. The bottom guide includes a channel sized to receive a portion of a window sash ('264 Patent Col. 3:31-35).

**Amesbury's Response:** Undisputed.

9. U.S. Patent No. 6,840,011 issued to Thompson (The "Thompson" Patent) discloses a bottom guide roller and a bottom guide (Ex. 11, Newman Dep. Tr. 18:17 - 20:4; Still Dec. at ¶7, Ex. "A" at p. 6-7).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The cited testimony establishes that Newman stated that a "post" that sticks out of a "housing" of the '011 patent provides a guiding function. It does not establish that the "post" is a bottom guide. Even if the "post" was a bottom guide, there is no evidence that there is a roller

housed in the post, as would be required of a bottom guide roller. Moreover, the bottom roller 426 of the Thompson '011 patent (Ex. 12) is located in a housing 423, and not in the post 428 that Newman stated provides a guiding function.

10. The window balance disclosed in the Thompson Patent (the "Thompson device") was sold by Amesbury as its Series 728 balance more than a year prior to the filing date of the '264 Patent (Ex. 11, Newman Dep. Tr. 5:4 - 6:6).

**Amesbury's Response:**   Undisputed.

11. At the time the invention of the '264 Patent was made, there was a well-known need in the window balance industry to extend the travel of window balances (Ex. 12, Zinter Dep. Tr. 37:5 - 38:25, 43:9-16).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The testimony cited only establishes that Zinter was aware of an alleged need to extend the travel of window balances. (Ex. 44, Zinter Dep. Tr. 37:5 - 38:25, 43:9-16). The evidence cited does not establish that such an alleged need was "well-known."

12. One of ordinary skill in the art at the time the invention of the '264 Patent was made would have been motivated to take the admitted prior art and add to the bottom guide roller of the Thompson Device to satisfy the well-known need in the window balance industry to extend the travel of window balances (Ex. 39, Shina Dep. Tr. 195:19 - 198:14; Ex. 44, Zinter Dep. Tr. 37:5 - 38:25, 43:9-16).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The testimony cited does not provide any evidence of a motivation to combine the admitted prior art any bottom guide roller of the Thompson Device in the particular manner claimed. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). Moreover, there is no evidence that the Thompson Device has a bottom guide roller. *See* ¶ 9.

13. It would have been obvious to one of ordinary skill in the art at the time the invention was made to take the admitted prior art from the '264 Patent and add to it a bottom

4

guide roller rotatably mounted in the bottom guide found in the Thompson Device (Ex. 14, Still Mar. 8 Report at 7).

**Amesbury's Response:** This statement should be stricken because obviousness is a legal conclusion and not a "fact." *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). In addition, this statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The evidence cited provides no motivation or suggestion to combine the admitted prior art from the '264 Patent and any bottom guide roller that may be found in the Thompson Device. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). Moreover, there is no evidence that the Thompson Device has a bottom guide roller. *See* ¶ 9.

14. Taking the admitted prior art in Figure 2A of the '264 Patent and adding to it the bottom guide roller from the Thompson Device would extend the travel of the window. (Ex. 11, Newman Dep. Tr. 39:23 - 40:13).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The testimony cited does not provide any evidence of a motivation to combine the admitted prior art and any bottom guide roller of the Thompson Device in the particular manner claimed at the time of the invention. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). Moreover, even if a combination as suggested by Caldwell were made, there is no evidence to suggest that the device would be operational with such a combination of components. Additionally, there is no evidence that the Thompson Device has a bottom guide roller. *See* ¶ 9. This statement should also be stricken because the well established law does not support the contention. This statement inappropriately employs hindsight to teach the claimed invention of the '264 patent. *Bose Corp. v. JBL, Inc.*, 112 F.Supp. 2d 138, 151-52 (D.Mass. 2000).

'368 Non-infringement

15. The Caldwell Series 97ez balance does not include a pocket positioned in the second end of the frame (Still Dec. Ex. "C" at p. 8).

**Amesbury's Response:** This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. (Ex. 9, Shina March 23 Report, at 33 item "2G") The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16).

16.     The Caldwell Series 97ez balance does not include a pocket in the second end of the frame adapted to mate with a rivet (Still Dec. Ex. "C" at p. 8).

**Amesbury's Response:**     This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. (Ex. 9, Shina March 23 Report, at 33 item "2G") The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16).

17.     The Caldwell Series 97ez balance does not include a pocket in the second end of the frame that secures the balance to the frame (Still Dec. Ex. "C" at p. 8).

**Amesbury's Response:**     This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. (Ex. 9, Shina March 23 Report, at 33 item "2G") The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16).

18.     The Caldwell Series 97ez balance does not include a pocket that mates with a rivet (Ex. 14, Kellum Dep. Tr. 144:3-12).

**Amesbury's Response:**     This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. The statement should also be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The cited testimony only considers the situation where the balance has been installed in a window. (Ex. 45, Kellum Dep. Tr. 144:3-12). Such testimony is irrelevant to Amesbury's allegations that the pocket of the Series 97ez balance mates with the rivet during shipping and handling. (Ex. 9, Shina March 23 Report, at 33 item "2G") If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. *Id.* The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16).

6

19. The Caldwell Series 97ez balance does not include a pocket that touches a rivet (Ex. 14, Kellum Dep. Tr. 144:3-12; Ex. 13, Batten Dep. Tr. 131:2-7).

**Amesbury's Response:** This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. The statement should also be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The cited testimony only considers the situation where the balance has been installed in a window. (Ex. 45, Kellum Dep. Tr. 144:3-12). Such testimony is irrelevant to Amesbury's allegations that the pocket of the Series 97ez balance mates with the rivet during shipping and handling. (Ex. 9, Shina March 23 Report, at 33 item "2G") If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. *Id.* The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16).

20. Mr. Gary Newman is the inventor of the '264 Patent, is an employee of Amesbury and claims to be an expert in the construction of window balances (Ex. 11, Newman Dep. Tr. 121:23-122:17; Ex. 16, Newman Rule 30(b)(6) Dep. Tr. 19:14-21:9).

**Amesbury's Response:** Undisputed.

21. Mr. Newman is skilled in reviewing engineering drawings (Ex. 16, Newman Rule 30(b)(6) Dep. Tr. 19:14-21:9; Ex. 11, Newman Dep. Tr. 121:23 - 122:17).

**Amesbury's Response:** Undisputed.

22. Mr. Newman was unable to find a connecting device in engineering drawings of Caldwell's 97ez balance (Ex. 11, Newman Dep. Tr. 120:23 - 122:7).

**Amesbury's Response:** It is undisputed that Mr. Newman was unable to locate a "snapping element or resilient tab in engineer drawings of the Series 97ez balance. (Ex. 42, Newman Dep. Tr. 120:23 - 122:7). The remainder of this statement should be stricken because it is based on a claim construction of the term "connecting device" different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. This statement should also be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. Mr. Newman's testimony only states that he was unable to find a

7

"snapping element" or resilient tabs in the engineering drawings of the Series 97ez balance. (Ex. 42, Newman Dep. Tr. 120:23 - 122:7) The cited testimony does not address whether a rivet or screw, which are also possible connecting devices as construed by the Court, could be identified. This statement should also be stricken because it is directly contradicted by the contemporaneous evidence of the record. Caldwell's own expert admitted that a rivet is used in the 97ez balance as a "connecting device" to connect the balance shoe or carrier to the balance. (Ex. 41, Batten Dep. Tr. 128:10-19.)

      23.     There is no evidence of record that the Caldwell Series 97ez balance has a part which performs the same function in the same way to achieve the same result as the claimed pocket.

      **Amesbury's Response:**    This statement should be stricken because it is based on a claim construction different from that determined by the Court. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. If the statement is not stricken, it is disputed. The Series 97ez balance includes a notch or "pocket" shaped to contact and to fit with the rivet, so as to secure the balance shoe in the channel during shipping and handling of the balance. (Ex. 9, Shina March 23 Report, at 33 item "2G") The testimony of Jeffrey Robertson, who designed the Series 97ez balance, confirms that the Series 97ez balance includes a "pocket" designed to mate with a rivet. (Ex. 43, Robertson Dep. Tr. 49:9-19, 51:9-16). In addition, as the Court construed the term, the claimed "pocket" secures the balance shoe within the U-shaped channel. It achieves this result by functioning to "prevent displacement or rotation of the balance shoe during shipping, handling and in use" by contacting a rivet. (Ex. 9, Shina March 23 Report, at 33.) In the same way, the "pocket" component of the Caldwell Series 97ez balance performs the same function as the claimed pocket of preventing unwanted rotation of the shoe, as it "stop[s] displacement (rotation) in the same manner as the invention by contacting a rivet, thus achieving the same result of securing the balance shoe in the channel during shipment, handling, and usage." (Ex. 9, Shina March 23 Report, at 34.) Thus, the component identified by Amesbury's expert as a notch on the Series 97ez balance is at least equivalent to the claimed "pocket." *See Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998).

      24.     There is no difference in the balance shoes of the 97i and 97ih products of Caldwell (Ex. 13, Batten Dep. Tr. 74:22-24).

      **Amesbury's Response:**    Undisputed.

      25.     The Caldwell Series 97i balance does not have both a rivet that mates with a pocket and a connecting device (Still Dec. ¶7, Ex. "C" at p. 7-8; Ex. 13, Batten Dep. Tr. 143:6-12).

**Amesbury's Response:** This statement should be stricken because it is directly contradicted by the Court's claim construction in this case. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. The Court specifically noted that "[c]laim 2 ought to be construed to include the possibility that the rivet could serve as the 'connecting device' when it locks into the frame 'pocket' shaped to mate with it." (Ex. 8, Claim Construction Order, at 72.) If the statement is not stricken, it is disputed. Caldwell's expert concedes that the Series 97i balance incorporates a rivet for connecting the balance shoe to the U-shaped channel. (Ex. 40, Still. Dep. Tr. 134:11-15.)

26. The Caldwell Series 97ih balance does not have both a rivet that mates with a pocket and a connecting device (Still Dec. ¶7, Ex. "C" at p. 7-8; Ex. 13, Batten Dep. Tr. 143:6-12; see also Ex. 13, Batten Dep. Tr. 74:22 (indicating that there is no difference in the balance shoes of the 97i and 97ih)).

**Amesbury's Response:** This statement should be stricken because it is directly contradicted by the Court's claim construction in this case. Therefore, the evidence cited is not relevant to the infringement analysis in this case and cannot raise an issue of material fact. The Court specifically noted that "[c]laim 2 ought to be construed to include the possibility that the rivet could serve as the 'connecting device' when it locks into the frame 'pocket' shaped to mate with it." (Ex. 8, Claim Construction Order, at 72.) If the statement is not stricken, it is disputed. Caldwell's expert concedes that the Series 97i balance incorporates a rivet for connecting the balance shoe to the U-shaped channel. (Ex. 40, Still. Dep. Tr. 134:11-15.) It is undisputed that there is no difference in the balance shoes of the 97i and 97ih products of Caldwell. (Ex. 41, Batten Dep. Tr. 74:22-24).

'638 Non-infringement

27. Caldwell does not make, use, sell or offer to sell any products which include a channel for use in connection with its Quick-Tilt*nc balance (Zinter Dec. ¶ 810).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) (citations omitted) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not offer a satisfactory explanation of why the testimony is changed."); *Stefanik v. Friendly Ice Cream Corporation*, 183 F.R.D. 52, 54 (D. Mass. 1998) ("a party 'is not permitted to kick over the chess board in the face of a checkmate.'").

28. Caldwell does not make, use, sell or offer to sell any products which include a channel means for use in connection with its Quick-Tilt*nc balance (Zinter Dec. ¶¶ 8-10).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

29. Caldwell does not make, use, sell, or offer to sell any products which include a channel having a rear wall, side walls and an extremities of said sidewalls, inwardly turned opposed flanges (Zinter Dec. ¶¶ 8-10).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

30. Caldwell does not sell jambs, frame jambs, window jambs or jamb liners (Zinter Dec. ¶ 6-10).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

31. Caldwell sells window balances which are mounted by Caldwell's customers in the channels of jambs manufactured and sold by companies other than Caldwell (Zinter Dec. ¶ 9).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

32. The mounting means of the Caldwell Quick-Tilt*nc balance which was designated Still Exhibit 10 was not secured in the channel means (because it was not screwed into the channel) (Ex. 10, Shina Dep. Tr. 44:20 - 45:6; Ex. 9, Still Dep. Tr. 72:473:13, 148:12-25).

**Amesbury's Response:** It is undisputed that the mounting means of the Caldwell Quick-Tilt*nc balance, which was designated Still Exhibit 10, was not screwed into the channel

10

when Dr. Shina examined it during his deposition. (Ex. 39, Shina Dep. Tr. 44:20 - 45:6) The remainder of this statement is disputed because the term "secured" is ambiguous and undefined. The claims of the '368 patent do not include any installation requirements. (Ex. 2, '368 patent.)

33.     Mr. Still testified that the dust cover and the body of the housing, and not the spine, of Still Exhibit 10 would inhibit rotation, if the housing were properly installed in the channel (Ex. 9, Still Dep. 72:14 - 74:24).

**Amesbury's Response:**     Undisputed.

34.     The mounting means of the Caldwell Quick-Tilt*nc balance that was examined by Dr. Shina in conducting his infringement analysis was not properly installed because it was not secured in the channel (Ex. 10, Shina Dep. Tr. 44:20 - 45:6).

**Amesbury's Response:**     It is undisputed that the mounting means of the Caldwell Quick-Tilt*nc balance, which was designated Still Exhibit 10, was not screwed into the channel when Dr. Shina examined it during his deposition. (Ex. 39, Shina Dep. Tr. 44:20 - 45:6) The remainder of this statement is disputed because the terms "secured" and "properly installed" are ambiguous and undefined. The claims of the '368 patent do not include any installation requirements. (Ex. 2, '368 patent.)

35.     The mounting means of the Caldwell Quick-Tilt*nc balance that was examined by Dr. Shina in conducting his infringement analysis was not secured in the channel means by a screw (Ex. 10, Shina Dep. Tr. 44:20 - 45:6).

**Amesbury's Response:**     Undisputed.

36.     If the mounting means of the Caldwell Quick-Tilt*nc balance is not secured to the channel means, the balance will not function as a balance (Ex. 10, Shina Dep. Tr. 44:3-19).

**Amesbury's Response:**     Undisputed.

37.     Dr. Shina never examined any Caldwell Quick-Tilt*nc balance which was properly installed in a channel (Ex. 10, Shina Dep. Tr. 44:3 - 44:6).

**Amesbury's Response:**     This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. The term "properly installed" is ambiguous and undefined. The claims of the '368

11

patent do not include any installation requirements. (Ex. 2, '368 patent.) To the extent "proper installation" involves screwing the balance into the channel, this statement is disputed by Dr. Shina's affidavit submitted in support of Amesbury's motion for summary judgment. Dr. Shina has examined a Caldwell Quick-Tilt*nc balance which was screwed into the channel of a window purchased from Tri-State Wholesale Building Supplies, Inc. (Shina Second Decl. at ¶ 9)

38. When properly mounted by a screw, frictional forces between mounting means of the Caldwell Quick-Tilt*nc balance and the channel means resist rotation of the mounting means. (Ex. 10, Shina Dep. Tr. 74:24 - 75:20).

**Amesbury's Response:** It is undisputed that when mounted by a screw, frictional forces between mounting means of the Caldwell Quick-Tilt*nc balance and the channel means resist rotation of the mounting means. (Ex. 39, Shina Dep. Tr. 74:24 - 75:20) The remainder of this statement is disputed because the term "properly mounted" is ambiguous and undefined. The claims of the '368 patent do not include any installation requirements. (Ex. 2, '368 patent.)

39. There is no evidence of record that the rotational force caused by the coil spring is greater than the resisting forces between mounting means of the Caldwell Quick-Tilt*nc balance and the channel means (Ex. 10, Shina Dep. Tr. 78:2 - 79:24).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446. In the testimony cited, Dr. Shina simply states that he did not measure the frictional force resisting rotation or the force tending to cause rotation because of lack of information. (Ex. 39, Shina Dep. Tr. 77:17- 79:24). If the statement is not stricken, it is disputed. Dr. Shina provided testimony regarding the forces tending to cause rotation of the mounting means. (Ex. 39, Shina Dep. Tr. 58:24-59:12).

40. If the forces resisting rotation of the mounting means of the Caldwell Quick-Tilt*nc balance are greater than the forces causing the mounting means to rotate, the mounting means will not rotate (Ex. 10, Shina Dep. Tr. 78:19 - 79:20; Ex. 10, Shina Dep. Tr. 117:5-10).

**Amesbury's Response:** Undisputed.

41. There is no evidence of record that a Caldwell Quick-Tilt*nc balance will ever rotate when properly installed in a channel.

**Amesbury's Response:** This statement should also be stricken because it is directly contradicted by all contemporaneous evidence of record to the extent "properly installed" can

12

refer to being screwed into the channel. Dr. Shina observed rotation of a Caldwell Quick-Tilt*nc balance, which had been screwed into the channel, after raising and lowering the window sash ten times. (Shina Second Decl. at ¶¶ 15 – 17.)

42.  Dr. Shina has never observed rotation of the mounting means in a jamb channel (Ex. 10, Shina Dep. Tr. 60:8-15).

**Amesbury's Response:**   Disputed.  Dr. Shina observed rotation of the mounting means of a Caldwell Quick-Tilt*nc balance in the jamb channel of the Earthwise window.  (Shina Second Decl. at ¶ 16)

43.  Rotation of the mounting means must begin before the spine can touch the flange to prevent rotation (Ex. 10, Shina Dep. Tr. 92:20 - 93: 1).

**Amesbury's Response:**   This statement should be stricken because the evidence cited does not support the alleged "fact." *See Cordero-Soto*, 418 F.3d at 118; *Carreiro*, 68 F.3d at 1446.  The testimony cited simply states that in order to inhibit rotation, the spine must contact the flange.  (Ex. 10, Shina Dep. Tr. 92:20 - 93: 1).  If the statement is not stricken, it is disputed.  Dr. Shina observed a Caldwell Quick-Tilt*nc balance installed in a window, where the spine was in contact with the flange, as installed.  (Shina Second Decl. at ¶ 12).

44.  If the spacing between the spine and the flange is such that the spine cannot touch the flange, the spine cannot prevent rotation (Ex. 10, Shina Dep. Tr. 91:2192-11).

**Amesbury's Response:**   Undisputed.

45.  For a Quick-Tilt*nc balance to infringe the '638 patent, the spine must contact the flange of the channel.  (Ex. 10, Shina Dep. Tr. 93:2-8, 98:2-16).

**Amesbury's Response:**   Undisputed.

46.  The spine on the Caldwell Quick-Tilt*nc balance does not touch the flange (Ex. 13, Batten Dep. Tr. 164:4-6).

**Amesbury's Response:**   Disputed.  Dr. Shina has stated that in what was marked as Still Ex. 10, the spine of the Caldwell Quick-Tilt*nc balance did in fact touch the flange. (Ex. 9, Shina March 23 Report, at 12)  Dr. Shina also observed two Caldwell Quick-Tilt*nc balances screwed into a window that were in contact with respective flanges. (Shina Second Decl. at ¶¶ 12, 16)

13

47.     Dr. Shina did not measure the forces tending to cause the housing of the Caldwell Quick-Tilt*nc to rotate or the forces tending to resist rotation of the housing (Ex. 10, Shina Dep. Tr. 77:4-79:24).

**Amesbury's Response:**     Undisputed.

48.     There is no evidence of record that Still Exhibit 10 includes a window jamb manufactured by or for Tri-State Wholesale Building Supplies, Inc., of Cincinnati, Ohio ("Tri-State").

**Amesbury's Response:**     Undisputed.

49.     There is no evidence of record that Still Ex. 10 includes a jamb manufactured by or for any Caldwell customer.

**Amesbury's Response:**     Undisputed.

50.     There is no evidence of record that the window jamb in Ex. 38 to the Declaration of Safraz Ishmael ("Ex. 38") represents a window offered for sale.

**Amesbury's Response:**     This statement should be stricken because it is directly contradicted by all contemporaneous evidence of record. The window jamb in Ex. 38 was purchased from Tri-State Wholesale Building Supplies, Inc. (Rogers Decl. at ¶¶ 2, 5, Dillingham Decl. at ¶ 2).

51.     There is no evidence of record that the channel geometry of Still Exhibit 10 is the same as is found in the Tri-State window product shown on Tri-State's website.

**Amesbury's Response:**     This statement should be stricken because it is directly contradicted by all contemporaneous evidence of record. Dr. Shina compared the channel geometry of Still Exhibit 10 to the window Amesbury purchased from Tri-State via the Tri-State website. Dr. Shina concluded that the channel geometry of Still Exhibit 10 appears to be identical to the channel geometry of the Tri-State window. (Shina Second Decl. at ¶ 8)

52.     The flange separation, which varies on jambs from different manufacturers, cannot be determined from the window jamb photograph shown in Ex. 38 (Zinter Dec. ¶ 11-18).

**Amesbury's Response:**   This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

53.   There is no evidence of record that the window jamb shown in Ex. 38 is the same relevant configuration as that of Still deposition Exhibit 10.

**Amesbury's Response:**   This statement should be stricken because it is directly contradicted by all contemporaneous evidence of record. Dr. Shina compared the window jamb of Still Exhibit 10 to the window Amesbury purchased from Tri-State via the Tri-State website. The window Amesbury purchased from Tri-State and which Dr. Shina inspected is the same window shown in Ex. 38. (Rogers Decl. at ¶¶ 2, 5, Dillingham Decl. at ¶¶ 2,3) Dr. Shina concluded that the window jamb of Still Exhibit 10 appears to be identical to the window jamb of the Tri-State window (Ex. 38). (Shina Second Decl. at ¶ 8)

54.   The jamb of Ex. 38 is the same type as found in Shina Ex. 7 (Zinter Dec. ¶ 19).

**Amesbury's Response:**   This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54. If the statement is not stricken, it is disputed. Dr. Shina examined the jamb of Ex. 38 and stated that it appears to be identical to Still Exhibit 10, which has a substantially more narrow distance between the flanges of the jamb channel then Shina Ex. 7. (Shina Second Decl. at ¶ 8) Therefore, the jamb of Ex. 38 is not the same type as found in Shina Ex. 7. *Id.* Moreover, this statement directly contradicts the statement in ¶ 52, *supra*.

55.   Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance, Shina Ex. 6, as installed in a window jamb in Shina Ex. 7 does not infringe claims 1 or 8 of the '638 Patent (Ex. 10, Shina Dep. Tr. 115:4-13).

**Amesbury's Response:**   It is undisputed that Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance, Shina Ex. 6, as installed and presented to him in his deposition in a window jamb in Shina Ex. 7 did not infringe claims 1 or 8 of the '638 Patent (Ex. 39, Shina Dep. Tr. 115:4-13).

56.   The jamb of Ex. 38 is the same type as found in Shina Ex. 5 (Zinter Dec. ¶ 19).

**Amesbury's Response:**   This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54. If the statement is not stricken, it is disputed. Dr. Shina examined the jamb of Ex. 38 and stated that it appears to be identical to Still Exhibit 10, which has a substantially more

15

narrow distance between the flanges of the jamb channel then Shina Ex. 5. (Shina Second Decl. at ¶ 8.) Therefore, the jamb of Ex. 38 is not the same type as found in Shina Ex. 5. *Id.* Moreover, this statement directly contradicts the statement in ¶ 52, *supra*.

57. Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance, Shina Ex. 6, as installed in a window jamb in Shina Ex. 5 does not infringe claims 1 or 8 of the `638 Patent (Ex. 10, Shina Dep. Tr. 115:14 - 116:11).

**Amesbury's Response:** It is undisputed that Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance, Shina Ex. 6, as installed and presented to him during his deposition in a window jamb in Shina Ex. 5 did not infringe claims 1 and 8 of the '638 patent. (Ex. 39, Shina Dep. Tr. 115:14 - 116:11).

58. The jamb of Ex. 38 is the same type as found in Braid Ex. 9 (Zinter Dec. ¶ 19).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54. If the statement is not stricken, it is disputed. Dr. Shina examined the jamb of Ex. 38 and stated that it appears to be identical to Still Exhibit 10, which has a substantially more narrow distance between the flanges of the jamb channel then Braid Ex. 9. (Shina Second Decl. at ¶ 8.) Therefore, the jamb of Ex. 38 is not the same type as found in Braid Ex. 9. *Id.* Moreover, this statement directly contradicts the statement in ¶ 52, *supra*.

59. Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance as installed in a window jamb in Braid Ex. 9 does not infringe claims 1 or 8 of the '638 Patent (Ex. 10, Shina Dep. Tr. 118:15 - 120:3).

**Amesbury's Response:** It is undisputed that Dr. Shina concluded that the Caldwell Quick-Tilt*nc balance as installed in a window jamb in Braid Ex. 9 and presented to him during his deposition more likely than not did not infringe claims 1 or 8 of the '638 Patent. (Ex. 39, Shina Dep. Tr. 118:15 - 120:3).

60. Shina Ex. 5 is a jamb used by Caldwell's second largest customer of Quick-Tilt*nc balances, Anlin Industries, Inc. (Zinter Dec. ¶12).

**Amesbury's Response:** This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

61.     Shina Ex. 7 is a jamb used by Caldwell's second largest customer of Quick-Tilt*nc balances, Accu-Weld Replacement Window & Door Co. (Zinter Dec. ¶13).

**Amesbury's Response:**     This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

62.     Caldwell sells at least 70 percent of its Quick-Tilt*nc balances to customers who use window jambs identical to Shina Ex. 5 and Shina Ex. 7. (Zinter Dec. at ¶ 14).

**Amesbury's Response:**     This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

<u>'638 Invalidity</u>

63.     Still Ex. 5 is a window balance manufactured by the owner of the Sterner reference (Zinter Dec. ¶ 17).

**Amesbury's Response:**     This statement should be stricken because the only evidence cited in support is a contradictory affidavit which cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Colantuoni*, 44 F.3d at 4-5; *Stefanik*, 183 F.R.D. at 54.

64.     The Sterner product, Still Ex. 5, includes a raised spine (Ex. 10, Shina Dep. Tr. 182:19 - 183-22).

**Amesbury's Response:**     This statement should be stricken as the evidence cited does not support the alleged "fact." The testimony cited only refers to the surface "down" and does not refer to a "raised spine" (Ex. 39, Shina Dep. Tr. 182:19 - 183-22; 185:13-19)

65.     The Sterner product, Still Ex. 5, includes a raised spine positioned between and in the same plane as the flanges of the frame jamb. (Ex. 10, Shina Dep. Tr. 180:7 - 18).

**Amesbury's Response:**     This statement should be stricken because the evidence cited does not support the alleged "fact." The testimony cited only states that the surface "down" and not a "spine" or "projection" is positioned between and in the same plane as inwardly opposed flanges of a channel means. (Ex. 39, Shina Dep. Tr. 180:7 - 18)

17

66. The raised spine of the Sterner product, Still Ex. 5, inhibits rotational movement of the mounting means (Ex. 10, Shina Dep. Tr. 185:13-24).

**Amesbury's Response:** This statement should be stricken because the evidence cited does not support the alleged "fact." The testimony cited only states that the surface "down" and not a "spine" or "projection" appears to inhibit rotation of the device. (Ex. 39, Shina Dep. Tr. 185:13-24)

Respectfully submitted,

/s/ Douglas J. Kline
Douglas J. Kline (BBO# 556680)
Terese Dillingham (BBO# 644520)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: June 23, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 23, 2006.

/s/ Terese Dillingham

LIBA/1710450.1