# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC., and
AMESBURY SPRINGS LTD.,

       Plaintiffs,

   v.

THE CALDWELL MANUFACTURING
COMPANY,

       Defendant.

Civil Action No. 05-10020-DPW

**REPLY IN SUPPORT OF AMESBURY'S MOTION FOR
SUMMARY JUDGMENT OF INFRINGEMENT AND
<u>THAT THE ASSERTED CLAIMS ARE NOT INVALID</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    AMESBURY'S '264 PATENT ......................................................................... 2

        A.    It Is Undisputed That Caldwell's Series 86xt Balance Infriges
            Claims 1, 2, 4 And 5 Of The '264 Patent. ................................................ 2

        B.    It Is Undisputed That The '264 Patent Is Not Invalid. .............................. 6

    II.    AMESBURY'S '368 PATENT ....................................................................... 8

        A.    It Is Undisputed That Caldwell's Series 97ez Balance Infringes
            Claims 2, 3, 6 And 7 Of The '368 Patent. ................................................ 8

            1.    It Is Undisputed That The 97ez Balance Includes A
                "Pocket." ............................................................................... 8

            2.    It Is Undisputed That The Series 97ez Balance Includes A
                "Connecting Device." ........................................................... 10

            3.    It is Undisputed That The Series 97ez Balance Infringes
                Dependent Claims 3, 6 And 7 Of The '368 Patent ............... 11

        B.    It Is Undisputed That Caldwell's Series 97i Balance Infringes
            Claims 2, 3, 6 And 7 Of The '368 Patent. .............................................. 12

        C.    It Is Undisputed That Caldwell's Series 97ih Balance Infringes
            Claims 2, 3, 6 And 7 Of The '368 Patent. .............................................. 13

        D.    It Is Undisputed That The '368 Patent Is Not Invalid. ............................ 13

    III.    AMESBURY'S '638 PATENT ..................................................................... 14

        A.    It Is Undisputed That Caldwell's Quick-Tilt*nc  Balance Infringes
            Claims 1, 2, 3 And 8 Of The '638 Patent. ............................................... 14

            1.    Caldwell Cannot Defeat Summary Judgment With A Last-
                Minute Affidavit That Contradicts Caldwell's Previous
                Testimony. ........................................................................... 14

            2.    The Quick-Tilt*nc Balance Includes A Raised Spine That
                Inhibits Rotational movement ............................................... 16

            3.    It is Undisputed That The Quick-Tilt*nc Balance Infringes
                Dependent Claims 2 And 3 Of The '638 Patent. .................. 18

         B.    It is Undisputed That The '638 Patent Is Not Invalid. ............................ 18

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

### Federal Cases

Amazon.com, Inc. v. Barnesandnoble.com.,
239 F.3d 1343, 1351 (Fed. Cir. 2001) ................................................... 5

Applied Materials, Inc. v. Advanced Semiconductor
Materials Am., Inc., 98 F.3d 1563, 1569 (Fed. Cir. 1996) ............................ 6, 19

Bose Corp. v. JBL, Inc., 112 F. Supp. 2d 138, 151-52 (D. Mass. 2000) .............. 8

Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5
(1st Cir. 1994) .......................................................................... 3, 15

Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.,
807 F.2d 955, 962 (Fed. Cir. 1986) ...................................................... 7

Gechter v. Davidson, 116 F.3d 1454, 1457 (Fed. Cir. 1997)............................. 19

In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000) ................................... 7

In re Lee, 277 F.3d 1338, 1343 (Fed. Cir. 2002)...................................... 6

In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998)................................. 6

Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 659-660
(D.N.D. Cal. 1994) ...................................................................... 15

Margo, 213 F.3d 55 ..................................................................... 15

McElmurry v. Arkansas Power & Light Co., 995 F.2d 1576, 1578
(Fed. Cir. 1993) ....................................................................... 6, 7

Ryko Manufacturing Co. v. Nu-Star, Inc., 950 F.2d 714, 718
(Fed. Cir. 1991) ........................................................................ 7

Stefanik v. Friendly Ice Cream Corporation, 183 F.R.D. 52, 53-54
(D. Mass. 1998) ....................................................................... 3, 15

Teleflex, Inc. v. KSR Int'l Co., 2005 U.S. App. Lexis 176,
** 16 (Fed. Cir. Jan. 6, 2005).......................................................... 6, 7

Vitronic Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) ..... 4

iii

**INTRODUCTION**

In its motion for summary judgment, Amesbury presented undisputed facts establishing that:

- Caldwell's 86xt balance infringes claims 1, 2, 4 and 5 of Amesbury's '264 patent;

- Caldwell's Series 97ez, 97i and 97ih balances infringe claims 2, 3, 6 and 7 of Amesbury's '368 patent; and

- Caldwell's Quick-Tilt*nc balance infringes claims 1, 2, 3 and 8 of Amesbury's '638 patent.

In response, rather than proffering credible evidence that Caldwell's products do not infringe, Caldwell relies on arguments that disregard the Court's claim construction, are inconsistent with the admissions of Caldwell's expert and its Rule 30(b)(6) witness, and that are directly contradicted by Caldwell's previous discovery responses. Caldwell has failed to produce specific evidence sufficient to raise a genuine dispute of material fact regarding infringement, and therefore the Court should grant summary judgment that Caldwell's products infringe.

In addition, Caldwell has failed to identify any clear and convincing evidence to prove that the asserted claims of the patents-in-suit are invalid. Indeed, Caldwell concedes the validity of the '368 patent. As to the '638 and '264 patents, Caldwell's invalidity arguments fail. Caldwell admits that Sterner[1] omits at least two elements of each asserted claim of the '638 patent. Thus, as a matter of law, Sterner does not anticipate any of the asserted claims of the '638 patent. Moreover, Caldwell has now abandoned its previous obviousness argument. With respect to Caldwell's assertion that the '264 patent is invalid, Caldwell makes no argument that this patent is anticipated by any prior art reference, and Caldwell has not presented any objective evidence,

---

[1]  U.S. Patent No. 5,157,808 attached as Ex. 18 to the Declaration of Safraz W. Ishmael, filed May 19, 2006.

much less clear and convincing evidence, that a person of ordinary skill in the relevant art would have been motivated to combine the disparate prior art references upon which Caldwell relies. Therefore, Caldwell's obviousness argument with respect to the '264 patent must fail. Because Caldwell has no basis on which to assert that the patents-in-suit are invalid, the Court should grant summary judgment that the asserted claims of Amesbury's '264, '368, and '638 patents are not invalid.

**ARGUMENT**

I.    **AMESBURY'S '264 PATENT**

    A.    **It Is Undisputed That Caldwell's Series 86xt Balance Infringes Claims 1, 2, 4 And 5 Of The '264 Patent.**

Caldwell concedes that its Series 86xt balance incorporates all of the elements of claims 1, 2, 4 and 5 of the '264 patent, except "a bottom guide roller rotatably mounted in the bottom guide." According to Caldwell, the Series 86xt balance employs what Caldwell refers to as a "pulley" and not a bottom guide "roller." (Opp. Br. at 23.) Caldwell argues that it does not infringe because, in some instances – such as highway construction and house painting -- a "pulley" is not the same as a "roller." Caldwell's semantic argument fails because, regardless of what Caldwell calls it, the Series 86xt balance incorporates the claimed roller.

In support of its argument, Caldwell cites the ambiguous testimony of its expert, Charles Still, in which Still explains that in the context of general window design, there "may" be a difference between a roller and a pulley.[2] According to Still, a roller "may have certain design

---

[2]    Caldwell also points to testimony by an inventor, Gary Newman, in which Newman states that in general a roller may differ from a pulley. (Caldwell's Ex. 11 (Amesbury's Ex. 40), Newman Dep. Tr. at 23.) Newman's testimony, however, is inapposite because his testimony does not address the claimed roller in the context of the '264 patent.

2

intent. It may or may not have a groove in the center where the pulley does." (Ex. 40[3], Still

Dep. Tr. at 99.) Caldwell also offers an affidavit from its expert in which he states that had he

been asked to elaborate on what he believed was the difference between a "roller" and a "pulley"

during his deposition, he would have testified that:

> a roller denotes a rolling cylinder, the surface of which is generally a bearing
> surface. For example, a steamroller and a paint roller are all types of rollers,
> designed to roll along a surface. A pulley, in contrast, is a thin grooved wheel
> which is not designed to roll along a surface. If asked I would have said that a
> roller and a pulley do not perform the same function. (Still Aff. at ¶ 12.)

Amesbury, however, did specifically ask Caldwell's expert at his deposition to explain

the differences between a pulley and a roller in the context of the '264 patent, and Still testified:

> Q:    What if any differences are there in your opinion between a pulley wheel
>        and a roller as the '264 patent uses the term?
>
> A:    There is really not much difference. The patent calls for a bottom roller
>        and bottom guide. If I were describing that, I would call it a pulley.

(Ex. 40, Still Dep. Tr. 110:11-17.)

Caldwell cannot avoid summary judgment by submitting a declaration from its

expert that contradicts his sworn deposition testimony. *See Colantuoni v. Alfred*

*Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994); *Stefanik v. Friendly Ice Cream*

*Corporation*, 183 F.R.D. 52, 53-54 (D. Mass. 1998). Caldwell presents no credible

evidence to dispute the fact that, in the context of the '264 patent, what Amesbury refers

to as the bottom guide "roller" is the same as what Caldwell refers to as a "pulley" in its

Series 86xt balance. Indeed, Caldwell cannot dispute that the function of the "roller" of

the '264 patent and the function of the "pulley" of the Series 86xt balance are the same.

---

[3] Amesbury's exhibits 39 through 46 are attached to the Supplemental Declaration of Safraz W. Ishmael, filed



**FIG. 4A**

As shown in Fig. 4A of the '264 patent, the bottom guide "roller" **350** of the '264 patent is a "thin, grooved wheel," and fits Caldwell's expert's definition of "pulley." (Still Aff. at ¶ 12 ("[a] pulley, in contrast, is a this, grooved wheel which is not designed to roll along a surface."). Caldwell cannot create a genuine issue of fact by asserting that rollers are different from pulleys, when Caldwell has conceded that in the context of this dispute there is no distinction.

Nothing in the '264 patent requires that the claimed "roller" be construed as a "rolling cylinder . . .with a bearing surface . . . designed to roll along a surface" as Caldwell now asserts. During claim construction, the parties did not dispute the term "bottom guide roller," and therefore the Court did not construe that term. Caldwell's new proposed construction of "roller" is untenable because it contradicts the deposition testimony of Caldwell's expert, disregards the clear teaching of the '264 patent's specification and would improperly exclude preferred embodiments described in the '264 patent from the scope of the claimed invention. *See Vitronic Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) (construing a claim so that the preferred embodiment is outside the scope of the claimed invention "is rarely, if ever, correct and would require highly persuasive evidentiary support, which is wholly absent in this case."). For example, the specification describes the cord being threaded "around" the

herewith, on June 23, 2006.

4

bottom guide roller (Ex. 1[4], '264 patent at col. 5, ll. 24-27) which is shown to have a

center groove in Figs. 4A and 4B to hold the cord in place, but under Caldwell's

construction of "roller" this embodiment would be excluded.

Moreover, Caldwell's position is inconsistent with the arguments that Caldwell

makes in attacking the validity of the '264 patent.  Specifically, Thompson[5], upon which

Caldwell relies, identifies item 426 as a "pulley wheel." (Ex. 12, Thompson '011 Patent,

Col. 7, ll. 9 - 10.)  In his March 8 Report on invalidity, however, Still claims that item

426 of Thompson discloses *a roller*. (See Ex. 14, Still March 8 Report, Ex. A, p. 1

(stating that item R in Ex. B of the report is a bottom guide roller); Ex. 14, Still March 8

Report, Exhibit B (identifying item R as the item denoted as 426 in the Thompson '011

patent).  In addition, in its interrogatory responses, Caldwell identifies the same pulley

wheel in Thompson as a roller, and now argues in its opposition brief that the pulley

wheel/roller of Thompson in combination with other prior art renders the '264 patent

invalid.  (Ex. 13, Def.'s Second Supp. Answers to Pls.' First  Set of Interrogs., at Ex. A;

Caldwell Opp. Br. at 23 – 26.)  Caldwell's attempt to argue that "pulley" and "roller" are

the same for purposes of invalidity, but different for purposes of non-infringement is

untenable.  *See Amazon.com, Inc. v. Barnesandnoble.com.*, 239 F.3d 1343, 1351 (Fed.

Cir. 2001) ("A patent may not like 'a nose of wax' be twisted" to accommodate

inconsistent invalidity and infringement positions).

Because Caldwell has conceded that the Series 86xt balance's "pulley" and the

---

[4] Amesbury's Exhibits 1 thorugh 38 are attached to the Declaration of Safraz W. Ishmael, filed on May 19, 2006.

[5] U.S. Patent No. 6,840,011 attached as Ex. 12.

claimed "roller" of the '264 patent are synonymous, Amesbury is entitled to summary judgment of infringement.

### B.    It Is Undisputed That The '264 Patent Is Not Invalid.

Caldwell concedes that the '264 patent is not anticipated and argues only that the claimed invention of the '264 patent is obvious in view of the alleged prior art in Figure 2A of the '264 patent in combination with Thompson.  (Opp. Br. at 28.)  Caldwell asserts that the motivation to combine these two references was the "well known need in the window balance industry to extend the travel of window balances to better comply with building egress codes."  (Opp. Br. at 27-28.)  In support of this obviousness argument, Caldwell cites the inventor of the '264 patent, Gary Newman, who stated only that, in hindsight, this combination would solve the problem associated with window egress.  (Opp. Br. at 28-29 citing Caldwell's Ex. 11 (Amesbury's Ex. 42), Newman Dep. Br. at 39-40.)

It is Caldwell's burden to prove obviousness by clear and convincing evidence.  *See Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996).  The Federal Circuit has held that the "factual inquiry whether to combine references . . . must be based on objective evidence of record."  *In re Lee*, 277 F.3d 1338, 1343 (Fed. Cir. 2002).  Broad conclusory statements, standing alone, are insufficient.  *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1578 (Fed. Cir. 1993).  Instead, evidence of motivation or suggestion to combine must be "clear and particular," and it must be shown that one of ordinary skill in the art would reasonably expect that the combination would achieve success.  *Id.*  The Federal Circuit recognizes that "under appropriate circumstances" the nature of the problem to be solved may provide a motivation to combine prior art references, but, "the nature of the problem to be solved must be such that it would have led a person of ordinary skill

in the art to combine the prior art teachings in the particular manner claimed." *Teleflex, Inc., v. KSR Int'l Co.*, 2005 U.S. App. Lexis 176, **16 (Fed. Cir. Jan. 6, 2005); *see also In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). According to the Federal Circuit, this situation only arises when two prior art references address the same precise problem that the patentee was trying to solve. *Teleflex*, 2005 U.S. App. Lexis at **17.

Thompson, which concerns a tilting hung window with balances secured to the window panel, certainly does not address the problem of extending the travel of window sashes to better comply with building egress codes. (Ex. 12, Thompson '011 Patent, col. 1, ll. 29-31.) In addition, Caldwell's conclusory statement that the combination of Thompson and the prior art disclosed in the '264 patent is obvious is not objective evidence of a motivation to combine. *See McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1578 (Fed. Cir. 1993) ("Mere denials and conclusory statements . . are not sufficient to establish a genuine issue of material fact.")

Moreover, in footnote 24 of its Opposition Brief, Caldwell defines Newman as "a person of <u>expert</u> skill in the art,"[6] and therefore Newman's opinions are not evidence of what a person of <u>ordinary</u> skill in the art would have understood or expected. *See Ryko Manufacturing Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718 (Fed. Cir. 1991) (stating that "[i]nstead of ascertaining what was subjectively obvious to the inventor at the time of the invention, the court must ascertain what would have been objectively obvious to one of ordinary skill in the art at such time."); *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) (obviousness is determined by reference to a person of ordinary skill in the art, "not to the judge,

---

[6] Emphasis added.

or to a layman, or to those skilled in remote arts, or to those geniuses in the art."). Newman's analysis is also based on hindsight, which can never be the basis for finding obviousness. *See In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (When making an obviousness analysis based on prior art teachings, reviewing courts must not fall prey to a 'hindsight syndrome,' reasoning backward from the teaching of the patent itself."); *Bose Corp. v. JBL, Inc.*, 112 F.Supp. 2d 138, 151-52 (D.Mass. 2000). As a result, Caldwell's obviousness analysis is legally deficient because it does not present any objective evidence of a motivation to combine.

## II.    AMESBURY'S '368 PATENT

### A.    It Is Undisputed That Caldwell's Series 97ez Balance Infringes Claims 2, 3, 6 And 7 Of The '368 Patent.

#### 1.    It Is Undisputed That The 97ez Balance Includes A "Pocket."

Caldwell argues that it does not infringe claim 2 of the '368 patent because its Series 97ez balance does not include: (1) a "pocket . . . adapted to mate with a rivet," and (2) a "connecting device for attaching the balance shoe within the U-shaped channel." In support of its argument that the Series 97ez balance does not include a "pocket," Caldwell cites testimony that is based on a claim construction that is different from the Court's claim construction. Specifically, Caldwell relies on its expert's testimony in which he construes "pocket" to mean a U or C-shaped channel bounded on three sides. (Ex. 40, Still Dep. Tr. 135:15-20, 142:24-143:8) The Court, however, concluded that a "pocket" simply means "a notch with an opening shaped to mate with a rivet." (Ex. 8, Claim Construction Order, at 63) Therefore, the analysis of Caldwell's expert is irrelevant in view of the Court's claim construction and cannot raise an issue of material act.

The testimony that Caldwell cites to support its baseless argument that the "pocket" or

notch, as construed by the Court, is not adapted to mate with a rivet, (Opp. Br. at 31-32), does

not overcome the testimony of Jeffrey Robertson, a Caldwell witness, who designed the Series

97ez balance.  Robertson testified that the notch contacts the rivet if the shoe or carrier is forcibly

rotated, which occurs in shipping and handling.  He testified further that the very purpose of the

notch is to prevent the rotation of the shoe or carrier during shipping and handling.  (Ex. 43,

Robertson Dep. Tr. 49:9-19, 51:9-16.)  This contact with the rivet in such a way as to stop the

rotation of the balance shoe establishes that the "pocket" or notch must be "adapted to mate with

[the] rivet."  (See Ex. 2, '368 Patent, cl. 2.)

        Caldwell's attempts to overcome Robertson's testimony by offering testimony from its

expert, purporting to support the theory that the "pocket" of the Series 97ez balance is not

designed to mate with the second rivet.  (Opp. Br. at 31-32 citing Caldwell's Ex. 9 (Amesbury's

Ex. 40), Still Dep. Tr. at 141-142.)  Yet, when Caldwell's expert was asked about the purpose of

the "pocket," (which he referred to as the "two legs that have to be formed on the back end of the

molded carrier") he admitted that "its purpose is to keep the rotation out."  (Still Dep. Tr. 141:13

– 14.)  When pressed about how the "pocket" performs this function, Caldwell's expert stated

that the rivet inhibits the rotation of the pocket.  (Still Dep. Tr. 142:3 – 14.)  Caldwell's expert

thus corroborated Robertson's testimony.

        Caldwell then quotes the testimony of Wilbur Kellum, manager of balance product

engineering at Caldwell who stated that, when *installed*, the carrier of the Series 97ez balance

does not touch the first rivet (the rivet that is the attachment point of the spring).  (Opp. Br. at 32

citing Caldwell's Ex. 14 (Amesbury's Ex. 45), Kellum Dep. Tr. at 144.)  This testimony is

irrelevant.  The Series 97ez balance infringes because the notch or pocket is adapted to mate with

a rivet, and not because it actually contacts a rivet.  Moreover, Amesbury contends that the notch

9

or pocket contacts the rivet during shipping and handling, regardless of how it is installed in a window assembly. (Amesbury's Opening Br. at 23) As a result, Amesbury's evidence that the Series 97ez balance includes a "pocket" designed to mate with a rivet is undisputed.

Last, Caldwell argues that the "pocket" of the Series 97ez balance is not equivalent to the "pocket" claimed in the '368 patent under the doctrine of equivalents. In support, Caldwell cites the same testimony from its expert and Kellum discussed above. As a result, Caldwell fails to dispute the testimony from Amesbury's expert that the "pocket" component of the Series 97ez balance performs the same function as the claimed pocket in the same way to achieve the same result as the claimed invention. Specifically, Caldwell does not substantively dispute the analysis of Amesbury's expert that the "pocket's" function is to eliminate unwanted rotation of the shoe by contacting a rivet and thus securing the balance shoe in the channel during shipping and handling. (Ex. 9, Shina March 23 Report, at 34.)[7]

## 2. It Is Undisputed That The Series 97ez Balance Includes A "Connecting Device."

Regarding the "connecting device" element, Caldwell attempts to avoid a finding of infringement by citing testimony from Newman in which Newman is unable to locate a "snapping element" in drawings of the Series 97ez balance. (Opp. Br. at 32-33, citing Caldwell's Ex. 11 (Amesbury's Ex. 42), Newman Dep. Tr. 121-122.) Newman, however, did

---

[7]    Caldwell has filed a motion to disqualify Amesbury's expert, Dr. Shina, as an expert witness and to strike Shina's expert reports and certain exhibits. Amesbury has filed an opposition brief which explains that Dr. Shina is a professor of mechanical engineering who is eminently qualified to provide expert testimony regarding the patents and products at issue in this case, and that his expert reports were properly authenticated. (*See* Amesbury's Opposition to Caldwell's Motion To Exclude Expert Testimony (Dkt. No. 93).) Amesbury, also submitted with this Opposition a Declaration by Dr. Shina identifying his reports and attesting to the veracity of the opinions in his reports. (*See* Dkt. No. 93, Ex. 1.) Amesbury incorporates its Opposition To Caldwell's Motion To Exclude Expert Testimony, and all relating exhibits, by reference. Moreover, Amesbury's motion for summary judgment does not depend exclusivley upon the opinions of Dr. Shina, and Amesbury would be entitled to much of the relief it seeks even if his opinions were deemed inadmissible.

not have the benefit of the Court's claim construction, and therefore his testimony does not create a genuine issue of material fact.  Newman limited his analysis of "connecting device" to resilient tabs (snapping element), but, as Caldwell concedes, the Court subsequently construed "connecting device" to include a rivet or screw in addition to resilient tabs.  (Opp. Br. at 30.) Therefore, Newman's testimony does not address the fact that the rivet in Caldwell's Series 97ez balance is the claimed "connecting device."  Moreover, Caldwell does not dispute that its own Rule 30(b)(6) witness on the accused products, Tom Batten, testified that a rivet is used to connect the Series 97ez balance shoe or carrier to the balance.  (Ex. 41, Batten Dep. Tr. 128:10-19.)  Caldwell's expert also admitted in his April 17, 2006 expert report that the "Series 97ez balance [shoe] is connected to the U-shaped channel with a rivet."  (Ex. 6, Still April 17 Report, at Exhibit D, claim 3.)

Last, Caldwell attempts to muddle the "connecting device" issue by citing the report of its expert in which he states that the "second rivet does not connect the carrier to the channel." (Opp. Br. at 31.)  This statement is irrelevant because Amesbury contends that it is the first rivet that connects the carrier to the channel, not the second rivet.

### 3.    It is Undisputed That The Series 97ez Balance Infringes Dependent Claims 3, 6 And 7 Of The '368 Patent.

Caldwell argues only that it does not infringe dependent claims 3, 6, and 7 of the '368 patent for the same insupportable reasons that it purportedly does not infringe independent claim 2.  Therefore, because Caldwell does not dispute that the Series 97ez balance incorporates each of the additional limitations of the asserted dependent claims, Amesbury is entitled to summary judgment of infringement with respect to these claims for the reasons that summary judgment of infringement of claim 2 is warranted.

**B.    It Is Undisputed That Caldwell's Series 97i Balance Infringes Claims 2, 3, 6 And 7 Of The '368 Patent.**

As with the Series 97ez balance, Caldwell argues that the Series 97i balance does not infringe the '368 patent because it does not include: (1) a "pocket . . . adapted to mate with a rivet," and (2) a connecting device for attaching the balance shoe with the U-shaped channel.  In support of its argument that the Series 97i balance does not include a "pocket," Caldwell again cites only testimony from its expert based on a claim construction that the Court rejected.  (Opp. Br. at 34-35.)  Therefore, this testimony is irrelevant and cannot create a genuine issue of material fact.

Caldwell further argues that Amesbury seeks to have the "pocket" component of the Series 97i balance satisfy both the "pocket" element and the "connecting device" element of the



'368 patent's asserted claims.  Caldwell, however, mischaracterizes Amesbury's argument.  As illustrated in accompanying figure, the notch in the Series 97i balance, which is shaped to mate with a rivet, is the claimed "pocket," while the rivet is the claimed "connecting device."  The notch is also illustrated in Exhibit 36, filed under seal.  Amesbury has never contended that the Series 97ez balance's notch is both the "pocket" and the "connecting device."  Moreover, Caldwell cannot dispute the testimony of its own expert that the Series 97i balance incorporates a rivet for connecting the balance shoe to the U-shaped channel.  (Ex. 40, Still Dep. Tr. 134:11-15.)

If, however, Caldwell, now contends that the rivet with which the 97i balance's "pocket" (or notch) mates cannot also be the "connecting device," that contention was explicitly rejected

by the Court in its Order on the construction of the claim terms. In rejecting Caldwell's argument, the Court noted that, "[c]laim 2 ought to be construed to include the possibility that the rivet could serve as the 'connecting device' when it locks into the frame 'pocket' shaped to mate with it." (Ex. 8 , Claim Construction Order, at 72.) Therefore, Amesbury's evidence that the Series 97i balance includes both a "pocket" and a separate "connecting device" as claimed in the '368 patent is beyond dispute, and Amesbury is entitled to summary judgment that the 97i balance infringes. [8]

> ### C.    It Is Undisputed That Caldwell's Series 97ih Balance Infringes Claims 2, 3, 6 And 7 Of The '368 Patent.

Caldwell states that its noninfringement defense regarding the Series 97ih balance is the same as its defense for the Series 97i balance. (Opp. Br. at 35.) Caldwell does not present any additional evidence or raise any additional arguments regarding the Series 97ih balance. Therefore, for the same reasons discussed above regarding the Series 97i balance, Caldwell fails to raise any genuine issue of fact regarding infringement of claims 2, 3, 6 and 7 of the '368 patent by the Series 97ih balance, and Amesbury is entitled to summary judgment that the Series 97ih infringes.

> ### D.    It Is Undisputed That The '368 Patent Is Not Invalid.

Caldwell does not respond to Amesbury's argument and evidence that the '368 patent is not invalid. Because Caldwell has failed to produce any evidence of invalidity at this stage, the Court should grant summary judgment that the '368 patent is not invalid.

---

[8]    As to asserted dependent claims 3, 6, and 7 of the '368 patent, Caldwell argues only that Series 97i balance does not infringe for the same unfounded reasons that product allegedly does not infringe claim 2. Therefore, Amesbury is entitled to summary judgment for the reasons set forth above with respect to infringement of claim 2.

### III.    AMESBURY'S '638 PATENT

In response to Amesbury's motion for summary judgment that the Quick-Tilt*nc balance infringes the '638 patent , Caldwell alleges for the *first time* in this case that it does not make, use or sell any products which include "opposing flanges" or "channel means."  Caldwell's previously undisclosed theory contradicts its interrogatory responses and the testimony of its expert, and therefore must be rejected.  Caldwell also contends that the Quick-Tilt*nc balance does not contain a raised spine that inhibits the "rotational movement  of the mounting means" as required by the asserted claims.  Neither of Caldwell's arguments is sufficient to create a genuine issue of material fact regarding Caldwell's infringement of the '638 patent, and the Court should grant summary judgment that the Quick-Tilt*nc balance infringes claims 1, 2, 3 and 8 of the '638 patent.

### A.    It Is Undisputed That Caldwell's Quick-Tilt*nc  Balance Infringes Claims 1, 2, 3 And 8 Of The '638 Patent.

#### 1.    Caldwell Cannot Defeat Summary Judgment With A Last-Minute Affidavit That Contradicts Caldwell's Previous Testimony.

Caldwell long ago conceded that the Quick-Tilt*nc balance includes all of the elements of the '638 patent with the exception of, "whereby rotational movement of said [the] mounting means is inhibited."  Now for the first time, Caldwell argues in its Opposition Brief that the Quick-Tilt*nc balance also lacks "opposing flanges" or "channel means" and therefore does not infringe claims 1 and 8 of the '638 patent.  (Opp. Br. at 14.)  In support of this desperate attempt to avoid summary judgment, Caldwell submits an affidavit from Douglas Zinter, Caldwell's product marketing manager, which directly contradicts Caldwell's responses to Amesbury's interrogatories, Caldwell's claim charts, and the deposition testimony of Caldwell's expert.  (*See* Ex. 5, Def.'s Supp. Ans. to Pls.' First Set of Interrogs., at Ex. A (stating that the Caldwell Quick-

Tilt balance includes "opposing flanges" or "channel means"); Ex. 6, Still April 17 Report, at Ex.

A.)  For example, Caldwell's expert unequivocally conceded that the *only* feature of the asserted

claims that he contended was missing from the accused product was a raised spine that inhibits

rotation:

> Q. Throughout your claim charts relating to your opinion that Caldwell's Quick-
> Tilts do not infringe Amesbury's '638 patent, the only feature of any of those
> claims that you contend Caldwell's Quick-Tilt products omit is a raised spine that
> inhibits rotation, isn't that right?
>
> A. That's right.
>
> Q. You concede that the products include all of the other limitations of the
> asserted claims, correct?
>
> A. Yes.

(Ex. 40, Still Dep. Tr. 78: 8-18.)  An affidavit filed in opposition to a motion for summary

judgment should be disregarded if it contradicts that party's prior testimony or admission.  *See*

*Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659-660 (D.N.D. Cal. 1994) (party's

interrogatories contradicted by own summary judgment affidavit); *Stefanik v. Friendly Ice*

*Cream Corporation*, 183 F.R.D. 52, 53-54 (D. Mass. 1998) (party's pleading averments

contradicted by affidavit).  "When an interested witness has given clear answers to unambiguous

questions, he cannot create a conflict and resist summary judgment with an affidavit that is

clearly contradictory, but does not offer a satisfactory explanation of why the testimony is

changed."  *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)(citations

omitted).  In other words, a party "is not permitted to kick over the chess board in the face of a

checkmate." *Stefanik*, 183 F.R.D. at 54.  Therefore, Caldwell cannot defeat summary judgment

by relying on the Zinter affidavit, which directly contradicts Caldwell's earlier testimony and

interrogatory responses.[9]  *See* <u>Margo</u>, 213 F.3d 55.

      **2.**    **The Quick-Tilt\*nc Balance Includes A Raised Spine That Inhibits Rotational movement .**

The only issue for the Court regarding Caldwell's infringement of the '638 patent is whether the Quick-Tilt\*nc balance contains a raised spine that inhibits the rotational movement of the mounting means.  Caldwell argues that Amesbury has failed to provide evidence (1) that rotation of the mounting means actually occurs in a "properly installed" Quick-Tilt\*nc balance and (2) that the raised spine of the Quick-Tilt\*nc balance inhibits that rotation.  (Opp. Br. at 9-13.)  As to the first issue, there are no installation requirements set forth in the claims of the '638 patent.  Therefore, Caldwell's argument regarding proper installation is not relevant to the infringement analysis of the '638 patent.  Moreover, Amesbury's expert did provide deposition testimony that rotation of the mounting means would occur in the Quick-Tilt\*nc balance:

> Q.  Right.  What are the forces that are tending to make the housing rotate in a proper installation of the Caldwell [Quick-Tilt\*nc] balance inside of a jamb channel?
>
> A.  The forces are rotational.
>
> Q.  I'm sorry.  Go ahead.
>
> A.  Caused by the extension of the spring.
>
> Q.  Could you just describe mechanically how the part in your opinion is caused to rotate by the spring?
>
> A.  There is more force on one side as there is on the other.  And that would force the rotation.
>
> Q.  What caused the force?
>
> A.  The pulling of the spring.

---

[9]    Even if the Court allows the Zinter affidavit and credits his assertions, Cladwell nonetheless indirectly infringes asserted claims of the '638 patent.

(Ex. 39, Shina Dep. Tr. 58:24 – 59:12.) Last, in response to Caldwell's attempt through the Zinter Declaration to retract its previous admissions and change its non-infringement position to assert for the first time that Caldwell does not offer installed Quick-Tilt*nc balances, Amesbury recently purchased a window that contains the Quick-Tilt*nc balances. (Rogers Decl. at ¶¶ 2, 5.) Amesbury's expert has examined this window, and he observed that a Quick-Tilt*nc balance rotated into contact with a flange, after he raised and lowered the window sash. (Shina Second Decl. at ¶16 ). Therefore, Caldwell's argument that Amesbury has failed to provide evidence of rotation with a "properly installed" Quick-Tilt*nc balance is incorrect.

As to the second issue, Caldwell alleges that the fixing screw, and not the raised spine, inhibits the rotation of the mounting means in the Quick-Tilt*nc balance. However, Amesbury's expert determined that the raised spine inhibits rotation, whether or not the screw is installed, (Ex. 39, Shina Dep. Tr. 58:24 – 59:12; Shina Second Decl. at ¶ 16) and Caldwell has offered no evidence to the contrary.[10] The fact that the fixing screw in the Quick-Tilt*nc balance may contribute to inhibiting rotation does not preclude the raised spine from also inhibiting rotation, and the Court has ruled that the raised spine need not be the exclusive inhibitor of rotation. (Ex. 8, Claim Construction Order, at 38-39) The testimony cited by Caldwell in its opposition brief simply suggests that there are several components in the Quick-Tilt*nc balance that can work to inhibit rotation of the mounting means. This does not suggest that the raised spine fails to inhibit rotation. (Ex. 39, Shina Dep. Tr. at 73-75.) In addition, Amesbury's expert has now examined a

---

[10]    The additional testimony Caldwell cites from Amesbury's expert and Braid (Opp. Br. at 12-13) concern Braid Exhibit 9 which is a different jamb from Still Exhibit 10 and is therefore not relevant to Amesbury's infringement allegations. Amesbury never alleged that Braid Exhibit 9 infringed the '638 patent.

window with a Quick-Tilt*nc balance installed with a fixing screw, and he has confirmed that, even with a fixing screw and so-called "proper installation," there is rotation, and the raised spine inhibits that rotation by contacting the flange.[11]

### 3.    It is Undisputed That The Quick-Tilt*nc Balance Infringes Dependent Claims 2 And 3 Of The '638 Patent.

Caldwell does not present additional evidence or raise additional arguments regarding dependent claims 2 and 3 of the '638 patent beyond those Caldwell made as to claim 1. Therefore, Caldwell fails to raise any genuine issue of fact regarding infringement of these claims, and Amesbury is entitled to summary judgment of infringement for the reasons set forth above.

### B.    It is Undisputed That The '638 Patent Is Not Invalid.

Sterner does not anticipate the '638 patent because it fails to disclose at least three elements of independent claims 1 and 8 of the '638 patent:

(1) "whereby rotational movement  of said mounting means is inhibited;"

(2) "mounting means having a raised spine;" and

(3) any such spine or projection "positioned between and in the same plane as said inwardly turned opposed flanges of said channel means."

Caldwell cannot dispute the fact that its own expert admits that Sterner does not disclose at least the elements that recite "whereby rotational movement  of said mounting means is inhibited" and "positioned between and in the same plane as said inwardly turned opposed flanges of said channel means."  (Ex. 40, Still Dep. Tr. 40:11-16; 53:22 – 54:17.)  Therefore, Sterner cannot be an anticipating reference. *See Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed.

---

[11.]    Amesbury's expert has also confirmed that the geometry of the window jamb channels in the window that Amesbury purchased is identical to the geometry of the channels in Ex. 10.  (Shina Second Decl. at ¶ 8.)

Cir. 1997).

Further, Caldwell misapprehends the law of inherent anticipation and erroneously argues that because a window balance and jamb assembly manufactured by the owner of the Sterner patent (Still Deposition Ex. 5) may include the above limitations, Sterner must inherently include these limitations as well. What may or may not be included in the window balance and jamb assembly of Still Ex. 5 has no relevance to what is disclosed in Sterner. In order to anticipate the '638 patent, Sterner alone must disclose each and every limitation of the claimed invention. *See Gechter*, 116 F.3d at 1457. Caldwell cannot rely on Still Ex. 5 to establish what Sterner discloses.

It is Caldwell's burden to prove invalidity with clear and convincing evidence. *See Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996). Yet Caldwell fails to present any evidence that Sterner discloses each and every limitation of claims 1 and 8 of the '638 patent. In addition, Caldwell does not respond to Amesbury's evidence that the asserted claims of the '638 patent are not obvious in light of Sterner in combination with other prior art. Therefore Amesbury is entitled to summary judgment that the '638 patent is not invalid.

19

## CONCLUSION

For the reasons set forth above, Amesbury respectfully requests that the Court grant

Amesbury's motion for summary judgment of infringement and that the asserted claims are not

invalid.

Respectfully submitted,

/s/ Douglas J. Kline
Douglas J. Kline (BBO# 556680)
Terese Dillingham (BBO# 644520)
Safraz W. Ishmael (BBO# 657881)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
Phone:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiffs

**AMESBURY GROUP, INC.**
**AMESBURY SPRINGS LTD.**

Dated: June 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on June 23, 2006.

/s/ Terese Dillingham