IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMESBURY GROUP, INC., and
AMESBURY SPRINGS, LTD.,

    Plaintiffs,

    v.                                              Civil Action No. 05-10020-DPW

THE CALDWELL MANUFACTURING
COMPANY,

    Defendants.

---

## REPLY MEMORANDUM OF LAW ON BEHALF OF
## THE CALDWELL MANUFACTURING COMPANY

### PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted on behalf of defendant, The Caldwell Manufacturing Company ("Caldwell"), in further support of its motion to strike the testimony and reports of Sammy Shina, Ph.D., the retained expert of the plaintiffs, Amesbury Group Inc., and Amesbury Springs, Ltd. (collectively "Amesbury"). Caldwell further submits that a purported printout of a page from an internet website (annexed as Exhibit 38 to the Declaration of Safraz Ishmael) is inadmissible hearsay and may not be considered in support of Amesbury's motion for summary judgment.

## POINT I

### THE TESTIMONY AND REPORTS OF AMESBURY'S PROPOSED EXPERT MUST BE STRICKEN

While conceding that its proposed expert, Dr. Shina, has no prior experience in the fields of windows, window balances or fenestration, Amesbury nonetheless contends that his "general mechanical engineering background is sufficient" for him to render an opinion with respect to the operation of the window balances at issue in this case. In support of this contention, Amesbury cites a number of cases, principally involving products liability. *See Chapman v. Bernard's Inc.,* 167 F.Supp.2d 406 (D. Mass. 2001); *DaSilva v. American Brands, Inc.,* 845 F.2d 356 (1st Cir. 1988); *Alfred v. Caterpillar, Inc.,* 262 F.3d 1083 (10th Cir. 2001); *Scordill v. Louisville Ladder Group, LLC,* No. CIVA 02-2565, 2003 U.S. Dist. LEXIS 19052 (D. La. Oct. 24, 2003).

Clearly, the knowledge required of an expert in a products liability case differs from that required of an expert in a patent infringement case where validity is also at issue. Unlike an expert in a products liability case who need only understand *how* a product was designed in order to opine on whether it is safe, an expert in a patent case must also understand *why* a product was designed in a particular way in order to opine on whether the design was obvious. Thus, an expert on validity of a patent must have specific experience in the particular industry to which the patent pertains. In *Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd*, No. 95C 0673, 1996 WL 189398 (N.D. Ill. Jan. 9, 1996), the court refused to consider the testimony of an expert on validity who had no experience in the industry at issue, stating:

> At this stage, expert testimony as to obviousness depends on the expert's knowledge and experience in that particular art. Undeniably, the relevant art in this case concerns lithographic offset printing presses. The only expert witnesses with any appropriate level of skill in this art would be Tyma, with approximately 40 years experience in engineering and manufacture of offset printing presses (Tyma Decl., ¶ 1), and Peters, with 35 years experience in the graphic arts industry including printing presses (Peters 8-5-95 Decl., ¶ 1). Goolkasian has some experience with rubber and plastic but has no background in the pertinent art of this case: offset lithographic printing presses. For this reason, the Court will not consider Goolkasian's testimony as it relates to the prior art and the issue of obviousness.

*Heidelberg Harris* at 5.

Dr. Shina has no prior experience in the fields of windows, window balances or fenestration, and the Court should not consider his testimony as it relates to the prior art.

Amesbury only cites two patent cases in support of its contention that an expert with no experience in the field in question may render an opinion, one of which is not on point, while the other undermines Amesbury's argument. In *Eaton Corp. v. Parker-Hannifin Corp.,* 292 F.Supp.2d 555 (D. Del. 2003), the expert sought to testify with respect to a quick-connect hydraulic coupling. The Court rejected a challenge to the expert's qualifications, citing not only his degree in mechanical engineering but also his "on the job" experience with hydraulic couplings. *Id,* at 567. By contrast, it is conceded by Amesbury that Dr. Shina has no practical experience with window balances.

In *Izume Prods. Co. v. Koninklijke Philips Elecs. N.V.,* 315 F.Supp.2d 589 (D.Del.2004) affd. 140 Fed. Appx. 236 (Fed. Cir. 2005), while the proffered expert had the necessary qualifications, given that he had worked for over 35 years as a design engineer during which time he had personally developed, tested and been involved in

manufacturing over fifty products in the relevant industry – clearly not the case with Dr. Shina – the Court excluded the expert's testimony. The Court held that because the expert had only examined two accused infringing products and applied his theory to all of the other accused products he had not seen – much like Dr. Shina has done – his opinion was unreliable and based only on subjective belief. Further, the Court held that there was not a good "fit" between the expert's opinion and the actual function of the product in question which might confuse the jury. Here, Dr. Shina proposes to testify to an essentially made-up theory that the balance mounting element will rotate – a theory he has never observed in real life. (Shina Tr. at 60.) Accordingly, under *Izume*, Dr. Shina must be excluded from testifying both because his opinions are unreliable speculation and because there is no "fit" between his theory and the physical reality of Caldwell's products.

Furthermore, this Court has decried the use of an "all purpose engineer who offers testimony on everything from refrigerators to diapers to airplane engines." *American Computer Innovators, Inc. v. Electronic Data Sys. Corp.,* 74 F. Supp.2d 64 (D. Mass. 1999).

Amesbury next attempts to demonstrate that several Caldwell employees who have testified in depositions have no greater qualifications than Dr. Shina. Amesbury Memorandum in Opposition, pp.12-13. Several flaws plague Amesbury's argument. First, neither of the witnesses referred to by Amesbury have been identified as experts by Caldwell. Second, the witnesses may not have had experience in the window industry when they began their employment years ago, they now have extensive experience in the field of window balances. Thus, Thomas Batten, Caldwell's Vice-President of

4

Engineering began his employment Caldwell in 1995 and, as of this date, has eleven years of experience in the design of window balances. Similarly, Jeffrey Robinson, one of the designers of the Caldwell Quick-Tilt*nc balance, worked for Caldwell for several years designing window balances and now has ample experience in the window industry. By contrast, prior to his being retained by Amesbury, Dr. Shina had no experience with either the design or manufacture of window balances, and since then had only a fleeting encounter with one window of unknown origin in a Home Depot. (Shina Tr. 24.)

## POINT II

### EXHIBIT 38 IS INADMISSIBLE HEARSAY WHICH AMESBURY HAS NOT PROVEN IT CAN RENDER ADMISSIBLE AT TRIAL

In support of its motion for summary judgment, Amesbury has submitted an affidavit from one of its attorneys, Safraz Ishmael, which asserts that one of the exhibits annexed thereto ("Exhibit 38") is a true and correct copy of a printout of a page from the website of Tri-State Wholesale. This website page purportedly contains a picture of a window with a Caldwell balance. Caldwell has moved to strike Exhibit 38 and, in response, Amesbury asserts that the website printout falls within the business records exception to the hearsay rule (Fed. R. Evid. 803[6]). In the alternative, Amesbury asserts that the exhibit may be rendered admissible at trial and, therefore, may be considered by the Court in determining the summary judgment motion. Neither of these arguments can withstand even cursory scrutiny.

The rule is that "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vazquez v. Lopez-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998); *Noviello v. City of Boston,* 398 F.3d 76, 84 (1st Cir. 2005).

Clearly, Exhibit 38 is hearsay because it is a written assertion made by someone other than a witness, which is offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801. In an effort to evade the proscription against hearsay, Amesbury asserts that Exhibit 38 falls within the business records exception to the hearsay rule, Fed. R. Evid. 803(6). However, Amesbury has not met any the requirements set forth by that rule to establish the admissibility of the website printout. In order to do so, Amesbury must establish that: 1) the record was made at or near the time of the act, event or condition in question; 2) by a person with knowledge of the facts; 3) that the record was kept in the course of a regularly conducted business activity; 4) that it was the regular practice of that business activity to make the record in question; and 5) that all of the foregoing conditions are established by the testimony of the custodian of the record or other qualified witness.

While an affidavit by a custodian from Tri-State Wholesale may have established compliance with the foregoing necessary elements of the business records of the hearsay rule, Amesbury has either chosen (or been compelled) not to proffer such proof. Instead, it relies upon the affidavit by Mr. Ishmael, one of its counsel, which misses the mark entirely of demonstrating that the webpage constitutes a business record under Rule 803(6). The affidavit does not, and cannot, demonstrate when the webpage in question was made, who made the entries on the webpage, whether or not that person was the custodian of the record, whether or not the person who created the webpage had personal knowledge of the facts asserted on the webpage, whether the entries on the webpage were kept in the course of a regularly conducted business activity, or that it was the regular practice of that business activity to make the webpage entries. Mr. Ishmael proffers no

6

personal knowledge that what is shown on that website is, in fact, a real window. In short, the Ishmael affidavit establishes nothing other than the fact that Mr. Ishmael found some document on the Internet. To assert that any document found on the Internet can rendered admissible in a Court of the United States borders on the absurd. As the Court bluntly observed in *Garrett v. Tandy Corp.,* No. CIV 00-384-P-H, 2003 WL 21250679, at *3 (D. Me. May 30, 2003), affd. 86 Fed. Appx. 440 (1st Cir. 2004), "web-page printouts . . . are inadmissible hearsay inasmuch as they are offered for the truth of the matter contained therein and fit no discernable hearsay exception."

As its fallback position, Amesbury argues that the Court should consider this inadmissible document at the summary judgment stage of the proceedings because Amesbury will offer it in admissible form at trial. The cases cited by Amesbury do, indeed, stand for the proposition that the Court may consider otherwise inadmissible documents if it is likely that they will be admissible at trial. However, an examination of these cases reveals that in all of them there was a demonstrated likelihood, if not a certainty, that an adequate evidentiary foundation could be laid at trial for the documents in question.

In *Border Collie Rescue, Inc. v. Ryan,* 418 F.Supp.2d 1330, (M.D. Fl. 2006), the document at issue was a page from the plaintiff's website, which had been proffered by the defendants. Thus, there was little doubt as to the origin of the documents or the near-certainty that it could be rendered admissible at trial as an admission by a party opponent. Similarly, in *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998 F.2d 1224 (3d Cir. 1993), the court was convinced that the hearsay statement could be made admissible by a non-party witness who it presumed was available at trial. The

7

requirement that a witness be available to validate the proffered exhibit at trial is critical to this analysis. *J.F. Feeser v. Serv-A-Portion, Inc.,* 909 F.2d 1524 (3d Cir. 1990). In *Feeser* the Court held that a hearsay document would be considered on a summary judgment motion because there was no indication that the necessary witness would be unavailable to testify at trial.

By contrast, in the present case the document in question was not generated by any of the parties. Contrary to *Petruzzi* and *Feeser,* there is considerable doubt as to whether or not a witness from Tri-State, located in Ohio, will be produced at trial to provide the necessary foundation for the introduction of the web-page. Other than its cavalier assertion that it will produce such a witness "if necessary", Amesbury has provided no proof that it has identified, located or contacted such a witness, and, if so, whether or not the proposed witness will voluntarily appear to testify. If the witness will not appear voluntarily, his/her testimony cannot be compelled by subpoena since Tri-State is more than 100 miles from the court. *See* Fed. R. Civ. P. 45(b)(2). Indeed, if Amesbury were able to establish that Exhibit 38 is a business record by producing a Tri-State Wholesale witness at trial, one is compelled to inquire why it has not done so in the form of an affidavit by a Tri-State employee in response to Caldwell's motion. Thus, it is hardly clear that Amesbury has the ability to call such a witness at trial and has submitted no proof which could warrant such a conclusion. Thus, the principle upon which Amesbury relies does not apply to the facts in this case.

## CONCLUSION

For all of the foregoing reasons, Caldwell requests an Order granting its motion, and for such other relief as may be just and proper.

Dated:  June 29, 2006           Respectfully submitted,

THE CALDWELL MANUFACTURING COMPANY

By its attorneys,

/s/Neal L. Slifkin_____
Paul J. Yesawich, III
Neal L. Slifkin
David J. Edwards
Laura W. Smalley
*Attorneys for Defendant*
99 Garnsey Road
Pittsford, New York 14534
Telephone: 585-419-8800

-and-

David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: 617-367-1970

**CERTIFICATE OF SERVICE**

I hereby certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 29, 2006.

/s/ Thomas E. Lent_____
Thomas E. Lent

9