**150 YEARS OF LOOKING AHEAD**

**HARRIS BEACH**
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

**NEAL L. SLIFKIN**

DIRECT:  (585) 419-8636
FAX:     (585) 419-8813
NSLIFKIN@HARRISBEACH.COM

September 6, 2006

Hon. Douglas P. Woodlock
United States District Court for the
District of Massachusetts                    Via Federal Express
One Courthouse Way
Boston, MA  02210

      Re:  Amesbury Group, Inc., et al. vs. The Caldwell Manufacturing Company
          Civil Action No. 05-10020-DPW

Dear Judge Woodlock:

    At the hearing on Amesbury's motion for summary judgment, the Court gave Caldwell permission to provide additional transcript references to Charles Still's testimony regarding the Sterner reference, which Caldwell asserts anticipates the '638 Patent. At his deposition, Mr. Still testified that, as one of ordinary skill in the art, he understood the Sterner reference to include a raised spine located between the opposed flanges, as claimed in the Braid patent asserted by Amesbury:

    **Q.:**    Let me ask you this:  Do you have an understanding of what would be required of the disclosure of the Sterner '808 patent for it to anticipate any claim of the Braid patent?

    **A.:**    <u>**Well, as I first looked at this, it had all the elements of '638.**</u>

    **Q.:**    But it doesn't show the face of the mounting element in the same plane as any flanges, correct?

    **A.:**    In their drawings, they don't do a good job of that.

    **Q.:**    I am sorry?

    **A.:**    <u>**As an ordinary skilled person, I would look at this and know what it is and what it means.**</u>

    **Q.:**    But again, the drawings don't show that, right?

Hon. Douglas P. Woodlock
September 6, 2006
Page 2



| | |
|---|---|
| **A.:** | That is correct. |
| **Q.:** | And the specification doesn't describe it, correct? |
| **A.:** | That's right. |
| **Q.:** | So when you reach your opinion that Sterner anticipates the Braid '638 patent, you are adding to the disclosure of Sterner your knowledge and expertise; is that fair to say? |
| **A.:** | **It is what it is. It's a raised spine.** |
| **Q.:** | What is a raised spine, I am sorry, I didn't understand that. |
| **A.:** | **Well, the projection or the raised spine of the Sterner is something that was patented years before the Braid and there is nothing new in the Braid patent.** |

\*\*\*

| | |
|---|---|
| **Q.:** | Other than the Sterner and the Leitzel reference, are you aware of -- is there anything else you are relying upon for the basis of your opinion that the Braid patent does not describe anything new? |
| **A.:** | Just the knowledge of the balance itself. |
| **Q.:** | Now, is it also your view that the Braid patent claims would have been obvious in view of the prior art? |
| **A.:** | Yes. |
| **Q.:** | Obvious to whom? |
| **A.:** | To an ordinary person skilled in the art. |
| **Q.:** | **When?** |
| **A.:** | **When they see this drawing.** |

(May 2, 2006 Transcript, pp. 53-55 [attached to this letter and emphasis added]).

As noted above, Mr. Still testified that he believed that the Sterner balance had a mounting element in the same plane as the opposed flanges because "as an ordinary skilled person, I would look at this [drawing] and know what it is and what it means." (Transcript,

Hon. Douglas P. Woodlock
September 6, 2006
Page 3



150 YEARS OF LOOKING AHEAD
HARRIS BEACH PLLC
ATTORNEYS AT LAW

p. 54, ll. 4-11), Mr. Still also stated that the Sterner patent had a "raised spine" identical to that claimed in the '638 Patent: "the projection or the raised spine of the Sterner is something that was patented years before the Braid ['638 Patent] and there is nothing new in the Braid patent." (Transcript, p. 54, l. 25 - p. 55, l. 4). Finally, Mr. Still testified that the invention claimed in the '638 patent would have been obvious to a person of ordinary skill in the art in view of the drawing of the balance in the Sterner patent. (Transcript, p. 55, l. 16 - 55, l. 23).

As noted in Caldwell's principal brief, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference. Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373 (Fed. Cir. 2003) (citing Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 [Fed. Cir. 1991]). Mr. Still's testimony establishes that a raised spine between the flanges is inherent in the Sterner patent and that the reference therefore anticipates the '638 Patent.

At the hearing, the Court also questioned whether Mr. Still's definition of the term "pocket" was consistent with the definition in the Court's Markman ruling. Mr. Still stated that he understood the pocket as "something that is ... going to hook around the balance like it does in the Amesbury balance where it creates a pivot point for the sash shoe to be rotated." (Transcript, p. 135). Mr. Still later clarified that the definition of the term pocket that he used was a "notch." (p. 154). Mr. Still's first response -- something that will "hook around the balance" -- is consistent with the Court's definition of "pocket" in the Markman Decision and Order of January 20, 2006 and with Mr. Still's later testimony. As the Court noted, the "function of the 'pocket' is clear – to receive a rivet..., thereby aiding to secure the balance shoe within the U-shaped channel of the inverted window balance. This function defines the shape." (Markman decision, pp. 60-61). Consequently, the Court defined the term "pocket" as "a notch with an opening shaped to mate with a rivet, thereby aiding to secure the balance shoe within the U-shaped channel of the inverted window balance." (Markman decision, pp. 62-63). Mr. Still's testimony, that the pocket must "hook around" the balance, is consistent with that definition. In any event, from his testimony on page 154, it is clear that he used notch as the definition of "pocket" in his analysis.

Respectfully submitted,

*Neal Slifkin*

Neal L. Slifkin

NLS:kjj
Enclosures
Pc:   Paul J. Yesawich, III, Esq. (w/enc.)
      Douglas J. Kline, Esq. (w/enc.)

```
                                                        53
1            CHARLES STILL - BY MR. KLINE
2    ordinary person skill of the art.
3         Q.   Now, if we look at the Braid patent, for
4    example, and your report that we have designated as
5    Exhibit 6.  At the end of page 6, there is a
6    paragraph in your report where you have written
7    "Braid U.S. patent 5,365,638 based upon my findings
8    is not novel and/or is obvious and therefore not
9    valid"; do you see that?
10        A.   Yes.
11        Q.   So I want to understand your opinion, is
12   it your opinion that the claims of the Braid patent
13   lack novelty over the prior art?
14        A.   Yes, it's just not novel.
15        Q.   And is it in addition your opinion that
16   the claims of the Braid patent are obvious in view
17   of the prior art?
18        A.   Yes.
19        Q.   And the prior art that we focused on is
20   the Sterner '808 patent; is that correct?
21        A.   Yes.
22        Q.   Let me ask you this:  Do you have an
23   understanding of what would be required of the
24   disclosure of the Sterner '808 patent for it to
25   anticipate any claim of the Braid patent?
```

```
                                                            54
 1              CHARLES STILL - BY MR. KLINE
 2        A.   Well, as I first looked at this, it had
 3   all the elements of '638.
 4        Q.   But it doesn't show the face of the
 5   mounting element in the same plane as any flanges,
 6   correct?
 7        A.   In their drawings, they don't do a good
 8   job of that.
 9        Q.   I am sorry?
10        A.   As an ordinary skilled person, I would
11   look at this and know what it is and what it means.
12        Q.   But again, the drawings don't show that,
13   right?
14        A.   That is correct.
15        Q.   And the specification doesn't describe
16   it, correct?
17        A.   That's right.
18        Q.   So when you reach your opinion that
19   Sterner anticipates the Braid '638 patent, you are
20   adding to the disclosure of Sterner your knowledge
21   and expertise; is that fair to say?
22        A.   It is what it is.  It's a raised spine.
23        Q.   What is a raised spine, I am sorry, I
24   didn't understand that.
25        A.   Well, the projection or the raised spine
```

                                                                    55
1           CHARLES STILL - BY MR. KLINE
2    of the Sterner is something that was patented years
3    before the Braid and there is nothing new in the
4    Braid patent.
5         Q.   Are you aware -- are you relying on
6    anything other than Sterner for reaching that
7    opinion?
8         A.   Of course I have reported on another
9    patent but we are not going to talk about that.
10        Q.   Other than the Sterner and the Leitzel
11   reference, are you aware of -- is there anything
12   else you are relying upon for the basis of your
13   opinion that the Braid patent does not describe
14   anything new?
15        A.   Just the knowledge of the balance itself.
16        Q.   Now, is it also your view that the Braid
17   patent claims would have been obvious in view of
18   the prior art?
19        A.   Yes.
20        Q.   Obvious to whom?
21        A.   To an ordinary person skilled in the art.
22        Q.   When?
23        A.   When they see this drawing.
24        Q.   So today when they see this drawing, the
25   ordinary skilled person would find the claims

                                                                    135
1              CHARLES STILL - BY MR. KLINE
2         A.   You could probably put it in the
3    category, yes.
4         Q.   So a rivet connects the shoe to the
5    channel, correct?
6         A.   Yes.
7         Q.   And a rivet can be a device, right?
8         A.   It could be, yes.
9         Q.   You also say that the device -- strike
10   that.
11             Your report expresses the view that the
12   shoe in Caldwell's 97i balance omits any pocket; is
13   that correct?
14        A.   That is correct.
15        Q.   What definition of pocket did you have in
16   mind when you reached that conclusion?
17        A.   Well, something that is -- that is going
18   to hook around the balance like it does in the
19   Amesbury balance where it creates a pivot point for
20   the sash shoe to be rotated.
21        Q.   So when you concluded that Caldwell's 97i
22   balance omits any pocket, that is the definition of
23   pocket you had in mind; is that right?
24        A.   That is my explanation of a pocket, yes.
25        Q.   Describe for me in your words how the

153

CHARLES STILL - BY MR. SLIFKIN

1
2    A.   I did.
3    Q.   Do you recall reading a definition that
4    the judge gave to the term "pocket"?
5    A.   Yes.
6    Q.   Do you recall what that definition is?
7    A.   Yes.
8    Q.   What is that definition?
9    A.   Notch.
10   Q.   And did you consider that definition when
11   you have conducted your infringement analysis in
12   this case?
13   A.   I did.
14        MR. KLINE:  Object to the form of the
15   question.
16   Q.   So earlier in your testimony when you
17   answered Mr. Kline saying that you did not rely on
18   any other definition other than the one you gave
19   him, to Mr. Kline in response to his question, was
20   that an incorrect answer?
21        MR. KLINE:  Object to the form of the
22   question.
23   A.   Yes, it was.
24   Q.   Now, having your recollection refreshed,
25   what is the definition of the term "pocket" that

154

1        CHARLES STILL - BY MR. SLIFKIN
2   you used in rendering your decision -- your
3   opinion?
4        A.   The term was notch rather than pocket.
5        Q.   And you applied that definition notch in
6   your analysis; is that correct?
7        MR. KLINE:   Objection; leading.
8        A.   I did.
9        Q.   One last line of questions, should be
10  very brief.
11       Do you recall testimony about the Sterner
12  reference earlier today?
13       A.   I do.
14       Q.   And you were asked by Mr. Kline whether
15  the Braid invention was obvious in view of the
16  Sterner reference; do you recall that testimony?
17       A.   I do.
18       Q.   And you answered that it would have been
19  obvious to a person of ordinary skill in the art if
20  he saw the drawings of the Sterner reference today;
21  do you recall that?
22       A.   Yes.
23       Q.   Would it also have been obvious to
24  somebody of ordinary skill in the art had you seen
25  the Sterner reference at the time that the Braid