UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMESBURY GROUP, INC. and
AMESBURY SPRINGS, LTD.,

        Plaintiffs,

  -vs-

                                            Civil Action No. 05-CV-10020

THE CALDWELL MANUFACTURING CO.,

        Defendant.

**MEMORANDUM OF LAW**

HARRIS BEACH PLLC
Paul J. Yesawich, III
Neal L. Slifkin
*Attorneys for Caldwell Manufacturing Company*
99 Garnsey Road
Pittsford, New York  14534
Telephone:  585-419-8800

        -and-

David E. Lurie, BBO# 542030
Thomas E. Lent, BBO# 644970
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: 617-367-1970

## TABLE OF CONTENTS

                                                                                                                         Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

      *The Caldwell Series 97ih and 97i* ................................................................................ 2

      *This Court's construction of the term Pocket* ............................................................ 2

      *The 97i and 97ih manufacturing process* .................................................................. 3

ARGUMENT   CALDWELL'S SERIES 97i AND 97ih DO NOT INFRINGE THE '368 PATENT ............................................................................................................. 5

    *Summary Judgment Standard* .................................................................................... 5

    *The Caldwell Series 97i and 97ih do not infringe independent Claim 2 of Amesbury's '368 Patent* ............................................................................................. 6

    *The Caldwell Series 97i and 97ih do not infringe dependent Claims 3, 6 and 7 of Amesbury's '368 Patent* ............................................................................................. 9

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**Cases**

Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) .............................................................. 6, 9

Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557 (Fed. Cir. 1988) ................... 5

Dawn Equipment Company v. Kentucky Farms Inc., 140 F.3d 1009 (Fed Cir. 1998) .................. 8

General Mills Inc. v. Hunt-Wesson Inc., 103 F.3d 978 (Fed. Cir. 1997) ...................................... 8

Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353 (Fed. Cir. 2002) .................... 8

London v. Carson Pirie Scott & Co., 946 F.2d 1534 (Fed. Cir.1991) ........................................... 9

Matsushita Elect. Indus, Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .................................... 6

Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558 (Fed. Cir. 1996) ............. 9

Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546 (Fed Cir. 1989) ....................................... 9

**PRELIMINARY STATEMENT**

Amesbury Group, Inc. and Amesbury Springs, LTD. (collectively "Amesbury") assert that five Caldwell Manufacturing Company ("Caldwell") products infringe three Amesbury patents – U.S. Patent 6,598,264 ('264), U.S. Patent 6,820,368 ('368) and U.S. Patent 5,365,638 ('638). Amesbury moved on May 19, 2006 for summary judgment on all counts of its Complaint. By Memorandum of Order dated November 2, 2006, that motion was denied in part and granted in part. In particular, this Court denied Amesbury's motion with respect to the alleged infringement of independent Claim 2 and dependent claims 3, 6 and 7 of the '368 Patent by Caldwell's Series 97i and 97ih balances (collectively, the "97 Series").

Caldwell now moves for partial summary judgment of non-infringement because the Caldwell Series 97i and 97ih window balances do not infringe Amesbury's '368 patent as matter of law. Specifically, the 97i and 97ih do not have a "pocket" as required by independent Claim 2 of '368.

**STATEMENT OF FACTS**

The Caldwell Series 97i and 97ih window balances were developed for tiltable or "pivotable" hung windows. Tiltable windows use a combination of balances and pivot bars that permit window sashes to slide up or down in the window jamb and to rotate or tilt inwardly. This latter feature facilitates the cleaning of the outside surface of the sash glass.

*The Caldwell Series 97ih and 97i.*

The Caldwell Series 97ih consists of, among other things: a rigid U-shaped Channel ("Channel"); an extension spring; a "T" shaped Carrier ("Carrier"); and two rivets – a "Spring Rivet" and "Carrier Rivet."



Insofar as this application is concerned, the Caldwell Series 97i is identical to the Series 97ih (i.e., the Carrier, Channel, Carrier Rivet and Spring Rivet). Moreover, the process for assembling the 97i parts shown above uses the same type of equipment and follows the same steps as the manufacturing process for the 97ih. Thus, for purposes of this motion, the 97i and 97ih are indistinguishable.

*This Court's construction of the term "Pocket."*

The 97i and 97ih Carrier is designed to be non-removable and does not have snap-in capability. This is a fundamental difference between the Caldwell 97 Series and the balance disclosed in Amesbury's '368 Patent. The carrier disclosed in the '368 Patent (aptly named, a "Snap Lock Balance Shoe") can be removed and replaced after the window is constructed without modification to the window. Thus, unlike the 97i and 97ih, Amesbury's Snap Lock Balance Shoe discloses an "opening into which the rivet can slide" and is snapped into place. In

its January 20, 2006 Memorandum and Order (hereinafter, the "Markman Order"), this Court described this installation process as follows:

> … the installation discussion in the ['368] specification explains that 'the Snap Lock Balance Shoe ["is to slide"] into the rigid U-shaped channel such that the fastener is received in the connection pocket of the Snap Lock Balance Shoe"(Markman Order at 62 citing '368 patent, Col. 6, 11. 42-46).

Thus, the sliding and snapping feature of Amesbury's Snap Lock Balance Shoe was critical to the court's construction of the term "Pocket." This is because, for the Snap Lock Balance Shoe to be installed this way, the Pocket must have an opening into which the rivet can slide:

> In order for the balance shoe to be installed in this way, the "Pocket" must have an opening into which the rivet can slide. Without incorporating the idea of an opening, one could erroneously interpret the term "Pocket" to include a fully enclosed channel through the balance shoe, *in which the rivet would have to be thread through rather than snapping in. However, it is clear from the specification that this is not what the patentee understood the term to connote.* (See Markman Order at 62-63 )(Emphasis added).

With these principles in mind, this Court defined "Pocket" as:

> A notch with an opening shaped to mate (i.e., 'to join or fit together') with a rivet, thereby aiding to secure the balance shoe within the U-shaped channel of the inverted window balance (See Markman Order at p. 63).

### *The 97i and 97ih manufacturing process.*

The 97i and 97ih Carriers do not contain "an opening into which a rivet can slide" and do not snap into place. To the contrary, the Carriers are inserted into the Channel and, then, a rivet is threaded through the pre-drilled Channel holes and the corresponding pre-existing Carrier opening. Thus, the rivet is installed last, not first, and is not slid into the opening of a pocket. A detailed description of the steps followed in assembling the 97i and 97ih demonstrate this process.

3

The 97ih was manufactured at Caldwell's Williamsport, Maryland plant. The 97i was manufactured in its Jackson, Mississippi plant. Each plant followed the same assembly steps and used the same type of equipment: i) a "Block and Tackle Wrap and Stretch Operation" station (the "Wrap and Stretch Station"); ii) a conveyor belt; and iii) a "Rivet Assembly Station."

The Wrap and Stretch Station was utilized to stretch the extension spring and install it into the Channel (See Smith Declaration at Exhibit "B"). Once the extension spring was installed, the Channel was placed on a conveyor belt leading to the Rivet Assembly Station (See Smith Declaration at Exhibit "C").

At the Rivet Assembly Station, the assembler reaches for the Channel with his/her right hand while obtaining a Carrier from a container with their left hand (See Smith Declaration at Exhibits "D" and "E"). The assembler then inserts the Carrier into the Channel and holds it in place. Exhibit "F" to the Smith Declaration, reprinted below, demonstrates this process:



**Assembler inserts Carrier into channel, aligning pre-drilled holes in Channel with pre-existing opening in Carrier**

**Rivets**

**Pre-drilled holes in Channel**

Notably, there are two pairs of pre-drilled holes in the Channel. The pair of pre-drilled holes at the top of the Channel (identified above) must be aligned with the pre-existing opening in the Carrier. The pair of bottom pre-drilled holes (i.e., the holes closest to assembler's right

4

hand) is for the Spring Rivet – not the Carrier Rivet - the Spring Rivet having been installed prior to the "Block and Tackle Wrap/Stretch Operation." (See Smith Declaration at Exhibit "B").

Holding the Carrier and Channel in place, a Carrier Rivet is then threaded through the top pair of pre-drilled holes in the Channel and the corresponding pre-existing opening in the Carrier (See Exhibit "G"[1] to the Smith Declaration reprinted below).  Once the Carrier Rivet is fastened, the assembly process is complete.



Assembler holds inserted Carrier in place and threads rivet through pre-drilled holes in Channel

**ARGUMENT**

**CALDWELL'S SERIES 97i AND 97ih DO NOT INFRINGE THE '368 PATENT**

*Summary Judgment Standard.*

The Federal Circuit has frequently stated "that summary judgment is appropriate in a patent case as in any other." See Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988)("where no issue of material fact is present …court[s] should not hesitate to avoid unnecessary trial by proceeding under Fed Rule 56…").  Thus, summary

---

[1] Exhibit "G" to the Smith Declaration, as reprinted in this Memorandum of Law, has been magnified to show the threading of the Carrier Rivet through the top pair of pre-drilled holes in the Channel and the corresponding pre-existing opening in the Carrier.

judgment should be granted where the moving party demonstrates that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 252 (1986).  The party opposing summary judgment bears the burden of demonstrating the existence of a genuine dispute of material fact.  <u>Matsushita Elect. Indus, Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586-87 (1986).

*<u>The Caldwell Series 97i and 97ih do not infringe independent Claim 2 of Amesbury's '368 Patent</u>*.

The 97i and 97ih do not contain "a notch with an opening shaped to mate (i.e., 'to join or fit together') with a rivet, thereby aiding to secure the balance shoe within the U-shaped channel …"  Rather, the 97i and 97ih Carrier is secured within the U-shaped Channel by threading a rivet in from the side – not by sliding and snapping the Carrier into place.  Figures 6A through 6D of the '368 Patent illustrate this distinction:



**Fig. 6A**          **Fig. 6B**                    **Fig. 6C**                    **Fig. 6D**

The first step in installing Amesbury's Snap Lock Balance Shoe, as shown in Figure 6A is to "place a fastener, such as a rivet, in one of the pairs of openings in the rigid U-Shaped Channel." See '368 Patent at Col. 6, 40. [2] The reason Amesbury installs the rivet *before* the Snap Lock Balance Shoe is obvious. This allows the "the Snap Lock Balance Shoe [to slide] into the rigid U-shaped channel such that the fastener (i.e., rivet) is received in the connection pocket of the Snap Lock Balance Shoe" (See Markman Order at 62). This process is entirely different than the assembly process for the 97i and 97ih Carrier where the rivet is installed last, not first. Significantly, the 97i and 97ih rivet is not received in a "connection pocket" or snapped into place. It is "thread through [the Channel and Carrier] rather than snapping in." (See Markman Order at 63; Smith Declaration at ¶¶ 7-14).

The next step in installing Snap Lock Balance Shoe, as depicted in Figure 6B, demonstrates why Amesbury installs its rivet first (as opposed, in the case of Caldwell's Carrier, to last). In this step, Amesbury slides "the Snap Lock Balance Shoe into the rigid U-shaped Channel such that the fastener is received in the connection pocket of the Snap Lock Balance Shoe." Id. As noted, it is this step which persuaded this Court to incorporate "the idea of an opening" into its construction of the term "Pocket." Otherwise, as this Court stated, "one could erroneously interpret the term 'Pocket' to include a fully enclosed channel through the balance

---

[2] The method of securing the Snap Lock Balance Shoe is set forth at Column 6, 34-54, which provides:

> FIGS 6A-6D show one embodiment of a method for securing the snap lock balance shoe 210 within the rigid U-Shaped channel 630 … The first step, shown in FIG 6A, is to place a fastener 635, such as a rivet, in one of the pairs of openings 638 in the rigid U-Shaped channel 630. The next step, as depicted in FIG 6B, is to slide the snap lock balance shoe 210 into the rigid U-shaped channel 630 such that the fastener 635 is received in the connection pocket 213 of the snap lock balance shoe. As shown in FIG 6C, the snap lock balance shoe 210 is then rotated down so that the front frame surface 240 is aligned with a bottom wall 636 of the rigid U-shaped channel 630. FIG 6D shows the last step of attaching the snap lock balance shoe within the rigid U-Shaped channel. In this step, the connecting device 212 of the snap lock balance shoe 210 snaps into one of the pair of openings 638 located on the rigid U-shaped channel 630.

shoe, *in which the rivet would have to be thread through rather than snapping in."* (See Markman Order at 63)(Emphasis added).  Because the 97i and 97ih rivet is "thread through rather than snapping in", these products do not, and cannot meet this limitation of the patent claim in dispute and there can be no infringement.

The final two steps, as depicted in Figures 6C and 6D involve the rotating and snapping of the Snap Lock Balance Shoe "into one of the pair of openings located on the rigid U-shaped channel." Id.  In other words, the last step includes snapping the shoe onto the previously installed rivet.  This snapping feature is designed to permit the Snap Lock Balance Shoe to be removed after the window is constructed, without modification to the window.  Caldwell's 97i and 97ih do not contain such a feature.

Literal infringement requires that every limitation of the patent claim be found in the accused infringing device.  See General Mills Inc. v. Hunt-Wesson Inc., 103 F.3d 978 (Fed. Cir. 1997); Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353 (Fed. Cir. 2002).  Here, Caldwell's 97i and 97ih balances clearly do not contain a "Pocket" as that term has been construed by this Court.  Thus, any literal infringement claim pertaining to independent Claim 2 of the '368 Patent fails as a matter of law.

Equally infirm is any claim of infringement under the doctrine of equivalents.  Amesbury's Snap Lock Balance Shoe performs a different function, in a different way, to achieve a different result.  Dawn Equipment Company v. Kentucky Farms Inc., 140 F.3d 1009 (Fed Cir. 1998)(discussing the "function-way-result test").  The function of the Pocket in the '368 Patent is to accept, in the open top of the Pocket, a rivet which has been previously installed into the Channel.  The function of the pre-existing opening in 97i and 97ih Carrier, by contrast, is to accept a rivet from the side only after the Carrier has been inserted into the Channel.  Thus,

the rivet is installed into the 97i and 97ih Carrier in an entirely different way than with Amesbury's claimed "Pocket" – i.e., the rivet is installed <u>last</u>, <u>not first</u>. The result of this difference is dramatic. Amesbury's Snap Lock Balance Shoe is removable, meaning that it can be replaced after the window is constructed without modification to the window. The 97i and 97ih Carrier, however, is non-removable. It cannot be replaced after the window is constructed without further modification to the window (<u>See</u> Smith Declaration at ¶ 18). The doctrine of equivalents requires proof of "equivalency on a limitation-by-limitation basis." <u>Texas Instruments Inc. v. Cypress Semiconductor Corp</u>., 90 F.3d 1558, 1566 (Fed. Cir. 1996). Here, as demonstrated above, that is not possible and, thus, any claim of infringement under the doctrine of equivalents fails as a matter of law. <u>See</u> <u>also</u> <u>London v. Carson Pirie Scott & Co</u>., 946 F.2d 1534, 1538 (Fed. Cir.1991) (reiterating that the Federal Circuit has warned that application of the doctrine of equivalents should be the "exception … [and]… not the rule in patent infringement actions").

In short, Caldwell's 97i and 97ih do not infringe Amesbury's '368 patent – either literally or under the doctrine of equivalents. Thus, summary judgment dismissing Amesbury's causes of action pertaining to the purported infringement of independent Claim 2 of the '368 Patent by Caldwell's Series 97i and 97ih balances must be granted. <u>See</u> <u>generally</u> <u>Anderson v. Liberty Lobby Inc</u>., 477 U.S. 242, 252 (1986)(where no genuine dispute of material fact exists, the moving party is entitled to judgment as a matter of law).

### *<u>The Caldwell Series 97i and 97ih do not infringe dependent Claims 3, 6 and 7 of Amesbury's '368 Patent</u>*

Where there is no literal infringement of independent claims, there can be no infringement of dependent claims as a matter of law. <u>See</u> <u>Wahpeton Canvas Co. v. Frontier, Inc</u>., 870 F.2d 1546, 1552 (Fed Cir. 1989)(one may infringe an independent claim and not infringe a

9

claim dependant upon that claim; the reverse is not true; one who does not infringe an independent claim cannot infringe a claim dependant upon that claim). Thus, because Caldwell Series 97i and 97ih do not infringe independent Claim 2, they cannot, as a matter of law, infringe dependant Claims 3, 6 and 7.

## CONCLUSION

For the reasons stated herein, Caldwell Manufacturing Company respectfully requests that partial summary judgment be granted in its favor, and that it have such other and further relief as may be just and proper.

DATED: December 29, 2006         Respectfully submitted,

                                  THE CALDWELL MANUFACTURING COMPANY

                                  By its attorneys,

                                  /s/ David E. Lurie
                                  David E. Lurie, BBO# 542030
                                  Thomas E. Lent, BBO# 644970
                                  Lurie & Krupp, LLP
                                  One McKinley Square
                                  Boston, MA 02109
                                  Telephone: 617-367-1970

                                      -and-

                                  Paul J. Yesawich, III
                                  Neal L. Slifkin
                                  Harris Beach, PLLC
                                  99 Garnsey Road
                                  Pittsford, New York   14534
                                  Telephone:  585-419-8800