UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMESBURY GROUP, INC., and AMESBURY SPRINGS LTD., <br><br>          Plaintiffs, <br><br>     v. <br><br> THE CALDWELL MANUFACTURING COMPANY, <br><br>          Defendant. | Civil Action No. 05-10020-DPW |

### AMESBURY'S RESPONSE TO CALDWELL'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Plaintiffs Amesbury Group, Inc. and Amesbury Springs Ltd. (collectively, "Amesbury") submit this response, pursuant to the Court's Local Rule 56.1, in opposition to Caldwell's Motion for Partial Summary Judgment. All record materials, not previously filed with the Court, and referenced herein by Amesbury with exhibit numbers, accompany the Declaration of Safraz W. Ishmael in Opposition to Caldwell's Motion for Partial Summary Judgment, filed herewith.

As an initial matter, the facts Caldwell asserts by way of the Declaration of Fletcher Smith ("Smith Declaration") were never produced during discovery. Furthermore, at the December 5, 2006 scheduling conference, the Court directed that the parties jointly produce a video depicting the assembly and/or disassembly of Caldwell's Series 97i and Series 97ih balances. Caldwell ignored this order and unilaterally produced a video, without Amesbury's input or participation, that it attached to the Smith Declaration. (See Ex. 9, Letter from Douglas Kline to Neal Slifkin, 12/18/2006.) Additionally, Caldwell did not identify previously Mr. Fletcher Smith in this litigation. As such, should the Court be inclined to find the Smith Declaration material to a

ruling in Caldwell's favor on the present motion, Amesbury, pursuant to Rule 56(f), respectfully requests a continuance and the Court's leave to depose Mr. Smith. Otherwise, Amesbury would be unfairly prejudice as it had no opportunity to depose Mr. Smith and had no opportunity to participate in Mr. Smith's demonstration and video production of the Series 97i and Series 97ih manufacturing process.

## THE PARTIES

1. The Caldwell Manufacturing Company is a corporation organized and existing under the laws of the State of New York, and maintains a regular place of business in Rochester, New York (See Answer and Counterclaim at ¶ 3).

   **Amesbury's Response:** Undisputed.

2. Amesbury Group, Inc. is a corporation organized and existing under the laws of Delaware, and maintains a regular place of business in Amesbury, Massachusetts (See Complaint at ¶ 1).

   **Amesbury's Response:** Undisputed.

3. Amesbury Group, Inc. is the owner of the '368 Patent (See "Amesbury's Local Rule 56.1 Statement of Material Facts of Record as to Which There is No Genuine Issue to be Tried dated May 19, 2006 at ¶ 3).

   **Amesbury's Response:** Undisputed.

4. Amesbury Springs Ltd. is a corporation organized and existing under the laws of the United Kingdom, and maintains a regular place of business in Peterborough, United Kingdom (See Complaint at ¶ 2).

   **Amesbury's Response:** Undisputed.

**THE CALDWELL SERIES 97IH WINDOW BALANCE**

5. The Caldwell Series 97ih window balance was developed for tiltable or "pivotable" hung windows (See Smith Declaration at ¶ 4).

**Amesbury's Response:** Undisputed.

6. The Caldwell Series 97ih window balance consists of, among other things: a rigid U-shaped Channel ("Channel"); an extension spring; a "T" shaped Carrier ("Carrier"); and two rivets - a "Spring Rivet" and "Carrier Rivet" (See Smith Declaration at ¶¶ 6 and 16, Exhibits "A" and "I").

**Amesbury's Response:** Undisputed.

7. Caldwell's Williamsport, Maryland plant has four identical assembly lines which have been used to manufacture and/or assemble the 97ih (See Smith Declaration at ¶ 7).

**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

8. Regarding the 97ih Carrier, the assembly steps included: i) a "Block and TackleWrap and Stretch Operation" station (the "Wrap and Stretch Station"); ii) transport on a conveyor belt; and iii) a "Rivet Assembly Station" (See Smith Declaration at ¶¶ 7 and 16, Exhibit "I").

**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

3

9. The Wrap and Stretch Station is the first step in the manufacture/assembly process of the 97ih. It is used to stretch the spring and install it into the Channel (See Smith Declaration at ¶¶ 9 and 16, Exhibits "B" and "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

10. Once the spring is installed in the 97ih Channel, the Channel is placed on a conveyor belt (See Smith Declaration at ¶¶ 10 and 16, Exhibits "C", "D" and "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

11. The conveyor belt takes the 97ih Channel directly to the Rivet Assembly Station (See Smith Declaration at ¶¶ 10 and 16, Exhibits "C", "D" and I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

12. At the Rivet Assembly Station, the assembler reaches for the Channel with his/her right hand while obtaining a 97ih Carrier from a container with their left hand (See Smith Declaration at ¶¶ 11 and 16, Exhibits "B" and "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

13. The assembler then inserts the 97ih Carrier into the Channel and holds them in

place (See Smith Declaration at ¶¶ 12 and 16, Exhibits "F" and "I").

>**Amesbury's Response:**  This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

14.   There are two pairs of pre-drilled holes in the 97ih Channel (See Smith Declaration at ¶¶ 12 and 16, Exhibits "F" and "I").

>**Amesbury's Response:**  Amesbury does not dispute that there are two pairs of holes in the 97ih channel.

15.   The pair of pre-drilled holes at the top of the 97ih Channel (i.e., the holes closest to the Carrier) must be aligned with a pre-existing opening in the 97ih Carrier (See Smith Declaration at ¶¶ 12 and 16, Exhibits "F" and "I").

>**Amesbury's Response:**  Amesbury does not dispute that the pair of holes closest to the carrier in the 97ih channel align with an opening in the 97ih shoe.

16.   The pair of pre-drilled holes directly below the top Channel holes (i.e., the holes furthest from the Carrier) are for the Spring Rivet - not the Carrier Rivet (See Smith Declaration at ¶¶ 12 and 16, Exhibits "F" and "I").

>**Amesbury's Response:**  Amesbury does not dispute that the pair of holes furthest from the carrier accepts the rivet to which the spring attaches.

17.   Holding the Carrier and Channel in place, a Carrier Rivet is then threaded through the pair of top pre-drilled holes in the 97ih Channel and the corresponding pre-existing opening in the 97ih Carrier (See Smith Declaration at ¶¶ 13 and 16, Exhibits "G" and "I").

>**Amesbury's Response:**  This statement is immaterial to this motion.  Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

18. Once the Carrier Rivet is fastened, the 97ih assembly process is complete (See Smith Declaration at ¶¶ 14 and 16, Exhibits "H" and "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

19. Caldwell has ceased manufacturing the 97ih (See Smith Declaration at ¶ 15).

> **Amesbury's Response:** This statement is immaterial to this motion.

20. On Wednesday, December 13, 2006, Fletcher Smith (Plant Manager of Caldwell's Williamsport, Maryland Plant) demonstrated the process for attaching the 97ih Carrier to the Channel at Caldwell's Williamsport, Maryland plant (See Smith Declaration at ¶ 16 Exhibit "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

21. Fletcher Smith's December 13, 2006 demonstration is a true and accurate representation of the manufacturing and assembly process for attaching the 97ih Carrier to the Channel (See Smith Declaration at ¶ 16 Exhibit "I").

> **Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

22. As Mr. Smith demonstrated, the 97ih Carrier is inserted into the Channel and, then, a rivet is threaded through the pre-drilled Channel holes and the corresponding pre-existing Carrier opening See Smith Declaration at ¶ 16-17, Exhibit "I").

>**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

23. The rivet of the 97ih is not slid into an opening of a pocket (See Smith Declaration at ¶16-17, Exhibit "I").

>**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

24. The 97ih Carrier is designed to be non-removable and does not have snap-in capability (See Smith Declaration at ¶ 18 Exhibit "I").

>**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

**THE CALDWELL SERIES 97I WINDOW BALANCE.**

25. Caldwell manufactured/assembled its Series 97i window balance at its Jackson, Mississippi plant on or about 2002. That plant is now closed (See Smith Declaration at ¶ 19).

>**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

26. The 97i was assembled using equipment and processes that were, in all material respects, identical to those used with the 97ih (See Smith Declaration at ¶ 20).

>**Amesbury's Response:** This statement is immaterial to this motion. Furthermore, the asserted facts in this statement were not disclosed to Amesbury

7

during discovery, and Caldwell did not allow Amesbury an opportunity to participate in the preparation of the Smith Declaration or the video attached thereto.

27.  The Caldwell Series 97i Carrier is identical to the Series 97ih Carrier (See Smith Declaration at ¶ 20).

**Amesbury's Response:**  Undisputed.

**AMESBURY'S U.S. PATENT 6,820,368.**

28.  The first step in installing Amesbury's Snap Lock Balance Shoe, as shown in Figure 6A of '368, is to "place a fastener, such as a rivet, in one of the pairs of openings in the rigid U-Shaped Channel" (See Slifkin Declaration at ¶ 2, Exhibit "A").

**Amesbury's Response:**  To the extent that this statement alleges to describe the only way the disclosed balance shoe can be installed, Amesbury disputes this statement. (See e.g., Shina Third Decl. at ¶ 11.) Furthermore, the disclosure of the patent speaks for itself.

29.  The reason the '368 Patent installs the rivet *before* the Snap Lock Balance Shoe is to allow the Snap Lock Balance Shoe to slide into the rigid U-shaped channel such that the fastener (i.e., rivet) is received in the connection pocket of the Snap Lock Balance Shoe (See Slifkin Declaration at 2, Exhibit "A").

**Amesbury's Response:**  To the extent that this statement alleges to describe the only way the disclosed balance shoe can be installed, Amesbury disputes this statement. (See e.g., Shina Third Decl. at ¶ 11.) Furthermore, the disclosure of the patent speaks for itself.

30.  The second step in installing Snap Lock Balance Shoe, as depicted in Figure 6B of '368, is to slide "the Snap Lock Balance Shoe into the rigid U-shaped Channel such that the fastener is received in the connection pocket of the Snap Lock Balance Shoe" (See Slifkin Declaration at ¶ 2, Exhibit "A").

**Amesbury's Response:**  To the extent that this statement alleges to describe the only way the disclosed balance shoe can be installed, Amesbury disputes this

statement. (See e.g., Shina Third Decl. at ¶ 11.) Furthermore, the disclosure of the patent speaks for itself.

31.     The final two steps, as depicted in Figures 6C and 6D involve the rotating and snapping of the Snap Lock Balance Shoe "into one of the pair of openings located on the rigid U-shaped channel" (See Slifkin Declaration at ¶ 2, Exhibit "A").

**Amesbury's Response:** To the extent that this statement alleges to describe the only way the disclosed balance shoe can be installed, Amesbury disputes this statement. (See e.g., Shina Third Decl. at ¶ 11.) Furthermore, the disclosure of the patent speaks for itself.

        Respectfully submitted,

        /s/ Douglas J. Kline
        Douglas J. Kline (BBO# 556680)
        Terese Dillingham (BBO# 644520)
        Safraz W. Ishmael (BBO# 657881)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA  02109
        Phone:  (617) 570-1000
        Fax:  (617) 523-1231

        Attorneys for Plaintiffs

        **AMESBURY GROUP, INC.**
        **AMESBURY SPRINGS LTD.**

Dated: January 12, 2007

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 12, 2007.

        /s/ Douglas J. Kline
        Douglas J. Kline